**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
GREENBELT DIVISION**

| | |
|---|---|
| ROBERT FRAZIER, *et al.*, individually and on behalf of a class of similarly situated persons,<br><br>                    Plaintiffs,<br><br>        v.<br><br>PRINCE GEORGE'S COUNTY, MARYLAND, *et al.*,<br><br>                Defendants. | Case No. <u>8:22-cv-1768-AAQ</u> |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF
MOTION FOR PRELIMINARY INJUNCTION**

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................. 1

STATEMENT OF FACTS ...................................................................................... 3

    I.     A Constitutional Pretrial System ................................................................. 3

    II.    Defendants Arbitrarily Keep People in Jail After Their Release Has Been Recommended or Mandated. ...................................................................... 4

    III.   Plaintiffs Have Suffered Irreparable Harm Due to These Constitutional Violations..... 17

ARGUMENT ............................................................................................. 18

    I.     Plaintiffs Are Likely to Succeed on the Merits of Their Due Process Claims. ...................................................................................... 18

    II.    Without Injunctive Relief, Plaintiffs Will Be Irreparably Harmed. .............. 29

    III.   The Balance of Equities and Public Interest Favor Plaintiffs. ..................... 33

    IV.   Plaintiffs Should Not Be Required to Post Security to Obtain Preliminary Relief........ 34

CONCLUSION ........................................................................................... 35

# TABLE OF AUTHORITIES

Page(s)

## CASES

*Aracely, R. v. Nielsen*, 319 F. Supp. 3d 110 (D.D.C. 2018) ............................................29

*Armstrong v. Manzo*, 380 U.S. 545 (1965) ...................................................................23

*Barker v. Wingo*, 407 U.S. 514 (1972) .........................................................................30

*Brangan v. Commonwealth*, 80 N.E.3d 949 (Mass. 2017) ............................................19

*Caliste v. Cantrell*, 329 F. Supp. 3d 296 (E.D. La. 2018), *aff'd*, 937 F.3d 525 (5th Cir. 2019) ...................................................................................................................24

*Centro Tepeyac v. Montgomery*, 722 F.3d 184 (4th Cir. 2013) ..............................33, 34

*Coreas v. Bounds*, 458 F. Supp. 3d 352 (D. Md. 2020) .................................................35

*Desper v. Clarke*, 1 F.4th 236 (4th Cir. 2021), *cert. denied*, 142 S. Ct. 811 (2022) ....................30

*Elrod v. Burns*, 427 U.S. 347 (1976) (plurality opinion) ..............................................29

*G & V Lounge v. Mich. Liquor Control Comm'n*, 23 F.3d 1071 (6th Cir. 1994) ..........34

*Giovani Carandola, Ltd. v. Bason*, 303 F.3d 507 (4th Cir. 2002) ...........................33, 34

*Hensley v. Eckerhart*, 461 U.S. 424 (1983) (Brennan, J., concurring in part, dissenting in part) ...................................................................................................33, 34

*Hoechst Diafoil Co. v. Nan Ya Plastics Corp.*, 174 F.3d 411 (4th Cir. 1999) ...............35

*In re Humphrey*, 482 P.3d 1008 (Cal. 2021) .................................................................19

*Int'l Controls Corp. v. Vesco*, 490 F.2d 1334 (2d Cir. 1974) ........................................35

*J.O.P. v. U.S. Dep't of Homeland Sec.*, 409 F. Supp. 3d 367 (D. Md. 2019) ...................2

*Jarpa v. Mumford*, 211 F. Supp. 3d 706 (D. Md. 2016) ................................................29

*Jones v. City of Clanton*, No. 2:15-CV-34, 2015 WL 5387219 (M.D. Ala. Sept. 14, 2015) ............................................................................................................33, 34

*Kirsch v. Prince George's Cnty.*, 626 A.2d 372 (Md.), *cert. denied,* 510 U.S. 1011 (1993) ......................................................................................................................22

*Koshko v. Haining*, 921 A.2d 171 (Md. 2007) ..............................................................22

*Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454 (1989) ................................................23

*Leaders of a Beautiful Struggle v. Baltimore Police Dep't*, 2 F.4th 330 (4th Cir. 2021) ................................................................................................................29

*Lopez-Valenzuela v. Arpaio*, 770 F.3d 772 (9th Cir. 2014) ........................................19

*Mackey v. Montrym*, 443 U.S. 1 (1979) .......................................................................23

*Matacua v. Frank*, 308 F. Supp. 3d 1019 (D. Minn. 2018) .........................................30

*Mathews v. Eldridge*, 424 U.S. 319 (1976) .................................................................23

*McNeil v. Cmty. Prob. Servs., LLC*, No. 1:18-CV-00033, 2019 WL 633012 (M.D. Tenn. Feb. 14, 2019), *aff'd*, 945 F.3d 991 (6th Cir. 2019) ...............................24

*Morrissey v. Brewer*, 408 U.S. 471 (1972) ..................................................................23

*ODonnell v. Harris Cnty.*, 251 F. Supp. 3d 1052 (S.D. Tex. 2017), *aff'd as modified*, 882 F.3d 528 (5th Cir. 2018) .............................................................19

*ODonnell v. Harris Cnty.*, 892 F.3d 147 (5th Cir. 2018) ..............................24, 30, 34

*Pugh v. Rainwater*, 572 F.2d 1053 (5th Cir. 1978) ....................................................30

*R.I.L-R v. Johnson*, 80 F. Supp. 3d 164 (D.D.C. 2015) .............................................30

*Reem v. Hennessy*, No. 17-CV-6628, 2017 WL 6765247 (N.D. Cal. Nov. 29, 2017) ...............................................................................................................19

*Reno v. Flores*, 507 U.S. 292 (1993) ..........................................................................18

*Roe v. Dep't of Def.*, 947 F.3d 207 (4th Cir. 2020) ....................................................18

*Ross v. Meese*, 818 F.2d 1132 (4th Cir. 1987) ...........................................................29

*Schultz v. Alabama*, 330 F. Supp. 3d 13442 (N.D. Ala. 2018)
.........................................................................................................20, 24, 26, 30

*Smith v. Bortner*, 998 A.2d 369 (Md. Ct. Spec. App. 2010) .......................................22

*State v. Mascareno-Haidle*, No. S-1-SC-38743, 2022 WL 2351632 (N.M. June 30, 2022) ..........................................................................................................19

*Torres v. Collins*, No. 2:20-CV-00026, 2020 WL 7706883 (E.D. Tenn. Nov. 30, 2020) .......................................................................................................19, 24

*Turner v. Rogers*, 564 U.S. 431 (2011) .......................................................................24

*United States v. Bogle*, 855 F.2d 707 (11th Cir. 1988) ...................................................30

*United States v. Salerno*, 481 U.S. 739 (1987) ....................................1, 3, 18, 19, 23, 24

*Valdez-Jimenez v. Eighth Jud. Dist. Ct. in & for Cnty. of Clark*, 460 P.3d 976
    (Nev. 2020) .....................................................................................................19, 24

*Vitek v. Jones*, 445 U.S. 480 (1980)..................................................................................22

*Walker v. City of Calhoun*, 901 F.3d 1245 (11th Cir. 2018).............................................24

*Wheeler v. State*, 864 A.2d 1058 (Md. Ct. Spec. App. 2005)...............................3, 19, 22

*Zadvydas v. Davis*, 533 U.S. 678 (2001) .....................................................................22, 24

## STATUTES, RULES, AND REGULATIONS

18 U.S.C. § 3142 ...................................................................................................................1

Fed. R. Civ. P. 65 ...............................................................................................................34

Md. Decl. Rts., art. XXIV ..............................................................................................22, 29

Md. Rule 4-216.1 ............................................................................................................20, 26

Md. Rule 4-216.2 .................................................................................................................4

U.S. Const. amend. XIV ...............................................................................................22, 29

## OTHER AUTHORITIES

Arpit Gupta et al., *The Heavy Costs of High Bail: Evidence from Judge
    Randomization*, 45 J. LEGAL. STUD. 471 (2016).......................................................17, 30

Christopher T. Lowenkamp et al., Laura & John Arnold Found., *The Hidden
    Costs of Pretrial Detention* (2013) ....................................................................31

Christopher T. Lowenkamp et al., Laura & John Arnold Found., *Investigating the
    Impact of Pretrial Detention on Sentencing Outcomes* (2013)...........................17

Timothy R. Schnacke, Nat'l Inst. of Corr., *Fundamentals of Bail: A Resource
    Guide for Pretrial Practioners and a Framework for American Pretrial
    Reform* (2014) ....................................................................................................17, 31

Md. Cts., *Criminal Cases* (last visited July 19, 2022),
    https://www.mdcourts.gov/legalhelp/criminalcases ...........................................10

Marie VanNostrand et al., *Our Journey Toward Pretrial Justice*, 71 FED.
    PROBATION, No. 2 (2007) ....................................................................................28

Megan T. Stevenson, *Distortion of Justice: How the Inability to Pay Bail Affects Case Outcomes*, 34 J.L. ECON. & ORG. 511 (2018) ....................................................17, 30

Paul Heaton et al., *The Downstream Consequences of Misdemeanor Pretrial Detention*, 69 STAN. L. REV. 711 (2017) ...........................................................................31

Will Dobbie et al., *The Effects of Pretrial Detention on Conviction, Future Crime, and Employment: Evidence from Randomly Assigned Judges*, 108 AM. ECON. REV. 201 (2018) ........................................................................................31

## PRELIMINARY STATEMENT

A presumptively innocent person may not be jailed prior to trial unless a "judicial officer finds that no condition or combination of conditions" of release will reasonably protect the community and ensure that the person will return to court. *United States v. Salerno*, 481 U.S. 739, 742 (1987) (quoting 18 U.S.C. § 3142(e)). This guarantees that pretrial liberty remains "the norm," and detention while awaiting trial a "carefully limited exception." *Id.* at 755. Yet every night in Prince George's County, hundreds of people sit in jail in violation of this constitutional command. None of these people have been convicted of the crimes of which they are accused. No judicial officer has found that detaining these people prior to trial is necessary to reasonably ensure community safety or their return to court. Indeed, in each case, a judicial officer has found that the person *can* safely be released on some conditions.

These people remain jailed because Prince George's County District and Circuit Court judges abdicate their legal duty to set bail, and delegate it instead to unaccountable, non-judicial officials within the County Department of Corrections. These officials then decide whether, when, and on what conditions a person will be released while awaiting trial. The officials delay that decision for weeks or months, during which time the person languishes in purgatorial detention. In many cases, the officials ultimately decide—behind closed doors, and according to their own arbitrary criteria unrelated to community safety or flight risk—that, despite the authorization or order of a court, they will not release the person. Due process does not permit detention under these circumstances.

The Plaintiff class[1] consists of hundreds of people who are detained *at this very moment*, each of whom has been authorized—and in some cases ordered—to be released awaiting trial.

- Robert Frazier was referred for pretrial release on May 31, 2022. Shortly thereafter, his mother died. He was not released in time to pay his respects. His pretrial referral was made an order on June 21. Nearly a month later, he remains detained.

- Anibal Hernandez was ordered released on June 24, 2022. His public defender has emailed the County no fewer than six times, inquiring if or when he might be released. More than three weeks later, Mr. Hernandez remains in jail.

- D.P., a 16-year-old boy, was referred for pretrial release on June 21, 2022. Nearly a month later, he remains in jail, separated from his mother and 7-year-old sisters. The longer he remains detained, the more likely it is he will be held back in school.

- Christopher Butler was arrested on October 26, 2021 and ordered released on February 18, 2022. Yet 151 days later, he remains detained. As the Jail does not permit children to visit, he has not seen his ten-year-old daughter in nearly nine months.

- Miramba Williams's release was authorized on July 5, 2022. His parents' calls to the County have achieved little: Mr. Williams remains jailed, separated from his three young children, nearly two weeks later.

Policies and practices maintained by Defendants Prince George's County, Corenne Labbé, Jeffrey Logan, Kenneth Gray, and Tanya Law ("the County Defendants") violate Plaintiffs' federal rights and inflict irreparable harm by subjecting them to weeks or months of unlawful detention. As such, Plaintiffs move for a preliminary injunction as set forth below and in the accompanying proposed order, requiring the County Defendants to immediately adopt constitutionally compliant bail standards and procedures. *See* Exhibit 1, Proposed Order.[2]

---

[1] Plaintiffs seek to represent a class of all people who are or will be detained despite having been referred for release. *See* ECF No. 3, Pls.' Motion for Class Certification, at 1. Under well-settled law, class-wide preliminary relief may be granted before a class has been certified. *See J.O.P. v. U.S. Dep't of Homeland Sec.*, 409 F. Supp. 3d 367, 376 (D. Md. 2019). Throughout this motion, "Plaintiffs" refers to Robert Frazier, Anibal Hernandez, D.P., Christopher Butler, and Miramba Williams, as well as all other members, present and future, of the putative Equitable Class.

[2] In particular, Plaintiffs Robert Frazier, Anibal Hernandez, D.P., Christopher Butler, and Miramba Williams move for a preliminary injunction on Counts I – IV of the Complaint, ¶¶ 233–260, against

## STATEMENT OF FACTS[3]

### I.   A Constitutional Pretrial System

In a constitutionally compliant pretrial system, people who have been arrested are brought before a "neutral decisionmaker" within hours of arrest for a "full-blown adversary hearing." *Salerno*, 481 U.S. at 750. At that hearing, a judicial officer determines whether evidence presented by the State demonstrates that ongoing pretrial detention is necessary to reasonably protect the community and ensure the person's return to court. *Id.* at 742. This standard requires the judicial officer to consider potential conditions of release; if any such conditions will reasonably protect the State's interests, the person *must* be released on these conditions. *Id.* The arrested person must also be offered rigorous procedural protections at this hearing—among them, the assistance of counsel, and the opportunity to present evidence and rebut the evidence against them—and the court must apply a clear-and-convincing-evidence standard of proof. *Id.* at 750–52. If the arrested person remains detained after the hearing, the court must record findings of fact and a statement of reasons supporting its decision. *Id.* at 751. If any one of these requirements is not met within a reasonable time following arrest, the arrested person must be released. *See Wheeler v. State*, 864 A.2d 1058, 1065 (Md. Ct. Spec. App. 2005) ("[Pretrial detention] may not be ordered unless the judicial officer is persuaded by clear and convincing evidence that no condition or combination of conditions of pretrial release can reasonably protect against the danger that the defendant poses to the safety of an identifiable person or to the community at large.").

---

the County Defendants only. Plaintiffs Donnell Davis, Leslie Sharp, Elmer Laguan-Salinas, and Adrienne Worthington do not join in this request. Nor do Plaintiffs move for immediate relief on Count V, immediate non-injunctive relief, or injunctive relief against any of the Judge Defendants.
[3] Plaintiffs aver that they have presented adequate evidence, attached to this motion and cited throughout, to support the issuance of a preliminary injunction. Should the Court disagree, Plaintiffs respectfully request that the Court permit a period of limited, expedited discovery so that the parties may more fully develop the facts necessary to the resolution of this motion.

## II.   Defendants Arbitrarily Keep People in Jail After Their Release Has Been Recommended or Mandated.

Every day, Defendants flagrantly violate these constitutional standards.[4] As a result, hundreds of people are currently jailed in violation of their due process rights.

### a.   The Initial Appearance

When a person is arrested in Prince George's County, they are first brought before a judicial commissioner for an Initial Appearance. *See, e.g.*, Exhibit 2, Declaration of Peter Im ("Im Decl."), ¶ 4.[5] At this appearance, a judicial commissioner decides whether the arrested person should be released on recognizance, released on a cash bond—if they can afford it—or held without bond. *Id.* ¶ 6. Initial appearances are held in the commissioner's office, behind closed doors. *Id.* ¶ 5; Exhibit 3, Declaration of Allison Heldreth ("Heldreth Decl."), ¶ 4. The only "record" produced is a *pro forma* order, which generally contains a conclusory statement of reasons and no findings of fact. *See, e.g.*, Exhibit 4, Case Documents, Leslie Sharp, at 2–3.

### b.   The Bail Review Hearing

If a person remains detained after their initial appearance, they appear before a District Court judge for a "bail review hearing." *See, e.g.*, Heldreth Decl. ¶ 6.[6] Before the hearing, the Population Management Division of the Department of Corrections ("the Pretrial Division") prepares an Intake Fact Sheet, which contains information about, *inter alia*, the arrested person's criminal history, prior failures to appear in court, and any other open cases pending against them.

---

[4] The differences between a constitutionally compliant pretrial release system, and the system maintained by Defendants is illustrated in the Complaint, ECF No. 1, at ¶ 112.

[5] Commissioners are not judges, nor are they necessarily lawyers. *Id.*

[6] Under Maryland law, that hearing should take place "immediately" if the district court is in session, or otherwise at the next session of court. Md. Rule 4-216.2. Because the court is closed on weekends and holidays, detained people regularly wait more than 48–72 hours for this hearing. Im Decl. ¶ 9; Heldreth Decl. ¶ 6.

*See, e.g.*, Im Decl. ¶¶ 15–16; Heldreth Decl. ¶¶ 9–11.[7] The judge considers this sheet, the statement of charges, and any evidence presented and determines whether to affirm or adjust the commissioner's bail order. *See, e.g.*, Im Decl. ¶ 19. In a constitutional pretrial system, that determination would involve consideration of alternatives to detention; an opportunity for the arrested person to rebut any evidence presented by the Assistant State's Attorney ("ASA") and to present their own evidence; a clear-and-convincing-evidence standard of proof; and recorded findings of fact and a statement of reasons as to whether ongoing detention is necessary to reasonably protect community safety and guard against flight.

Not so in Prince George's County. *See generally* Exhibit 5, Declaration of Fiona Apple ("Apple Decl."); Exhibit 6, Declaration of William Haines ("Haines Decl."); Exhibit 7, Declaration of Debbie Polhemus ("Polhemus Decl."). Defense counsel is usually required to speak first and to present affirmative evidence as to why their client can be released. *See, e.g.*, Heldreth Decl. ¶ 14. As such, the burden is improperly shifted to defense counsel to prove their client may be released. *Id.* The ASA, on the other hand, is not required to prove that ongoing detention is necessary. *See, e.g., id.* ¶ 15. To the extent the ASA presents "evidence," it is typically limited to the statement of charges—mere allegations at this point. *Id.* ¶¶ 15–16. Bail review hearings typically last only a few minutes. *See, e.g.*, Heldreth Decl. ¶ 17; Meiring Decl. ¶ 13. At their conclusion, judges do not usually record findings of fact or statements of reasons—even when they order conditions of bail that serve to keep the person detained. *See, e.g.*, Exhibit 8, Case

---

[7] While Intake Fact Sheets often contain significant errors and omissions, defense counsel are not given more than a few minutes between receiving the sheets and the beginning of the hearings, making it difficult identify and challenge these errors. Im Decl. ¶¶ 17–18; Heldreth Decl. ¶¶ 10, 13. Furthermore, Intake Fact Sheets are usually less complete for arrested persons who do not speak English, disadvantaging these people at their hearings. Exhibit 9, Declaration of Christina Meiring ("Meiring Decl."), ¶ 10.

Documents, D.P. ("D.P. Docs."), at 2; Exhibit 10, Case Documents, Miramba Williams ("Williams Docs."), at 1.[8]

### c. *Pretrial Referrals*

The issues that form the basis of this lawsuit result from the "pretrial orders" and "pretrial options" (collectively "pretrial referrals") that judges often issue at bail review hearings, on top of whatever bail order they make. *See, e.g.*, Exhibit 11, Declaration of Mary Lou McDonough ("McDonough Decl."), at 2.[9] Pretrial referrals cede the ultimate decision as to whether, when, and on what conditions the arrested person will be released before trial to the County Defendants. If a person is issued a "pretrial option" (or, equivalently, has "pretrial authorized"), or a "pretrial order,"[10] it is understood that the judge has authorized the person's release; but the determination

---

[8] While judges sometimes recite that they have found that conditions will not suffice to protect the community or return to court, they then negate this "finding" where they refer the person for pretrial release, as described below. *see, e.g.* Im Decl. ¶ 20; Exhibit 12, Declaration of Edwuan Whitehead ("Whitehead Decl.") ¶ 4.

[9] *See also* Exhibit 13, Pretrial Division Response to Md. Public Information Act ("MPIA") Request (May 2022) ("Pretrial 2022 MPIA Response"), at 4 (discussing pretrial options); Exhibit 14, Pretrial Division Response to MPIA Request (Mar. 2021) ("Pretrial 2021 MPIA Response"), at 1 (1,208 pretrial referrals given from Dec. 2018 to Feb. 2021); Exhibit 15, PG Cnty. Dep't of Corrections, Policy and Procedure Manual, Release Preparation and Community Release ("Pretrial Manual"), at 6 (discussing pretrial options); Exhibit 16, Declaration of Jeffrey Logan (May 18, 2020) ("Logan May 18 Decl."), at 1 (discussing pretrial options and orders); Exhibit 17, Pretrial Division, List of Pretrial Orders and Options (May 4, 2020) ("Pretrial Referral List") (same); Exhibit 18, Declaration of Jeffrey Logan (May 11, 2020) ("Logan May 11 Decl."), at 1–2 (same); Exhibit 19, Presentation by Jeffrey Logan (June 2021); Im Decl. ¶ 21; Heldreth Decl. ¶ 20; Exhibit 20, Declaration of Jeffrey Campbell ("Campbell Decl."), ¶ 8; Meiring Decl. ¶ 15; Exhibit 21, Declaration of Brandon Ruben ("Ruben Decl."), ¶¶ 5–9; Exhibit 22, Declaration of Maria Hughes ("Hughes Decl."), ¶¶ 3–5; Exhibit 23, Declaration of Claire Glenn (2022) ("Glenn 2022 Decl."), ¶ 11.

[10] As currently understood by both judges and the Pretrial Division, the difference between a "pretrial option" and a "pretrial order" is principally one of priority: people with "pretrial orders" are placed at the front of the Division's processing queue, and accordingly some judges have refused to issue orders because they say it is unfair to let somebody "jump the line." *See, e.g.*, Im Decl. ¶ 46; Meiring Decl. ¶ 34. Despite the term, judges refuse to enforce pretrial "orders" when the Pretrial Division does not follow them. *See, e.g.*, Heldreth Decl. ¶¶ 45, 50.

of whether, when, and on what conditions release actually occurs is delegated to the Pretrial Division. The arrested person remains in jail until the Division makes its decision, and thereafter if the Division decides not to release.

As such, pretrial referrals outsource one of the most important decisions in any criminal case—whether a presumptively innocent person will be jailed awaiting trial—to unaccountable, non-judicial County officials. According to Defendant Logan, this practice has been ongoing "for decades." Exhibit 24, Email from Jeffrey Logan (May 15, 2020), at 1.

If a judge refers a detained person to pretrial at their bail review hearing, the person's file is sent to the Pretrial Division for processing. Pretrial 2022 MPIA Response at 5. Because the Court does not specify a deadline by which the processing must conclude, Campbell Decl. ¶ 27, the Pretrial Division may delay for weeks or months after the bail review hearing. And it often does: Legally innocent people in Prince George's County regularly sit in jail for weeks if not months after their bail review hearings, waiting for the Pretrial Division to "process" their release. *See, e.g.*, Exhibit 25, Declaration of Robert Frazier ("Frazier Decl."), ¶ 9 (authorized for release 49 days ago, remains in jail); Exhibit 26, Declaration of Christopher Butler ("Butler Decl."), ¶ 9 (ordered released 151 days ago, remains in jail).[11] During this time, no court has found that these people are too dangerous or too much of a flight risk to be released; in fact, by referring them to

---

[11] *See also* Exhibit 27, Declaration of Anibal Hernandez ("Hernandez Decl."), ¶ 7 (ordered released 25 days ago, remains in jail); Exhibit 28, Declaration of K.P. ("K.P. Decl."), ¶¶ 8–9 (D.P. authorized for release 28 days ago, remains in jail); Exhibit 29, Declaration of Miramba Williams ("Williams Decl."), ¶ 7 (authorized for release 14 days ago, remains in jail); Exhibit 30, Declaration of Camila Linneman ("Linneman Decl."), ¶ 8 (for people given pretrial referrals in Jan.–May 2022 who were ultimately released, average time spent in jail *after* pretrial referral was 38 days); Whitehead Decl. ¶¶ 6–9; Exhibit 31, Declaration of Claire Glenn (2020) ("Glenn 2020 Decl."), ¶ 5–6 (identifying 80 people still detained who had been authorized for release more than a month prior, 48 of whom had been authorized more than three months prior); Im Decl. ¶ 24; Heldreth Decl. ¶ 22; Campbell Decl. ¶ 10; Meiring Decl. ¶¶ 23–24; Ruben Decl. ¶ 7; Hughes Decl. ¶ 7; Glenn 2022 Decl. ¶ 44.

pretrial, the Court has implied that some conditions of release are acceptable. Nevertheless, they remain in jail.

The Division's processing occurs inside an inscrutable black box. No notice is provided, no defense counsel is present, no adversarial hearing occurs, and no evidence is presented or rebutted by either side. *See, e.g.*, Campbell Decl. ¶¶ 12–14. County employees—Defendants Labbé, Logan, Gray, and Law, and others acting at their direction—decide each referral behind closed doors in the Pretrial Division's offices. The Pretrial Division does not affirmatively provide any information to either the detained person or their counsel as to what investigation (if any) is happening, where the person is in the processing queue, or when they can expect a decision. *See, e.g.*, Heldreth Decl. ¶ 22. The only way to know what is happening is to regularly call or email the Pretrial Division for the weeks or months it takes them to process pretrial referrals. *See, e.g.*, Im Decl. ¶ 48. At times not even that works, as the Pretrial Division may refuse to respond to emails or return calls. *See, e.g.*, Meiring Decl. ¶¶ 20–24. During this time, people given pretrial referrals remain in a state of purgatorial detention.[12] Some people remain in this grey area up until their criminal case is resolved, at which point their pretrial referral is moot. *See, e.g.*, Meiring Decl. ¶ 28 ("The vast majority of my clients given a pretrial order or option are never told definitively by the Pretrial Division that they will not be released, or why they are not being released.").

At the conclusion of their "processing," the County Defendants ultimately refuse to release a significant proportion of people referred to them by the court. *See, e.g.*, Meiring Decl. ¶ 27 ("The vast majority of my clients given a pretrial order or option are never released."); Heldreth Decl. ¶ 25 ("[I]n my experience, it is exceedingly rare for a person given a pretrial option to actually be

---

[12] For further examples of the Pretrial Division's opaque "processing," *see* Im Decl. ¶¶ 48–49; Heldreth Decl. ¶¶ 21–22, 38–42; Campbell Decl. ¶¶ 12–21; Glenn 2022 Decl. ¶¶ 28–29; Meiring Decl. ¶¶ 23–28; K.P. Decl. ¶¶ 9–10; Williams Decl. ¶¶ 9–11; Hernandez Decl. ¶¶ 8, 10–11.

released.").[13] This is true even when the referral is an order. *See, e.g.*, Im Decl. ¶ 46. The Pretrial Division does not always provide a reason for its refusal to release. *See, e.g.*, Meiring Decl. ¶ 21. When a reason is provided, it is often arbitrary, self-defeating, and/or unrelated to new evidence about risk to public safety or likelihood of flight. *See* Pretrial 2022 MPIA Response at 5–6 (listing criteria the Division considers).[14]

For example, the Division refuses to release people for reasons that were known to the court at the time it referred the person, such as the person's criminal history or the nature of the criminal allegations against them. *See id.* (listing these requirements). The Pretrial Division has also refused to release individuals who have open warrants from other jurisdictions, preventing them from leaving the jail to resolve those warrants. *See, e.g.*, Glenn 2022 Decl. ¶ 38. This is true even when the reason for the warrant is that a person cannot appear at a court proceeding in another jurisdiction because they are detained in the Prince George's County Jail; that is, when the warrant is due to the Division's own delay in processing them. *Id.*

---

[13] *See also* Campbell Decl. ¶ 10; Ruben Decl. ¶ 8; Pretrial 2021 MPIA Response at 1 (identifying 246 people who were referred to the Pretrial Division between Dec. 2018 to Mar. 2021 but not released); Linneman Decl. ¶¶ 8-9 (as of July 15, 2022, about half of people referred to pretrial between Jan.–May 2022 remained in jail, including a third of people given pretrial orders).

[14] *See also* Campbell Decl. ¶¶ 12–21; Heldreth Decl. ¶¶ 31–37; Exhibit 32, Howard University School of Law, Inside PG County Bond Hearings, at 19; Glenn 2022 Decl. ¶ 21 (listing most common "policies" cited by the Pretrial Division for denying release: "(1) a third party has not verified the defendant's address; (2) a third party has verified the defendant's address, but that address is not within Prince George's County; (3) the defendant is also on active probation or parole; (4) the defendant has another pending case in any jurisdiction other than Prince George's County; (5) the defendant's charge is 'too serious'; (6) the defendant has a 'bad' record; (7) Pretrial Services has been unable to contact the complaining witness; (8) Pretrial Services contacted the complaining witness and they report fear if the defendant were released; (9) the defendant has been charged with felonies and Pretrial Services is waiting to see whether those felonies will be dismissed at the preliminary hearing; (10) the defendant has an unserved warrant/detainer (whether the warrant issued from Prince George's County or another jurisdiction); and (11) the defendant tested positive for COVID-19 and must remain isolated at the jail").

The Pretrial Division also declines to release people due to reasons related principally to poverty—for example, because the person is unhoused and thus cannot provide a "verifiable" address to reside at upon release. *See, e.g.*, Campbell Decl. ¶ 16. For people who are only eligible for release on home detention, either by the court's order or under the Division's self-determined criteria, the Division requires that the person reside in Prince George's County—excluding even neighboring jurisdictions like the District of Columbia and Montgomery County. Pretrial 2022 MPIA Response at 2.

The Division also regularly re-delegates the release decision to another non-judicial, non-neutral party: the complaining witness. The Division refuses release if the witness does not answer its calls or says that they do not want the person released. *See* Pretrial 2022 MPIA Response at 4.[15] The Division does this even when the court already heard and considered the witness's input at the bail review hearing, and nevertheless issued a referral, or when the charges were initiated by the complaining witness themselves.[16] Campbell Decl. ¶¶ 17–19.

The Pretrial Division's release eligibility criteria are self-determined, ever evolving, and inconsistent. For example, the Division used to accept utility bills as a means of address verification, but more recently has insisted on a lease or mortgage, with no explanation for the sudden change. *See, e.g.*, Im Decl. ¶ 36. Similarly, the Division has refused to release some referred people while citing the fact that they have other open cases but has released others who have multiple open cases. *See, e.g.*, Heldreth Decl. ¶ 36.

---

[15] *See also* Pretrial 2021 MPIA Response at 8; Pretrial Manual at 10; McDonough Decl. at 3; Campbell Decl. ¶¶ 17–19; Heldreth Decl. ¶¶ 34–35.

[16] In Maryland, a person can privately initiate criminal charges by filing an application with the district court. *See* Md. Cts., Criminal Cases (last visited July 19, 2022), https://www.mdcourts.gov/legalhelp/criminalcases. If someone is arrested and given a pretrial referral, the same person who initiated charges is also permitted to decide whether they are detained pretrial on those charges.

When the Pretrial Division overrides the Court's pretrial referral and decides not to release the person, the only notice it provides to the Court or defense counsel is a *pro forma* letter sent weeks after the fact (and in many cases, not at all). *See, e.g.*, Exhibit 33, Case Documents, Donnell Davis ("Davis Docs."), at 9–10; Sharp Docs. at 10–11; Meiring Decl. ¶ 31 (letters are sent in about one of every eight cases). That letter lists several stock reasons why the Division might decline to release a person referred to pretrial, such as those reasons listed above. In many instances, the Division checks only the last box: "Other–See Explanation." *See, e.g.*, Davis Docs. at 5, 9. The "explanation" provided is often just an instruction to contact the Pretrial Division for additional information. *Id.*

Judges are aware of the delays in the Pretrial Division's processing, and its regular refusals to release people who have been referred to it. Defense attorneys regularly raise these issues at bail review hearings and file motions in District and Circuit Courts requesting repeated bail review hearings on account of the Division's delays and denials. *See, e.g.*, Haines Decl. ¶ 14; Polhemus Decl. ¶¶ 13–15. State court judges have generally not been receptive to these efforts. *See, e.g.*, Apple Decl. ¶¶ 11–14. Some judges refuse to hold a hearing on these motions. *See, e.g.*, Heldreth Decl. ¶ 44. Others require "changed circumstances" to accompany a request to modify bail orders—even though no law requires a change in circumstance to warrant reconsideration of bail—and they do not consider the Division's delays or denials a change in circumstances. *See, e.g.*, *id.* ¶¶ 46–47; Im Decl. ¶ 51. Others require the Pretrial Division to have issued an outright refusal to release the person in order to review their bail—making it difficult if not impossible to get a court's attention during the Division's weeks-or-months-long, sometimes never-ending, "processing." *See, e.g*, Meiring Decl. ¶ 29; Campbell Decl. ¶ 45 ("[I]t's not fair for [my client] for pretrial not to

make a decision. If you say yes, great. If you say no, that allows me to at least file a habeas. But keeping him in limbo just keeps him in jail longer.").

### d. Named Plaintiffs

#### i. Robert Frazier

Robert Frazier is 40 years old. Frazier Decl. ¶ 2. Until he was arrested in May 2022, he worked in construction, lived with his fiancée and her four-year-old daughter (whom he loves as his own child), and took care of his elderly uncle. *Id.* ¶¶ 3–7. At a bail hearing in his case on May 31, Judge Bryon Bereano issued a pretrial referral in the form of a pretrial option on Level 4, home detention. *Id.* ¶ 9; Exhibit 34, Case Documents, Robert Frazier ("Frazier Docs."), at 3. Soon after Mr. Frazier arrived in the jail, he learned that his mother had passed away. Frazier Decl. ¶ 11. He was not released before she was cremated—against his and her wishes—and never got to pay his last respects. *Id.* ¶¶ 11–12. At a subsequent bail hearing on June 21, Judge Ada Clark-Edwards changed Mr. Frazier's pretrial referral from a pretrial option to a pretrial order. Campbell Decl. ¶ 41; Frazier Docs. at 7.

Meanwhile, Mr. Frazier has suffered a seizure in jail—after which he not only never saw a doctor, but also was moved to a cell in the medical unit with feces, bugs, and worms on the floor. Frazier Decl. ¶¶ 18–20. He broke his tooth because the Jail refused to feed him the soft food he requires. *Id.* ¶ 121. the Jail has yet to allow him to see a dentist. *Id.* All this time, Mr. Frazier has been unable to see his children or elderly uncle. *Id.* ¶ 17. Now 49 days after a judge first authorized Mr. Frazier's release, the Pretrial Division has still not released him. Exhibit 35, Prince George's County Jail Inmate Lookup ("Jail Lookup"), at 2.

### ii.   *Anibal Hernandez*

Anibal Hernandez is 29 years old. Hernandez Decl. ¶ 2. Until his arrest last month, he worked in construction and lived in Hyattsville with his wife, one-year-old daughter, parents, brother, and brother's wife. *Id.* ¶¶ 4–5. The Intake Fact Sheet prepared by the Pretrial Division states that he has no prior failures to appear in the court, and only a brief and dated criminal record. Exhibit 36, Case Documents, Anibal Hernandez, at 1. At his initial bail review on June 24, 2022, Judge LaKeecia Allen issued a pretrial referral in the form of an "order" that Mr. Hernandez be released at any level of supervision. Ruben Decl. ¶ 10. That day, Mr. Hernandez's public defender emailed Defendant Logan and provided the statement of charges and Intake Fact Sheet. *Id.* ¶ 11.

Mr. Hernandez remained in jail. Over the following weeks, his lawyer emailed Defendant Logan five more times, each time requesting an update on the status of Mr. Hernandez's release, or at least an explanation as to why he has not been released. *Id.* ¶¶ 12–16. He received none. *Id.* When Mr. Hernandez's family called the Pretrial Division, they were told that the Division did not even know why Mr. Hernandez had not been released. Hernandez Decl. ¶ 11.

On July 12, 2022, Mr. Hernandez's attorney filed a motion for a show cause order for contempt, requesting that Defendant Labbé be required to appear in court and explain why Mr. Hernandez had not been released. *See* Ruben Decl., Exhibit A. Finally, the following day, Defendant Logan wrote to Mr. Hernandez's lawyer and stated that the Division had deemed Mr. Hernandez ineligible for pretrial release because he has "no verifiable address." Ruben Decl. ¶¶ 18–19. Mr. Logan did not explain how or why the Division had come to that conclusion, what effort (if any) the Division had made to identify or verify an address for Mr. Hernandez, or whether the Division had contacted Mr. Hernandez's mother and girlfriend (whose contact information counsel had provided the same day Judge Allen ordered Mr. Hernandez released). *Id.* ¶ 20.

Thus, twenty-five days after Judge Allen issued a pretrial referral ordering his release at any level, Mr. Hernandez remains jailed. Jail Lookup at 3.

### iii. D.P.

Plaintiff D.P. is a 16-year-old boy. K.P. Decl. ¶ 6. He lives with his mom K.P.[17] and seven-year-old twin sisters, whom he sometimes babysits, in Oxon Hill, Maryland. *Id.* ¶¶ 3, 6. He is finishing the 10th grade. *Id.* ¶ 3. He likes to read and play video games. *Id.* ¶ 6. His favorite foods are pizza and chicken. *Id.* His favorite color is red. *Id.*

D.P. was arrested on Thursday, June 16, 2022. K.P. Decl. ¶ 7. Due to the Juneteenth court holiday, he did not appear before a judge until the following Tuesday, June 21. D.P. Docs. at 2. At that hearing, Judge Ada Clark-Edwards issued a pretrial referral authorizing D.P.'s release to his mother's house on home detention. Meiring Decl. ¶ 32. But the Division did not release him. At a subsequent hearing on June 28, Judge Brian Denton again issued a referral authorizing D.P.'s release. D.P. Docs. at 4. After that hearing, D.P.'s lawyer sent the Division the statement of charges, D.P's intake fact sheet—which reflected his lack of a criminal record—and a copy of his mother's lease. Meiring Decl. ¶ 33. But to this date, the Division has taken no action on his case. D.P.'s mother and attorneys have called and emailed the Pretrial Division, requesting D.P.'s release or at least an explanation as to why he has not been released. *Id.*; Hughes Decl. ¶ 8. The Division has provided neither. No one has even returned his mother's calls. K.P. Decl. ¶ 10.

At the jail, sixteen-year-old D.P. was placed in the adult medical unit on suicide watch. K.P. Decl. ¶ 11. He was allowed out of his cell for one hour per day, usually between midnight and 1 A.M. *Id.* ¶ 12. While D.P. remains in jail, he cannot complete online summer school; the longer he remains in jail, the more likely it becomes he is held back from the 11th grade. *Id.* ¶ 14.

---

[17] K.P. will be filing a Motion to Proceed Under Pseudonym in order to protect D.P.'s privacy.

His arrest has had a "domino effect" on his family; for example, K.P. has had to quit her weekend job because she relies on D.P. to babysit. *Id.* ¶ 15. She has had difficulty visiting him, as the Jail would not permit D.P.'s seven-year-old sisters to visit with her. *Id.* ¶ 17. Nearly a month since the Court authorized his release by the Pretrial Division, D.P. remains detained. Hughes Decl. ¶ 8.[18]

### iv.  *Christopher Butler*

Christopher Butler is 32 years old. Butler Decl. ¶ 2. Until he was arrested in October 2021, he worked at FedEx field, lived with his mother in Capitol Heights, Maryland, and saw his daughter every day. *Id.* ¶¶ 5–6. At a bail hearing in his case on February 18, 2022, Judge Cathy Serrette issued a pretrial referral in the form of a pretrial order. Exhibit 37, Case Documents, Christopher Butler, at 1. Judge Serrette read and acknowledged the seriousness of the charges against Mr. Butler before giving this order. Butler Decl. ¶ 13. But the Pretrial Division to this date refuses to release Mr. Butler—purportedly based on the nature of the charges against him. Heldreth Decl. ¶ 59. For the nine months that Mr. Butler has been detained at the Jail, he has not been permitted to see his now-10-year-old daughter. Butler Decl. ¶ 21. (He missed her 10th birthday. *Id.*). At a hearing in his case on June 29, the Court affirmed that it had issued Mr. Butler a pretrial referral "order," but did not effectuate his release; instead, a subsequent hearing on the matter has been set for July 25. *Id.* ¶ 15. Meanwhile, 151 days after the Court issued a pretrial referral ordering his release, Mr. Butler remains detained. Jail Lookup at 1.

### v.  *Miramba Williams*

Miramba Williams is 27 years old. Williams Decl. ¶ 2. Until his arrest last month, he was taking classes at the University of the District of Columbia, training to work in the HVAC business, and living with his father in Suitland, Maryland. *Id.* ¶¶ 4–6. Mr. Williams was arrested on June 30,

---

[18] While D.P. has been moved to a juvenile facility, he retains his pretrial referral. *Id.* ¶ 10.

2022, but due to the Fourth of July holiday, did not appear before a judge until July 5. Williams

Docs. at 1–2. Judge Gregory Powell gave Mr. Williams a pretrial referral authorizing his release.

*Id.* at 1. Yet he remained in jail, locked in his cell for 23 hours per day due to a COVID-19 case

on his unit, separated from and unable to speak to his three young children. Williams Decl. ¶¶ 10,

12. Mr. Williams's parents called the Pretrial Division to seek an explanation, yet received none.

*Id.* ¶ 11. Two weeks after the Court authorized his release, Mr. Williams remains in jail. Jail

Lookup at 4.

Defendants' policies and practices have upended the lives of thousands of people like

Plaintiffs in Prince George's County. The Prince George's County Jail population is presently

more than 900 people. Exhibit 38, Email from Andrew Cephas (July 15, 2022). Defendant Logan

has estimated that approximately one third of those—over 300 detained people—have received a

pretrial referral. Im Decl. ¶ 22. The Division itself has identified hundreds of people referred to

pretrial who were never released prior to trial. Pretrial 2021 MPIA Response at 1. A recent,

independent analysis of Prince George's County bail review hearings found that, between January

and May 2022, 27% of bail hearings resulted in a pretrial referral. Linneman Decl. ¶ 3. As of July

15, only about half of these people had been released under pretrial supervision. *Id.* ¶ 8.[19] These

people waited an average of 38 days from referral to release. *Id.* About 20 percent of them waited

more than 60 days. *Id.* When including people still detained, the average time spent waiting post-

referral was 61 days. *Id*. ¶ 10. Similarly, a May 2020 audit of the Jail population found that about

one out of every four people in the Jail had received a pretrial referral, and one in every ten people

had been referred to the Division more than three months prior. Glenn 2020 Decl. ¶ 6.

---

[19] This does not include persons released on home detention, as that data is not publicly available.
*Id.* ¶ 7.

### III.    Plaintiffs Have Suffered Irreparable Harm Due to These Constitutional Violations.

Even a single day of pretrial detention causes irreparable harm. People who are detained cannot go to work, and so may lose their employment or fall behind on their bills and lose their homes or cars. They cannot care for their children, and so may lose custody. They often cannot receive necessary medical treatment, and so may suffer illness or mental health crises.[20] They have a harder time communicating with their lawyers and preparing a defense. They are more likely to be convicted, and their sentences tend to be longer, than people who await trial outside jail.[21] As such, it's little surprise that they are also more likely to plead guilty.[22] And pretrial detention makes communities less safe, too: just two or three days of pretrial detention increases the risk of recidivism for even low-risk persons.[23] Pretrial detention thus inflicts an irreparable injury on the detained person and their community for years afterward. This injury is especially unjustifiable when no court has found it necessary.

Plaintiffs and their cases illustrate the tragic consequences of Defendants' unlawful conduct. Plaintiffs who are parents have been separated from their young children. Child plaintiff D.P. has been separated from his mother. Plaintiffs have lost houses, jobs, and loved ones. They have endured horrifying conditions—locked in jail cells for 23 hours per day, with feces, bugs, and worms—and not received necessary medical attention. Their prolonged detention has had a

---

[20] *See* Exhibit 39, Jail Inspection Reports (Sept. – Dec. 2021), at 22–23 (finding rampant disregard for requests for medical attention and "an absolute lack of any mental health care").
[21] *See* Christopher T. Lowenkamp et al., Laura & John Arnold Found., *Investigating the Impact of Pretrial Detention on Sentencing Outcomes* 12, 14 (2013), https://bit.ly/3PjDgbO; Megan T. Stevenson, *Distortion of Justice: How the Inability to Pay Bail Affects Case Outcomes*, 34 J.L. ECON. & ORG. 511, 535–36 (2018).
[22] *See* Arpit Gupta et al., *The Heavy Costs of High Bail: Evidence from Judge Randomization*, 45 J. LEGAL. STUD. 471, 487–88 (2016).
[23] *See* Timothy R. Schnacke, Nat'l Inst. of Corr., *Fundamentals of Bail: A Resource Guide for Pretrial Practitioners and a Framework for American Pretrial Reform* 15–16 (2014), https://goo.gl/jr7sMg.

domino effect on their loved ones, too, many of whom rely on Plaintiffs for material and emotional support. All this even though a judge has authorized—and in some cases, ordered—Plaintiffs' release. Due process does not permit this.

## ARGUMENT

A preliminary injunction should issue where the movants establish: (1) a likelihood of success on the merits; (2) irreparable harm absent an injunction; (3) a balance of harms in their favor; and (4) that the injunction would not be adverse to the public interest. *See Roe v. Dep't of Def.*, 947 F.3d 207, 219 (4th Cir. 2020), as amended (Jan. 14, 2020). Each requirement is easily satisfied in this case.

## I.   Plaintiffs Are Likely to Succeed on the Merits of Their Due Process Claims.

Plaintiffs are likely to prevail on each of their claims for relief against the County Defendants. First, Defendants violate Plaintiffs' substantive due process rights by detaining Plaintiffs without a judicial finding that detention is necessary, and that no alternatives to detention will reasonably protect the community's safety and guard against the risk of flight. Second, Defendants violate Plaintiffs' procedural due process rights because the process that ultimately results in Plaintiffs' detention— a referral to the Pretrial Division for its review and decision—lacks crucial procedural safeguards, including an adversarial hearing in front of a neutral decision-maker, the ability to present evidence and witnesses, application of a clear-and-convincing-evidence standard, and findings of fact and a statement of reasons for a decision to detain.

### A.   Defendants Have Violated Plaintiffs' Substantive Due Process Rights Under the U.S. Constitution and Maryland Declaration of Rights (Counts 1 & 3)

A person's due process "interest in liberty" is "fundamental." *United States v. Salerno*, 481 U.S. 739, 750 (1987). Thus, government may not infringe upon that interest, and detain a person pretrial "*at all*, no matter what process is provided, unless the infringement is narrowly tailored to

serve a compelling state interest." *Reno v. Flores*, 507 U.S. 292, 302 (1993) (citing, *inter alia*, *Salerno*, 481 U.S. at 746). In particular, a person may not be detained pretrial unless a court finds, by a standard of clear and convincing evidence, that no alternatives to detention—including release on any conditions—will reasonably protect the community's safety and ensure that the person will return to court. *Salerno*, 481 U.S. at 749.

State and federal courts across the country, including in Maryland, have repeatedly articulated these principles. *See, e.g.*, *Wheeler v. State*, 864 A.2d 1058, 1065 (Md. Ct. Spec. App. 2005) ("[Pretrial detention] may not be ordered unless the judicial officer is persuaded by clear and convincing evidence that no condition or combination of conditions of pretrial release can reasonably protect against the danger that the defendant poses to the safety of an identifiable person or to the community at large."); *Lopez-Valenzuela v. Arpaio*, 770 F.3d 772, 779 (9th Cir. 2014); *Torres v. Collins*, No. 2:20-CV-00026, 2020 WL 7706883, at *8 (E.D. Tenn. Nov. 30, 2020); *ODonnell v. Harris Cnty.*, 251 F. Supp. 3d 1052, 1156–57 (S.D. Tex. 2017), *aff'd as modified*, 882 F.3d 528 (5th Cir. 2018); *Reem v. Hennessy*, No. 17-CV-6628, 2017 WL 6765247, at *1 (N.D. Cal. Nov. 29, 2017); *State v. Mascareno-Haidle*, No. S-1-SC-38743, 2022 WL 2351632, at *6 (N.M. June 30, 2022); *In re Humphrey*, 482 P.3d 1008, 1013 (Cal. 2021); *Valdez-Jimenez v. Eighth Jud. Dist. Ct. in & for Cnty. of Clark*, 460 P.3d 976, 985 (Nev. 2020); *Brangan v. Commonwealth*, 80 N.E.3d 949, 962 (Mass. 2017). As has the Attorney General of Maryland. *See* Exhibit 40, Letter from Brian E. Frosh, Att'y Gen., State of Maryland (Oct. 25, 2016) ("Maryland law permits unconditional pretrial detention only where no conditions of release will reasonably protect the public or ensure the defendant's appearance at trial[.]").

Defendants' policies turn this basic due process requirement on its head. When a judge refers a detained person to the Pretrial Division for release, that judge—the only person

empowered to make pretrial release determinations under Maryland law[24]—has necessarily found that release under the supervision of the Pretrial Division is permissible, and thus that pretrial detention is not necessary. Indeed, the referral empowers the Pretrial Division to release the person without any further court process or involvement of the judge.[25]

As such, the Pretrial Division causes unlawful detention in two ways. First, people who are referred to the Division are regularly detained for weeks or months while the Division "processes" their case—a period of detention *after* a judicial officer has necessarily found pretrial release to be permissible. Second, a significant portion of people referred to the Division are *never* released awaiting trial—again, without any proper finding that their ongoing detention is necessary.

Adding insult to injury, the grounds on which the Division bases its refusals to release are often arbitrary, and/or unrelated to community safety or flight risk. The Division regularly refuses to release people because they live in Washington, D.C. or Montgomery County (as opposed to Prince George's County), are unhoused, or because the complaining witness cannot be reached.

---

[24] Maryland Rule of Criminal Causes 4-216.1 prohibits pretrial detention unless a "judicial officer" finds a "reasonable likelihood" that, if released, the arrested individual will not re-appear in court, or will be a danger to the community. Md. Rule 4-216.1(b)(1)(B). The Rule further requires "individualized consideration" of the "least onerous condition or combination of conditions … that will reasonably ensure (A) the appearance of the defendant, and (B) the safety of each alleged victim, other persons, and the community[.]" Md. Rule 4-216.1(b)(2)–(3).

[25] Despite this referral process, judges, when making a pretrial referral, will sometimes confusingly pair it with a boilerplate recitation that they have found by clear and convincing evidence that no conditions of release will serve to protect the community and ensure the person will return to court (although they typically cite no evidence—indeed, they typically *hear* little to no evidence in the first place—and do not explain the basis for this finding). This introduces an inherent contradiction: On the one hand, the judge recites that no conditions of release will suffice to protect the community or ensure return to court. On the other, the judge has authorized the Pretrial Division to release the person on whatever conditions it deems appropriate. If judges intend to detain people by referring them to the Division, then they must comply with each of the substantive standards and procedural protections required by due process. A formulaic recitation of the legal standard does not suffice. *See Schultz v. Alabama*, 330 F. Supp. 3d 1344, 1371–72 (N.D. Ala. 2018). Accordingly, granting a pretrial referral, whether paired with a purported detention finding or not, necessarily constitutes a determination that pretrial incarceration is *not* necessary.

*See, e.g.*, Im Decl. ¶¶ 32–39; Heldreth Dec. ¶¶ 31–34.[26] In addition, the Division often refuses to release people due to the nature of the charges against them, their criminal history, or the existence of another open case—all information that is listed on the Intake Fact Sheet, and thus available to the judge at the time they referred to pretrial. *See, e.g.*, Campbell Decl. ¶ 21; Meiring Decl. ¶ 24.[27]

For example, Robert Frazier remains incarcerated 49 days after he was referred for pretrial release. Campbell Decl. ¶ 38. Mr. Frazier has been given inconsistent information about why he remains detained and whether an individualized assessment of whether he can be released has even been conducted. Frazier Decl. ¶ 16. A correctional officer informed him that his ongoing detention is related to the Jail's budget, not community safety or flight risk. *Id.* Meanwhile his attorney, after emailing the Division six times, has been informed that the Division is concerned about a traffic warrant of which, in Defendant Logan's words, the court was "fully aware" when it authorized Mr. Frazier's release. Campbell Decl. ¶ 48; Ex. A to Campbell Decl. Mr. Frazier appears to be jailed simply because the Division is arbitrarily substituting its judgment for the court's.

Anibal Hernandez, meanwhile, was referred to pretrial via an order nearly a month ago. He remains in jail. D.P. and Miramba Williams were authorized for release weeks ago. The Pretrial Division has refused to release them, or even to explain to them, their families, or their attorneys why it is refusing to release them. No court has found that Mr. Hernandez, D.P., or Mr. Williams's detention is necessary for community safety or to ensure their future appearance in court. In fact, in each case, the judge has imposed specific conditions of release—for example, home detention and stay-away orders. Ruben Decl. ¶ 10; D.P. Docs. at 6; Williams Docs. at 3. Each is thus detained in violation of their substantive due process rights.

---

[26] *See also* Hernandez Decl. ¶ 10; Meiring Decl. ¶ 19; Exhibit 41, Declaration of Allie Horwitz ("Horwitz Decl."), ¶¶ 8–10; Heldreth Dec. ¶¶ 31–34; Ruben Decl. ¶ 10; Campbell Decl. ¶¶ 15–16.
[27] *See also* Butler Decl. ¶ 13; Im Decl. ¶ 41.

As for Christopher Butler, even though Judge Cathy Serrette ordered his release 151 days ago, the Pretrial Division has informed Mr. Butler's attorney that it will not release him due to the "nature of the offense" with which he is charged. Heldreth Decl. ¶¶ 57, 59. But at Mr. Butler's bail review hearing, Judge Serrette specifically acknowledged the seriousness of his charges before making an individualized assessment that release on home confinement would suffice. Butler Decl. ¶ 13. As such, Judge Serrette did not find that Mr. Butler is too dangerous or too great a flight risk to be released. Quite the opposite, she found that pretrial detention was unnecessary. Yet instead of following this order, the Pretrial Division has spent five months substituting its own judgment for Judge Serrette's. When Judge Serrette was informed of Mr. Butler's continued detention, she set a hearing for nearly a month out, *id.* ¶ 15—prolonging Mr. Butler's unjustified detention.

Defendants' policies and practices cause Plaintiffs to experience continued and extended pretrial detention without a finding by a judicial officer that such detention is necessary. Accordingly, Plaintiffs are likely to prevail on their substantive due process claims under the Fourteenth Amendment as well as pursuant to Article 24 of the Maryland Declaration of Rights.[28]

## B. Defendants Have Violated Plaintiffs' Procedural Due Process Rights Under the U.S. and Maryland Constitutions (Counts 2 & 4)

Individuals must receive "'strong procedural protections'" before being deprived of their liberty. *Wheeler*, 864 A.2d at 1062 (quoting *Zadvydas v. Davis*, 533 U.S. 678, 690–91 (2001)); *see also, e.g.*, *Vitek v. Jones*, 445 U.S. 480, 495–96 (1980) (persons facing an "immediate deprivation of liberty interests they are currently enjoying" that include an inherent risk of mistake are entitled

---

[28] The "liberty interests available" under Article 24 are at least co-extensive with, if not broader than, the "liberty interests recognized as being enshrined within the Due Process Clause of the Fourteenth Amendment." *Koshko v. Haining*, 921 A.2d 171, 194 & n.22 (Md. 2007); *see also Smith v. Bortner*, 998 A.2d 369, 380–81 (Md. Ct. Spec. App. 2010); *Kirsch v. Prince George's Cnty.*, 626 A.2d 372 (Md.), *cert. denied,* 510 U.S. 1011 (1993).

to protections similar to the rigorous procedures in *Morrissey v. Brewer*, 408 U.S. 471 (1972)). A procedural due process claim proceeds in two steps. First, a court asks: has the person claiming a constitutional violation asserted a protected liberty or property interest with which the state has interfered? *See Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989). As discussed above, Plaintiffs' interest in freedom from incarceration is "fundamental," *Salerno*, 481 U.S. at 750, and they have been deprived of that interest by being detained indefinitely following a pretrial referral.

At the second step, the court considers: were the procedures provided constitutionally sufficient? *Thompson*, 490 U.S. at 460. "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). To determine what constitutes sufficiently "meaningful" procedures in a given circumstance, a court must weigh: (1) "the private interest that will be affected;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Id.* at 335.

With regard to the first *Mathews* factor, Plaintiffs are incarcerated in violation of their fundamental liberty interest in freedom from detention, for which the collateral consequences are grave. *See* Section II, *infra*. Moreover, Defendants detain people referred to the Pretrial Division for weeks or months on end, sometimes until their case is resolved. *See Mackey v. Montrym*, 443 U.S. 1, 12 (1979) ("The duration of any potentially wrongful deprivation of a property interest is

an important factor in assessing the impact of official action on the private interest involved.").[29] The seriousness of the private interests at stake here demands rigorous procedures. *See Zadvydas*, 533 U.S. at 690–91 ("[W]e have upheld preventive detention based on dangerousness only when limited to specially dangerous individuals and subject to strong procedural protections."); *Turner v. Rogers*, 564 U.S. 431, 445 (2011) (discussing the importance of robust procedural protections to ensure "accurate decisionmaking" before a person is jailed). These procedures include a "full-blown adversary hearing" in front of a "neutral decisionmaker," consideration of alternative conditions of release, application of a clear-and-convincing-evidence standard of proof, and recorded "findings of fact" and "statement[s] of reasons for a decision to detain." *Salerno*, 481 U.S. at 750–52 (applying balancing test from *Mathews v. Eldridge* to pretrial detention); *see also Morrisey*, 408 U.S. at 488–89 (requiring the same procedures at parole revocation hearings where, unlike people detained pretrial, those whose liberty is at stake are not presumed innocent). Courts around the country have repeatedly affirmed that procedural due process requires these minimal protections. *See, e.g.*, *ODonnell v. Harris Cnty.*, 892 F.3d 147, 159–61 (5th Cir. 2018) ("*ODonnell II*"), *vacated on other grounds by Daves v. Dallas Cnty.*, 22 F.4th 522 (5th Cir. 2022); *Torres*, 2020 WL 7706883, at *11–13; *McNeil v. Cmty. Prob. Servs., LLC*, No. 1:18-CV-00033, 2019 WL 633012, at *15 (M.D. Tenn. Feb. 14, 2019), *aff'd*, 945 F.3d 991 (6th Cir. 2019); *Caliste v. Cantrell*, 329 F. Supp. 3d 296, 314–15 (E.D. La. 2018), *aff'd*, 937 F.3d 525 (5th Cir. 2019); *Schultz v. Alabama*, 330 F. Supp. 3d 1344, 1372 (N.D. Ala. 2018); *Valdez-Jimenez*, 460 P.3d at 987.

---

[29] Plaintiffs do not dispute that the Pretrial Division should be afforded a reasonable period of time after the bail review hearing to effectuate the referred person's release. But courts around the country have found that period of time to be measurable in hours or days—not weeks or months. *See, e.g.*, *Walker v. City of Calhoun*, 901 F.3d 1245 (11th Cir. 2018) (48 hours); *ODonnell v. Harris Cnty.*, 892 F.3d 147 (5th Cir. 2018) (48 hours).

As to the second *Mathews* factor, the risk that Defendants will erroneously deprive Plaintiffs of their liberty is substantial. Although Defendants offer a bail review hearing following arrest,[30] those given a pretrial referral are then subject to a secondary process that determines whether they will be released or detained absent *any* of the procedural protections due process requires. First, the Division staff who make decisions are not judicial officers, and the Division itself cannot be deemed a "neutral decisionmaker"—it sits within the Department of Corrections, the same agency that incarcerates people pretrial. Second, the Division operates behind closed doors, with no affirmative notice to the detained person or their counsel, only sporadic responses to defense counsel's outreach, and no involvement of a judge or judicial official. The detained person receives no hearing in front of the Division, let alone an adversarial hearing, and has no opportunity to "confront" the "evidence" used to detain them.[31] Third, instead of individualized consideration of conditions of release, the Pretrial Division invents and applies one-size-fits-all eligibility and supervision criteria, such as having a landline telephone or residing in Prince George's County. Fourth, The Division does not consider whether alternate conditions, such as pretrial check-ins by cell phone or providing an address in the District of Columbia, would sufficiently address the government's interests in some cases. Fifth, it is unclear what, if any, standard of evidence the Division applies in its opaque, internal decision-making process.

Finally, the Division's ultimate decision whether or not someone remains detained is not justified by "findings of fact" or a "statement of reasons." Indeed, the only record of the Division's

---

[30] The bail review hearing itself contains a number of problematic procedural deficiencies, principal among them that the burden is shifted to the arrested person to show why he or she should not be detained. *See supra* at 7–9 (discussing bail review hearings). As such, that hearing does not suffice to meet Defendants' due process obligations.

[31] This is particularly important because the information collected and relied on by the Pretrial Division is often inaccurate. *See* Im Decl. ¶ 17–18; Hughes Decl. ¶ 7; Meiring Decl. ¶¶ 15–17.

decision—when one exists at all—is a pre-set form on which one or more of a pre-set menu of "reasons" is checked. Not infrequently, that reason is "call us if you want an explanation." *See, e.g.*, Davis Docs. at 5. The form does not state how the reason given is related to community safety or flight risk, what (if any) alternate conditions were considered and why they were found to be insufficient, what underlying findings of fact motivated the decision, what standard of evidence was used, or anything else that would allow the detained person to meaningfully challenge the Division's determination. *See Schultz*, 330 F. Supp. 3d at 1372 ("Checking boxes for factors 'considered' is just as inadequate as jotting abbreviated factors such as 'safety' or 'criminal history.'"). Nor is the Division's decision subject to appeal or judicial review of any kind.

As such, Defendants' current procedures result in hundreds of people remaining detained for weeks or months after a court has already authorized their release.[32] In 2022, people referred to the Pretrial Division sit in jail for another 61 days post-referral, on average. *See* Linneman Decl. ¶ 10. Many people remain detained *months* after a court has authorized their release. *See, e.g.*, *id.* ¶¶ 8-10; Butler Decl. ¶ 12.[33] Only about half people referred to the Pretrial Division between January and May 2022 had been released as of July 15. Linneman Decl. ¶ 8. The rest remain detained through the resolution of their case, often not because of any danger to the community or risk of flight, but simply because they failed to meet the Division's own arbitrary criteria.

As for the final *Mathews* factor, the government has no interest in prolonged pretrial detention for reasons unrelated to public safety or risk of flight.[34] To the contrary, Defendants'

---

[32] *See, e.g.*, Campbell Decl. ¶ 51; Meiring Decl. ¶¶ 30–32; Ruben Decl. ¶ 7; Im Decl. ¶ 41.

[33] *See, e.g.*, Meiring Decl. ¶¶ 30–32; Ruben Decl. ¶ 7; Im Decl. ¶ 41

[34] Indeed, much of the process Plaintiffs seek is already required by Maryland law. *See* Md. Rule 4-216.1(b)(2)–(3) (requiring a "judicial officer" to make an "individualized" determination as to the "least onerous condition or combination of conditions . . . that will reasonably ensure (A) the appearance of the defendant, and (B) the safety of each alleged victim, other persons, and the community").

interest is that only those who merit pretrial detention actually be detained after arrest.  This is necessarily not the case where a court has already authorized release through pretrial referral.

Named Plaintiffs' cases are illustrative of the procedural deficiencies in the Division's policies. D.P. and Miramba Williams have been provided no process at all, let alone "meaningful" process. A judge authorized their release weeks ago. D.P. Docs. at 2; Williams Docs. at 1. To date, neither of them have spoken to anyone at the Pretrial Division. Hughes Decl. ¶ 8; Williams Decl. ¶¶ 9–11. Their family and attorneys, too, have been met with silence. Hughes Decl. ¶ 8; Williams Decl. ¶ 11. If the Pretrial Division is continuing to detain them for any particular reason, Plaintiffs do not know it, and thus cannot challenge it. Neither of them know if or when they will be released. In fact, neither of them even know when they will know if or when they will be released.

The limited and inconsistent information which Robert Frazier and Christopher Butler have received following their pretrial referrals further demonstrates this utter lack of due process. Mr. Frazier's attorney emailed Defendant Logan no fewer than six times and receiving no substantive response. Campbell Decl., Ex. A. He was finally informed that the Division is hesitant to release Mr. Frazier because of a Virginia traffic detainer of which, in Defendant Logan's words, the court was "fully aware" when it referred Mr. Frazier for release. Campbell Decl. ¶ 48. Mr. Frazier, meanwhile, has received conflicting information from correctional officers. Frazier Decl. ¶ 16 ("One guard told me that the pretrial services agency is generally refusing to release people to make up revenue from the COVID jail releases. Another guard said that the head of the pretrial services agency for some reason does not want me, in particular, released."). The Division's non-answers are "not fair" to Mr. Frazier, who is unable to petition the court for relief while his pretrial referral remains unprocessed. Campbell Decl. ¶ 45.

As for Mr. Butler, the Pretrial Division has informed his attorney it will not release him due to the nature of the offense with which he is charged. Heldreth Decl. ¶ 59. But the Division also told his attorney that it does not categorically exclude people charged with certain offenses from pretrial release. *Id.* ¶ 60. This begs the question: Why is the Division refusing to release Mr. Butler on the basis of information (*i.e.*, the charges against him) that the Court had in front of it when it ordered him released? Or is the Division simply replacing the Court's judgment with its own? These questions remain unanswered, because the Division has not provided Mr. Butler with findings of fact or a statement of reasons for its decision, an opportunity to rebut the evidence it considered or to offer his own evidence, or otherwise to provide constitutionally sufficient process.

Mr. Hernandez too remains jailed as the result of a "process" in which he had no opportunity to participate. After he was referred for pretrial release via an order, his attorney emailed Defendant Logan six times over the following 19 days. Ruben Decl., Ex. A. He received no substantive responses. *Id.* Finally, after filing a motion to show cause, he received a one-sentence answer: the Pretrial Division could not "verify" can address for Mr. Hernandez. Ruben Decl. ¶ 19. But Mr. Hernandez has had no opportunity to participate in the verification "process." His attorney does not know what efforts (if any) the Division made to verify an address, or whether the Division ever contacted Mr. Hernandez's family. *Id.* ¶ 20. As the repeated, unanswered emails evince, the Division certainly did not contact his attorney.

Plaintiffs do not question that the Pretrial Division may properly play *some* role in determining and implementing appropriate conditions of release. *See* Marie VanNostrand et al., *Our Journey Toward Pretrial Justice,* 71 FED. PROBATION, No. 2, 2007, at 20 (discussing pretrial services agencies "as providers of the information necessary for judicial officers to make the most appropriate bail decision" and to "provide monitoring and supervision of defendants

released with conditions pending trial"). But Defendants' current process goes well beyond the Division providing information to judges and supervision services. Instead, their process shifts the decision about whether an arrested person will be released from an open hearing in the courtroom of a state judge, to behind closed doors in the offices of Department of Corrections officials. This does not satisfy the requirements of due process.

Plaintiffs are likely to prevail on their procedural due process claims under the Fourteenth Amendment as well as pursuant to Article 24 of the Maryland Declaration of Rights.[35]

## II.   Without Injunctive Relief, Plaintiffs Will Be Irreparably Harmed.

"[T]he loss of constitutional freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Leaders of a Beautiful Struggle v. Baltimore Police Dep't*, 2 F.4th 330, 346 (4th Cir. 2021) (internal quotation marks and citation omitted); *see also Elrod v. Burns*, 427 U.S. 347, 373 (1976) (plurality opinion); *Ross v. Meese*, 818 F.2d 1132, 1135 (4th Cir. 1987). Currently detained Plaintiffs referred to the Pretrial Division are enduring unconstitutional detention and irreparable harm; where "continued detention is indeed unconstitutional, every subsequent day of detention without remedy visits harm anew." *Jarpa v. Mumford*, 211 F. Supp. 3d 706, 711 (D. Md. 2016). Past experience shows that they are likely to remain detained for weeks, or even months. Thus, the fact that Plaintiffs' constitutional rights are violated is sufficient to show irreparable harm.

Even if the constitutional violations alone were not sufficient, "deprivations of physical liberty," of the sort plaintiffs here have experienced, "are the sort of actual and imminent injuries that constitute irreparable harm." *Aracely, R. v. Nielsen*, 319 F. Supp. 3d 110, 155 (D.D.C. 2018)

---

[35] *See supra* note 28 (explaining that Article 24 due process rights are at least co-extensive with, if not broader than, Fourteenth Amendment due process rights).

(collecting cases). And "the harm from detention pursuant to an unlawful policy cannot be remediated after the fact." *R.I.L-R v. Johnson*, 80 F. Supp. 3d 164, 191 (D.D.C. 2015). This is especially true as Plaintiffs have not been tried—let alone convicted—and have not yet "surrendered" the "liberties and privileges enjoyed by other citizens." *Desper v. Clarke*, 1 F.4th 236, 242 (4th Cir. 2021)*, cert. denied*, 142 S. Ct. 811 (2022). As the Supreme Court explained:

> [Pretrial detention] often means loss of a job; it disrupts family life; and it enforces idleness. Most jails offer little or no recreational or rehabilitative programs. The time spent in jail is simply dead time. Moreover, if a defendant is locked up, he is hindered in his ability to gather evidence, contact witnesses, or otherwise prepare his defense. Imposing those consequences on anyone who has not yet been convicted is serious. It is especially unfortunate to impose them on those persons who are ultimately found to be innocent. Finally, even if an accused is not incarcerated prior to trial, he is still disadvantaged by restraints on his liberty and by living under a cloud of anxiety, suspicion, and often hostility.

*Barker v. Wingo*, 407 U.S. 514, 532-33 (1972); *see also Pugh v. Rainwater*, 572 F.2d 1053, 1056–57 (5th Cir. 1978); *ODonnell II*, 892 F.3d at 155, 162–63; *Schultz*, 330 F. Supp. 3d at 1375 ("[I]ndividuals who, by law, are presumed innocent suffer irreparable injury when they are detained."); *United States v. Bogle*, 855 F.2d 707, 710–11 (11th Cir. 1988) ("[U]nnecessary deprivation of liberty clearly constitutes irreparable harm."); *Matacua v. Frank*, 308 F. Supp. 3d 1019, 1025 (D. Minn. 2018) ("[L]oss of liberty . . . is perhaps the best example of irreparable harm.").

The harms of pretrial incarceration are well-recognized. A person who is detained pretrial is 13 percent more likely to be convicted and 25 percent more likely to plead guilty than an otherwise similarly situated person who is not detained.[36] Those detained pretrial are more likely

---

[36] *See* Stevenson, *supra* note 21, at 18; *see also* Gupta et al., *supra* note 22, at 487 (finding a 12 percent increase in the likelihood of conviction using the same data).

to receive longer jail sentences.[37] And just two or three days in pretrial detention increases the likelihood that a person will commit a crime in the future, and increases the future risk level of even low-risk persons.[38] Moreover, even short periods of pretrial incarceration at the jail subject Plaintiffs to a high likelihood of assault, including sexual assault; exposure to communicable diseases; an increase in mental illness due to extreme stress and restricted access to necessary medication; inability to exercise; deprivation of sunlight and fresh air; and forcible separation from children and family (the Prince George's County Jail has not allowed children to visit for more than two years, Butler Decl. ¶ 21).[39] Studies indicate that Plaintiffs will suffer subsequent long-term damage as a result of their incarceration as well, in the form of loss of employment and income; loss of housing or utilities due to missed payments; and loss of physical and/or legal custody of children. *Id.* Thus, pretrial detention makes those detained, as well as their communities, less safe.

Plaintiffs and their cases illustrate the tragic consequences of Defendants' unlawful conduct. Sixteen-year-old D.P. has been separated from mother and seven-year-old sisters for more than a month. K.P. Decl. ¶¶ 3, 7. He will likely be held back in school—and that likelihood increases, the longer he is detained. *Id.* ¶ 14. Mr. Frazier never got to pay his respects after his

---

[37] *See* Paul Heaton et al., *The Downstream Consequences of Misdemeanor Pretrial Detention*, 69 STAN. L. REV. 711, 786–87 (2017).

[38] *See* Schnacke, *supra* note 23, at 15–16; Christopher T. Lowenkamp et al., Laura & John Arnold Found., *The Hidden Costs of Pretrial Detention* 3 (2013), https://bit.ly/2u0Lj5d (studying 153,407 people and finding that low-risk arrested persons detained 2–3 days were almost 40 percent more likely to commit new crimes before trial than persons held no more than 24 hours); Heaton et al., *supra* note 37, at 768 ("While pretrial detention clearly exerts a protective effect in the short run, for misdemeanor defendants it may ultimately service to compromise public safety," finding that in a representative group of 10,000 misdemeanor offenders, pretrial detention would cause an additional 600 misdemeanors and 400 felonies compared to if the same group were released).

[39] *See* Will Dobbie et al., *The Effects of Pretrial Detention on Conviction, Future Crime, and Employment: Evidence from Randomly Assigned Judges*, 108 AM. ECON. REV. 201 (2018), https://www.nyapsa.org/assets/files/0093854817753018.pdf.

mother died. Frazier Decl. ¶¶ 11–12. D.P. and Mr. Williams were locked in their cells for 23 hours per day. K.P. Decl. ¶ 12; Williams Decl. ¶ 10. Mr. Frazier has not seen a dentist since breaking a tooth in jail, nor has he seen a doctor since suffering a seizure in jail—instead, he had to spend the first night after his seizure sleeping on one of the medical unit's soaking wet, bug- and worm-infested cots with feces on the floor. Frazier Decl. ¶¶ 19–21. Instead, a guard called him a "piece of shit." Campbell Decl. ¶ 52. Mr. Frazier, Mr. Hernandez, Mr. Butler, and Mr. Williams have been unable to see, and in some cases even speak to, their young children. Frazier Decl. ¶ 17; Hernandez Decl. ¶¶ 4, 12; Butler Decl. ¶ 21; Williams Decl. ¶ 12. Plaintiffs' detention has injured their families as well; for example, D.P.'s mom, who relies on him to babysit his little sisters, has had to quit her second job, K.P. Decl. ¶ 15, and Mr. Frazier's uncle, who relies on him for elder care, has gone without Mr. Frazier's assistance. Frazier Decl. ¶¶ 5, 7, 17. All this even though a judge has authorized—and in some cases, ordered—Plaintiffs' release.

Plaintiffs Donnell Davis, Leslie Sharp, Elmer Laguan-Salinas, and Adrienne Worthington have been released from the Jail, and thus do not seek a preliminary injunction or to represent the Equitable Class. But each was detained for days, weeks, or months after a judge referred them to pretrial. The harms they suffered during these weeks of illegal detention are illustrative.

Mr. Sharp missed his best friend's funeral and was separated from his bedridden grandmother and young children. Exhibit 42, Declaration of Leslie Sharp ¶¶ 25–28. He lost a job that would have significantly increased his earnings and his ability to support his family. *Id.* ¶ 23. Mr. Davis was given food to which he was allergic at the Jail, fell ill, and was unable to receive medical attention. Exhibit 43, Declaration of Donnell Davis ¶¶ 17–18. He almost pled guilty just to get out of jail. *Id.* ¶ 22. Mr. Laguan-Salinas lost his house and was separated from his baby daughter for three months. Exhibit 44, Declaration of Elmer Laguan-Salinas ¶¶ 14, 19. Ms.

Worthington has become homeless as a result of her arrest and prolonged detention. Exhibit 45, Declaration of Adrienne Worthington ¶ 38. At the Jail, she was given the wrong medication, which resulted in suicidal thoughts. *Id.* ¶ 33. Instead of spending Christmas and New Year's with her children and grandchildren, she spent the holidays in jail with COVID-19. *Id.* ¶¶ 31–32.

The hundreds of putative members of the Equitable Class are currently experiencing harms similar to those described above. These harms necessitate a preliminary injunction.

## III.   The Balance of Equities and Public Interest Favor Plaintiffs.

An injunction halting the ongoing unconstitutional detention of hundreds of people outweighs any harm to Defendants and is in the public interest. "[A] state is in no way harmed by issuance of a preliminary injunction which prevents the state from enforcing restrictions likely to be found unconstitutional. If anything, the system is improved by such an injunction." *Centro Tepeyac v. Montgomery*, 722 F.3d 184, 191 (4th Cir. 2013) ("[U]pholding constitutional rights surely serves the public interest." (citations omitted)); *Giovani Carandola, Ltd. v. Bason*, 303 F.3d 507, 521 (4th Cir. 2002) (same); *see also*, *e.g.*, *Hensley v. Eckerhart*, 461 U.S. 424, 443 n.2 (1983) (Brennan, J., concurring in part, dissenting in part) ("Civil rights plaintiffs with meritorious claims 'appear before the court cloaked in a mantle of public interest.'" (quotation omitted)).

The serious harms Plaintiffs continue to experience as a result of unconstitutional pretrial detention far exceed any harm Defendants would suffer if the Court issues an injunction. Defendants' detention of hundreds of people who have been authorized for release imposes an unnecessary burden on jail administration and state coffers. *See Jones v. City of Clanton*, No. 2:15-CV-34, 2015 WL 5387219, at *3 (M.D. Ala. Sept. 14, 2015). Detaining only those people for whom it is necessary will more likely benefit Defendants than cause them harm. Furthermore, to the extent the delays in the Pretrial Division's processing are a function of the resources consumed implementing its own arbitrary criteria unrelated to community safety or flight risk, it could

address its own administrative burdens by simply complying with the judges' directives and the Constitution. Thus, the balance of harms weighs substantially in favor of the Plaintiffs.

Public interest considerations also favor the proposed injunction because enjoining a government official's unconstitutional conduct does not infringe on any legitimate public interest. *Centro Tepeyac*, 722 F.3d at 191. Rather, "it is always in the public interest to prevent the violation of a party's constitutional rights." *G & V Lounge v. Mich. Liquor Control Comm'n*, 23 F.3d 1071, 1079 (6th Cir. 1994). Indeed, pretrial detention has significant negative consequences for the public. Even brief periods of pretrial detention cause harms that affect the broader community, including disrupted employment and fractured relationships. *ODonnell II*, 892 F.3d at 155. Empirical studies have found that detention leads to worse outcomes at trial, increases poverty, harms family members, and causes recidivism. *See* Section II, *supra*. Meanwhile, unnecessarily detaining people wastes public resources that could be spent addressing other needs. *Jones*, 2015 WL 5387219, at *3. Accordingly, the public interest would be served by the proposed injunction.

## IV.     Plaintiffs Should Not Be Required to Post Security to Obtain Preliminary Relief.

Plaintiffs respectfully request that they not be required to give security in order to obtain a preliminary injunction. *Cf.* Fed. R. Civ. P. 65(c). In determining whether and at what amount to set a bond, the district court "should be guided by the purpose underlying Rule 65(c), which is to provide a mechanism for reimbursing an enjoined party for harm it suffers as a result of an improvidently issued injunction or restraining order." *Hoechst Diafoil Co. v. Nan Ya Plastics Corp.*, 174 F.3d 411, 421 n.3 (4th Cir. 1999). "In some circumstances, a nominal bond may suffice." *Id.* (citing *Int'l Controls Corp. v. Vesco*, 490 F.2d 1334 (2d Cir. 1974) (upholding district court's $0 bond absent evidence of likelihood of harm)).

This is one of those circumstances. A preliminary injunction commanding the County Defendants to comply with the federal and state Constitutions will hardly harm them. Compliance may even provide some relief to Defendants' personnel and financial resources. *See supra* section III. On the other hand, requiring Plaintiffs to post security will pose a "significant financial hardship." *Coreas v. Bounds*, 458 F. Supp. 3d 352, 362 (D. Md. 2020) (granting preliminary injunction and waiving security requirement for indigent, incarcerated plaintiff). Plaintiffs are, by definition, incarcerated. As a result of the illegal incarceration that they challenge, Plaintiffs have suffered significant financial hardship. *See, e.g.*, Worthington Decl. ¶¶ 36–37. Plaintiffs respectfully request that this Court exercise its discretion and waive the security requirement. *Pashby v. Delia*, 709 F.3d 307, 332 (4th Cir. 2013), *overruled on other grounds*, *Stinnie v. Holcomb*, 37 F.4th 977, 981–92 (4th Cir. 2022).

## CONCLUSION

Defendants' policies and practices result in the ongoing, unconstitutional detention of hundreds of people. Without immediate relief from this Court, these people, and more people who are arrested every day, will continue to suffer irreparable harm. This Court should grant an injunction requiring the County Defendants to immediately adopt constitutionally compliant pretrial policies and practices. *See* Proposed Order.

Respectfully submitted this 19th day of July, 2022.

/s/ Ellora Thadaney Israni
Ellora Thadaney Israni*
Ryan Downer*
Jeremy D. Cutting*
CIVIL RIGHTS CORPS
1601 Connecticut Ave. NW, Suite 800
Washington, D.C. 20009
(202) 894-6132
ellora@civilrightscorps.org


/s/ Seth Wayne
Seth Wayne*
INSTITUTE FOR CONSTITUTIONAL
ADVOCACY AND PROTECTION
GEORGETOWN UNIVERSITY LAW CENTER
600 New Jersey Ave. NW
Washington, D.C. 20001
(202) 662-9042
sw1098@georgetown.edu




* *pro hac vice* application forthcoming
† entry of appearance forthcoming

*Counsel for Plaintiffs*

/s/ Edward Williams
Edward Williams (D. Md. Bar 20944)†
Matthew Martens*
Thomas Bredar (D. Md. Bar 21635)†
Ellen Connell*
Donna Farag*
Ayana Williams*
Sonika Data*
Yoseph Desta*
Britany Riley-Swanbeck (D. Md. Bar 21843)†
WILMER CUTLER PICKERING
  HALE AND DORR LLP
1875 Pennsylvania Ave. NW
Washington, D.C. 20006
(202) 663-6487
ed.williams@wilmerhale.com
matthew.martens@wilmerhale.com

Robert Boone*
WILMER CUTLER PICKERING
  HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
(212) 230-8800
robert.boone@wilmerhale.com

Timothy Perla*
WILMER CUTLER PICKERING
  HALE AND DORR LLP
60 State Street
Boston, MA 02109
(617) 526-6000
timothy.perla@wilmerhale.com


(*Signed by Edward Williams with the permission of Ellora Thadaney Israni and Seth Wayne)