```
 1              IN THE UNITED STATES DISTRICT COURT
                 FOR THE DISTRICT OF MARYLAND
 2                     SOUTHERN DIVISION
   _____
 3                                )
   ROBERT FRAZIER, et al.,        )
 4                                )
                    Plaintiffs,   )
 5                                )
        v.                        )  Case No. 8:22-cv-01768-PJM
 6                                )
   PRINCE GEORGE'S COUNTY,        )
 7  MARYLAND, et al.              )
                                  )
 8                   Defendants.  )
   _____)
 9
                              Greenbelt, Maryland
10                            August 17, 2022
                              2:31 p.m.
11
                      TELEPHONE CONFERENCE
12        BEFORE THE HONORABLE PETER J. MESSITTE

13              A P P E A R A N C E S

14  ON BEHALF OF THE PLAINTIFFS:

15       CIVIL RIGHTS CORPS
         1601 Connecticut Avenue, N.W., Suite 800
16       Washington, D.C.  20001
         BY:  ELLORA THADANEY ISRANI, ESQUIRE
17            (202) 894-6132
              ellora@civilrightscorps.org
18       BY:  JEREMY DAKOTA CUTTING, ESQUIRE
              (202) 844-4975
19            cody@civilrightscorps.org, ESQUIRE
         BY:  RYAN DOWNER, ESQUIRE
20            (202) 844-4975
              ryan@civilrightscorps.org
21
         INSTITUTE FOR CONSTITUTIONAL ADVOCACY AND PROTECTION
22       600 New Jersey Avenue, N.W.
         Washington, D.C.  20001
23       BY:  SETH DANIEL TYCHSEN WAYNE, ESQUIRE
              (415) 516-4939
24            sw1098@GEORGETOWN.EDU, ESQUIRE

25                      (Continued)
```

```
1                    A P P E A R A N C E S (Cont'd)

2         WilmerHale
          1875 Pennsylvania Avenue, N.W.
3         Washington, D.C.  20006
          BY:  EDWARD HENDERSON WILLIAMS II, ESQUIRE
4              (202) 663-6487
               Ed.Williams@wilmerhale.com
5
          WILMER CUTLER PICKERING HALE AND DORR LLP
6         1899 Pennsylvania Avenue, N.W.
          Washington, D.C.  20006
7         BY:  MATTHEW T. MARTENS, ESQUIRE
               (202) 663-6921
8              matthew.martens@wilmerhale.com

9    ON BEHALF OF THE DEFENDANTS:

10        PRINCE GEORGE'S COUNTY OFFICE OF LAW
          Wayne K. Curry Administration Building
11        1301 McCormick Drive, Suite 4100
          Largo, Maryland  20774
12        (301) 952-5225
          BY:  ANDREW J. MURRAY, DEPUTY COUNTY ATTORNEY
13             (301) 952-3071
               ajmurray@co.pg.md.us
14        BY:  SHELLEY LYNN JOHNSON, ASSOCIATE COUNTY ATTORNEY
               (301) 952-5225
15             sljohnson@co.pg.md.us

16        OFFICE OF THE ATTORNEY GENERAL (Maryland)
          COURTS & JUDICIAL AFFAIRS DIVISION
17        200 St. Paul Place, 20th Floor
          Baltimore, Maryland  21202
18        BY:  KEVIN M. COX, CHIEF COUNSEL
               (410) 576-6388
19             kcox@oag.state.md.us
               JAMES O. SPIKER IV, DEPUTY CHIEF COUNSEL
20             (410) 576-6389
               jspiker@oag.state.md.us

21

22

23                   PATRICIA KLEPP, RMR
                    Official Court Reporter
24              6500 Cherrywood Lane, Suite 200
                   Greenbelt, Maryland  20770
25                     (301) 344-3228
```

1        P R O C E E D I N G S

2            THE COURT:  Ladies and gentlemen, good afternoon.

3    This is Judge Messitte.  Theresa Derro, I understand you're

4    listening in but you're not participating.  So if you don't say,

5    Yes, I am participating, I'll take it that you are not

6    participating.

7            Very well.  This is --

8            THE COURTROOM DEPUTY:  No, Judge, I am not

9    participating.

10            THE COURT:  All right.  Well, the case is Frazier

11    versus Prince George's County, it's Civil No. 22-1768, and this

12    was a request for a conference that Plaintiffs' counsel put in,

13    I guess, a follow-up on what was happening with some of the

14    named plaintiffs, some of whom as I understand it that were

15    being detained, but let me get -- who's on the line for

16    Plaintiffs' counsel, as Plaintiffs' counsel?

17            MS. ISRANI:  Good afternoon, Your Honor.

18            This is Ellora Israni from Civil Rights Corps.  Myself

19    and Jeremy Cutting, also from Civil Rights Corps, will be doing

20    the proceedings for Plaintiffs today.  With us on the line are

21    Ryan Downer of the Civil Rights Corps, and Seth Wayne from the

22    Institute for Constitutional Advocacy and Protection, and

23    Ed Williams and Matthew Martens from WilmerHale.

24            THE COURT:  All right.  Counsel, will you state your

25    name again, please, the first speaker -- all right, Ellora, very

 1  good.  I just didn't get the first name.  All right, very good.

 2          And for Prince George's County?  Counsel for

 3  Prince George's County on the line?  Mr. Murray, Ms. Johnson?

 4  Hello?  Jess -- hello?

 5      (The teleconference disconnected and is now reconnected.)

 6          THE COURT:  All right.  Counsel, Judge Messitte again.

 7  Ms. Israni, you've mentioned a name that I didn't catch.  There

 8  was you, Mr. Cutting, I didn't get the third name, Mr. Wayne,

 9  Mr. Williams, Mr. Martens, and there was somebody else?

10          MS. ISRANI:  Ryan Downer from Civil Rights Corps.

11          THE COURT:  Okay.  He's not on our list, that's why.

12          MS. ISRANI:  Okay, fine.  I believe he's entered an

13  appearance.  If not, we will [AUDIO GAP], but that's everyone on

14  the line.

15          THE COURT:  Very good.  And for Prince George's

16  County?

17          MR. MURRAY:  Good afternoon, Judge.  This is Andrew

18  Murray, Deputy County Attorney, and Shelley Johnson is also on

19  the line.

20          THE COURT:  All right.  Well, Plaintiffs' counsel

21  asked for this conference, I suppose as a follow-up to my

22  earlier direction that some response be given as to the named

23  plaintiffs and what their situation was.  Perhaps you can tell

24  me again, Ms. Israni, what it is that you want to know.

25          MS. ISRANI:  Sure, Your Honor.  So four of the named

1  plaintiffs, Mr. Butler, Mr. Frazier, Mr. Williams, and D.P., a

2  minor, remain detained, and what defendants' filing demonstrates

3  is that each of these individuals was authorized or ordered for

4  pretrial release by a judge.  I believe defendants are --

5  they're filing it now denying that Mr. Butler is even

6  authorized, although pretrial orders he filed on the docket at

7  2-39 clearly states, We have been ordered to pretrial.

8           So it would be good to get some clarity as to why he

9  remains detained, but with respect to all four, what we're

10  asking the Court to do here today is to take some more immediate

11  action with respect to these individuals.  Like I said, the

12  filings admit that each of these individuals has been detained

13  based not on a decision by a judge but on a decision by the

14  Department of Corrections made behind closed doors.  No judge

15  has found these individuals need to be detained.

16           THE COURT:  Hello?

17      (The teleconference disconnected and is now reconnected.)

18           THE COURT:  Another try.

19           I assume -- Ms. Israni, are you still on?

20           MS. ISRANI:  I am.

21           THE COURT:  All right.  Mr. Murray, are you on, with

22  Ms. Johnson?

23           MR. MURRAY:  Yes, Your Honor, and so is Kevin Cox and

24  James Spiker from the Attorney General's office.  I'm sorry, I

25  don't think they got a chance to introduce themselves.

1      THE COURT:  Sorry, my mistake.

2      MS. ISRANI:  Your Honor, I'm not sure where you cut

3  out.  I don't know if you want me to --

4      THE COURT:  Well, I gather you're saying some people

5  have been authorized for release and they're still being

6  detained; is that the short of it?

7      MS. ISRANI:  That's the short of it.  They're not

8  getting the relief that they have been asking for in state

9  court.  It's my understanding that almost all of them have had

10  multiple bail hearings, Mr. Frazier and D.P. as recently as

11  yesterday and today, and it sounds like, you know, the upshot of

12  that is that they are being detained.  And there are some other

13  details that I'm happy to go into, but we're just asking the

14  Court to take more immediate action.

15      I believe Your Honor said at the last conference that

16  you're concerned about the named plaintiffs, as we are too, and

17  we're procedurally prepared to do whatever the Court wants to

18  effectuate the -- you know, file a more formal motion, do

19  expedited briefing, resolve it here today, do mediation,

20  whatever it is, for this -- document for more immediate relief

21  for these four folks involved and authorized through an order of

22  release.

23      THE COURT:  I gather, though, that you've got the

24  letter dated August 4, 2022 that indicates -- makes reference to

25  various of the detainees.  Is it signed by Ms. Johnson?

```
1              MS. ISRANI:  We did, Your Honor, and it was ac- -- it
2    was that filing that we responded to in document 51, on August
3    11th, last Thursday.  It's why we requested the conference.
4    That filing doesn't resolve our concerns because, for example,
5    you know, the filing says Mr. Butler was never ordered to
6    pretrial, when in fact he was, his bond order filed on the
7    docket at 2-39 as he was ordered.  The document does not contain
8    an explanation for Mr. Williams, I believe, but again --
9              THE COURT:  Yeah.  Well, let me -- wait.  Before you
10   go too far on this, as I understand it, there are a couple of
11   the people that you could -- were concerned about that have
12   since been released; am I correct?
13             MS. ISRANI:  At the time that we filed our complaint,
14   five people were detained currently -- sorry, five names
15   [AUDIO GAP].  Four of them are still detained.  One,
16   Mr. Hernandez, I believe, was released before we even had a
17   conference in this matter, so it's -- yes, it's the remaining
18   Mr. Butler, Mr. --
19             THE COURT:  Mr. Butler -- we're still losing out on
20   people.  Mr. Murray, are you there, Ms. Johnson?  I don't know
21   what the problem is.
22         (The teleconference disconnected and is now reconnected.)
23             THE COURT:  All right, try it again.
24             Ms. Israni, are you there?
25             MS. ISRANI:  Yes, I am here.
```

```
1              THE COURT:  All right.  Mr. Murray, Ms. Johnson?

2              MS. JOHNSON:  Yes, we are here.

3              THE COURT:  All right.  And --

4              MR. MURRAY:  Yes, Your Honor.

5              THE COURT:  All right.  And for the Attorney General?

6              MR. COX:  Yes, Your Honor, the two attorneys generals

7    are here as well, and we're happy to clarify, either us or

8    Ms. -- Prince George's County defendants, misrepresentations if

9    the Court -- if you'd like.

10             THE COURT:  Well, first of all, I'm just trying

11   understand what the question is.  One of the things I've tried

12   not to do is to convert this lawsuit into a weekly telephone

13   conference as to how you're doing; that's not what this is

14   about.  I had a very specific discussion in mind last time, was,

15   we're going to talk only about the named plaintiffs at this

16   point, we're not going to talk about other people.  What you do

17   or don't have as to them, that will be part of your discovery,

18   assuming we get that far.

19             This is an immediate stopgap thing.  Now, what I

20   understand is, from the defendant, that is, from the County,

21   that certain people who were allegedly detained for whatever

22   reason have been released.  Is that a correct statement,

23   Mr. Murray, Ms. Johnson?

24             MS. JOHNSON:  Yes, some of those named plaintiffs have

25   been released.
```

```
 1              THE COURT:  All right.  Can you say who they are?

 2              MS. JOHNSON:  Yes.  Yes, I do say who they are in my

 3    filing.  Would you like me to proceed --

 4              THE COURT:  Well, all right.  I have your filing, I

 5    guess, and you did say in the letter, I think, who they were.

 6              MS. JOHNSON:  Yes, I did identify who was in remand.

 7    I believe that there's only -- as Ms. Israni had indicated, we

 8    are holding four individuals.  I believe it's Plaintiff Frazier,

 9    Plaintiff Williams, D.P., and Christopher Butler are still

10    incarcerated.

11              THE COURT:  All right.  The short answer that I

12    understood from most of these defendants is that they were all

13    subject to detainers from another jurisdiction.  Am I correct?

14              MS. JOHNSON:  Not all of them.  Christopher Butler

15    does not have a detainer from another jurisdiction; it's just

16    that he had a very serious criminal charge of murder.

17              THE COURT:  All right.  Well, put him aside for a

18    moment.  Are you holding some people that the plaintiffs are

19    concerned about who are subject to detainers from other

20    jurisdictions?

21              MS. JOHNSON:  Correct.

22              THE COURT:  And who are --

23              MS. JOHNSON:  Yes.  Frazier has a detainer in

24    Virginia, Plaintiff Williams has a detainer in

25    Montgomery County, and B.P. has a detainer in Virginia as well.
```

1          THE COURT:  All right.  Ms. Israni, why do you think

2    the Court is obliged to act with regard to individuals who have

3    detainers?

4          MS. ISRANI:  Your Honor, the gist of our argument is

5    that the simple fact of having a detainer is not enough to

6    refuse to release someone pretrial; there has to be an

7    individualized consideration of, Is this detainer extraditable,

8    does the -- whatever the detainer is for relate to community

9    safety, or flight risk, such that it warrants their detention

10   under the Constitution.

11         The example I'll give is, Mr. Frazier, again, it's a

12   traffic detainer out of Virginia, and it's a detainer that the

13   Court knew about, because it was in the Court file when he was

14   ordered released, and it seems like what the County is doing is

15   essentially overriding the Judge's determination that despite

16   this traffic detainer, he could be released.

17         Similarly for Mr. Williams, I don't believe that we

18   even had a hearing about this, but he's allegedly being detained

19   because of this Montgomery County detainer for an alleged

20   violation of probation.  The alleged violation is simply being

21   arrested in Prince George's County.  It's not any sort of

22   independent issue, and there's been no hearing, no

23   individualized consideration of whether his detainer warrant is

24   such a community safety or flight risk issue that he needs to be

25   detained.  And so our argument is just -- you know, the bald

```
1    fact that he has a detainer -- we don't even know if these
2    detainers are extraditable -- is not enough to hold people.
3               THE COURT:  Response from either the County or the
4    AG's office?
5               MS. JOHNSON:  Yes, Your Honor.  This is Shelley
6    Johnson.  First, with regards to Frazier, his detainer in
7    Virginia is dealing with fleeing and eluding, so [AUDIO GAP]
8    this doesn't even -- it's an issue when it's -- I mean, the
9    whole thing about pretrial release is that they are [AUDIO
10   GAP] -- they are then to show up at their court hearing, and if
11   someone is -- has a detainer or charge of fleeing and eluding,
12   that's not a good -- a good indication about whether or not
13   they're going show up.
14              THE COURT:  Let me stop you for a moment, let me stop
15   you for a moment.  Do you have a document entitled Detainer that
16   indicates the nature of the request from the foreign
17   jurisdiction?
18              MS. JOHNSON:  I believe -- yes, I believe I do.
19              THE COURT:  Okay.  Well, I mean, is that the kind of
20   thing that you can --
21              MS. ISRANI:  Your Honor --
22              THE COURT:  -- demonstrate and show to the plaintiffs?
23              Who's speaking, please?
24              MS. ISRANI:  Your Honor, this is Ms. Israni.
25              I -- you know, I don't want to get too far in the
```

1    weeds on this, but Mr. Frazier did have a hearing in state court

2    yesterday.  My understanding is that the upshot is, he remains

3    detained, but there was extensive conversation about the fact

4    that this is a traffic warrant and there was no deliberate

5    intent to flee; he just thought the warrant was -- he just -- he

6    thought the case was closed.

7            So all of this is to say, you know, this is a

8    conversation about the merits of whether, you know, the detainer

9    warrant is ongoing detention in Prince George's County.  This is

10   a conversation that should have been had in open state court in

11   Prince George's County, with consideration of alternatives, with

12   a discussion of whether this traffic warrant relates to

13   community safety or flight risk, and it is not a decision for

14   Pretrial Services to make behind closed doors.  This should have

15   happened in court, and it did not, which is why we're in federal

16   court in the first place.

17           THE COURT:  Well, before I comment -- no need to

18   comment more on that.  Is there somebody else who's subject to a

19   detainer that you want to address, Mr. Murray or Ms. Johnson?

20           MS. JOHNSON:  D.P. is also subject to a detainer, but

21   I believe that he actually had a bond review hearing yesterday,

22   and a $15,000 bond was set for him.  So if he -- if any of his

23   family satisfy that bond, then he will be released, and the

24   detainer -- I guess, whatever, the, you know, jurisdiction has

25   been notified so they can --

```
 1            THE COURT:  Do you know, was there a de- -- sorry.
 2   There wasn't a detainer as to D.P., or there was?
 3            MS. JOHNSON:  There is a detainer for D.P.
 4            THE COURT:  Okay.  From whom and for what, what
 5   jurisdiction, and for what offense?
 6            MS. JOHNSON:  I want to say it's Arlington, Virginia
 7   [AUDIO GAP] Virginia, [AUDIO GAP] takes you off the list, so --
 8   and I believe it was not a violent offense but a check fraud or
 9   something like that.
10            THE COURT:  Do you have a document that would indicate
11   what it is and what jurisdiction imposed the detainer?
12            MS. JOHNSON:  Yes, I do.
13            THE COURT:  All right.  We're going to have to isolate
14   these documents.  Who else has been subject to a detainer
15   according to your review?
16            MS. JOHNSON:  Mr. Williams, Miramba Williams, has a
17   detainer from Montgomery County for violation of probation, and
18   he also has -- and he's on active probation.  And also, he has a
19   protect- -- also a protective order that has not expired.  His
20   current conviction was on -- dealing with a regulated firearm
21   and illegal possession -- illegal possession of a regulated
22   firearm.
23            THE COURT:  Okay.  Anyone else that we're talking
24   about?
25            MS. ISRANI:  Your Honor --
```

```
1              THE COURT:  No, wait a minute; I want to hear the rest
2    from the defendant, for Prince George's.  Anyone else that is
3    subject to a detainer that's still being held?
4              MS. JOHNSON:  No, I do not believe so, Your Honor.
5              THE COURT:  Okay.  All right, Ms. Israni?
6              MS. ISRANI:  Yes.  I just wanted to clarify a couple
7    of things.  First of all, I believe D.P.'s warrants are out of
8    Fairfax, and second of all, I don't know that his -- whether his
9    family can afford a $15,000 bond.
10             THE COURT:  Well, Ms. Israni, I'm amazed that you are
11   raising this issue with a federal judge.  These are issues that
12   get raised with the state court.  You have a right to appeal to
13   the Court of Special Appeals on this, and you're asking me to
14   second-guess what the trial judge said or did, and you're asking
15   me to second-guess whether or not the detainer is extraditable
16   or not.
17             I've never done that.  In 37 years on the bench, I've
18   never heard of this sort of thing, where I have to go back and
19   check each individual, as you're asking now, to see whether
20   someone is validly subject to a detainer.  One of the reasons
21   I'm asking the defendant now is, if they've got a document,
22   they're worried about whether there's a detainer, where it's
23   from and what it's for, they can demonstrate that to you.
24             I want to be clear to you now, I'm not going to say
25   that someone should be released when they're subject to a
```

1  detainer.  I may say that ultimately as well, but right now, I'm

2  certainly not going to release somebody subject to a detainer,

3  and I'm not going to gets into the issue of whether the detainer

4  should or should not be respected.  I mean, that's asking me to

5  jump into every court decision, and every court that I've been

6  on --

7        MS. ISRANI:  Your Honor --

8        THE COURT:  Go ahead.

9        MS. ISRANI:  That's certainly not what we're asking

10  for, if I gave you that impression --

11        THE COURT:  Well, you did, you definitely did.

12        MS. ISRANI:  -- but -- okay.  Well, then -- then I

13  apologize.  The thing that we're concerned about is, the problem

14  is not whether you [AUDIO GAP] detainers as such.  First of all,

15  this decision is being made behind closed doors.  They haven't

16  had an opportunity to litigate this in state court.  They have

17  tried.

18        And second of all, while people are detained in the

19  Prince George's County jails, they're not served with a

20  detainer, so they don't even have the opportunity to resolve the

21  matter and then clear that roadblock if they are released in

22  Prince George's County.  So that's -- you know, that's the issue

23  we're trying to get around here.

24        The fact that -- what the detainers are for and all

25  that, I understand that Your Honor is not, you know, prepared to

1    resolve that right now.  The fact -- that's the more general

2    issue, that, you know, these people are not --

3           THE COURT:  I'm still not clear what you're asking me

4    to do.  You're asking me to send -- what, send the case back to

5    the state judge and decide whether a more extensive hearing on

6    the detainer is required; is that what you're asking?  I'm

7    not --

8           MS. ISRANI:  We're asking for -- essentially, the

9    substantive and procedural responses that United States v.

10   Salerno requires and that the Constitution requires, which is

11   that these people -- either there are findings made that their

12   detention is necessary, and that happens with all the procedural

13   due process that Salerno requires, or that they're released, but

14   not that they're kind of held in this indefinite state of

15   purgatorial detention.  And I believe my colleague, Mr. Wayne,

16   who's representing Plaintiffs, wanted to say something as well.

17          THE COURT:  Fair enough, let's hear it.

18          MR. WAYNE:  Good afternoon, Your Honor.  Just briefly,

19   I think we're getting a little bit muddled, and I wanted to

20   clarify something.  They're not being held because of the

21   detainer, and we're certainly not arguing either that our

22   plaintiffs don't have the detainer or that the state court can't

23   honor a valid detainer from another jurisdiction.  Those are

24   kind of next questions that are not [AUDIO GAP].  And I'm

25   certainly not asking this Court to say that the state court

1    cannot honor detainers from other jurisdictions.

2            What the circumstances are is that our clients are

3    being held by the Prince George's County defendants on

4    Prince George's County orders, on Prince George's County bail

5    orders.  I mean, because of those Prince George's County bail

6    orders, they can't go to the other jurisdictions to resolve them

7    other than here.

8            There -- the subtlety there is, they've been facing

9    that Prince George's County, behind closed doors, despite

10   authorization from the Court, is -- they refuse to release

11   folks, is, they're saying that one of their criteria for -- for

12   bail release in Prince George's County is their own decision

13   that a detainee is someone who has bail in Prince George's

14   County, funding within Prince George's County, regardless of

15   what happens in that other jurisdiction.

16           THE COURT:  Yes.  Well, somebody, presumably, wants to

17   respond to that statement.  Mr. Murray, Ms. Johnson from the AG?

18           MS. JOHNSON:  Yes, Your Honor.

19           THE COURT:  Who's speaking?

20           MS. JOHNSON:  This is Shelley Johnson.  I think what I

21   have submitted to this Court shows that each warrant of an

22   individual has had numerous, not one, not two, not three, but

23   several bond issues, where all of this information about

24   detainers, and probation, and the charges have been brought up

25   by their, you know, public defendant.  And they have -- and they

18

1    made those arguments that Plaintiff is making now, and they have

2    been rejected by the Court.  And they have been helped or they

3    have been told that they need to have -- they need to meet

4    certain criteria.  So this -- the decision is not made behind

5    closed doors, and I think that phrasing is confusing and is not

6    accurate.

7              What the process is and what I wanted and my opinion

8    is that -- it just is not being accepted -- is that the Court

9    referred plaintiffs to Pretrial Services for evaluation.  If

10   they have found they met the criteria, they are -- they are not,

11   they are referred back to the Court to indicate the reasons why

12   they are not meeting the criteria.  Then the Judge makes the

13   decision on whether or not that is acceptable or not.  We are

14   not -- the County is not holding anybody that has bail.

15             And that was what the Court's ultimate question was,

16   you know.  In our last telephone conference hearing, you

17   wanted -- the Court wanted to know if we were holding anybody in

18   violation of a court order, telling them to waive.  The filings

19   that I have and the documents that I submitted show, clearly,

20   that we are not finished yet, and every day, these individuals

21   are having another bond hearing where these arguments that

22   Plaintiffs' counsel is making can be made to the state judge,

23   who has the jurisdiction and has the authority to make those

24   decisions.

25             And what the -- and what we are hearing, defense

```
 1   counsel is hearing, is that basically, Plaintiffs' counsel --

 2   the case -- they are not getting the results they want from the

 3   Court, so therefore, they're going to circumvent that and ask

 4   the federal court to take over this process for the County,

 5   because they don't like how we do it --

 6              THE COURT:  Well, Ms. Johnson --

 7              MS. JOHNSON:  -- and they don't like --

 8              THE COURT:  Ms. Johnson, let me ask you a question.

 9   Are each of these individuals subject to the detainers now being

10   held because of the detainers, or are there independent other

11   reasons why they're being held?

12              MS. JOHNSON:  There are other reasons, and I believe I

13   investigated those in my pleading.  And I was -- and it all

14   depends on the individual.

15              THE COURT:  Well --

16              MS. JOHNSON:  All that remains for the Court is back

17   to the District Court Judge who had another bond release

18   hearing.

19              THE COURT:  Let me go back to Plaintiff for a moment

20   and ask, what is it that you're asking the Court to do, the

21   federal court to do now, either -- I mean today, collectively or

22   in the case of an individual defendant?  What are you -- what

23   kind of relief are you asking for, whoever wants to --

24              MS. ISRANI:  Your Honor, this is Ms. Israni.  We're

25   not asking for anything for anyone who is not the four detained
```

1  plaintiffs, I think, it's only those four.  If -- as Ms. Johnson

2  was saying, if there are other reasons behind -- besides the

3  detainers that these people are being held, that can be

4  assessed.

5          I -- we did not see that in the filing anywhere, and

6  so we did request those explanations quickly, but more than

7  that, all we're asking the Court to do is to require that these

8  people receive -- you know, it doesn't matter how many

9  constitutionally insufficient bail hearings these people get.

10  All we're asking is for them to get some more immediate relief

11  from the current briefing schedule and for them, you know, not

12  to be held because of the very fact that they have a detainer,

13  which, as think Mr. Wayne explained, is not -- we believe is

14  illegal.

15          THE COURT:  Well, again, I'm not sure why we're in

16  federal court on this at all, frankly.  I mean, you've got a

17  situation where obviously, your clients and counsel are not

18  satisfied with the answers you're getting from the Judge.  And

19  the Judge is frankly ordinarily not authorized to simply ignore

20  a detainer and say, I don't think this is a very serious matter,

21  I think I'll let this person go, even though there's a detainer

22  for what looks to be like a traffic offense.

23          I just never heard that argument, in 37 years, ever

24  made.  Maybe you're going to be the first to make it, but if

25  that's what you're asking for, you've got a steep hill ahead,

```
1    and --

2              MR. WILLIAMS:  Your Honor --

3              THE COURT:  Who's speaking, please?

4              MR. WILLIAMS:  I apologize, Your Honor; I didn't mean

5    to cut you off.

6              THE COURT:  Who is speaking, please?  Who's speaking?

7              MR. WILLIAMS:  This is Mr. Williams, Your Honor.

8              THE COURT:  All right, go ahead.  Go ahead.

9              MR. WILLIAMS:  Your Honor, I want to be clear, because

10   I think this is -- I believe you've been [AUDIO GAP] on this,

11   and I want to make sure that we're not giving the Court the

12   wrong impression, but they are not being held -- per our

13   argument -- and we're not taking their -- we aren't taking

14   [AUDIO GAP] detainer from another jurisdiction and can't hold

15   someone because of the detainer.

16             And that is not why [AUDIO GAP] that they're being

17   held. They aren't being held simply on detainers from other

18   jurisdictions.  They're being held on -- by the Prince George's

19   County defendants following an authorization for release.

20   I think that the Prince George's County Judges have authorized

21   the Prince George's County defendants to release people on their

22   bail order or on Prince George's County bail conditions.  In

23   that case, if they do have a detainer from another jurisdiction,

24   if they're released, they could go to that other jurisdiction

25   and resolve that case.
```

```
 1              THE COURT:  Well, wait a minute, that's not way it
 2    works.  They actually are transferred.  You're not ordinarily
 3    released and you walk out and do what you do and show up on the
 4    detainer; you're often removed right from the jurisdiction A to
 5    jurisdiction B.  You're held in the end.
 6              MR. WILLIAMS:  Yeah, yeah, I know.
 7              THE COURT:  So I'm not sure what you're saying.
 8              MR. WILLIAMS:  Yeah, Your Honor -- I apologize, Your
 9    Honor.  I --
10              THE COURT:  Let -- travel -- travel with me -- look,
11    travel with me a little bit, here.  You've got somebody subject
12    to a detainer who may be wanted for a major felony in another
13    jurisdiction.  They are not reasonably going to be let out by
14    jurisdiction A and find their way to jurisdiction B to answer a
15    detainer.  They're going to be transported at some point, a
16    reasonable point, mind you, from A to B.  They're not going to
17    be out on the street in the meantime, and I wouldn't consent to
18    that myself.  I don't care what they --
19              MR. WILLIAMS:  I -- I --
20              THE COURT:  Let me say something to you beyond that.
21    We haven't even gotten to the briefing, but whether you think a
22    Prince George's County Judge has authority to ignore a detainer,
23    regardless of what other conditions he puts on, that's a serious
24    question.
25              I seriously doubt that a Prince George's County trial
```

```
 1   judge or any Circuit Court judge has authority to say, I'm not
 2   going to honor a detainer from another jurisdiction.  I've never
 3   heard that argument.  It sure is fairly briefed by the defendant
 4   that that kind of -- and look, whether or not there are other
 5   reasons, as Ms. Johnson suggests, that they're being held, so be
 6   it.  The detainer itself is sufficient, from my standpoint, to
 7   justify their continued detention until the detainer is honored,
 8   but how they actually make the transport, whether they want to
 9   let the person out and show up for his detainer, the answer to
10   that is maybe, but the answer is also maybe not.
11         So again, I'm not quite sure where -- look --
12         MR. WAYNE:  I -- I think I can clarify this,
13   hopefully.
14         THE COURT:  Who is -- tell me who's speaking, please.
15         MR. WAYNE:  This is Mr. Wayne.  Mrs. Isani --
16         THE COURT:  All right.
17         MR. WAYNE:  I'm not here to -- I certainly agree with
18   Your Honor, in the case of detainers, some folks are not
19   released and we have to transfer to the jurisdiction.
20   Regardless, the detainer will be the basis for their detention
21   and will result in them getting transferred, and that detainer
22   will be handled per process of law as a standard detainer
23   situation.  We're certainly not arguing that that can't take
24   place, and we're not arguing that the Court should not honor
25   detainers from other jurisdictions.  That is not our argument.
```

```
 1              But what is happening [AUDIO GAP] is not that they are
 2     being held because of the other detainer's jurisdiction, and
 3     it's not that they are going to be transferred for that detainer
 4     to be resolved.  What's happening is that they're being held on
 5     Prince George's County bail orders.
 6              The Prince George's County is claiming the reason that
 7     they cannot brief them -- and in briefing, there would be a
 8     prerequisite for them to be transferred or to have that detainer
 9     handled for whatever reason, but the detainer in the
10     Prince George's County is claiming that there isn't a two-step
11     bail in the Prince George's County, and to us, as a
12     constitutional matter, I don't think that the reasons that the
13     Prince George's County defendants and, again, the nonjudicial
14     defendants are using to refuse to release, no.
15              What matters to us is the fact that the
16     Prince George's County judicial defendants have authorized the
17     Prince George's County defendants to release the individuals,
18     and the Prince George's County defendants, then, based on their
19     own reason, whether they have a detainer or something else, or
20     they [AUDIO GAP] the charges, or whether they're not [AUDIO GAP]
21     Prince George's County are making a decision behind closed
22     doors, following the authorization by Judge [AUDIO GAP] not to
23     release people.
24              And that's what happened to each of our named people,
25     and that's what we're arguing on, is, when a decision of whether
```

1  or not someone gets pretrial bail is made by a County person and

2  not by the Judge, that that decision is unconstitutional, and

3  that's why we're seeking relief for these defendants.  And there

4  were -- our ask is simply that either we find an expedited way

5  to find relief, whether that's to file a new motion, or doing

6  some other process later on for these named plaintiffs

7  specifically.

8         THE COURT:  Response from the defendant?  I haven't

9  heard from the Attorney General, but perhaps this is still with

10  the County.  But I'd like a response.

11        MS. JOHNSON:  Your Honor, this is Shelley Johnson

12  again.  Using [AUDIO GAP] as an example, and I think I just

13  pulled up -- I think we'll pull up her documents [AUDIO GAP],

14  the argument that plaintiff's counsel had made, again, has been

15  made in state court, and we have filed motions for bond review

16  hearings where we typically have stated that the Court has

17  ordered pretrial release but the criminal defendant is not being

18  released, and the Circuit Court held a hearing on that matter

19  and denied the request.

20        They have -- Office of Public Defender has also filed

21  motions to show cause because the Office of the Public Defender

22  has made that argument that they are being held, they've been

23  ordered released, and in fact, they have not, they've been

24  ordered to be reviewed by Pretrial Services, and the Court has

25  had BOP show up and explain in open court the same thing that I

1    have explained here and in my papers, that this is a referral to

2    be evaluated, and if they meet their terms, they are released;

3    if not, they go back to Circuit Court and the Court reviews it

4    again.

5            So these arguments that they are making are not new

6    arguments.  They are the same arguments the Office of the Public

7    Defender has unsuccessfully made in state court, and that's why

8    Plaintiffs now -- are now again trying to circumvent and have

9    the federal court skip over this function for -- and I mean,

10   essentially, that's what they're asking you to do; they're

11   asking you to have an expedited bond hearing and for your order

12   to overrule what the state court has already evaluated and made

13   a decision about.

14           THE COURT:  All right.  I don't want to --

15           MS. JOHNSON:  When you ask --

16           THE COURT:  No, I really don't want to -- sorry,

17   folks, I don't want to spend any more time on this now.  You've

18   got to remember, there's a lawsuit pending.  Whether the federal

19   court even has jurisdiction to do anything in this case hasn't

20   even been decided yet.  As a practical matter, I did ask a very

21   narrow question before, which was whether anybody was being held

22   with an order to be released and there was no other reason for

23   holding them, and the answer is, there's nobody subject to that.

24           Now, whether or not the County is looking at the

25   reasons for denying release, if there is a detainer in effect,

1    that's a good -- good enough for me right now.  I am not going

2    to say someone subject to a detainer should be released because

3    a Prince George's County trial judge said something or the

4    department that has some authority said something else.

5          If there's a detainer, and certainly, the defendant

6    can show the paperwork that there is, that person, pending the

7    outcome of the case and maybe ever after, until the detainer is

8    discharged, will remain in custody.  I'm not going to make any

9    kind of interim, week-by-week kind of decision about these

10   folks.

11         All I wanted to do was be clear that there was nobody

12   being detained who didn't have a reason for their detention.

13   And again, I am not recognizing that even if this were the

14   case -- and Ms. Johnson says it's not -- that the trial judge in

15   Prince George's County says, Release him, and we're not going to

16   pay attention to the detainer -- I'm sure that in all the bond

17   hearings that have allegedly been held recently, the Judges have

18   heard this, that there's a detainer, but the standard practice

19   is, if there's a detainer, it's honored, whether it's done by an

20   administrative officer or by the Judge.  That trumps everything

21   else.  And that's where we are.

22         And certainly, on an interim basis now, there's no

23   reason for this Court to interfere in what the state court

24   judges are deciding.  If you've got a really appealable

25   constitutional issue, try interlocutory appeal through the Court

```
 1   of Special Appeals.  I mean, you can appeal.  You're not going

 2   to have great success with it, but bond decisions are

 3   appealable, and if that's where you belong, if you think it's

 4   unconstitutional; federal court, to second-guess these kinds of

 5   things?  The answer right now is maybe; I just haven't had a

 6   chance to even hear a motion to dismiss from the defendants yet,

 7   so let's not --

 8               MS. ISRANI:  Your Honor --

 9               THE COURT:  -- go too fast.  Speaking?  Who is

10   speaking?

11               MS. ISRANI:  This is Ms. Israni -- this is Ms. Israni,

12   and you know, we respect that Your Honor is not prepared to

13   resolve that right now, but especially the case of Mr. Butler,

14   who does not have a detainer, and -- you know, he was ordered

15   released six months ago, pretty much to the day.

16               MR. COX:  Your Honor, this is Kevin Cox.

17               THE COURT:  Who's speaking?  Who's speaking?  I'm not

18   sure.

19               MR. COX:  I'm sorry, Your Honor.  This is Kevin Cox of

20   the Office of the Attorney General.

21               THE COURT:  Oh, Mr. Cox, yeah.  I haven't heard from

22   you.  Go ahead, yeah.  Go ahead.

23               MR. COX:  So first, several times, now, Ms. Israni has

24   made the material misrepresentation to the Court that these

25   defendants have been ordered released.  That is not the case.
```

1    No one has been ordered to be released from detention.  They've

2    been referred to Pretrial Services by the County, to be reviewed

3    for eligible release, and I just wanted to make that

4    clarification to Your Honor, that no one here has ever once been

5    ordered released from Pre-trial -- I'm sorry, released from

6    detention.  I just wanted to make that clear, Your Honor.

7              THE COURT:  Well, what about Mr. Butler?  Is that who

8    you're talking about, Ms. Israni; you're concerned that

9    Mr. Butler --

10             MS. ISRANI:  Yes.  Mr. Butler -- Mr. Butler's bond

11   order from February 18th has been filed on the docket in this

12   case.  The docket number is 2-39, and the word "order" is on

13   there.  So if what the defendants are arguing is that "order"

14   does not mean "order," you know, we can get into the merits of

15   that later, but the word "order" is on there.

16             THE COURT:  All right.  I have a --

17             MR. COX:  Your Honor, that's --

18             THE COURT:  I have a commitment --

19             MR. COX:  Sorry.

20             THE COURT:  I have a commitment order that says, Hold

21   without bond.  All right.  A judge can make that decision.  I

22   don't have the criminal record of Mr. Butler in front of me, or

23   maybe I do.  Do I have his criminal record?  But apparently,

24   there's the decision, no bond.

25             MS. ISRANI:  Your Honor, I'm not sure what document

1    exactly you're referring to, but I'm referring to 2-39 on the

2    docket because of the pretrial order.

3         THE COURT:  The commitment pending here --

4         MR. COX:  Your Honor, this is --

5         THE COURT:  I'm sorry, wait a minute.

6         MR. COX:  This is Kevin Cox.  I'm sorry.

7         THE COURT:  Let me just see what she's talking about.

8    I have a document -- two documents for Butler.  Butler, I have a

9    commitment pending here.  It's in CT211239X.  Commitment.

10   Criminal.  It says, Assault.  Murder second degree.  Assault

11   first degree.  Hold without bond.  On its face, not

12   unreasonable.

13        Now, what am I supposed to be looking at, Ms. Israni?

14        MS. ISRANI:  Your Honor, I think you might be looking

15   at the bond order from his first hearing, which was around

16   October of 2021.

17        THE COURT:  That's right, November 29th.  I have that.

18        MS. ISRANI:  Sure, sure.  But we had another hearing,

19   in February of this year, 2022, and there was another bond order

20   issued subsequently by Judge Serrette in Circuit Court.  Again,

21   that's the bond order that we filed as Exhibit 39.  I'm not sure

22   why that wasn't accounted for the County filing, but you know,

23   I'd be happy to resend it to the court if necessary.

24        THE COURT:  All right.  Ms. -- all right.  Let me stop

25   you.  Are you saying, despite the fact that he's been charged

1  with second degree murder, assault first degree, manslaughter,

2  firearm used by a felon in commission of a violent crime, that

3  he's been ordered released without -- and there's no detainer on

4  him; is that what you're saying?

5          MS. ISRANI:  There is no detainer on him.  You know,

6  again, I understand, but -- you know, we don't want to

7  second-guess the state court's decision, but that's the decision

8  that was made.  And again, it's filed on the docket as document

9  2-39.  The bail order is dated February 18th of this year, same

10  case number, and I'm happy to resend it to the Court.  I --

11          THE COURT:  Well, by all means, resend it.  The most I

12  could tell you right now, with those charges pending, I'm not

13  going to make a decision to release this gentleman or direct it,

14  even, even if I have authority, which remains an open question.

15  I suggest, if you think there's been an error, here -- and here,

16  wait, I'm getting the daily sheet.

17          MR. COX:  Your Honor, this is Kevin Cox again.  May I

18  chime in, Your Honor?

19          THE COURT:  Go ahead, yes.

20          MR. COX:  So this is the very heart of the matter,

21  Your Honor, and it's frustrating from the defendant's side

22  because it's unclear whether this is just -- intentional or

23  whether it's just being unfamiliar with criminal law and they're

24  not the public defenders in this case.

25          But for example, with Mr. Butler, he was ordered to

1   Pretrial Services to be reviewed for eligibility for release.

2   He was not ordered to be released, and those are two very

3   important distinctions, and no matter how much Plaintiff's

4   counsel wants to point to his order, that is not what those

5   orders mean, and every public defender in Prince George's County

6   knows that and has known that for over a decade.

7         THE COURT:  Well, look, let's take Butler and wrap

8   this up, if that's his case, as quickly as we can.  If there's

9   some confusion about whether this man, notwithstanding the

10  nature of the charges, which are about as serious as you could

11  get, that has been ordered by Judge Serrette to be released, I

12  suggest that either the prosecutor -- and maybe Mr. Cox, you've

13  got to get one of your people to do this, get on the case, or

14  someone from the County's Attorney's Office, get on the case and

15  get a clarification in any event to determine why, in the face

16  of these charges, the argument is being made that he should be

17  released.  If I had authority, and I don't know that I do, I

18  would never order release of this man, now, given the nature of

19  the charges.

20        There might have been an oversight by the Judge, or as

21  Mr. Cox says, it may pertain to something entirely different,

22  but this is the kind of thing which on the fly -- which is what

23  we're doing today; we've never even gotten anywhere near the

24  merits of the case -- I'm asked to makes a decision.  And I

25  shouldn't be doing this.  I mean, I was trying to take, I felt,

1    a clear-cut case -- a clear-cut situation and get rid of the

2    situations where people were ordered released with no

3    conditions.

4         But this is on its face at best an error, at worst, I

5    don't know what, but you could get it clarified by going back to

6    the Circuit Court, go back to Judge Serrette and say, here's a

7    man faced with these charges; did you intend to release him

8    directly, even though he doesn't have a detainer?  She probably

9    would have a second thought about that when you go back.

10        So I'm not going to do anything about Mr. Butler right

11   now.  No, there's nothing -- I'm not going to do anything about

12   anybody right now; everything stands as it stands.  I certainly

13   will go back to my basic proposition, certainly, that if there

14   are people who have clearly been ordered released, and not under

15   suspicious, questionable circumstances, as at best Butler is,

16   that they should be released, period.  If they haven't been

17   ordered released and it's been merely a referral by the Judge to

18   the Probation Department to explore whether they're eligible,

19   then that needs to be clarified.

20        That seems to be what the County's position is right

21   now, but I can't make these decisions, as I say, week by week,

22   as they come along.  But I strongly suggest that there be

23   perhaps referring to Judge Serrette to clarify whether she

24   really intended this individual to be released without

25   conditions, subject to no detainer, notwithstanding the very

1   serious nature of the charges against him.

2            So that's my short answer to that, nothing more for me

3   to do on that or really, at this juncture, I think anything.

4   Let's just go forward according to our plan right now and see

5   what happens.  Once somebody is subject to clear release, no

6   conditions, no detainer, it does make sense for the County to

7   promptly release the person.  Until that time comes, we'll defer

8   any decision till I guess we're in November, or somewhere like

9   that, October, whatever the dates are for the findings.

10            All right.  Is there anything more?

11            MS. ISRANI:  No.

12            MS. JOHNSON:  No, Your Honor.

13            MS. ISRANI:  This is Ms. Israni.  Just understood,

14  Your Honor.  I just -- I respect that the Court isn't prepared

15  to make a decision at this juncture.  I just want to put on the

16  record that my understanding is that Mr. Butler has gone to

17  state court and challenged his detention on constitutional

18  grounds and has basically been told that the state court is not

19  going to believe that argument belongs in federal court, but I

20  understand if Your Honor is not willing -- is not ready to

21  resolve that --

22            THE COURT:  The state court -- wait a minute, now.

23  Are you telling me there's -- is there a state court opinion

24  that says that only the federal court has authority to decide

25  the constitutionality of his detention; is that what you're

1    saying?  I'd like you to --

2              MS. ISRANI:  I'm saying, I don't believe -- I don't

3    believe it was a written opinion.  My understanding is that it

4    was an oral statement, basically, that the state court judge

5    just wanted to wait and see what happens in federal court.  I --

6    we're getting a transcript, but I don't have it yet, so I

7    can't --

8              THE COURT:  Well, by all means -- by all means --

9              MS. ISRANI:  I just wanted to put that on the record.

10             THE COURT:  By all means, you send it to me; I'm very

11   loathe to accept an oral report of an oral opinion of a trial

12   judge whose name I don't know, who basically says this is a

13   federal jurisdictional case.  That's not the way these cases get

14   briefed or decided, it's far too thin, but whatever you've got,

15   by all means send it to me, but right now --

16             MR. COX:  And --

17             THE COURT:  Who's talking, please?

18             MR. COX:  Sorry, I started speaking before you, Judge.

19   This is Kevin Cox.  My apologies.

20             I just wanted to be clear before the conversation

21   ended with an order.  To be clear, the Court's not expecting

22   anything from any of the parties until our motions are due

23   September 25th.  Is that correct, Your Honor?

24             THE COURT:  All right. I don't want any more of these

25   kinds of proceedings, where an individual's name popped -- I was

1   only -- yes.  Short answer is, I don't expect anything until we

2   go forward with a briefing.  The only --

3          MR. COX:  Thank you, Your Honor.

4          THE COURT:  That's as much I need to say, because

5   we're trying this case sort of cart before the horse, piecemeal,

6   and it's not a -- it's not the right way to go about it.  So

7   that's the short answer, yes.

8          MR. COX:  Thank you, Your Honor.

9          THE COURT:  All right.  Thank you, folks.  We'll get

10  back to you.

11         MR. MURRAY:  Thank you, Your Honor.

12         THE COURT:  If you want a copy of the transcript, call

13  Patti, and she'll give it to you.  All right.  Thank you, folks.

14  Bye-bye.

15         MS. JOHNSON:  Thank you, Your Honor.

16         MR. WAYNE:  Thank you, Your Honor.

17         MR. WILLIAMS:  Thank you, Your Honor.

18         MS. ISRANI:  Thank you, Judge, for your patience.

19     (The proceedings were adjourned at 3:23 p.m.)

20

21

22

23

24

25

1            CERTIFICATE OF OFFICIAL REPORTER

2        I, Patricia Klepp, Registered Merit Reporter, in and for

3    the United States District Court for the District of Maryland,

4    do hereby certify, pursuant to 28 U.S.C. § 753, that the

5    foregoing is a true and correct transcript of the

6    stenographically-reported proceedings held in the above-entitled

7    matter and the transcript page format is in conformance with the

8    regulations of the Judicial Conference of the United States.

9                        Dated this 23rd day of September, 2022.

10

11

12                    _____/s/_____
                      PATRICIA KLEPP, RMR
13                    Official Court Reporter

14

15

16

17

18

19

20

21

22

23

24

25