**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**GREENBELT DIVISION**

| | |
|---|---|
| ROBERT FRAZIER, *et al.*, individually and on behalf of a class of similarly situated persons, | |
| Plaintiffs, | |
| v. | Case No. 8:22-cv-1768 PJM |
| PRINCE GEORGE'S COUNTY, MARYLAND, *et al.*, | |
| Defendants. | |

**PLAINTIFFS' MEMORANDUM IN RESPONSE**
**TO COUNTY DEFENDANTS' MOTION TO DISMISS (DOC. 64)**
**AND JUDGE DEFENDANTS' MOTION TO DISMISS (DOC. 66)**

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................... 1

FACTS ................................................................................................................................... 2

LEGAL STANDARD ........................................................................................................... 3

ARGUMENT ......................................................................................................................... 5

   I.    Plaintiffs State Plausible Claims for Relief. ...................................................... 5

   II.   This Court Has Subject-Matter Jurisdiction to Hear This Case. ..................... 10

      A.    Plaintiffs Have Standing to Bring Their Claims. ...................................... 10

      B.    Plaintiffs' Claims Are Ripe for Judicial Resolution. ............................... 13

      C.    Plaintiffs' Claims Are Not Moot. .............................................................. 14

         1.    The Inherently Transitory Exception Applies to Claims Regarding Pretrial Detention. ................................................................................................................. 15

         2.    The Transfer of Plaintiffs' Cases Does Not Moot Their Claims. ............ 18

   III.   This Court Is Not Required to Abstain from Hearing This Case. .................. 19

      A.    *Younger* Abstention Does Not Apply to Plaintiffs' Claims. ..................... 20

         1.    Plaintiffs' Requested Relief Will Not Interfere with Ongoing State Proceedings Under *Younger*. ....................................................................................... 21

         2.    Plaintiffs Do Not Have an Adequate Opportunity to Challenge the Constitutionality of Their Detention in State Court. ................................................................ 26

      B.    *Colorado River* Abstention Does Not Apply to Plaintiffs' Claims. ......... 31

      C.    *Burford* Abstention Does Not Apply to Plaintiffs' Claims. ...................... 33

   IV.   The *Rooker–Feldman* Doctrine Does Not Apply to Plaintiffs' Claims. ........ 34

   V.   Judge Defendants Are Not Immune From Suit for Declaratory Relief......... 37

      A.    The Eleventh Amendment Does Not Preclude Declaratory Relief Against Judge Defendants Under *Ex Parte Young*. ............................................................... 37

      B.    Judicial Immunity Does Not Apply to Plaintiffs' Claims Regarding Judge Defendants' Ongoing Practices. ...................................................................... 38

   VI.   County Defendants Are Not Immune From Suit for Damages. ..................... 40

   VII.   Defendants Have Been Sued in Their Proper Capacities. ............................. 42

      A.    The Claims Against County Defendants in Their Official Capacities Should Not Be Dismissed. ........................................................................................................ 42

      B.    The Claims Against Judge Defendants in Their Individual Capacities Should Not Be Dismissed. ........................................................................................................ 43

   VIII.   This Court Should Not Decline to Hear Plaintiffs' Claim for Declaratory Relief. ........ 43

CONCLUSION...................................................................................................................... 45

# INTRODUCTION

This case raises fundamental questions about when and how presumptively innocent people who have been arrested and charged with crimes may be jailed. Plaintiffs allege that Defendants' processes for pretrial detention violate their federal and state constitutional rights by denying them liberty without due process. Specifically, Plaintiffs allege that at bail review hearings, Judge Defendants authorize their release, but grant County Defendants[1] unfettered discretion and authority to decide if, when, and how that release is actually effectuated. After such authorization, Plaintiffs allege that County Defendants defer, delay, and arbitrarily deny release while Plaintiffs suffer immense and irreparable harm; all without providing any of the procedures the law demands.[2]

Defendants, for the most part, do not contest Plaintiffs' factual allegations or directly address Plaintiffs' constitutional arguments. Instead, they attempt to invoke various procedural hurdles to deny Plaintiffs access to a federal forum for their federal constitutional claims, or deny that Defendants may be held accountable for any violations. They also—in furtherance of both their merits and jurisdictional arguments—attempt to fundamentally mischaracterize Plaintiffs' claims. *See* Plaintiffs' Reply in Support of Motion for Preliminary Injunction (PI Reply), Doc. 72 at 4-5. Longstanding precedent and basic principles of law show that Defendants' arguments are

---

[1] County Defendants include Defendants Prince George's County, Correne Labbe, Jeffrey Logan, Kenneth Gray, and Tanya Law. The remaining Defendants are Judge Defendants.

[2] To be clear, by "*authorize* for release," Plaintiffs do not mean "*ordered* released" and do not contend that Defendants violate state court orders by failing to release members of the putative class. When a court issues a pretrial referral, it is authorizing the County Defendants to release the person if they so choose. That is, the court is empowering—but not obligating—County Defendants to release the person granted the referral without further court action. At the same time, by making the referral, the court is also inherently finding that the person's pretrial detention is not necessary due to dangerousness or risk of flight.

without merit. This Court should deny Defendants' motions to dismiss in full and allow Plaintiffs' claims to proceed.

## FACTS

For the purpose of Defendants' Motions to Dismiss, Mem. Supp. County Defs.' Mot. Dismiss (County Defs.' Br.), Doc. 64-1 and Mem. Supp. Judge Defs.' Mot. Dismiss (Judges' Br.), Doc. 66-1, Plaintiffs' well-pleaded allegations must be accepted as true. *See infra* at 3–4. Regardless, Defendants' motions illustrate that the parties largely agree on the relevant facts. In fact, County Defendants admit that Plaintiffs' description of Defendants' processes is "generally . . . correct." County Defs.' Br. 6. As set forth in the Complaint, the essence of the process Plaintiffs challenge is as follows: Plaintiffs were each arrested and charged with crimes in Prince George's County. At bail hearings, each Plaintiff was authorized for release by Judge Defendants, but the final decision was delegated to the County itself—*i.e.*, Judge Defendants found that each Plaintiff could (and would) be released *if* County Defendants agreed to do so. *See* Compl., Doc. 1 ¶¶ 60–65, 140, 151, 159, 168, 175, 181, 195, 207, 218. County Defendants then delayed and deferred for weeks without action, during which time the Plaintiffs remained in jail, suffering enormous, life-changing consequences. *Id.* ¶¶ 126–38, 141–48, 153–56, 159–66, 168–72, 176–78, 182–90, 196–202, 208–14, 219–27. County Defendants' evaluation did not involve any judicial officer, or anything akin to judicial process. *See id.* ¶¶ 79–85. For Plaintiffs Frazier, Hernandez, Butler, Davis, Laguan-Salinas, and Sharp, County Defendants—and not a judge—decided not to release for reasons of their own devising (and in some instances for reasons that were known to the judge at the time of the initial authorization). *Id.* ¶¶ 146, 155, 169, 182, 197. Defendants concede that this is their process. Plaintiffs claim it is unconstitutional.

The parties differ on certain minor details. County Defendants dispute whether courts and defense counsel are regularly and promptly notified when they have decided not to release a person subject to a referral. *Compare* Compl. ¶¶ 88–89 *with* County Defs.' Br. 29. At this stage Plaintiffs' allegations must be accepted as true, but nonetheless this detail is immaterial, as by the time County Defendants decide not to release a detained person, even if they subsequently notify the court or counsel, Plaintiffs have already been unconstitutionally detained for weeks or months.

In addition, County Defendants assert (without citation) that "it is the Courts, not County Defendants, that make the final decision." County Defs.' Br. 29–30. But that is not true. County Defendants admit that after a judge has authorized release through a pretrial referral, County Defendants choose whether to release the person. If they decide to release someone—even weeks after the authorization—they do so without further judicial involvement. Compl. ¶ 65. If they decline, they may send a boilerplate notification letter, nothing more, but they keep the person detained. *Id.* ¶¶ 88–89. There is no further process unless and until defense counsel files a new motion (which may be, and often is, summarily denied without hearing). *Id.* ¶¶ 105–07. The "final decision" in this process, to the extent there is any, lies squarely with County Defendants.

Judge Defendants neither affirm nor dispute the material share of Plaintiffs' factual allegations. They do, however, recite facts about Plaintiffs' individual cases that contain a number of omissions and inaccuracies. None of those errors affect the dispositive facts for this Court's consideration, and accordingly Plaintiffs will not recite them here.

## LEGAL STANDARD

A complaint states a claim if it supports a "reasonable inference that the defendant is liable for the misconduct alleged." *Ali v. Prince George's Cnty.*, No. 16-CV-186, 2019 WL 6829100, at *2 (D. Md. Dec. 13, 2019) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). The purpose of

a Rule 12(b)(6) motion is to "test[] the sufficiency of a complaint," not to "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *King v. Rubenstein*, 825 F.3d 206, 214 (4th Cir. 2016) (internal quotation marks omitted). A court must accept all factual allegations in the complaint as true and consider them in the light most favorable to the plaintiff. *Id.* at 212.

Both sets of Defendants also contest this Court's subject-matter jurisdiction. Such arguments are reviewed under Rule 12(b)(1), which permits either a facial challenge asserting that allegations in the complaint are insufficient to establish jurisdiction or a factual challenge introducing evidence that contests the veracity of the allegations establishing jurisdiction. Defendants do not specify whether they raise facial or factual challenges. However, as discussed above, it is clear that Defendants concede nearly all of Plaintiffs' factual allegations and contest only details that are irrelevant to subject-matter jurisdiction. Defendants' motions should thus be treated as facial challenges, in which Plaintiffs are "afforded the same procedural protection" that exists on a Rule 12(b)(6) motion, *i.e.*, Plaintiffs' plausible factual allegations should be accepted as true and construed in the light most favorable to them. *Wikimedia Found. v. Nat'l Sec. Agency*, 857 F.3d 193, 208 (4th Cir. 2017) (quoting *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982)).[3]

---

[3] County Defendants cite state court decisions suggesting that "any ambiguity or uncertainty in the allegations must be construed against the pleader." County Defs.' Br. at 9. "Defendants' position directly contradicts the widely-accepted maxim that a complaint is to be construed liberally *in the plaintiff's favor*." *Locus v. Duke Univ.*, No. 08-CV-607, 2009 WL 426263, at *6 (M.D.N.C. Feb. 19, 2009) (citing *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969)); *see also, e.g.*, *Harrison v. KVAT Food Management*, 766 F.2d 155, 155 (4th Cir. 1985) ("The complaint is to be liberally construed in favor of the plaintiff."). In any event, Defendants do not identify any material ambiguities that this Court must resolve for purpose of their motion.

# ARGUMENT

## I.      Plaintiffs State Plausible Claims for Relief.

Defendants' arguments for dismissal rest on mischaracterizations of Plaintiffs' claims. The crux of Plaintiffs' claims is as follows: A person's "interest in liberty" is "fundamental." *United States v. Salerno*, 481 U.S. 739, 750 (1987); *see also, e.g.*, *Wheeler v. State*, 864 A.2d 1058, 1062 (Md. Ct. Spec. App. 2005) ("An individual's 'interest in liberty' is of a 'fundamental nature.'" (quoting *Salerno*, 481 U.S. at 746)). The government may not infringe upon a fundamental interest "*at all*, no matter what process is provided, unless the infringement is narrowly tailored to serve a compelling state interest." *Reno v. Flores*, 507 U.S. 292, 302 (1993) (citing, *inter alia*, *Salerno*, 481 U.S. at 746). In the pretrial detention context, this means that a person cannot be detained while awaiting trial unless no alternatives to detention—including release on any conditions—will reasonably protect the community's safety and ensure that the person will return to court. *See Salerno*, 481 U.S. at 748–49.[4]

Furthermore, a person must receive "strong procedural protections" before being deprived of liberty. *Zadvydas v. Davis*, 533 U.S. 678, 690–91 (2001). These procedures include a "full-blown adversary hearing" in front of a "neutral decisionmaker," consideration of alternative conditions of release, application of a heightened standard of proof, and recorded "findings of fact"

---

[4] State and federal courts around the country have reiterated this principle. *See, e.g.*, *Wheeler*, 864 A.2d at 1065; *Lopez-Valenzuela v. Arpaio*, 770 F.3d 772, 779–80 (9th Cir. 2014) (en banc); *Torres v. Collins*, No. 20-CV-00026, 2020 WL 7706883, at *8 (E.D. Tenn. Nov. 30, 2020); *ODonnell v. Harris Cnty.*, 251 F. Supp. 3d 1052, 1156–57 (S.D. Tex. 2017), *aff'd as modified*, 892 F.3d 147 (5th Cir. 2018), *overruled on other grounds by Daves v. Dallas Cnty.*, 22 F.4th 522 (5th Cir. 2022); *Reem v. Hennessy*, No. 17-CV-06628, 2017 WL 6765247, at *1 (N.D. Cal. Nov. 29, 2017); *State v. Mascareno-Haidle*, 514 P.3d 454, 461–62 (N.M. 2022); *In re Humphrey*, 482 P.3d 1008, 1013 (Cal. 2021); *Valdez-Jimenez v. Eighth Jud. Dist. Ct.*, 460 P.3d 976, 985 (Nev. 2020); *Brangan v. Commonwealth*, 80 N.E.3d 949, 962–63 (Mass. 2017).

and "statement[s] of reasons for a decision to detain." *Salerno*, 481 U.S. at 750–52; *see also* Md. Rule 4-216.1 (requiring "judicial officer" to give "individualized consideration" to detained person's circumstances and impose the "least onerous condition or combination of conditions of release . . . that will reasonably ensure" community safety and return to court).[5]

As described above, *see supra* at 2, Defendants do not dispute the crux of Plaintiffs' factual allegations (and in any case, at this stage Plaintiffs' factual allegations must be accepted as true). Under the constitutional principles articulated above, these allegations present several problems:

- When an arrested person is given a "pretrial referral" at their bail review hearing, by authorizing the Pretrial Division to release with no further process, the court necessarily does *not* find that the person's detention is "necessary" for purposes of community safety or flight risk. The notion that release is authorized on some conditions which may be sufficient cannot be reconciled with a finding that detention is necessary. As such, if the person remains detained after having been referred for pretrial release—as most people referred to the Pretrial Division are, for weeks or months—they are being detained in the absence of any finding of necessity, *i.e.*, detained in violation of the Constitution.

- For the weeks or months that the Pretrial Division takes to process referrals, referred persons remain detained, again, absent any valid finding of necessity because release has been authorized. Even if some of these people are ultimately released, the weeks or months of detention during processing violates the Constitution.

- County Defendants' process for determining whether to release a person who has been referred to the Pretrial Division does not comport with procedural due process. First, the decision about whether to release the person is necessarily not being made by a "neutral decisionmaker," but by a representative in the Pretrial Division—an arm of the County Department of Corrections. Second, the Pretrial Division does not provide any hearings at all, much less "full-blown adversary hearings." Persons referred to the Pretrial Division receive no affirmative notice of where they are in the processing queue; no opportunity to present evidence in support of their release; and no opportunity to confront any evidence that might be used to deny their release. Compl. ¶¶ 79–85. Nor does the County engage in

---

[5] Again, courts around the country have repeatedly affirmed that procedural due process requires these protections. *See, e.g.*, *ODonnell v. Harris Cnty.*, 892 F.3d at 159–61; *see also Torres*, 2020 WL 7706883, at *11–13; *McNeil v. Cmty. Prob. Servs., LLC*, No. 18-CV-00033, 2019 WL 633012, at *15 (M.D. Tenn. Feb. 14, 2019), *aff'd*, 945 F.3d 991 (6th Cir. 2019); *Caliste v. Cantrell*, 329 F. Supp. 3d 296, 314–15 (E.D. La. 2018), *aff'd*, 937 F.3d 525 (5th Cir. 2019); *Valdez-Jimenez*, 460 P.3d at 987.

an individualized analysis of each case—it merely assesses whether any individual meets its own arbitrary and shifting criteria. *See id.* ¶¶ 91–104.[6]

- County Defendants regularly decide not to release persons referred to it for a series of reasons unrelated to community safety or flight risk, including whether they have a "cooperative" person to reside with or a landline telephone. *Id.* ¶¶ 96–100. These reasons are not determined by a judge, and Detainees have no opportunity to challenge them.

- And in the event that the Division ultimately decides to release someone after applying its criteria, under County Defendants' current practices, that release typically occurs only after several weeks—or even months—of unwarranted detention. *Id.* ¶ 107; *see also* Decl. Allison Heldreth, Doc. 2-5 ¶¶ 52–56 (describing client who was released by the Pretrial Division over three months after he was first referred). In such a circumstance, by dint of the referral itself, there is no judicial finding of necessity; and the Division, by virtue of the fact that it granted release, acknowledges the absence of any need to detain. Nevertheless, the detainee experiences an extended period of detention without any arguable legal basis.

Defendants' remaining merits arguments are unavailing. First, Defendants repeatedly suggest that Plaintiffs are unlikely to succeed on the merits because Plaintiffs are not detained in violation of any court order. County Defs.' Br. 8, 27. But, as outlined above, Plaintiffs do not allege that they are detained in violation of court orders; rather, Plaintiffs allege that they are detained *in violation of the Constitution*.

Second, Defendants concede that the due process outlined above is required of pretrial detention (also referred to as "preventive" detention) but contend that their practices do not amount to "preventive" detention. County Defs.' Br. 8 n.2, 28. But at bail review hearings, pretrial referrals are layered on top of bond orders; most often, that order is "held without bond with a pretrial option" or something similar. *See* Compl. ¶ 62. Because those people remain detained even after

---

[6] The affidavit submitted by Defendant Logan, Doc. 64-2, does not cure these procedural due process concerns. As a threshold matter, Defendants may not submit evidence for purposes of resolving a Rule 12(b)(6) motion. *See supra* Legal Standard section. Moreover, the affidavit explicitly describes practices that do not afford procedural due process. For example, the affidavit admits that pretrial release levels are established by the County, not the courts; that the County considers factors irrelevant to community safety or flight risk in making its pretrial release determinations (*e.g.*, medical information); and that if the County decides to release a person referred to it, it does so without further involvement of the court.

referral to the Pretrial Division, unless and until County Defendants decide to release them—on their own time and applying their own criteria—the referral is in effect the same as pretrial detention. *Id*. The myriad cases striking down unconstitutional money bail systems are illustrative. Those cases have found that an order setting an unattainable money bail amount is a *de facto* detention order, because setting a condition of release that is impossible for a person to meet is identical in effect to setting no conditions of release at all.[7] So too here. When a person is referred to the Pretrial Division, they continue to be detained—for the weeks or months that all parties agree it takes the Division to process referrals and, in many cases, indefinitely. Compl. ¶¶ 74, 78, 86–87. As such, persons referred to the Pretrial Division are preventively detained before trial. The rigorous standards and procedures for the constitutionality of pretrial detention apply.

Third, Defendants argue that Plaintiffs have no substantive due process interest in participating in a pretrial release program. County Defs.' Br. 8–9. That is not what the complaint alleges. Plaintiffs allege that they have a fundamental, due process interest in their liberty created not by any County program but by the Constitution itself. *Salerno*, 481 U.S. at 750; *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004); *Zadvydas*, 533 U.S. at 690; *Wheeler*, 864 A.2d at 1062.

Defendants' reliance on *Hawkins v. Freeman*, 195 F.3d 732 (4th Cir. 1999), is misplaced. The Plaintiff in *Hawkins* had been validly convicted of a crime, incarcerated, released on parole, and then re-incarcerated when the parole board realized that his release had been contrary to state law. *Id.* at 735–37. The *Hawkins* court was tasked with considering whether the action of

---

[7] *See, e.g.*, *United States v. Mantecon-Zayas*, 949 F.2d 548, 550 (1st Cir. 1991) (per curiam) ("[O]nce a court finds itself in this situation—insisting on terms in a 'release' order that will cause the defendant to be detained pending trial—it must satisfy the procedural requirements for a valid *detention* order . . . ."); *United States v. Leathers*, 412 F.2d 169, 171 (D.C. Cir. 1969) (per curiam) ("[T]he setting of bond unreachable because of its amount would be tantamount to setting no conditions at all."); *United States v. Leisure*, 710 F.2d 422, 425 (8th Cir. 1983).

mistakenly releasing Mr. Hawkins on parole had created a new liberty right. The *Hawkins* court applied the framework set out by the Supreme Court in *County of Sacramento v. Lewis*, 523 U.S. 833 (1998), and determined that because the act of releasing and then re-incarcerating Mr. Hawkins did not "shock the conscience," it did not create a new liberty right, and the plaintiff's challenge therefore failed under any level of scrutiny. *Hawkins*, 195 F.3d at 741–47. But here, the right at issue—the right that Plaintiffs and putative class members claim is violated—is not some supposed right created by executive action. Rather, it is the "fundamental" right to bodily liberty created *by the Constitution itself*. Nor do Plaintiffs assert a legislatively created right. The statutory provision cited by Defendants, County Defs.' Br. 24–25 (citing Md. Code § 11-718), simply allows the County to maintain work-release and other programs for people who have already been convicted of a crime. It does not in any way mandate or create the unconstitutional conditions Plaintiffs—legally innocent pretrial detainees—have been subjected to.

Defendants also accuse Plaintiffs of framing the right "to be free from pre-trial incarceration" too broadly, citing language from *Hawkins* that cautions against "issue-begging generalizations." County Defs.' Br. 22. But again, the *Hawkins* court was cautioning against the broad framing of *newly-claimed* executively or legislatively created rights—not fundamental rights created by the Constitution itself. Plaintiffs frame the relevant right no more broadly or narrowly than precedent provides; the right to be free from pretrial incarceration absent sufficient due process has been well established by the Supreme Court and lower courts across the country for decades. *See, e.g.*, *Salerno*, 481 U.S. at 749; *Lopez-Valenzuela*, 770 F.3d at 779–80; *Torres*, 2020 WL 7706883, at *8; *ODonnell*, 251 F. Supp. 3d at 1156–57; *Reem*, 2017 WL 6765247, at *1; *Wheeler* 864 A.2d at 1065; *Mascareno-Haidle*, 514 P.3d at 461–62; *In re Humphrey*, 482 P.3d at 1013; *Valdez-Jimenez*, 460 P.3d at 984–88; *Brangan*, 80 N.E.3d at 962–63.

Finally, Defendants contend that the constitutionality of their practices rises and falls with the constitutionality of the Maryland Rules governing pretrial release and thus that Plaintiffs are effectively raising a challenge to those rules. Not so. The practices that Plaintiffs challenge are not compelled by the Rules. And Defendants nevertheless do not fully comply with them; for example, Rule 4-216 requires that pretrial release and detention determinations be made by a "judicial officer"—which County Defendants are undisputedly not. Furthermore, while Rule 4-216.1 permits a court to "commit the [arrested person] generally to supervision by a pretrial services unit operating in the county, subject to more detailed requirements of that unit appropriate to the supervision," the Rule's plain language does not empower a pretrial services unit like the Pretrial Division to make the threshold determination of *whether* a person should be released at all, or delay for weeks or months to make that determination.

In Prince George's County, presumptively innocent people are routinely detained for weeks or months without any judicial finding that their detention is necessary to ensure community safety or their return to court. *See, e.g.*, Compl. ¶ 233. Rather than setting bail conditions at an open hearing, judges effectively abdicate this responsibility to County bureaucrats who decide the question of pretrial release entirely on their own timetable and at their discretion. *Id.* These practices violate the Constitution.

## II.     This Court Has Subject-Matter Jurisdiction to Hear This Case.

### A.  Plaintiffs Have Standing to Bring Their Claims.

Standing is, at its core, a jurisdictional requirement that Plaintiffs have "a personal stake in the outcome of the controversy." *Baker v. Carr*, 369 U.S. 186, 204 (1962). As such, Plaintiffs must demonstrate that (1) they have suffered an "actual or imminent," "concrete and particularized" injury, (2) the injury was caused by Defendants' conduct, and (3) the injury is redressable by the

Court. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992) (internal quotation marks omitted). "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice" to demonstrate these three elements. *Id.* at 561. And in a class action, particularly "a class action challenging the constitutionality of temporary pretrial detentions" where individual claims are "inherently transitory," standing is preserved through the "relation back" doctrine so long as Plaintiffs had standing at the time the complaint was filed and seek class certification. *Genesis HealthCare Corp. v. Symczyk*, 569 U.S. 66, 76 (2013).

Plaintiffs have met each of these requirements. Plaintiffs were, and in some cases still are, injured by being detained in violation of their constitutional rights. *See* Compl. ¶¶ 247–74.[8] Their injuries are and have been caused by Defendants' practice of authorizing arrested persons for pretrial release but continuing to detain them for weeks or months, in some cases until their criminal cases resolve, absent substantive and procedural due process. *See, e.g.*, Compl. ¶¶ 249–51. They are redressable by this court, via a declaration that Defendants' practices are unconstitutional, an injunction requiring change going forward, and damages. *See* Compl. ¶ 282.

Defendants do not address Plaintiffs' damages claims in their standing arguments, and thereby apparently concede that all Plaintiffs, presently detained or not, have standing to seek damages for their unconstitutional detention. Damages inherently seek retrospective relief for past injuries. *See, e.g.*, *Nanni v. Aberdeen Marketplace, Inc.*, 878 F.3d 447, 454 (4th Cir. 2017) (distinguishing "damages" for "past injuries" from "prospective declaratory and injunctive relief"

---

[8] A motion for class certification was filed contemporaneously with the Complaint. Pls.' Mot. for Class Certification, Doc. 4. Five Plaintiffs—Robert Frazier, Anibal Hernandez, D.P., Christopher Butler, and Miramba Williams—were detained at the time the Complaint was filed (and the latter two remain detained). *See* Compl. ¶¶ 17–22. These plaintiffs seek both damages and prospective equitable relief. The remaining four plaintiffs allege that they were, in the past, detained in violation of their constitutional rights. *See* Compl. ¶¶ 13–16. These plaintiffs seek only damages.

which requires a showing of "continuing, present adverse effects") (internal quotation marks omitted). Accordingly, all Plaintiffs have standing to pursue damages on behalf of themselves and the putative Damages Class.

As to Plaintiffs' claims for equitable relief, County Defendants argue that Plaintiffs have not suffered an "injury-in-fact" sufficient to confer standing, because (1) except for Mr. Butler and Mr. Williams, Plaintiffs are no longer detained pursuant to pretrial referrals; and (2) Mr. Butler and Mr. Williams are not detained in violation of any state court order and are "ineligible" for release pursuant to County policy and thus, Defendants contend, have not suffered any actual injury. County Defs.' Br. 10–13. As to the first point, "[t]he existence of federal jurisdiction ordinarily depends on the facts as they exist when the complaint is filed." *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 830 (1989). When Plaintiffs filed their complaint, Mr. Frazier, Mr. Hernandez, and D.P. were detained despite having been authorized for release. Compl. ¶¶ 18–20. That they were released post-filing is properly assessed as a question of mootness, *see infra* section II.C, not standing. *U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 397 (1980). All five Plaintiffs who were detained when the Complaint was filed have standing to pursue equitable relief.

As to the second point, Defendants misunderstand Plaintiffs' allegations. Plaintiffs do not allege that they are detained in violation of any court order. Rather, Plaintiffs allege that Defendants' practices cause them to be detained *in violation of the federal and state Constitutions*. *See* PI Reply at 4-5. This constitutional harm constitutes a "concrete and particularized" injury sufficient to establish standing. *See, e.g.*, *Holland v. Rosen*, 895 F.3d 272, 287 (3d Cir. 2018) (suit alleging pretrial detention without "access to a constitutionally compliant process" stated an injury sufficient to establish standing).

Furthermore, the Article III requirement is one of injury *in fact*, not injury in law. The loss of one's bodily liberty is a self-evident injury in fact, regardless of the reason it has occurred. *See, e.g.*, *Karsjens v. Piper*, 845 F.3d 394, 405–06 (8th Cir. 2017) (finding that alleged loss of liberty without due process is a "concrete injury" sufficient to establish standing). The Court need not accept at this juncture that Plaintiffs' detention is, in fact, unconstitutional to find that Plaintiffs have standing. *See, e.g.*, *Cnty. of Riverside v. McLaughlin*, 500 U.S. 44, 51 (1991) (holding that pretrial detainees had standing to challenge unconstitutional detention before deciding merits of constitutional claim because "Plaintiffs alleged in their complaint that they were suffering a direct and current injury as a result of this detention"); *Karsjens*, 845 F.3d at 406 (same, for civil commitment of sex offenders); *Coreas v. Bounds*, No. 20-CV-0780, 2020 WL 5593338, at *8 (same, for immigration detention). To find otherwise would "confuse[] standing with the merits of [Plaintiffs'] claim[s]." *Coreas*, 2020 WL 5593338, at *8. Courts may not "raise the standing hurdle higher than the necessary showing for success on the merits in an action." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 181 (2000). Parties are regularly found to have standing despite uncertainty about the merits of their constitutional claims. *See, e.g.*, *Karsjens*, 845 F.3d at 405–06 (finding standing but ultimately ruling against plaintiffs on the merits of their due process claim). As such, Plaintiffs have pled an injury sufficient to confer standing.

## B. Plaintiffs' Claims Are Ripe for Judicial Resolution.

County Defendants' arguments that Plaintiffs' claims are not ripe, County Defs.' Br. 14, are similarly unavailing. First, County Defendants argue that Plaintiffs do not have "ripe" injuries because they are not being held in violation of any court order. As explained above, Plaintiffs do not allege that their detention violates any court order. Plaintiffs' injuries stem from being detained *in violation of the Constitution*. The fact of their detention is not "contingent on future events,"

"abstract," or "speculative." County Defs.' Br. 14 (citations omitted). It has been very real since the moment they were arrested.

Second, County Defendants argue that Plaintiffs' injuries are not ripe because they could raise their claims at subsequent bond review hearings instead of bringing them to federal court. This confuses doctrines of abstention and exhaustion, *see infra* section III, with the jurisdictional prerequisite of ripeness. "[T]he settled rule" is "that exhaustion of state remedies is *not* a prerequisite to an action under § 1983." *Pakdel v. City of San Francisco*, 141 S. Ct. 2226, 2230 (2021) (cleaned up); *see also id.* at 2231 (distinguishing ripeness inquiry from exhaustion). The detained Plaintiffs' injuries are current and ongoing, and the released Plaintiffs' injuries are complete. Their claims are ripe for adjudication.

### C. Plaintiffs' Claims Are Not Moot.

County Defendants and Judge Defendants both assert that Plaintiffs' claims are moot, for slightly different reasons. County Defendants argue that the claims of Plaintiffs who are not presently detained are moot because "they no longer have a live case or controversy," and the claims of Mr. Butler and Mr. Williams are moot because the state court has not ordered them released and thus, County Defendants contend, they have not suffered any injury.[9] These arguments are unavailing for the same reasons County Defendants' standing arguments fail: the released Plaintiffs' damages claims rest on past injuries that have not been remedied, and the

---

[9] County Defendants also include a paragraph about the "backlog of cases" created by the COVID-19 pandemic, which they claim has slowed the processing of pretrial referrals. County Defs.' Br. 15–16. Yet Plaintiffs have alleged and Defendants Labbe and Logan admit that the pretrial referral system long predated the pandemic. Complaint ¶ 237; Logan Aff., Doc. 64-2, at 1; Labbe Aff., Doc. 65, at 1. At this stage, Plaintiffs' plausible allegations must be credited. *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969). In any case, Defendants do not explain how pandemic-created delays relate to mootness.

ongoing injury the equitable Plaintiffs allege is not detention in violation of a state court order, but rather detention in violation of constitutional guarantees. These issues are live and ongoing.

Judge Defendants, on the other hand, argue that Plaintiffs' claims against them are moot because several Plaintiffs have been released since the Complaint was filed and no detained Plaintiff has been referred to the Division by any Judge Defendant. Judges' Br. 25–28. This is not true. As Plaintiffs plead, the two Plaintiffs who remain detained—Mr. Butler and Mr. Williams— were issued pretrial referrals by Defendants Judge Cathy Serrette and Judge Gregory Powell, respectively. Compl. ¶¶ 168, 175. They remain detained despite those referrals' authorization of release. But after this federal lawsuit was filed, these Plaintiffs' criminal cases were transferred to judges who are not defendants in this action. As such, Judge Defendants argue, no Plaintiff has a "live" controversy with any Judge Defendant. Two well-established exceptions to mootness independently render these arguments unavailing.

### 1. The Inherently Transitory Exception Applies to Claims Regarding Pretrial Detention.

Although a putative class action is ordinarily moot if the named plaintiffs' claims become moot before the class is certified, there is a body of "cases in which the controversy involving the named plaintiffs is such that it becomes moot as to them before the district court can reasonably be expected to rule on a certification motion." *Sosna v. Iowa*, 419 U.S. 393, 402 n.11 (1975). In such circumstances, "the relation back doctrine is properly invoked to preserve the merits of the case for judicial resolution" so long as the named plaintiffs had standing when the case was filed and move for class certification. *McLaughlin*, 500 U.S. at 52 (internal quotation marks omitted); *see also* Pls.' Mot. for Class Certification.

Claims brought by pretrial detainees challenging the legality of their detention are the axiomatic "inherently transitory" claims. Pretrial detention "is by nature temporary, and it is most unlikely that

any given individual could have his constitutional claim decided on appeal before he is either released or convicted. The individual could nonetheless suffer repeated deprivations, and it is certain that other persons similarly situated will be detained under the allegedly unconstitutional procedures." *Gerstein v. Pugh*, 420 U.S. 103, 110 n.11 (1975) (holding that putative class action brought by plaintiffs who had since been released from pretrial detention was not moot). Because "[t]he length of pretrial custody cannot be ascertained at the outset, and it may be ended at any time by release on recognizance, dismissal of the charges, or a guilty plea, as well as by acquittal or conviction after trial . . . [t]he claim . . . is one that is distinctly 'capable of repetition, yet evading review.'" *Id*.; *see also Genesis*, 569 U.S. at 76 (using the example of "a class action challenging the constitutionality of temporary pretrial detentions" as emblematic of an "inherently transitory" claim subject to the "relation back" doctrine).

Courts around the country have affirmed that challenges to unlawful detention by pretrial detainees are "precisely the type [of] situation for which the inherently transitory exception exists." *Baxley v. Jividen*, 508 F. Supp. 3d 28, 44 (S.D.W. Va. 2020); *see also Olson v. Brown*, 594 F.3d 577, 582 (7th Cir. 2010) ("[T]he length of incarceration in a county jail generally cannot be determined at the outset and is subject to a number of unpredictable factors, thereby making it inherently transitory."); *Dubon Miranda v. Barr*, 463 F. Supp. 3d 632, 641–42 (D. Md. 2020), *vacated and remanded on other grounds sub nom. Miranda v. Garland*, 34 F.4th 338 (4th Cir. 2022) (applying exception to unlawful detention claims brought by immigrant detainees); *Coreas*, 2020 WL 5593338, at *9 (same).

So too here. At the time this lawsuit was filed, each detained Plaintiff had standing to bring a claim for declaratory relief against the Judge Defendant who authorized their release and referred the final release decision to County Defendants. The fact that those Plaintiffs have since been

released or transferred to other judges does not moot their claims; rather, these rapid changes evince the inherently transitory nature of pretrial detention. When this lawsuit was initiated, it was not known whether or when any individual Plaintiff would be released by the Pretrial Division, resolve their criminal case (by trial or plea deal), or be transferred. *See Jonathan R. by Dixon v. Justice*, 41 F.4th 316, 325–26 (4th Cir. 2022) (holding that "inherently transitory" exception applied to claims of putative class of children challenging state guardianship system because the length that any child would remain in system is "exceedingly unpredictable"). The claims for declaratory relief brought by Plaintiffs who were detained at the time that the Complaint and Motion for Class Certification were filed should "relate back" to the time of their filing.[10]

*O'Shea v. Littleton*, 414 U.S. 488 (1974), does not counsel otherwise. In *O'Shea*, "[n]either the complaint nor [plaintiffs'] counsel suggested that any of the named plaintiffs at the time the complaint was filed were themselves" illegally detained. *Id*. at 496. As such, "[n]one of the named plaintiffs" alleged that they had "suffered any injury." *Id*. at 495. But here, at the time the Complaint was filed, five Plaintiffs were detained despite having been referred for release. These Plaintiffs' claims against Judge Defendants who referred them to County Defendants for release are not moot, because, at the moment the Complaint was filed, the Plaintiffs remained detained as a result of those referrals and under the jurisdictional power of the Defendants. Furthermore, *O'Shea* predated *Sosna* and *Gerstein*, which together established the inherently transitory exception in the pretrial detention context. Defendants do not offer any discussion of the exception, or why *O'Shea* should control in light of it.

---

[10] Plaintiffs seek declaratory relief against only Judge Defendants who referred Plaintiffs detained at the time the Complaint was filed for pretrial release. Mr. Frazier had been referred for release by Defendant Judges Bereano and Clark-Edwards; Mr. Hernandez by Defendant Judge Allen; D.P. by Defendant Judges Clark-Edwards and Denton; Mr. Butler by Defendant Judge Serrette; and Mr. Williams by Defendant Judge Powell.

### 2. The Transfer of Plaintiffs' Cases Does Not Moot Their Claims.

Judge Defendants argue that, because they transferred the cases of the still-detained Plaintiffs to other judges who are not named in this lawsuit, they have mooted Plaintiffs' claims. Judges' Br. 27. This proposition has problematic implications. In its most pernicious form, it would allow state officials who behave unconstitutionally to avoid liability by endlessly transferring responsibility to colleagues. For example, a jailer withholding necessary medicine from a detainee could, upon suit, transfer him to a different facility. Then, when *that* jailer is sued, he could transfer the detainee back to the first jail, creating a repeated process of mooting out claims to deny equitable relief.

These transfers are best understood as a form of voluntary cessation. "[V]oluntary cessation of a challenged practice rarely moots a federal case." *City News & Novelty, Inc. v. City of Waukesha*, 531 U.S. 278, 284 n.1 (2001); *see also Knox v. SEIU, Local 1000*, 567 U.S. 298, 307 (2012); *Parents Involved in Cmty. Schs. v. Seattle Sch. Dist. No. 1*, 551 U.S. 701, 719 (2007) (holding that defendant failed to meet "heavy burden" to show mootness). A defendant who asserts that a lawsuit is moot because they have voluntarily ceased the challenged conduct "bears the formidable burden of showing that it is *absolutely clear* the allegedly wrongful behavior could not reasonably be expected to recur." *Friends of the Earth*, 528 U.S. at 190 (emphasis added).

But Judge Defendants "retain[] the authority and capacity to repeat an alleged harm." *Porter v. Clarke*, 852 F.3d 358, 364 (4th Cir. 2017). In fact, unlike a typical voluntary cessation case, Judge Defendants have not stopped the challenged conduct—they have merely transferred primary responsibility for Plaintiffs' criminal cases. Soon after this lawsuit was filed, Plaintiff Butler's case was transferred from Defendant Judge Cathy H. Serrette to non-defendant Judge Krystal Q. Alves. Judges' Br. 8. Similarly, Plaintiff Williams's case was transferred from Defendant Judge Gregory C. Powell to non-defendant Judge Patrice E. Lewis. Judges' Br. 9. Judge

Defendants do not explain why Plaintiffs' cases were transferred to non-defendant judges, or if they might be transferred again. Nothing prohibits Judge Defendants from transferring Plaintiffs' cases back to themselves at any point, and Judge Defendants have not provided any assurances, binding or otherwise, that they will not do so. Accepting Judge Defendants' mootness argument would create "perverse incentives" to simply transfer cases among judges, as often as necessary to avoid accountability. *Jonathan R.*, 41 F.4th at 326. Importantly, Judge Defendants have not claimed that the transfer renders them powerless to provide relief for the harms they originally caused.

Voluntary cessation especially does not moot a claim when, as here, the defendant continues to "vigorously defend[] the constitutionality" of the challenged practice (i.e., deferring pretrial release/detention decisions to the Pretrial Division via pretrial referrals), *Parents Involved*, 551 U.S. at 719, because that strongly suggests the defendant "would [not] necessarily refrain from" reverting to its prior policy, *Knox*, 567 U.S. at 307. Defendants' motions to dismiss make clear that their disputes with Plaintiffs' claims are not factual, *see supra* section I, but legal. Defendants continue to defend the constitutionality of their practices. They do not argue that they have ceased these practices for anybody but the named Plaintiffs. As such, the voluntary cessation exception applies because Judge Defendants were responsible for Plaintiffs' ongoing injuries when this suit was filed, and continue to be responsible for hundreds of putative class members' ongoing injuries.

### III.    This Court Is Not Required to Abstain from Hearing This Case.

Defendants next advance expansive readings of three doctrines to suggest that this Court must abstain from exercising jurisdiction over Plaintiffs' claims. But "federal courts have 'no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not given.'"

*Jonathan R.*, 41 F.4th at 327 (quoting *Cohens v. Virginia*, 19 U.S. 264, 404 (1821)). The federalism principles Defendants assert—*Younger* abstention (both sets of Defendants), and *Burford* and *Colorado River* abstentions (Judge Defendants)—do not apply here. Indeed, federal courts have denied these arguments in materially analogous circumstances.

At the outset, Defendants' abstention arguments, even if successful, would apply only to Plaintiffs' claims for equitable relief. This Court "has no discretion to dismiss rather than to stay claims for monetary relief that cannot be redressed in the state proceeding." *Nivens v. Gilchrist*, 444 F.3d 237, 248 (4th Cir. 2006) (citation omitted). "State criminal proceedings do not . . . allow for claims of money damages by criminal defendants-such a claim is simply not available." *Id.* Accordingly, even if this Court were obligated to abstain, it could do no more than stay Plaintiffs' damages claims until their state proceedings end—which, for several Plaintiffs, has already occurred. *See* Judges' Br. Ex. 1, at 2, Doc. 66-3 (showing Davis, Sharp, and Worthington cases are closed). But as explained below, precedent clearly establishes that abstention does not apply.

### A. *Younger* Abstention Does Not Apply to Plaintiffs' Claims.

Federal courts have a "virtually unflagging" "obligation" to adjudicate cases within their jurisdiction. *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 77 (2013) (citation omitted). As Chief Justice Marshall colorfully put it, to "decline the exercise of jurisdiction" is tantamount to "treason to the [C]onstitution." *Cohens v. Virginia*, 19 U.S. 264, 404 (1821). Where Plaintiffs bring federal claims, as they do here, "federal courts 'are obliged to decide' them in all but 'exceptional' circumstances." *Jonathan R.*, 41 F.4th at 321 (quoting *Sprint*, 571 U.S. at 72–73).

The *Younger* abstention doctrine is a "narrow" exception. *Id.* A court can abstain under *Younger* only if three factors are present: 1) interference with an ongoing state proceeding; (2) an important state interest implicated by that proceeding; and (3) an adequate opportunity for the

plaintiffs to litigate their constitutional challenge in the ongoing proceeding. *See Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982). Neither the first nor the third requirement is met here. This case asks whether the government is detaining people pretrial without meeting substantive and procedural requirements. Answering that question in the affirmative would not interfere with any ongoing state proceeding because pretrial release is collateral to the merits, and, thus, can have no effect on the outcome of any criminal prosecution. Nor do plaintiffs have an adequate opportunity to raise their federal constitutional claims in their state criminal proceedings before suffering the very constitutional violation they challenge. These are two independent bases for rejecting *Younger* abstention.

### 1. Plaintiffs' Requested Relief Will Not Interfere with Ongoing State Proceedings Under *Younger.*

This case is about whether federal and state constitutions permit the government to keep people in jail before a criminal trial without providing basic nondiscretionary procedural safeguards, and when doing so is unnecessary to serve the government's interests. That issue is collateral to the merits of each Plaintiff's criminal prosecution, and this Court's resolution of it will not interfere with any ongoing state proceeding. The Supreme Court's decision in *Gerstein* makes this clear, holding *Younger* inapplicable to a similar class action challenging pretrial detention without a probable cause finding. *See* 420 U.S. at 108 n.9.

In *Gerstein*, certain individuals arrested in Florida were subjected to weeks of pretrial detention before they could challenge the probable cause underlying their arrest. *Id*. at 105–06. The district court held this practice unconstitutional and ordered prompt probable-cause hearings. *Id.* at 107–08. The Supreme Court held that *Younger* abstention posed no obstacle:

> [Plaintiffs'] claim for relief was not barred by the equitable restrictions on federal intervention in state prosecutions, *Younger v. Harris*, 401 US. 37 (1971). The injunction was not directed at the state prosecutions as such, but only at the legality of pretrial detention without a judicial hearing, an issue that could not be raised in

defense of the criminal prosecution. The order to hold preliminary hearings could not prejudice the conduct of the trial on the merits.

*Id.* at 108 n.9.

The Supreme Court later reaffirmed that in *Gerstein*, "the action was not barred by *Younger* because the injunction was not addressed to a state proceeding and therefore would not interfere with *the criminal prosecutions themselves*." *Moore v. Sims*, 442 U.S. 415, 431 (1979) (emphasis added). In short, where the declaratory or injunctive relief sought would not "halt or substantially interfere with" the prosecution, *Younger* abstention is inappropriate. *Conover v. Montemuro*, 477 F.2d 1073, 1080 (3d Cir. 1972) (cited with approval in *Gerstein*, 420 U.S. at 108 n.9). Obligating proper procedures for pretrial detention determinations—including that they be made at a timely hearing by a neutral decisionmaker—does not halt or in any way interfere with the merits of Plaintiffs' criminal prosecutions.

The result *Gerstein* compels here has been reached by other courts confronting challenges to pretrial detention practices. In *Arevalo v Hennessy*, 882 F.3d 763 (9th Cir. 2018), for example, the Ninth Circuit explained that "[r]egardless of how the bail issue is resolved, the prosecution will move forward unimpeded." *Id.* at 766 (citing *Gerstein*, 420 U.S. at 108 n.9). The court concluded: "[B]ecause the question of whether the petitioner is entitled to a constitutional bail hearing is separate from the state prosecution, and would not interfere with those proceedings, *Younger* abstention is not appropriate." *Id.*; *accord, e.g.*, *Schultz v. Alabama*, 42 F.4th 1298, 1312 (11th Cir. 2022) ("*Younger* does not apply here because [the plaintiff] is not asking us to enjoin any prosecution. He merely seeks a faster bail determination, which does not require . . . interfering with any ongoing or imminent state prosecution."); *Page v. King*, 932 F.3d 898, 904 (9th Cir. 2019) (citing *Gerstein* to hold *Younger* inapplicable to constitutional challenge to probable-cause proceedings determining pretrial detention); *Walker v. City of Calhoun*, 901 F.3d 1245, 1255 (11th

Cir. 2018) ("[A]s in *Gerstein*, Walker merely asks for a prompt pretrial determination of a distinct issue, which will not interfere with subsequent prosecution."); *Hunt v. Roth*, 648 F.2d 1148, 1154 (8th Cir. 1981) (rejecting abstention because "[a] declaratory judgment that the State cannot decree per se that certain offenses are non-bailable before trial does not interfere with the state's orderly criminal prosecution"), *vacated as moot sub nom. Murphy v. Hunt*, 455 U.S. 478 (1982); *Fernandez v. Trias Monge*, 586 F.2d 848, 851 (1st Cir. 1978) (rejecting abstention because "that collateral right" to "not . . . be detained prior to trial without . . . due process" was "neither a defense at trial nor grounds for vacation upon conviction" (citing *Gerstein*, 420 U.S. at 119)); *cf. Jonathan R.*, 41 F.4th at 333 (rejecting *Younger* abstention where plaintiffs "do not seek to pause—much less to end—any state proceedings"). Plaintiffs and putative class members do not seek to pause or end their criminal prosecutions. Because the issue of constitutional pretrial detention is collateral to a criminal prosecution, the limited bases for applying *Younger* are inapplicable. This is sufficient to conclude the *Younger* inquiry and reject its application.

Judge Defendants also invoke *O'Shea* to support their *Younger* argument. Judges' Br. 1. They misread *O'Shea* and its precedent. The Court in *O'Shea* cited and applied *Younger*, *see* 414 U.S. at 499; it did not overrule the three-part test for *Younger* abstention, described above, that has been repeatedly reaffirmed both before and after *O'Shea*. And *O'Shea* is readily distinguished on the facts. The plaintiffs in *O'Shea* sought federal oversight of virtually every aspect of a jurisdiction's criminal justice system—from bail to selective prosecution to jury fees to sentencing—arguing that the entire legal system was tainted by racial bias and other constitutional violations. *See id.* at 491–92. In particular, the *O'Shea* plaintiffs alleged a pattern and practice of intentional racial discrimination by county officials at multiple stages of the criminal process, *see id.* at 491, claims that were (to use *Gerstein*'s phrase) "directed at the state prosecutions as such."

420 U.S. at 108 n.9. *O'Shea* was especially concerned that the relief requested would have required the federal court to supervise the daily administration of almost every aspect of state court criminal proceedings and to review each case for potential racial bias. *See* 414 U.S. at 501–02.

By contrast, the relief Plaintiffs seek here is limited to a "simple, nondiscretionary procedural safeguard": constitutionally adequate due process if they are to be detained pretrial. *See* Compl. ¶ 282; *Gerstein*, 420 U.S. at 125; *Walker*, 901 F.3d at 1255 (plaintiff seeking "a prompt pretrial determination of a distinct issue" is "not . . . the sort of pervasive federal court supervision of State criminal proceedings that was at issue in *O'Shea*"); *Tarter v. Hury*, 646 F.2d 1010, 1013 (5th Cir. 1981) (rejecting *Younger* abstention for injunction requiring courts to docket and consider pretrial bail motions). As argued above, and as many courts have held, Plaintiffs' request for relief related to pretrial detention will not intrude upon their prosecutions on the merits and, accordingly, is collateral to their criminal proceedings. Any relief, therefore, would not cause meaningful federal intrusion on their criminal cases, let alone so much as to require dismissal.

Recent controlling precedent makes it abundantly clear that regardless of *O'Shea*, abstention under *Younger* is inappropriate. In *Jonathan R.*, the plaintiffs represented a putative class of thousands of foster children in West Virginia challenging the state's administration of child welfare services. 41 F.4th at 320. The district court dismissed their challenge because the children were involved in ongoing state custody proceedings. *Id.* at 324. Per the district court, federal intervention into their processes would undermine comity and federalism and "reflect negatively upon the state court's ability to enforce constitutional principles." *Id.* at 320–21.

The Fourth Circuit reversed, finding that "principles of federalism not only do not preclude federal intervention, they compel it." *Id.* at 321. There, as here, the plaintiffs faulted the implementation and effect of state court decisions. And there, as here, the state defendants

protested that the federal relief sought by the plaintiffs (including the appointment of a monitor) would result in "an ongoing federal audit of" state hearings. *Id.* at 334. (quoting *O'Shea*, 414 U.S. at 500). The Fourth Circuit found the comparison inapposite, noting that in *O'Shea*, the relief sought would necessitate "*both* an 'interruption of state proceedings' and 'an ongoing federal audit of' them." *Id.* (quoting *O'Shea*, 414 U.S. at 500).

As in *Jonathan R.*, "[n]one of that is true here." *Id.* Relief against County Defendants—the only injunctive relief sought by Plaintiffs—is, in fact, significantly less onerous than the "meaningful relief . . . by monitoring executive action" that the *Jonathan R.* court found akin to *Gerstein*. *Id.* Unlike the plaintiffs in *Jonathan R.*, Plaintiffs here do not seek appointment of a monitor or ongoing direct scrutiny of the County Defendants. The same is true of the declaratory relief Plaintiffs seek against Judge Defendants. Although certainly such relief will, in principle, "necessarily run against the courts," *id.*, it does not contemplate the same intrusive remedial action as an injunction, and, certainly, not the wide-ranging injunction sought in *O'Shea*. "A declaratory judgment is simply a statement of rights, not a binding order supplemented by continuing sanctions." *Steffel v. Thompson*, 415 U.S. 452, 482 (1974) (Rehnquist, J., concurring).

In sum, the sprawling relief sought in *O'Shea* does not alter what this Court is required to consider under *Middlesex* and *Gerstein*. And the application of those cases and their progeny to Plaintiffs' alleged facts is straightforward. As other courts to have considered this question have found, there is no ongoing proceeding with which the adjudication of Plaintiffs' claims would interfere. That is enough for the Court to decline abstention under *Younger*. For these reasons, this Court should not abstain on *Younger* grounds.[11]

---

[11] In any event, abstention at this stage of the litigation would be premature. As in *Jonathan R.*, "[s]hould [this Court] determine that *certain specific relief* would overstep *Younger*'s bounds, it can always reject it to secure [its] comity interests." *See* 41 F.4th at 334 (emphasis added).

## 2. Plaintiffs Do Not Have an Adequate Opportunity to Challenge the Constitutionality of Their Detention in State Court.

*Younger* abstention is independently unwarranted for an additional reason. The ongoing criminal proceedings in Prince George's County do not provide an "adequate opportunity" to challenge the constitutionality of Defendants' pretrial detention practices.

### a. Plaintiffs Lack an Adequate Opportunity to Challenge the Constitutionality of Their Detention in State Criminal Proceedings.

Even if Plaintiffs' claims were directed against their criminal prosecutions, abstention would be inappropriate here because Plaintiffs do not have an adequate, timely opportunity to seek a remedy for their federal constitutional harms in state court.

Plaintiffs allege that their pretrial detention determinations are deferred by state trial courts to County Defendants, who conduct a delayed and opaque process devoid of key procedural protections required by the state and federal constitutions. *See* Compl. ¶¶ 60–104. As a result, people who are given pretrial referrals must wait weeks or months for a determination about whether they will be released. *Id*. ¶ 107. During that time, state courts "regularly decline to hear motions for bail reconsideration" while the Pretrial Division has not yet rendered a decision. *Id*. ¶ 106. By the time follow-up bail review hearings are scheduled (if they are scheduled), putative class members "often ha[ve] been detained for weeks or months." *Id*. ¶ 107. And state courts regularly refuse to hear motions for consideration or to consider arguments about the Pretrial Division's refusal to release persons.[12] *See id*. ¶¶ 106–110. As such, Plaintiffs do not have an adequate or timely opportunity to raise their constitutional claims.

---

[12] In addition, though resolution of a motion to dismiss should rest on Plaintiffs' allegations alone, evidence in the record demonstrates that state court hearings do not allow for constitutional claims. *See* Decl. Allison Heldreth ¶¶ 44–47, Doc. 2-5; Decl. Peter Im ¶ 51, Doc. 2-4; Decl. Christina Meiring ¶ 29, Doc. 2-11; Decl. Fiona Apple ¶¶ 11–14, Doc. 2-7; Decl. Bill Haines ¶ 14, Doc. 2-8; Decl. Debbie Polhemus ¶¶ 13–15, Doc. 2-9. The law cannot require deference to state courts who

Defendants argue that the "claims Plaintiffs intend to make in this case have been extensively litigated by their respective public defenders in their state cases." Judges' Br. 22. Specifically, they claim, public defender attorneys have "made that argument that [Plaintiffs] are being held" despite having "been ordered released." *Id.* at 22 (citing Judges' Br. Ex. 11 at 6, 25–26, Doc. 66-13).[13] Again, Plaintiffs' claims are not that they are being held in violation of state court orders of release but rather *in violation of the federal and state constitutions. See supra* section II.A. The gravamen of Plaintiffs' claims is that referring people to the Pretrial Division and allowing the Division to control the timing and outcome of the release decision, instead of making those decisions in court, violates due process. Accordingly, Plaintiffs do not seek to *enjoin or enforce* state court judgments—they demand the existence of those judgments.[14]

The fact that a judge may reconsider this deferral after the Division's delay does not affect the *Younger* analysis. At that point, a Plaintiff will already have suffered incarceration for weeks

---

refuse to render decisions, as this would operate to deny individuals *any* forum to vindicate their constitutional rights. *See also* Pls.' Memo. Law Supp. Mot. Prelim. Inj. 11, Doc. 2-1.

[13] Defendants' only-cited support for this contention is argument by County Defendants' counsel, and "[i]t is well-settled that the arguments of counsel are not evidence." *Thompson v. Astrue*, No. 11-CV-00942, 2012 WL 1676609, at *5 (D. Md. May 11, 2012) (citing 22 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 5163 (1st ed. 1969)). Regardless, at this stage Plaintiffs' allegations must be accepted as true, and while public defenders have attempted to make a number of arguments to secure their Plaintiff clients' release, judges have refused to entertain those arguments.

[14] Moreover, any determination for abstention purposes that Defendants' processes are constitutionally adequate would necessarily put the cart before the horse. "[T]he adequacy of the state court review of bail-setting procedures is essential to [Plaintiffs'] federal cause of action. In short, to find that the plaintiffs have an adequate hearing on their constitutional claim in state court would decide its merits." *ODonnell*, 892 F.3d at 156 (rejecting *Younger* abstention in challenge to bail proceedings).

or months despite a determination that they are authorized for release.[15] *Younger* does not require abstention merely because an eventual hearing may provide an opportunity to end *further* harm. For an opportunity to be adequate, it must be "timely." *Gibson v. Berryhill*, 411 U.S. 564, 577 & n.16 (1973) (declining to abstain under *Younger* because plaintiffs had no "opportunity to raise and have timely decided" their claims). That makes sense: If a person had to endure a lengthy period of pretrial detention in order to challenge the constitutionality of such detention, eventual success on that challenge would be hollow indeed—the harm would already have occurred. *Gerstein* further illustrates this principle. The plaintiffs in *Gerstein* were not detained until trial without any opportunity to be heard. Rather, that opportunity was simply delayed: Plaintiffs had to wait 30 days for a special preliminary hearing or at least a month for an arraignment. *See* 420 U.S. at 106. The plaintiffs were, thus, left without any realistic opportunity to challenge their detention for at least a month, at which point a ruling could not remedy the incarceration they had suffered already. *See id*. at 108 n.9. Under those circumstances, abstention was improper. *See id*.; *Pugh v. Rainwater*, 483 F.2d 778, 782 (5th Cir. 1973) (finding "no remedy would exist" if arrestees had to wait until a later hearing for a probable-cause determination because the challenged incarceration "would have ended as of [that] time").

This case is indistinguishable from *Gerstein* and *Gibson*. Plaintiffs alleged that "[w]hile the Pretrial Division has not made a release decision either way, defense attorneys are generally

---

[15] In addition to negating the "adequate opportunity" prong of *Younger* abstention, irreparable harm is an independent ground for rejecting *Younger* abstention. *See, e.g.*, *Golphin v. Thomas*, 855 F.3d 278, 286 (4th Cir. 2017) ("A federal court may disregard *Younger*'s mandate to abstain from interfering with ongoing state proceedings . . . where 'extraordinary circumstances' exist that present the possibility of irreparable harm.") (citations omitted).

not permitted to seek reconsideration of their clients' bail orders." Compl. ¶ 77.[16] As in *Gerstein* and *Gibson*, abstention cannot be used to force Plaintiffs to endure the very same irreparable harm that they seek to prevent. As the Supreme Court has explained, "[a]ny amount of actual jail time" imposes "exceptionally severe consequences for the incarcerated individual." *Rosales-Mireles v. United States*, 138 S. Ct. 1897, 1907 (2018) (citations omitted). Even if the Pretrial Division's delays were only a few days, a challenge to that period of detention is not subject to *Younger* abstention. *See Page*, 932 F.3d at 904 (finding post-trial ruling that pretrial detention was unconstitutional would leave an individual "irreparably deprived of his rights," such that *Younger* abstention was inappropriate).

### b. The Availability of a Separate State Proceeding Is Irrelevant.

Defendants have suggested that the ability to file a separate civil or habeas corpus action creates an adequate opportunity for *Younger* purposes. County Defs.' Br. 20. That is incorrect. That argument would dramatically expand a doctrine the Supreme Court has repeatedly narrowed.

The "adequate opportunity" question for *Younger* purposes is whether a claim could be raised in the *pending* state proceedings. *See Middlesex*, 457 U.S. at 432. Collateral state court proceedings do not implicate *Younger* because such proceedings are, by definition, not part of the challenged criminal proceeding. The Supreme Court has never required *Younger* abstention on the ground that a plaintiff could have filed a separate proceeding, whether habeas or a case under 42 U.S.C. § 1983. Several circuits have expressly held that the "adequate opportunity" must be in the ongoing state proceeding itself. *See, e.g.*, *Habich v. City of Dearborn*, 331 F.3d 524, 531–32 (6th Cir. 2003); *Fernandez*, 586 F.2d at 852–853. Indeed, requiring abstention where separate state

---

[16] *See also* Decl. Jeffrey Campbell ¶ 45, Doc. 2-22 ("[I]t's not fair for [my client] for pretrial not to make a decision. If you say yes, great. If you say no, that allows me to at least file a habeas. But keeping him in limbo just keeps him in jail longer.").

proceedings are available would impose an exhaustion requirement the Supreme Court rejected in *Monroe v. Pape*, 365 U.S. 167, 183 (1961); *see also Patsy v. Bd. of Regents*, 457 U.S. 496, 516 (1982). Every state authorizes habeas proceedings. A holding that such proceedings satisfy the third *Middlesex* factor would be impossible to reconcile with the Supreme Court's instruction that *Younger* abstention "is the 'exception, not the rule,'" *see Sprint*, 571 U.S. at 81–82 (citing *Hawaii Hous. Auth. v. Midkiff*, 467 U.S. 229, 236 (1984)). Defendants cite no case applying *Younger* on the ground that a plaintiff could initiate a separate state court action, and the Fourth Circuit has firmly rejected such an outcome. *Jonathan R.*, 41 F.4th at 337 ("[T]he *Younger* doctrine aspires to minimize interference with pending state proceedings, not to select the most appropriate forum for plaintiffs' claims. Plaintiffs' right 'to choose a Federal court where there is a choice cannot be properly denied.'" (quoting *Willcox v. Consol. Gas Co.*, 212 U.S. 19, 40 (1909))).

Even if the *Middlesex* inquiry encompassed collateral state court proceedings, however, Plaintiffs' allegations make it clear no such opportunity exists. Plaintiffs have alleged that, when defense attorneys have tried to file such petitions, they are usually just sent back to the lower court for a *de novo* bail review hearings. Compl. ¶ 111. Furthermore, the delays that such proceedings would cause would require Plaintiffs to endure the irreparable harm associated with pretrial detention, which is itself an exception to *Younger* abstention. *See, e.g.*, *Page*, 932 F.3d at 904-05 (applying "irreparable harm" exception to *Younger* abstention in challenge to pretrial probable-cause hearings resulting in detention). *Gibson* makes clear that a plaintiff need not endure the delay of seeking relief from a higher court where the court acting unlawfully did not provide an adequate opportunity to be heard and the harm from delay is irreparable. To force Plaintiffs to await a ruling on a habeas corpus petition or a separate civil action would expose them to the exact harm they seek to challenge. *See, e.g.*, *Dixon v. City of St. Louis*, No. 19-CV-0112, 2019 WL 2437026, at *10

(E.D. Mo. June 11, 2019) (in challenge to bail procedures, defendants' "position that a pro se indigent arrestee must litigate the constitutionality of his initial appearance and resultant bail by petition for extraordinary writ" is "hardly an adequate remedy for the injury Plaintiffs allege here, where the irreparable harm of detention is not only immediate but also enduring due to ruinous collateral consequences"), *prelim. inj. vacated on other grounds*, 950 F.3d 1052 (8th Cir. 2020).

In sum, whether arrestees could file a writ of habeas corpus or a separate state §1983 case in state court to challenge their detention is irrelevant under *Younger*. Abstention is unwarranted.

### B. *Colorado River* Abstention Does Not Apply to Plaintiffs' Claims.

Judge Defendants make a cursory argument that abstention under *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976), is appropriate. "[U]nder the *Colorado River* doctrine, a federal court may abstain from exercising jurisdiction over a duplicative federal action for purposes of 'wise judicial administration.'" *VonRosenberg v. Lawrence*, 849 F.3d 163, 167 (4th Cir. 2017) (citing *Colorado River*, 424 U.S. at 818). "A *Colorado River* abstention analysis begins with a heavy thumb on the scale in favor of exercising federal jurisdiction," *Aptim Corp. v. McCall*, 888 F.3d 129, 135 (5th Cir.), *cert. dismissed*, 139 S. Ct. 660 (2018). The doctrine must be applied "parsimoniously," *Chase Brexton Health Servs., Inc. v. Maryland*, 411 F.3d 457, 463 (4th Cir. 2005), and only under "exceptional circumstances," *VonRosenberg*, 849 F.3d at 168, where the surrender of federal jurisdiction is supported by "the clearest of justifications." *Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 25-26 (1983). It is "especially disfavored where federal law controls." *Fant v. City of Ferguson*, No. 4:15-CV-00253-AGF, 2016 WL 6696065, at *6 n.4 (E.D. Mo. Nov. 15, 2016) (citing *Spectra Commc'ns Grp., LLC v. City of Cameron, Mo.*, 806 F.3d 1113, 1121 (8th Cir. 2015).

In deciding whether abstention under *Colorado River* is appropriate, a court "must first determine whether the federal and state actions are parallel." *VanRosenburg*, 849 F.3d at 168. Judge Defendants have not explained—nor even directly asserted— how this action is parallel to any state court action. State and federal suits are parallel only "if substantially the same parties litigate substantially the same issues in different forums." *New Beckley Mining Corp. v. Int'l Union, United Mine Workers of Am.*, 946 F.2d 1072, 1073 (4th Cir. 1991) (citing *LaDuke v. Burlington N. R.R.*, 879 F.2d 1556, 1559 (7th Cir. 1989). To be parallel actions, "[i]t is not enough for parties in the state and federal actions to be merely aligned in interest." *VonRosenberg*, 849 F.3d at 168. Rather, "the parties involved [must] be almost identical." *Chase Brexton*, 411 F.3d at 464 (concluding that parties were insufficiently similar where five of seven federal plaintiffs were not involved in the pending state proceeding). To the extent Defendants gesture to Plaintiffs' state criminal court prosecutions, both the parties and the issues differ: Neither Judge nor County Defendants are parties to the criminal cases; the State of Maryland is a necessary party to each criminal case, but not named here; and whether Plaintiffs are guilty of the crimes of which they are accused is completely irrelevant to the claims here. *See, e.g.*, *Fant*, 2016 WL 6696065, at *6 (rejecting *Colorado River* abstention in challenge to criminal court detention).

Further, even when there is parallel state action, courts must conduct a careful, holistic analysis of several relevant considerations, "with the balance heavily weighted in favor of the exercise of jurisdiction." *VonRosenberg*, 849 F.3d at 168. (citation omitted). Defendants barely engage with these factors, Judges' Br. 24, but the factors they list all disfavor abstention: a forum in Prince George's County is by definition not inconvenient to Defendant Prince George's County or to government officials who work within the County; Plaintiffs offer a single putative class action in which to litigate the constitutionality of Defendants' practices once and for all, instead of

raising arguments piecemeal in individual state court prosecutions; and as described above, *see supra* section III.A.2.a, state criminal proceedings have not proven to be an adequate forum for litigating the rights at issue. *See* Judges' Br. 24 (reciting factors); *supra* at III.A.2.b. The "extraordinary and narrow exception" to exercising jurisdiction has not been met here.

### C. *Burford* Abstention Does Not Apply to Plaintiffs' Claims.

Judge Defendants also assert, in conclusory terms, that the Court should abstain from adjudicating this case under the *Burford* doctrine. Judges' Br. 23–24. *Burford* justifies abstention in "extraordinary and narrow" circumstances. *Martin v. Stewart*, 499 F.3d 360, 363 (4th Cir. 2007) (quoting *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 716, 728 (1996)); *see also First Penn-Pac. Life Ins. Co. v. Evans*, 304 F.3d 345, 348 (4th Cir. 2002) (referring to *Burford* abstention as the "exception, not the rule"). "*Burford* is concerned with protecting complex state administrative processes from undue federal interference" and avoiding "undermin[ing] the State's ability to maintain desired uniformity" in its processes. *New Orleans Pub. Serv., Inc. v. Council of New Orleans* ("*NOPSI*"), 491 U.S. 350, 362–63 (1989). Under *Burford*, where timely and adequate state-court review is available, federal litigation may "unduly intrude" upon "complex state administrative processes" if (1) "there are 'difficult questions of state law . . . whose importance transcends the result in the case then at bar'" or (2) federal adjudication would disrupt "state efforts to establish a coherent policy with respect to a matter of substantial public concern." *NOPSI*, 491 U.S. at 361–63 (1989) (quoting *Colorado River*, 424 U.S. at 814).

The Fourth Circuit has rarely found *Burford* abstention applicable. *See, e.g.*, *Town of Nags Head v. Toloczko*, 728 F.3d 391, 393 (4th Cir. 2013) (declining to abstain under *Burford*); *Country Vintner of N. Carolina, LLC v. E & J Gallo Winery, Inc.*, 461 F. App'x 302, 304 (4th Cir. 2012) (same); *Martin*, 499 F.3d at 361 (same); *Harper v. Public Serv. Com'n of W. Va.*, 396 F.3d 348,

358 (4th Cir. 2005) (same); *Gross v. Weingarten*, 217 F.3d 208, 224 (4th Cir. 2000) (same). And none of the prerequisites to *Burford* abstention are met here. First, there are no "difficult questions of state law" which "transcend the result" of this case. This case does not involve state administrative processes and demands no specialized knowledge of complicated state laws. This is a civil rights lawsuit grounded in grounded in federal constitutional law and therefore falls well within this Court's area of expertise; Plaintiffs' state claims generally mirror their federal claims. Compl. ¶¶ 264, 270. *Cf. Martin*, 499 F.3d at 367 ("[T]he threat that the federal courts might decide the entire state system unconstitutional is not a valid justification for *Burford* abstention." (*quoting Neufeld v. City of Baltimore*, 964 F.2d 347, 351 (4th Cir. 1992))). Plaintiffs do not challenge the validity of any state law or regulatory scheme; they challenge Defendants' practices.

Second, *Burford* abstention is appropriate only "[w]here timely and adequate state-court review is available." *See NOPSI*, 491 U.S. at 361. As explained above, *see supra* section III.A.2.a, no such adequate state court opportunity exists. Finally, federal adjudication would not disrupt state efforts to establish coherent policy; to the contrary, as this is a putative class action, Plaintiffs seek a coherent, across-the-board injunction. Nor can Defendants dispute that violating the Constitution is a "matter of substantial public concern." *Cf. NOPSI*, 491 U.S. at 362 (stating that *Burford* "does not require abstention whenever there exists [a complex administrative] process, or even in all cases where there is a 'potential for conflict' with state regulatory law or policy"). Accordingly, this Court should deny Judge Defendants' request to apply *Burford* abstention here.

## IV.    The *Rooker–Feldman* Doctrine Does Not Apply to Plaintiffs' Claims.

The *Rooker–Feldman* doctrine bars federal district courts "from exercising appellate jurisdiction over final state-court judgments." *Lance v. Dennis*, 546 U.S. 459, 463 (2006). The Supreme Court has repeatedly admonished that the doctrine is a "narrow" one. *Id.* at 464 (citing

*Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005)); *Skinner v. Switzer*, 562 U.S. 521, 532 (2011) (same). It is "confined to cases of the kind from which [it] acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil*, 544 U.S. at 284.

This case does not fall within *Rooker–Feldman*'s narrow scope, because Plaintiffs do not ask this Court to review any "state-court judgment." Rather, Plaintiffs ask this Court to examine the *process* by which County courts make bail determinations for the subset of arrested persons referred to the Pretrial Division and to ensure that the process complies with due process. The remedy Plaintiffs and putative class members seek is not a particular outcome in any bail review hearing, but constitutionally adequate substantive and procedural due process. *See supra* section II.A; *Jordahl v. Democratic Party of Va.,* 122 F.3d 192, 202 (4th Cir. 1997) (distinguishing between "actions seeking review of the state court decisions themselves and those cases challenging the constitutionality of the process by which the state court decisions resulted").

In *Rooker–Feldman* terms, Plaintiffs neither "complain[] of an injury caused by a state-court judgment" nor "'invit[e] district court review and rejection' of a state-court judgment," *Hulsey v. Cisa*, 947 F.3d 246, 250–51 (4th Cir. 2020) (quoting *Exxon Mobil*, 544 U.S. at 284), because the gravamen of their Complaint is that Judge Defendants fail to render any judgment at all. Rather than making pretrial release and detention determinations in open court, in accordance with due process principles, Judge Defendants defer these decisions to County Defendants. Compl. ¶ 5. And when Plaintiffs raise County Defendants' delays and denials of release with Judge Defendants, Judge Defendants refuse to weigh in. S*ee* Compl. at 19. Plaintiffs' complaint is not that a state court judgment is incorrect, but that no final state court judgment is rendered at all.

Both the Supreme Court and the Fourth Circuit have emphasized "the narrow role that the *Rooker–Feldman* doctrine is to play." *Thana v. Bd. of License Comm'rs for Charles Cnty.*, 827 F.3d 314, 320 (4th Cir. 2016). The Supreme Court in *Exxon Mobil* "restrict[ed] the doctrine to cases whose procedural postures mirrored those in the *Rooker* and *Feldman* cases themselves." *Jonathan R*, 41 F.4th 316, 340 (4th Cir. 2022) (citing *Thana*, 827 F.3d at 320) (cleaned up). In *Rooker*, a party that lost before the Indiana Supreme Court and then failed to obtain review by the U.S. Supreme Court filed a federal action challenging the constitutionality of the state court judgment and seeking to have it declared "null and void." *See Rooker v. Fidelity Tr. Co.*, 263 U.S. 413, 414 (1923). In *Feldman*, the plaintiffs sued the District of Columbia's highest court in federal district court after the District of Columbia court denied their requests for a waiver of a bar membership rule. *See D.C. Ct. of Appeals v. Feldman*, 460 U.S. 462, 468 (1983). Plaintiffs here do not seek to have any state court judgment declared "null and void," or to have a federal district court overrule the judgment of a state court of last resort. Plaintiffs' complaints are about the *process* by which state court pretrial release determinations are made, not any particular outcome.

For similar reasons, the cases cited by Defendants are inapposite. In *Jordahl*, 122 F.3d 192, the "plaintiffs claim[ed] they were injured as a result of state court injunctions—injuries caused not by the defendants but by the actions of state courts," *id.* at 199 (quoting *Jordahl v. Democratic Party of Virginia*, 947 F. Supp. 236, 240 (W.D. Va. 1996). Similarly, in *Jones v. Cumberland Cnty. Municipality*, No. 14-CV-550, 2015 WL 3440254 (E.D.N.C. May 6, 2015), the alleged injury was the "imposition of an excessive fine and term of imprisonment" in state court, *id.* at *5. Perhaps some of Defendants' confusion here stems from the fact that Judge Defendants are also state court judges; but, unlike in *Jordhal* and *Jones*, Plaintiffs do not seek relief from a particular decision that Judge Defendants have rendered—only constitutionally due process.

## V.     Judge Defendants Are Not Immune From Suit for Declaratory Relief.

### A. The Eleventh Amendment Does Not Preclude Declaratory Relief Against Judge Defendants Under *Ex Parte Young*.

There are three well-established exceptions to Eleventh Amendment immunity. *Lee-Thomas v. Prince George's Cnty. Pub. Sch.*, 666 F.3d 244, 249 (4th Cir. 2012). In arguing that they are immune from suit "in federal court without a valid abrogation or waiver of the State's sovereign immunity," Judge Defendants address two of these exceptions. Judges' Br. 15–16. But they fail to mention the third: "the Eleventh Amendment permits suits for prospective injunctive relief against state officials acting in violation of federal law." *Lee-Thomas*, 666 F.3d at 249 (citing *Frew ex rel. Frew v. Hawkins*, 540 U.S. 431, 437 (2004)); *see also Will v. Mich. Dept. of State Police*, 491 U.S. 58, 71 n.10 (1989) ("[o]f course a state official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983 because 'official-capacity actions for prospective relief are not treated as actions against the State.'") (citations omitted). This exception was established more than a century ago by the Supreme Court in *Ex parte Young*, 209 U.S. 123, 155–56 (1908) ("[I]ndividuals who, as officers of the state . . . enforce against parties affected by an unconstitutional act . . . may be enjoined by a Federal court of equity from such action"). "In determining whether the doctrine of *Ex parte Young* avoids an Eleventh Amendment bar to suit, a court need only conduct a straightforward inquiry into whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Verizon Maryland, Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002) (cleaned up).

The relief permitted by *Ex Parte Young* is precisely what Plaintiffs seek here. Judge Defendants are officers of the State of Maryland. Judges' Br. 2. Plaintiffs allege that Judge Defendants are violating the federal Constitution. Compl. ¶¶ 250, 258. And, as against Judge Defendants, Plaintiffs seek only prospective, declaratory relief. *Id.* ¶ 282. Like state court judges

in analogous lawsuits challenging illegal pretrial detention practices, Judge Defendants here can properly be sued under *Ex parte Young*. *See, e.g. Russell v. Harris Cty.*, 500 F. Supp. 3d 577, 604–05 (S.D. Tex. 2020) (in suit challenging pretrial bail practices, declaratory relief against judges permissible under *Ex parte Young*); *Booth v. Galveston Cty.*, 352 F. Supp. 3d 718, 736 (S.D. Tex. 2018) (same); *Cain v. City of New Orleans*, 281 F. Supp. 3d 624, 646 (E.D. La. 2017) (same).

### B. Judicial Immunity Does Not Apply to Plaintiffs' Claims Regarding Judge Defendants' Ongoing Practices.

"The well-established general rule in this circuit . . . is that judicial immunity will not bar injunctive relief." *Lewis v. Blackburn*, 734 F.2d 1000, 1008 (4th Cir. 1984); s*ee also Smith v. Davis*, No. 13-CV-43, 2013 WL 12155729, at *2 (E.D. Va. Feb. 8, 2013) ("In the context of a claim under 42 U.S.C. § 1983, absolute judicial immunity does not bar equitable relief *against state court judges*.") (citation omitted, emphasis added). While Section 1983 normally prevents "injunctive relief" against a judicial officer acting in a judicial capacity, it implicitly allows for declaratory relief—and injunctive relief where a declaration is unavailable. 42 U.S.C. § 1983. Plaintiffs here seek a single form of relief against Judge Defendants: a "declaration that [the Judge] Defendants violate Plaintiffs' rights . . . by detaining [them] pretrial" absent constitutionally adequate due process. Compl. ¶ 282. This is permitted.

Judge Defendants argue that Plaintiffs' claims are nevertheless barred by judicial immunity because they are "best characterized as a backwards-looking declaration of Judge Defendants' purported wrongdoing." Judges' Br. 19. This argument fails for principally the same reason as Defendants' mootness arguments. At the time the complaint was filed, five of the named Plaintiffs were presently detained pursuant to the process started by a Judge Defendant's pretrial referral. Two remain so. Although three have been subsequently released and Defendants contend that Mr. Butler and Mr. Williams were after the filing of this lawsuit transferred to other judges, Plaintiffs

seek relief on behalf of not only themselves, but all putative class members who have received pretrial referrals yet remain detained. Hundreds of such putative class members exist. Doc. 4-1 at 1. The declaratory relief that Plaintiffs seek will relieve "uncertainty, insecurity, and controversy," *Aetna Cas. & Sur. Co. v. Ind-Com Elec. Co.*, 139 F.3d 419, 422 (4th Cir. 1998) (citation omitted), for "*all people* who are now or *will be in the future*" subject to Judge Defendants' ongoing unconstitutional practices, Compl. ¶ 239 (emphasis added). This includes the two presently detained named Plaintiffs, and the hundreds of putative class members they seek to represent. It is not, in any sense, "backward looking."

The cases cited by Judge Defendants are inapposite, as each was brought by a single plaintiff seeking a declaration stating that a past ruling by a judicial official was incorrect. *See Foster v. Fisher*, 694 F. App'x 887, 889 (4th Cir. 2017) (lone plaintiff who had been released seeking judgment declaring prior detention unlawful); *Miller v. Purpura*, No. 21-CV-3206, 2022 WL 3083440, at *2 (D. Md. Aug. 3, 2022) (lone plaintiff seeking declaratory relief against judge for prior rulings in custody case); *Jenkins v. Kerry*, 928 F. Supp. 2d 122, 128 (D.D.C. 2013) (sole plaintiff seeking declaration against judges' prior rulings in state foreclosure action); *Klayman v. Rao*, No. 21-CV-02473, 2021 WL 4948025, at *3 (D.D.C. Oct. 25, 2021) (sole plaintiff seeking declaration against judges' rulings in since-closed cases).[17] These cases are unlike the present putative class action; even if Plaintiffs' criminal cases were resolved tomorrow, hundreds of putative class members would retain a concrete interest in declaratory relief by this Court. Furthermore, in the cases cited by Defendants, the individual plaintiffs sought declarations "relat[ing] to the substance of various rulings" made by the subject judicial officials. *Jenkins*, 928

---

[17] Defendants' citation to *Green v. Mansour*, 474 U.S. 64 (1985), is inapposite because that case did not involve judicial immunity.

F. Supp. 2d at 128. As outlined above, Plaintiffs here challenge not the substance of any particular bail ruling by Judge Defendants, but the processes that Defendants employ in making bail determinations. If those processes were brought in line with the Constitution, currently detained Plaintiffs and hundreds of putative class members would see prospective relief.

## VI. County Defendants Are Not Immune From Suit for Damages.

County Defendants contend that they should not be liable for damages for "carrying out a judicial function, namely, determining the conditions of a defendants' pre-trial release," and thus, they argue, the immunity that attaches to judges also protects the County. County Defs.' Br. 31.[18] But County Defendants do not have lawful "duties . . . comparable to those of judges." *Ostrzenski v. Segal*, 177 F.3d 245, 249 (4th Cir. 1999) (citing *Butz v. Economou*, 438 U.S. 478, 511–17). In fact, that County Defendants act extra-legally, outside their prescribed jurisdiction, is precisely what Plaintiffs allege. *See* Compl. at 16 ("The Pretrial Division Makes Unauthorized and Arbitrary Detention Decisions"). Defendants who are "without authority" to carry out judicial functions, even where they "believe that [their] actions [are] sanctioned by court order," are not entitled to quasi-judicial immunity. *Gross v. Rell*, 695 F.3d 211, 217 (2d Cir. 2012).

Furthermore, Plaintiffs allege, and County Defendants do not dispute, that the process carried out after a person is referred to the Pretrial Division for release is of the County's own creation. Compl. ¶ 68 ("The criteria and conditions [that County Defendants use in implementing pretrial referrals] are determined by the Pretrial Division, without judicial input or oversight.").

---

[18] County Defendants describe the judges' immunity for damages as arising under the Eleventh Amendment. This is slightly wrong: While the Eleventh Amendment protects the State, and state officials acting in their official capacities, from suit except under certain circumstances—one of which applies here, *see supra* section V.A—judges separately possess common law immunity for money damages. *Pierson v. Ray*, 386 U.S. 547, 554 (1967). Plaintiffs address County Defendants' argument as if it were properly made to invoke judicial common law damages immunity.

There is a meaningful "distinction between protection from liability simply for following a judge's order and protection from liability for carrying out a judge's order in a manner not sanctioned by the judge." *In re Mills*, 287 Fed. App'x 273, 279 (4th Cir. 2008) (citations omitted).

County Defendants argue, in the alternative, that they are not liable for money damages because "the County does not establish pre-trial release policy[.]" County Defs.' Br. 31. Because the County has no choice but to follow the judges' orders, County Defendants state, they are not municipal policymakers and the County is not liable for money damages. *Id.* at 31-32. County Defendants cannot have their cake and eat it too. County Defendants emphatically state, and Plaintiffs do not dispute, "that 'referral to Pre-trial services' is not an order for release." County Defs.' Br. 13. Instead, County Defendants contend, only if a person referred to pretrial "qualifies for pre-trial release based on the criteria *established by the PGCDOC*" are they released from confinement. *Id.* at 7 (emphasis added); *see also id.* ("DOC has four levels of pre-trial release."). As such, County Defendants admit that, when a judge authorizes release and refers a person to them, they are empowered to release the person from the jail without further involvement of the court. Compl. ¶ 250. Nothing in state law or the state courts' orders obligates County Defendants to do any of the unconstitutional things that Plaintiffs challenge.

The two Fifth Circuit cases the Defendants cite on this point—*Daves* and *ODonnell*—are different. In each case, sheriffs were sued for doing nothing more than operating a jail where pretrial detainees were housed based on challenged bail orders *issued by courts*. *See ODonnell v. Harris Cty.*, 892 F.3d 147, 155 (5th Cir. 2018) (finding sheriff-as-jailer not a county policymaker for following state court bail orders); *Daves v. Dallas Cty.*, 22 F.4th 522, 541 (citing *ODonnell* but declining to rule on the issue). Here, County Defendants not only are the custodians of the county jail, but also play a significant, active, discretionary role in Plaintiffs' injuries via their pretrial

release criteria and procedures. That is, the County crafts municipal policy by creating the Pretrial Division in the first instance, *see* County Defs.' Br. 25 (County Defendants admitting of the Pretrial Division that "no law compels its existence," and threatening to use their discretion to abolish it), and by devising policies and procedures by which the Division will assess people referred to it by the courts, *see, e.g.*, Compl. ¶ 68. Accordingly, County Defendants are squarely liable as municipal policymakers.

## VII. Defendants Have Been Sued in Their Proper Capacities.

### A. The Claims Against County Defendants in Their Official Capacities Should Not Be Dismissed.

County Defendants contend that the claims against them must be dismissed because they are only sued in their official capacities, and that their inclusion is redundant as Prince George's County is also named as a Defendant. County Defs.' Br. 10. But "the plaintiff is the master of the complaint." *Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 91 (2005). At the Motion to Dismiss stage, Plaintiffs are free to pursue claims against both the County and its officials, even if it becomes appropriate to dismiss some parties later.

Furthermore, while Plaintiffs vigorously dispute County Defendants' assertion that they are acting for the state, and should be treated as such, *see supra* section VI, if the Court agrees with County Defendants, then claims against the County and its defendants will be meaningfully different. "[O]fficial-capacity actions for prospective relief [against state officials] are not treated as actions against the State." *Will*, 491 U.S at 71 n.10 (citations omitted); *see also, e.g.*, *ODonnell v. Harris Cty.*, 227 F. Supp. 3d 706, 747 (S.D. Tex. 2016) ("[A] claim against a municipal policymaker acting in an official capacity is redundant to a claim against a municipality when it is a party. By contrast, a claim against State officers acting in their official capacity is not duplicative

of a claim against the State because the State has Eleventh Amendment immunity from suit.")

(citations omitted). To dismiss County Defendants from this case now would be premature.

### B. The Claims Against Judge Defendants in Their Individual Capacities Should Not Be Dismissed.

Judge Defendants, in a footnote, suggest that since Plaintiffs' claims against Judge Defendants "are made against them *solely* in their official capacities," the individual capacity claims against them should be dismissed. Judges' Br. 17 n.12. This is not true: Plaintiffs have explicitly named Judge Defendants in both their personal and official capacities. *See* Compl. at 2. This was intentional, as the plain text of 42 U.S.C. § 1983 authorizes actions for equitable relief "against a judicial officer for an act or omission taken in such officer's *judicial* capacity" (emphasis added). To undersigned counsel's knowledge, neither the Supreme Court nor the Fourth Circuit has determined how the "judicial capacity" language in section 1983 aligns with the "official capacity" and "personal capacity" terms used in other contexts, and Judge Defendants provide no further guidance. Accordingly, Plaintiffs have a good faith reason to name Judge Defendants in both capacities at this juncture. Defendants cite no law to the contrary.

### VIII. This Court Should Not Decline to Hear Plaintiffs' Claim for Declaratory Relief.

Judge Defendants finally contend that this Court should decline to hear this case under the Declaratory Judgment Act, 28 U.S.C. § 2201(a). Judges' Br. 28–30. The Fourth Circuit has stated that a declaratory judgment "is appropriate 'when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and . . . when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding.'" *United Capitol Ins. Co. v. Kapiloff*, 155 F.3d 488, 493 (4th Cir. 1998) (citations omitted). Such is the case here. Plaintiffs have alleged that Defendants maintain practices that result in the unconstitutional detention of hundreds of putative class members. Defendants do not dispute Plaintiffs' recounting

of the relevant facts, but argue that their system is perfectly lawful. A declaratory judgment about what the Constitution demands before a person will be detained awaiting trial will comprehensively relieve the uncertainty in the parties' legal relations.

The Fourth Circuit has articulated a test to guide discretion under the Act when a federal suit is filed "while a parallel state case is pending." *Med. Mut. Ins. Co. of N.C. v. Littaua*, 35 F.4th 205, 208 (4th Cir. 2022). But as a preliminary matter, as discussed *supra*, section III.B, this is not a situation where Plaintiffs are facing a parallel state case featuring pending state judgment addressing the same constitutional claims at issue in this litigation. Plaintiffs are challenging the deficiency of state criminal proceedings, and the record shows that the state courts are, if anything, refusing to hear their constitutional claims. *See supra* section III.A.2.a. The question of abstention under these circumstances is more squarely addressed by the *Younger* factors, discussed above. Regardless, the discretionary factors in *Littaua* favor Plaintiffs:

> (1) whether the state has a strong interest in having the issues decided in its courts; (2) whether the state courts could resolve the issues more efficiently than the federal courts; (3) whether the presence of "overlapping issues of fact or law" might create unnecessary "entanglement" between the state and federal courts; and (4) whether the federal action is mere "procedural fencing," in the sense that the action is merely the product of forum-shopping.

35 F.4th at 208-09 (citation omitted).

First, "[s]tates hold a strong interest when [a] question of *state law* is 'difficult, complex, or unsettled.'" *Littaua*, 35 F.4th at 209 (emphasis added) (citations omitted). Plaintiffs' two primary claims (Counts I and II) assert *federal* constitutional rights. The state has no interest in having federal constitutional questions adjudicated in its courts rather than the courts of the United States. While this factor may differ for the state constitutional claims in Counts III-V, the state claims largely mirror the federal claims and standards, and the risk to federalism is minimal. Second, there is no indication the state courts can resolve the issues more efficiently than the

federal courts. Plaintiffs seek systemic relief for Defendants' longstanding practices, which state courts have failed to remedy and in which they have in fact participated. Here, "a federal class action is the most—if not the only—effective way to achieve the kind of systemic relief they seek." *Jonathan R.* 41 F.4th at 321. Third, the risk of "entanglement" is low. There are no overlapping issues of fact, as the criminal courts' factual findings do not implicate their own procedures. No state court is presently weighing the same legal questions as this Court—and they have declined to do so when pressed. Finally, there is no forum shopping. Plaintiffs allege an unlawful process in state court that causes them irreparable harm in violation of fundamental federal constitutional rights. This Court should deny Defendants' request to dismiss their claims for declaratory relief. *See Cain*, 184 F.Supp. 3d at 382 (denying request to refuse jurisdiction for declaratory claims challenging judges' unconstitutional bail practices).

## CONCLUSION

For the reasons set forth above, Defendants' Motions to Dismiss (Docs. 64, 66) should be denied in full.

Respectfully submitted this 10th day of October, 2022.

/s/ Ellora Thadaney Israni
Ellora Thadaney Israni*
Ryan Downer*
Jeremy D. Cutting*
CIVIL RIGHTS CORPS
1601 Connecticut Ave. NW, Suite 800
Washington, D.C. 20009
(202) 894-6132
ellora@civilrightscorps.org


/s/ Seth Wayne
Seth Wayne*
INSTITUTE FOR CONSTITUTIONAL ADVOCACY
AND PROTECTION
GEORGETOWN UNIVERSITY LAW CENTER
600 New Jersey Ave. NW
Washington, D.C. 20001
(202) 662-9042
sw1098@georgetown.edu




* admitted *pro hac vice*

*Counsel for Plaintiffs*

/s/ Edward Williams
Edward Williams (D. Md. Bar 20944)
Matthew Martens*
Thomas Bredar (D. Md. Bar 21635)
Ellen Connell*
Donna Farag*
Ayana Williams*
Sonika Data*
Yoseph Desta*
Britany Riley-Swanbeck (D. Md. Bar 21843)†
WILMER CUTLER PICKERING
  HALE AND DORR LLP
1875 Pennsylvania Ave. NW
Washington, D.C. 20006
(202) 663-6487
ed.williams@wilmerhale.com
matthew.martens@wilmerhale.com

Robert Boone*
WILMER CUTLER PICKERING
  HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
(212) 230-8800
robert.boone@wilmerhale.com

Timothy Perla*
WILMER CUTLER PICKERING
  HALE AND DORR LLP
60 State Street
Boston, MA 02109
(617) 526-6000
timothy.perla@wilmerhale.com