**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**GREENBELT DIVISION**

| | |
|---|---|
| ROBERT FRAZIER, *et al.*, individually and on behalf of a class of similarly situated persons,<br><br>     Plaintiffs,<br><br>    v.<br><br>PRINCE GEORGE'S COUNTY, MARYLAND, *et al.*,<br><br>     Defendants. | Case No. 8:22-cv-1768 PJM |

**PLAINTIFFS' REPLY IN SUPPORT**
**OF MOTION FOR PRELIMINARY INJUNCTION**

**TABLE OF CONTENTS**

Page

INTRODUCTION ..................................................................................................................1

STATEMENT OF FACTS ....................................................................................................3

ARGUMENT ........................................................................................................................4

I.     Plaintiffs Are Likely to Succeed on the Merits of Their Due Process Claims. ..................4

     A.     Defendants Misstate the Nature of Plaintiffs' Claims. ......................................... 4

     B.     Defendants' Practices Violate Substantive Due Process (Counts I & III). ............. 5

          1.     Substantive Due Process Forbids Pretrial Detention Absent a Judicial Finding That It Is Necessary. .....................................................................5

          2.     County Defendants Detain Putative Class Members Despite a Judicial Finding That Release Is Permissible. ...........................................................7

          3.     Putative Class Members Who Have Received a Pretrial Referral Are Preventively Detained. ...............................................................................9

          4.     Because the Right to Pretrial Liberty Is "Fundamental," Defendants' Reliance on *Hawkins v. Freeman* Is Misplaced. .......................................11

     C.     Defendants' Practices Violate Procedural Due Process (Counts II & IV) ........... 12

          1.     Plaintiffs are entitled to constitutionally adequate procedures where their substantive pretrial liberty interest is at stake. ..........................................12

          2.     County Defendants fail to provide the required safeguards before denying pretrial release. .......................................................................................13

          3.     Defendants' Practices Are Not Mandated By or Compliant with the Maryland Rules. .....................................................................................15

II.     Without an Injunction, Members of the Putative Class Will Continue to Suffer Irreparable Harm. ...........................................................................................................................17

III.     The Equities and Public Interest Favor An Injunction ....................................................18

CONCLUSION ...................................................................................................................20

# INTRODUCTION

County Defendants' Response to Plaintiffs' Motion for a Preliminary Injunction, Doc. 64-1 ("Defs.' Br."), fundamentally mischaracterizes Plaintiffs' claims. Plaintiffs do not allege that Defendants have violated court orders mandating their release. Nor do Plaintiffs challenge the legality of the Maryland Rules governing pretrial release and detention. Plaintiffs also do not claim that they are constitutionally entitled to participate in a county-created pretrial release program.

The crux of Plaintiffs' claims is this: Under longstanding Supreme Court precedent, a presumptively innocent person may not be deprived of their fundamental right to bodily liberty absent rigorous substantive and procedural protections. Those protections include a timely hearing before a neutral and detached decisionmaker, at which the State has the burden to prove, by clear and convincing evidence, that pretrial detention is necessary to ensure community safety or return to court. Only if no conditions or combination of conditions of release will reasonably protect these interests is pretrial detention constitutionally permissible. These due process principles are not novel; they have been reiterated by federal and state courts around the country for decades.

Defendants' policies and practices fly in the face of these constitutional requirements. State court judges in Prince George's County regularly refer people who have been arrested to the County's Pretrial Division,[1] impermissibly delegating to the Division the authority to decide, without further involvement of the court, whether to release the person and if so under what conditions. Implicit in such a referral is that there are *some* conditions of release that will suffice to ensure community safety and return to court. Due process demands that, if the court has found that there are conditions that will allow a person to be released safely, the court *must* order those

---

[1] The Prince George's County Department of Correction's Population Management Division is referred to throughout as "the Pretrial Division" or "the Division."

conditions and release the person. Put differently, a person's continued detention after referral to the Pretrial Division violates due process as there has been no substantive finding that their detention is necessary.

That due process violation continues for the weeks or months that it takes the Pretrial Division to process referrals, during which time the person remains detained absent any finding of necessity. And because the Pretrial Division ultimately decides not to release many people referred to it—decisions made not by a judge but by the Division itself, behind closed doors, without notice or a hearing—County Defendants are presently keeping hundreds of legally innocent people in jail in violation of their fundamental due process rights. In other words, Defendants' referral process contravenes longstanding Supreme Court precedent by making *detention* prior to trial the "norm," and *liberty* the "carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 755 (1987). Plaintiffs are likely to succeed on the merits of their due process claims.

The remaining preliminary injunction factors favor immediate relief. Each day that putative class members are jailed in violation of their constitutional freedoms separates them from their families and loved ones, subjects them to dangerous conditions with deleterious effects on their health, and impedes their ability to prepare a defense in their pending criminal cases. This is axiomatic "irreparable harm." The balance of equities also favors injunctive relief, as Defendants are necessarily unharmed by an injunction against likely unconstitutional practices, and the public interest favors compliance with the Constitution. Finally, as the custodians of each person detained in the Prince George's County Jail, County Defendants are a properly enjoined party. For the reasons set forth below, and in Plaintiffs' Motion for a Preliminary Injunction, Doc. 8 ("Pls.' Br."), Plaintiffs respectfully request that this Court issue relief to the hundreds of legally innocent putative class members who remain jailed in violation of their constitutional rights.

## STATEMENT OF FACTS

County Defendants do not dispute the truth of Plaintiffs' factual allegations. To the contrary, they admit that "generally [Plaintiffs'] account of the [County's] process is correct." Defs.' Br. at 6. This process is laid out in full in Plaintiffs' Motion for a Preliminary Injunction. *See* Pls.' Br. at 4–12. The most critical facts, admitted by County Defendants, are as follows:

When a person is arrested in Prince George's County, they are first brought before a District Court Commissioner for an initial appearance. Defs.' Br. at 6. Any person who remains detained appears before a District or Circuit Court judge for a bail review hearing on the next business day. *Id.* At that hearing, the judge can release the person on their own recognizance, set a money bail amount, set non-financial conditions of release, or hold the person without bond. *Id.* In addition to whatever bond order is issued, judges often decide to refer the arrested person to the County's Pretrial Division. *Id.* Such referrals authorize the Division to release the person without any further judicial involvement. *Id.* at 6–7. As such, pretrial referrals necessarily mean that the court has not made a finding that pretrial detention is required—indeed, the court has authorized release.

Nevertheless, more often than not, people who are referred to the Division remain detained. The Division has "established" its own "criteria" to determine "[i]f a [person] qualifies for pre-trial release," criteria it applies *after* the court has authorized release. *Id.* at 7. This determination does not occur contemporaneously with the referral, even where the information necessary to make it is available at the bail review hearing. *See* Levels of Supervision, Doc. 64-4 at 3–4. Instead, the Division typically takes weeks or months after the hearing to process the referral, during which time the person remains in jail.[2] During this time, the person does not receive affirmative notice

---

[2] *See, e.g.*, Doc. 60 at 3–4 (D.P. referred to pretrial on June 21, no explanation provided until Defendants filed a notice in this matter on August 4); *id.* at 5 (Defendants provided no explanation

of their status in the Division's queue; any opportunity to present evidence in support of their release or otherwise be heard; or any opportunity to confront evidence collected and considered by the Division. Pls.' Br. at 7–8. The Division makes its decision in its offices with no involvement of the detained person, their counsel, or any court. *Id.*[3]

If, at the conclusion of its processing, the Pretrial Division decides—again, without judicial input—that the person is "eligible" for release under its supervision, the person is released from the jail with no further involvement of the court. Defs.' Br. at 7. If the Division decides it will not permit the person's release, they remain detained awaiting trial. *Id.*[4]

## ARGUMENT

### I. Plaintiffs Are Likely to Succeed on the Merits of Their Due Process Claims.[5]

#### A. Defendants Misstate the Nature of Plaintiffs' Claims.

County Defendants' arguments hinge on a series of mischaracterizations of Plaintiffs' claims. As described above, County Defendants do not dispute the crux of Plaintiffs' factual allegations: that in Prince George's County, rather than setting appropriate release conditions at

---

as to why Donnell Davis remained detained for more than three months after pretrial referral); *compare* Doc. 64-6 at 1, *with* Exhibit 1, J. Brown Docket (nearly six weeks between pretrial referral (July 29) and the Division's notification that it would not release (Sept. 7)).

[3] Defendants do not dispute that referred persons receive no notice during the Division's processing, but contend notice is provided if the Division ultimately decides not to release a person. Defs.' Br. at 7. This is factually incorrect and legally irrelevant. *See infra* at 14–15.

[4] Defendants make numerous factual misstatements about the Named Plaintiffs. *Compare e.g.*, Doc. 60 at 4 (claiming that Mr. Butler was "[n]ever Referred to Pretrial Service[s]"), *with* Doc. 64-2 (subsequently asserting that Mr. Butler was referred to the Pretrial Division, which did not release him because of his charges and his "mental health status"), *with* Exhibit 2, Supplemental Declaration of Allison Heldreth ¶ 5 (noting that Mr. Butler's public defender first heard of Defendants' most recent justification when they filed their Motion to Dismiss); *compare* Doc. 66-1 at 6 (incorrectly claiming that D.P. was subject to a detainer when arrested), *with* Doc. 59-3 at 4, 9 (showing that the detainer was issued nearly a month after arrest). Because these inaccuracies do not impact the strength of Plaintiffs' claims, Plaintiffs do not address them further here.

[5] County Defendants do not repeat their arguments about jurisdiction, justiciability, or abstention in their Preliminary Injunction opposition, so Plaintiffs do not repeat them here. Those non-merits issues are briefed in Plaintiffs' Response to Defendants' Motions to Dismiss, filed simultaneously.

an open and timely hearing, judges delegate this responsibility to County officials who are free to decide the question of pretrial release entirely on their own timetable and at their discretion. Presumptively innocent people are routinely detained for weeks, or even months, despite an implicit judicial finding that their detention is not necessary either to ensure community safety or their return to court. As Plaintiffs made clear in their opening brief, extended pretrial detention in the presence of such a finding violates bedrock constitutional principles. Pls.' Br. at 18–22. These are the claims Plaintiffs present in their Complaint and Motion for Preliminary Injunction.

In arguing that Plaintiffs are not likely to succeed on the merits, Defendants repeatedly mischaracterize the nature of those claims. Contrary to County Defendants' assertions, Plaintiffs do not rely on a substantive due process liberty interest in participating in a pretrial release program. Defs.' Br. at 8–9. Nor do Plaintiffs contend that County Defendants have "violated any court order" by failing to release them, or that members of the putative class are necessarily "entitled to be released . . . regardless of an analysis of whether they qualified for pretrial release." *Id.* at 8, 29. Plaintiffs also do not assert claims challenging policies or procedures internal to the jail such that the remedy sought would implicate the County's interest in "prison management." *Id.* at 32. These caricaturized versions of Plaintiffs' claims bear little resemblance to what the Complaint actually says: Hundreds of putative class members are detained in violation of the federal and state constitutions, because they are detained prior to trial for an extended period absent any finding that detention is necessary, and because the judges involved defer the final decision to non-judicial officers who fail to provide procedural due process.

**B.      Defendants' Practices Violate Substantive Due Process (Counts I & III).**

**1.      Substantive Due Process Forbids Pretrial Detention Absent a Judicial Finding That It Is Necessary.**

Despite the peculiarity of Prince Georges' County pretrial system,[6] there is nothing "novel" about how substantive due process applies here. The "fundamental" due process "interest in liberty" derives from the state and federal constitutions. *Salerno*, 481 U.S. at 750; *see also Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004) (incarceration implicates the "most elemental of liberty interests") (plurality); *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001) ("Freedom from imprisonment . . . lies at the heart of the liberty that [the Due Process] Clause protects."); *Wheeler v. State*, 864 A.2d 1058, 1062 (Md. Ct. Spec. App. 2005) ("An individual's 'interest in liberty' is of a 'fundamental nature.'" (quoting *Salerno*, 481 U.S. at 746)). The government may not infringe upon a fundamental interest "*at all*, no matter what process is provided, unless the infringement is narrowly tailored to serve a compelling state interest." *Reno v. Flores*, 507 US 292, 302 (1993) (citing, *inter alia*, *Salerno*, 481 U.S. at 746).

In the pretrial detention context, this means that the government may not detain a legally innocent person unless they can demonstrate that no alternatives to detention—including release on any conditions—will reasonably protect the community's safety and ensure that the person will return to court. *Salerno*, 481 U.S. at 749; *Zadvydas*, 533 U.S. at 690; Md. Rule 4-216.1(b)(1)(B) (permitting pretrial detention only if a "judicial officer" has found "a reasonable likelihood that the [arrested person] (i) will not appear when required, or (ii) will be a danger to an alleged victim, another person, or the community" if released); Doc. 2-42 (Letter from Brian E. Frosh, Att'y Gen., State of Maryland (Oct. 25, 2016)) (same). That is, if a judge finds that conditions short of

---

[6] The County's pretrial system is meaningfully different from that of neighboring jurisdictions. While other Maryland counties have pretrial services agencies, those agencies are responsible only for (a) making recommendations to the court regarding pretrial release, and/or (b) implementing judges' decisions regarding pretrial release. *See infra* at 16–17 (describing practices in Montgomery County). They are not tasked with deciding *whether* a person will be released in the first instance; that extraordinary delegation is unique to Prince George's County.

detention may reasonably protect the state's compelling interests, the judge *must* order release on those conditions. There are only two possible outcomes: detention is either mandated (and supported by a substantive finding that it is necessary), or it is prohibited. *See Wheeler*, 864 A.2d at 1065 ("Unless persuaded by clear and convincing evidence that the defendant is a danger to another person or to the community, a judicial officer does not have 'discretion' to conclude that the defendant is too dangerous to be released pending trial."). State and federal courts around the country have repeatedly articulated this principle.[7]

## 2. County Defendants Detain Putative Class Members Despite a Judicial Finding That Release Is Permissible.

Every putative class member who has been referred to the Pretrial Division but remains detained—either because the Division is taking weeks or months to process their case file, or because it is refusing outright to release them—is detained in violation of their substantive due process rights, because no court has found that their detention is necessary to satisfy a compelling government interest. To the contrary, by authorizing the Pretrial Division to release these persons without further court action, a court has necessarily found that their detention is *not* necessary and that some condition or conditions of release may sufficiently address community safety and flight risk. If detention is not necessary, it is not constitutional. *Wheeler*, 864 A.2d at 1065.

To illustrate the constitutionally problematic nature of the County's pretrial referral system, consider a typical example: A person goes before a court and is given a "pretrial option" at their

---

[7] *See Lopez-Valenzuela v. Arpaio*, 770 F.3d 772, 779 (9th Cir. 2014) (en banc); *Torres v. Collins*, No. 2:20-CV-00026, 2020 WL 7706883, at *8 (E.D. Tenn. Nov. 30, 2020); *ODonnell v. Harris Cnty., Tex.*, 251 F. Supp. 3d 1052, 1156–57 (S.D. Tex. 2017), *aff'd as modified*, 882 F.3d 528 (5th Cir. 2018); *Reem v. Hennessy*, No. 17-CV-6628, 2017 WL 6765247, at *1 (N.D. Cal. Nov. 29, 2017); *State v. Mascareno-Haidle*, No. S-1-SC-38743, 2022 WL 2351632, at *6 (N.M. June 30, 2022); *In re Humphrey*, 482 P.3d 1008, 1013 (Cal. 2021); *Valdez-Jimenez v. Eighth Jud. Dist. Ct. in & for Cnty. of Clark*, 460 P.3d 976, 985 (Nev. 2020); *Brangan v. Commonwealth*, 80 N.E.3d 949, 962 (Mass. 2017).

bail review hearing. A representative from the Pretrial Division is present at the bail review hearing, but no release decision is made at the hearing—nor are efforts made to determine whether the Division's criteria are met, or even whether those criteria are necessary to ensuring community safety or return to court. Instead, the person remains detained while the Pretrial Division "processes" the referral. Several weeks later, the Division decides that it will not release the person because it has not been able to get in touch with the complaining witness.[8]

This scenario presents several problems: First, when the court referred the person to the Pretrial Division, that referral necessarily precluded a finding that their detention was necessary. The possibility that some conditions of release may suffice to ensure community safety and return to court (which is inherent in a referral to the Division) cannot be reconciled with a finding that detention is necessary. To argue otherwise would be to contend that the judge found that a person represents an irreducible threat to community safety or poses a risk of flight, but still authorized the County to release them without further court involvement. This cannot be the case, and Defendants understandably do not contend as much. Thus, regardless of whether the Division ultimately releases the person, they will be detained for weeks or months of "processing" absent the constitutionally required finding of necessity.

Second, even after the Pretrial Division made its decision not to release, the court made no necessity finding. While Defendants contend (and Plaintiffs dispute) that the Division notifies courts of its eventual release decisions, Defendants do not contend that such notification triggers any further judicial process or that the court itself, at that point or any other, makes a necessity-of-detention finding. *See infra* at 14–15.

---

[8] Under the Division's own criteria, though not any court order, the complaining witness's consent is a necessary precursor to release. Doc. 64-4 at 3.

Third, the Division never explained why their inability to reach the complaining witness—a criteria they created and interposed—turned a release-eligible person into someone for whom detention is absolutely necessary for community safety or avoidance of flight. Certainly, no judge made any such finding. Other criteria devised and applied by the Division are similarly unrelated to community safety and flight risk, the only two constitutionally legitimate justifications for pretrial detention. *See* Pls.' Br. at 8–10, 20–21.[9]

### 3. Putative Class Members Who Have Received a Pretrial Referral Are Preventively Detained.

County Defendants concede that, if a person is "preventively" detained while awaiting trial—*i.e.*, no conditions of release or bail are set—the substantive due process standard articulated above may apply. Defs.' Br. at 8 n.2 But County Defendants attempt to differentiate their practices from preventive detention, because, they say, when people referred to pretrial, the possibility of release is held open. *Id.* This purported distinction is without a constitutional difference.

At bail review hearings, pretrial referrals are layered on top of bond orders. Most often, that order is to "hold without bond"—that is, the detained person is, for example, "held without bond, with a pretrial option." *See, e.g.*, Doc. 2-12 at 3 ("[T]he Defendant is committed without bail . . . OR PR TO PTR"); Doc. 2-35 at 5 (same); Doc. 2-48 at 7 (same); Doc. 2-49 at 4 (same). As such, people who are referred to the Division are *explicitly* preventively detained. The possibility that they may later be released by the Pretrial Division, on its own time and at its own discretion, does not change that they are preventively detained for the weeks or months it takes the Division

---

[9] A prior status hearing in this matter involved extensive discussion about the significance of the fact that some Named Plaintiffs have (or had) detainers from other jurisdictions. To be clear, Plaintiffs do *not* assert that Prince George's County should ignore those detainers. Rather, Plaintiffs simply allege that the fact that a person has an out-of-county detainer does not excuse Defendants conducting an individualized analysis of community safety/flight risk, and—if that analysis proves that the person need not be detained on their Prince George's County charge(s)—transferring the person to the custody of the detaining jurisdiction.

to process referrals, or that many of them remain preventively detained until their criminal case is resolved because the Division declines to release them. All the while, the findings that Defendants agree are a constitutional prerequisite to pretrial detention have necessarily not been made.

It is easy to see why Defendants would like to avoid *Salerno*'s demanding standard. Yet the presence of a referral to the Division does not make ensuing pretrial detention any less "preventive." In the money bail context, for instance, appellate courts have repeatedly found that an order setting an unattainable money bail amount is a *de facto* detention order, because setting a condition of release that is impossible for a person to meet is identical in effect to setting no conditions of release at all. *See, e.g.*, *United States v. Mantecon-Zayas*, 949 F.2d 548, 550 (1st Cir. 1991) (per curiam) ("[O]nce a court finds itself in this situation—insisting on terms in a 'release' order that will cause the defendant to be detained pending trial—it must satisfy the procedural requirements for a valid detention order . . . ."); *United States v. Leathers*, 412 F.2d 169, 171 (D.C. Cir. 1969) (per curiam) ("[T]he setting of bond unreachable because of its amount would be tantamount to setting no conditions at all.").[10] So too here. When a person is referred to the Pretrial Division, they continue to be detained—first, for the weeks or months that all parties agree it takes the Division to process referrals, *see, e.g.*, Declaration of Allison Heldreth, Doc. 2-5 ¶¶ 52–56 (describing client who was released by the Pretrial Division over three months after he was first referred);[11] and second, in many cases, indefinitely, because the Division decides it will not release

---

[10] *Brangan*, 80 N.E.3d at 963; *State v. Brown*, 338 P.3d 1276, 1292 (N.M. 2014); *United States v. Leisure*, 710 F.2d 422, 425 (8th Cir. 1983); *In re Humphrey*, 11 Cal. 5th 135, 151 (2021); *Valdez-Jimenez*, 460 P.3d at 984–85.

[11] Defendants take issue with Plaintiffs' proposed class definition, which includes persons who remain detained more than 48 hours after receiving a pretrial referral. Defs.' Br. at 8 n.2; Mot. for Class Certification, Doc. 4 at 1. While neither the Supreme Court nor the Fourth Circuit has definitively stated how long a person may be detained post-arrest absent sufficient due process, the 48-hour line is consistent with decisions from other courts around the country. Pls.' Br. at 24

them pursuant to its self-developed criteria. As such, persons referred to the Pretrial Division are preventively detained. The same rigorous standards and procedures apply.

### 4. Because the Right to Pretrial Liberty Is "Fundamental," Defendants' Reliance on *Hawkins v. Freeman* Is Misplaced.

County Defendants rely on *Hawkins v. Freeman*, 195 F.3d 732 (4th Cir. 1999), for the proposition that Plaintiffs suffer no substantive due process violation. Defs.' Br. at 21–28. That reliance is premised on the notion that Plaintiffs assert a "substantive liberty interest in participating in a non-mandated, gratuitously provided pre-trial release program offered by a local jail." *Id.* at 21. But as noted above, Defendants fight a straw man; Plaintiffs make no such claim.

The plaintiff in *Hawkins* had been convicted of a crime, incarcerated (*i.e.*, legally deprived of his fundamental liberty right), released on parole, and then re-incarcerated when the parole board realized that his release had been contrary to state law. *Id.* at 733–37. The court was tasked with determining whether the parole board's mistakenly releasing Mr. Hawkins created a *new* substantive liberty interest which would warrant strict scrutiny. Applying the framework for analyzing executive- and legislative-created rights, set out by the Supreme Court in *County of Sacramento v. Lewis*, 523 U.S. 833 (1998), the *Hawkins* court held that, if the parole board's act was viewed as executive, it would have to "shock the contemporary conscience" in order to create a new substantive right; and if viewed as a legislative, it would have to implicate a "fundamental" right. *Id.* at 738–39. Because neither standard was met—Mr. Hawkins had been validly convicted and remained under a lawfully issued sentence—the court found that he did not have a right "to remain free on erroneously granted parole" which would warrant strict scrutiny. *Id.* at 745–47.

---

n.29. Even courts that have allowed longer than 48 hours have framed the appropriate time period in hours or days, not the weeks or months that the Division takes to process pretrial referrals. *Id.* Plaintiffs will gladly brief this issue when the class certification issue becomes ripe for resolution.

Because Plaintiffs are not asking this Court to "expand the concept of substantive due process" or "break new ground," *id.* at 738, Defendants' arguments are misplaced. Plaintiffs' claim is not that they have an executive- or legislative-created right created by the County's pre-trial release program. Defs.' Br. at 26.[12] Rather, Plaintiffs' claims arise under the indisputably "fundamental" right to liberty enjoyed by people who have not been convicted of any crime, and *created by the Constitution itself. Salerno*, 481 U.S. at 750; *see also Hamdi*, 542 U.S. at 529; *Zadvydas*, 533 U.S. at 690; *Wheeler*, 864 A.2d at 1062. As such, when courts across the country have considered claims regarding the constitutionality of pretrial detention, they consistently apply the standard heightened scrutiny applicable to "fundamental liberty interest[s]. *Lopez-Valenzuela*, 770 F.3d at 780; *see also, e.g.*, *Torres*, 2020 WL 7706883, at *8; *Wheeler*, 864 A.2d at 1065.[13] The *Hawkins-Lewis* framework is nowhere to be seen.

## C. Defendants' Practices Violate Procedural Due Process (Counts II & IV)

### 1. Plaintiffs are entitled to constitutionally adequate procedures where their substantive pretrial liberty interest is at stake.

Substantive rights demand procedural protections. For this reason, a person must receive "'strong procedural protections'" before being deprived of their liberty. *Wheeler*, 864 A.2d at 1062 (quoting *Zadvydas*, 533 U.S. at 690–91). These procedures include a "full-blown adversary hearing" in front of a "neutral decisionmaker"; consideration of alternative conditions of release; application of a clear-and-convincing-evidence standard of proof; and recorded "findings of fact"

---

[12] Defendants cite Maryland Code § 11-718, which authorizes the County to create a work-release program as an alternative to incarceration for people who have been convicted of crimes. Defs.' Br. at 24–25. This provision is irrelevant, because it does not apply to pretrial detainees such as Plaintiffs. Plaintiffs' asserted right does not arise from this statutory provision (or any other).

[13] Defendants' accusation that Plaintiffs frame the right to pretrial liberty too broadly, again citing *Hawkins*, Defs.' Br. at 22, also misses the mark. Again, the *Hawkins* court was cautioning against the broad framing of executive- or legislative-created rights—not fundamental rights created by the Constitution itself.

and "statement[s] of reasons for a decision to detain." *Salerno*, 481 U.S. at 750–52 (applying *Mathews v. Eldridge* balancing test to pretrial detention); *see also Morrissey v. Brewer*, 408 U.S. 471, 488–89 (1972) (requiring the same procedures at parole revocation hearings where, unlike in pretrial proceedings, people are not presumed innocent). Courts around the country have repeatedly affirmed that procedural due process requires these minimal protections. *See, e.g.*, *ODonnell v. Harris Cnty.*, 892 F.3d 147, 159–61 (5th Cir. 2018), *reversed on other grounds by Daves v. Dallas Cnty., Tex.*, 22 F.4th 522 (5th Cir. 2022); *Torres*, 2020 WL 7706883, at *11–13.[14] And the Maryland Rules provide similar protections. *See* Md. Rule 4-216.1(2) (b)(2)-(3), (g) (requiring a "judicial officer" to give "[i]ndividualized consideration" to an arrested person's circumstances, impose the "least onerous condition or combination of conditions of release" possible, and make a written record of the proceeding and findings).

> **2.  County Defendants fail to provide the required safeguards before denying pretrial release.**

County Defendants do not provide people who are referred to the Pretrial Division for a release decision with these basic procedural protections. For weeks or months after a pretrial referral, detained persons may receive no process at all, as the Division fails to timely review their eligibility for release. Pls.' Br. at 14. And even after the Division begins to process a referral, the procedure afforded falls woefully short of the constitutional floor. When a court refers a detained person to the Pretrial Division for a determination of whether they can be released under the Division's self-determined criteria, their release decision is necessarily going to be made not by a judicial officer in open court, but rather by a County bureaucrat behind closed doors. *Id.*

---

[14] *See also McNeil v. Cmty. Prob. Servs., LLC*, No. 1:18-CV-00033, 2019 WL 633012, at *15 (M.D. Tenn. Feb. 14, 2019), *aff'd*, 945 F.3d 991 (6th Cir. 2019); *Caliste v. Cantrell*, 329 F. Supp. 3d 296, 314–15 (E.D. La. 2018), *aff'd*, 937 F.3d 525 (5th Cir. 2019); *Valdez-Jimenez*, 460 P.3d at 987.

Defendants do not argue, nor can they, that people referred to the Pretrial Division appear in front of a "neutral decisionmaker" for a "full-blown adversary hearing." Nor do Defendants dispute that persons referred to the Pretrial Division receive no affirmative notice of where they are in the processing queue; no opportunity to present evidence in support of their release; and no opportunity to confront any evidence that might be used to deny their release. *Id.* at 31.

In denying any wrongdoing, Defendants argue that because the Pretrial Division notifies the court and the detained person of its decisions after the fact, the ultimate discretion remains with a "judicial officer." This is a red herring. Notification is not a decision, and notification by an executive agency is not a judicial finding. Whether the Division notifies the court of its decision is irrelevant to the constitutional inquiry; courts do not "determine[] the conditions of pre-trial release and make[] the pretrial release decisions," Defs.' Br. at 7, merely by becoming aware of them after the fact. It is undisputed that if the Pretrial Division chooses to exercise the authorization of release granted by a referral, it does so without any further judicial involvement. *Id.* The discretion about whether someone is released or jailed following a referral—the only discretion that matters here—belongs with County officials.

In any event, Plaintiffs have provided voluminous evidence that such notification rarely occurs. *See, e.g.*, Heldreth Decl., Doc. 2-5, ¶ 40; Meiring Decl., Doc. 2-11, ¶¶ 28, 31; Campbell Decl., Doc. 2-22, ¶¶ 12–13; Ruben Decl., Doc. 2-23, ¶ 8; Glenn Decl., Doc. 2-25; ¶ 29. Most recently, Plaintiff Butler's public defender was unaware that the Pretrial Division considers Mr. Butler ineligible for release because of his "mental health status" until Defendants asserted as much in their Motions to Dismiss. *See* Heldreth Supp. Decl. ¶ 5. Defendants provide only two sample "notification" letters to counter Plaintiffs' evidence. *See* Doc. 64-6. Both letters appear to have been sent several weeks after the detained person was referred to the Pretrial Division.

*Compare* J. Brown Docket, *with* Doc. 64-6 at 1 (referred July 29, letter dated Sept. 7). *Compare* Exhibit 3, Y. Muhammad Bond Order, *with* Doc. 64-6 at 1 (referred June 22, letter dated July 7). Neither letter copies the arrested person or their counsel, or indicates that the Pretrial Division rendered its decision with any indicia of due process. One is dated after Plaintiffs had initiated this lawsuit, rendering it presumptively unreliable as an indicator of the County's pre-suit practices. *See Patterson v. Strippoli*, 639 F. App'x 137, 143 (3d Cir. 2016) (finding post-complaint evidence not to be probative as to Plaintiffs' claims); *Smith v. United Bhd. of Carpenters & Joiners of Am.*, 685 F.2d 164, 169 (6th Cir. 1982) (Keith, J., concurring) (same). As such, the conclusion remains: red herring or not, prompt notification does not occur.

### 3. Defendants' Practices Are Not Mandated By or Compliant with the Maryland Rules.

Defendants also contend that any determination that their practices are unconstitutional necessitates a determination that the Maryland Rules are unconstitutional. Not so. First, Defendants do not fully comply with the Maryland Rules. Rule 4-216.1(b)(1)(B) prohibits preventive detention absent a finding of necessity. As explained above, putative class members are being preventively detained, and their pretrial referrals make it clear that their detention endures without a substantive necessity finding. *See supra* section I.B.3. Rule 4-216 also requires that pretrial release and detention determinations be made by a "judicial officer"—which the County Defendants are undisputedly not. As such, Defendants' practices are not mandated by the Maryland Rules; indeed, they do not fully comply with the Rules.

Second, no credible reading of the relevant rules mandates any of Defendants' unconstitutional practices. True, Rule 4-216.1 permits a "judicial officer" to, as a condition of pretrial release, "commit the [arrested person] generally to supervision by a pretrial services unit operating in the county, *subject to more detailed requirements of that unit appropriate to the*

*supervision*" (emphasis added). The Rule's plain language empowers a pretrial services unit to impose "requirements" of supervised release (say, for example, GPS monitoring)—not to make the threshold determination of whether a person should be released at all. Furthermore, Defendants readily admit their pretrial detention practices have been ongoing for decades. *See* Affidavit of Jeffrey Logan, Doc. 64-2, at 1; Affidavit of Corenne Labbe, Doc. 65, at 1. Rule 4-216.1—which includes the above-cited language—was only adopted in 2017. *See Bradds v. Randolph*, 194 A.3d 444, 452 (Md. Ct. of Spec. Appeals 2018). That Defendants' practices would be mandated by Rules that postdate them by several decades strains credulity.

Defendants' implicit argument that pretrial release cannot function any other way falls apart with a cursory glance around the state. For example, next door in Montgomery County, the Pretrial Services Unit ("PTSU") of the County Department of Corrections makes a recommendation *at a person's bail review hearing* as to whether the arrested person should be released on pretrial supervision. *See* Exhibit 4, Declaration of Dyan Owens, ¶¶ 4–5. The judge then decides, *at that hearing*, whether the person will be released pretrial, and if so on what conditions. *Id.* ¶ 7. If there are to be supervisory conditions of pretrial release—for example, that the person be subject to GPS monitoring or a curfew—the judge specifies them *at that hearing*. *Id.* ¶ 8. If the judge wishes to leave certain implementation details up to the PTSU—for example, the time of the curfew—she says so, *at that hearing*. *Id.* ¶ 9. And if there are pre-conditions to release that the court requires before the PTSU carries out its release order—for example, that PTSU verify an address before releasing the person—the judge orders as much and places those specific requirements on the record. *Id.* ¶ 11. If the PTSU has recommended against supervised release, perhaps on the basis that the arrested person does not meet one of PTSU's preferred qualifications (for example, that the person reside in Montgomery County), the judge considers

PTSU's objection at the hearing. *Id.* ¶ 13. If the judge nevertheless orders the person released on supervision over the PTSU's objection, the PTSU must still release and supervise that person. *Id.* ¶ 10. It has no discretion to superimpose its own onerous criteria or override the court's decision.

As Montgomery County illustrates, Prince George's County's unconstitutional mechanism for administering pretrial services is not the only way. Notwithstanding Defendants' hyperbole, Plaintiffs' claims do not require—or even suggest—that any aspect of the Maryland Rules are facially unconstitutional. Defendants' "'sky is falling' argument" "is not persua[sive] . . . as the issue[s] in this case deal[] with constitutional concerns." *Torres*, 2020 WL 7706883, at *13. This Court can easily require Defendants to comply with the federal and state constitutions without making any judgment about the Rules.

## II.     Without an Injunction, Members of the Putative Class Will Continue to Suffer Irreparable Harm.

"[D]eprivations of physical liberty" of the sort plaintiffs here have experienced "are the sort of actual and imminent injuries that constitute irreparable harm." *Aracely, R. v. Nielsen*, 319 F. Supp. 3d 110, 155 (D.D.C. 2018) (collecting cases); *Matacua v. Frank*, 308 F. Supp. 3d 1019, 1025 (D. Minn. 2018) ("[L]oss of liberty . . . is perhaps the best example of irreparable harm."). And "the loss of constitutional freedoms" "unquestionably constitutes" yet another "irreparable injury." *Leaders of a Beautiful Struggle v. Baltimore Police Dep't*, 2 F.4th 330, 346 (4th Cir. 2021) (internal quotation marks and citation omitted).

Defendants' principal argument on this point is that because, they say, no constitutional violations are occurring, the putative class members are not suffering irreparable harm. Defs.' Br. at 34–35. This reductive argument improperly conflates irreparable harm with likelihood of success on the merits. Pretrial incarceration causes irreparable harm; whether that incarceration is nonetheless legal is properly assessed on the merits. For the reasons given *supra*, and in Plaintiffs'

Motion for a Preliminary Injunction, Doc. 8, at 18–28, Plaintiffs are likely to succeed on the merits of their due process claims that their ongoing detention is unconstitutional.

Defendants further argue that because harm exists "anytime a person is incarcerated, whether a pre-trial detainee or a convicted and sentenced prisoner," Plaintiffs have suffered no particular injury. Defs.' Br. at 34. This is nonsensical. By this logic, a person detained without process for years before trial would be unable to seek a preliminary injunction because their harm was no greater than a person who had been validly convicted and sentenced to prison. A weeks- or months-long deprivation of liberty that is unnecessary to ensure community safety or return to court inflicts a particular harm that is analytically distinct from any injury suffered by a person detained for mere hours or after being convicted of a crime. *Cf. Aracely, R.*, 319 F. Supp. 3d at 155.

Defendants also attempt to argue that the harm they are causing is not irreparable because their practices are not new. That is not how injury works. That Defendants may have been unlawfully jailing people for decades does not make the injury any less harmful or irreparable for those experiencing it now. *See Jarpa v. Mumford*, 211 F. Supp. 3d 706, 711 (D. Md. 2016) ("[Where] continued detention is indeed unconstitutional, every subsequent day of detention without remedy visits harm anew."). That is particularly so here, where new people are subject to the County's pretrial system every day.

## III. The Equities and Public Interest Favor An Injunction.

County Defendants present several arguments that enjoining them would be inappropriate, ineffective, or against the public interest. Each is unavailing.

First, Defendants complain an injunction would cause "great disruption to a . . . system that has been in place for years." Defs.' Br. at 35. Regardless of how long Defendants' practices have been ongoing, "a state is in no way harmed by issuance of a preliminary injunction which prevents

the state from enforcing restrictions likely to be found unconstitutional. If anything, the system is improved by such an injunction." *Centro Tepeyac v. Montgomery Cnty.*, 722 F.3d 184, 191 (4th Cir. 2013); *Giovani Carandola, Ltd. v. Bason*, 303 F.3d 507, 521 (4th Cir. 2002) (same).

Second, Defendants state that "Plaintiffs' liberty interests . . . are significantly reduced by virtue of the serious felony crimes for which they have been charged." Defs.' Br. at 35. Defendants forget that Plaintiffs are, regardless of what they are charged with, presumed innocent. As such, they have not yet "surrendered" the "liberties and privileges enjoyed by other citizens." *Desper v. Clarke*, 1 F.4th 236, 242 (4th Cir. 2021)*, cert. denied*, 142 S. Ct. 811 (2022); *cf. Bell v. Wolfish*, 441 U.S. 530, 535–36 (1979); *Hensley v. Eckerhart*, 461 U.S. 424, 443 n.2 (1983) (Brennan, J., concurring in part, dissenting in part) ("Civil rights plaintiffs with meritorious claims 'appear before the court cloaked in a mantle of public interest.'" (cleaned up)). Accordingly, Plaintiffs and putative class members possess the same constitutional interests whether they are charged with serious felony offenses or minor misdemeanors. Whether any person is ultimately released may be informed by the nature of the crime with which they are charged, but the fact of their charge(s) does not mean they are not entitled to due process.

Third, County Defendants suggest that an injunction would not be in the public interest because they must be given "wide ranging deference" in their pursuit of "prison management." Defs.' Br. at 32–33. The cases Defendants cite on this point are inapposite, as they concern challenges to prison regulations after people have been validly convicted and incarcerated. *See Turner v. Safley*, 482 U.S. 78 (1982) (challenging prison rules regarding association amongst detainees); *Bell*, 441 U.S. at 520 (prison rules regarding housing, mail, and searching detainees); *Jones v. North Carolina Prisoners' Lab. Union, Inc.*, 433 U.S. 119 (1977) (regulations regarding unionization and strikes within a prison); *Taylor v. Freeman*, 34 F.3d 266 (4th Cir. 1994)

(dangerous prison conditions). Plaintiffs are not in prison—and indeed, not convicted at all. The policies and practices they challenge are those that result in their detention in the first instance, not the conditions to which they are subject once while detained, or anything else that implicates "institutional security." Defs.' Br. at 32 (internal citation omitted).

Finally, County Defendants complain that they are not a properly enjoined party and that Plaintiffs' proposed injunction would require them to violate a court order. Defs.' Br. at 35–36. This is simply not the case. County Defendants are indisputably the custodians of the people in the County Jail.[15] As such, they can properly be enjoined from detaining people in violation of their due process rights. *See, e.g.*, *McNeil v. Cmty. Prob. Servs., LLC*, 945 F.3d 991, 996 (6th Cir. 2019) (rejecting sheriff's argument that plaintiffs seeking to enjoin him from enforcing unconstitutional bail orders "should have sought an injunction against the judges themselves"); *see also id.* ("There are plenty of cases allowing injunction actions like this one."); *Torres*, 2020 WL 7706883, at *14 (enjoining sheriff "from detaining any [person] . . . without . . . Due Process"). Separately, Plaintiffs allege that County Defendants take on an unrelated role relevant to this action—deciding whether, when, and on what conditions people will be released pretrial—and that, in that regard, they are liable as municipal policymakers. But even if, as County Defendants argue, they have no policymaking role—as the jail's custodians they "cause[]" a "deprivation of . . . rights[] . . . secured by the Constitution" and may be sued in "equity." 42 U.S.C. § 1983.

## CONCLUSION

For the reasons set forth above, the Court should grant Plaintiffs' Motion for Preliminary Injunction against the County Defendants.

---

[15] Indeed, Defendants emphasize their custodial control over the putative class members, noting that even those released on pretrial supervision remain within their "custody." Defs.' Br. at 7.

Respectfully submitted this 10th day of October, 2022.

/s/ Ellora Thadaney Israni
Ellora Thadaney Israni*
Ryan Downer*
Jeremy D. Cutting*
CIVIL RIGHTS CORPS
1601 Connecticut Ave. NW, Suite 800
Washington, D.C. 20009
(202) 894-6132
ellora@civilrightscorps.org

/s/ Seth Wayne
Seth Wayne*
INSTITUTE FOR CONSTITUTIONAL
ADVOCACY AND PROTECTION
GEORGETOWN UNIVERSITY LAW CENTER
600 New Jersey Ave. NW
Washington, D.C. 20001
(202) 662-9042
sw1098@georgetown.edu

* admitted *pro hac vice*

*Counsel for Plaintiffs*

/s/ Edward Williams
Edward Williams (D. Md. Bar 20944)
Matthew Martens*
Thomas Bredar (D. Md. Bar 21635)
Ellen Connell*
Donna Farag*
Ayana Williams*
Sonika Data*
Yoseph Desta*
Britany Riley-Swanbeck (D. Md. Bar 21843)†
WILMER CUTLER PICKERING
  HALE AND DORR LLP
1875 Pennsylvania Ave. NW
Washington, D.C. 20006
(202) 663-6487
ed.williams@wilmerhale.com
matthew.martens@wilmerhale.com

Robert Boone*
WILMER CUTLER PICKERING
  HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
(212) 230-8800
robert.boone@wilmerhale.com

Timothy Perla*
WILMER CUTLER PICKERING
  HALE AND DORR LLP
60 State Street
Boston, MA 02109
(617) 526-6000
timothy.perla@wilmerhale.com