1                IN THE UNITED STATES DISTRICT COURT

2                   FOR THE DISTRICT OF MARYLAND

3                        SOUTHERN DIVISION

4   ROBERT FRAZIER et al.,        ) CIVIL ACTION
                                  ) NO. PJM-22-1768
5            Plaintiffs,          )
                                  )
6   v.                            )
                                  )
7   PRINCE GEORGE'S COUNTY,       )
    MARYLAND et al.,              )
8                                 )
             Defendants.          )
9
            TRANSCRIPT OF MOTIONS HEARING PROCEEDINGS
10          BEFORE THE HONORABLE PETER J. MESSITTE
                  UNITED STATES DISTRICT JUDGE
11          TUESDAY, OCTOBER 25, 2022; 11:00 A.M.
                       GREENBELT, MARYLAND
12
    APPEARANCES:
13
    FOR THE PLAINTIFFS:
14
            WILMER CUTLER PICKERING HALE AND DORR LLP
15          BY:  RYAN DOWNER, ESQUIRE
            BY:  SETH DANIEL TYCHSEN WAYNE, ESQUIRE
16          BY:  JEREMY DAKOTA CUTTING, ESQUIRE
            BY:  ELIZABETH CRUIKSHANK, ESQUIRE
17          1601 Connecticut Avenue NW
            Suite 800
18          Washington, DC  20009
            (202) 84404975
19

20

21

22  OFFICIAL COURT REPORTER:
    Renee A. Ewing, RPR, RMR, CRR - (301) 344-3227
23
         ***COMPUTER-AIDED TRANSCRIPTION OF STENOTYPE NOTES***
24

25

```
 1  APPEARANCES (Continued):

 2  FOR THE DEFENDANT PRINCE GEORGE'S COUNTY, MARYLAND:

 3          PRINCE GEORGE'S COUNTY OFFICE OF LAW
            BY:  SHELLEY LYNN JOHNSON, ESQUIRE
 4          BY:  ANDREW J. MURRAY, ESQUIRE
            1301 McCormick Drive
 5          Suite 4100
            Largo, Maryland  20774
 6          (301) 952-5225

 7  FOR THE JUDICIAL DEFENDANTS:

 8          OFFICE OF THE ATTORNEY GENERAL (Maryland) COURTS &
            JUDICIAL AFFAIRS DIVISION
 9          BY:  JAMES O. SPIKER, IV, ESQUIRE
            BY:  KEVIN M. COX, ESQUIRE
10          200 St. Paul Place
            20th Floor
11          Baltimore, Maryland  21202
            (410) 576-6389

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1              (Call to order of the Court.)

2              THE COURT:  Have a seat, please.

3              THE DEPUTY CLERK:  The matter now pending before the

4    Court is Civil Case No. PJM-22-1768, *Robert Frazier et al. v.*

5    *Prince George's County, Maryland et al.*  The matter now comes

6    before the Court for a motions hearing.

7              THE COURT:  All right.  Let's go down the line here

8    on plaintiffs' counsel starting with far end.  Ms. Cruikshank

9    is that?

10             MS. CRUIKSHANK:  Elizabeth Cruikshank.

11             MR. DOWNER:  Ryan Downer, Your Honor.

12             MR. CUTTING:  Jeremy Cutting, Your Honor.

13             MR. WAYNE:  Seth Wayne, Your Honor.

14             THE COURT:  And for the defendants, starting with

15   Ms. Johnson.

16             MS. JOHNSON:  Good morning, Your Honor.  Shelley

17   Johnson on behalf of the County defendants.

18             MR. MURRAY:  Good morning, Your Honor.  Andrew Murray

19   on behalf of the County defendants.

20             MR. COX:  Good morning, Your Honor.  Kevin Cox on

21   behalf of the Judge defendants.

22             MR. SPIKER:  And good morning, Your Honor.  James

23   Spiker also on behalf of the Judge defendants.

24             THE COURT:  Folks, Counsel, if you have been

25   vaccinated and are essentially safe in that regard, you can

```
 1   remove your masks because it's a little easier for me to hear
 2   you when you are speaking.
 3        I don't know whether there is anything preliminary to
 4   raise, is there, on either side?  Otherwise, we can jump right
 5   in.
 6              MS. JOHNSON:  No, Your Honor.
 7              THE COURT:  Let me start with, rather than simply
 8   opening the floor for argument, with some issues that I need
 9   clarification on.  First of all, as I understand it, there are
10   only two individuals who are still in custody.  Am I correct?
11              MS. JOHNSON:  I believe there is three, Your Honor.
12              THE COURT:  Is that correct?
13              MR. COX:  Your Honor, Kevin Cox on behalf of the
14   Judge defendants.  There are three plaintiffs who are still in
15   custody, and I believe what you should have in front of you is
16   ECF 70-2.  Thank you, Madam Clerk.  This was a filing filed by
17   the Judge defendants and this is a chart outlining all of the
18   plaintiffs and their current status.  And as you will see,
19   there are only three, they are in red, and that's Butler,
20   Williams, and Laguan-Salinas are the known three plaintiffs
21   still detained.
22              THE COURT:  All right.  Mr. Wayne.
23              MR. WAYNE:  Yes, Your Honor.
24        There -- I will make a slight amendment to -- to
25   Mr. Cox's statement.  There are two plaintiffs -- two of the
```

1    named plaintiffs that are currently detained pursuant to the

2    referral practices challenged in this lawsuit.

3    Mr. Laguan-Salinas is detained pursuant to another reason, but

4    they -- the -- the reasons for his detention aren't the subject

5    of this lawsuit.

6                    THE COURT:  Are what?

7                    MR. WAYNE:  Are not the subject of this lawsuit.

8                    THE COURT:  Well, is he a plaintiff?

9                    MR. WAYNE:  He is a named plaintiff, Your Honor.

10                    THE COURT:  All right.  Understood.  Well, let's stay

11   with the two who are detained who plaintiffs believe -- the two

12   who they concede are currently detained.  Now, who is going to

13   speak for Butler and Williams?

14                    MR. WAYNE:  I will, Your Honor.

15                    THE COURT:  All right.  Have a seat.  And responding

16   for Butler and Williams will be who?  More than one?

17                    MR. COX:  Your Honor, Kevin Cox on behalf of the

18   Judge defendants.  Generally prepared to respond to all -- all

19   arguments, including as to Mr. Butler and Mr. Williams.

20                    THE COURT:  All right.  And from the -- Mr. Murray

21   and Ms. Johnson, are you speaking for the County at all in any

22   way?  Ms. Johnson?

23                    MS. JOHNSON:  Yes.  I will be speaking on behalf of

24   the County, Your Honor.

25                    THE COURT:  All right.  Let's just focus now on the

1  two who are detained who plaintiffs believe are the subject of

2  the discussion today.  And I need -- I need to get a better

3  sense of a lot of factual matters because I have the

4  impression, as I read the complaint, that a lot of allegations

5  apply to everybody.  All allegations may not apply to all

6  plaintiffs.  And I need to see specifically for now as to the

7  ones who are detained for certain matters.

8       So let's start with Butler.  And let me be clear, first

9  of all, Butler is charged with murder in the second degree.  Am

10 I correct?

11          MR. WAYNE:  Yes, Your Honor.

12          THE COURT:  All right.  Now, specifically, has he

13 only had one bail review or has there been more than one?

14          MR. WAYNE:  Your Honor, there have been multiple,

15 including, I believe, two or three since this lawsuit was

16 filed.

17          THE COURT:  All right.  Have any appeals been taken

18 to any higher courts from those bail denials?

19          MR. WAYNE:  No, Your Honor, not that I am aware of.

20          THE COURT:  Why has there not been an appeal taken to

21 the next highest appellate court in Maryland?

22          MR. WAYNE:  Your Honor, I don't want to speak for

23 Mr. Butler's criminal representation.  We don't represent him

24 in his criminal case.  And this lawsuit doesn't address the --

25 the criminal representation of him in that case.

1    THE COURT:  Well, I am not sure why you are saying

2   that.  I mean, you are here asking a federal court to jump in

3   to state court proceedings without having appealed any issues

4   that you say have been adverse to these two gentlemen, and I

5   need to know why no appeal has been taken as opposed to one,

6   two, or three bail reviews?

7    MR. WAYNE:  Your Honor, I am -- I am not certain what

8   decision making his public defender made or his criminal

9   defense lawyer made.

10    THE COURT:  Wait a minute now.  You are saying an

11   appeal from the denial of bond or -- I am not sure what --

12    MR. WAYNE:  Your Honor, this suit don't challenge the

13   denial of bond, and that's not the circumstances that we are

14   confronting.  What this suit challenges is the process afforded

15   to Mr. Butler and involving the referral to -- to Pretrial.

16   This forms the through line of the situation involving all of

17   the named plaintiffs.  Their bail hearings in the district

18   court did not result in a final decision about release or

19   detention.

20    The issue that this lawsuit confronts is that those bail

21   review hearings did not render a final decision about

22   detention.  They, instead, deferred to the County about whether

23   release or detention would occur, which then had its drawn out,

24   opaque process.

25    THE COURT:  Okay.  I don't want you to argue the

1    merits.  That may or may not be a valid argument that you are

2    making.  But right now, do you have the specific language that

3    each -- first of all, what judges are you talking about as to

4    Butler?

5              MR. WAYNE:  Your Honor, it is Judge Serrette issued

6    the initial pretrial referral, who is the named defendant in

7    this case.

8              THE COURT:  Any other judge?

9              MR. WAYNE:  For Mr. Butler, there is no other judge

10   named in this lawsuit.

11             THE COURT:  Did she also hear petitions for

12   rehearing?

13             MR. WAYNE:  The subsequent bail review hearings after

14   this lawsuit was filed were heard by a different judge who is

15   not named.

16             THE COURT:  And that judge is not a defendant?

17             MR. WAYNE:  Correct.

18             THE COURT:  So there is one bail hearing before one

19   judge that is the subject of what we are talking about today.

20   Is that correct?

21             MR. WAYNE:  Your Honor, I would have to go back and

22   review the -- the pleadings to determine whether there was one

23   or multiple.  I believe there was just one for Mr. Butler, Your

24   Honor, but this lawsuit doesn't challenge the outcome.

25             THE COURT:  Don't tell me what this lawsuit doesn't

1    involve.  Unfortunately for you, I have to decide what it

2    involves.  And if you can't answer my questions, it may be

3    fatal to your case, so you need to be able to tell me.  You

4    have sued a number of judges and you have alleged that you

5    haven't gotten due process or something like that throughout,

6    and you are right now faltering on questions which I deem for

7    the present to be quite significant to any decision I might

8    make.

9        You may have to go back and re-study where you are in

10   this, but don't tell me what the lawsuit is about right now.  I

11   have a sense of what you are claiming.  All right.

12       Now, with regard to Mr. Williams, tell me who -- that

13   person, as I understand it, is charged with a firearm during

14   the use of a crime and drug trafficking.  Am I correct?

15               MR. WAYNE:  That's correct, Your Honor.

16               THE COURT:  And who is the judge, Powell?

17               MR. WAYNE:  That's correct, Your Honor.

18               THE COURT:  And Powell is a circuit or district

19   judge?

20               MR. WAYNE:  District judge, Your Honor.

21               THE COURT:  Was there more than one bail hearing

22   before that individual?

23               MR. WAYNE:  My understanding is that there were --

24   there were multiple bail hearings for Mr. Williams.

25               THE COURT:  Always before Powell?

1          MR. WAYNE:  Prior to this lawsuit, yes, Your Honor.

2          THE COURT:  All right.  But subsequent to the lawsuit

3     what?  Other judges -- other bail hearings?

4          MR. WAYNE:  I believe another judge has heard a

5     hearing for Mr. Williams since this lawsuit was filed.  I am

6     not certain on that, Your Honor.  I'd be happy to go back and

7     review our records to give you a more accurate --

8          THE COURT:  And in either case, with regard to

9     whatever decision the judge made -- and you say it isn't an

10    order, it's something else -- no appeal was taken to a higher

11    court in the Maryland system.  Is that correct?

12         MR. WAYNE:  That's correct, Your Honor.

13         THE COURT:  All right.  Now I am going to let -- I am

14    going to hear from Mr. Cox I think next in terms of where I am

15    on this, but one of the things that concerns me in both cases

16    is what was said, what kind of petition was made on the bail

17    review?  Was it pursuant to a written request?  First bail

18    hearing, any subsequent bail hearings, what was said, what was

19    represented, and what the judge said in responding to the

20    petition, and what kind of referral, if any, was made to the

21    Prerelease authorities, those are all issues that I deem right

22    now relevant.

23         Before you say anymore, Mr. Wayne, I think perhaps,

24    Mr. Cox, you are the one to respond to this.  And what I'd like

25    you to do is just leave aside whether we are properly in court

1  or not jurisdictionally -- that's an important issue, too in

2  the case -- but as far as you understand it, are you aware of

3  the -- I did see this in your pleadings at different times but

4  I need to verify this again -- how soon after an arrest with

5  regard to these two individuals, Butler and Williams, they were

6  brought for a bail review, whether there were subsequent bail

7  reviews, and what reasons were given if -- what decision, if

8  any, was made with respect to each of those requests.

9         So if you can answer, and if you can't, perhaps

10 Ms. Johnson can, let's take Butler to start.

11        Do you know when Butler was arrested, when he was brought

12 up for bail review, et cetera?

13             MR. COX:  Yes, Your Honor.

14             THE COURT:  All right.

15             MR. COX:  And if it may also be helpful to the Court,

16 we did our best to lay -- the Judge defendants did our best to

17 lay this out in our initial motion to dismiss.  I just want to

18 note --

19             THE COURT:  If you have a page reference?  There was

20 a pile of stuff that I got before me, and I looked at some of

21 this stuff along the way, so I need you to call my attention to

22 it right now.

23        Let's talk about Butler and see what we have with regard

24 to the first bail review for Butler.  Where do you refer to

25 that?

1          MR. COX:  So it's ECF 66-1, Your Honor, and it's

2     pages 7 through 8 is Mr. Butler, and I am happy to pause, Your

3     Honor, if you want to review that, or I am happy to respond.

4          THE COURT:  I will look at it.  Why don't you go

5     ahead and restate it so we are all open on how we are going

6     along with it.  Let's start with Butler.

7          MR. COX:  Yes, Your Honor.

8          Frankly, before I do that, I just want to note plaintiffs

9     had an opportunity with this case to add in as transcripts from

10    the hearings.  They could have submitted court filings.  They

11    did none of that.

12         THE COURT:  Well, that's part of my concern.  I am

13    wondering what kind of petition was made, what was said in the

14    petition, what reasons the judge gave for his or her decision,

15    and what happened afterwards, particularly issues, for example,

16    about the duration of any response by Prerelease.

17         There is a general statement which I could not pin to any

18    one plaintiff that said -- says, in effect, weeks and possibly

19    months of detention without reasons given or arbitrary reasons,

20    and that doesn't really help me in terms of understanding just

21    what time passed and what was said or done.

22         That's a serious omission in plaintiffs' case, Mr. Wayne.

23    I just don't know what happens in some of these cases.  We will

24    come back to you and let you try and fill some gaps, but as I

25    read this, hard for me to find out exactly what was going on.

1          In so far as you know, Mr. Cox, let me hear where you are

2     and let's talk about Butler.

3          MR. COX:  Yes, Your Honor.

4          And we did our best to piece everything together as well

5     for the Court.  And Mr. Butler -- and if you marry this up with

6     the chart, ECF 70-2, you can see that Mr. Butler was arrested

7     on October 27th, 2021, and it was for murder in the second

8     degree, manslaughter, assault in the first and second degree,

9     and use of a firearm during the commission of a crime.

10          THE COURT:  Crime of violence or felony.  Right?

11          MR. COX:  I'm sorry, Your Honor?

12          THE COURT:  A crime of violence, October 27th, 2021?

13          MR. COX:  Yes.  And he had bail review hearings on

14    October 28th and October 29th, respectfully, before Judge

15    Defending Clark Edwards, who is a defendant in this case, and

16    the Honorable Judge Clayton Aarons who is not a defendant in

17    this case.

18          Now, Mr. Butler was indicted and his case was transferred

19    to the circuit court.  That's important, Your Honor.  I am

20    happy to address that now.

21          THE COURT:  Go ahead.

22          MR. COX:  That divested the district court of

23    jurisdiction.  So here, District Court Judges Bereano and

24    Clark-Edwards, who are Judge defendants in this case, no longer

25    have jurisdiction over Mr. Butler because his case was taken

1  from district court and placed in circuit court.

2          THE COURT:  How long did that take?  We are in

3  October for the bail reviews, and then you are talking about I

4  think February for bail review in circuit court.  Am I correct?

5  And again in July?

6          MR. COX:  I'm sorry.  I couldn't quite follow you.

7          THE COURT:  The time lag between the trans -- how

8  long did it take to transfer the case from district court to

9  circuit court?

10          MR. COX:  I'd be speculating right now, Your Honor,

11  but I will say the first -- it looks like the first bail

12  hearing in circuit court was February 18, 2022.

13          THE COURT:  Let's take a look now.  From October

14  28th, 2021, he is detained.  He's had two bail reviews, an

15  initial and a follow-up bail review in district court, and then

16  for a period of some months, he is continued in detention as

17  the case is being transferred.  So it's taking November,

18  December, January, February before he is before the circuit

19  court with a bail review.

20      Do you know whether any petition for bail review was

21  filed in the interim?

22          MR. COX:  I am checking, Your Honor.  We have a copy

23  of the docket we attached as an exhibit to our motions.  If I

24  can have the Court's indulgence for just one moment?

25          THE COURT:  Well, we can come back to that.  I just

1   -- right now, I am noting that it took a matter of months

2   before he was actually apparently up for bail review in the

3   circuit court.

4        All right.  In the circuit court, he had bail review on

5   two different occasions, February 18 and July 26th, continued

6   to July 28th.  Is that right?

7              MR. COX:  Yes, Your Honor.

8              THE COURT:  Before Judge Serrette, and then also

9   Judge Alves, not a defendant.  Right?

10             MR. COX:  Yes, Your Honor.

11             THE COURT:  Do we have -- I mean, do you know what

12   the petitions alleged there and what the reasons the Court gave

13   for presumably denying bail at that point?

14             MR. COX:  Your Honor, I do not have the transcript --

15   or we do not have the transcript for the Court today.  We have

16   personally listened to the audio from the subsequent bail

17   hearing on July 26th, 2022.

18             THE COURT:  I'm sorry.  Which date?

19             MR. COX:  I'm sorry?

20             THE COURT:  For which date?

21             MR. COX:  I believe July 26, 2022.

22             THE COURT:  All right.

23             MR. COX:  And that's a judge who is not a defendant

24   here.  That judge was very specific with what she said;

25   whereas, she made the point to the public defender that Judge

1  Serrette was actually lenient with regard to her decision on

2  bail and that the decision may have been not as lenient or not

3  as favorable to the plaintiff in terms of being authorized for

4  potential pretrial release.

5      That was from the audio, but --

6          THE COURT:  This is the judge on the follow up in the

7  circuit court after -- by Judge Serrette or by the second

8  judge?

9          MR. COX:  The second judge.

10         THE COURT:  Judge Alves?

11         MR. COX:  Yes.  To be clear, Your Honor, this case

12 has been especially assigned per the docket.  It's clear.  This

13 case is no longer before Judge Serrette.

14         THE COURT:  And Judge Alves has it?

15         MR. COX:  Yes.  And on the record, she said, I don't

16 know why this case -- I am paraphrasing, Your Honor -- I don't

17 know why this case was sent to me, but it's my case now.

18         THE COURT:  All right.  And fair enough.  And there

19 has been no further bail review since July 26th, 2022?

20         MR. COX:  I would have to check the docket, Your

21 Honor, but I believe that's correct.  We have been trying to

22 keep up-to-date with it.  With the numerous plaintiffs, it's

23 been a little difficult, but if plaintiffs' public defenders

24 have not chosen to ask for subsequent bond review, I believe

25 that would be for plaintiffs here to answer that.

1          THE COURT:  All right.  Are you also agreed that

2    there have been no appeals to the Maryland appellate courts for

3    any of these denials?

4          MR. COX:  Absolutely, Your Honor.  I am not aware of

5    any appeals.

6          THE COURT:  And Mr. Butler continues in detention?

7          MR. COX:  Yes.  Mr. Butler is currently in detention

8    because of the -- the charges filed against him and I believe

9    his mental health status.

10          THE COURT:  Let's go to Mr. Williams.  Let's track

11    back from the beginning about -- I have him arrested on June

12    30, 2022, on a traffic stop.  Marijuana and a loaded handgun

13    were located.  That's June 30, 2022.  Also, apparently he was

14    on probation at the time?

15          MR. COX:  Yes.  And, Your Honor, just for the record

16    and perhaps to assist you, ECF -- this is our filing ECF 66-1,

17    pages 8 through 9.  We detailed as well as possible the status

18    of Mr. Williams' criminal case history for this case, something

19    plaintiffs have provided virtually nothing on.

20          THE COURT:  Well, leaving aside his criminal case

21    history, let's talk about bail reviews.

22          MR. COX:  Okay.

23          THE COURT:  Go ahead.  He's arrested on June 30,

24    2022.  When do you have his first review?

25          MR. COX:  Yes, Your Honor.  I do have him being

1   arrested June 30th, and his first appearance was July 1st,

2   2022.

3           THE COURT:  All right.  His initial appearance.  But

4   then his bail review July 5 and August 12.  Is that correct?

5           MR. COX:  Yes, Your Honor.

6           THE COURT:  Before Judge Powell and Judge Lewis,

7   Judge Lewis not being a defendant.  Correct?

8           MR. COX:  Yes.  The August 12th was Judge Patrice

9   Lewis, Your Honor.

10          THE COURT:  All right.  Do you have -- in the case of

11  both of these defendants, you say you have transcripts of the

12  bail hearings, or is there some sort of order issued by the

13  judge in each of those two defendant's cases?  Is it a form

14  that's checked or is it -- I am not sure how -- how it works.

15  Often in the district court -- or circuit court, there are

16  forms that you check a box.

17          MR. COX:  That is generally correct, Your Honor, and

18  I will answer both questions separately.

19      As to -- and you said "transcripts" and I believe I used

20  the word "transcripts" earlier.  If I did, I misspoke, Your

21  Honor.  We have listened to the audio CD.  Those can be

22  transcribed.  Plaintiffs have chosen not to do that.

23          THE COURT:  I understand.

24          MR. COX:  They are as available to them as they are

25  to us, and there are -- there is a court record, obviously, and

1   -- and we can possibly check our records right now, Your Honor,

2   to let you know what the most recent filing we have for

3   Mr. Williams is in terms of bond, but I believe -- I mean, it

4   would all be in the case record, again, which plaintiffs have

5   access to and his public defender would have access to.

6              THE COURT:  All right.  But in any event, there have

7   been at least two bail hearings before -- in the district

8   court.  Is that correct?

9              MR. COX:  As to Mr. Williams, yes, Your Honor.  And

10  just to clarify, Judge Powell was not a part of that second

11  hearing, which our position is moots out the claims against

12  Judge Powell.

13             THE COURT:  And Mr. -- let me jump back to you,

14  Mr. Wayne.  Have there been, in the case of either Mr. Butler

15  or Mr. Williams -- I think the answer is yes but I want you to

16  be specific -- subsequent petitions for a review of bail in the

17  case of either of these two individuals since this case was

18  filed?

19             MR. WAYNE:  There have been for Mr. Butler.  For

20  Mr. Williams, I am not sure.

21             THE COURT:  Okay.  The issue that concerns me in all

22  of these cases, and we will get to some other preliminary

23  questions, what was raised -- what issues were raised in those

24  papers, the relevance being the following:  If, in those

25  papers, it said we object to the fact that there are referrals

1  to Prerelease that result in extensive delays -- and we are

2  talking about how many days in each case, I don't know -- and

3  that no published reasons are given or arbitrary reasons are

4  given, how do I know that those weren't the same arguments that

5  counsel made before the judges in the bail hearings, the very

6  issues that you want to argue here?  How do I know that unless

7  I see what happened in those cases?

8            MR. WAYNE:  Your Honor, I can attest that for

9  Mr. Butler, his public defender, in one of the subsequent

10  hearings in July of this year, attempted to raise the

11  constitutional concerns with the referral process, and the

12  judge refused to consider those arguments, saying on the record

13  that that was a matter for the federal court.

14       So in at least one instance, we know the public defender

15  attempted to raise the constitutional concerns and was rebuffed

16  from the state court for even considering those arguments.

17            THE COURT:  Well, let's suppose that the judge who

18  said that was wrong.  It may well have been.  You are not

19  precluded from raising constitutional issues in state court on

20  bail review hearings, and you can always appeal to a higher

21  court to say we were denied the opportunity to challenge

22  constitutionally what went on in our case.  Maybe the judge was

23  wrong.  What do you do in that case, you come to federal court

24  or do you go up on appeal?

25            MR. WAYNE:  Your Honor, I believe Your Honor's

1  concern may reflect the abstention doctrines, and if that's the

2  case, we have a number of arguments for the reasons why those

3  abstention considerations aren't applicable here.  Because

4  plaintiffs have federal claims, they are entitled as a matter

5  of course to federal jurisdiction for those claims to a federal

6  court.

7          THE COURT:  That may or may not be an accurate

8  statement either.

9      Mr. Cox, do you want to respond to that?

10          MR. COX:  Yes.  Initially, Your Honor, and I have

11  been checking my records, what Mr. Wayne has said about the

12  paraphrasing of what the judge said, we have the audio, Your

13  Honor.  One of plaintiffs' 20 attorneys could have went and

14  gotten the audio.  They could have paid to have transcripts of

15  this.  They have provided none of that to the Court to allow

16  the Court to hear these.  Instead, they are relying on what a

17  public defender may have told them.  We have listened to that

18  audio, and what Mr. Wayne said right there is not entirely

19  accurate.

20          THE COURT:  What are you -- I am still getting

21  counsel sort of testifying secondhand or thirdhand on this.

22  What do you say the audio says?

23          MR. COX:  Your Honor, it's been a couple at least

24  weeks since I have listened to the audio.  I don't want to

25  misspeak.  But I can say I have a crystal clear memory of what

1  Judge Alves said.  The public defender brought up this case in

2  Mr. Butler's case and said that Judge Serrette -- if you read

3  plaintiffs' complaint, they want to make this case originally

4  about whether these plaintiffs were ordered or authorized

5  release.  If you recall, Mrs. -- Ms. Israni's prior statements

6  to this Court were that, for example, Mr. Butler was ordered

7  released.  That was the position taken by the public defender

8  in Mr. Butler's case.  And Judge Alves said, I need to listen

9  to the audio from Judge Serrette.

10      Judge Alves took a day or two and went and listened to

11  the audio from Judge Serrette and then came back and said,

12  That's not what happened in that case.  Judge Serrette did not

13  order Mr. Butler released.  That's contrary to what you are

14  saying.

15      And the arguments that were made about the constitutional

16  issues were about making Mr. Butler's bond status worse, so to

17  speak, because that was in regard to Judge Alves' comment that

18  she -- if she had originally decided the bail issue, it

19  probably would have been just flat no bond.  That was the

20  implication.  That's my memory as I sit here today, Your Honor,

21  of listening to that audio.  We are happy to provide the audio

22  to the Court.  I think it would make more sense for plaintiffs

23  to pay for the transcripts and provide all those to the Court

24  if that's something the Court would like to have resolved.

25          THE COURT:  What about Williams?  Anything more to

1  say about Williams?

2          MR. COX:  Just to be clear, Your Honor, the -- just

3  the last point as to Mr. Williams, the hearing as to Judge

4  Lewis occurred after -- after suit was filed and after --

5          THE COURT:  The bail hearing for this defendant --

6  plaintiff currently detained Mr. Williams is what you are

7  talking about?

8          MR. COX:  Yes, Your Honor.

9          THE COURT:  And you know what the petition said

10  there?  What was alleged?  I mean, were they alleging that

11  Prerelease is somehow deficient in its policy, A; application

12  of its policy, B; arbitrariness, C?  Any of those issues part

13  of that bail request?

14          MR. COX:  May I have the Court's indulgence for just

15  a minute to confer with my co-counsel?

16          THE COURT:  The issue on all of this, as to whether

17  it's abstention and everything else, I mean, apparently, the

18  plaintiffs are taking the position that, I don't know, maybe

19  nothing is pending that the Court would interfere with if it

20  exercised jurisdiction, and right now, I don't really know what

21  was said in any of these proceedings relative to an order or

22  something about bail.  But let's pass that for now and deal

23  with what we have got.

24          And perhaps, Ms. Johnson, this is time for you to

25  respond.

1      Is there a policy regarding prerelease in Prince George's

2  County?

3          MS. JOHNSON:  I would say that -- I am kind of

4  hedging because I am not sure what you are asking me.  When you

5  say is there a policy, you mean is there a -- a -- if you are

6  asking is there a time frame of when --

7          THE COURT:  No.  Is there a practice?  What happens?

8  How does a Court -- how does a case get to Prerelease?  Someone

9  comes before a judge on a bail review and then some kind of

10 decision -- however we characterize it doesn't really matter at

11 the moment -- but how does it get to Prerelease?

12         MS. JOHNSON:  Okay, Your Honor.  When the -- when the

13 criminal defendant is presented at a bond hearing, the judge,

14 in reviewing the pending charges and what limited

15 information -- and at that point, they have very limited

16 information.  They just have what is the statement of probable

17 cause, statement of charges that they are dealing with.  That's

18 what they have.

19         And at that time, they either, depending on the charges

20 and what limited criminal history they might have of -- of the

21 defendant, make a decision on -- on bail or pretrial release.

22         And in most of these plaintiffs' cases, they are held

23 with no bond and they are referred to Pretrial Release for the

24 Pretrial people at DOC to do an evaluation.

25         THE COURT:  Stop right there.  Is there a printed

1　form and they check a box?  Is that what that is?

2　　　　　　MS. JOHNSON:  Yes.

3　　　　　　THE COURT:  And then there is some lines where they

4　can hand write in some comments.  Is that correct?

5　　　　　　MS. JOHNSON:  Yes, Your Honor.

6　　　　　　THE COURT:  Do I have a copy of that anywhere for

7　either --

8　　　　　　MS. JOHNSON:  Yes.

9　　　　　　THE COURT:  Wait a minute.

10　　　　-- for either Butler or Williams or for any of those

11　plaintiffs?

12　　　　　　MS. JOHNSON:  Yes.  I believe we actually submitted

13　that as part of our initial filing to you when I provided you a

14　letter with a summary of all the charges and I attached copies

15　of their dockets and a copy of the actual order that the judge

16　issued, and there is a box and it will be checked saying no

17　bond, and then they will write PTR, you know, where that's

18　where we had that big conversation on whether or not it was a

19　referral --

20　　　　　　THE COURT:  Pretrial Release; is that what PTR --

21　　　　　　MS. JOHNSON:  Yeah.

22　　　　-- or an order.

23　　　　　　THE COURT:  And what does that signify?

24　　　　　　MS. JOHNSON:  That signifies that the criminal

25　defendant's case will be -- he will be evaluated, see if he is

1   eligible for release on pretrial release on a Level IV, which

2   is electronic monitoring.  So they have to go through their

3   criteria, which mirrors the rule, Maryland Rule 4-216.1,

4   looking at the severity of the charges, looking at the criminal

5   history background, looking at community ties, family ties,

6   employment status.  And then they also take into consideration

7   the victim in the case.  And if this is a violent crime

8   involving a victim, they want to know whether or not -- you

9   know, get some input from the victim and whether or not that

10  person is in fear of their life.  And then they make -- if they

11  find that the person has been -- meets that criteria, then they

12  are released on Level IV electronic monitoring.

13       If they are found that -- let's say they don't have a

14  working telephone, don't have a -- a home address, then they --

15  there is a form -- and we did provide that to the Court with

16  our -- our motion to dismiss as an exhibit -- there is a form

17  that they fill out, they check off what is missing or what is

18  -- why they find them ineligible, and it's sent back to the --

19  to the judge, and I think a copy now is -- is sent back to the

20  judge.

21            THE COURT:  Do I have those for Butler and Williams,

22  or are they -- or are you just giving me other ones?

23            MS. JOHNSON:  I believe you have that for --

24  definitely for Ms. (sic) Williams because the issue with Ms.

25  (sic) -- Mr. Williams, I'm sorry -- the issue with Mr. Williams

1    was the detainer in Montgomery County.

2            THE COURT:  All right.

3            MS. JOHNSON:  And it wasn't anything in the severity

4    of the charges, of course.  But the real impetus for him not

5    being released was the detainer.

6            THE COURT:  All right.  Stop on that.  I got a

7    serious question.  When there is a detainer, do the Prince

8    George's Police transfer him to Montgomery County directly, or

9    do you release him to the public and he gets there on his own?

10           MS. JOHNSON:  We notify the other jurisdiction,

11   Montgomery County, to let them know that we have him, and they

12   will let us know whether or not they will come get him or not.

13   And if not, then we can either -- I know in the case of

14   Mr. Frazier, he was released -- because he had a detainer as

15   well, he was released by DOC to go to Virginia to resolve that

16   criminal matter that he had in Virginia.

17           THE COURT:  He was released physically?  On his own,

18   he got there?

19           MS. JOHNSON:  Yes.  From my understanding, he got

20   there.  I can only assume he got there.

21           THE COURT:  And he came back?

22           MS. JOHNSON:  I am not sure -- he's not in our

23   facility, so he's been -- he was released and allowed to do

24   that, and I believe he is being held at -- on home detention

25   with electronic monitoring right now.

1          THE COURT:  And you gave me a lot of reasons that you

2     say Pretrial Release -- that's what I am calling them

3     collectively, you have a different name perhaps -- the reasons

4     they can use to decide whether to actually release somebody

5     subject to conditions.  Are they written down anywhere, these

6     are the criteria that will inform us and guide us in terms of

7     deciding whether and when to release a defendant, or is that

8     just something that they come to?

9          MS. JOHNSON:  No.  That is -- that is written.  It is

10    also communicated --

11         THE COURT:  Where is it written?

12         MS. JOHNSON:  It's written in several places, one

13    being in the general orders of the Department of Corrections

14    for Prince George's County.  It's also outlined in the inmate

15    handbook that every detainee receives upon being detained in

16    the custody of DOC, so the detainees have knowledge of that.

17    It also is communicated to the detainees when they -- when

18    Pretrial Services does their initial interview with the

19    detainee to see if they are eligible for pretrial release

20    because they have an interview to get addresses, telephone

21    numbers, contacts of family and community members who may be

22    able to help the detainee satisfy those pretrial conditions.

23         THE COURT:  And do I have in my possession -- has

24    someone provided me with the writings that set forth what the

25    criteria are for pretrial release?

1          MS. JOHNSON:  Yes.  It is part of the affidavit of

2    Jeffrey Logan that was submitted with our motion to dismiss.

3    It's ECF 64-4.  Thank you.

4          THE COURT:  64-2 (sic).  And what is the average

5    time, do you know -- well, let's stay with the two defendants

6    that interest me mostly right now, Butler and Williams.  Do you

7    know the average time -- well, neither has been released.  I

8    guess that's really the problem with them.

9          For those who have been released, what's the average time

10   that it takes to determine whether they are eligible or not?

11         MS. JOHNSON:  Your Honor, again, that's hard to

12   answer.  It varies.  I can say the average time is usually

13   about two weeks, but, again, it varies because, one, we have to

14   verify the information that we get from the detainee: the home

15   address, the telephone, the employment, the family ties,

16   community ties, and the victim.  All of those are outside

17   sources that we have no control over whether or not someone

18   returns a phone call or, you know, provides us with the

19   information in a timely manner.

20         But I can tell you that the DOC employees do work

21   tirelessly to meet those criteria and get that information to

22   -- back to the judge if they are ineligible so that they can

23   review and see if there is other conditions that can be put on

24   to allow that person to be released.

25         THE COURT:  And how soon after the judge indicates

1   that the person should be reviewed by Pretrial Release are they

2   -- is the individual, in fact, interviewed, or is it counsel

3   who is interviewed?

4          MS. JOHNSON:  They are evaluated by Pretrial Release

5   -- well, the initial -- once they first come into custody of

6   the jail, they are automatically interviewed for basic

7   information.  So the process gets started even before the bail

8   review hearing because Pretrial Release employees, they have

9   been doing it for a while, they have a sense of this is a

10  serious offense, like first degree assault, so they kind of

11  know that this person, if he is going to be referred to

12  Pretrial Release, it's probably going to be pretrial IV so they

13  can try to get a jump on it by trying to gather that

14  information.

15         But if they have not -- like in the case of Mr. Butler,

16  who was initially held without bond, once, I believe it was

17  Judge Serrette actually gave him that referral to Pretrial

18  Release, he was interviewed within a matter of days.  It wasn't

19  even a week before he was interviewed in the process of

20  gathering that information to give to the next judge, Judge

21  Alves, to make that decision.  So when he was seen by

22  Judge Alves, that information was before her.

23         THE COURT:  Is there a form that Pretrial Release has

24  that it fills out when it conducts this initial interview and

25  thereafter where boxes are checked where, effectively, notice

1   is given either to the defendant -- then the defendant, one of

2   these plaintiffs or their counsel about what's going on?

3          MS. JOHNSON:  Well, pretrial release program at the

4   jail is regularly contacted by the Office of Public Defender.

5   They work with them on a regular basis.  That's one of the

6   sources that they -- they look to when they cannot get

7   information or need, like, a home address, the first person

8   they contact really is the -- outside of the public defender to

9   see if they are -- have any knowledge of any family members who

10  may assist that criminal defendant.

11         There is a worksheet that they use to -- to enter all

12  their, you know, their handwritten information, but if the

13  person is found ineligible, there is a form with a checklist

14  and they write what the reason or the basis for their finding

15  of him being ineligible, which is sent back to the judge and I

16  believe is also sent back to the Office of the Public Defender.

17  And I think recently, we have changed that to where it is going

18  to -- a copy of that is also going to the detainee as well.

19         THE COURT:  Let me walk just through the last part of

20  that, and I want to hear from Mr. Wayne in a moment.

21         There is a form, then, finally, that determines either

22  eligibility or ineligibility.  Is that correct?

23         MS. JOHNSON:  That is correct.

24         THE COURT:  Do I have a copy of what that form looks

25  like?

1           MS. JOHNSON:  I believe we did submit that as a part

2    of our motion.  I believe it was an attachment to Mr. Logan's

3    affidavit at 64-4.  It was an attachment to his affidavit

4    showing you the notification that goes back.

5           THE COURT:  Okay.  Very well.  Let me stay with

6    defendants for one moment.  Do you have anything to add to

7    that, Mr. Cox?

8           MR. COX:  I'm sorry.  Do I have --

9           THE COURT:  Do you have anything to add to what

10   Ms. Johnson has just said?

11          MR. COX:  No, other than just to answer I believe

12   your question from earlier, Your Honor, with regard to

13   Mr. Williams and the subsequent August 12th hearing.  It

14   appears that -- you asked what happened at that hearing, and

15   the best we can tell -- paraphrasing from notes here, Your

16   Honor, it's not a transcript -- but that, again, Mr. Williams

17   has a pending detainer in Montgomery County, and that was our

18   understanding from --

19          THE COURT:  He still has a detainer?

20          MR. COX:  He still has a detainer in Montgomery

21   County.

22          THE COURT:  And nothing has happened with regard to

23   that?  He's being held pending a determination about whether

24   Montgomery comes to pick him up or you release him or what?

25          MR. COX:  Or if his public defender files something,

1    Your Honor.  We don't know.

2         THE COURT:  All right.  Mr. Wayne, do you want to

3    address particularly the whole process of how the case moves

4    from the bail hearing to Prerelease?  Just what's the process

5    at this point?

6         MR. WAYNE:  Yes, Your Honor.  I am happy to.  And I

7    also have a number of things opposing counsel stated that I

8    need to correct for the record.  And I will point out that at

9    this stage in a motion to dismiss, plaintiffs' allegations must

10   be accepted as true.

11        THE COURT:  I am not sure your allegations pass

12   muster yet because I am not sure what they are.

13        Let me tell you my problem very specifically.  You have

14   got all these plaintiffs, and I am not sure that everything you

15   say applies to every plaintiff, and what I can't do is pull one

16   plaintiff's claims into some other to make the claim -- give

17   standing, for example, to any one particular individual.

18        That's why I need to know -- I know somebody is detained

19   today.  I know they have made certain efforts to find out

20   whether they are eligible or not.  I don't know what reasons,

21   if any, have been given for their not being eligible.  I need

22   to hear that.  It's the process that I am concerned about now.

23        But I don't have to take as given vague allegations, and

24   there are several in your complaint, until I understand exactly

25   what you are saying these people have suffered.

1        So I am giving you the opportunity now to comment on the

2   process that from the time that the case goes from the judge

3   making the bail decision, however we characterize it, and

4   saying something like -- what is the word?  PTR, Pretrial

5   Release I guess that stands for -- what happens at that point?

6            MR. WAYNE:  Yes, Your Honor.  At the bail review --

7   as we have pled in our complaint, at the bail review hearing,

8   whether it's an initial bail review hearing or a subsequent

9   bail review hearing, the challenged practice is judges will

10  issue what they call a pretrial release or -- or option or

11  authorization or order.  They have various terms for it.  But

12  the end result is the same.  Essentially, they defer to the

13  County, to the Pretrial Services Division the decision of

14  whether that person is released or not.  And the Pretrial

15  Services Division then conducts their own process to decide

16  whether that person will be released or not.

17       If they decide to release, they do so without any further

18  judicial involvement, without any additional --

19            THE COURT:  Well, I heard Ms. Johnson say it goes

20  back to the judge.

21            MR. WAYNE:  It does not, Your Honor.  As we have

22  clearly pled, and I think it's undisputed, that if release

23  occurs, it occurs with no further judicial involvement.

24            THE COURT:  Is that correct, Ms. Johnson?

25            MS. JOHNSON:  Your Honor, I think there is a

1   mischaracterization there.  When they are ordered to Pretrial

2   Release for evaluation, that is a conditional grant of release.

3   If -- so the -- what the order means is that if he is found

4   eligible, there is no need for me to come back here and say,

5   You are eligible, you can go home.  I am already giving DOC

6   authorization to release him if you -- if they find that he has

7   met the eligibility requirements.  There is no need for it to

8   waste more time and let plaintiff languish in jail as they are

9   complaining --

10          THE COURT:  What goes back to the judge?  You said

11   that earlier.

12          MS. JOHNSON:  It doesn't.  What goes back --

13          THE COURT:  If the person is not released, that

14   doesn't go back to the judge?

15          MS. JOHNSON:  If he is not released, if he is found

16   ineligible, notification goes back saying that he is

17   ineligible.  If he is eligible, there is no need for it to go

18   back because the Court has already granted authority to release

19   him on Level IV if he is found eligible under the Pretrial

20   Release criteria.  So there is no need for him to go back

21   because the Court has already granted the authority for DOC to

22   release him.

23          THE COURT:  And I take it Level IV is a certain

24   number of conditions that have to be met, and that's published

25   somewhere?

1          MS. JOHNSON:  Yes.

2          THE COURT:  And that's published in those myriad

3    citations you gave me earlier, which I don't know that I have

4    or don't have, Mr. Logan's affidavit.  Is that right?

5          MS. JOHNSON:  Correct, Your Honor.

6          THE COURT:  All right.  Go ahead, Mr. Wayne.

7          MR. WAYNE:  Yes, Your Honor.

8       We have also discussed the levels in -- in the complaint.

9    Those are pled as allegations.  As I was saying, if someone is

10   referred to Pretrial, Pretrial does their own process, which

11   often involves no interview of the detainee and often involves

12   no contact --

13         THE COURT:  Do you know that to be the case in Butler

14   and Williams?

15         MR. WAYNE:  We have pled that for -- for

16   Mr. Laguan-Salinas and Mr. Frazier.  We didn't specifically

17   plead whether or not they were interviewed for Mr. Butler or

18   Mr. Williams.

19       Mr. Frazier was detained at the time this lawsuit was

20   filed, so certainly our argument is that pursuant to the

21   clearly established inherently transitory exception to

22   mootness, the people who were detained at the time this lawsuit

23   was filed, their standing proceeds, and the claims that are

24   applicable to people who are detained are equally applicable to

25   the people who were detained at the time we filed --

1          THE COURT:  So you are saying that at least a few of

2     the plaintiffs, not necessarily the two that I have inquired

3     about, were never interviewed by Prerelease.  Is that right?

4          MR. WAYNE:  Correct.  Well, they -- they were likely

5     interviewed before -- like right after arrest before they had

6     their initial bail review hearing, but they were never

7     interviewed after the time that the referral to -- to Pretrial

8     Services was authorized and they were authorized for release.

9          During that process where Pretrial does their evaluation

10    to determine whether they are actually going to release

11    somebody, there is often no interview with the detainee and no

12    contact with their counsel unless counsel affirmatively reaches

13    out to the Pretrial Services Division.

14          During that time, there is nothing akin to a judicial

15    process.  There is no hearings.  There is no arguments.

16    Nothing like that.

17          If somebody is released, they are released summarily at

18    the conclusion of the -- the Pretrial Service Division's

19    process without any notification or involvement with the judge.

20          At that point, we have pled, there has been an average of

21    38 days passed between the initial authorization for release

22    and the time that Pretrial Services Division actually releases

23    a person.  So that's, as we argue as a constitutional matter,

24    if they are eligible for release, that entire time that they

25    were delayed and this opaque process was occurring, that was a

1   violation of their -- of their right to pretrial liberty.

2          For people who aren't released, they sometimes send a

3   boilerplate form to the Court because that -- as we have pled,

4   that form is often never sent, and the information that that

5   boilerplate form includes is simply a series of checkboxes, and

6   often the box just checked "other" is checked, and it says,

7   Contact Pretrial for information.

8          THE COURT:  I'm sorry.  It says what?

9          MR. WAYNE:  Contact Pretrial for more information.

10         So often they have virtually no information in the

11  notification that gets sent to the Court, and this is only

12  happening weeks after it was initially authorized, and even

13  that notification letter is on no timeline and may occur weeks

14  after the decision was actually made.

15         During that entire time, this person who has been found

16  to be in some way eligible for pretrial release by the Court is

17  sitting detained with no notification of the process, no

18  information of whether they will or won't be released, or what

19  that's based on.

20         And I know Ms. Johnson said that the reasons -- the

21  criteria that the -- that the Pretrial Service Division apply

22  are standardized and are in orders, but as we have alleged in

23  paragraph 104 of the complaint, often people are denied release

24  for reasons that are not in the published criteria, and those

25  -- the criteria that are actually applied, regardless of what

1    reasons they list in any documents, are constantly shifting.

2          For example, there was a period of time where some

3    members of the putative class were detained because they didn't

4    have a landline telephone.  That reason changed.  Some people

5    are detained because of the nature of the charges without any

6    further explanation of what that means.  And despite the fact

7    that the judge who authorized Pretrial to release them knew

8    what the nature of the charges were at the time they issued the

9    authorization, there is a number of other reasons like that

10   that we have laid out in the complaint that reflect the

11   changing and arbitrary nature of the criteria that -- that

12   Pretrial Services Division applies.

13          THE COURT:  Suppose the judge were to say explicitly

14   -- leave aside checking boxes for a moment -- This person I am

15   denying bond unless I can be satisfied that certain conditions

16   can be met by this defendant; I am not -- I am not granting

17   bond at this point; I need to get more information from my

18   Pretrial people before I can make a final decision, and then

19   they were to report back and say to the judge, This is or is

20   not a person who should be released, would that be okay?

21          MR. WAYNE:  Your Honor, that's an excellent and

22   important question.  I think that's not what's happening here.

23          THE COURT:  No.

24          MR. WAYNE:  Putting that aside --

25          THE COURT:  I am trying to understand what your

1    concern is.  If, in fact, the -- the argument is made that this

2    is really a conditional release -- release but I need to get

3    particulars before I sign off, that would be okay?

4         MR. WAYNE:  Your Honor, if it is a Court making a

5    decision pursuant to information and it's done in a timely

6    fashion and it comports with the -- the substantive

7    requirements for pretrial release or detention, as in if the

8    Court receives information in a timely period after arrest that

9    then allow it to decide whether a person is eligible for

10   release or must be detained because of the evidence that the

11   Court has received that's convinced it that no conditions will

12   allow for safe release, then yes, that would be constitutional.

13        I think that's the kind of process that plaintiffs are

14   asking for where a decision is made -- a final decision about

15   pretrial release or detention is made by a Court in a timely

16   fashion, and that -- neither of those things are happening

17   here.  The final decision is being made by unaccountable County

18   officials that are part of the jail that determine whether

19   someone is released or detained, and that decision is not made

20   in a timely fashion without the procedures that you would have

21   in a court hearing.  And that's, in essence, the -- the basis

22   of this -- of this case and what plaintiffs are challenging.

23        A couple other points I wanted to correct.  On the

24   detainer issue, there is -- there is some subtlety here, but

25   Your Honor is absolutely correct that should they be granted

1    pretrial release from Prince George's County, then they will

2    likely not be released into the community but rather be

3    transferred on the detainer to the jurisdiction where they have

4    the detainer to address it.

5        What's happening with the detainer is not that that

6    detention process is what's holding them, but it's rather, in

7    Pretrial Services Division's opaque reasoning about whether

8    that person is eligible for pretrial release in Prince George's

9    County, they are using the detainer as one factor to deny

10   pretrial release.

11       That way, because of the detainer, that person cannot go

12   and resolve the detainer as in the detainer is the

13   justification that the Pretrial Services Division uses -- one

14   of the justifications that they use to deny release in Prince

15   George's County.  But because that person is denied release in

16   Prince George's County, they cannot then go resolve the

17   detainer.

18       This is exactly what was happening with plaintiff D.P.,

19   the juvenile who had a detainer from Virginia.  For a long

20   time, he was detained in Prince George's County because they

21   alleged he was ineligible for pretrial release because he had a

22   detainer.  As a result of that, he was not free to go and

23   resolve the detainer.  He couldn't be transferred to Prince

24   George's County.

25           THE COURT:  You are suggesting, though, that he would

1  be released to be able to go over on his own to resolve the

2  detainer issue?

3          MR. WAYNE:  I realize I am being sloppy in using the

4  word "release," and release here, I mean being the -- having

5  the hold from Prince George's County removed so that he may be

6  transferred to resolve the detainer from another jurisdiction.

7       By "release," I don't mean being released from jail.  I

8  mean more as a legal sense of release on the -- on the pretrial

9  detention hold in Prince George's County that would allow him

10 to resolve the detainer in the other jurisdiction.

11         THE COURT:  Well, wouldn't that depend on whether the

12 other jurisdiction wants to come and get him or wants to try

13 and resolve the detainer?

14         MR. WAYNE:  Correct.

15         THE COURT:  It's an interstate agreement on detainer,

16 so I am not sure one local authority can simply ignore its

17 obligation under the interstate agreement on detainers when

18 another jurisdiction is claiming a detainer.  I think you are

19 obliged to hold the individual.

20         MR. WAYNE:  Absolutely not, Your Honor.  We would

21 never suggest that the Court could not honor the pretrial

22 agreement -- honor the interstate agreement or honor the

23 transfer or honor a detainer from another jurisdiction.  That's

24 not what this argument is about and that's not what the Prince

25 George's County people are doing.

1          They are not honoring the detainer or holding individuals

2     on the detainer pending transfer to the other jurisdiction,

3     which has its own requirements and time litigations and rules

4     about how that process can occur.

5          What's happening is the -- the Prince George's County

6     Pretrial Services Division is denying -- denying release to the

7     person not -- this is subtle and I am struggling to find a way

8     to term it to capture the accuracy of the situation -- but, in

9     essence, if someone, say, can't make bail, then they are

10    detained in Prince George's County and will never go and

11    resolve the detainer until their bail is paid, until their bail

12    is resolved for their hold.

13         That's, in essence, an analogy for what's happening here.

14    Their bail isn't made because the requirement that Prince

15    George's County is making is approval by the County, and the

16    County is denying its approval because they say there is a

17    detainer or the nature of the charges or they don't have a

18    landline or what have you.

19         Any of these -- and the list of reasons they have for why

20    that person can't have bail pursuant to the referral process is

21    what prevents them from going and resolving a detainer or being

22    released or being transferred to another jurisdiction or what

23    have you.

24         And, Your Honor, with the detainers in particular, it

25    creates this strange circular process that we have seen and as

1  we plead where someone can be arrested in Prince George's

2  County.  As a result of that arrest or as a result of missing

3  court because they had that arrest, they have a detainer that

4  pops up in another county.

5      Often this happens because Pretrial Services Division is

6  delaying their processing.  So someone could be authorized for

7  release, and then two weeks later, while the Pretrial Services

8  Division takes their time in processing whether that person is

9  eligible or not, a detainer pops up because they missed court

10 in another jurisdiction.  And then Pretrial Services Division

11 says, Well, you have got a detainer and the nature of the

12 charges and we couldn't get in touch with the victim so we are

13 not letting you make bail in Prince George's County so you are

14 not going to be able to go resolve that detainer.

15      THE COURT:  Okay.  Well, we don't need to spend too

16 much time on detainers really now.

17      Do you have a word to say about that, Ms. Johnson?

18      MS. JOHNSON:  Yes, Your Honor.

19      When it comes to detainers, the County is the -- is stuck

20 in the middle, you know.  We can't do anything unless a Court

21 orders us to do it or a law permits us to do it.  We cannot

22 release anybody to go handle any detainers and we cannot just

23 release people because we want to.

24      We only act pursuant to a court order and we do not

25 approve or disapprove pretrial release.  We just tell the judge

1   whether they have met the criteria or they didn't meet the

2   criteria, and if we find out that they have a detainer, we send

3   it back to the judge because that is not our job.  We have no

4   authority to make any decision with regard to detainers.

5        What we -- that is a decision that -- argument that has

6   to be made by the State's Attorneys Office, the Office of the

7   Public Defender, and whatever jurisdiction that's involved in

8   this and the Court.  The County is just waiting to be told what

9   to do, and that's exactly what we -- and that's where we are in

10  this case.

11       THE COURT:  I don't really need to spend too much

12  more time on detainer.  I really have been inquiring along

13  these lines just to understand what goes on here, and then we

14  are going to get to the issues of jurisdiction, which are

15  important and so on, but a final word on this particular issue,

16  Mr. Wayne?

17       MR. WAYNE:  I am just trying to -- looking here and

18  see if I have anything more.

19       We -- with regard to the transcript question and the

20  recording of the subsequent hearing for Mr. Butler, to the

21  extent Your Honor is interested, we do have those transcripts

22  and I am happy to quote them for you, but I certainly would

23  argue that because of *Gerstein* and the collateral rule for

24  abstention, whether there is ongoing processes is -- is not

25  dispositive of the question of abstention.  I am happy to make

1  that argument for Your Honor, but I can also -- we'd be happy

2  to submit this transcript to you as a supplement.

3          THE COURT:  It would be helpful to at least see that

4  to understand what went on.

5          Are you talking about Frazier now?  Who are we talking

6  about?

7          MR. WAYNE:  This is for Mr. Butler.  I have a quote

8  here, Your Honor.  The public defender says, in the state

9  court, I just didn't know if the Court also wanted the larger

10  argument about whether or not Pretrial can make their own

11  determinations, and then I will add about release.

12          THE COURT:  Here is what will help at least in the

13  case of Butler and Williams.  I would like to see the pleadings

14  where bail was sought.  Now, I know in my experience, long

15  experience state in federal court, usually a request for bail

16  review is pretty much formulaic.  It doesn't say much, and

17  maybe that's all that was in there, but at argument, much more

18  is said than is written in the papers.

19          But I would be interested in seeing the documents that

20  seek the bail review.  Why is bail review sought?  Not so much

21  the first review, which pretty much I think happens

22  automatically, but the follow on, what was alleged to have gone

23  wrong in the first one that requires the second review?  If

24  there are petitions that say something, I'd like to see them,

25  and certainly in the case of Butler and Williams, what was

1    said.  And if there was any kind of follow-on decision as to

2    them, a form, boxes checked, whatever was done, I'd like to see

3    what was done in their cases on the follow on.

4         What was alleged?  I know there was no appeal taken,

5    that's what you have said, in either case.  A judge told you

6    that there is a federal question, and, therefore, the federal

7    court is involved, a questionable proposition, but in any

8    event, let me go back and -- let's go back to the

9    jurisdictional issues.

10        One of the issues that kind of emerges from what we have

11   talked about now is isn't there actually something that's gone

12   on and is still going on in state court that really would

13   implicate, whether it's *Rooker* or any of the other abstention

14   documents?  Let's go to you, Mr. Cox, I think on that, and

15   start arguing.

16        MR. COX:  Just to be clear, Your Honor, do you want

17   to hear on *Rooker* in abstention, in *Younger*, or just --

18        THE COURT:  It's the whole issue of whether this

19   Court has any jurisdiction to go forward in this case.  And we

20   are not going to talk for the moment about immunity, whether

21   it's sovereign immunity or individual immunity and so on and so

22   forth.

23        Talk to me about whether the Court has jurisdiction to

24   even look at these issues.  Assuming that it -- it did have

25   jurisdiction, would the Court be, in effect, interfering with

1  some sort of an ongoing process at the state level?

2          MR. COX:  Yes.  Absolutely.  Thank you for the

3  clarification, Your Honor.

4          We laid this out in our papers.  It's ECF 66-1.  And,

5  frankly, the position of the Judge defendants is *Rooker-Feldman*

6  clearly applies here, and it applies for a simple reason.

7  Plaintiffs are attacking ongoing state court orders

8  essentially.  These orders from the judges ordering, referring,

9  however plaintiffs want to characterize it, these plaintiffs --

10  these nine plaintiffs to the -- to the pretrial release program

11  under Maryland Rule 4-216(d)(2)(K), and those orders are the

12  equivalent of -- of state court judges, Your Honor, and we

13  believe, simply for that reason, *Rooker-Feldman* clearly applies

14  here.

15          THE COURT:  Is that it?

16          MR. COX:  That is it, Your Honor.

17          THE COURT:  Do you want to talk about *Rooker-Feldman*,

18  Mr. Wayne?

19          MR. WAYNE:  Happy to, Your Honor.

20          *Rooker-Feldman* is a doctrine that has been severely

21  limited in more recent decisions by the Supreme Court where it

22  has articulated that it is limited and strictly limited to the

23  situations that gave rise to the cases specifically in *Rooker*

24  and *Feldman*.  That is final state court judgments, typically

25  from a state court of final resort where a person files a civil

1   suit in federal district court in an attempt to appeal and

2   overturn a state court judgment, a final state court judgment.

3   That is how the Supreme Court has addressed it in all of its

4   recent decisions.

5        This clearly does not implicate *Rooker-Feldman* because it

6   does not address any final state court judges.  What plaintiffs

7   are addressing is a process.  Plaintiffs seek revision of a

8   process, the way a final decision is made, rather than trying

9   to overturn a final judgment itself.

10        THE COURT:  What do you want me to do in this case?

11   You want to get money damages, I know, as a part, and maybe

12   some equitable prospective relief, but what do you want me to

13   do as to Butler and Williams?  Release them?  Order a new bail

14   hearing?  What's the relief as to them?

15        MR. WAYNE:  Your Honor, we are seeking, with regard

16   to -- to them, the series of relief.  So against the Judge

17   defendants, the only relief we are seeking is a declaratory

18   judgment.  In essence, Your Honor would declare what the

19   Constitution requires in order to detain someone pretrial.  The

20   only release we are seeking against the Judicial defendants --

21        THE COURT:  Am I clear on that, that you are not

22   seeking monetary damages against the judges?

23        MR. WAYNE:  That's correct.  And we never sought

24   monetary damages against the judges, and they have raised

25   multiple times in their briefs acknowledging that we haven't

1  sought monetary damages.

2       THE COURT:  Mr. Cox, are you now clear that they are

3  only seeking declaratory relief against the defendants, or did

4  you know that until now?

5       MR. COX:  I believe they made it clear in their

6  response brief finally as opposed to their complaint, but yes,

7  that is clear, and I believe plaintiffs have now finally put it

8  on the record and conceded that.

9       THE COURT:  I wasn't clear on that necessarily

10 myself, but go ahead.

11      MR. WAYNE:  Yes, Your Honor.

12      The only relief we seek against the Judge defendants is

13 declarative relief.

14      With regard to the County defendants, we seek declaration

15 of what the law requires, monetary damages for the unjust

16 detention, and also an injunction.  How that injunction is --

17 is crafted, Your Honor, we could -- happy to discuss further

18 what exactly an injunction would look like, and I think that

19 might be a good subject --

20      THE COURT:  Let me ask you specifically, though, what

21 are you asking me to do as to Butler and Williams right now?

22 They presumably are seeking damages against the County.  Are

23 you asking me to order their release or what?  In that regard,

24 I am trying to see where you are going in federal court.

25      MR. WAYNE:  Your Honor, I believe a direct order of

1  release is not what they are asking for, but they are asking

2  that the County be enjoined from detaining them unless the

3  constitutional requirements for detention are met; in essence,

4  a conditional order of release where this Court would

5  articulate the constitutional requirements for when a person

6  may be detained pretrial and requiring that they be released

7  unless those constitutional requirements are met.

8          THE COURT:  So are you asking me, then, to go back

9  and order the County -- order the County, maybe the judges,

10  too, to review the detention of those two individuals, everyone

11  else having been released, order review and say that -- not

12  release them as I understand it, but order the decision makers

13  at the state level to reconsider whether these people should be

14  released?  Is that what you are asking me to do?  Are you

15  asking me to review a state court decision there?

16          MR. WAYNE:  Your Honor, we are not asking you to

17  review a state court final judgment of the type that

18  articulates *Rooker-Feldman*.  This is, in essence -- the word

19  "decision" carries broad --

20          THE COURT:  I know you are doing it for technical

21  reasons to try and fit within your argument, but why do you

22  keep resisting the fact that the judge ordered something?  The

23  judge ordered this person be released subject to conditions.

24  Why isn't that an order?

25          MR. WAYNE:  That is a great question, Your Honor, and

1  this is actually something that -- that the defendants have

2  strictly contested, that the things that -- that we are calling

3  pretrial referrals, they don't consider orders, and when they

4  hold someone as a result of those referrals and they refuse to

5  release someone, they don't consider it violation of an order.

6      We --

7      THE COURT:  It's a conditional order is what they are

8  arguing.  I think that's their argument, a conditional order.

9  Release if you can find these criteria are met.  Now, whether

10 they are taking too much time to do it is a separate issue, but

11 that's the way I would understand what they are doing here.  I

12 am not saying that necessarily is relevant to where I am going

13 to come out in this case, but I am not sure that I am

14 understanding.  Release them, that's my order, but make sure

15 that certain conditions are met.

16     MR. WAYNE:  Your Honor, they have -- defendants have

17 contested that that's the -- that that is the direction of the

18 Court, and we certainly don't allege that that's what these --

19 these orders are.  In fact, as we explained in our complaint --

20     THE COURT:  You don't want to call them orders.

21 Right?  Are you calling them orders or not?  Let me be careful

22 about that.

23     MR. WAYNE:  They have used two types of language when

24 they are issuing these referrals.  Sometimes they call them

25 orders.  More often, they call them options or authorization.

1          THE COURT:  I don't know what that means.  Those are

2    --

3          MR. WAYNE:  And we explain in our -- we also -- it is

4    not clear on its face what that means.  But as we allege in our

5    complaint, what that means is that the County, even if it's

6    phrased as an order, it's still interpreted not as an order,

7    and that's a crucial part of plaintiffs' claims in that the --

8    the County defendants, as they, themselves, have put in their

9    briefing, understand that it is not an order.

10         What it is is essentially an authorization, a transfer of

11   -- of the decision-making power to the County to decide whether

12   someone shall be released or not.  And that is the crux of what

13   plaintiffs challenge.

14         THE COURT:  All right.  Mr. Cox, is there an order or

15   not?  I don't know where you are on that.  Are these decisions

16   by the judges to refer to Prerelease, are they orders or are

17   they something else?

18         MR. COX:  Your Honor, I think we don't want to fall

19   in the plaintiffs' trap of speaking generally about all of

20   these, whether they are orders or not.  These are nine

21   individual plaintiff's cases, so we'd have to go -- if they

22   have the transcripts, it would be great if they would provide

23   them to the Court and provide exactly what was said on the

24   record or the filings.  No court records were provided either

25   by plaintiffs to look at each individual one to decide if they

1    are orders or not, what happened in each individual case.  I

2    just want to make that point initially, Your Honor.

3         But to answer --

4         THE COURT:  So what do I need?  Do I need the

5    transcript of each of the hearings for each of the plaintiffs?

6         MR. COX:  In terms of whether plaintiffs are arguing

7    -- what they are arguing, were these orders or not, yes, to

8    know what happened in each case.  But, Your Honor, what's

9    simple here is there is a process in place, it's laid out by

10   the County defendant's motion, it's laid out by the Judge

11   defendants' motion, of Maryland Rule 4-216, and it lays out

12   what happens.  These judges, they authorize the pretrial

13   release in this case of some of these plaintiffs, I believe --

14   maybe -- no -- yeah, they authorize the pretrial release

15   subject to the supervision requirements of the County.  That is

16   what the rule requires.

17        THE COURT:  I guess you didn't really -- is your

18   answer sometimes they are orders and sometimes they are not

19   orders depending on what the judge said?

20        MR. COX:  Well, I think it depends -- I don't want to

21   speak globally because this case is currently about nine

22   plaintiffs, and I think we need to know what happened in these

23   nine plaintiffs' cases for me to answer that.  But Your Honor

24   --

25        THE COURT:  How do I find out what went on?  Do I

1    have to see the transcripts of each bail hearing?

2          MR. COX:  That would be required, I think, for

3    plaintiffs to provide.

4          But to answer your question, the -- generally speaking,

5    it seems like these people -- these plaintiffs were ordered to

6    pretrial release, meaning that they are authorized, they are

7    given to the supervision of the County pretrial detention

8    center to review of whether they meet their requirements to

9    then supervise their release, which often includes --

10         THE COURT:  Let me ask you:  Are they order released

11   -- sorry.  They are ordered no bond until Pretrial Release says

12   otherwise, or are they never ordered anything, they just -- the

13   judge automatically says, Well, I am not going to make -- in

14   effect, I am not going to make a decision about bail now; first

15   I want to see what Pretrial Release says, or what?

16         MR. COX:  This goes back to my earlier point, Your

17   Honor, of it requires review of each case.  But typically it

18   would be no bond Pretrial Release Level III, no bond Pretrial

19   Release Level IV, meet -- for example, Level IV would be

20   electronic monitoring.  So somebody -- that's saying, Well, if

21   the County defendants will review them and evaluate the

22   plaintiff's situation or the criminal defendant's situation and

23   agree to supervise them under the rules, the Maryland rules,

24   under their guidelines that they have laid out, then they will

25   monitor them electronically.

1          THE COURT:  Well, unless there -- there is a

2    *Rooker-Feldman* problem, what I am asked essentially, and that's

3    what *Rooker-Feldman* says, to reverse the decision of the state

4    court, how am I doing that?

5          MR. COX:  That's exactly what plaintiffs are asking

6    here.

7          THE COURT:  Well, I am saying -- I am asking you in

8    what sense -- what am I reversing here?  What would I be

9    reversing?

10          MR. COX:  You'd be reversing what happened in each of

11    these nine individual cases, the bail hearings, the most recent

12    ones, theoretically, at this point, Your Honor, referring it to

13    the County or ordering it to the County, whatever language is

14    used, but essentially court ordered.  Whether it's written,

15    whether it's ordered at a bail hearing, because there are

16    usually many of these per day, they are asking to overturn that

17    -- that judgment basically.  It's not a final judgment but it's

18    still a judgment of the Court.

19          And I refer the Court --

20          THE COURT:  So it's not an order, but a decision, if

21    you will, whatever you characterize -- however you characterize

22    it, you are saying this Court would have to overrule a decision

23    of the state court relative to this person's status?

24          MR. COX:  Absolutely, Your Honor.

25          THE COURT:  All right.

1          MR. COX:  And if an individual judge chose in one of

2    these cases to write an order and write what happened, it will

3    also be in the order as well, but yes, a decision, absolutely,

4    a state court decision.

5          And I just want to point out to the Court that this case

6    falls for *Rooker-Feldman* specifically into the *Reed's* case,

7    which is the District of South Carolina applying

8    *Rooker-Feldman*.  It's on page 31 of our brief at 66-1.

9          THE COURT:  Anything on *Rooker-Feldman*, Mr. Wayne?

10          MR. WAYNE:  Yes.  I will quote the County defendants'

11    motion to dismiss.  As a threshold matter, the Court must

12    recognize that referral to Pretrial Services is not an order

13    for release.  It defies logic and common sense that a detainee

14    can be illegally detained when the Court only referred them to

15    Pretrial Services.

16          The referral, Your Honor, is, in essence, a transfer of

17    authority.  Whether that could be characterized as a decision

18    or not, I would submit is not what is required for the

19    *Rooker-Feldman* inquiry.

20          What *Rooker-Feldman* asks is a federal court to sit as a

21    court of appeals to overturn a final judgment of a state court.

22    Typically, that has occurred when we are talking about a state

23    supreme court, a state final court of last resort because the

24    genesis of *Rooker-Feldman* is it came out of a rule that you

25    could only appeal a state court of last resort to the Supreme

1    Court and not to a district court.

2          That's where *Rooker-Feldman* has typically been applied,

3    and the Supreme Court specifically says a final judgment.  This

4    type of interim decision that involves deferring authority to

5    the County defendants to make a final decision is really

6    procedural.  It's not the kind of final judgment that

7    *Rooker-Feldman* is concerned with.

8          I would further articulate, Your Honor, that this Court

9    could craft a remedy that actually has no effect on whether a

10   referral is passed and would only affect the process of what

11   happens after a referral is concluded.

12         If a referral were treated as an order for release that

13   needed to be complied with within a certain amount of time,

14   that is one way to potentially address plaintiffs' claims that

15   would have nothing to do with affecting the judgment of the

16   state court.

17              THE COURT:  All right.  Renee, how are you doing?

18              THE COURT REPORTER:  I'm good, Judge.

19              THE COURT:  We will go until one and then break for

20   lunch.

21              THE COURT REPORTER:  That's great.

22              THE COURT:  Mr. Cox, do you have anything more to say

23   on this because we can move to the other abstention issues?

24              MR. COX:  Very briefly, Your Honor.

25         I believe plaintiffs' counsel, in terms of the comment

1    that *Rooker-Feldman* typically only applies to the highest court

2    of a state, for example, I don't think the cases, A, require

3    that at all, and I have seen it plenty of times in cases where

4    it's not the highest court of the state, I don't think that's

5    accurate.

6           And I will say, Your Honor, what's clearly happening

7    here, and plaintiffs' counsel are being very careful about what

8    they are asking this Court to do, but in essence, they are

9    asking you, the federal court, to reach down into the state

10   court into ongoing criminal proceedings and micromanage these

11   ongoing criminal proceedings, and that's exactly what

12   *Rooker-Feldman* is designed to avoid.

13          THE COURT:  Let's go on to whether abstention

14   doctrine, whatever you think is appropriately next.

15          MR. COX:  Your Honor, this case is the quintessential

16   example of where *Younger* abstention would apply.  We have went

17   on for an hour and a half now talking about the facts of the

18   case, and I rely on everything that the defendants collectively

19   have said in that regard.

20          But I point to specifically again --

21          THE COURT:  You are relying on everything that

22   plaintiffs have said?  You said relying on everything that the

23   defendants have said.  You are relying on what plaintiffs have

24   said?

25          MR. COX:  Yes.  Sorry.

1           THE COURT:  Defendants in another life.  All right.

2   Go ahead.

3           MR. COX:  My apologies.  I misspoke, Your Honor.

4           THE COURT:  Go ahead.

5           MR. COX:  I refer the Court again to the *Brown* case,

6   and that's out of the District of South Carolina, 2022.  So

7   this just came out just in August.  And this said that the

8   plaintiffs' requested relief against the state judges seeking

9   to have the -- the federal judges here -- in this case, this

10  Court -- uphold the Constitution in the oversight of and during

11  the adjudication of future state criminal cases was barred by

12  the *Younger* abstention doctrine because it would, quote,

13  necessarily run against the Court and contemplates controlling

14  or preventing the occurrence of specific events that might take

15  place in the course of future state criminal trials.  That's

16  exactly what we have here, Your Honor.

17          They are asking -- again, they are just asking this Court

18  to inject -- interject itself into ongoing state criminal

19  proceedings, and for the reasons we have discussed about

20  *Rooker-Feldman* and whether there is jurisdiction, even if there

21  is jurisdiction here, Your Honor, this Court should abstain.

22          THE COURT:  Mr. Wayne.

23          MR. WAYNE:  Your Honor, this case is controlled by

24  *Gerstein*.  In *Gerstein*, what the Supreme Court said, and I

25  quote, Plaintiffs' claim for relief was not barred by the

1  equitable restrictions on federal intervention and state

2  prosecutions pursuant to *Younger v. Harris*.  The injunction was

3  not directed at the state prosecutions as such but only the

4  legality of pretrial detention without a judicial hearing, an

5  issue which could not be raised in defense of their criminal

6  prosecution.

7       That's exactly what we have here, Your Honor.  In *Younger*

8  and cases that have cited it, they have recognized that issues

9  about pretrial detention and -- and bail matters are collateral

10 to the merits of the criminal proceeding, and, therefore,

11 *Younger* is simply -- does not apply in those circumstances.

12      In a number of bail cases in district courts around the

13 country and in courts of appeal, they have acknowledged that

14 *Gerstein's* limitation on Younger abstention applies in the bail

15 context.  That includes in the Ninth Circuit, the Eleventh

16 Circuit, in the Fifth Circuit.  It hasn't been heard in the

17 Fourth Circuit, and maybe this case will be that, Your Honor,

18 but many -- like, every Court that has addressed this

19 restriction has found that bail matters and matters of pretrial

20 detention are collateral to the criminal prosecutions, and,

21 therefore, pursuant to the Supreme Court's holding in *Gerstein*,

22 *Younger* does not apply.

23           THE COURT:  All right.  You want to reply to that,

24 Mr. Cox?  What do you say about that?

25           MR. COX:  Your Honor, I actually refer the Court back

1  to an earlier question Your Honor asked of plaintiffs' counsel

2  with regard to what they want you to do and what they want a

3  declaration here to include.  And I have a transcript, I mean,

4  it's included in our papers, it's a transcript from an earlier

5  conference with the Court, and it's on page 23, 66-1, ECF 66-1,

6  where plaintiffs' counsel, they were asking the Court to,

7  quote, have an expedited bond hearing and to overrule what the

8  state court has already evaluated.  Plaintiffs went on to say

9  --

10         THE COURT:  Wait a minute.  Are you quoting something

11  I said or something counsel said?

12         MR. COX:  I believe that's from something counsel

13  said.

14         MR. WAYNE:  No, Your Honor.  That's something that

15  you said.

16         MR. COX:  Your Honor, I misspoke.  I'd have to check

17  the transcript.  If that's something you said the plaintiff

18  said --

19         THE COURT:  I am not sure -- let me see what I said.

20         MR. COX:  It's attached --

21         THE COURT:  Exhibit 11?

22         MR. COX:  Exhibit 11.  Yes, Your Honor.

23         THE COURT:  What page were you referring to, Mr. Cox?

24         MR. COX:  25 and 26, Your Honor.

25         THE COURT:  What were you, I guess, trying to say?

1  Maybe I missed the point you were trying to make.  There was

2  some request for the Court to immediately order the release of

3  someone.  I thought there was.

4          MS. JOHNSON:  Yes, Your Honor.

5          THE COURT:  I don't think I am incorrect on that,

6  Mr. Wayne.  Were you not requesting that at one point?

7          MR. WAYNE:  Your Honor, we are not asking --

8          THE COURT:  Were you not asking that at one point?

9  Not what you are doing today.

10          MR. WAYNE:  Your Honor, we could go back and look at

11  plaintiffs' proposed order for their preliminary injunction.  I

12  believe what we seek in that proposed order is essentially

13  either release or new hearings consistent with the -- with the

14  Constitution.  I apologize I don't have that proposed order in

15  front of me, but we did submit a proposed order for a

16  preliminary injunction.

17          MS. JOHNSON:  Your Honor, just for clarification to

18  help with you with that, at that -- during that telephone

19  hearing, I believe that was the telephone hearing when

20  Ms. Israni was speaking on behalf of the plaintiffs and we were

21  specifically discussing the issue of D.P., the minor at that

22  time, and she wanted him to be immediately released because she

23  was scared that he was not going to be able to attend school,

24  and we were talking about that issue and his detainer.

25          THE COURT:  Well, in any event, I did not and would

1    not have, I think, ordered anybody's immediate release then,

2    nor am I inclined to do it right now.  If that's still in play,

3    I don't know.

4              MR. WAYNE:  Your Honor, I would argue that that is

5    subject of the preliminary injunction, which is to be heard a

6    couple weeks from now.  Today is on the motion --

7              THE COURT:  As to whether I should order somebody's

8    release?

9              MR. WAYNE:  As to whether you can -- you can --

10   whatever constitutes the injunction order.  I think this

11   hearing on the motions to dismiss can certainly -- we can

12   discuss the potential relief and how that plays into -- well,

13   we can discuss whatever Your Honor wishes to discuss, of

14   course.

15             THE COURT:  Well, Mr. Cox, had you finished your

16   response?

17             MR. COX:  That's all I have on abstention, Your

18   Honor.

19             THE COURT:  Anything more to respond on abstention or

20   have you -- on *Younger*?

21             MR. WAYNE:  Your Honor, I think the case law is

22   clear, regardless of whatever got discussed by counsel at a

23   status conference, that the case law is clear that in matters

24   of pretrial detention and bail that would not interfere with

25   the merits of a criminal prosecution, *Younger* abstention simply

1  doesn't apply.

2          THE COURT:  All right.  Any other issues on

3  abstention that you want to talk about, Mr. Cox?  Or are you

4  done?

5          MR. COX:  No, Your Honor.  May I ask for a

6  clarification on something, though, from earlier?

7          THE COURT:  Go ahead.

8          MR. COX:  Plaintiffs' counsel made the point that

9  they are -- they have conceded now before this Court, and as

10 you said, it wasn't quite clear whether they were seeking money

11 damages against the Judge defendants.  They have made it clear

12 now they are not seeking money damages.  I would just like to

13 ensure that plaintiffs' counsel also concede they are not

14 seeking attorneys' fees against the Judge defendants.

15         THE COURT:  I guess that's so.  I don't know.

16         MR. WAYNE:  Yeah.  We concede that, Your Honor.  I

17 believe we have -- we concede the straightforward requirements

18 of Section 1983.

19         THE COURT:  All right.  That concession is good for

20 the -- is -- it satisfies the Court.  There is nothing more

21 that needs to be said or done about that.

22         MR. COX:  Thank you, Your Honor.

23         THE COURT:  Now, moving from the abstention doctrine

24 -- we got about another 15 minutes before we break -- do you

25 want to talk about immunity?

1          MR. COX:  Yes.  Thank you, Your Honor.  Sorry.

2          Speaking of concessions, though, Your Honor, and I think

3     it -- it will flow into the immunity argument, if you look at

4     the chart I originally provided the Court this morning, 70-2 --

5          THE COURT:  Yeah.

6          MR. COX:  -- in regard to plaintiffs' response to the

7     defendants' motions to dismiss, when read together, footnote

8     eight, that's page 11 of their response, and footnote 10,

9     that's page 17, confirm that plaintiffs agree at a minimum with

10    this chart in terms of which plaintiffs assert claims against

11    which Judge defendants.  And this chart marries and matches up

12    plaintiffs with their respective Judge defendants who they make

13    claims against.

14         Now I am going to read footnote eight, Your Honor.  It

15    says, "Five plaintiffs" -- and if you look at the chart, it's

16    the first five, Mr. Frazier, Hernandez, Butler, and Williams --

17    "were detained at the time the complaint was filed and the

18    latter two remaining detained."  And this is them citing

19    Plaintiffs' 17 through 22.  "These plaintiffs seek both damages

20    and prospective equitable relief.  The remaining four

21    plaintiffs allege they were in the past detained in violation

22    of their Constitution rights," citing complaint 13 through 16.

23    These plaintiffs, quote, seek only damages.

24         So, therefore, plaintiffs do not seek -- they do not

25    plead or seek any damages against the Judge defendants because

1   they are unavailable, as they have conceded.

2        The only form of relief they are seeking against the

3   Judge defendants is prospective declaratory relief.  They have

4   now made that point as a result of their response.

5        Now, if you take the chart, the Court can just cross out,

6   as to the Judge defendants, Your Honor, the last four

7   plaintiffs as, again, as to the Judge defendants because

8   plaintiffs have conceded that these claims against their

9   respective Judge defendants must be dismissed, and even further

10  confirm the four plaintiffs never made any claims against the

11  Judge defendants in the first instance.

12       So the -- the corresponding Judge defendants here must be

13  dismissed, and those are Judges Heffron, Jr., Cobb Smith,

14  Carrington, Varner Lewis, Cobb Smith, and Bielec.  That's six

15  of the 11 named Judge defendants.  Plaintiffs concede that they

16  -- they admit they should be dismissed.

17       In fact, Your Honor --

18            THE COURT:  Maybe they do and you don't need to argue

19  further.  Do you, Mr. Wayne?

20            MR. WAYNE:  Your Honor, I believe Mr. Cox counted one

21  judge twice, so --

22            THE COURT:  That's fine.

23            MR. WAYNE:  Regardless, Your Honor, based -- we are

24  alleging an ongoing process where these Judge defendants are

25  participating in what plaintiffs claim is unconstitutional.

1   That being said, given that we are only seeking a declaratory

2   judgment from this Court as to the Judge defendants, and I

3   believe that all of the state judges will and should comply

4   with any declaratory statement about what the law requires,

5   whether they are named in this lawsuit or not, I defer to Your

6   Honor's authority about.

7          THE COURT:  Well, you are asking me to enjoin all

8   Prince George's County judges rather than ones that are named

9   as defendants?

10         MR. WAYNE:  I am not --

11         THE COURT:  Can I do that?

12         MR. WAYNE:  I am not asking you to enjoin any judges

13  first.  But in terms of whether you are going to issue a

14  declaratory judgment directed at certain judges, I am certainly

15  asking you to issue a declaratory judgment about the named

16  judges in the lawsuit and not to go outside of the parties, but

17  I certainly would hope that a state court judge, when

18  confronted with a declaration of what the law requires from a

19  federal judge, would comply with that declaration.

20         THE COURT:  Mr. Cox.

21         MR. COX:  What I am not hearing, Your Honor, and

22  maybe I missed it, it's not -- maybe it's not clear, is whether

23  they are conceding that these one, two, three -- these five

24  judges -- sorry, my counting was wrong -- these five judges,

25  they concede that they have no claims against them.  The reason

1   for this, Your Honor --

2        THE COURT:  They are saying they should be embraced

3   by whatever declaratory relief the Court granted.

4        MR. COX:  I understand that.  But there is a

5   difference between that and whether they are continuing to be

6   named defendants in this case when there are no allegations

7   against them.  And when you look at this chart, Your Honor, you

8   have three cases that were closed, one of them well over a year

9   prior to the filing of suit.  That's Davis, Sharp, and

10  Worthington.  Their cases were closed when this case was filed,

11  and that's why plaintiffs concede they don't have claims

12  against these Judge defendants because what possible order

13  could this Court craft in terms of declaratory relief as to

14  criminal defendants, plaintiffs in this case, whose cases are

15  closed, the cases are over?

16       THE COURT:  All right.

17       MR. WAYNE:  What I think Mr. Cox is omitting is this

18  is a putative class action, Your Honor, and there are ongoing

19  claims related to members of the putative class against those

20  and -- and each judge.  That being said, we could revisit this

21  issue after class certification is decided if Your Honor

22  wishes.

23       THE COURT:  It is a doubtful proposition that they

24  remain in the case.  Just because they are here, let's, what

25  the heck, let's fold them in anyway.  You know, you got to be

1  precise in your court proceeding.  These are serious matters.

2  If you have ever been a defendant yourself in a case, the mere

3  fact that you are a defendant in a case is troubling, and the

4  idea that someone stays in without specific allegations

5  according to the rules of pleading is troublesome.

6        Now, I don't know that I need to decide it right now, but

7  you could certainly see where I am going with it.  Insofar as

8  the determination might be made about the judges as to whom

9  there are, what shall I call them, ongoing claims, if they are

10 ruled to do -- to have to do something in future, presumably it

11 might have some effect on the other judges, but the idea of

12 just keeping them in the case because it's convenient, not the

13 way that -- not the way the law usually goes.

14        MR. WAYNE:  And I apologize if that was -- if I came

15 across as casual, Your Honor.  I understand that this is --

16 that strict rules must be applied to which parties are named.

17        THE COURT:  I am inclined to say that you are right,

18 Mr. Cox, and I will have something to say in my opinion about

19 that.  I don't know whether we need to start making piecemeal

20 rulings right now.

21        Go ahead.  Your next point.

22        MR. COX:  Thank you, Your Honor.

23        My next point just piggybacks on the -- on what just

24 transpired.  In brief, I will touch on it.  We only touch on it

25 in a footnote, Your Honor, in our pleading because plaintiff

1    touches on, I think in one sentence, the case value in terms of

2    making individual versus official capacity claims against these

3    judges.  And in reading the four corners of the complaint,

4    there do not appear to be any allegations against the judges in

5    an individual capacity, rather in only their official capacity.

6    And that's all I can say on it because the complaint is --

7            THE COURT:  Well, let me jump ahead of you.  Assuming

8    that they are sued in their official capacity, is not there an

9    exception under -- under the immunity requirement for

10   prospective injunctive relief, that is, injunctive relief could

11   lie notwithstanding -- I am not sure of this right now, but

12   they are not seeking any other kind of relief other than

13   declaratory relief?

14           MR. COX:  Correct.  I believe now as a result of

15   plaintiffs' response to our motion to dismiss, they have made

16   it clear they are only seeking prospective declaratory relief,

17   not injunctive relief, Your Honor.  They have been clear about

18   that.  They are only seeking prospective --

19           THE COURT:  I am not sure I understand the

20   difference.  I mean, one is a declaration and the other is so

21   do it, I guess, here is how to do it.  What's the distinction

22   that's being made here between prospective -- between

23   declaratory relief and prospective injunctive relief?

24           MR. COX:  Respectfully to the Court, Your Honor, I am

25   not sure that's for the Judge defendants to answer because

1  plaintiffs pled it that way and responded that way.

2        THE COURT:  What is the difference?  Are you not

3  asking the Court to declare that certain practices should be

4  met to be constitutional, and, therefore, meet them by way of

5  injunction?  Do this, do that.  One is merely a specific

6  implementation of the more general declaration, is it not?

7        MR. WAYNE:  Your Honor, I am not clear which immunity

8  argument that this -- Mr. Cox is raising.

9        THE COURT:  Well, I am not sure -- I thought we did

10 sort of seal off the issue of whether certain of the defendants

11 have even been named for relief purposes, and they may be out

12 of the case.

13     Maybe this is a good time to break for lunch and we will

14 pick up at 2:00.

15     Let me pose for you what I need to hear from you, though,

16 next.  You can pick up on the state as defendant and whether

17 there is immunity in federal court from proceeding against the

18 state, and that would certainly apply arguably to the -- well,

19 to both the Judge defendants and County defendants.  We will

20 see.

21        MR. COX:  I'm sorry, Your Honor.  I was understanding

22 that you were prepared to take a break.

23        THE COURT:  No.  I am.  I am just telling you where I

24 want to go to next.  When we come back, that's what I want to

25 hear from you about.

1        MR. COX:  Yes.  If I am understanding you correctly,

2   Your Honor, I just want to ensure that when we return, you will

3   hear from me on Eleventh Amendment sovereign immunity and

4   absolute judicial immunity?

5        THE COURT:  Exactly.

6        MR. COX:  Understood, Your Honor.

7        THE COURT:  See you at 2:00.

8        (Recess taken from 12:53 p.m. until 2:05 p.m.)

9        THE COURT:  Please be seated, folks.

10       All right.  Mr. Cox, you were arguing when we recessed.

11       MR. COX:  Yes, Your Honor.  Thank you.

12       I believe there are two sets of arguments left from the

13  Judge defendants, and those are immunity arguments, Eleventh

14  Amendment sovereign immunity and absolute judicial immunity.

15       And I want to start with the Eleventh Amendment immunity

16  argument, Your Honor.  And it's not as if -- plaintiffs don't

17  concede that the Eleventh Amendment sovereign immunity would

18  apply here; rather, they say there is an exception to it, and

19  they cite *Ex Parte Young*.  And they say in their response that

20  Judge defendants never brought that up in their initial

21  pleadings, and there is a reason for that, because the

22  complaint is not the model of clarity.  It was very unclear

23  what -- if anything, from this hearing, it's very unclear what

24  plaintiffs were seeking from the Judge defendants.

25       As a result of the response, the Judge defendants

1   addressed the *Ex Parte Young* argument.  And *Ex Parte Young*

2   doesn't apply here for two reasons:  A, all the relief that

3   plaintiffs seek against the Judge defendants is retrospective

4   in nature; and B, there is no special relationship here between

5   any of the named plaintiffs and any of the named Judge

6   defendants.

7       And I hate to belabor the point, Your Honor, it would be

8   nice if plaintiffs would concede it, as they do in their papers

9   at page 11, footnote 8, where they say, These plaintiffs seek

10  only --

11      THE COURT:  This is in their opposition?  When you

12  say "page 11," you mean of their opposition?

13      MR. COX:  Yes, Your Honor.  I misspoke.  My

14  apologies.

15      But it's clear plaintiffs admit that they do not seek any

16  damages against the Judge defendants on that chart, the last

17  four plaintiffs.  That only leaves five plaintiffs.

18      So in terms of looking at the retrospective relief sought

19  by plaintiffs, let's look at the individual five plaintiffs

20  that remain.  And we have already spoken about Mr. Butler and

21  Mr. Williams, and we will come back to them.

22      But let's talk about some of the other -- or the other

23  three plaintiffs, Your Honor.  This will make the respective

24  nature of the relief plaintiffs seek as to those defendants

25  abundantly clear.

1        Mr. Frazier, his claims are against two Judge defendants.

2    That's Judges Bereano and Judge Clark-Edwards.  That case,

3    though, has been transferred, due to the nature of the case, to

4    the circuit court.  The district court no longer has

5    jurisdiction, and these two Judge defendants are district court

6    judges.  There is no jurisdiction for those two judges to do

7    anything with regard to any possible declaratory relief that

8    this Court could order.  It's unfathomable what order this

9    Court could craft for declaratory relief that would apply as to

10   Judges Bereano and Clark-Edwards and Mr. Frazier because they

11   no longer have jurisdiction over -- over this case,

12   Mr. Frazier's case.

13       Mr. Hernandez, his case was a money bond case, and a

14   subsequent judge after Judge Allen, who is a named Judge

15   defendant in this case, heard that case.  So it went on to

16   another judge who had a bond hearing.  So there is no relief

17   that could be awarded to Mr. Hernandez as to Judge Allen

18   because it's -- the issue is moot now.  It became moot as soon

19   as another judge heard the case.

20       D.P., the minor, his case also has been sent --

21   transferred to the circuit court.  There is no jurisdiction.

22   That case is against two district court judges, Your Honor,

23   Judges Clark-Edwards again and Judge Denton.

24       And we have already discussed Mr. Butler and

25   Mr. Williams, but I will reiterate as to Mr. Butler, the case

1   has been specially assigned another judge, and it's -- he's

2   been charged with second degree murder and he's being held

3   because of mental health reasons.

4        Mr. Williams, there is the detainer in Montgomery County,

5   and another subsequent judge, that is Judge Lewis, heard that

6   case.

7        So those are the five plaintiffs left with claims against

8   any judges, and the only possible relief that could be awarded

9   to them is retrospective in nature.

10        THE COURT:  I understand this is a different argument

11   from Eleventh Amendment immunity and 1983 liability.  You are

12   just saying that they don't have any -- there is no way they

13   could be sued on what happened in their cases, but I don't hear

14   immunity arguments here.

15        MR. COX:  Well, that is why *Ex Parte Young* does not

16   apply, Your Honor, because *Ex Parte Young* only allows for

17   prospective injunctive or declaratory relief.

18        THE COURT:  All right.

19        MR. COX:  And everything -- that's why *Ex Parte Young*

20   does not apply in this case, Your Honor, because plaintiffs,

21   the five named plaintiffs left against the Judge defendants,

22   their respective Judge defendants, they are only seeking

23   retrospective relief as to them.

24        THE COURT:  Well, why couldn't they say we don't want

25   these judges to act like this in future?  I mean, it's closed

1    as to these plaintiffs at this time, but these judges,

2    apparently, according to the plaintiffs, act

3    unconstitutionally.  Why would that be moot?

4            MR. COX:  That also goes to the second prong of *Ex*

5    *Parte Young*, Your Honor, which would require some special

6    relation between the parties, and there is no special

7    relationship here between the named Judge defendants and the

8    remaining five --

9            THE COURT:  Well, what does that mean, "special

10   relationship"?  Was that judge on that plaintiff a particular

11   judge on a particular plaintiff, wasn't it?

12           MR. COX:  I'm sorry, Your Honor?

13           THE COURT:  You are talking about special

14   relationship, but the way the case is pled, there was a

15   particular judge on a particular plaintiff's case.  True or

16   false?  Maybe you are not understanding me.

17           MR. COX:  I am having trouble hearing.

18           THE COURT:  You have thrown out the term there is no

19   special relationship.  My next question was:  What does that

20   mean?  Then I am suggesting to you that there was a

21   relationship.  Am I wrong in that, or do you have some other

22   definition in mind as to what a special relationship is?

23           MR. COX:  There is no authority -- there is no

24   authority connection between the named Judge defendants and the

25   -- and the named plaintiffs.  In fact, in -- this was the

 1  *Falwell* case, *Falwell vs. City of Lynchburg, Virginia*, Your

 2  Honor.  It's cited at page 11 in our reply, ECF 77.  And there,

 3  and I will quote, Federal courts may enjoin state officers

 4  where those officers are, quote --

 5            THE COURT:  A little slower, please.

 6            MR. COX:  I'm sorry.  I'm sorry, Your Honor.

 7       -- clothed with some duty in regard to the enforcement of

 8  the laws of the state, and who threaten and are about to

 9  commence proceedings, either of a civil or criminal nature, to

10  enforce against parties affected in unconstitutional act.

11       And the Supreme Court also explained in *Ex Parte Young*

12  the fact that the state officer, by virtue of his office, has

13  some connection with the enforcement of the act is the

14  important and material fact.

15       But here, though, Your Honor, all these acts are

16  retroactive in nature.  There is no -- it's a two-prong test.

17  They need a future act and they need a special relationship

18  here.  And, undoubtedly, the public defenders in these cases

19  would ask the judge -- as plaintiffs surmise that these cases

20  may go back to these named Judge defendants -- undoubtedly, the

21  public defenders in their respective cases would ask the judges

22  to recuse themselves.

23            THE COURT:  All right.  Is that your argument on

24  what?  I am not sure what you are arguing now.  Are you saying

25  there is -- I thought we were talking about Eleventh Amendment

1    immunity and judicial immunity and I seem to be hearing

2    something else that you are arguing.  You are saying these

3    judges simply don't have jurisdiction over the cases anymore.

4    That's a somewhat different argument.  And if that's what your

5    argument is, let me hear what plaintiffs have to say in

6    response to that.  But I want you to get to the Eleventh

7    Amendment and the judicial immunity arguments.

8         Sit down for now and let me hear what Mr. Wayne has to

9    say in response to what you just argued.

10        MR. WAYNE:  Thank you, Your Honor.

11        I have some difficulty understanding exactly what the

12   defendants' argument is, but if I can break it down, it seems

13   to me, first of all, that these -- that the relief sought by

14   plaintiffs is purely retrospective and that simply is not the

15   case.  Plaintiffs are seeking, against the Judge defendants, a

16   declarative judgment about what they may do in the future.

17        Your Honor, this is a putative class action.  We have

18   some -- we have two named plaintiffs that are still detained

19   pursuant to this process they are alleging is unconstitutional.

20   We have three other named plaintiffs that were detained at the

21   time the suit was filed.  And pursuant to the well-established,

22   inherently transitory exception to mootness doctrine that

23   applies especially in the pretrial detention context, mootness

24   simply doesn't apply to people who are --

25        THE COURT:  I understand that part of your argument.

1    I think if I can distill what Mr. Cox has said, and I am having

2    a little difficulty myself, but he's saying that these judges

3    -- certain judges who acted, who were district court judges, no

4    longer have jurisdiction over these people.  The case went to

5    the circuit court.  A circuit court judge then assumed

6    responsibility for the case.  How would you then be able to

7    take action against the district court judge who no longer has,

8    at least under Maryland practice and procedure, jurisdiction

9    over the defendant?

10           MR. WAYNE:  That's a good question, Your Honor, and

11   raised for the first time here in this hearing.

12           THE COURT:  I am hearing it as a different argument,

13   too.  There may be something to it.  I just don't hear it as an

14   Eleventh Amendment judicial immunity argument.

15           MR. WAYNE:  Right.  I wouldn't think so either, Your

16   Honor.  I think the key is that plaintiffs are seeking

17   prospective relief through this case, a declaration that will

18   affect future acts.  And I think with respect to the fact that

19   certain of the named plaintiffs' cases are now in the circuit

20   court having been in the district court, I think the mootness

21   principles would apply there because the moment in time when

22   the case was filed, this case belonged to the named Judge

23   defendants.  They were responsible for the harms.

24           THE COURT:  The district court judge?

25           MR. WAYNE:  The district court judge, exactly.  And

1 because the nature of these types of cases is inherently

2 transitory in that cases will be transferred to new judges,

3 people's criminal cases will be resolved, various things will

4 happen before there is enough time for a federal court to

5 certify a class and to render a judgment, the exact reasoning

6 that applies to the inherently transitory exception that --

7 that prevents mootness, that would prevent someone from

8 vindicating their rights because their claim is capable of

9 repetition and of aiding and review.  That same principle

10 should apply --

11          THE COURT:  Wouldn't it also be a plausible argument

12 to say if the district court judge was outrageously wrong in

13 their decision, that somehow it's moot if you transfer it to

14 the circuit court, how would you ever get at that kind of

15 action?  And maybe there is something that buttresses your

16 argument in that.

17     All right.  Again, Mr. Cox, you don't need to spend

18 anymore time on this particular argument.  I do want you to get

19 to the Eleventh Amendment state immunity argument, and then I

20 want you to get to judicial immunity.  So let's talk about that

21 now.

22          MR. COX:  Yes, Your Honor.

23     For example, page 19 of our initial motion, ECF 66-1, in

24 discussing the Eleventh Amendment immunity applying to judges,

25 it was Chief Judge Bredar of this court who wrote, "A complaint

1   seeking a declaration of past wrongdoing by a judge, in

2   contrast to one seeking to halt a present or ongoing violation

3   of federal law, is not a claim for prospective injunctive

4   relief, but rather is retrospective in nature; such a complaint

5   is barred by absolute judicial immunity."

6        And that's what applies here.  Absolute judicial

7   immunity, if we even get past the Eleventh Amendment immunity

8   argument, which only applies to official capacity claims,

9   absolute judicial immunity applies to both individual and

10  official capacity claims.  So even if we take plaintiffs'

11  complaint and assume that it pleads individual capacity claims

12  as well, absolute judicial immunity is a complete bar to claims

13  against judges unless it's for future injunctive relief.

14       There has been no -- there is no preliminary injunction

15  against the Judge defendants.

16       THE COURT:  Is there one pending?  Are you seeking

17  injunctive relief against the judges?

18       MR. WAYNE:  No, Your Honor.  As we have been

19  explicit, we are only seeking, pursuant to -- Section 1983 only

20  permits, in the first instance, declarative relief against the

21  Judicial defendants, and based on our review of the law, our

22  understanding is there is no such thing as a preliminary

23  declaration.

24       THE COURT:  Okay.

25       MR. WAYNE:  So in that instance, we can't seek and

1   are not seeking a preliminary injunction against the Judicial

2   defendants.

3          THE COURT:  But would you seek, though, some sort of

4   remedy where the Court would order certain things to be done

5   consistent with its declaration in favor of your clients?

6          MR. WAYNE:  No, Your Honor.  We seek a declaration of

7   what the law is, and that's our understanding of what a

8   declarative judgment consists of.  Section 1983 contemplates an

9   injunction against Judicial defendants if they violate a

10  declaratory judgment.

11         THE COURT:  Go back to Mr. Cox's.  Clearly the --

12  that's an interesting argument that he's made.  I am not quite

13  sure how he's arrived at it.  Maybe it's accurate.  But you say

14  it doesn't become prospective if it's based on past acts?  I am

15  not quite sure what the holding is you are trying to --

16         MR. COX:  The point there is, Your Honor, is time and

17  time again, Courts, as laid out in our papers, have found that

18  claims seeking declaratory relief against judges that are only

19  retrospective in nature, which is exactly what we have here,

20  either the named -- the defendants have been released, they no

21  longer have the -- the judges no longer have jurisdiction over

22  -- over them, or they are properly detained as a result of

23  seeing another judge, there is no prospective relief that can

24  be offered here, and that would be required to not apply

25  absolute judicial immunity here.  It also applies to Eleventh

1  Amendment immunity as well, Your Honor.

2          THE COURT:  Walk through this with me for a moment,

3  though.  Aren't plaintiffs saying that some judges in the

4  future need to be curbed about their inclination to act

5  unconstitutionally?  Aren't they saying that?  Because they did

6  this in the past, and we can't remedy what they did in the past

7  by damages or injunctive relief, all we want to do is say, in

8  future, you better tow the line, something like that.  Am I

9  correct, Mr. Wayne, something of that order?

10         MR. WAYNE:  Yes, Your Honor.

11         THE COURT:  Why is that not prospective?

12         MR. COX:  Because it's not as to these specific

13  plaintiffs.  There is nothing that can be done as to these

14  specific plaintiffs' case, criminal cases, these ongoing state

15  criminal cases.

16         THE COURT:  What about the people who are detained at

17  the moment, why would the Court not be able to set out

18  guidelines, parameters, whatever, that says this is what the

19  judges should do in future?

20         MR. COX:  When you say "the Court," Your Honor, just

21  to be clear, do you mean this federal court?

22         THE COURT:  This Court, the federal court.

23         MR. COX:  Because -- and this goes back to the

24  Eleventh Amendment immunity argument, which I think plaintiffs

25  concede --

1    THE COURT:  Well, we can get to the Eleventh

2    Amendment.  I am just talking about judicial immunity.  I was

3    trying to stay within judicial immunity and separate the

4    arguments for now.  There isn't judicial immunity for

5    prospective relief, is there?

6    MR. COX:  I'm sorry?

7    THE COURT:  Is there or is there not judicial

8    immunity for prospective relief?

9    MR. COX:  There could -- there could be circumstances

10   where this --

11   THE COURT:  What are those circumstances?

12   MR. COX:  There could be circumstances where judicial

13   immunity would not apply to future prospective relief, but that

14   is not what is sought in this case, Your Honor.

15   THE COURT:  And why not?

16   MR. COX:  Because when you examine each of the cases,

17   the remaining named plaintiffs' cases, there is nothing about

18   those cases that could -- where any declaratory relief would

19   apply to connect the named plaintiff with their respective

20   Judge defendant because either they no longer -- the Judge

21   defendants, their courts no longer have jurisdiction, those

22   judges didn't hear the case, something else happened in

23   between, another judge heard the case, and soon, some of these

24   cases will be closed.

25   THE COURT:  And so it wouldn't matter that there was

1  an effort on the part of plaintiffs based on what happened to

2  them to try and get the judge to correct himself or herself in

3  future.  Is that right?

4           MR. COX:  If that's what -- if that's what plaintiffs

5  truly wanted here, their respective public defender could file

6  motions in their respective criminal cases asking for

7  additional bail hearings or reconsideration, and that's

8  happened in some of these cases.  That's exactly what happened.

9           THE COURT:  That doesn't get to the systemic problem

10 they are alleging, just happens to provide relief for a

11 particular --

12          MR. COX:  I'm sorry.

13          THE COURT:  It doesn't really get to the systemic

14 problem that they are raising.  It's a potential approach in an

15 individual plaintiff's case.

16          MR. COX:  That's a great point, Your Honor, because

17 if they are seeking to change the systemic -- what they

18 perceive or what would allege as a systemic problem, this isn't

19 the way to do it, naming the individual judges.  They have

20 absolute judicial immunity.  Eleventh Amendment immunity would

21 apply.  The *Ex Parte Young* exception would not apply.  There

22 could be other means for getting the relief that they seek or

23 to change the system that they would like to change.

24          THE COURT:  Like what, for example?

25          MR. COX:  They could join the rules committee and try

1  to change the Maryland rules.

2        THE COURT:  So you are challenging -- all right.  All

3  right.  Fair enough.

4        Mr. Wayne, do you want to take that on?

5        MR. WAYNE:  Yes, Your Honor.

6        I mean, it's well established that judicial immunity

7  doesn't bar equitable relief.  That's injunctions or

8  declaratory relief.  Now, provided, there is a narrow exception

9  to that rule that says that judicial immunity doesn't prevent

10 relief when that relief is purely retrospective in nature, as

11 in it's merely a post hoc, typically a single person who is

12 saying, This judge did something in the past and I want -- I

13 want the Court to say that they ruled against me wrong, in

14 essence, a species of *Rooker-Feldman*.

15       That's not what's happening here.  Typically this doesn't

16 apply to class actions.  Plaintiffs have a putative class

17 action alleging ongoing harm to members of the class.  Two

18 people are still detained.  None of the relief that plaintiffs

19 seek is retrospective -- well, other than the damages, which is

20 not sought against the judges.

21       The relief that plaintiffs seek against the judges, the

22 Judge defendants is -- is purely prospective, saying in the

23 future to both the detained plaintiffs and members of the

24 putative class, this is a declaration of what the Constitution

25 requires when conducting these bail proceedings.

1          THE COURT:  All right.  Anything more on that,

2     Mr. Cox?  Do you want to talk the Eleventh Amendment at all or

3     --

4          MR. COX:  Well, Your Honor, with regard to the

5     Eleventh Amendment, I am happy to talk about that.  And to be

6     clear, the Eleventh Amendment bars suits in states -- I'm

7     sorry, in federal court against states, state agencies, and

8     state officials acting in their official capacity unless

9     Congress abrogated that immunity.  There has been no abrogation

10    of immunity here -- Eleventh Amendment immunity in this -- for

11    these types of claims.

12         I think plaintiffs concede -- in reading their most

13    recent pleading -- or their response, I think they concede

14    Eleventh Amendment immunity applies.  I think we are passed

15    that step.  And they say, But it doesn't apply -- well, it

16    would apply but there was an exception to it, and that's the *Ex

17    Parte Young* exception.  And they are saying *Ex Parte Young* does

18    not apply here.  They say the reason it doesn't apply is

19    because they are actually seeking prospective relief in that

20    there is some special relationship here.

21         As we have laid out in our papers, and I will refer the

22    Court to the *Friends of Lubavitch* case, Judge Russell ruled in

23    that in 2021, and it's cited at page 10 of our reply, ECF 77,

24    Courts across the country have found that plaintiffs seeking

25    relief from previous judicial decisions do not fall within the

1   *Ex Parte Young* exception.  So I think we are passed where does

2   the Eleventh Amendment -- would it apply here.

3         They say, Well, it would, except for the fact that there

4   is an exception, and they argue *Ex Parte Young* simply because

5   of two reasons.  They are seeking prospective relief, they say,

6   and there is a special relationship.  For all the reasons I

7   have outlined or we have outlined in our papers and I have

8   outlined here today, there is no special relationship between

9   these judges and their respective plaintiffs.  Certainly no

10  future or ongoing present relationship.  And --

11        THE COURT:  Are you arguing Eleventh Amendment

12  immunity now or are you back arguing judicial immunity?

13        MR. COX:  That's Eleventh Amendment -- both Eleventh

14  Amendment immunity and judicial immunity.  For plaintiffs to be

15  successful, both require them to seek prospective declaratory

16  relief.  That's a requirement to not have Eleventh Amendment

17  immunity apply or absolute judicial immunity.

18        THE COURT:  So are you conceding that in an action

19  against a state or state officials acting in their official

20  capacity, which is equivalent to an action against the state,

21  in federal court, you can't proceed against the state or all

22  those officials unless you are seeking prospective relief,

23  which is to say you can proceed if you are alleging that you

24  are only seeking prospective relief?

25        MR. COX:  Yes.  To not -- to not have the Eleventh

1   Amendment immunity apply, the first requirement would be you

2   have to seek prospective relief, and then you also have to show

3   a special relationship between the defendant and the plaintiff.

4   And as we have explained in our papers, and I think this chart

5   demonstrates, there is no ongoing special relationship here

6   between any of these Judge defendants and the named plaintiffs.

7           THE COURT:  All right.  Mr. Wayne.

8           MR. WAYNE:  Yes, Your Honor.

9       I am going to quote from *Verizon Maryland, Inc. vs.*

10  *Public Service Commission of Maryland*, 535 United States 635,

11  quote, In determining whether the doctrine of *Ex Parte* --

12          THE COURT:  Slow down a little bit so the court

13  reporter and the judge can stay with you.  Slow down.  Go

14  ahead.

15          MR. WAYNE:  Your Honor, *Ex Parte Young* is a -- is a

16  straightforward question.  It's whether there has been a

17  violation of an unconstitutional act and you have sued the --

18  the officer, the state officer who has some connection to the

19  enforcement.  In that case, there is an exception to Eleventh

20  Amendment immunity for suits for prospective relief.

21      I believe it's crystal clear that this case seeks

22  prospective relief against these judges.  We are not seeking

23  anything adhering to the past actions, there are overturning of

24  past judgment, simply a declaration of what may occur in the

25  future.  And I think it's also clear that when we are talking

1   about the policy that the plaintiffs challenge, the judges who

2   inflicted this policy upon them have some connection to its

3   enforcement.

4        The -- the cases that -- that the defendants rely on are

5   looking really to -- to suits against, say, a state Attorney

6   General or some high-level official who only has derivative

7   responsibility for -- for enforcing some law or policy.  That's

8   not the case here.

9        The individuals are sued, and this is exactly what *Ex*

10  *Parte Young* --

11       THE COURT:  Let me ask you this while we are on it.

12  Are you really alleging there is individual responsibility

13  here?  What individual responsibility -- liability would there

14  be here?  Why aren't the judges, whatever they are doing,

15  always acting in an official capacity?

16       MR. WAYNE:  Your Honor, I think the question of

17  individual versus official capacity is -- is not the right

18  question.  And Section 1983 uses the term "judicial capacity."

19  It allows a suit for declaratory relief against judges acting

20  in their judicial capacity.

21       To our understanding, we haven't seen any case law in the

22  Fourth Circuit or the Supreme Court explaining how judicial

23  capacity tracks to individual or official capacity, so as a

24  good -- in good faith, we have not specified which of those it

25  is.  Really, this is a suit in their judicial capacity.

1        If Your Honor wishes to -- makes a ruling of how judicial

2   capacity tracks onto that individual versus official capacity

3   distinction, we are happy to proceed however Your Honor

4   concedes.

5        THE COURT:  Well, it may be that you have -- that you

6   fit within an exception to proceed against them based on

7   prospective relief even if it was official capacity.

8        MR. WAYNE:  Yes, Your Honor.  And I --

9        THE COURT:  The only official capacity would

10  translate to -- would be to say that it is the state you are

11  suing, and states can't be sued in federal court except if it's

12  for prospective relief.  So you could get there either way

13  however you do it.

14       While we are on it, are you really alleging -- maybe you

15  are alleging it, maybe you have some theory -- that the

16  individual County defendants are individually liable, they are

17  doing anything outside their official capacity?

18       MR. WAYNE:  No.  We have -- I believe we have only

19  sued in their official capacity, I believe.

20       THE COURT:  And, therefore, it becomes an action

21  against the County then.  Right?  Do they belong in here?  I

22  mean, ordinarily, you sue an individual County official in

23  their -- County functionary in their official capacity, it's a

24  suit against the County and the County is the defendant, not

25  the individuals.

1          MR. WAYNE:  Yes, Your Honor.  If they were purely

2     County actors, then I would agree.

3          THE COURT:  Well, they are.  I mean, do you have any

4     basis for alleging -- don't you name several County individuals

5     here as defendants here?  You have half a dozen.

6          MR. WAYNE:  Correct, Your Honor.  I would note that

7     the County argues that they are entitled to Eleventh Amendment

8     immunity.

9          THE COURT:  Well, leave that aside.  Right now, I am

10    talking about whether they even belong in here as individual

11    defendants.  You sue an individual like this in their

12    individual capacity when it's imminently clear from the

13    complaint that they are acting in their official capacity,

14    rightly or wrongly, and they are not in the case as individual

15    defendants, they appear really as the state -- sorry, as the

16    County, and only the County is a defendant here.

17         MR. WAYNE:  Yes, Your Honor.  Generally, I agree with

18    -- with -- with these propositions.  The question here is that

19    -- well, first of all, as a general matter, state or county

20    officers may be sued in both individual and official capacities

21    for official acts, including, for example, law enforcement

22    officers where you often see a law enforcement officer who is

23    accused of acting unconstitutionally in the line of duty, gets

24    sued in both individual and official capacity.  That determines

25    whether --

1          THE COURT:  Do you have any basis for -- I understand

2     the dynamic of a police officer beating somebody without just

3     cause.  But these are officials who are making bureaucratic

4     decisions, right or wrong, and you are saying individually,

5     they violated somebody's constitutional rights.  Where do you

6     get --

7          MR. WAYNE:  Yes, sir.  To be clear, we have only sued

8     the County defendants in their official capacity.

9          THE COURT:  But do you understand, then, by suing

10     them in their official capacities, you are suing the County?

11          MR. WAYNE:  Yes.

12          THE COURT:  They don't belong -- I am trying to

13     winnow the case down in a manageable proportion.  They don't

14     belong in the case as individual defendants.

15          MR. WAYNE:  Your Honor, and I will -- I will agree

16     with that provided they are purely County actors.  And I have a

17     basis for making this argument.

18          THE COURT:  Let me hear what you have on that because

19     I don't see it.  Go ahead.

20          MR. WAYNE:  Yes, Your Honor.

21     So in certain -- you know, bail issues of pretrial

22     detention have been litigated in courts around the country, and

23     it's often debated whether to the extent a county official is

24     acting as a jailer or acting in some way as a result of a state

25     court order, whether they are, in fact, county actors for those

1  purposes or state actors?  This is something that's been the

2  subject of a lot of recent litigation and it's come down in

3  both ways.

4      We have, for example, in a case we have cited --

5      THE COURT:  That's a different proposition whether

6  they are county or state.  This is whether they are individual

7  or county.  That's what we are talking about.

8      MR. WAYNE:  Well, right.  They are sued as -- in

9  their official capacity, either named as individuals in their

10 official capacity or only named as County.

11     Now, here is the twist, Your Honor, if I may.  To the

12 extent they are acting on behalf of the state when they do some

13 of the things --

14     THE COURT:  You say "the state."  We are talking

15 about individual versus County right now, adjunct, into a

16 slightly different lane here.

17     MR. WAYNE:  Right.  And the only -- so we are not

18 suing them in their individual capacity.  We are only suing

19 them in their official capacity.  But the twist there is when

20 an individual officer is acting on behalf of the state, as in

21 when a person is acting on behalf of the state, you can only

22 sue the person.  You cannot sue the state.  That's *Ex Parte*

23 *Young* and that is --

24     THE COURT:  The state, you are saying.  This is the

25 individual versus the -- in the County context.  Let me hear

1   what defendant -- what Ms. Johnson, you or Mr. Murray is going

2   to say in response to that.  There are allegations -- I think

3   Mr. Wayne has said that the County has sued itself plus a

4   number of individuals in the County in their official capacity.

5        Do the individuals belong in the case at all?

6            MS. JOHNSON:  No, they do not.

7            THE COURT:  Why not?

8            MS. JOHNSON:  Because, one, the complaint fails to

9   allege any -- any facts that any of the individually named

10  County employees were -- did anything to any of the plaintiffs.

11  In the actual facts section, it just generalizes Pretrial

12  Release Services.  Jeffrey Logan, Tanya Law, and Kenneth Gray,

13  in the fact sections, there is no facts alleged that Kenneth

14  Gray found Robert Frazier ineligible for pretrial release for

15  A, B, and C reasons.  They are not -- they are not -- other

16  than identifying them as County employees working in Pretrial

17  Services, there is nothing alleged that they did anything or

18  failed to do anything in relation to any of the claims.

19           THE COURT:  That's a different argument, that they

20  didn't act with respect to any of the plaintiffs.  But just

21  being sued in their official capacity, does that not mean that

22  the -- they are substituted by the County as the defendant?

23           MS. JOHNSON:  Correct, Your Honor.

24           THE COURT:  But they individually are not in the

25  case?

1          MS. JOHNSON:  Correct, Your Honor.  I think this

2     Court, in Maryland, it's been pretty clear, and the case law in

3     *Lowery* is one case that -- that I cited to in our -- *Lowery vs.*

4     *Prince George's County*, 960 F. Supp. 952.  That was a District

5     Court of Maryland case in 1997.  The County cites that case

6     quite often in front of this Court for the same reason when

7     County employees are sued only in their official capacity.

8     Here, we have the County as a -- as a party.  So the -- the

9     plaintiff is losing absolutely nothing and the Court dismissing

10    the individually named plaintiffs because the County is still a

11    party to the case and they were acting in their official

12    capacities as employees of the County.  There is no allegation

13    that they acted maliciously or outside the scope of their

14    employment.

15          THE COURT:  If they acted at all?

16          MS. JOHNSON:  If they acted at all, correct.  And the

17    fact that we, as the County attorneys, are here representing

18    them as well as with the County, again, plaintiffs are losing

19    absolutely nothing, and as the Court stated, this would

20    streamline things, make things simpler because plaintiff did

21    ask for a jury trial on the complaint, so I think it would be

22    -- if this case ever gets that far, it would be very -- it

23    would make things much easier with respect to discovery, it

24    would make things much easier and streamlined with respect to

25    if it was ever presented to a jury.

1      MR. WAYNE:  Your Honor, if I may, and I am going to

2  quote the County defendant's brief, she is saying today that

3  they are strictly County actors.  She said on -- they argued on

4  page 30 of their brief, quote, The County defendants are

5  carrying out a state judicial function and are entitled to

6  Eleventh Amendment immunity.

7      THE COURT:  That's a different argument.

8      MR. WAYNE:  I hear you, Your Honor, but it actually

9  is the same argument, and I would like to explain why.  It's

10  the same argument because -- and I will quote the Fourth

11  Circuit in *Antrikan* [phonetic] *vs. Odom*, A state officer who

12  acts in violation of the Constitution is stripped of his

13  official or representative character and is subject in his

14  person to the consequences of his individual conduct.  That's

15  official capacity actors have to be named as their persons in

16  official capacity actions if they are acting for the state.

17  That is what *Ex Parte Young* requires.  That's why we have named

18  certain judges and couldn't just sue the state of Maryland.

19  The state of Maryland has immunity, but individual state

20  officers do not.  Accordingly, if these County defendants are

21  acting for the state, then they need to be named as individual

22  official capacity actors.

23      THE COURT:  Let me shortcut this.  I have had this

24  case come up I don't know how many times, and Ms. Johnson has

25  argued it most of the time, but a suit, at least on this narrow

1    issue, against a County official in his or her official

2    capacity is a suit against the County, and typically the

3    individual claims go out immediately and the suit remains

4    against the County.  Now, that's one proposition that I think

5    is being argued.

6         The second argument that I am hearing, though, is the

7    claim by the County defendants that they are, in fact, state

8    actors, which happens in Maryland.  You do find that there is

9    sometimes -- whether the sheriff is a local employee or a state

10   employee, we hear that all the time.  I am willing to entertain

11   from the defendant an argument as to why they are state actors

12   in this case as opposed to county actors, and that may take us

13   in a different direction.

14        So let me hear from Ms. Johnson on that.  Why does state

15   immunity, why does Eleventh Amendment immunity apply in this

16   case?  Because ordinarily a county can be sued in federal court

17   and is all the time.

18        MS. JOHNSON:  Your Honor, I think what -- Mr. Wayne

19   has mischaracterized what I argued in our reply, in our motion

20   is that -- because, as you said, it was kind of confusing from

21   the complaint, and in our trying to respond and file a motion

22   to dismiss, it was unclear what the plaintiffs were seeking and

23   from which defendants.  So we argued it both ways.  But I think

24   -- but what is clear is they are County employees.

25        When I stated in the motion that Mr. Wayne quoted, I was

1    re -- I was re-framing their argument, and then I responded

2    with our argument that if they are saying that we are taking --

3    or that the Judicial defendants unconstitutionally delegated

4    their -- their job or their duty to us, then we were arguing if

5    that is what they are arguing and that was what their -- what

6    their complaint was, then the immunity that the plaintiff --

7    that the Judicial defendants should also come to us.

8              THE COURT:  The Judicial defendants?

9              MS. JOHNSON:  Right.  And that's -- but we are not

10   saying -- one, our position is they didn't delegate a

11   constitutional duty to us because, one, there is no

12   constitutional right into being offered or being evaluated for

13   a non-mandated pretrial release program.

14        So we were going by -- I was responding or attempting to

15   respond to their argument and showing that it, one, didn't make

16   sense, and two, that the defense that's available to the

17   Judicial defendants, if they are saying we are acting as

18   Judicial defendants in that sense, then we should get the

19   benefit of the defenses of the Judicial defendants.

20             THE COURT:  That's what they are saying I think.  If

21   you are acting pursuant to an inappropriate delegation by the

22   judges, then you are what?  You have immunity?

23             MS. JOHNSON:  If we are -- I mean, if the judges have

24   given us their constitutional duty, then we also get the

25   protections that they -- that they -- that comes with that

1    delegation.

2          THE COURT:  Do you have a case for that proposition,

3    that a judge asking a non-judge to act -- ordering a non-judge

4    to act, the umbrella of immunity extends to the party that's

5    asked to act?

6          MS. JOHNSON:  No, Your Honor, I don't.  And, I mean,

7    we were making that argument, you know, just as showing the --

8    a reasoning and analysis by comparison.

9          THE COURT:  I was asking about a much narrower

10   question, which is whether a named County individual in their

11   official capacity is, in fact, a suit against the County?

12         MS. JOHNSON:  It is.

13         THE COURT:  The County can be liable for what the

14   individual does.  I mean, maybe we are missing the point here.

15   If, in fact, that person acted inappropriately, it's just that

16   they don't pay individually.  The County pays.  That's how it

17   works.

18         MS. JOHNSON:  Correct, Your Honor.

19         MR. WAYNE:  Your Honor, if defense counsel is willing

20   to concede that they are not acting for the state in terms of

21   the allegations in this case, then plaintiffs are happy to

22   accept the dismissal of the named official capacity County

23   defendants.

24         THE COURT:  In their individual capacity?

25         MR. WAYNE:  We didn't include any in the individual

1    capacity.

2            THE COURT:  If they are named only in their official

3    capacity, it is a suit against the County?

4            MR. WAYNE:  It is provided they are acting for the

5    County.  If they are acting for the state, then they can be

6    named, and that is where plaintiffs were attempting to, in

7    essence, ensure that we wouldn't accidentally just name the

8    County and then have it be found during the course of this

9    litigation they were actually acting for the state, and then we

10   would have failed our clients by not naming them personally in

11   their official capacity.

12           If they are not acting for the state, then certainly it's

13   only a suit against the County.  If they are acting for the

14   state, then they need to be included as individually named

15   official capacity defendants.

16           MS. JOHNSON:  Your Honor, the conversation here lies

17   in -- it seems as though when it came to liability, plaintiffs

18   separated Judicial defendants and County defendants.  But when

19   it came -- no.  They kept them together.  But when it came for

20   damages, they separated us.

21           And if you look at their complaint, ECF 1, and you look

22   at the -- on page 49, the prayer for relief, it just shows how

23   it's -- how -- why I am confused because if you look at -- you

24   know, they say they want a declaration, you know, from the

25   Court about what -- what the constitutional process is and they

1   want an injunction against the County.  But to do that -- and

2   what the injunction that they stated was, Defend primary and

3   permanent injunctions as to Defendants Labbe, Logan, Gray, and

4   Law requiring them to promptly release all persons who have

5   been given a pretrial referral and who have not received the

6   due process necessary to justify their ongoing detention.

7        County cannot do that because, in essence, you are asking

8   the County to violate a valid court order issued by the state

9   court judge.

10        THE COURT:  We are jumping back and forth on

11  arguments here.  I have -- the narrow question before us right

12  now is:  Is there any basis to keep the County -- individual

13  County defendants in this case in their individual capacity?

14        MS. JOHNSON:  No.

15        THE COURT:  All right.  And that's because the suit

16  against a County employee in his or her official capacity is a

17  suit against the County?  I am not asking whether the County is

18  right or wrong and whether you have authority to do one thing

19  or not.  And Mr. Wayne is saying, So you are not then asserting

20  Eleventh Amendment immunity based on judicial immunity because

21  you are not saying they are state actors.

22        MS. JOHNSON:  No.  Based on the allegations in the

23  complaint, they identify them as County employees acting within

24  their employment as -- as County employees, so the suit against

25  them is the suit against the County.

1      THE COURT:  So you are taking the position that the

2  complaint, as it stands, does not allege -- the complaint now

3  does not allege that the individually named County employees

4  were acting in any capacity as state employees or on behalf of

5  the state?

6      MS. JOHNSON:  Well, the complaint does make those

7  type of allegations, Your Honor.  That's why it's confusing,

8  you know.

9      THE COURT:  What was your position?  Do you deny that

10  they are state employees?

11      MS. JOHNSON:  No.  They are not state employees.

12  They are paid by the --

13      THE COURT:  You deny that they are acting on behalf

14  of the state?

15      MS. JOHNSON:  Yeah.  We deny that they are acting on

16  behalf of the state.

17      THE COURT:  And you are not going to argue in any

18  context that they were acting on behalf of the state?

19      MS. JOHNSON:  The only context is that we are

20  following a court order to evaluate them.  If that makes us

21  being state actors, I think that's a question, but we -- the

22  County has -- only evaluates those individuals that are

23  referred to it by a Court pursuant to an order.  And so when

24  County gets that order telling us to evaluate them, we evaluate

25  them.  That's all we do.

1         THE COURT:  I don't know how much more we are going

2    to profit from this particular line of argument.  It may be --

3    it may well be that the individual County defendants on the

4    basis of individual liability go out, the County remains.  If

5    there is some basis for proof, should the case survive that

6    long, that they did things in connection with the state, then

7    that could be argued against the County.  I guess that's the

8    point.

9         It's only that the entity that represents what the County

10   employees did is the County.  It's not the individuals.  I

11   mean, I think that's what we come to in this.  We will address

12   this in my opinion, but I don't know that we need to spend a

13   lot of time with it right now.

14        I don't think you would be precluded, Mr. Wayne, from

15   arguing, if it comes to that, that there was no judicial

16   immunity for what the County -- individual County actors did,

17   but they still are not to be liable in their individual

18   capacity.  I think that's what it comes to.  Any argument you

19   make in that regard is against the County who was the employer.

20   I think that's what it comes to.

21        All right.  Let me -- I am not sure what else we need to

22   address at this point.

23        Mr. Cox, let me come back to you.  What do you want to be

24   heard on next?

25             MR. COX:  Your Honor, I just had three final points

1    on Eleventh Amendment and absolute judicial immunity, and I

2    believe --

3            THE COURT:  Well, Eleventh Amendment just started

4    with that the state, itself, can't be sued in federal court,

5    and the suit against the judges is a suit -- in their official

6    capacity is the suit against the state.  Right?

7            MR. COX:  Absolutely, Your Honor.

8            THE COURT:  Where would somebody go to complain about

9    that then?  What if the state were acting in violation of the

10   Constitution, do you go to state court?

11           MR. COX:  Well, federal court can be appropriate if

12   *Ex Parte Young* applies.  And in this case, Your Honor, I just

13   wanted to refer the Court to the -- plaintiffs' counsel made

14   the comment that *Ex Parte Young* usually only applies to

15   Attorney Generals and other higher-up officials.

16           THE COURT:  I don't think he makes that point, do

17   you?

18           MR. WAYNE:  I did not say that it usually only

19   applies to them.

20           THE COURT:  I don't think that's a correct statement

21   anyway.  I don't think you need to pursue that.

22           MR. COX:  And I was going to say, Your Honor, we have

23   cited numerous examples --

24           THE COURT:  You don't need to get into that.  That's

25   clear.

1          MR. COX:  As to absolute judicial immunity, then,

2    Your Honor, my only point is that in our papers, we have cited

3    numerous cases where Courts, including this Court, on numerous

4    occasions, has said absolute -- have applied absolute judicial

5    immunity to situations where plaintiffs are clearly seeking

6    retrospective declaratory relief.  We believe those cases are

7    analogous to this one.

8          Plaintiffs, on the other hand, in their response, did not

9    cite a single case saying that there was not absolute judicial

10   immunity for prospective declaratory relief.  Unless I misread

11   plaintiffs' response, I don't think one was there.

12          THE COURT:  All right.

13          MR. COX:  Finally, Your Honor, as a final thought, in

14   terms of what possible relief this Court could craft that would

15   satisfy plaintiffs -- let's just take one of the named

16   plaintiffs, Davis.  His case is closed.  What possible order

17   could this Court issue that would apply to Mr. Davis', sorry,

18   closed criminal case?  There is just none.  It's all

19   retrospective in nature.  And that's the same for -- you can go

20   right down this chart, as we have outlined in our papers, that

21   would apply to every one of these plaintiffs, Your Honor.

22          THE COURT:  All right.

23          MR. COX:  Thank you.

24          THE COURT:  Mr. Wayne, more on that?  Ms. Johnson, do

25   you have something that intervenes on the same line or do you

1   want to argue a different line?

2          MS. JOHNSON:  No.

3          THE COURT:  Let me get a response to that.

4          MS. JOHNSON:  I just thought that you were going

5   through --

6          THE COURT:  Let me hear from Mr. Wayne in response.

7          MS. JOHNSON:  No problem, Your Honor.

8          MR. WAYNE:  Thank you, Your Honor.

9       We have been circling around on Eleventh Amendment

10   immunity and judicial immunity for a while.  I think, in

11   essence, Mr. Cox's argument relies on the fact that he contends

12   this as a retrospective relief request.  All the cases they

13   cite are about this narrow retrospective exception.

14       We are seeking -- if you look at the relief we are asking

15   for, Your Honor, it's a declaration that applies to future

16   cases including for named plaintiffs who remain detained.  I

17   think this is pretty clearly a textbook example of prospective

18   relief that's being sought.

19       And I have nothing else on that, Your Honor.  Thank you.

20          THE COURT:  Do you want to say something finally,

21   Ms. Johnson?

22          MS. JOHNSON:  Yes.  I wanted to -- I know we didn't

23   get to this argument on the actual claims, motions to dismiss

24   on the substantive due process and the procedural due process,

25   but I wanted to bring the Court 's attention to a case that

1    plaintiffs cited in their response that I found interesting and

2    may provide this Court with some guidance.

3        You brought it up on whether or not they exhausted -- any

4    of the plaintiffs exhausted the state remedies, filed any

5    appeals, filed any petitions of writ of habeas corpus.  And

6    it's interesting that in their response in *In re: Humphrey*, on

7    page 9 of their response, 482 Pacific 3d at 1013, that's

8    exactly what happened in that case where a -- that the inmate

9    was challenging the pretrial detention and did not get the --

10   the outcome that he wanted at the Trial Court level and

11   appealed it through a writ of habeas corpus, exhausted all of

12   the state appeals.

13            THE COURT:  Appealed to a state higher court?

14            MS. JOHNSON:  Yes.  Appealed up to I believe the

15   California Supreme Court, didn't get the results that he wanted

16   there, and then filed another action after he exhausted all

17   those remedies in federal court.

18        And I believe -- and also another case that I found --

19            THE COURT:  What was the outcome there?  The case was

20   rejected in federal court?

21            MS. JOHNSON:  He ended up losing in federal court as

22   well.

23            THE COURT:  Losing because of what?

24            MS. JOHNSON:  It was -- the issue, I want to say, was

25   -- it was a bail -- dealing with the amount of bail that was --

1  and I'm sorry, my memory is getting kind of mixed up because I

2  have read a lot of cases.

3       THE COURT:  You didn't lose because the Court said

4  you didn't have jurisdiction, did it?

5       MS. JOHNSON:  No.  They actually noted that he

6  exhausted all his state remedies, and, therefore, that it was

7  proper that they could look at it, in essence, that they had

8  jurisdiction over it, but he exhausted all those state remedies

9  and that they could now review it.  But they found that he

10 would not -- he wouldn't prevail on -- in the case.  But I

11 thought that that case would provide you with some guidance.

12      And another case that plaintiffs cited, and they cited

13 this in response to our standing argument but I think that it

14 also can apply to our substantive due process argument, was

15 *Holland v. Rosen*, which is 277 F. Supp. 3d 707.  It's out of

16 District Court of New Jersey.  And in that case, they -- and I

17 believe I provided you with a copy up there at the bench -- but

18 in that case, they -- the issue was that there was a actual

19 statute, state statute that governed the whole bail review

20 process and where the judges were to give a priority to

21 non-monetary pretrial release conditions.  So electronic

22 monitoring would have been the judge's first option on

23 releasing someone rather than a monetary bail amount.

24      And they challenged that -- the inmate challenged that

25 saying, you know, I should have been presented with that

1    option.  I wasn't presented with the money bail option.  And he

2    got passed the standing argument, but they find that he was not

3    going to -- he asked for a preliminary injunction and it was

4    denied, finding that the statute was constitutional.

5         And here -- and they found that the state -- the statute

6    did violate -- the statute did create a substantive due process

7    right and they found that the statute was constitutional.

8         Well, in contrast to this case, we don't have a statute.

9    Maryland doesn't have a statute that establishes a pretrial

10   release program for every county in the state.  And that's

11   quite obvious because there are certain counties in this state

12   that do not have one.  Charles County, being one, does not have

13   a pretrial release program or an option for -- for individuals.

14        So there is no -- there is no -- and they say that this

15   right is derived from the Constitution, but they haven't

16   pointed out where in the Constitution it says that you are --

17   that an individual has a right to a non-mandated pretrial

18   release program.

19        And really when it comes to the County, our job is just

20   to say whether they meet the criteria or not.  We don't say

21   yes, you get to go, or no, you don't get to go.  We are just

22   saying you either meet the criteria or you don't meet the

23   criteria.  You don't meet the criteria, you go back to the

24   judge.  You meet the criteria -- the judge has already said, If

25   you meet the criteria, I can open up the door and let you go,

1    and that's what we do.

2        And so, again, I brought up *Holland* --

3        THE COURT:  What if it took you six months to make

4    that decision?

5        MS. JOHNSON:  It doesn't take six months, Your Honor.

6        THE COURT:  I am not asking you that question.  What

7    if it did?  Does time matter?

8        MS. JOHNSON:  I think time matters, but I think that

9    -- I don't think that the time that it is taking in the context

10   of where we are in society and what's happening right now is

11   extremely -- is outrageous or shocks the conscience of -- of

12   the Court.  Everything is taking longer nowadays especially

13   when it comes to court.

14       THE COURT:  Do I know this based on what?  Based on

15   your say so or based on what Mr. Logan says or do we need

16   discovery on how long it takes?

17       MS. JOHNSON:  Well, Your Honor, there is no -- there

18   is no statute.  There is no --

19       THE COURT:  Well, that's the problem, they are

20   saying.  There is no statute, nothing tells you what to do.

21       MS. JOHNSON:  Even the Maryland rules, which

22   4-216.1(f), is -- that's where the Court -- it tells the

23   judicial officer what he -- he or she needs to look at in

24   approving pretrial release.

25       THE COURT:  Was it even in the rule within a

1   reasonable time, the following?  Just because it doesn't put a

2   time doesn't mean unlimited, does it?

3        MS. JOHNSON:  Of course.  Of course it doesn't.  But

4   given -- you know, we can't just look at this, you know,

5   without looking at the context of when these -- and how these

6   decisions are being made.  Okay?  We are just coming out of the

7   COVID pandemic.  We are just coming -- trying to get through

8   the backlog of cases as new cases are coming in, as the crime

9   -- and we don't control the crime rate.  We don't control the

10  arrest rate.  We don't control how many referrals we are

11  getting from the Judicial defendants.  We don't control those

12  things.

13       And so it is really not equitable or not fair to punish

14  the County for things that are beyond its control and something

15  that we are doing gratuitously.  We don't even have to have

16  this.  We can moot this whole thing out by just not having a

17  pretrial release program, and plaintiffs will either make the

18  money bond or they don't and they stay in jail.

19       THE COURT:  All right.  Mr. Wayne, anything you want

20  to say in response to that?

21       MR. WAYNE:  Yeah.  I find it objectionable to be

22  threatened with these actions, that they are going to withdraw

23  this program in response to being sued.  But putting that

24  aside, this is not a suit challenging any statute.  It's not a

25  suit challenging any rule.  It's challenging a process.  And

1    it's not alleging a right to participate in any specific

2    program.  It's alleging a fundamental right to pretrial

3    liberty, which has been enshrined in the Constitution subject

4    to due process requirements going back decades.

5         THE COURT:  A right to pretrial release or to be

6    considered for pretrial release?

7         MR. WAYNE:  Exactly.  You have a fundamental right to

8    liberty.  That right can be constrained in certain

9    circumstances.  But due process applies to those constraints

10   and they require a judicial officer to make a finding that your

11   release -- that no conditions of release would allow somebody

12   to be released into the community.  That's what plaintiffs are

13   asking for here, that that be done by a judicial officer in a

14   timely fashion, and that's not what's happening.

15        Just kind of briefly on some specific things that my

16   opposing counsel mentioned.  Exhaustion is not a requirement

17   here.  This isn't a habeas corpus petition.  It's a Section

18   1983 suit.  In Section 1983, exhaustion of state remedies is

19   not required.  This is well established in the law.

20        Second, that shocks-the-conscience standard is simply not

21   applicable here.  Cases going back to *Salerno* and even before

22   dealing with due process rights for pretrial detainees

23   established a -- a strict standard for when somebody can be

24   detained, a standard that we allege simply isn't being met

25   here.

1        Your Honor, the -- the County's process, they -- they

2   protest being held accountable, saying that they shouldn't be

3   punished, but neither should the people who are waiting two

4   months just to have the County eventually decide, Oh, you were

5   eligible for release all along and so we are going to let you

6   go after you have lost your house, you have missed appointments

7   with your kids, you have missed crucial medical treatment

8   because we sat on this referral for two months before issuing a

9   decision.  That's the crux of the problem here.

10       The County shouldn't be deciding who goes free and who is

11  detained pretrial and they shouldn't be doing it with this,

12  like, opaque, arbitrary, time-consuming process where people

13  get detained during the course of it.

14       The Supreme Court has been clear that pretrial detention

15  needs to be the exception, whereas liberty is the rule.  The

16  defendants' system flips that script and makes detention the

17  presumption until and unless the County desides otherwise.

18            THE COURT:  All right.  Anything else?  Ms. Johnson,

19  I don't want --

20            MS. JOHNSON:  I just wanted to make clear --

21            THE COURT:  Don't go into a new argument here.

22            MS. JOHNSON:  No.  I am not going to go into a new

23  argument, Your Honor.  I just wanted to make clear that

24  arguments regarding the preliminary injunction, you want to

25  hear them on November 4th or the next court hearing?

1          THE COURT:  Is it on -- what is the injunctive relief

2     that's being sought on November 4th?

3          MR. WAYNE:  I believe it's November 8th, Your Honor.

4     We have sought injunctive relief against the County defendants

5     specifically related to their -- I believe the ask in the

6     proposed order is that folks cannot be detained unless they

7     receive that constitutional bail proceeding within a certain

8     amount of time.

9          THE COURT:  Well, you are making me decide my case by

10    November 8th?

11         MR. WAYNE:  Your Honor, it's -- we are asking that

12    the preliminary injunction factors be applied.  I believe

13    likelihood of success on the merits --

14         THE COURT:  I am going to take that hearing off.

15    That doesn't make sense.  That's pushing me in a direction

16    which is duplicative.  I got to decide whether you belong in

17    court at all, and I can't guarantee you by November 8th -- I

18    can guarantee you by November 8th, I will not be able to decide

19    that, so I am not going to go into a preliminary injunction

20    hearing and tell you why you should or shouldn't get it because

21    the almost certainty is you won't get a preliminary injunction.

22         So that's -- we are going to take that hearing off and we

23    will set it if, as, and when.  It just doesn't make sense right

24    now when I have to decide whether the Court has jurisdiction at

25    all to then visit preliminary injunction and have to decide if

1   it were favorable to the plaintiffs, yes, you have a strong

2   likelihood of prevailing, when, right now, I am not even

3   prepared to say that.

4        All right.  The hearing for November 4th is off.  We will

5   reset it in at an appropriate time.

6        Anything else?  Have a seat, folks.  Let me tell you a

7   couple other things.

8        Number one, it will help me, and I have put this burden

9   on the plaintiffs' counsel, to know specifically as to each

10  named plaintiff exactly what petitions, if any, were filed with

11  regard to bail review, and if there was more than one, all the

12  petitions.  No. 2, what the decision of the judge -- of the

13  judges was in each of those petitions.  Now, it may just be a

14  box that's checked that doesn't really help much, but if you

15  can give me a transcript of what the judge said, that might be

16  very helpful in terms of whether any of these plaintiffs belong

17  in court right now because I am not sure, as Mr. Cox points

18  out, whether there is an order, whether there is a referral

19  without an order.  I just don't know.  And some of this may

20  well have implications for one or more of the abstention

21  doctrines, and it just does, so there is that.

22       I have said pretty clearly today that I don't think that

23  the individual County defendants belong in the case anymore,

24  and it will be incorporated in my opinion in one form or

25  another that they are out of the case because they were only

1   sued in their official capacity.

2        Now, look, I mean, I don't know what's going on right now

3   with the County, whether the County is standing on its -- and I

4   am not saying this now as a matter of -- of prefacing where I

5   am going to come out in this case, but if it's a matter of the

6   County acting reasonably promptly to pursue Pretrial Release

7   decisions, it really should do so.  It's just not the kind of

8   thing, which everybody will agree, just isn't free-floating.

9   It can't be.  It's got to be a reasonable time.  And the County

10  better give some thought, just as a suggestion as to somebody

11  who is looking at this case, you got to get on top of this and

12  try and put some kind of time constraints on the responses, and

13  secondly, and most importantly, report the decision back to the

14  judge.  Don't just do it.  Let the judge know what the judge --

15  what's being done and the judge can sign off on it.

16       And then seems to me whatever the problems the County and

17  the judges might have to this point, you can forestall future

18  problems if the matter goes back to the judge and the judge

19  signs off.  And if it's a conditional kind of a referral, that

20  should be clear in the order that the judge makes.

21       These are all sort of simple things that I am hearing

22  here, that the judge says, This is an order of release; let me

23  know whether the conditions have been fulfilled in a reasonable

24  time.  Pretrial reports back and says, Yeah, here is what we

25  say; we don't think the person should be released.  The judge

1   says I agree or disagree; order.  That's easy and forestalls a

2   lot of problems.

3       Now, again, it doesn't really answer issues that I have

4   to answer right now, but it seems to me it forestalls a lot of

5   problems in future.

6       And I am not saying, candidly, I even have jurisdiction

7   in this case.  The most serious issue for the Court right now

8   is whether the Court has any business in this case at all.  But

9   as I say, as an observer, there certainly are ways that it

10  might be helpful to move this kind of issue along.

11      I don't disagree with the basic arguments that plaintiffs

12  make.  The only question is whether they are in a proper forum

13  for me to -- in the form of this lawsuit and in this particular

14  case for me to make those decisions, but I hope the County will

15  take some of this to heart and you won't be back here a year

16  from now arguing another case as to where we are.

17      But mainly the November 4th hearing is off.  I will get

18  to, right away, the -- the motion to dismiss and where we are,

19  and, as I say, the main impediment right now, the one that I

20  have to consider, is whether I have jurisdiction at all in the

21  case.

22      All right.  Thank you, everyone.

23          MS. JOHNSON:  Thank you, Your Honor.

24          MR. WAYNE:  Thank you, Your Honor.

25          MR. COX:  Thank you, Your Honor.

1      (The proceedings were concluded at 3:12 p.m.)

2                    C E R T I F I C A T E

3

4           I, Renee A. Ewing, an Official Court Reporter

5    for the United States District Court for the District of

6    Maryland, do hereby certify that the foregoing is a true and

7    correct transcript of the stenographically reported proceedings

8    taken on the date and time previously stated in the above

9    matter; that the testimony of witnesses and statements of the

10   parties were correctly recorded in machine shorthand by me and

11   thereafter transcribed under my supervision with computer-aided

12   transcription to the best of my ability; and that I am neither

13   of counsel nor kin to any party in said action, nor interested

14   in the outcome thereof.

15

16

                 Renee A  Ewing
17
                 Renee A. Ewing, RPR, RMR, CRR
18               Official Court Reporter
                 October 28, 2022
19

20

21

22

23

24

25

## 1

**1** [1] - 102:21
**10** [2] - 66:8, 88:23
**1013** [1] - 109:7
**104** [1] - 38:23
**11** [7] - 62:21, 62:22, 66:8, 67:15, 74:9, 74:12, 78:2
**11:00** [1] - 1:11
**12** [1] - 18:4
**12:53** [1] - 73:8
**12th** [2] - 18:8, 32:13
**13** [1] - 66:22
**1301** [1] - 2:4
**15** [1] - 65:24
**16** [1] - 66:22
**1601** [1] - 1:17
**17** [2] - 66:9, 66:19
**18** [2] - 14:12, 15:5
**19** [1] - 81:23
**1983** [7] - 65:18, 76:11, 82:19, 83:8, 91:18, 114:18
**1997** [1] - 97:5
**1st** [1] - 18:1

## 2

**2** [1] - 117:12
**20** [1] - 21:13
**200** [1] - 2:10
**20009** [1] - 1:18
**202** [1] - 1:18
**2021** [4] - 13:7, 13:12, 14:14, 88:23
**2022** [11] - 1:11, 14:12, 15:17, 15:21, 16:19, 17:12, 17:13, 17:24, 18:2, 60:6, 120:18
**20774** [1] - 2:5
**20th** [1] - 2:10
**21202** [1] - 2:11
**22** [1] - 66:19
**23** [1] - 62:5
**25** [2] - 1:11, 62:24
**26** [2] - 15:21, 62:24
**26th** [3] - 15:5, 15:17, 16:19
**277** [1] - 110:15
**27th** [2] - 13:7, 13:12
**28** [1] - 120:18
**28th** [3] - 13:14, 14:14, 15:6
**29th** [1] - 13:14
**2:00** [2] - 72:14, 73:7
**2:05** [1] - 73:8

## 3

**30** [4] - 17:12, 17:13, 17:23, 98:4
**301** [2] - 1:22, 2:6
**30th** [1] - 18:1
**31** [1] - 57:8
**344-3227** [1] - 1:22
**38** [1] - 37:21
**3:12** [1] - 120:1
**3d** [2] - 109:7, 110:15

## 4

**4-216** [1] - 54:11
**4-216(d)(2)(K** [1] - 48:11
**4-216.1** [1] - 26:3
**4-216.1(f** [1] - 112:22
**410** [1] - 2:11
**4100** [1] - 2:5
**482** [1] - 109:7
**49** [1] - 102:22
**4th** [4] - 115:25, 116:2, 117:4, 119:17

## 5

**5** [1] - 18:4
**535** [1] - 90:10
**576-6389** [1] - 2:11

## 6

**635** [1] - 90:10
**64-2** [1] - 29:4
**64-4** [2] - 29:3, 32:3
**66-1** [7] - 1:2, 17:16, 48:4, 57:8, 62:5, 81:23

## 7

**7** [1] - 12:2
**70-2** [3] - 4:16, 13:6, 66:4
**707** [1] - 110:15
**77** [2] - 78:2, 88:23

## 8

**8** [3] - 12:2, 17:17, 74:9
**800** [1] - 1:17
**84404975** [1] - 1:18
**8th** [4] - 116:3, 116:10, 116:17, 116:18

## 9

**9** [2] - 17:17, 109:7
**952** [1] - 97:4
**952-5225** [1] - 2:6
**960** [1] - 97:4

## A

**A.M** [1] - 1:11
**Aarons** [1] - 13:16
**ability** [1] - 120:12
**able** [8] - 9:3, 28:22, 42:1, 44:14, 63:23, 80:6, 84:17, 116:18
**abrogated** [1] - 88:9
**abrogation** [1] - 88:9
**absolute** [14] - 73:4, 73:14, 82:5, 82:6, 82:9, 82:12, 83:25, 86:20, 89:17, 106:1, 107:1, 107:4, 107:9
**absolutely** [9] - 17:4, 40:25, 42:20, 48:2, 56:24, 57:3, 97:9, 97:19, 106:7
**abstain** [1] - 60:21
**abstention** [18] - 21:1, 21:3, 23:17, 45:24, 45:25, 47:13, 47:17, 58:23, 59:13, 59:16, 60:12, 61:14, 64:17, 64:19, 64:25, 65:3, 65:23, 117:20
**abundantly** [1] - 74:25
**accept** [1] - 101:22
**accepted** [1] - 33:10
**access** [2] - 19:5
**accidentally** [1] - 102:7
**according** [2] - 70:5, 77:2
**accordingly** [1] - 98:20
**accountable** [1] - 115:2
**accuracy** [1] - 43:8
**accurate** [5] - 10:7, 21:7, 21:19, 59:5, 83:13
**accused** [1] - 93:23
**acknowledged** [1] - 61:13
**acknowledging** [1] - 49:25
**act** [12] - 44:24, 76:25, 77:2, 78:10, 78:13, 78:17, 84:4, 90:17, 96:20, 101:3, 101:4, 101:5

**acted** [5] - 80:3, 97:13, 97:15, 97:16, 101:15
**acting** [29] - 88:8, 89:19, 91:15, 91:19, 93:13, 93:23, 94:24, 95:12, 95:20, 95:21, 97:11, 98:16, 98:21, 100:17, 100:21, 101:20, 102:4, 102:5, 102:9, 102:12, 102:13, 103:23, 104:4, 104:13, 104:15, 104:18, 106:9, 118:6
**ACTION** [1] - 1:4
**action** [10] - 69:18, 79:17, 80:7, 81:15, 87:17, 89:18, 89:20, 92:20, 109:16, 120:13
**actions** [4] - 87:16, 90:23, 98:16, 113:22
**actors** [13] - 93:2, 94:16, 94:25, 95:1, 98:3, 98:15, 98:22, 99:8, 99:11, 99:12, 103:21, 104:21, 105:16
**acts** [5] - 78:15, 80:18, 83:14, 93:21, 98:12
**actual** [4] - 25:15, 96:11, 108:23, 110:18
**add** [4] - 12:9, 32:6, 32:9, 46:11
**additional** [2] - 34:18, 86:7
**address** [11] - 6:24, 13:20, 26:14, 29:15, 31:7, 33:3, 41:4, 49:6, 58:14, 105:11, 105:22
**addressed** [3] - 49:3, 61:18, 74:1
**addresses** [1] - 28:20
**addressing** [1] - 49:7
**adhering** [1] - 90:23
**adjudication** [1] - 60:11
**adjunct** [1] - 95:15
**admit** [2] - 67:16, 74:15
**adverse** [1] - 7:4
**AFFAIRS** [1] - 2:8
**affect** [2] - 58:10, 80:18
**affected** [1] - 78:10
**affecting** [1] - 58:15
**affidavit** [4] - 29:1, 32:3, 36:4

**affirmatively** [1] - 37:12
**afforded** [1] - 7:14
**afterwards** [1] - 12:15
**agencies** [1] - 88:7
**agree** [7] - 55:23, 66:9, 93:2, 93:17, 94:15, 118:8, 119:1
**agreed** [1] - 17:1
**agreement** [4] - 42:15, 42:17, 42:22
**ahead** [12] - 12:5, 13:21, 17:3, 36:6, 50:10, 60:2, 60:4, 65:7, 70:21, 71:7, 90:14, 94:19
**AIDED** [1] - 1:23
**aided** [1] - 120:11
**aiding** [1] - 81:9
**akin** [1] - 37:14
**al** [4] - 1:4, 1:7, 3:4, 3:5
**allegation** [1] - 97:12
**allegations** [13] - 6:4, 6:5, 33:9, 33:11, 33:23, 36:9, 69:6, 70:4, 71:4, 96:2, 101:21, 103:22, 104:7
**allege** [8] - 52:18, 53:4, 66:21, 86:18, 96:9, 104:2, 104:3, 114:24
**alleged** [9] - 9:4, 15:12, 23:10, 38:22, 41:21, 46:22, 47:4, 96:13, 96:17
**alleging** [12] - 23:10, 67:24, 79:19, 86:10, 87:17, 89:23, 91:12, 92:14, 92:15, 93:4, 114:1, 114:2
**Allen** [2] - 75:14, 75:17
**allow** [6] - 21:15, 29:24, 40:9, 40:12, 42:9, 114:11
**allowed** [1] - 27:23
**allows** [2] - 76:16, 91:19
**almost** [1] - 116:21
**Alves** [8] - 15:9, 16:10, 16:14, 22:1, 22:8, 22:10, 30:21, 30:22
**Alves'** [1] - 22:17
**amendment** [1] - 4:24
**Amendment** [34] - 73:3, 73:14, 73:15, 73:17, 76:11, 78:25, 79:7, 80:14, 81:19,

81:24, 82:7, 84:1, 84:24, 85:2, 86:20, 88:2, 88:5, 88:6, 88:10, 88:14, 89:2, 89:11, 89:13, 89:14, 89:16, 90:1, 90:20, 93:7, 98:6, 99:15, 103:20, 106:1, 106:3, 108:9

**amount** [4] - 58:13, 109:25, 110:23, 116:8

**analogous** [1] - 107:7

**analogy** [1] - 43:13

**analysis** [1] - 101:8

**AND** [1] - 1:14

**ANDREW** [1] - 2:4

**Andrew** [1] - 3:18

**answer** [14] - 9:2, 11:9, 16:25, 18:18, 19:15, 29:12, 32:11, 54:3, 54:18, 54:23, 55:4, 71:25, 119:3, 119:4

**Antrikan** [1] - 98:11

**anyway** [2] - 69:25, 106:21

**apologies** [2] - 60:3, 74:14

**apologize** [2] - 63:14, 70:14

**appeal** [10] - 6:20, 7:5, 7:11, 10:10, 20:20, 20:24, 47:4, 49:1, 57:25, 61:13

**appealed** [4] - 7:3, 109:11, 109:13, 109:14

**appeals** [6] - 6:17, 17:2, 17:5, 57:21, 109:5, 109:12

**appear** [2] - 71:4, 93:15

**appearance** [2] - 18:1, 18:3

**APPEARANCES** [2] - 1:12, 2:1

**appellate** [2] - 6:21, 17:2

**applicable** [4] - 21:3, 36:24, 114:21

**application** [1] - 23:11

**applied** [5] - 38:25, 58:2, 70:16, 107:4, 116:12

**applies** [19] - 33:15, 39:12, 48:6, 48:13, 59:1, 61:14, 79:23, 81:6, 82:6, 82:8, 82:9, 83:25, 88:14,

106:12, 106:14, 106:19, 108:15, 114:9

**apply** [33] - 6:5, 38:21, 59:16, 61:11, 61:22, 65:1, 72:18, 73:18, 74:2, 75:9, 76:16, 76:20, 79:24, 80:21, 81:10, 83:24, 85:13, 85:19, 86:21, 87:16, 88:15, 88:16, 88:18, 89:2, 89:17, 90:1, 99:15, 107:17, 107:21, 110:14

**applying** [2] - 57:7, 81:24

**appointments** [1] - 115:6

**approach** [1] - 86:14

**appropriate** [2] - 106:11, 117:5

**appropriately** [1] - 59:14

**approval** [2] - 43:15, 43:16

**approve** [1] - 44:25

**approving** [1] - 112:24

**arbitrariness** [1] - 23:12

**arbitrary** [4] - 12:19, 20:3, 39:11, 115:12

**arguably** [1] - 72:18

**argue** [9] - 7:25, 20:6, 37:23, 45:23, 64:4, 67:18, 89:4, 104:17, 108:1

**argued** [7] - 79:9, 98:3, 98:25, 99:5, 99:19, 99:23, 105:7

**argues** [1] - 93:7

**arguing** [4] - 47:15, 52:8, 54:6, 54:7, 73:10, 78:24, 79:2, 89:11, 89:12, 100:4, 100:5, 105:15, 119:16

**argument** [50] - 4:8, 8:1, 36:20, 40:1, 42:24, 45:5, 46:1, 46:10, 46:17, 51:21, 52:8, 66:3, 72:8, 73:16, 74:1, 76:10, 78:23, 79:4, 79:5, 79:12, 79:25, 80:12, 80:14, 81:11, 81:16, 81:18, 81:19, 82:8, 83:12, 84:24, 94:17, 96:19, 98:7, 98:9, 98:10, 99:6, 99:11, 100:1, 100:2,

100:15, 101:7, 105:2, 105:18, 108:11, 108:23, 110:13, 110:14, 111:2, 115:21, 115:23

**arguments** [15] - 5:19, 20:4, 20:12, 20:16, 21:2, 22:15, 37:15, 73:12, 73:13, 76:14, 79:7, 85:4, 103:11, 115:24, 119:11

**arrest** [6] - 11:4, 37:5, 40:8, 44:2, 44:3, 113:10

**arrested** [6] - 11:11, 13:6, 17:11, 17:23, 18:1, 44:1

**arrived** [1] - 83:13

**articulate** [2] - 51:5, 58:8

**articulated** [1] - 48:22

**articulates** [1] - 51:18

**aside** [6] - 10:25, 17:20, 39:14, 39:24, 93:9, 113:24

**assault** [2] - 13:8, 30:10

**assert** [1] - 66:10

**asserting** [1] - 103:19

**assigned** [2] - 16:12, 76:1

**assist** [2] - 17:16, 31:10

**assume** [2] - 27:20, 82:11

**assumed** [1] - 80:5

**assuming** [2] - 47:24, 71:7

**attached** [3] - 14:23, 25:14, 62:20

**attachment** [2] - 32:2, 32:3

**attacking** [1] - 48:7

**attempt** [1] - 49:1

**attempted** [2] - 20:10, 20:15

**attempting** [2] - 100:14, 102:6

**attend** [1] - 63:23

**attention** [2] - 11:21, 108:25

**attest** [1] - 20:8

**Attorney** [2] - 91:5, 106:15

**ATTORNEY** [1] - 2:8

**attorneys** [2] - 21:13, 97:17

**Attorneys** [1] - 45:6

**attorneys'** [1] - 65:14

**audio** [12] - 15:16, 16:5, 18:21, 21:12, 21:14, 21:18, 21:22, 21:24, 22:9, 22:11, 22:21

**August** [4] - 18:4, 18:8, 32:13, 60:7

**authorities** [1] - 10:21

**authority** [10] - 35:18, 35:21, 42:16, 45:4, 57:17, 58:4, 68:6, 77:23, 77:24, 103:18

**authorization** [6] - 34:11, 35:6, 37:21, 39:9, 52:25, 53:10

**authorize** [2] - 54:12, 54:14

**authorized** [8] - 16:3, 22:4, 37:8, 38:12, 39:7, 44:6, 55:6

**automatically** [3] - 30:6, 46:22, 55:13

**available** [2] - 18:24, 100:16

**Avenue** [1] - 1:17

**average** [5] - 29:4, 29:7, 29:9, 29:12, 37:20

**avoid** [1] - 59:12

**awarded** [2] - 75:17, 76:8

**aware** [3] - 6:19, 11:2, 17:4

**B**

**background** [1] - 26:5

**backlog** [1] - 113:8

**bail** [82] - 6:13, 6:18, 7:6, 7:17, 7:20, 8:13, 8:18, 9:21, 9:24, 10:3, 10:16, 10:17, 10:18, 11:6, 11:12, 11:24, 13:13, 14:3, 14:4, 14:11, 14:14, 14:15, 14:19, 14:20, 15:2, 15:4, 15:13, 15:16, 16:2, 16:19, 17:21, 18:4, 18:12, 19:7, 19:16, 20:5, 20:20, 22:18, 23:5, 23:13, 23:22, 24:9, 24:21, 30:7, 33:4, 34:3, 34:6, 34:7, 34:8, 34:9, 37:6, 43:9, 43:11, 43:14, 43:20, 44:13, 46:14, 46:15, 46:20, 49:13, 55:1, 55:14, 56:11, 56:15, 61:9, 61:12,

61:14, 61:19, 64:24, 86:7, 87:25, 94:21, 109:25, 110:19, 110:23, 111:1, 116:7, 117:11

**Baltimore** [1] - 2:11

**bar** [2] - 82:12, 87:7

**barred** [3] - 60:11, 60:25, 82:5

**bars** [1] - 88:6

**based** [11] - 38:19, 67:23, 82:21, 83:14, 86:1, 92:6, 103:20, 103:22, 112:14, 112:15

**basic** [2] - 30:6, 119:11

**basis** [9] - 31:5, 31:14, 40:21, 93:4, 94:1, 94:17, 103:12, 105:4, 105:5

**beating** [1] - 94:2

**became** [1] - 75:18

**become** [1] - 83:14

**becomes** [1] - 92:20

**BEFORE** [1] - 1:10

**beginning** [1] - 17:11

**behalf** [8] - 3:17, 3:19, 3:21, 3:23, 4:13, 5:17, 5:23, 63:20, 95:12, 95:20, 95:21, 104:4, 104:13, 104:16, 104:18

**belabor** [1] - 74:7

**belong** [8] - 92:21, 93:10, 94:12, 94:14, 96:5, 116:16, 117:16, 117:23

**belonged** [1] - 80:22

**bench** [1] - 110:17

**benefit** [1] - 100:19

**Bereano** [3] - 13:23, 75:2, 75:10

**best** [5] - 11:16, 13:4, 32:15, 120:12

**better** [3] - 6:2, 84:8, 118:10

**between** [13] - 14:7, 37:21, 69:5, 71:22, 74:4, 77:6, 77:7, 77:24, 85:23, 89:8, 90:3, 90:6

**beyond** [1] - 113:14

**Bielec** [1] - 67:14

**big** [1] - 25:18

**bit** [1] - 90:12

**boilerplate** [2] - 38:3, 38:5

**bond** [19] - 7:11, 7:13,

16:24, 19:3, 22:16, 22:19, 24:13, 24:23, 25:17, 30:16, 39:15, 39:17, 55:11, 55:18, 62:7, 75:13, 75:16, 113:18

**box** [5] - 18:16, 25:1, 25:16, 38:6, 117:14

**boxes** [3] - 30:25, 39:14, 47:2

**break** [5] - 58:19, 65:24, 72:13, 72:22, 79:12

**Bredar** [1] - 81:25

**brief** [5] - 50:6, 57:8, 70:24, 98:2, 98:4

**briefing** [1] - 53:9

**briefly** [2] - 58:24, 114:15

**briefs** [1] - 49:25

**bring** [1] - 108:25

**broad** [1] - 51:19

**brought** [6] - 11:6, 11:11, 22:1, 73:20, 109:3, 112:2

**Brown** [1] - 60:5

**burden** [1] - 117:8

**bureaucratic** [1] - 94:3

**business** [1] - 119:8

**Butler** [45] - 4:19, 5:13, 5:16, 5:19, 6:8, 6:9, 7:15, 8:4, 8:9, 8:23, 11:5, 11:10, 11:11, 11:23, 11:24, 12:2, 12:6, 13:2, 13:5, 13:6, 13:18, 13:25, 17:6, 17:7, 19:14, 19:19, 20:9, 22:6, 22:13, 25:10, 26:21, 29:6, 30:15, 36:13, 36:17, 45:20, 46:7, 46:13, 46:25, 49:13, 50:21, 66:16, 74:20, 75:24, 75:25

**Butler's** [4] - 6:23, 22:2, 22:8, 22:16

**buttresses** [1] - 81:15

**BY** [8] - 1:15, 1:15, 1:16, 1:16, 2:3, 2:4, 2:9, 2:9

## C

**California** [1] - 109:15

**candidly** [1] - 119:6

**cannot** [8] - 31:6, 41:11, 41:16, 44:21, 44:22, 95:22, 103:7, 116:6

**capable** [1] - 81:8

**capacities** [3] - 93:20, 94:10, 97:12

**capacity** [1] - 71:2, 71:5, 71:8, 82:8, 82:10, 82:11, 88:8, 89:20, 91:15, 91:17, 91:18, 91:20, 91:23, 91:25, 92:2, 92:7, 92:9, 92:17, 92:19, 92:23, 93:12, 93:13, 93:24, 94:8, 95:9, 95:10, 95:18, 95:19, 96:4, 96:21, 97:7, 98:15, 98:16, 98:22, 99:2, 101:11, 101:22, 101:24, 102:1, 102:3, 102:11, 102:15, 103:13, 103:16, 104:4, 105:18, 106:6, 118:1

**capture** [1] - 43:8

**careful** [2] - 52:21, 59:7

**Carolina** [2] - 57:7, 60:6

**carries** [1] - 51:19

**Carrington** [1] - 67:14

**carrying** [1] - 98:5

**case** [153] - 6:24, 6:25, 8:7, 9:3, 10:8, 11:2, 12:9, 12:22, 13:15, 13:17, 13:18, 13:24, 13:25, 14:8, 14:17, 16:11, 16:13, 16:16, 16:17, 17:18, 17:20, 18:10, 19:4, 19:14, 19:17, 20:2, 20:22, 20:23, 21:2, 22:1, 22:2, 22:3, 22:8, 22:12, 24:8, 25:25, 26:7, 27:13, 30:15, 33:3, 34:2, 36:13, 40:22, 45:10, 46:13, 46:25, 47:5, 47:19, 49:10, 52:13, 54:1, 54:8, 54:13, 54:21, 56:7, 57:5, 57:6, 59:15, 59:18, 60:5, 60:9, 60:23, 61:17, 64:21, 64:23, 69:6, 69:10, 69:14, 69:24, 70:2, 70:3, 70:12, 71:1, 72:12, 75:2, 75:3, 75:11, 75:12, 75:13, 75:15, 75:19, 75:20, 75:22, 75:25, 76:6, 76:20, 77:14, 77:15, 78:1, 79:15, 80:4, 80:6, 80:17,

80:22, 84:14, 85:14, 85:22, 85:23, 86:15, 88:22, 90:19, 90:21, 91:8, 91:21, 93:14, 94:13, 94:14, 95:4, 96:5, 96:25, 97:2, 97:3, 97:5, 97:11, 97:22, 98:24, 99:12, 99:16, 101:2, 101:21, 103:13, 105:5, 106:12, 107:9, 107:16, 107:18, 108:25, 108:8, 109:18, 109:19, 110:10, 110:11, 110:12, 110:16, 110:18, 111:8, 116:9, 117:23, 117:25, 118:5, 118:11, 119:7, 119:8, 119:14, 119:16, 119:21

**Case** [1] - 3:4

**cases** [47] - 10:15, 12:23, 18:13, 19:22, 20:7, 24:22, 47:3, 48:23, 53:21, 54:23, 56:11, 57:2, 59:2, 59:3, 60:11, 61:8, 61:12, 69:8, 69:10, 69:14, 69:15, 76:13, 78:18, 78:19, 78:21, 79:3, 80:19, 81:1, 81:2, 81:3, 84:14, 84:15, 85:16, 85:17, 85:18, 85:24, 86:6, 86:8, 91:4, 107:3, 107:6, 108:12, 108:16, 110:2, 113:8, 114:21

**casual** [1] - 70:15

**CD** [1] - 18:21

**center** [1] - 55:8

**certain** [19] - 6:7, 7:7, 10:6, 33:19, 35:23, 39:15, 52:15, 58:13, 68:14, 72:3, 72:10, 80:3, 80:19, 83:4, 94:21, 98:18, 111:11, 114:8, 116:7

**certainly** [12] - 36:20, 45:22, 46:25, 52:18, 64:11, 68:14, 68:17, 70:7, 72:18, 89:9, 102:12, 119:9

**certainty** [1] - 116:21

**certification** [1] - 69:21

**certify** [2] - 81:5,

120:6

**cetera** [1] - 11:12

**challenge** [5] - 7:12, 8:24, 20:21, 53:13, 91:1

**challenged** [4] - 5:2, 34:9, 110:24

**challenges** [1] - 7:14

**challenging** [6] - 40:22, 87:2, 109:9, 113:24, 113:25

**change** [4] - 86:17, 86:23, 87:1

**changed** [2] - 31:17, 39:4

**changing** [1] - 39:11

**character** [1] - 98:13

**characterize** [5] - 24:10, 34:3, 48:9, 56:21

**characterized** [1] - 57:17

**charged** [3] - 6:9, 9:13, 76:2

**charges** [11] - 17:8, 24:14, 24:17, 24:19, 25:14, 26:4, 27:4, 39:5, 39:8, 43:17, 44:12

**Charles** [1] - 111:12

**chart** [14] - 4:17, 13:6, 66:4, 66:10, 66:11, 66:15, 67:5, 69:7, 74:16, 90:4, 107:20

**check** [6] - 16:20, 18:16, 19:1, 25:1, 26:17, 62:16

**checkboxes** [1] - 38:5

**checked** [7] - 18:14, 25:16, 30:25, 38:6, 47:2, 117:14

**checking** [3] - 14:22, 21:11, 39:14

**checklist** [1] - 31:13

**Chief** [1] - 81:25

**chose** [1] - 57:1

**chosen** [2] - 16:24, 18:22

**circling** [1] - 108:9

**circuit** [17] - 9:18, 13:19, 14:1, 14:4, 14:9, 14:12, 14:18, 15:3, 15:4, 16:7, 18:15, 75:4, 75:21, 80:5, 80:19, 81:14

**Circuit** [6] - 61:15, 61:16, 61:17, 91:22, 98:11

**circular** [1] - 43:25

**circumstances** [6] -

7:13, 61:11, 85:9, 85:11, 85:12, 114:9

**citations** [1] - 36:3

**cite** [3] - 73:19, 107:9, 108:13

**cited** [10] - 61:8, 78:2, 88:23, 95:4, 97:3, 106:23, 107:2, 109:1, 110:12

**cites** [1] - 97:5

**citing** [2] - 66:18, 66:22

**City** [1] - 78:1

**Civil** [1] - 3:4

**civil** [2] - 48:25, 78:9

**CIVIL** [1] - 1:4

**claim** [6] - 33:16, 60:25, 67:25, 81:8, 82:3, 99:7

**claiming** [2] - 9:11, 42:18

**claims** [27] - 19:11, 21:4, 21:5, 33:16, 36:23, 53:7, 58:14, 66:10, 66:13, 67:8, 67:10, 68:25, 69:11, 69:19, 70:9, 71:2, 75:1, 76:7, 82:8, 82:10, 82:11, 82:12, 83:18, 88:11, 96:18, 99:3, 108:23

**clarification** [4] - 4:9, 48:3, 63:17, 65:6

**clarify** [1] - 19:10

**clarity** [1] - 73:22

**Clark** [5] - 13:15, 13:24, 75:2, 75:10, 75:23

**Clark-Edwards** [4] - 13:24, 75:2, 75:10, 75:23

**class** [10] - 39:3, 69:18, 69:19, 69:21, 79:17, 81:5, 87:16, 87:17, 87:24

**Clayton** [1] - 13:16

**clear** [35] - 6:8, 16:11, 16:12, 21:25, 23:2, 47:16, 49:21, 50:2, 50:5, 50:7, 50:9, 53:4, 64:22, 64:23, 65:10, 65:11, 68:22, 71:16, 71:17, 72:7, 74:15, 74:25, 84:21, 88:6, 90:21, 90:25, 93:12, 94:7, 97:2, 99:24, 106:25, 115:14, 115:20, 115:23, 118:20

**clearly** [10] - 34:22,

36:21, 48:6, 48:13, 49:5, 59:6, 83:11, 107:5, 108:17, 117:22
**Clerk** [1] - 4:16
**CLERK** [1] - 3:3
**clients** [2] - 83:5, 102:10
**closed** [7] - 69:8, 69:10, 69:15, 76:25, 85:24, 107:16, 107:18
**clothed** [1] - 78:7
**co** [1] - 23:15
**co-counsel** [1] - 23:15
**Cobb** [2] - 67:13, 67:14
**collateral** [3] - 45:23, 61:9, 61:20
**collectively** [2] - 28:3, 59:18
**coming** [3] - 113:6, 113:7, 113:8
**commence** [1] - 78:9
**comment** [4] - 22:17, 34:1, 58:25, 106:14
**comments** [1] - 25:4
**commission** [1] - 13:9
**Commission** [1] - 90:10
**committee** [1] - 86:25
**common** [1] - 57:13
**communicated** [2] - 28:10, 28:17
**community** [5] - 26:5, 28:21, 29:16, 41:2, 114:12
**comparison** [1] - 101:8
**complain** [1] - 106:8
**complaining** [1] - 35:9
**complaint** [28] - 6:4, 22:3, 33:24, 34:7, 36:8, 38:23, 39:10, 50:6, 52:19, 53:5, 66:17, 66:22, 71:3, 71:6, 73:22, 81:25, 82:4, 82:11, 93:13, 96:8, 97:21, 99:21, 100:6, 102:21, 103:23, 104:2, 104:6
**complete** [1] - 82:12
**complied** [1] - 58:13
**comply** [2] - 68:3, 68:19
**comports** [1] - 40:6
**computer** [1] - 120:11
**COMPUTER** [1] - 1:23
**computer-aided** [1] - 120:11

**COMPUTER-AIDED** [1] - 1:23
**concede** [3] - 5:12, 65:13, 65:16, 65:17, 67:15, 68:25, 69:11, 73:17, 74:8, 84:25, 88:12, 88:13, 101:20
**conceded** [4] - 50:8, 65:9, 67:1, 67:8
**concedes** [1] - 92:4
**conceding** [2] - 68:23, 89:18
**concern** [3] - 12:12, 21:1, 40:1
**concerned** [2] - 33:22, 58:7
**concerns** [4] - 10:15, 19:21, 20:11, 20:15
**concession** [1] - 65:19
**concessions** [1] - 66:2
**concluded** [2] - 58:11, 120:1
**conclusion** [1] - 37:18
**conditional** [6] - 35:2, 40:2, 51:4, 52:7, 52:8, 118:19
**conditions** [11] - 28:5, 28:22, 29:23, 35:24, 39:15, 40:11, 51:23, 52:15, 110:21, 114:11, 118:23
**conduct** [1] - 98:14
**conducting** [1] - 87:25
**conducts** [2] - 30:24, 34:15
**confer** [1] - 23:15
**conference** [2] - 62:5, 64:23
**confirm** [2] - 66:9, 67:10
**confronted** [1] - 68:18
**confronting** [1] - 7:14
**confronts** [1] - 7:20
**confused** [1] - 102:23
**confusing** [2] - 99:20, 104:7
**Congress** [1] - 88:9
**connect** [1] - 85:19
**Connecticut** [1] - 1:17
**connection** [5] - 77:24, 78:13, 90:18, 91:2, 105:6
**conscience** [2] - 112:11, 114:20
**consequences** [1] - 98:14
**consider** [4] - 20:12, 52:3, 52:5, 119:20

**consideration** [1] - 26:6
**considerations** [1] - 21:3
**considered** [1] - 114:6
**considering** [1] - 20:16
**consistent** [2] - 63:13, 83:5
**consists** [1] - 83:8
**constantly** [1] - 39:1
**constitutes** [1] - 64:10
**Constitution** [10] - 49:19, 60:10, 63:14, 66:22, 87:24, 98:12, 106:10, 111:15, 111:16, 114:3
**constitutional** [18] - 20:11, 20:15, 20:19, 22:15, 37:23, 40:12, 51:3, 51:5, 51:7, 72:4, 94:5, 100:11, 100:12, 100:24, 102:25, 111:4, 111:7, 116:7
**constitutionally** [1] - 20:22
**constrained** [1] - 114:8
**constraints** [2] - 114:9, 118:12
**consuming** [1] - 115:12
**contact** [5] - 31:8, 36:12, 37:12, 38:7, 38:9
**contacted** [1] - 31:4
**contacts** [1] - 28:21
**contemplates** [2] - 60:13, 83:8
**contends** [1] - 108:11
**contested** [2] - 52:2, 52:17
**context** [7] - 61:15, 79:23, 95:25, 104:18, 104:19, 112:9, 113:5
**continued** [2] - 14:16, 15:5
**Continued** [1] - 2:1
**continues** [1] - 17:6
**continuing** [1] - 69:5
**contrary** [1] - 22:13
**contrast** [1] - 82:2, 111:8
**control** [6] - 29:17, 113:9, 113:10, 113:11, 113:14
**controlled** [1] - 60:23
**controlling** [1] - 60:13

**convenient** [1] - 70:12
**conversation** [2] - 25:18, 102:16
**convinced** [1] - 40:11
**copies** [1] - 25:14
**copy** [7] - 14:22, 25:6, 25:15, 26:19, 31:18, 31:24, 110:17
**corners** [1] - 71:3
**corpus** [3] - 109:5, 109:11, 114:17
**correct** [37] - 4:10, 4:12, 6:10, 8:17, 8:20, 9:14, 9:15, 9:17, 10:11, 10:12, 14:4, 16:21, 18:4, 18:7, 18:17, 19:8, 25:4, 31:22, 31:23, 33:8, 34:24, 36:5, 37:4, 40:23, 40:25, 42:14, 49:23, 71:14, 84:9, 86:2, 93:6, 96:23, 97:1, 97:16, 101:18, 106:20, 120:7
**Corrections** [1] - 28:13
**correctly** [2] - 73:1, 120:10
**corresponding** [1] - 67:12
**counsel** [23] - 3:8, 20:5, 21:21, 23:15, 30:2, 31:2, 33:7, 37:12, 58:25, 59:7, 62:1, 62:6, 62:11, 62:12, 64:22, 65:8, 65:13, 101:19, 106:13, 114:16, 117:9, 120:13
**Counsel** [1] - 3:24
**counted** [1] - 67:20
**counties** [1] - 111:11
**counting** [1] - 68:24
**country** [3] - 61:13, 88:24, 94:22
**county** [9] - 44:4, 93:19, 94:23, 94:25, 95:6, 95:7, 99:12, 99:16, 111:10
**COUNTY** [3] - 1:7, 2:2, 2:3
**County** [137] - 3:5, 3:17, 3:19, 5:21, 5:24, 7:22, 24:2, 27:1, 27:8, 27:11, 28:14, 32:17, 32:21, 34:13, 40:17, 41:1, 41:9, 41:15, 41:16, 41:20, 41:24, 42:5,

42:9, 42:25, 43:5, 43:10, 43:15, 43:16, 44:2, 44:13, 44:19, 45:8, 50:14, 50:22, 51:2, 51:9, 53:5, 53:8, 53:11, 54:10, 54:15, 55:7, 55:21, 56:13, 57:10, 58:5, 68:8, 72:19, 76:4, 92:16, 92:21, 92:22, 92:23, 92:24, 93:2, 93:4, 93:7, 93:16, 94:8, 94:10, 94:16, 95:10, 95:15, 95:25, 96:3, 96:4, 96:10, 96:16, 96:22, 97:4, 97:5, 97:7, 97:8, 97:10, 97:12, 97:17, 97:18, 98:2, 98:3, 98:4, 98:20, 99:1, 99:2, 99:4, 99:7, 99:24, 101:10, 101:11, 101:13, 101:16, 101:22, 102:3, 102:5, 102:8, 102:13, 102:18, 103:1, 103:7, 103:8, 103:12, 103:13, 103:16, 103:17, 103:23, 103:24, 103:25, 104:3, 104:22, 104:24, 105:3, 105:4, 105:7, 105:9, 105:10, 105:16, 105:19, 111:12, 111:19, 113:14, 115:4, 115:10, 115:17, 116:4, 117:23, 118:3, 118:6, 118:9, 118:16, 119:14
**County's** [1] - 115:1
**couple** [4] - 21:23, 40:23, 64:6, 117:7
**course** [8] - 21:5, 27:4, 60:15, 64:14, 102:8, 113:3, 115:13
**court** [109] - 6:21, 7:2, 7:3, 7:18, 10:11, 10:25, 12:10, 13:19, 13:22, 14:1, 14:4, 14:8, 14:9, 14:12, 14:15, 14:19, 15:3, 15:4, 16:7, 18:15, 18:25, 19:8, 20:13, 20:16, 20:19, 20:21, 20:23, 21:6, 40:21, 44:3, 44:9, 44:24, 46:9, 46:15, 47:7, 47:12, 48:7, 48:12, 48:24, 48:25, 49:1,

49:2, 49:6, 50:24, 51:15, 51:17, 53:24, 56:4, 56:14, 56:23, 57:4, 57:20, 57:21, 57:23, 57:25, 58:1, 58:16, 59:1, 59:4, 59:9, 59:10, 62:8, 68:17, 70:1, 72:17, 75:4, 75:5, 75:21, 75:22, 80:3, 80:5, 80:7, 80:20, 80:24, 80:25, 81:4, 81:12, 81:14, 81:25, 84:21, 84:22, 88:7, 89:21, 90:12, 92:11, 94:25, 99:16, 103:8, 103:9, 104:20, 106:4, 106:10, 106:11, 109:13, 109:17, 109:20, 109:21, 112:13, 115:25, 116:17, 117:17

**COURT** [281] - 1:1, 1:22, 3:2, 3:7, 3:14, 3:24, 4:7, 4:12, 4:22, 5:6, 5:8, 5:10, 5:15, 5:20, 5:25, 6:12, 6:17, 6:20, 7:1, 7:10, 7:25, 8:8, 8:11, 8:16, 8:18, 8:25, 9:16, 9:18, 9:21, 9:25, 10:2, 10:8, 10:13, 11:14, 11:19, 12:4, 12:12, 13:10, 13:12, 13:21, 14:2, 14:7, 14:13, 14:25, 15:8, 15:11, 15:18, 15:20, 15:22, 16:6, 16:10, 16:14, 16:18, 17:1, 17:6, 17:10, 17:20, 17:23, 18:3, 18:6, 18:10, 18:23, 19:6, 19:13, 19:21, 20:17, 21:7, 21:20, 22:25, 23:5, 23:9, 23:16, 24:7, 24:25, 25:3, 25:6, 25:9, 25:20, 25:23, 26:21, 27:2, 27:6, 27:17, 27:21, 28:1, 28:11, 28:23, 29:4, 29:25, 30:23, 31:19, 31:24, 32:5, 32:9, 32:19, 32:22, 33:2, 33:11, 34:19, 34:24, 35:10, 35:13, 35:23, 36:2, 36:6, 36:13, 37:1, 38:8, 39:13, 39:23, 39:25, 41:25, 42:11, 42:15, 44:15, 45:11, 46:3, 46:12, 47:18, 48:15,

48:17, 49:10, 49:21, 50:2, 50:9, 50:20, 51:8, 51:20, 52:7, 52:20, 53:1, 53:14, 54:4, 54:17, 54:25, 55:10, 56:1, 56:7, 56:20, 56:25, 57:9, 58:17, 58:18, 58:19, 58:21, 58:22, 59:13, 59:21, 60:1, 60:4, 60:22, 61:23, 62:10, 62:19, 62:21, 62:23, 62:25, 63:5, 63:8, 63:25, 64:7, 64:15, 64:19, 65:2, 65:7, 65:15, 65:19, 65:23, 66:5, 67:18, 67:22, 68:7, 68:11, 68:20, 69:2, 69:16, 69:23, 70:17, 71:7, 71:19, 72:2, 72:9, 72:23, 73:5, 73:7, 73:9, 74:11, 76:10, 76:18, 76:24, 77:9, 77:13, 77:18, 78:5, 78:23, 79:25, 80:12, 80:24, 81:11, 82:16, 82:24, 83:3, 83:11, 84:2, 84:11, 84:16, 84:22, 85:1, 85:7, 85:11, 85:15, 85:25, 86:9, 86:13, 86:24, 87:2, 88:1, 89:11, 89:18, 90:7, 90:12, 91:11, 92:5, 92:9, 92:20, 93:3, 93:9, 94:1, 94:9, 94:12, 94:18, 95:5, 95:14, 95:24, 96:7, 96:19, 96:24, 97:15, 98:7, 98:23, 100:8, 100:20, 101:2, 101:9, 101:13, 101:24, 102:2, 103:10, 103:15, 104:1, 104:9, 104:13, 104:17, 105:1, 106:3, 106:8, 106:16, 106:20, 106:24, 107:12, 107:22, 107:24, 108:3, 108:6, 108:20, 109:13, 109:19, 109:23, 110:3, 112:3, 112:6, 112:14, 112:19, 112:25, 113:19, 114:5, 115:18, 115:21, 116:1, 116:9, 116:14

**Court** [104] - 3:1, 3:4,

3:6, 11:15, 13:5, 13:23, 15:12, 15:15, 21:15, 21:16, 22:6, 22:22, 22:23, 22:24, 23:19, 24:8, 26:15, 35:18, 35:21, 38:3, 38:11, 38:16, 40:4, 40:8, 40:11, 40:15, 42:21, 44:20, 45:8, 46:9, 47:19, 47:23, 47:25, 48:21, 49:3, 51:4, 52:18, 53:23, 56:18, 56:19, 56:22, 57:5, 57:11, 57:14, 58:1, 58:3, 58:8, 59:8, 60:5, 60:10, 60:13, 60:17, 60:21, 60:24, 61:18, 61:25, 62:5, 62:6, 63:2, 65:9, 65:20, 66:4, 67:5, 68:2, 69:3, 69:13, 71:24, 72:3, 75:8, 75:9, 78:11, 83:4, 84:17, 84:20, 84:22, 87:13, 88:22, 91:22, 97:2, 97:5, 97:6, 97:9, 97:19, 102:25, 104:23, 106:13, 107:3, 107:14, 107:17, 108:25, 109:2, 109:10, 109:15, 110:3, 110:16, 112:12, 112:22, 115:14, 116:24, 119:7, 119:8, 120:4, 120:5, 120:18

**Court's** [3] - 14:24, 23:14, 61:21

**COURTS** [1] - 2:8

**Courts** [3] - 83:17, 88:24, 107:3

**courts** [7] - 6:18, 17:2, 61:12, 61:13, 78:3, 85:21, 94:22

**COVID** [1] - 113:7

**Cox** [27] - 3:20, 4:13, 5:17, 10:14, 10:24, 13:1, 21:9, 32:7, 47:14, 50:2, 53:14, 58:22, 61:24, 62:23, 64:15, 65:3, 67:20, 68:20, 69:17, 70:18, 72:8, 73:10, 80:1, 81:17, 88:2, 105:23, 117:17

**COX** [115] - 2:9, 3:20, 4:13, 5:17, 11:13, 11:15, 12:1, 12:7, 13:3, 13:11, 13:13,

13:22, 14:6, 14:10, 14:22, 15:7, 15:10, 15:14, 15:19, 15:21, 15:23, 16:9, 16:11, 16:15, 16:20, 17:4, 17:7, 17:15, 17:22, 17:25, 18:5, 18:8, 18:17, 18:24, 19:9, 21:10, 21:23, 23:2, 23:8, 23:14, 32:8, 32:11, 32:20, 32:25, 47:16, 48:2, 48:16, 50:5, 53:18, 54:6, 54:20, 55:2, 55:16, 56:5, 56:10, 56:24, 57:1, 58:24, 59:15, 59:25, 60:3, 60:5, 61:25, 62:12, 62:16, 62:20, 62:22, 62:24, 64:17, 65:5, 65:8, 65:22, 66:1, 66:6, 68:21, 69:4, 70:22, 71:14, 71:24, 72:21, 73:1, 73:6, 73:11, 74:13, 76:15, 76:19, 77:4, 77:12, 77:17, 77:23, 78:6, 81:22, 83:16, 84:12, 84:20, 84:23, 85:6, 85:9, 85:12, 85:16, 86:4, 86:12, 86:16, 86:25, 88:4, 89:13, 89:25, 105:25, 106:7, 106:11, 106:22, 107:1, 107:13, 107:23, 119:25

**Cox's** [3] - 4:25, 83:11, 108:11

**craft** [4] - 58:9, 69:13, 75:9, 107:14

**crafted** [1] - 50:17

**create** [1] - 111:6

**creates** [1] - 43:25

**crime** [7] - 9:14, 13:9, 13:10, 13:12, 26:7, 113:8, 113:9

**criminal** [29] - 6:23, 6:24, 6:25, 7:8, 17:18, 17:20, 24:13, 24:20, 25:24, 26:4, 27:16, 31:10, 55:22, 59:10, 59:11, 60:11, 60:15, 60:18, 61:5, 61:10, 61:20, 64:25, 69:14, 78:9, 81:3, 84:14, 84:15, 86:6, 107:18

**criteria** [19] - 26:3, 26:11, 28:6, 28:25, 29:21, 35:20, 38:21,

38:24, 38:25, 39:11, 45:1, 45:2, 52:9, 111:20, 111:22, 111:23, 111:24, 111:25

**cross** [1] - 67:5

**CRR** [2] - 1:22, 120:17

**crucial** [2] - 53:7, 115:7

**CRUIKSHANK** [2] - 1:16, 3:10

**Cruikshank** [2] - 3:8, 3:10

**crux** [2] - 53:12, 115:9

**crystal** [2] - 21:25, 90:21

**curbed** [1] - 84:4

**current** [1] - 4:18

**custody** [4] - 4:10, 4:15, 28:16, 30:5

**CUTLER** [1] - 1:14

**Cutting** [1] - 3:12

**CUTTING** [2] - 1:16, 3:12

**D**

**D.P** [3] - 41:18, 63:21, 75:20

**DAKOTA** [1] - 1:16

**damages** [15] - 49:11, 49:22, 49:24, 50:1, 50:15, 50:22, 65:11, 65:12, 66:19, 66:23, 66:25, 74:16, 84:7, 87:19, 102:20

**DANIEL** [1] - 1:15

**date** [4] - 15:18, 15:20, 16:22, 120:8

**Davis** [2] - 69:9, 107:16

**Davis'** [1] - 107:17

**days** [3] - 20:2, 30:18, 37:21

**DC** [1] - 1:18

**deal** [1] - 23:22

**dealing** [3] - 24:17, 109:25, 114:22

**debated** [1] - 94:23

**decades** [1] - 114:4

**December** [1] - 14:18

**decide** [14] - 9:1, 28:4, 34:15, 34:17, 40:9, 53:11, 53:25, 70:6, 115:4, 116:9, 116:16, 116:18, 116:24, 116:25

**decided** [2] - 22:18, 69:21

**deciding** [2] - 28:7,

115:10
**decision** [43] - 7:8, 7:18, 7:21, 9:7, 10:9, 11:7, 12:14, 16:1, 16:2, 24:10, 24:21, 30:21, 34:3, 34:13, 38:14, 39:18, 40:5, 40:14, 40:17, 40:19, 45:4, 45:5, 47:1, 49:8, 51:12, 51:15, 51:19, 53:11, 55:14, 56:3, 56:20, 56:22, 57:3, 57:4, 57:17, 58:4, 58:5, 81:13, 112:4, 115:9, 117:12, 118:13
**decision-making** [1] - 53:11
**decisions** [8] - 48:21, 49:4, 53:15, 88:25, 94:4, 113:6, 118:7, 119:14
**declaration** [15] - 50:14, 62:3, 68:18, 68:19, 71:20, 72:6, 80:17, 82:1, 82:23, 83:5, 83:6, 87:24, 90:24, 102:24, 108:15
**declarative** [5] - 50:13, 79:16, 82:20, 83:8, 87:8
**declaratory** [22] - 49:17, 50:3, 67:3, 68:1, 68:4, 68:14, 68:15, 69:3, 69:13, 71:13, 71:16, 71:23, 75:7, 75:9, 76:17, 83:10, 83:18, 85:18, 89:15, 91:19, 107:6, 107:10
**declare** [2] - 49:18, 72:3
**deem** [2] - 9:6, 10:21
**Defend** [1] - 103:2
**defendant** [27] - 8:6, 8:16, 13:15, 13:16, 15:9, 15:23, 18:7, 23:5, 24:13, 24:21, 28:7, 31:1, 31:10, 39:16, 70:2, 70:3, 72:16, 75:15, 80:9, 85:20, 90:3, 92:24, 93:16, 96:1, 96:22, 99:11
**DEFENDANT** [1] - 2:2
**defendant's** [5] - 18:13, 25:25, 54:10, 55:22, 98:2
**Defendants** [2] - 1:8,

103:3
**DEFENDANTS** [1] - 2:7
**defendants** [100] - 3:14, 3:17, 3:19, 3:21, 3:23, 4:14, 4:17, 5:18, 11:16, 13:24, 18:11, 29:5, 32:6, 48:5, 49:17, 49:20, 50:3, 50:12, 50:14, 52:1, 52:16, 53:8, 55:21, 58:5, 59:18, 59:23, 60:1, 65:11, 65:14, 66:11, 66:12, 66:25, 67:3, 67:6, 67:7, 67:9, 67:11, 67:12, 67:15, 67:24, 68:2, 68:9, 69:6, 69:12, 69:14, 71:25, 72:10, 72:19, 73:13, 73:20, 73:24, 73:25, 74:3, 74:6, 74:16, 74:24, 75:1, 75:5, 76:21, 76:22, 77:7, 77:24, 78:20, 79:15, 80:23, 82:15, 82:21, 83:2, 83:9, 83:20, 85:21, 87:22, 90:6, 91:4, 92:16, 93:5, 93:11, 93:15, 94:8, 94:14, 98:4, 98:20, 99:7, 99:23, 100:3, 100:7, 100:8, 100:17, 100:18, 100:19, 101:23, 102:15, 102:18, 103:13, 105:3, 113:11, 116:4, 117:23
**defendants'** [5] - 54:11, 57:10, 66:7, 79:12, 115:16
**Defender** [3] - 31:4, 31:16, 45:7
**defender** [12] - 7:8, 15:25, 19:5, 20:9, 20:14, 21:17, 22:1, 22:7, 31:8, 32:25, 46:8, 86:5
**defenders** [3] - 16:23, 78:18, 78:21
**Defending** [1] - 13:15
**defense** [4] - 7:9, 61:5, 100:16, 101:19
**defenses** [1] - 100:19
**defer** [2] - 34:12, 68:5
**deferred** [1] - 7:22
**deferring** [1] - 58:4
**deficient** [1] - 23:11
**defies** [1] - 57:13

**definitely** [1] - 26:24
**definition** [1] - 77:22
**degree** [5] - 6:9, 13:8, 30:10, 76:2
**delayed** [1] - 37:25
**delaying** [1] - 44:6
**delays** [1] - 20:1
**delegate** [1] - 100:10
**delegated** [1] - 100:3
**delegation** [2] - 100:21, 101:1
**demonstrates** [1] - 90:5
**denial** [2] - 7:11, 7:13
**denials** [2] - 6:18, 17:3
**denied** [4] - 20:21, 38:23, 41:15, 111:4
**Denton** [1] - 75:23
**deny** [5] - 41:9, 41:14, 104:9, 104:13, 104:15
**denying** [5] - 15:13, 39:15, 43:6, 43:16
**Department** [1] - 28:13
**DEPUTY** [1] - 3:3
**derivative** [1] - 91:6
**derived** [1] - 111:15
**desides** [1] - 115:17
**designed** [1] - 59:12
**despite** [1] - 39:6
**detailed** [1] - 17:17
**detain** [1] - 49:19
**detained** [38] - 4:21, 5:1, 5:3, 5:11, 5:12, 6:1, 6:7, 14:14, 23:6, 28:15, 33:18, 36:19, 36:22, 36:24, 36:25, 38:17, 39:3, 39:5, 40:10, 40:19, 41:20, 43:10, 51:6, 57:14, 66:17, 66:18, 66:21, 79:18, 79:20, 83:22, 84:16, 87:18, 87:23, 108:16, 114:24, 115:11, 115:13, 116:6
**detainee** [8] - 28:15, 28:19, 28:22, 29:14, 31:18, 36:11, 37:11, 57:13
**detainees** [3] - 28:16, 28:17, 114:22
**detainer** [39] - 27:1, 27:5, 27:7, 27:14, 32:17, 32:19, 32:20, 40:24, 41:3, 41:4, 41:5, 41:9, 41:11, 41:12, 41:17, 41:19, 41:22, 41:23, 42:2,

42:6, 42:10, 42:13, 42:15, 42:18, 42:23, 43:1, 43:2, 43:11, 43:17, 43:21, 44:3, 44:9, 44:11, 44:14, 45:2, 45:12, 63:24, 76:4
**detainers** [6] - 42:17, 43:24, 44:16, 44:19, 44:22, 45:4
**detaining** [1] - 51:2
**detention** [27] - 5:4, 7:19, 7:22, 7:23, 12:19, 14:16, 17:6, 17:7, 27:24, 40:7, 40:15, 41:6, 42:9, 50:16, 51:3, 51:10, 55:7, 61:4, 61:9, 61:20, 64:24, 79:23, 94:22, 103:6, 109:9, 115:14, 115:16
**determination** [2] - 32:23, 70:8
**determinations** [1] - 46:11
**determine** [4] - 8:22, 29:10, 37:10, 40:18
**determines** [2] - 31:21, 93:24
**determining** [1] - 90:11
**difference** [3] - 69:5, 71:20, 72:2
**different** [13] - 8:14, 11:3, 15:5, 28:3, 76:10, 79:4, 80:12, 95:5, 95:16, 96:19, 98:7, 99:13, 108:1
**difficult** [1] - 16:23
**difficulty** [2] - 79:11, 80:2
**direct** [1] - 50:25
**directed** [2] - 61:3, 68:14
**direction** [3] - 52:17, 99:13, 116:15
**directly** [1] - 27:8
**disagree** [2] - 119:1, 119:11
**disapprove** [1] - 44:25
**discovery** [2] - 97:23, 112:16
**discuss** [4] - 50:17, 64:12, 64:13
**discussed** [4] - 36:8, 60:19, 64:22, 75:24
**discussing** [2] - 63:21, 81:24
**discussion** [1] - 6:2
**dismiss** [11] - 11:17,

26:16, 29:2, 33:9, 57:11, 64:11, 66:7, 71:15, 99:22, 108:23, 119:18
**dismissal** [1] - 101:22
**dismissed** [3] - 67:9, 67:13, 67:16
**dismissing** [1] - 97:9
**dispositive** [1] - 45:25
**distill** [1] - 80:1
**distinction** [2] - 71:21, 92:3
**district** [21] - 7:17, 9:18, 9:20, 13:22, 14:1, 14:8, 14:15, 18:15, 19:7, 49:1, 58:1, 61:12, 75:4, 75:5, 75:22, 80:3, 80:7, 80:20, 80:24, 80:25, 81:12
**DISTRICT** [3] - 1:1, 1:2, 1:10
**District** [7] - 13:23, 57:7, 60:6, 97:4, 110:16, 120:5
**divested** [1] - 13:22
**Division** [11] - 34:13, 34:15, 37:13, 37:22, 38:21, 39:12, 41:13, 43:6, 44:5, 44:8, 44:10
**DIVISION** [2] - 1:3, 2:8
**Division's** [2] - 37:18, 41:7
**DOC** [6] - 24:24, 27:15, 28:16, 29:20, 35:5, 35:21
**docket** [3] - 14:23, 16:12, 16:20
**dockets** [1] - 25:15
**doctrine** [6] - 48:20, 59:14, 60:12, 65:23, 79:22, 90:11
**doctrines** [2] - 21:1, 117:21
**documents** [3] - 39:1, 46:19, 47:14
**done** [10] - 12:21, 40:5, 47:2, 47:3, 65:4, 65:21, 83:4, 84:13, 114:13, 118:15
**door** [1] - 111:25
**DORR** [1] - 1:14
**doubtful** [1] - 69:23
**down** [10] - 3:7, 28:5, 59:9, 79:8, 79:12, 90:12, 90:13, 94:13, 95:2, 107:20
**DOWNER** [2] - 1:15,

3:11
**Downer** [1] - 3:11
**dozen** [1] - 93:5
**drawn** [1] - 7:23
**Drive** [1] - 2:4
**drug** [1] - 9:14
**due** [10] - 9:5, 75:3, 103:6, 108:24, 110:14, 111:6, 114:4, 114:9, 114:22
**duplicative** [1] - 116:16
**duration** [1] - 12:16
**during** [9] - 9:13, 13:9, 37:9, 37:14, 38:15, 60:10, 63:18, 102:8, 115:13
**duty** [5] - 78:7, 93:23, 100:4, 100:11, 100:24
**dynamic** [1] - 94:2

**E**

**easier** [3] - 4:1, 97:23, 97:24
**easy** [1] - 119:1
**ECF** [12] - 4:16, 12:1, 13:6, 17:16, 29:3, 48:4, 62:5, 78:2, 81:23, 88:23, 102:21
**Edwards** [5] - 13:15, 13:24, 75:2, 75:10, 75:23
**effect** [5] - 12:18, 47:25, 55:14, 58:9, 70:11
**effectively** [1] - 30:25
**effort** [1] - 86:1
**efforts** [1] - 33:19
**eight** [2] - 66:8, 66:14
**either** [22] - 4:4, 10:8, 19:14, 19:17, 21:8, 24:19, 25:7, 25:10, 27:13, 31:1, 31:21, 47:5, 53:24, 63:13, 78:9, 80:15, 83:20, 85:20, 92:12, 95:9, 111:22, 113:17
**electronic** [5] - 26:2, 26:12, 27:25, 55:20, 110:21
**electronically** [1] - 55:25
**Eleventh** [35] - 61:15, 73:3, 73:13, 73:15, 73:17, 76:11, 78:25, 79:6, 80:14, 81:19, 81:24, 82:7, 83:25, 84:24, 85:1, 86:20,

88:2, 88:5, 88:6, 88:10, 88:14, 89:2, 89:11, 89:13, 89:16, 89:25, 90:19, 93:7, 98:6, 99:15, 103:20, 106:1, 106:3, 108:9
**eligibility** [2] - 31:22, 35:7
**eligible** [15] - 26:1, 28:19, 29:10, 33:20, 33:21, 35:4, 35:5, 35:17, 35:19, 37:24, 38:16, 40:9, 41:8, 44:9, 115:5
**ELIZABETH** [1] - 1:16
**Elizabeth** [1] - 3:10
**embraced** [1] - 69:2
**emerges** [1] - 47:10
**employee** [3] - 99:9, 99:10, 103:16
**employees** [14] - 29:20, 30:8, 96:10, 96:16, 97:7, 97:12, 99:24, 103:23, 103:24, 104:3, 104:4, 104:10, 104:11, 105:10
**employer** [1] - 105:19
**employment** [4] - 26:6, 29:15, 97:14, 103:24
**end** [2] - 3:8, 34:12
**ended** [1] - 109:21
**enforce** [1] - 78:10
**enforcement** [6] - 78:7, 78:13, 90:19, 91:3, 93:21, 93:22
**enforcing** [1] - 91:7
**enjoin** [3] - 68:7, 68:12, 78:3
**enjoined** [1] - 51:2
**enshrined** [1] - 114:3
**ensure** [3] - 65:13, 73:2, 102:7
**enter** [1] - 31:11
**entertain** [1] - 99:10
**entire** [2] - 37:24, 38:15
**entirely** [1] - 21:18
**entitled** [3] - 21:4, 93:7, 98:5
**entity** [1] - 105:9
**equally** [1] - 36:24
**equitable** [5] - 49:12, 61:1, 66:20, 87:7, 113:13
**equivalent** [2] - 48:12, 89:20
**especially** [3] - 16:12, 79:23, 112:12

**ESQUIRE** [8] - 1:15, 1:15, 1:16, 1:16, 2:3, 2:4, 2:9, 2:9
**essence** [13] - 40:21, 43:9, 43:13, 49:18, 51:3, 51:18, 57:16, 59:8, 87:14, 102:7, 103:7, 108:11, 110:7
**essentially** [7] - 3:25, 34:12, 48:8, 53:10, 56:2, 56:14, 63:12
**established** [5] - 36:21, 79:21, 87:6, 114:19, 114:23
**establishes** [1] - 111:9
**et** [5] - 1:4, 1:7, 3:4, 3:5, 11:12
**evaluate** [4] - 55:21, 104:20, 104:24
**evaluated** [4] - 25:25, 30:4, 62:8, 100:12
**evaluates** [1] - 104:22
**evaluation** [3] - 24:24, 35:2, 37:9
**event** [3] - 19:6, 47:8, 63:25
**events** [1] - 60:14
**eventually** [1] - 115:4
**evidence** [1] - 40:10
**Ewing** [4] - 1:22, 120:4, 120:16, 120:17
**Ex** [20] - 73:19, 74:1, 76:15, 76:16, 76:19, 77:4, 78:11, 86:21, 88:16, 88:17, 89:1, 89:4, 90:11, 90:15, 91:9, 95:22, 98:17, 106:12, 106:14
**exact** [1] - 81:5
**exactly** [19] - 12:25, 33:24, 41:18, 45:9, 50:18, 53:23, 56:5, 59:11, 60:16, 61:7, 73:5, 79:11, 80:25, 83:19, 86:8, 91:9, 109:8, 114:7, 117:10
**examine** [1] - 85:16
**example** [12] - 12:15, 22:6, 33:17, 39:2, 55:19, 59:2, 59:16, 81:23, 86:24, 93:21, 95:4, 108:17
**examples** [1] - 106:23
**excellent** [1] - 39:21
**except** [2] - 89:3, 92:11
**exception** [15] - 36:21, 71:9, 73:18, 79:22,

81:6, 86:21, 87:8, 88:16, 88:17, 89:1, 89:4, 90:19, 92:6, 108:13, 115:15
**exercised** [1] - 23:20
**exhausted** [6] - 109:3, 109:4, 109:11, 109:16, 110:6, 110:8
**exhaustion** [2] - 114:16, 114:18
**Exhibit** [2] - 62:21, 62:22
**exhibit** [2] - 14:23, 26:16
**expedited** [1] - 62:7
**experience** [2] - 46:14, 46:15
**explain** [2] - 53:3, 98:9
**explained** [2] - 52:19, 78:11, 90:4
**explaining** [1] - 91:22
**explanation** [1] - 39:6
**explicit** [1] - 82:19
**explicitly** [1] - 39:13
**extends** [1] - 101:4
**extensive** [1] - 20:1
**extent** [3] - 45:21, 94:23, 95:12
**extremely** [1] - 112:11

**F**

**face** [1] - 53:4
**facility** [1] - 27:23
**fact** [20] - 19:25, 30:2, 39:6, 40:1, 51:22, 52:19, 67:17, 70:3, 77:25, 78:12, 78:14, 80:18, 89:3, 94:25, 96:13, 97:17, 99:7, 101:11, 101:15, 108:11
**factor** [1] - 41:9
**factors** [1] - 116:12
**facts** [4] - 59:17, 96:9, 96:11, 96:13
**factual** [1] - 6:3
**failed** [2] - 96:18, 102:10
**fails** [1] - 96:8
**fair** [3] - 16:18, 87:3, 113:13
**faith** [1] - 91:24
**fall** [2] - 53:18, 88:25
**falls** [1] - 57:6
**false** [1] - 77:16
**faltering** [1] - 9:6
**Falwell** [2] - 78:1
**family** [4] - 26:5, 28:21, 29:15, 31:9

**far** [4] - 3:8, 11:2, 13:1, 97:22
**fashion** [4] - 40:6, 40:16, 40:20, 114:14
**fatal** [1] - 9:3
**favor** [1] - 83:5
**favorable** [2] - 16:3, 117:1
**fear** [1] - 26:10
**February** [4] - 14:4, 14:12, 14:18, 15:5
**Federal** [1] - 78:3
**federal** [30] - 7:2, 20:13, 20:23, 21:4, 21:5, 46:15, 47:6, 49:1, 50:24, 57:20, 59:9, 60:9, 61:1, 68:19, 72:17, 81:4, 82:3, 84:21, 84:22, 88:7, 89:21, 92:11, 99:16, 106:4, 106:11, 109:17, 109:20, 109:21
**fees** [1] - 65:14
**Feldman** [21] - 48:5, 48:13, 48:17, 48:20, 48:24, 49:5, 51:18, 56:2, 56:3, 57:6, 57:8, 57:9, 57:19, 57:20, 57:24, 58:2, 58:7, 59:1, 59:12, 60:20, 87:14
**felony** [1] - 13:10
**few** [1] - 37:1
**Fifth** [1] - 61:16
**file** [2] - 86:5, 99:21
**filed** [19] - 4:16, 6:16, 8:14, 10:5, 14:21, 17:8, 19:18, 23:4, 36:20, 36:23, 36:25, 66:17, 69:10, 79:21, 80:22, 109:4, 109:5, 109:16, 117:10
**files** [2] - 32:25, 48:25
**filing** [5] - 4:16, 17:16, 19:2, 25:13, 69:9
**filings** [2] - 12:10, 53:24
**fill** [2] - 12:24, 26:17
**fills** [1] - 117:14
**final** [21] - 7:18, 7:21, 39:18, 40:14, 40:17, 45:15, 48:24, 48:25, 49:2, 49:6, 49:8, 49:9, 51:17, 56:17, 57:21, 57:23, 58:3, 58:5, 58:6, 105:25, 107:13
**finally** [5] - 31:21, 50:6, 50:7, 107:13,

108:20
**fine** [1] - 67:22
**finished** [1] - 64:15
**firearm** [2] - 9:13, 13:9
**first** [25] - 4:9, 6:8, 8:3, 10:17, 11:24, 13:8, 14:11, 17:24, 18:1, 30:5, 30:10, 31:7, 46:21, 46:23, 55:14, 66:16, 67:11, 68:13, 79:13, 80:11, 82:20, 90:1, 93:19, 110:22
**fit** [2] - 51:21, 92:6
**Five** [1] - 66:15
**five** [8] - 66:16, 68:23, 68:24, 74:17, 74:19, 76:7, 76:21, 77:8
**flat** [1] - 22:19
**flips** [1] - 115:16
**floating** [1] - 118:8
**Floor** [1] - 2:10
**floor** [1] - 4:8
**flow** [1] - 66:3
**focus** [1] - 5:25
**fold** [1] - 69:25
**folks** [4] - 3:24, 73:9, 116:6, 117:6
**follow** [6] - 14:6, 14:15, 16:6, 46:22, 47:1, 47:3
**follow-on** [1] - 47:1
**follow-up** [1] - 14:15
**following** [3] - 19:24, 104:20, 113:1
**footnote** [5] - 66:7, 66:8, 66:14, 70:25, 74:9
**FOR** [4] - 1:2, 1:13, 2:2, 2:7
**foregoing** [1] - 120:6
**forestall** [1] - 118:17
**forestalls** [2] - 119:1, 119:4
**form** [15] - 18:13, 25:1, 26:15, 26:16, 30:23, 31:13, 31:21, 31:24, 38:3, 38:4, 38:5, 47:2, 67:2, 117:24, 119:13
**forms** [2] - 7:16, 18:16
**formulaic** [1] - 46:16
**forth** [3] - 28:24, 47:22, 103:10
**forum** [1] - 119:12
**forward** [1] - 47:19
**four** [5] - 66:20, 67:6, 67:10, 71:3, 74:17
**Fourth** [1] - 61:17, 91:22, 98:10
**frame** [1] - 24:6

**framing** [1] - 100:1
**frankly** [2] - 12:8, 48:5
**FRAZIER** [1] - 1:4
**Frazier** [9] - 3:4, 27:14, 36:16, 36:19, 46:5, 66:16, 75:1, 75:10, 96:14
**Frazier's** [1] - 75:12
**free** [3] - 41:22, 115:10, 118:8
**free-floating** [1] - 118:8
**Friends** [1] - 88:22
**front** [3] - 4:15, 63:15, 97:6
**fulfilled** [1] - 118:23
**function** [1] - 98:5
**functionary** [1] - 92:23
**fundamental** [2] - 114:2, 114:7
**future** [19] - 60:11, 60:15, 70:10, 76:25, 78:17, 79:16, 80:18, 82:13, 84:4, 84:8, 84:19, 85:13, 86:3, 87:23, 89:10, 90:25, 108:15, 118:17, 119:5

## G

**gaps** [1] - 12:24
**gather** [1] - 30:13
**gathering** [1] - 30:20
**general** [4] - 12:17, 28:13, 72:6, 93:19
**GENERAL** [1] - 2:8
**General** [1] - 91:6
**generalizes** [1] - 96:11
**generally** [5] - 5:18, 18:17, 53:19, 55:4, 93:17
**Generals** [1] - 106:15
**genesis** [1] - 57:24
**gentlemen** [1] - 7:4
**GEORGE'S** [3] - 1:7, 2:2, 2:3
**George's** [20] - 3:5, 24:1, 27:8, 28:14, 41:1, 41:8, 41:15, 41:16, 41:20, 41:24, 42:5, 42:9, 42:25, 43:5, 43:10, 43:15, 44:1, 44:13, 68:8, 97:4
**Gerstein** [4] - 45:23, 60:24, 61:21
**Gerstein's** [1] - 61:14
**given** [12] - 11:7,

12:19, 20:3, 20:4, 31:1, 33:21, 33:23, 55:7, 68:1, 100:24, 103:5, 113:4
**globally** [1] - 54:21
**governed** [1] - 110:19
**grant** [1] - 35:2
**granted** [4] - 35:18, 35:21, 40:25, 69:3
**granting** [1] - 39:16
**gratuitously** [1] - 113:15
**Gray** [3] - 96:12, 96:14, 103:3
**great** [4] - 51:25, 53:22, 58:21, 86:16
**GREENBELT** [1] - 1:11
**guarantee** [2] - 116:17, 116:18
**guess** [7] - 29:8, 34:5, 54:17, 62:25, 65:15, 71:21, 105:7
**guidance** [2] - 109:2, 110:11
**guide** [1] - 28:6
**guidelines** [2] - 55:24, 84:18

## H

**habeas** [3] - 109:5, 109:11, 114:17
**HALE** [1] - 1:14
**half** [2] - 59:17, 93:5
**halt** [1] - 82:2
**hand** [2] - 25:4, 107:8
**handbook** [1] - 28:15
**handgun** [1] - 17:12
**handle** [1] - 44:22
**handwritten** [1] - 31:12
**happy** [14] - 10:6, 12:2, 12:3, 13:20, 22:21, 33:6, 45:22, 45:25, 46:1, 48:19, 50:17, 88:5, 92:3, 101:21
**hard** [2] - 12:25, 29:11
**harm** [1] - 87:17
**harms** [1] - 80:23
**Harris** [1] - 61:2
**hate** [1] - 74:7
**health** [2] - 17:9, 76:3
**hear** [23] - 4:1, 8:11, 10:14, 13:1, 21:16, 31:20, 33:22, 47:17, 72:15, 72:25, 73:3, 76:13, 79:5, 79:8, 80:13, 85:22, 94:18,

95:25, 98:8, 99:10, 99:14, 108:6, 115:25
**heard** [10] - 8:14, 10:4, 34:19, 61:16, 64:5, 75:15, 75:19, 76:5, 85:23, 105:24
**hearing** [44] - 3:6, 8:18, 9:21, 10:5, 10:18, 14:12, 15:17, 19:11, 23:3, 23:5, 24:13, 30:8, 32:13, 32:14, 33:4, 34:7, 34:8, 34:9, 37:6, 40:21, 45:20, 49:14, 55:1, 56:15, 61:4, 62:7, 63:19, 64:11, 68:21, 73:23, 75:16, 77:17, 79:1, 80:11, 80:12, 99:6, 115:25, 116:14, 116:20, 116:22, 117:4, 118:21, 119:17
**HEARING** [1] - 1:9
**hearings** [18] - 7:17, 7:21, 8:13, 9:24, 10:3, 10:18, 12:10, 13:13, 18:12, 19:7, 20:5, 20:10, 20:20, 37:15, 54:5, 56:11, 63:13, 86:7
**heart** [1] - 119:15
**heck** [1] - 69:25
**hedging** [1] - 24:4
**Heffron** [1] - 67:13
**held** [6] - 24:22, 27:24, 30:16, 32:23, 76:2, 115:2
**help** [6] - 12:20, 28:22, 46:12, 63:18, 117:8, 117:14
**helpful** [4] - 11:15, 46:3, 117:16, 119:10
**hereby** [1] - 120:6
**Hernandez** [3] - 66:16, 75:13, 75:17
**herself** [1] - 86:2
**high** [1] - 91:6
**high-level** [1] - 91:6
**higher** [5] - 6:18, 10:10, 20:20, 106:15, 109:13
**higher-up** [1] - 106:15
**highest** [3] - 6:21, 59:1, 59:4
**himself** [1] - 86:2
**history** [4] - 17:18, 17:21, 24:20, 26:5
**hoc** [1] - 87:11
**hold** [5] - 42:5, 42:9, 42:19, 43:12, 52:4

**holding** [4] - 41:6, 43:1, 61:21, 83:15
**Holland** [2] - 110:15, 112:2
**home** [5] - 26:14, 27:24, 29:14, 31:7, 35:5
**honor** [4] - 42:21, 42:22, 42:23
**Honor** [222] - 3:11, 3:12, 3:13, 3:16, 3:18, 3:20, 3:22, 4:6, 4:11, 4:13, 4:23, 5:9, 5:14, 5:17, 5:24, 6:11, 6:14, 6:19, 6:22, 7:7, 7:12, 8:5, 8:21, 8:24, 9:15, 9:17, 9:20, 10:1, 10:6, 10:12, 11:13, 12:1, 12:3, 12:7, 13:3, 13:11, 13:19, 14:10, 14:22, 15:7, 15:10, 15:14, 16:11, 16:16, 16:21, 17:4, 17:15, 17:25, 18:5, 18:9, 18:17, 18:21, 19:1, 19:9, 20:8, 20:25, 21:10, 21:13, 21:23, 22:20, 23:2, 23:8, 24:12, 25:5, 29:11, 32:12, 32:16, 33:1, 33:6, 34:6, 34:21, 34:25, 36:5, 36:7, 39:21, 40:4, 40:25, 42:20, 43:24, 44:18, 45:21, 46:1, 46:8, 47:16, 48:3, 48:12, 48:16, 48:19, 49:15, 49:18, 50:11, 50:17, 50:25, 51:16, 51:25, 52:16, 53:18, 54:2, 54:8, 54:23, 55:17, 56:12, 56:24, 57:16, 58:8, 58:24, 59:6, 59:15, 60:3, 60:16, 60:21, 60:23, 61:7, 61:17, 61:25, 62:1, 62:14, 62:16, 62:22, 62:24, 63:4, 63:7, 63:10, 63:17, 64:4, 64:13, 64:18, 64:21, 65:5, 65:16, 65:22, 66:1, 66:2, 66:14, 67:6, 67:17, 67:20, 67:23, 68:21, 69:1, 69:7, 69:18, 69:21, 70:15, 70:22, 70:25, 71:17, 71:24, 72:7, 72:21, 73:2, 73:6, 73:11, 73:16,

74:7, 74:13, 74:23, 75:22, 76:16, 76:20, 77:5, 77:12, 78:2, 78:6, 78:15, 79:10, 79:17, 80:10, 80:16, 81:22, 82:18, 83:6, 83:16, 84:1, 84:10, 84:20, 85:14, 86:16, 87:5, 88:4, 90:8, 90:15, 91:16, 92:1, 92:3, 92:8, 93:1, 93:6, 93:17, 94:15, 94:20, 95:11, 96:23, 97:1, 98:1, 98:8, 99:18, 101:6, 101:18, 101:19, 102:16, 104:7, 105:25, 106:7, 106:12, 106:22, 107:2, 107:13, 107:21, 108:7, 108:8, 108:15, 108:19, 112:5, 112:17, 115:1, 115:23, 116:3, 116:11, 119:23, 119:24, 119:25

**Honor's** [2] - 20:25, 68:6
**HONORABLE** [1] - 1:10
**Honorable** [1] - 13:16
**honoring** [1] - 43:1
**hope** [2] - 68:17, 119:14
**hour** [1] - 59:17
**house** [1] - 115:6
**Humphrey** [1] - 109:6

### I

**idea** [2] - 70:4, 70:11
**identify** [1] - 103:23
**identifying** [1] - 96:16
**ignore** [1] - 42:16
**III** [1] - 55:18
**illegally** [1] - 57:14
**immediate** [1] - 64:1
**immediately** [3] - 63:2, 63:22, 99:3
**imminently** [1] - 93:12
**immunity** [70] - 47:20, 47:21, 65:25, 66:3, 71:9, 72:7, 72:17, 73:3, 73:4, 73:13, 73:14, 73:15, 73:17, 76:11, 76:14, 79:1, 79:7, 80:14, 81:19, 81:20, 81:24, 82:5, 82:7, 82:9, 82:12,

83:25, 84:1, 84:24, 85:2, 85:3, 85:4, 85:8, 85:13, 86:20, 87:6, 87:9, 88:9, 88:10, 88:14, 89:12, 89:14, 89:17, 90:1, 90:20, 93:8, 98:6, 98:19, 99:15, 100:6, 100:22, 101:4, 103:20, 105:16, 106:1, 107:1, 107:5, 107:10, 108:10
**impediment** [1] - 119:19
**impetus** [1] - 27:4
**implementation** [1] - 72:6
**implicate** [2] - 47:13, 49:5
**implication** [1] - 22:20
**implications** [1] - 117:20
**important** [5] - 11:1, 13:19, 39:22, 45:15, 78:14
**importantly** [1] - 118:13
**impression** [1] - 6:4
**IN** [1] - 1:1
**inappropriate** [1] - 100:21
**inappropriately** [1] - 101:15
**Inc** [1] - 90:9
**inclination** [1] - 84:4
**inclined** [2] - 64:2, 70:17
**include** [2] - 62:3, 101:25
**included** [2] - 62:4, 102:14
**includes** [3] - 38:5, 55:9, 61:15
**including** [5] - 5:19, 6:15, 93:21, 107:3, 108:16
**incorporated** [1] - 117:24
**incorrect** [1] - 63:5
**indicates** [1] - 29:25
**indicted** [1] - 13:18
**individual** [52] - 9:22, 30:2, 33:17, 42:19, 47:21, 53:21, 53:25, 54:1, 56:11, 57:1, 71:2, 71:5, 74:19, 82:9, 82:11, 86:15, 86:19, 91:12, 91:13, 91:17, 91:23, 92:2, 92:16, 92:22, 93:10,

93:11, 93:12, 93:14, 93:20, 93:24, 94:14, 95:6, 95:15, 95:18, 95:20, 95:25, 98:14, 98:19, 98:21, 99:3, 101:10, 101:14, 101:24, 101:25, 103:12, 103:13, 105:3, 105:4, 105:16, 105:17, 111:17, 117:23
**individually** [8] - 92:16, 94:4, 96:9, 96:24, 97:10, 101:16, 102:14, 104:3
**individuals** [14] - 4:10, 11:5, 19:17, 43:1, 51:10, 91:9, 92:25, 93:4, 95:9, 96:4, 96:5, 104:22, 105:10, 111:13
**indulgence** [2] - 14:24, 23:14
**ineligibility** [1] - 31:22
**ineligible** [8] - 26:18, 29:22, 31:13, 31:15, 35:16, 35:17, 41:21, 96:14
**inflicted** [1] - 91:2
**inform** [1] - 28:6
**information** [19] - 24:15, 24:16, 29:14, 29:19, 29:21, 30:7, 30:14, 30:20, 30:22, 31:7, 31:12, 38:4, 38:7, 38:9, 38:10, 38:18, 39:17, 40:5, 40:8
**inherently** [4] - 36:21, 79:22, 81:1, 81:6
**initial** [13] - 8:6, 11:17, 14:15, 18:3, 25:13, 28:18, 30:5, 30:24, 34:8, 37:6, 37:21, 73:20, 81:23
**inject** [1] - 60:18
**injunction** [20] - 50:16, 50:18, 61:2, 63:11, 63:16, 64:5, 64:10, 72:5, 82:14, 83:1, 83:9, 103:1, 103:2, 111:3, 115:24, 116:12, 116:19, 116:21, 116:25
**injunctions** [2] - 87:7, 103:3
**injunctive** [11] - 71:10, 71:17, 71:23, 76:17,

82:3, 82:13, 82:17, 84:7, 116:1, 116:4
**inmate** [3] - 28:14, 109:8, 110:24
**input** [1] - 26:9
**inquired** [1] - 37:2
**inquiring** [1] - 45:12
**inquiry** [1] - 57:19
**insofar** [1] - 70:7
**instance** [4] - 20:14, 67:11, 82:20, 82:25
**instead** [2] - 7:22, 21:16
**interest** [1] - 29:6
**interested** [3] - 45:21, 46:19, 120:13
**interesting** [3] - 83:12, 109:1, 109:6
**interfere** [2] - 23:19, 64:24
**interfering** [1] - 47:25
**interim** [2] - 14:21, 58:4
**interject** [1] - 60:18
**interpreted** [1] - 53:6
**interstate** [3] - 42:15, 42:17, 42:22
**intervenes** [1] - 107:25
**intervention** [1] - 61:1
**interview** [5] - 28:18, 28:20, 30:24, 36:11, 37:11
**interviewed** [9] - 30:2, 30:3, 30:6, 30:18, 30:19, 36:17, 37:3, 37:5, 37:7
**involve** [1] - 9:1
**involved** [2] - 45:7, 47:7
**involvement** [3] - 34:18, 34:23, 37:19
**involves** [4] - 9:2, 36:11, 58:4
**involving** [3] - 7:15, 7:16, 26:8
**Israni** [1] - 63:20
**Israni's** [1] - 22:5
**issue** [27] - 7:20, 11:1, 19:21, 22:18, 23:16, 26:24, 26:25, 34:10, 40:24, 42:2, 45:15, 47:18, 52:10, 61:5, 63:21, 63:24, 68:13, 68:15, 69:21, 72:10, 75:18, 99:1, 107:17, 109:24, 110:18, 119:7, 119:19
**issued** [5] - 8:5, 18:12, 25:16, 39:8, 103:8

82:3, 82:13, 82:17, 84:7, 116:1, 116:4
**issues** [18] - 4:8, 7:3, 10:21, 12:15, 19:23, 20:6, 20:19, 22:16, 23:12, 45:14, 47:9, 47:10, 47:24, 58:23, 61:8, 65:2, 94:21, 119:3
**issuing** [2] - 52:24, 115:8
**itself** [4] - 49:9, 60:18, 96:3, 106:4
**IV** [8] - 2:9, 26:1, 26:12, 30:12, 35:19, 35:23, 55:19

### J

**jail** [6] - 30:6, 31:4, 35:8, 40:18, 42:7, 113:18
**jailer** [1] - 94:24
**JAMES** [1] - 2:9
**James** [1] - 3:22
**January** [1] - 14:18
**Jeffrey** [2] - 29:2, 96:12
**JEREMY** [1] - 1:16
**Jeremy** [1] - 3:12
**Jersey** [1] - 110:16
**job** [3] - 45:3, 100:4, 111:19
**JOHNSON** [68] - 2:3, 3:16, 4:6, 4:11, 5:23, 24:3, 24:12, 25:2, 25:5, 25:8, 25:12, 25:21, 25:24, 26:23, 27:3, 27:10, 27:19, 27:22, 28:9, 28:12, 29:1, 29:11, 30:4, 31:3, 31:23, 32:1, 34:25, 35:12, 35:15, 36:1, 36:5, 44:18, 63:4, 63:17, 96:6, 96:8, 96:23, 97:1, 97:16, 99:18, 100:9, 100:23, 101:6, 101:12, 101:18, 102:16, 103:14, 103:22, 104:6, 104:11, 104:15, 104:19, 108:2, 108:4, 108:7, 108:22, 109:14, 109:21, 109:24, 110:5, 112:5, 112:8, 112:17, 112:21, 113:3, 115:20, 115:22, 119:23
**Johnson** [17] - 3:15, 3:17, 5:21, 5:22,

11:10, 23:24, 32:10,
34:19, 34:24, 38:20,
44:17, 96:1, 98:24,
99:14, 107:24,
108:21, 115:18
**join** [1] - 86:25
**Jr** [1] - 67:13
**JUDGE** [1] - 1:10
**Judge** [86] - 3:21,
3:23, 4:14, 4:17,
5:18, 8:5, 11:16,
13:14, 13:16, 13:24,
15:8, 15:9, 15:25,
16:7, 16:10, 16:13,
16:14, 18:6, 18:7,
18:8, 19:10, 19:12,
22:1, 22:2, 22:8,
22:9, 22:10, 22:11,
22:12, 22:17, 23:3,
30:17, 30:20, 30:22,
48:5, 49:16, 50:12,
54:10, 58:18, 65:11,
65:14, 66:11, 66:12,
66:25, 67:3, 67:6,
67:7, 67:9, 67:11,
67:12, 67:15, 67:24,
68:2, 69:12, 71:25,
72:19, 73:13, 73:20,
73:24, 73:25, 74:3,
74:5, 74:16, 75:1,
75:2, 75:5, 75:14,
75:17, 75:23, 76:5,
76:21, 76:22, 77:7,
77:24, 78:20, 79:15,
80:22, 81:25, 82:15,
85:20, 87:22, 88:22,
90:6
**judge** [88] - 8:8, 8:9,
8:14, 8:16, 8:19,
9:16, 9:19, 9:20,
10:4, 10:9, 10:19,
12:14, 15:23, 15:24,
16:6, 16:8, 16:9,
18:13, 20:12, 20:17,
20:22, 21:12, 24:9,
24:13, 25:15, 26:19,
26:20, 29:22, 29:25,
30:20, 31:15, 34:2,
34:20, 35:10, 35:14,
37:19, 39:7, 39:13,
39:19, 44:25, 45:3,
47:5, 51:22, 51:23,
54:19, 55:13, 57:1,
67:21, 68:17, 68:19,
69:20, 75:14, 75:16,
75:19, 76:1, 76:5,
77:10, 77:11, 77:15,
78:19, 80:5, 80:7,
80:24, 80:25, 81:12,
82:1, 83:23, 85:23,

86:2, 87:12, 90:13,
101:3, 103:9,
111:24, 117:12,
117:15, 118:14,
118:15, 118:18,
118:20, 118:22,
118:25
**judge's** [1] - 110:22
**Judges** [5] - 13:23,
67:13, 75:2, 75:10,
75:23
**judges** [61] - 8:3, 9:4,
10:3, 20:5, 34:9,
48:8, 48:12, 49:6,
49:22, 49:24, 51:9,
53:16, 54:12, 60:8,
60:9, 68:3, 68:8,
68:12, 68:14, 68:16,
68:24, 70:8, 70:11,
71:3, 71:4, 75:6,
75:22, 76:8, 76:25,
77:1, 78:21, 79:3,
80:2, 80:3, 81:2,
81:24, 82:13, 82:17,
83:18, 83:21, 84:3,
84:19, 85:22, 86:19,
87:20, 87:21, 89:9,
90:22, 91:1, 91:14,
91:19, 98:18,
100:22, 100:23,
106:5, 110:20,
117:13, 118:17
**judgment** [20] - 49:2,
49:9, 49:18, 51:17,
56:17, 56:18, 57:21,
58:3, 58:6, 58:15,
68:2, 68:14, 68:15,
79:16, 81:5, 83:8,
83:10, 90:24
**judgments** [1] - 48:24
**JUDICIAL** [2] - 2:7,
2:8
**judicial** [43] - 34:18,
34:23, 37:14, 61:4,
73:4, 73:14, 79:1,
79:7, 80:14, 81:20,
82:5, 82:6, 82:9,
82:12, 83:25, 85:2,
85:3, 85:4, 85:7,
85:12, 86:20, 87:6,
87:9, 88:25, 89:12,
89:14, 89:17, 91:18,
91:20, 91:22, 91:25,
92:1, 98:5, 103:20,
105:15, 106:1,
107:1, 107:4, 107:9,
108:10, 112:23,
114:10, 114:13
**Judicial** [12] - 49:20,
82:21, 83:1, 83:9,

100:3, 100:7, 100:8,
100:17, 100:18,
100:19, 102:18,
113:11
**July** [9] - 14:5, 15:5,
15:6, 15:17, 15:21,
16:19, 18:1, 18:4,
20:10
**jump** [5] - 4:4, 7:2,
19:13, 30:13, 71:7
**jumping** [1] - 103:10
**June** [4] - 17:11,
17:13, 17:23, 18:1
**jurisdiction** [35] -
13:23, 13:25, 21:5,
23:20, 27:10, 41:3,
42:6, 42:10, 42:12,
42:18, 42:23, 43:2,
43:22, 44:10, 45:7,
45:14, 47:19, 47:23,
47:25, 60:20, 60:21,
75:5, 75:6, 75:11,
75:21, 79:3, 80:4,
80:8, 83:21, 85:21,
110:4, 110:8,
116:24, 119:6,
119:20
**jurisdictional** [1] -
47:9
**jurisdictionally** [1] -
11:1
**jury** [2] - 97:21, 97:25
**justification** [1] -
41:13
**justifications** [1] -
41:14
**justify** [1] - 103:6
**juvenile** [1] - 41:19

**K**

**keep** [3] - 16:22,
51:22, 103:12
**keeping** [1] - 70:12
**Kenneth** [2] - 96:12,
96:13
**kept** [1] - 102:19
**Kevin** [3] - 3:20, 4:13,
5:17
**KEVIN** [1] - 2:9
**key** [1] - 80:16
**kids** [1] - 115:7
**kin** [1] - 120:13
**kind** [19] - 10:16,
10:20, 12:13, 24:3,
24:9, 30:10, 40:13,
47:1, 47:10, 58:6,
71:12, 81:14, 99:20,
110:1, 114:15,
118:7, 118:12,

118:19, 119:10
**knowledge** [2] -
28:16, 31:9
**known** [1] - 4:20

**L**

**Labbe** [1] - 103:3
**lag** [1] - 14:7
**Laguan** [3] - 4:20, 5:3,
36:16
**Laguan-Salinas** [3] -
4:20, 5:3, 36:16
**laid** [7] - 39:10, 48:4,
54:9, 54:10, 55:24,
83:17, 88:21
**landline** [2] - 39:4,
43:18
**lane** [1] - 95:16
**language** [3] - 8:2,
52:23, 56:13
**languish** [1] - 35:8
**larger** [1] - 46:9
**Largo** [1] - 2:5
**last** [6] - 23:3, 31:19,
57:23, 57:25, 67:6,
74:16
**latter** [1] - 66:18
**law** [16] - 44:21, 50:15,
64:21, 64:23, 68:4,
68:18, 70:13, 82:3,
82:21, 83:7, 91:7,
91:21, 93:21, 93:22,
97:2, 114:19
**Law** [2] - 96:12, 103:4
**LAW** [1] - 2:3
**laws** [1] - 78:8
**lawsuit** [19] - 5:2, 5:5,
5:7, 6:15, 6:24, 7:20,
8:10, 8:14, 8:24,
8:25, 9:10, 10:1,
10:2, 10:5, 36:19,
36:22, 68:5, 68:16,
119:13
**lawyer** [1] - 7:9
**lay** [2] - 11:16, 11:17
**lays** [1] - 54:11
**least** [8] - 19:7, 20:14,
21:23, 37:1, 46:3,
46:12, 80:8, 98:25
**leave** [3] - 10:25,
39:14, 93:9
**leaves** [1] - 74:17
**leaving** [1] - 17:20
**left** [3] - 73:12, 76:7,
76:21
**legal** [1] - 42:8
**legality** [1] - 61:4
**lenient** [2] - 16:1, 16:2
**letter** [2] - 25:14,

38:13
**letting** [1] - 44:13
**level** [4] - 48:1, 51:13,
91:6, 109:10
**Level** [7] - 26:1, 26:12,
35:19, 35:23, 55:18,
55:19
**levels** [1] - 36:8
**Lewis** [6] - 18:6, 18:7,
18:9, 23:4, 67:14,
76:5
**liability** [4] - 76:11,
91:13, 102:17, 105:4
**liable** [3] - 92:16,
101:13, 105:17
**liberty** [4] - 38:1,
114:3, 114:8, 115:15
**lie** [1] - 71:11
**lies** [1] - 102:16
**life** [2] - 26:10, 60:1
**likelihood** [2] -
116:13, 117:2
**likely** [2] - 37:4, 41:2
**limitation** [1] - 61:14
**limited** [6] - 24:14,
24:15, 24:20, 48:21,
48:22
**line** [7] - 3:7, 7:16,
84:8, 93:23, 105:2,
107:25, 108:1
**lines** [2] - 25:3, 45:13
**list** [2] - 39:1, 43:19
**listen** [1] - 22:8
**listened** [5] - 15:16,
18:21, 21:17, 21:24,
22:10
**listening** [1] - 22:21
**litigated** [1] - 94:22
**litigation** [2] - 95:2,
102:9
**litigations** [1] - 43:3
**LLP** [1] - 1:14
**loaded** [1] - 17:12
**local** [2] - 42:16, 99:9
**located** [1] - 17:13
**Logan** [4] - 29:2,
96:12, 103:3, 112:15
**Logan's** [2] - 32:2,
36:4
**logic** [1] - 57:13
**look** [19] - 12:4, 14:13,
31:6, 47:24, 50:18,
53:25, 63:10, 66:3,
66:15, 69:7, 74:19,
102:21, 102:23,
108:14, 110:7,
112:23, 113:4, 118:2
**looked** [1] - 11:20
**looking** [8] - 26:4,
26:5, 45:17, 74:18,

91:5, 113:5, 118:11
**looks** [2] - 14:11, 31:24
**lose** [1] - 110:3
**losing** [4] - 97:9, 97:18, 109:21, 109:23
**lost** [1] - 115:6
**Lowery** [2] - 97:3
**Lubavitch** [1] - 88:22
**lunch** [2] - 58:20, 72:13
**Lynchburg** [1] - 78:1
**LYNN** [1] - 2:3

## M

**machine** [1] - 120:10
**Madam** [1] - 4:16
**main** [1] - 119:19
**makers** [1] - 51:12
**maliciously** [1] - 97:13
**manageable** [1] - 94:13
**mandated** [2] - 100:13, 111:17
**manner** [1] - 29:19
**manslaughter** [1] - 13:8
**marijuana** [1] - 17:12
**marries** [1] - 66:11
**marry** [1] - 13:5
**Maryland** [23] - 2:5, 2:8, 2:11, 3:5, 6:21, 10:11, 17:2, 26:3, 48:11, 54:11, 55:23, 80:8, 87:1, 90:9, 90:10, 97:2, 97:5, 98:18, 98:19, 99:8, 111:9, 112:21, 120:6
**MARYLAND** [4] - 1:2, 1:7, 1:11, 2:2
**masks** [1] - 4:1
**matches** [1] - 66:11
**material** [1] - 78:14
**matter** [17] - 3:3, 3:5, 15:1, 20:13, 21:4, 24:10, 27:16, 30:18, 37:23, 57:11, 85:25, 93:19, 112:7, 118:4, 118:5, 118:18, 120:9
**matters** [8] - 6:3, 6:7, 61:9, 61:19, 64:23, 70:1, 112:8
**McCormick** [1] - 2:4
**mean** [26] - 7:2, 15:11, 19:3, 23:10, 23:17, 24:5, 42:4, 42:7, 42:8, 62:3, 71:20, 74:12, 76:25, 77:9,

77:20, 84:21, 87:6, 92:22, 93:3, 96:21, 100:23, 101:6, 101:14, 105:11, 113:2, 118:2
**meaning** [1] - 55:6
**means** [6] - 35:3, 39:6, 53:1, 53:4, 53:5, 86:22
**medical** [1] - 115:7
**meet** [11] - 29:21, 45:1, 55:8, 55:19, 72:4, 111:20, 111:22, 111:23, 111:24, 111:25
**meets** [1] - 26:11
**members** [6] - 28:21, 31:9, 39:3, 69:19, 87:17, 87:23
**memory** [3] - 21:25, 22:20, 110:1
**mental** [2] - 17:9, 76:3
**mentioned** [1] - 114:16
**mere** [1] - 70:2
**merely** [2] - 72:5, 87:11
**merits** [4] - 8:1, 61:10, 64:25, 116:13
**MESSITTE** [1] - 1:10
**met** [10] - 35:7, 35:24, 39:16, 45:1, 51:3, 51:7, 52:9, 52:15, 72:4, 114:24
**micromanage** [1] - 59:10
**middle** [1] - 44:20
**might** [9] - 9:7, 24:20, 50:19, 60:14, 70:8, 70:11, 117:15, 118:17, 119:10
**mind** [1] - 77:22
**minimum** [1] - 66:9
**minor** [2] - 63:21, 75:20
**minute** [4] - 7:10, 23:15, 25:9, 62:10
**minutes** [1] - 65:24
**mirrors** [1] - 26:3
**mischaracterization** [1] - 35:1
**mischaracterized** [1] - 99:19
**misread** [1] - 107:10
**missed** [5] - 44:9, 63:1, 68:22, 115:6, 115:7
**missing** [3] - 26:17, 44:2, 101:14
**misspeak** [1] - 21:25

**misspoke** [4] - 18:20, 60:3, 62:16, 74:13
**mixed** [1] - 110:1
**model** [1] - 73:22
**moment** [9] - 14:24, 24:11, 31:20, 32:6, 39:14, 47:20, 80:21, 84:2, 84:17
**monetary** [6] - 49:22, 49:24, 50:1, 50:15, 110:21, 110:23
**money** [6] - 49:11, 65:10, 65:12, 75:13, 111:1, 113:18
**monitor** [1] - 55:25
**monitoring** [5] - 26:2, 26:12, 27:25, 55:20, 110:22
**Montgomery** [7] - 27:1, 27:8, 27:11, 32:17, 32:20, 32:24, 76:4
**months** [7] - 12:19, 14:16, 15:1, 112:3, 112:5, 115:4, 115:8
**moot** [5] - 75:18, 77:3, 81:13, 113:16
**mootness** [5] - 36:22, 79:22, 79:23, 80:20, 81:7
**moots** [1] - 19:11
**morning** [5] - 3:16, 3:18, 3:20, 3:22, 66:4
**most** [7] - 19:2, 24:22, 56:11, 88:12, 98:25, 118:13, 119:7
**mostly** [1] - 29:6
**motion** [15] - 11:17, 26:16, 29:2, 32:2, 33:9, 54:10, 54:11, 57:11, 64:6, 71:15, 81:23, 99:19, 99:21, 99:25, 119:18
**motions** [6] - 3:6, 14:23, 64:11, 66:7, 86:6, 108:23
**MOTIONS** [1] - 1:9
**move** [2] - 58:23, 119:10
**moves** [1] - 33:3
**moving** [1] - 65:23
**MR** [220] - 3:11, 3:12, 3:13, 3:18, 3:20, 3:22, 4:13, 4:23, 5:7, 5:9, 5:14, 5:17, 6:11, 6:14, 6:19, 6:22, 7:7, 7:12, 8:5, 8:9, 8:13, 8:17, 8:21, 9:15, 9:17, 9:20, 9:23,

10:1, 10:4, 10:12, 11:13, 11:15, 12:1, 12:7, 13:3, 13:11, 13:13, 13:22, 14:6, 14:10, 14:22, 15:7, 15:10, 15:14, 15:19, 15:21, 15:23, 16:9, 16:11, 16:15, 16:20, 17:4, 17:7, 17:15, 17:22, 17:25, 18:5, 18:8, 18:17, 18:24, 19:9, 19:19, 20:8, 20:25, 21:10, 21:23, 23:2, 23:8, 23:14, 32:8, 32:11, 32:20, 32:25, 33:6, 34:6, 34:21, 36:7, 36:15, 37:4, 38:9, 39:21, 39:24, 40:4, 42:3, 42:14, 42:20, 45:17, 46:7, 47:16, 48:2, 48:16, 48:19, 49:15, 49:23, 50:5, 50:11, 50:25, 51:16, 51:25, 52:16, 52:23, 53:3, 53:18, 54:6, 54:20, 55:2, 55:16, 56:5, 56:10, 56:24, 57:1, 57:10, 58:24, 59:15, 59:25, 60:3, 60:5, 60:23, 61:25, 62:12, 62:14, 62:16, 62:20, 62:22, 62:24, 63:7, 63:10, 64:4, 64:9, 64:17, 64:21, 65:5, 65:8, 65:16, 65:22, 66:1, 66:6, 67:20, 67:23, 68:10, 68:12, 68:21, 69:4, 69:17, 70:14, 70:22, 71:14, 71:24, 72:7, 72:21, 73:1, 73:6, 73:11, 74:13, 76:15, 76:19, 77:4, 77:12, 77:17, 77:23, 78:6, 79:10, 80:10, 80:15, 80:25, 81:22, 82:18, 82:25, 83:6, 83:16, 84:10, 84:12, 84:20, 84:23, 85:6, 85:9, 85:12, 85:16, 86:4, 86:12, 86:16, 86:25, 87:5, 88:4, 89:13, 89:25, 90:8, 90:15, 91:16, 92:8, 92:18, 93:1, 93:6, 93:17, 94:7, 94:11, 94:15, 94:20, 95:8, 95:17, 98:1, 98:8, 101:19, 101:25, 102:4, 105:25, 106:7,

106:11, 106:18, 106:22, 107:1, 107:13, 107:23, 108:8, 113:21, 114:7, 116:3, 116:11, 119:24, 119:25
**MS** [68] - 3:10, 3:16, 4:6, 4:11, 5:23, 24:3, 24:12, 25:2, 25:5, 25:8, 25:12, 25:21, 25:24, 26:23, 27:3, 27:10, 27:19, 27:22, 28:9, 28:12, 29:1, 29:11, 30:4, 31:3, 31:23, 32:1, 34:25, 35:12, 35:15, 36:1, 36:5, 44:18, 63:4, 63:17, 96:6, 96:8, 96:23, 97:1, 97:16, 99:18, 100:9, 100:23, 101:6, 101:12, 101:18, 102:16, 103:14, 103:22, 104:6, 104:11, 104:15, 104:19, 108:2, 108:4, 108:7, 108:22, 109:14, 109:21, 109:24, 110:5, 112:5, 112:8, 112:17, 112:21, 113:3, 115:20, 115:22, 119:23
**multiple** [4] - 6:14, 8:23, 9:24, 49:25
**murder** [3] - 6:9, 13:7, 76:2
**Murray** [3] - 3:18, 5:20, 96:1
**MURRAY** [2] - 2:4, 3:18
**must** [6] - 33:9, 40:10, 57:11, 67:9, 67:12, 70:16
**muster** [1] - 33:12
**myriad** [1] - 36:2

## N

**name** [3] - 28:3, 93:4, 102:7
**named** [45] - 5:1, 5:9, 7:17, 8:6, 8:10, 8:15, 67:15, 68:5, 68:8, 68:15, 69:6, 70:16, 72:11, 74:5, 75:14, 76:21, 77:7, 77:24, 77:25, 78:20, 79:18, 79:20, 80:19, 80:22,

83:20, 85:17, 85:19, 90:6, 95:9, 95:10, 96:9, 97:10, 98:15, 98:17, 98:21, 101:10, 101:22, 102:2, 102:6, 102:14, 104:3, 107:15, 108:16, 117:10

**naming** [2] - 86:19, 102:10

**narrow** [4] - 87:8, 98:25, 103:11, 108:13

**narrower** [1] - 101:9

**nature** [16] - 39:5, 39:8, 39:11, 43:17, 44:11, 74:4, 74:24, 75:3, 76:9, 78:9, 78:16, 81:1, 82:4, 83:19, 87:10, 107:19

**necessarily** [4] - 37:2, 50:9, 52:12, 60:13

**necessary** [1] - 103:6

**need** [39] - 4:8, 6:2, 6:6, 7:5, 9:3, 11:4, 11:21, 22:8, 31:7, 33:8, 33:18, 33:21, 35:4, 35:7, 35:17, 35:20, 39:17, 40:2, 44:15, 45:11, 54:4, 54:22, 67:18, 70:6, 70:19, 72:15, 78:17, 81:17, 84:4, 98:21, 102:14, 105:12, 105:21, 106:21, 106:24, 112:15

**needed** [1] - 58:13

**needs** [3] - 65:21, 112:23, 115:15

**never** [9] - 37:3, 37:6, 38:4, 42:21, 43:10, 49:23, 55:12, 67:10, 73:20

**new** [6] - 49:13, 63:13, 81:2, 113:8, 115:21, 115:22

**New** [1] - 110:16

**next** [11] - 6:21, 10:14, 30:20, 59:14, 70:21, 70:23, 72:16, 72:24, 77:19, 105:24, 115:25

**nice** [1] - 74:8

**nine** [5] - 48:10, 53:20, 54:21, 54:23, 56:11

**Ninth** [1] - 61:15

**NO** [1] - 1:4

**non** [5] - 100:13, 101:3, 110:21,

111:17

**non-judge** [2] - 101:3

**non-mandated** [2] - 100:13, 111:17

**non-monetary** [1] - 110:21

**none** [4] - 12:11, 21:15, 87:18, 107:18

**note** [3] - 11:18, 12:8, 93:6

**noted** [1] - 110:5

**notes** [1] - 32:15

**NOTES** [1] - 1:23

**nothing** [14] - 17:19, 23:19, 32:22, 37:14, 37:16, 58:15, 65:20, 84:13, 85:17, 96:17, 97:9, 97:19, 108:19, 112:20

**notice** [1] - 30:25

**notification** [6] - 32:4, 35:16, 37:19, 38:11, 38:13, 38:17

**notify** [1] - 27:10

**noting** [1] - 15:1

**notwithstanding** [1] - 71:11

**November** [9] - 14:17, 115:25, 116:2, 116:3, 116:10, 116:17, 116:18, 117:4, 119:17

**nowadays** [1] - 112:12

**number** [8] - 9:4, 21:2, 33:7, 35:24, 39:9, 61:12, 96:4, 117:8

**numbers** [1] - 28:21

**numerous** [4] - 16:22, 106:23, 107:3

**NW** [1] - 1:17

---

**O**

**object** [1] - 19:25

**objectionable** [1] - 113:21

**obligation** [1] - 42:17

**obliged** [1] - 42:19

**observer** [1] - 119:9

**obvious** [1] - 111:11

**obviously** [1] - 18:25

**occasions** [2] - 15:5, 107:4

**occur** [4] - 7:23, 38:13, 43:4, 90:24

**occurred** [2] - 23:4, 57:22

**occurrence** [1] - 60:14

**occurring** [1] - 37:25

**occurs** [2] - 34:23

**OCTOBER** [1] - 1:11

**October** [7] - 13:7, 13:12, 13:14, 14:3, 14:13, 120:18

**Odom** [1] - 98:11

**OF** [5] - 1:2, 1:9, 1:23, 2:3, 2:8

**offense** [1] - 30:10

**offered** [2] - 83:24, 100:12

**OFFICE** [2] - 2:3, 2:8

**office** [1] - 78:12

**Office** [4] - 31:4, 31:16, 45:6

**officer** [10] - 78:12, 90:18, 93:22, 94:2, 95:20, 98:11, 112:23, 114:10, 114:13

**officers** [5] - 78:3, 78:4, 93:20, 93:22, 98:20

**Official** [1] - 120:4

**official** [47] - 71:2, 71:5, 71:8, 82:8, 82:10, 88:8, 89:19, 91:6, 91:15, 91:17, 91:23, 92:2, 92:7, 92:9, 92:17, 92:19, 92:22, 92:23, 93:13, 93:20, 93:21, 93:24, 94:8, 94:10, 94:23, 95:9, 95:10, 95:19, 96:4, 96:21, 97:7, 97:11, 98:13, 98:15, 98:16, 98:22, 99:1, 101:11, 101:22, 102:2, 102:11, 102:15, 103:16, 106:5, 118:1, 120:18

**OFFICIAL** [1] - 1:22

**officials** [6] - 40:18, 88:8, 89:19, 89:22, 94:3, 106:15

**often** [14] - 18:15, 36:11, 37:11, 38:4, 38:6, 38:10, 38:23, 44:5, 52:25, 55:9, 93:22, 94:23, 97:6

**omission** [1] - 12:22

**omitting** [1] - 69:17

**once** [2] - 30:5, 30:16

**one** [60] - 5:16, 6:13, 7:5, 8:18, 8:22, 8:23, 9:21, 10:15, 10:24, 12:18, 14:24, 20:9, 20:14, 21:13, 28:12, 29:13, 31:1, 31:5, 32:6, 33:15, 33:17, 41:9, 41:13, 42:16,

46:23, 47:10, 53:25, 57:1, 58:14, 58:19, 63:6, 63:8, 67:20, 68:23, 69:8, 71:1, 71:20, 72:5, 82:2, 82:16, 96:8, 97:3, 99:4, 100:10, 100:11, 100:15, 103:18, 107:7, 107:11, 107:15, 107:21, 111:12, 117:8, 117:11, 117:20, 117:24, 119:19

**ones** [4] - 6:7, 26:22, 56:12, 68:8

**ongoing** [15] - 45:24, 48:1, 48:7, 59:10, 59:11, 60:18, 67:24, 69:18, 70:9, 82:2, 84:14, 87:17, 89:10, 90:5, 103:6

**opaque** [4] - 7:24, 37:25, 41:7, 115:12

**open** [2] - 12:5, 111:25

**opening** [1] - 4:8

**opinion** [3] - 70:18, 105:12, 117:24

**opportunity** [3] - 12:9, 20:21, 34:1

**opposed** [3] - 7:5, 50:6, 99:12

**opposing** [2] - 33:7, 114:16

**opposition** [2] - 74:11, 74:12

**option** [5] - 34:10, 110:22, 111:1, 111:13

**options** [1] - 52:25

**order** [58] - 3:1, 10:10, 18:12, 22:13, 23:21, 25:15, 25:22, 34:11, 35:3, 44:24, 49:13, 49:19, 50:23, 50:25, 51:4, 51:9, 51:11, 51:12, 51:24, 52:5, 52:7, 52:8, 52:14, 53:6, 53:9, 53:14, 55:10, 56:20, 57:2, 57:3, 57:12, 58:12, 63:2, 63:11, 63:12, 63:14, 63:15, 64:7, 64:10, 69:12, 75:8, 83:4, 84:9, 94:25, 103:8, 104:20, 104:23, 104:24, 107:16, 116:6, 117:18, 117:19,

118:20, 118:22, 119:1

**ordered** [11] - 22:4, 22:6, 35:1, 51:22, 51:23, 55:5, 55:11, 55:12, 56:14, 56:15, 64:1

**ordering** [3] - 48:8, 56:13, 101:3

**orders** [17] - 28:13, 38:22, 44:21, 48:7, 48:8, 48:11, 52:3, 52:19, 52:20, 52:21, 52:25, 53:16, 53:20, 54:1, 54:7, 54:18, 54:19

**ordinarily** [2] - 92:22, 99:16

**originally** [3] - 22:3, 22:18, 66:4

**otherwise** [3] - 4:4, 55:12, 115:17

**outcome** [4] - 8:24, 109:10, 109:19, 120:14

**outlined** [5] - 28:14, 89:7, 89:8, 107:20

**outlining** [1] - 4:17

**outrageous** [1] - 112:11

**outrageously** [1] - 81:12

**outside** [5] - 29:16, 31:8, 68:16, 92:17, 97:13

**overrule** [2] - 56:22, 62:7

**oversight** [1] - 60:10

**overturn** [4] - 49:2, 49:9, 56:16, 57:21

**overturning** [1] - 90:23

**own** [7] - 27:9, 27:17, 34:15, 36:10, 42:1, 43:3, 46:10

---

**P**

**p.m** [3] - 73:8, 120:1

**Pacific** [1] - 109:7

**page** [14] - 11:19, 57:8, 62:5, 62:23, 66:8, 66:9, 74:9, 74:12, 78:2, 81:23, 88:23, 98:4, 102:22, 109:7

**pages** [2] - 12:2, 17:17

**paid** [3] - 21:14, 43:11, 104:12

**pandemic** [1] - 113:7

**papers** [12] - 19:24, 19:25, 46:18, 48:4, 62:4, 74:8, 83:17, 88:21, 89:7, 90:4, 107:2, 107:20
**paragraph** [1] - 38:23
**parameters** [1] - 84:18
**paraphrasing** [3] - 16:16, 21:12, 32:15
**part** [12] - 12:12, 19:10, 23:12, 25:13, 29:1, 31:19, 32:1, 40:18, 49:11, 53:7, 79:25, 86:1
**Parte** [20] - 73:19, 74:1, 76:15, 76:16, 76:19, 77:5, 78:11, 86:21, 88:17, 89:1, 89:4, 90:11, 90:15, 91:10, 95:22, 98:17, 106:12, 106:14
**participate** [1] - 114:1
**participating** [1] - 67:25
**particular** [11] - 33:17, 43:24, 45:15, 77:10, 77:11, 77:15, 81:18, 86:11, 105:2, 119:13
**particularly** [2] - 12:15, 33:3
**particulars** [1] - 40:3
**parties** [5] - 68:16, 70:16, 77:6, 78:10, 120:10
**party** [4] - 97:8, 97:11, 101:4, 120:13
**pass** [2] - 23:22, 33:11
**passed** [6] - 12:21, 37:21, 58:10, 88:14, 89:1, 111:2
**past** [9] - 66:21, 82:1, 82:7, 83:14, 84:6, 87:12, 90:23, 90:24
**Patrice** [1] - 18:8
**Paul** [1] - 2:10
**pause** [1] - 12:2
**pay** [2] - 22:23, 101:16
**pays** [1] - 101:16
**pending** [7] - 3:3, 23:19, 24:14, 32:17, 32:23, 43:2, 82:16
**people** [19] - 24:24, 33:25, 36:22, 36:24, 36:25, 38:2, 38:23, 39:4, 39:18, 42:25, 44:23, 51:13, 55:5, 79:24, 80:4, 84:16, 87:18, 115:3, 115:12
**people's** [1] - 81:3
**per** [2] - 16:12, 56:16

**perceive** [1] - 86:18
**perhaps** [5] - 10:23, 11:9, 17:16, 23:24, 28:3
**period** [3] - 14:16, 39:2, 40:8
**permanent** [1] - 103:3
**permits** [2] - 44:21, 82:20
**person** [31] - 9:13, 26:10, 26:11, 29:24, 30:1, 30:11, 31:7, 31:13, 34:14, 34:16, 35:13, 37:23, 38:15, 39:14, 39:20, 40:9, 41:8, 41:11, 41:15, 43:7, 43:20, 44:8, 48:25, 51:5, 51:23, 87:11, 95:21, 95:22, 98:14, 101:15, 118:25
**person's** [1] - 56:23
**personally** [2] - 15:16, 102:10
**persons** [2] - 98:15, 103:4
**PETER** [1] - 1:10
**petition** [7] - 10:16, 10:20, 12:13, 12:14, 14:20, 23:9, 114:17
**petitions** [8] - 8:11, 15:12, 19:16, 46:24, 109:5, 117:10, 117:12, 117:13
**phone** [1] - 29:18
**phonetic** [1] - 98:11
**phrased** [1] - 53:6
**physically** [1] - 27:17
**pick** [3] - 32:24, 72:14, 72:16
**PICKERING** [1] - 1:14
**piece** [1] - 13:4
**piecemeal** [1] - 70:19
**piggybacks** [1] - 70:23
**pile** [1] - 11:20
**pin** [1] - 12:17
**PJM-22-1768** [2] - 1:4, 3:4
**place** [2] - 54:9, 60:15
**Place** [1] - 2:10
**placed** [1] - 14:1
**places** [1] - 28:12
**plaintiff** [18] - 5:8, 5:9, 12:18, 16:3, 23:6, 33:15, 35:8, 41:18, 62:17, 70:25, 77:10, 77:11, 85:19, 90:3, 97:9, 97:20, 100:6, 117:10

**plaintiff's** [5] - 33:16, 53:21, 55:22, 77:15, 86:15
**Plaintiffs** [1] - 1:5
**plaintiffs** [124] - 4:14, 4:18, 4:20, 4:25, 5:1, 5:11, 6:1, 6:6, 7:17, 12:8, 16:22, 16:25, 17:19, 18:22, 19:4, 21:4, 22:4, 22:22, 23:18, 25:11, 31:2, 33:14, 37:2, 40:13, 40:22, 48:7, 48:9, 48:10, 49:6, 49:7, 50:7, 53:13, 53:25, 54:5, 54:6, 54:13, 54:22, 55:3, 55:5, 56:5, 59:22, 59:23, 62:8, 63:20, 66:9, 66:10, 66:12, 66:15, 66:19, 66:21, 66:23, 66:24, 67:7, 67:8, 67:10, 67:15, 67:25, 69:11, 69:14, 72:1, 73:16, 73:24, 74:3, 74:5, 74:8, 74:9, 74:15, 74:17, 74:19, 74:23, 74:24, 76:7, 76:20, 76:21, 77:1, 77:2, 77:25, 78:19, 79:5, 79:14, 79:15, 79:18, 79:20, 80:16, 84:3, 84:13, 84:24, 86:1, 86:4, 87:16, 87:18, 87:21, 87:23, 88:12, 88:24, 89:9, 89:14, 90:6, 91:1, 96:10, 96:20, 97:10, 97:18, 99:22, 101:21, 102:6, 102:17, 107:5, 107:8, 107:15, 107:16, 107:21, 108:16, 109:1, 109:4, 110:12, 113:17, 114:12, 117:1, 117:16, 119:11
**PLAINTIFFS** [1] - 1:13
**Plaintiffs'** [2] - 65:8, 66:19
**plaintiffs'** [28] - 3:8, 12:22, 16:23, 21:13, 22:3, 24:22, 33:9, 53:7, 53:19, 54:23, 58:14, 58:25, 59:7, 60:8, 60:25, 62:1, 62:6, 63:11, 65:13, 66:6, 71:15, 80:19, 82:10, 84:14, 85:17,

106:13, 107:11, 117:9
**plausible** [1] - 81:11
**play** [1] - 64:2
**plays** [1] - 64:12
**plead** [2] - 36:17, 44:1, 66:25
**pleading** [3] - 70:5, 70:25, 88:13
**pleadings** [4] - 8:22, 11:3, 46:13, 73:21
**pleads** [1] - 82:11
**pled** [8] - 34:7, 34:22, 36:9, 36:15, 37:20, 38:3, 72:1, 77:14
**plenty** [1] - 59:3
**plus** [1] - 96:3
**point** [30] - 15:13, 15:25, 23:3, 24:15, 33:5, 33:8, 34:5, 37:20, 39:17, 54:2, 55:16, 56:12, 57:5, 59:20, 63:1, 63:6, 63:8, 65:8, 67:4, 70:21, 70:23, 74:7, 83:16, 86:16, 101:14, 105:8, 105:22, 106:16, 107:2, 118:17
**pointed** [1] - 111:16
**points** [3] - 40:23, 105:25, 117:17
**Police** [1] - 27:8
**police** [1] - 94:2
**policy** [7] - 23:11, 23:12, 24:1, 24:5, 91:1, 91:2, 91:7
**pops** [2] - 44:4, 44:9
**pose** [1] - 72:15
**position** [7] - 19:11, 22:7, 23:18, 48:5, 100:10, 104:1, 104:9
**possession** [1] - 28:23
**possible** [6] - 17:17, 69:12, 75:7, 76:8, 107:14, 107:16
**possibly** [2] - 12:18, 19:1
**post** [1] - 87:11
**potential** [3] - 16:4, 64:12, 86:14
**potentially** [1] - 58:14
**Powell** [6] - 9:16, 9:18, 9:25, 18:6, 19:10, 19:12
**power** [1] - 53:11
**practice** [3] - 24:7, 34:9, 80:8
**practices** [2] - 5:2,

72:3
**prayer** [1] - 102:22
**precise** [1] - 70:1
**precluded** [2] - 20:19, 105:14
**prefacing** [1] - 118:4
**preliminary** [14] - 4:3, 19:22, 63:11, 63:16, 64:5, 82:14, 82:22, 83:1, 111:3, 115:24, 116:12, 116:19, 116:21, 116:25
**prepared** [3] - 5:18, 72:22, 117:3
**Prerelease** [9] - 10:21, 12:16, 20:1, 23:11, 24:8, 24:11, 33:4, 37:3, 53:16
**prerelease** [1] - 24:1
**present** [3] - 9:7, 82:2, 89:10
**presented** [4] - 24:13, 97:25, 110:25, 111:1
**presumably** [3] - 15:13, 50:22, 70:10
**presumption** [1] - 115:17
**pretrial** [52] - 8:6, 16:4, 24:21, 26:1, 28:19, 28:22, 28:25, 30:12, 31:3, 34:10, 38:1, 38:16, 40:7, 40:15, 41:1, 41:8, 41:10, 41:21, 42:8, 42:21, 44:25, 48:10, 49:19, 51:6, 52:3, 54:12, 54:14, 55:6, 55:7, 61:4, 61:9, 61:19, 64:24, 79:23, 94:21, 96:14, 100:13, 103:5, 109:9, 110:21, 111:9, 111:13, 111:17, 112:24, 113:17, 114:2, 114:5, 114:6, 114:22, 115:11, 115:14, 118:24
**Pretrial** [46] - 7:15, 24:23, 24:24, 25:20, 28:2, 28:18, 30:1, 30:4, 30:8, 30:12, 30:17, 30:23, 34:4, 34:13, 34:14, 35:1, 35:19, 36:10, 37:7, 37:9, 37:13, 37:18, 37:22, 38:7, 38:9, 38:21, 39:7, 39:12, 39:18, 41:7, 41:13, 43:6, 44:5, 44:7,

44:10, 46:10, 55:11, 55:15, 55:18, 57:12, 57:15, 96:11, 96:16, 118:6
**pretty** [5] - 46:16, 46:21, 97:2, 108:17, 117:22
**prevail** [1] - 110:10
**prevailing** [1] - 117:2
**prevent** [2] - 81:7, 87:9
**preventing** [1] - 60:14
**prevents** [2] - 43:21, 81:7
**previous** [1] - 88:25
**previously** [1] - 120:8
**primary** [1] - 103:2
**PRINCE** [3] - 1:7, 2:2, 2:3
**Prince** [20] - 3:5, 24:1, 27:7, 28:14, 41:1, 41:8, 41:14, 41:16, 41:20, 41:23, 42:5, 42:9, 42:24, 43:5, 43:10, 43:14, 44:1, 44:13, 68:8, 97:4
**principle** [1] - 81:9
**principles** [1] - 80:21
**printed** [1] - 24:25
**priority** [1] - 110:20
**probable** [1] - 24:16
**probation** [1] - 17:14
**problem** [2] - 29:8, 33:13, 56:2, 86:9, 86:14, 86:18, 108:7, 112:19, 115:9
**problems** [4] - 118:16, 118:18, 119:2, 119:5
**procedural** [2] - 58:6, 108:24
**procedure** [1] - 80:8
**procedures** [1] - 40:20
**proceed** [4] - 89:21, 89:23, 92:3, 92:6
**proceeding** [4] - 61:10, 70:1, 72:17, 116:7
**proceedings** [9] - 7:3, 23:21, 59:10, 59:11, 60:19, 78:9, 87:25, 120:1, 120:7
**PROCEEDINGS** [1] - 1:9
**proceeds** [1] - 36:23
**process** [42] - 7:14, 7:24, 9:5, 20:11, 30:7, 30:19, 33:3, 33:4, 33:22, 34:2, 34:15, 36:10, 37:9, 37:15, 37:19, 37:25,

38:17, 40:13, 41:6, 43:4, 43:20, 43:25, 48:1, 49:7, 49:8, 54:9, 58:10, 67:24, 79:19, 102:25, 103:6, 108:24, 110:14, 110:20, 111:6, 113:25, 114:4, 114:9, 114:22, 115:1, 115:12
**processes** [1] - 45:24
**processing** [2] - 44:6, 44:8
**profit** [1] - 105:2
**program** [9] - 31:3, 48:10, 100:13, 111:10, 111:13, 111:18, 113:17, 113:23, 114:2
**promptly** [2] - 103:4, 118:6
**prong** [2] - 77:4, 78:16
**proof** [1] - 105:5
**proper** [2] - 110:7, 119:12
**properly** [2] - 10:25, 83:22
**proportion** [1] - 94:13
**proposed** [5] - 63:11, 63:12, 63:14, 63:15, 116:6
**proposition** [5] - 47:7, 69:23, 95:5, 99:4, 101:2
**propositions** [1] - 93:18
**prosecution** [2] - 61:6, 64:25
**prosecutions** [1] - 61:2, 61:3, 61:20
**prospective** [30] - 49:12, 66:20, 67:3, 71:10, 71:16, 71:18, 71:22, 71:23, 76:17, 80:17, 82:3, 83:14, 83:23, 84:11, 85:5, 85:8, 85:13, 87:22, 88:19, 89:5, 89:15, 89:22, 89:24, 90:2, 90:20, 90:22, 92:7, 92:12, 107:10, 108:17
**protections** [1] - 100:25
**protest** [1] - 115:2
**provide** [9] - 22:21, 22:23, 26:15, 53:22, 53:23, 55:3, 86:10, 109:2, 110:11

**provided** [10] - 17:19, 21:15, 25:13, 28:24, 53:24, 66:4, 87:8, 94:16, 102:4, 110:17
**provides** [1] - 29:18
**PTR** [3] - 25:17, 25:20, 34:4
**Public** [4] - 31:4, 31:16, 45:7, 90:10
**public** [16] - 7:8, 15:25, 16:23, 19:5, 20:9, 20:14, 21:17, 22:1, 22:7, 27:9, 31:8, 32:25, 46:8, 78:18, 78:21, 86:5
**published** [4] - 20:3, 35:24, 36:2, 38:24
**pull** [1] - 33:15
**punish** [1] - 113:13
**punished** [1] - 115:3
**purely** [5] - 79:14, 87:10, 87:22, 93:1, 94:16
**purposes** [2] - 72:11, 95:1
**pursuant** [14] - 5:1, 5:3, 10:17, 36:20, 40:5, 43:20, 44:24, 61:2, 61:21, 79:19, 79:21, 82:19, 100:21, 104:23
**pursue** [2] - 106:21, 118:6
**pushing** [1] - 116:15
**put** [6] - 29:23, 50:7, 53:8, 113:1, 117:8, 118:12
**putative** [6] - 39:3, 69:18, 69:19, 79:17, 87:16, 87:24
**putting** [1] - 39:24, 113:23

**Q**

**questionable** [1] - 47:7
**questions** [4] - 9:2, 9:6, 18:18, 19:23
**quintessential** [1] - 59:15
**quite** [7] - 9:7, 14:6, 65:10, 83:12, 83:15, 97:6, 111:11
**quote** [14] - 45:22, 46:7, 57:10, 60:12, 60:25, 62:7, 66:23, 78:3, 78:4, 90:9, 90:11, 98:2, 98:4, 98:10

**quoted** [1] - 99:25
**quoting** [1] - 62:10

**R**

**raise** [3] - 4:4, 20:10, 20:15
**raised** [5] - 19:23, 49:24, 61:5, 80:11
**raising** [3] - 20:19, 72:8, 86:14
**rate** [2] - 113:9, 113:10
**rather** [4] - 4:7, 41:2, 41:6, 49:8, 68:8, 71:5, 73:18, 82:4, 110:23
**re** [4] - 9:9, 100:1, 109:6
**re-framing** [1] - 100:1
**re-study** [1] - 9:9
**reach** [1] - 59:9
**reaches** [1] - 37:12
**read** [6] - 6:4, 12:25, 22:2, 66:7, 66:14, 110:2
**reading** [2] - 71:3, 88:12
**real** [1] - 27:4
**realize** [1] - 42:3
**really** [23] - 12:20, 23:20, 24:10, 29:8, 31:8, 40:2, 44:16, 45:11, 45:12, 47:12, 54:17, 58:5, 86:13, 91:5, 91:12, 91:25, 92:14, 93:15, 111:19, 113:13, 117:14, 118:7, 119:3
**reason** [9] - 5:3, 31:14, 39:4, 48:6, 48:13, 68:25, 73:21, 88:18, 97:6
**reasonable** [3] - 113:1, 118:9, 118:23
**reasonably** [1] - 118:6
**reasoning** [3] - 41:7, 81:5, 101:8
**reasons** [24] - 5:4, 11:7, 12:14, 12:19, 15:12, 20:3, 21:2, 28:1, 28:3, 33:20, 38:20, 38:24, 39:1, 39:9, 43:19, 51:21, 60:19, 74:2, 76:3, 89:5, 89:6, 96:15
**rebuffed** [1] - 20:15
**receive** [1] - 116:7
**received** [2] - 40:11, 103:5
**receives** [2] - 28:15,

40:8
**recent** [6] - 19:2, 48:21, 49:4, 56:11, 88:13, 95:2
**recently** [1] - 31:17
**Recess** [1] - 73:8
**recessed** [1] - 73:10
**recognize** [1] - 57:12
**recognized** [1] - 61:8
**reconsider** [1] - 51:13
**reconsideration** [1] - 86:7
**record** [8] - 16:15, 17:15, 18:25, 19:4, 20:12, 33:8, 50:8, 53:24
**recorded** [1] - 120:10
**recording** [1] - 45:20
**records** [4] - 10:7, 19:1, 21:11, 53:24
**recuse** [1] - 78:22
**red** [1] - 4:19
**Reed's** [1] - 57:6
**refer** [7] - 11:24, 53:16, 56:19, 60:5, 61:25, 88:21, 106:13
**reference** [1] - 11:19
**referral** [5] - 5:2, 7:15, 8:6, 10:20, 20:11, 25:19, 30:17, 37:7, 43:20, 57:12, 57:16, 58:10, 58:11, 58:12, 103:5, 115:8, 117:18, 118:19
**referrals** [5] - 19:25, 52:3, 52:4, 52:24, 113:10
**referred** [5] - 24:23, 30:11, 36:10, 57:14, 104:23
**referring** [3] - 48:8, 56:12, 62:23
**reflect** [2] - 21:1, 39:10
**refuse** [1] - 52:4
**refused** [1] - 20:12
**regard** [22] - 3:25, 9:12, 10:8, 11:5, 11:23, 16:1, 22:17, 32:12, 32:22, 45:4, 45:19, 49:15, 50:14, 50:23, 59:19, 62:2, 66:6, 75:7, 78:7, 88:4, 105:19, 117:11
**regarding** [2] - 24:1, 115:24
**regardless** [3] - 38:25, 64:22, 67:23
**regular** [1] - 31:5
**regularly** [1] - 31:4

**rehearing** [1] - 8:12
**reiterate** [1] - 75:25
**rejected** [1] - 109:20
**related** [2] - 69:19, 116:5
**relation** [2] - 77:6, 96:18
**relationship** [14] - 74:4, 77:7, 77:10, 77:14, 77:19, 77:21, 77:22, 78:17, 88:20, 89:6, 89:8, 89:10, 90:3, 90:5
**relative** [2] - 23:21, 56:23
**release** [85] - 7:18, 7:23, 16:4, 22:5, 24:21, 26:1, 27:9, 28:4, 28:7, 28:19, 28:25, 31:3, 32:24, 34:10, 34:17, 34:22, 35:2, 35:6, 35:18, 35:22, 37:8, 37:10, 37:21, 37:24, 38:16, 38:23, 39:7, 40:2, 40:7, 40:10, 40:12, 40:15, 41:1, 41:8, 41:10, 41:14, 41:15, 41:21, 42:4, 42:7, 42:8, 43:6, 44:7, 44:22, 44:23, 44:25, 46:11, 48:10, 49:13, 49:20, 50:23, 51:1, 51:4, 51:12, 52:5, 52:9, 52:14, 54:13, 54:14, 55:6, 55:9, 57:13, 58:12, 63:2, 63:13, 64:1, 64:8, 96:14, 100:13, 103:4, 110:21, 111:10, 111:13, 111:18, 112:24, 113:17, 114:5, 114:6, 114:11, 115:5, 118:22
**Release** [18] - 24:23, 25:20, 28:2, 30:1, 30:4, 30:8, 30:12, 30:18, 30:23, 34:5, 35:2, 35:20, 55:11, 55:15, 55:18, 55:19, 96:12, 118:6
**released** [35] - 22:7, 22:13, 26:12, 27:5, 27:14, 27:15, 27:17, 27:23, 29:7, 29:9, 29:24, 34:14, 34:16, 35:13, 35:15, 37:17, 38:2, 38:18, 39:20, 40:19, 41:2, 42:1,

42:7, 43:22, 51:6, 51:11, 51:14, 51:23, 53:12, 55:10, 63:22, 83:20, 114:12, 118:25
**releases** [1] - 37:22
**releasing** [1] - 110:23
**relevance** [1] - 19:24
**relevant** [2] - 10:22, 52:12
**relief** [75] - 49:12, 49:14, 49:16, 49:17, 50:3, 50:12, 50:13, 60:8, 60:25, 64:12, 66:20, 67:2, 67:3, 69:3, 69:13, 71:10, 71:12, 71:13, 71:16, 71:17, 71:23, 72:11, 74:2, 74:18, 74:24, 75:7, 75:9, 75:16, 76:8, 76:17, 76:23, 79:13, 80:17, 82:4, 82:13, 82:17, 82:20, 83:18, 83:23, 84:7, 85:5, 85:8, 85:13, 85:18, 86:10, 86:22, 87:7, 87:8, 87:10, 87:18, 87:21, 88:19, 88:25, 89:5, 89:16, 89:22, 89:24, 90:2, 90:20, 90:22, 91:19, 92:7, 92:12, 102:22, 107:6, 107:10, 107:14, 108:12, 108:14, 108:18, 116:1, 116:4
**relies** [1] - 108:11
**rely** [2] - 59:18, 91:4
**relying** [4] - 21:16, 59:21, 59:22, 59:23
**remain** [3] - 69:24, 74:20, 108:16
**remaining** [4] - 66:18, 66:20, 77:8, 85:17
**remains** [2] - 99:3, 105:4
**remedies** [5] - 109:4, 109:17, 110:6, 110:8, 114:18
**remedy** [3] - 58:9, 83:4, 84:6
**remove** [1] - 4:1
**removed** [1] - 42:5
**render** [2] - 7:21, 81:5
**renee** [1] - 1:22
**Renee** [4] - 58:17, 120:4, 120:16, 120:17
**repetition** [1] - 81:9
**reply** [4] - 61:23, 78:2,

88:23, 99:19
**report** [2] - 39:19, 118:13
**reported** [1] - 120:7
**reporter** [1] - 90:13
**Reporter** [2] - 120:4, 120:18
**REPORTER** [3] - 1:22, 58:18, 58:21
**reports** [1] - 118:24
**represent** [1] - 6:23
**representation** [2] - 6:23, 6:25
**representative** [1] - 98:13
**represented** [1] - 10:19
**representing** [1] - 97:17
**represents** [1] - 105:9
**request** [5] - 10:17, 23:13, 46:15, 63:2, 108:12
**requested** [1] - 60:8
**requesting** [1] - 63:6
**requests** [1] - 11:8
**require** [4] - 59:2, 77:5, 89:15, 114:10
**required** [4] - 55:2, 57:18, 83:24, 114:19
**requirement** [5] - 43:14, 71:9, 89:16, 90:1, 114:16
**requirements** [10] - 35:7, 40:7, 43:3, 51:3, 51:5, 51:7, 54:15, 55:8, 65:17, 114:4
**requires** [9] - 46:23, 49:19, 50:15, 54:16, 55:17, 68:4, 68:18, 87:25, 98:17
**requiring** [2] - 51:6, 103:4
**reset** [1] - 117:5
**resisting** [1] - 51:22
**resolve** [10] - 27:15, 41:12, 41:16, 41:23, 42:1, 42:6, 42:10, 42:13, 43:11, 44:14
**resolved** [3] - 22:24, 43:12, 81:3
**resolving** [1] - 43:21
**resort** [3] - 48:25, 57:23, 57:25
**respect** [5] - 11:8, 80:18, 96:20, 97:23, 97:24
**respectfully** [2] - 13:14, 71:24

**respective** [9] - 66:12, 67:9, 74:23, 76:22, 78:21, 85:19, 86:5, 86:6, 89:9
**respond** [8] - 5:18, 10:24, 12:3, 21:9, 23:25, 64:19, 99:21, 100:15
**responded** [2] - 72:1, 100:1
**responding** [3] - 5:15, 10:19, 100:14
**response** [23] - 12:16, 50:6, 64:16, 66:6, 66:8, 67:4, 71:15, 73:19, 73:25, 79:6, 79:9, 88:13, 96:2, 107:8, 107:11, 108:3, 108:6, 109:1, 109:6, 109:7, 110:13, 113:20, 113:23
**responses** [1] - 118:12
**responsibility** [4] - 80:6, 91:7, 91:12, 91:13
**responsible** [1] - 80:23
**restate** [1] - 12:5
**restriction** [1] - 61:19
**restrictions** [1] - 61:1
**result** [12] - 7:18, 20:1, 34:12, 41:22, 44:2, 52:4, 67:4, 71:14, 73:25, 83:22, 94:24
**results** [1] - 109:15
**retroactive** [1] - 78:16
**retrospective** [13] - 74:3, 74:18, 76:9, 76:23, 79:14, 82:4, 83:19, 87:10, 87:19, 107:6, 107:19, 108:12, 108:13
**return** [1] - 73:2
**returns** [1] - 29:18
**reverse** [1] - 56:3
**reversing** [3] - 56:8, 56:9, 56:10
**review** [48] - 6:13, 7:21, 8:13, 8:22, 10:7, 10:17, 11:6, 11:12, 11:24, 12:3, 13:13, 14:4, 14:15, 14:19, 14:20, 15:2, 15:4, 16:19, 16:24, 17:24, 18:4, 19:16, 20:20, 24:9, 29:23, 30:8, 34:6, 34:7, 34:8, 34:9, 37:6,

46:16, 46:20, 46:21, 46:23, 51:10, 51:11, 51:15, 51:17, 55:8, 55:17, 55:21, 81:9, 82:21, 110:9, 110:19, 117:11
**reviewed** [1] - 30:1
**reviewing** [1] - 24:14
**reviews** [5] - 7:6, 11:7, 14:3, 14:14, 17:21
**revision** [1] - 49:7
**revisit** [1] - 69:20
**rightly** [1] - 93:14
**rights** [4] - 66:22, 81:8, 94:5, 114:22
**rise** [1] - 48:23
**RMR** [2] - 1:22, 120:17
**Robert** [2] - 3:4, 96:14
**ROBERT** [1] - 1:4
**Rooker** [23] - 47:13, 47:17, 48:5, 48:13, 48:17, 48:20, 48:23, 49:5, 51:18, 56:2, 56:3, 57:6, 57:8, 57:9, 57:19, 57:20, 57:24, 58:2, 58:7, 59:1, 59:12, 60:20, 87:14
**Rooker-Feldman** [20] - 48:5, 48:13, 48:17, 48:20, 49:5, 51:18, 56:2, 56:3, 57:6, 57:8, 57:9, 57:19, 57:20, 57:24, 58:2, 58:7, 59:1, 59:12, 60:20, 87:14
**Rosen** [1] - 110:15
**RPR** [2] - 1:22, 120:17
**rule** [8] - 26:3, 45:23, 54:16, 57:24, 87:9, 112:25, 113:25, 115:15
**Rule** [3] - 26:3, 48:11, 54:11
**ruled** [3] - 70:10, 87:13, 88:22
**rules** [8] - 43:3, 55:23, 70:5, 70:16, 86:25, 87:1, 112:21
**ruling** [1] - 92:1
**rulings** [1] - 70:20
**run** [1] - 60:13
**Russell** [1] - 88:22
**Ryan** [1] - 3:11
**RYAN** [1] - 1:15

**S**

**safe** [2] - 3:25, 40:12
**Salerno** [1] - 114:21

**Salinas** [3] - 4:20, 5:3, 36:16

**sat** [1] - 115:8

**satisfied** [1] - 39:15

**satisfies** [1] - 65:20

**satisfy** [2] - 28:22, 107:15

**scared** [1] - 63:23

**school** [1] - 63:23

**scope** [1] - 97:13

**script** [1] - 115:16

**seal** [1] - 72:10

**seat** [3] - 3:2, 5:15, 117:6

**seated** [1] - 73:9

**second** [12] - 6:9, 13:7, 13:8, 16:7, 16:9, 19:10, 46:23, 76:2, 77:4, 99:6, 114:20

**secondhand** [1] - 21:21

**secondly** [1] - 118:13

**Section** [6] - 65:18, 82:19, 83:8, 91:18, 114:17, 114:18

**section** [1] - 96:11

**sections** [1] - 96:13

**see** [24] - 4:18, 6:6, 11:3, 11:23, 13:6, 20:7, 25:25, 28:19, 29:23, 31:9, 45:18, 46:3, 46:13, 46:24, 47:2, 50:24, 55:1, 55:15, 62:19, 70:7, 72:20, 73:7, 93:22, 94:19

**seeing** [2] - 46:19, 83:23

**seek** [21] - 46:20, 49:7, 50:12, 50:14, 63:12, 66:19, 66:23, 66:24, 66:25, 74:3, 74:9, 74:15, 74:24, 82:25, 83:3, 83:6, 86:22, 87:19, 87:21, 89:15, 90:2

**seeking** [35] - 49:15, 49:17, 49:20, 49:22, 50:3, 50:22, 60:8, 65:10, 65:12, 65:14, 67:2, 68:1, 71:12, 71:16, 71:18, 73:24, 76:22, 79:15, 80:16, 82:1, 82:2, 82:16, 82:19, 83:1, 83:18, 86:17, 88:19, 88:24, 89:5, 89:22, 89:24, 90:22, 99:22, 107:5, 108:14

**seeks** [1] - 90:21

**seem** [1] - 79:1

**send** [2] - 38:2, 45:2

**sense** [11] - 6:3, 9:11, 22:22, 30:9, 42:8, 56:8, 57:13, 100:16, 100:18, 116:15, 116:23

**sent** [8] - 16:17, 26:18, 26:19, 31:15, 31:16, 38:4, 38:11, 75:20

**sentence** [1] - 71:1

**separate** [2] - 52:10, 85:3

**separated** [2] - 102:18, 102:20

**separately** [1] - 18:18

**series** [2] - 38:5, 49:16

**serious** [5] - 12:22, 27:7, 30:10, 70:1, 119:7

**Serrette** [10] - 8:5, 15:8, 16:1, 16:7, 16:13, 22:2, 22:9, 22:11, 22:12, 30:17

**Service** [3] - 37:18, 38:21, 90:10

**Services** [12] - 28:18, 34:13, 34:15, 37:8, 37:13, 37:22, 39:12, 41:7, 41:13, 43:6, 44:5, 44:7, 44:10, 57:12, 57:15, 96:12, 96:17

**set** [3] - 28:24, 84:17, 116:23

**SETH** [1] - 1:15

**Seth** [1] - 3:13

**sets** [1] - 73:12

**several** [3] - 28:12, 33:24, 93:4

**severely** [1] - 48:20

**severity** [2] - 26:4, 27:3

**shall** [2] - 53:12, 70:9

**Sharp** [1] - 69:9

**Shelley** [1] - 3:16

**SHELLEY** [1] - 2:3

**sheriff** [1] - 99:9

**shifting** [1] - 39:1

**shocks** [2] - 112:11, 114:20

**shocks-the-conscience** [1] - 114:20

**shortcut** [1] - 98:23

**shorthand** [1] - 120:10

**show** [1] - 90:2

**showing** [3] - 32:4,

100:15, 101:7

**shows** [1] - 102:22

**sic** [2] - 26:24, 26:25

**sic)** [1] - 29:4

**side** [1] - 4:4

**sign** [2] - 40:3, 118:15

**significant** [1] - 9:7

**signifies** [1] - 25:24

**signify** [1] - 25:23

**signs** [1] - 118:19

**simple** [3] - 48:6, 54:9, 118:21

**simpler** [1] - 97:20

**simply** [13] - 4:7, 38:5, 42:16, 48:13, 61:11, 64:25, 79:3, 79:14, 79:24, 89:4, 90:24, 114:20, 114:24

**single** [2] - 87:11, 107:9

**sit** [3] - 22:20, 57:20, 79:8

**sitting** [1] - 38:17

**situation** [4] - 7:16, 43:8, 55:22

**situations** [2] - 48:23, 107:5

**six** [3] - 67:14, 112:3, 112:5

**slight** [1] - 4:24

**slightly** [1] - 95:16

**sloppy** [1] - 42:3

**slow** [2] - 90:12, 90:13

**slower** [1] - 78:5

**Smith** [2] - 67:13, 67:14

**society** [1] - 112:10

**someone** [16] - 24:8, 28:24, 29:17, 36:9, 40:19, 43:9, 44:1, 44:6, 49:19, 52:4, 52:5, 53:12, 63:3, 70:4, 81:7, 110:23

**sometimes** [5] - 38:2, 52:24, 54:18, 99:9

**somewhat** [1] - 79:4

**somewhere** [1] - 35:25

**soon** [4] - 11:4, 29:25, 75:18, 85:23

**sorry** [21] - 13:11, 14:6, 15:18, 15:19, 26:25, 32:8, 38:8, 55:11, 59:25, 66:1, 68:24, 72:21, 77:12, 78:6, 85:6, 86:12, 88:7, 93:15, 107:17, 110:1

**sort** [6] - 18:12, 21:21, 48:1, 72:10, 83:3,

118:21

**sought** [11] - 46:14, 46:20, 49:23, 50:1, 74:18, 79:13, 85:14, 87:20, 108:18, 116:2, 116:4

**sources** [2] - 29:17, 31:6

**South** [2] - 57:7, 60:6

**SOUTHERN** [1] - 1:3

**sovereign** [4] - 47:21, 73:3, 73:14, 73:17

**speaking** [7] - 4:2, 5:21, 5:23, 53:19, 55:4, 63:20, 66:2

**special** [13] - 74:4, 77:5, 77:6, 77:9, 77:13, 77:19, 77:22, 78:17, 88:20, 89:6, 89:8, 90:3, 90:5

**specially** [1] - 76:1

**species** [1] - 87:14

**specific** [10] - 8:2, 15:24, 19:16, 60:14, 70:4, 72:5, 84:12, 84:14, 114:1, 114:15

**specifically** [12] - 6:6, 6:12, 33:13, 36:16, 48:23, 50:20, 57:6, 58:3, 59:20, 63:21, 116:5, 117:9

**specified** [1] - 91:24

**speculating** [1] - 14:10

**spend** [4] - 44:15, 45:11, 81:17, 105:12

**Spiker** [1] - 3:23

**SPIKER** [2] - 2:9, 3:22

**spoken** [1] - 74:20

**St** [1] - 2:10

**stage** [1] - 33:9

**standard** [3] - 114:20, 114:23, 114:24

**standardized** [1] - 38:22

**standing** [5] - 33:17, 36:23, 110:13, 111:2, 118:3

**stands** [2] - 34:5, 104:2

**start** [7] - 4:7, 6:8, 11:10, 12:6, 47:15, 70:19, 73:15

**started** [2] - 30:7, 106:3

**starting** [2] - 3:8, 3:14

**state** [105] - 7:3, 20:16, 20:19, 46:8, 46:15, 47:12, 48:1, 48:7, 48:12, 48:24, 48:25,

49:2, 49:6, 51:13, 51:15, 51:17, 56:3, 56:23, 57:4, 57:21, 57:22, 57:23, 57:25, 58:16, 59:2, 59:4, 59:9, 60:8, 60:11, 60:15, 60:18, 61:1, 61:3, 62:8, 68:3, 68:17, 72:16, 72:18, 78:3, 78:8, 78:12, 81:19, 84:14, 88:7, 88:8, 89:19, 89:20, 89:21, 90:18, 91:5, 92:10, 93:15, 93:19, 94:24, 95:1, 95:6, 95:12, 95:14, 95:20, 95:21, 95:22, 95:24, 98:5, 98:11, 98:16, 98:18, 98:19, 98:21, 99:7, 99:9, 99:11, 99:14, 101:20, 102:5, 102:9, 102:12, 102:14, 103:8, 103:21, 104:4, 104:5, 104:10, 104:11, 104:14, 104:16, 104:18, 104:21, 105:6, 106:4, 106:6, 106:9, 106:10, 109:4, 109:12, 109:13, 110:6, 110:8, 110:19, 111:5, 111:10, 111:11, 114:18

**State's** [1] - 45:6

**statement** [7] - 4:25, 12:17, 21:8, 24:16, 24:17, 68:4, 106:20

**statements** [2] - 22:5, 120:9

**States** [2] - 90:10, 120:5

**states** [3] - 88:6, 88:7, 92:11

**STATES** [2] - 1:1, 1:10

**status** [7] - 4:18, 17:9, 17:17, 22:16, 26:6, 56:23, 64:23

**statute** [11] - 110:19, 111:4, 111:5, 111:6, 111:7, 111:8, 111:9, 112:18, 112:20, 113:24

**stay** [6] - 5:10, 29:5, 32:5, 85:3, 90:13, 113:18

**stays** [1] - 70:4

**stenographically** [1] - 120:7

**STENOTYPE** [1] - 1:23
**step** [1] - 88:15
**still** [14] - 4:10, 4:14, 4:21, 21:20, 32:19, 32:20, 47:12, 53:6, 56:18, 64:2, 79:18, 87:18, 97:10, 105:17
**stop** [3] - 17:12, 24:25, 27:6
**straightforward** [2] - 65:17, 90:16
**strange** [1] - 43:25
**streamline** [1] - 97:20
**streamlined** [1] - 97:24
**strict** [2] - 70:16, 114:23
**strictly** [3] - 48:22, 52:2, 98:3
**stripped** [1] - 98:12
**strong** [1] - 117:1
**struggling** [1] - 43:7
**stuck** [1] - 44:19
**study** [1] - 9:9
**stuff** [2] - 11:20, 11:21
**subject** [12] - 5:4, 5:7, 6:1, 8:19, 28:5, 50:19, 51:23, 54:15, 64:5, 95:2, 98:13, 114:3
**submit** [4] - 32:1, 46:2, 57:18, 63:15
**submitted** [3] - 12:10, 25:12, 29:2
**subsequent** [13] - 8:13, 10:2, 10:18, 11:6, 15:16, 16:24, 19:16, 20:9, 32:13, 34:8, 45:20, 75:14, 76:5
**substantive** [4] - 40:6, 108:24, 110:14, 111:6
**substituted** [1] - 96:22
**subtle** [1] - 43:7
**subtlety** [1] - 40:24
**success** [1] - 116:13
**successful** [1] - 89:15
**sue** [5] - 92:22, 93:11, 95:22, 98:18
**sued** [18] - 9:4, 71:8, 76:13, 90:17, 91:9, 92:11, 92:19, 93:20, 93:24, 94:7, 95:8, 96:3, 96:21, 97:7, 99:16, 106:4, 113:23, 118:1
**suffered** [1] - 33:25
**suggest** [1] - 42:21

**suggesting** [2] - 41:25, 77:20
**suggestion** [1] - 118:10
**suing** [5] - 92:11, 94:9, 94:10, 95:18
**suit** [25] - 7:12, 7:14, 23:4, 49:1, 69:9, 79:21, 91:19, 91:25, 92:24, 98:25, 99:2, 99:3, 101:11, 102:3, 102:13, 103:15, 103:17, 103:24, 103:25, 106:5, 106:6, 113:24, 113:25, 114:18
**Suite** [2] - 1:17, 2:5
**suits** [3] - 88:6, 90:20, 91:5
**summarily** [1] - 37:17
**summary** [1] - 25:14
**supervise** [2] - 55:9, 55:23
**supervision** [3] - 54:15, 55:7, 120:11
**Supp** [2] - 97:4, 110:15
**supplement** [1] - 46:2
**suppose** [2] - 20:17, 39:13
**supreme** [1] - 57:23
**Supreme** [10] - 48:21, 49:3, 57:25, 58:3, 60:24, 61:21, 78:11, 91:22, 109:15, 115:14
**surmise** [1] - 78:19
**survive** [1] - 105:5
**system** [3] - 10:11, 86:23, 115:16
**systemic** [4] - 86:9, 86:13, 86:17, 86:18

### T

**Tanya** [1] - 96:12
**technical** [1] - 51:20
**telephone** [6] - 26:14, 28:20, 29:15, 39:4, 63:18, 63:19
**term** [3] - 43:8, 77:18, 91:18
**terms** [16] - 10:14, 12:20, 16:3, 19:3, 28:6, 34:11, 54:6, 58:25, 66:10, 68:13, 69:13, 71:1, 74:18, 101:20, 107:14, 117:16
**test** [1] - 78:16

**testifying** [1] - 21:21
**testimony** [1] - 120:9
**textbook** [1] - 108:17
**THE** [287] - 1:1, 1:2, 1:10, 1:13, 2:2, 2:7, 2:8, 3:2, 3:3, 3:7, 3:14, 3:24, 4:7, 4:12, 4:22, 5:6, 5:8, 5:10, 5:15, 5:20, 5:25, 6:12, 6:17, 6:20, 7:1, 7:10, 7:25, 8:8, 8:11, 8:16, 8:18, 8:25, 9:16, 9:18, 9:21, 9:25, 10:2, 10:8, 10:13, 11:14, 11:19, 12:4, 12:12, 13:10, 13:12, 13:21, 14:2, 14:7, 14:13, 14:25, 15:8, 15:11, 15:18, 15:20, 15:22, 16:6, 16:10, 16:14, 16:18, 17:1, 17:6, 17:10, 17:20, 17:23, 18:3, 18:6, 18:10, 18:23, 19:6, 19:13, 19:21, 20:17, 21:7, 21:20, 22:25, 23:5, 23:9, 23:16, 24:7, 24:25, 25:3, 25:6, 25:9, 25:20, 25:23, 26:21, 27:2, 27:6, 27:17, 27:21, 28:1, 28:11, 28:23, 29:4, 29:25, 30:23, 31:19, 31:24, 32:5, 32:9, 32:19, 32:22, 33:2, 33:11, 34:19, 34:24, 35:10, 35:13, 35:23, 36:2, 36:6, 36:13, 37:1, 38:8, 39:13, 39:23, 39:25, 41:25, 42:11, 42:15, 44:15, 45:11, 46:3, 46:12, 47:18, 48:15, 48:17, 49:10, 49:21, 50:2, 50:9, 50:20, 51:8, 51:20, 52:7, 52:20, 53:1, 53:14, 54:4, 54:17, 54:25, 55:10, 56:1, 56:7, 56:20, 56:25, 57:9, 58:17, 58:18, 58:19, 58:21, 58:22, 59:13, 59:21, 60:1, 60:4, 60:22, 61:23, 62:10, 62:19, 62:21, 62:23, 62:25, 63:5, 63:8, 63:25, 64:7, 64:15, 64:19, 65:2, 65:7, 65:15, 65:19, 65:23, 66:5, 67:18, 67:22, 68:7, 68:11,
68:20, 69:2, 69:16, 69:23, 70:17, 71:7, 71:19, 72:2, 72:9, 72:23, 73:5, 73:7, 73:9, 74:11, 76:10, 76:18, 76:24, 77:9, 77:13, 77:18, 78:5, 78:23, 79:25, 80:12, 80:24, 81:11, 82:16, 82:24, 83:3, 83:11, 84:2, 84:11, 84:16, 84:22, 85:1, 85:7, 85:11, 85:15, 85:25, 86:9, 86:13, 86:24, 87:2, 88:1, 89:11, 89:18, 90:7, 90:12, 91:11, 92:5, 92:9, 92:20, 93:3, 93:9, 94:1, 94:9, 94:12, 94:18, 95:5, 95:14, 95:24, 96:7, 96:19, 96:24, 97:15, 98:7, 98:23, 100:8, 100:20, 101:2, 101:9, 101:13, 101:24, 102:2, 103:10, 103:15, 104:1, 104:9, 104:13, 104:17, 105:1, 106:3, 106:8, 106:16, 106:20, 106:24, 107:12, 107:22, 107:24, 108:3, 108:6, 108:20, 109:13, 109:19, 109:23, 110:3, 112:3, 112:6, 112:14, 112:19, 112:25, 113:19, 114:5, 115:18, 115:21, 116:1, 116:9, 116:14
**themselves** [2] - 53:8, 78:22
**theoretically** [1] - 56:12
**theory** [1] - 92:15
**thereafter** [2] - 30:25, 120:11
**therefore** [7] - 47:6, 61:10, 61:21, 66:24, 72:4, 92:20, 110:6
**thereof** [1] - 120:14
**thirdhand** [1] - 21:21
**threaten** [1] - 78:8
**threatened** [1] - 113:22
**three** [11] - 4:11, 4:14, 4:19, 4:20, 6:15, 7:6, 68:23, 69:8, 74:23,

79:20, 105:25
**threshold** [1] - 57:11
**throughout** [1] - 9:5
**thrown** [1] - 77:18
**ties** [4] - 26:5, 29:15, 29:16
**time-consuming** [1] - 115:12
**timeline** [1] - 38:13
**timely** [6] - 29:19, 40:5, 40:8, 40:15, 40:20, 114:14
**tirelessly** [1] - 29:21
**today** [10] - 6:2, 8:19, 15:15, 22:20, 33:19, 63:9, 64:6, 89:8, 98:2, 117:22
**together** [3] - 13:4, 66:7, 102:19
**took** [3] - 15:1, 22:10, 112:3
**top** [1] - 118:11
**touch** [3] - 44:12, 70:24
**touches** [1] - 71:1
**tow** [1] - 84:8
**track** [1] - 17:10
**tracks** [2] - 91:23, 92:2
**traffic** [1] - 17:12
**trafficking** [1] - 9:14
**trans** [1] - 14:7
**transcribed** [2] - 18:22, 120:11
**transcript** [11] - 15:14, 15:15, 32:16, 45:19, 46:2, 54:5, 62:3, 62:4, 62:17, 117:15, 120:7
**TRANSCRIPT** [1] - 1:9
**transcription** [1] - 120:12
**TRANSCRIPTION** [1] - 1:23
**transcripts** [9] - 12:9, 18:11, 18:19, 18:20, 21:14, 22:23, 45:21, 53:22, 55:1
**transfer** [7] - 14:8, 27:8, 42:23, 43:2, 53:10, 57:16, 81:13
**transferred** [9] - 13:18, 14:17, 41:3, 41:23, 42:6, 43:22, 75:3, 75:21, 81:2
**transitory** [4] - 36:21, 79:22, 81:2, 81:6
**translate** [1] - 92:10
**transpired** [1] - 70:24
**trap** [1] - 53:19
**treated** [1] - 58:12

treatment [1] - 115:7
Trial [1] - 109:10
trial [1] - 97:21
trials [1] - 60:15
trouble [1] - 77:17
troublesome [1] - 70:5
troubling [1] - 70:3
true [3] - 33:10, 77:15, 120:6
truly [1] - 86:5
try [7] - 12:24, 30:13, 42:12, 51:21, 86:2, 86:25, 118:12
trying [13] - 16:21, 30:13, 39:25, 45:17, 49:8, 50:24, 62:25, 63:1, 83:15, 85:3, 94:12, 99:21, 113:7
TUESDAY [1] - 1:11
twice [1] - 67:21
twist [2] - 95:11, 95:19
two [37] - 4:10, 4:25, 5:11, 6:1, 6:15, 7:4, 7:6, 11:5, 14:14, 15:5, 18:13, 19:7, 19:17, 22:10, 29:5, 29:13, 37:2, 44:7, 51:10, 52:23, 66:18, 68:23, 73:12, 74:2, 75:1, 75:5, 75:6, 75:22, 78:16, 79:18, 87:17, 89:5, 100:16, 115:3, 115:8
two-prong [1] - 78:16
TYCHSEN [1] - 1:15
type [3] - 51:17, 58:4, 104:7
types [3] - 52:23, 81:1, 88:11
typically [8] - 48:24, 55:17, 57:22, 58:2, 59:1, 87:11, 87:15, 99:2

**U**

umbrella [1] - 101:4
unaccountable [1] - 40:17
unavailable [1] - 67:1
unclear [3] - 73:22, 73:23, 99:22
unconstitutional [4] - 67:25, 78:10, 79:19, 90:17
unconstitutionally [4] - 77:3, 84:5, 93:23, 100:3
under [9] - 35:19,

42:17, 48:11, 55:23, 55:24, 71:9, 80:8, 120:11
understood [2] - 5:10, 73:6
undisputed [1] - 34:22
undoubtedly [2] - 78:18, 78:20
unfathomable [1] - 75:8
unfortunately [1] - 9:1
United [2] - 90:10, 120:5
UNITED [2] - 1:1, 1:10
unjust [1] - 50:15
unless [13] - 20:6, 37:12, 39:15, 44:20, 51:2, 51:7, 56:1, 82:13, 88:8, 89:22, 107:10, 115:17, 116:6
unlimited [1] - 113:2
up [24] - 11:12, 13:5, 14:15, 15:2, 16:6, 16:22, 20:24, 22:1, 32:24, 44:4, 44:9, 66:11, 72:14, 72:16, 73:20, 98:24, 106:15, 109:3, 109:14, 109:21, 110:1, 110:17, 111:25, 112:2
up-to-date [1] - 16:22
uphold [1] - 60:10
uses [2] - 41:13, 91:18

**V**

vaccinated [1] - 3:25
vague [1] - 33:23
valid [2] - 8:1, 103:8
value [1] - 71:1
varies [2] - 29:12, 29:13
various [2] - 34:11, 81:3
Varner [1] - 67:14
verify [2] - 11:4, 29:14
Verizon [1] - 90:9
versus [5] - 71:2, 91:17, 92:2, 95:15, 95:25
victim [5] - 26:7, 26:8, 26:9, 29:16, 44:12
vindicating [1] - 81:8
violate [3] - 83:9, 103:8, 111:6
violated [1] - 94:5
violation [7] - 38:1, 52:5, 66:21, 82:2,

90:17, 98:12, 106:9
violence [2] - 13:10, 13:12
violent [1] - 26:7
Virginia [4] - 27:15, 27:16, 41:19, 78:1
virtually [2] - 17:19, 38:10
virtue [1] - 78:12
visit [1] - 116:25
vs [4] - 78:1, 90:9, 97:3, 98:11

**W**

wait [3] - 7:10, 25:9, 62:10
waiting [2] - 45:8, 115:3
walk [2] - 31:19, 84:2
wants [2] - 42:12
Washington [1] - 1:18
waste [1] - 35:8
WAYNE [103] - 1:15, 3:13, 4:23, 5:7, 5:9, 5:14, 6:11, 6:14, 6:19, 6:22, 7:7, 7:12, 8:5, 8:9, 8:13, 8:17, 8:21, 9:15, 9:17, 9:20, 9:23, 10:1, 10:4, 10:12, 19:19, 20:8, 20:25, 33:6, 34:6, 34:21, 36:7, 36:15, 37:4, 38:9, 39:21, 39:24, 40:4, 42:3, 42:14, 42:20, 45:17, 46:7, 48:19, 49:15, 49:23, 50:11, 50:25, 51:16, 51:25, 52:16, 52:23, 53:3, 57:10, 60:23, 62:14, 63:7, 63:10, 64:4, 64:9, 64:21, 65:16, 67:20, 67:23, 68:10, 68:12, 69:17, 70:14, 72:7, 79:10, 80:10, 80:15, 80:25, 82:18, 82:25, 83:6, 84:10, 87:5, 90:8, 90:15, 91:16, 92:8, 92:18, 93:1, 93:6, 93:17, 94:7, 94:11, 94:15, 94:20, 95:8, 95:17, 98:1, 98:8, 101:19, 101:25, 102:4, 106:18, 108:8, 113:21, 114:7, 116:3, 116:11, 119:24
Wayne [28] - 3:13,

4:22, 10:23, 12:22, 19:14, 21:11, 21:18, 31:20, 33:2, 36:6, 45:16, 48:18, 57:9, 60:22, 63:6, 67:19, 79:8, 84:9, 87:4, 90:7, 96:3, 99:18, 99:25, 103:19, 105:14, 107:24, 108:6, 113:19
ways [2] - 95:3, 99:23, 119:9
week [1] - 30:19
weeks [7] - 12:18, 21:24, 29:13, 38:12, 38:13, 44:7, 64:6
well-established [1] - 79:21
whereas [2] - 15:25, 115:15
whole [4] - 33:3, 47:18, 110:19, 113:16
Williams [35] - 4:20, 5:13, 5:16, 5:19, 9:12, 9:24, 10:5, 11:5, 17:10, 19:3, 19:9, 19:15, 19:20, 22:25, 23:1, 23:3, 23:6, 25:10, 26:21, 26:24, 26:25, 29:6, 32:13, 32:16, 36:14, 36:18, 46:13, 46:25, 49:13, 50:21, 66:16, 74:21, 75:25, 76:4
Williams' [1] - 17:18
willing [2] - 99:10, 101:19
WILMER [1] - 1:14
winnow [1] - 94:13
wishes [3] - 64:13, 69:22, 92:1
withdraw [1] - 113:22
witnesses [1] - 120:9
wondering [1] - 12:13
word [6] - 18:20, 34:4, 42:4, 44:17, 45:15, 51:18
works [2] - 18:14, 101:17
worksheet [1] - 31:11
worse [1] - 22:16
Worthington [1] - 69:10
writ [2] - 109:5, 109:11
write [5] - 25:4, 25:17, 31:14, 57:2
writings [1] - 28:24
written [7] - 10:17, 28:5, 28:9, 28:11,

28:12, 46:18, 56:14
wrongdoing [1] - 82:1
wrongly [1] - 93:14
wrote [1] - 81:25

**Y**

year [3] - 20:10, 69:8, 119:15
Young [19] - 73:19, 74:1, 76:15, 76:16, 76:19, 77:5, 78:11, 86:21, 88:17, 89:1, 89:4, 90:15, 91:10, 95:23, 98:17, 106:12, 106:14
Younger [10] - 47:17, 59:16, 60:12, 61:2, 61:7, 61:11, 61:14, 61:22, 64:20, 64:25
yourself [1] - 70:2