# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

|  |  |
|---|---|
| ROBERT FRAZIER, *et al.*, individually and on behalf of a class of similarly situated persons,<br><br>    Plaintiffs,<br><br>    v.<br><br>PRINCE GEORGE'S COUNTY, MARYLAND, *et al.*,<br><br>    Defendants. | Civil No. **22-1768 PJM** |

## MEMORANDUM OPINION

This putative class action challenges the process by which criminal defendants in Prince George's County, Maryland are granted release prior to trial. Plaintiffs are individuals who were arrested and charged with various crimes between October 2020 and June 2022.[1] They assert that the Judge Defendants[2] improperly delegated decisions regarding their pretrial release to Defendant Employees[3] of the County, also a Defendant, and that the process by which all Defendants made release determinations violated their due process rights. Defendants have

---

[1] Plaintiffs are Robert Frazier, Anibal Hernandez, D.P., a minor, Christopher Butler, Miramba Williams, Donnell Davis, Leslie Sharp, Elmer Laguan-Salinas, and Adrienne Worthington.

[2] The Judge Defendants are Prince George's County District Judges Lakeecia Allen, Byron Bereano, John Bielec, Scott Carrington, Ada Clark-Edwards, Stacey Cobb Smith, Brian Denton, Robert Heffron, Jr., Donnaka Lewis, Gregory Powell, and Circuit Court Judge Cathy Serrette.

[3] The Defendant County Officials were Corenne Labbé, Director of the County Department of Corrections; Jeffrey Logan, Division Chief of the County Population Management Division, Kenneth Gray, Section Chief of the County Community Supervision Section; and Tanya Law, Unit Chief of the County Monitoring Services Unit. Because all the County Officials were sued in their official capacity, the Court, by oral opinion at the hearing on the Motions to Dismiss, dismissed them and made Prince George's County a single defendant in their place. ECF No. 80; *see Hutto v. S.C. Ret. Sys.*, 773 F.3d 536, 542 (4th Cir. 2014).

moved to dismiss the case based on lack of subject matter jurisdiction, abstention doctrines, and failure to state a claim.  For the following reasons, the Court **GRANTS IN PART AND DENIES IN PART** the Motions to Dismiss of the County (ECF No. 64) and the Judge Defendants (ECF No. 66).

## I.   PRETRIAL RELEASE PROCEEDINGS

### A.  In General

The Court begins with an overview of the pretrial release process in Prince George's County, which it draws from Plaintiffs' Complaint and the arguments of counsel at oral argument on the Motions.

When an individual is arrested in Prince George's County, he or she is taken before a District Court Commissioner[4] for an initial determination of release or detention.  Any individual ordered to be detained is given a prompt bail review hearing, typically within 24 hours, by a judge of the District or the Circuit Courts of the County.  The judge decides whether pretrial release or detention is appropriate.  Maryland law directs that the judge's decision be based, *inter alia*, on the recommendation of the Population Management Division of the Prince George's County Department of Corrections (the "Pretrial Division").  Md. Code Crim. Proc. § 4-216.1(f)(1).  What that requirement has meant in practice, in Prince George's County at least, is that, while the judge authorizes[5] pretrial release, actual release occurs only when the Pretrial

---

[4] For the sake of those unfamiliar with the structure of its courts, Maryland's two trial courts consist of a "District" Court of limited jurisdiction and a "Circuit" court of general jurisdiction. Md. Code Ann., Cts. & Jud. Proc. §§ 1-501, 1-601.  The state District Court for a given County, e.g., for Prince George's County, should not be confused with the United States District Court for the District of Maryland, the federal trial court where this suit is pending.

[5] "Authorize" is a key word in evaluating the process.  A review of transcripts from various Plaintiffs' bail review hearings makes clear that no judge has ever ordered immediate, unconditional release for any of Plaintiffs.  Instead, the judges' decisions are best understood as conditional orders, or "options," authorizing release only if and when the Pretrial Division finds a defendant to be eligible for release.

Division determines that a defendant satisfies certain criteria making him or her eligible for release.[6]  Plaintiffs contend that the methods by which the Pretrial Division decides eligibility are opaque, drawn out, and often arbitrary, during which time of course the defendant unconstitutionally remains in custody.  *See* Compl.  ¶ 6–7.

The Pretrial Division considers a number of criteria in determining a defendant's eligibility for release, including:

- Whether the offense charged is non-violent;

- Whether the defendant's identity, phone number, and residence address can be confirmed;

- Whether there are open warrants, detainers, or other charges against the defendant pending in Prince George's County or another jurisdiction;

- Whether a defendant resides in Prince George's County;

- Whether a defendant, if released, would have access to a working telephone;

- Whether a defendant would be able to reside with a cooperative family member upon release;

- Whether a defendant is employed, in school, or otherwise involved in vocational training, including the name and location of the employer, school, or training program; and

- The defendant's references, employment history, medical information, and past and present substance usage.

Logan Aff., ECF No. 64-2.  At this juncture, the Court has no information before it regarding which of these factors, if any, are deemed mandatory and which are deemed optional in determining a defendant's eligibility for release.

---

[6] The categories for release are organized as "levels" of pretrial release I through IV, the lowest category being for the least extensive supervision, the highest for the more extensive supervision. Those levels are detailed in an exhibit attached to the County's Motion to Dismiss.  ECF No. 64-4.  All, or nearly all, of the named Plaintiffs were authorized for Level IV release, the category where serious felonies have been charged.   Level IV release involves monitoring of the defendant via an electronic device and frequent contact with a Case Manager and Investigator.

The Pretrial Division apparently has no deadline by which it must determine whether a defendant is eligible for release.  *See* Logan Aff., ECF No. 64-2 (explaining that "[t]he time it takes to obtain this information can vary for each defendant" and is dependent both on the promptness of responses by individuals contacted on a defendant's behalf, and on the Pretrial Division's caseload).  At *some* point, however, if the Pretrial Division determines that it cannot confirm whatever information it believes is critical, a defendant is deemed ineligible for pretrial release and remains in custody.  The Pretrial Division is supposed to submit a document to the judge who conducted the bail hearing, explaining the reasons for determining that a defendant is ineligible for release, which the judge may or may not have to sign off on.[7]  A defendant can always request periodic bail review hearings at which the judge is able to change the defendant's detention status.[8]  But the Court has not been advised of any policy or protocol indicating the extent and frequency with which the Pretrial Division must undertake to confirm relevant eligibility factors and report back to the bail judge.

Too often according to Plaintiffs' counsel (relying on oral reports from public defenders representing Plaintiffs in the trial courts), the process of confirming whether a client is eligible for release or even for obtaining information from the Pretrial Division as to a given defendant's status takes an unduly long time.

---

[7] The Court has not received such a form for some of the named Plaintiffs.  A form was supplied as to Plaintiff Williams.  ECF No. 83-5 at 5.  In the case of Plaintiff Laguan-Salinas, however, it is clear from the transcript of a follow-up bail review that no such report was received by the judge, who questioned the fact that it was missing.  ECF No. 85-4 at 41, 47–50.

[8] Indeed, Plaintiffs' multiple requests for bail review hearings have all been granted.

**B.  The Situations of the Named Plaintiffs**

The Court considers the particulars of Plaintiffs' individual cases.

As of November 2022, six of the named Plaintiffs (Frazier, Hernandez, Davis, D.P., Sharp, and Worthington) (collectively, the "Released Plaintiffs") were no longer in custody.  The remaining three Plaintiffs (Butler, Williams, and Laguan-Salinas[9]) (collectively, the "Detained Plaintiffs"), for various reasons, continue to be detained.

1.  Released Plaintiffs

i.  Robert Frazier

Plaintiff Frazier was arrested on May 28, 2022 for allegedly having a loaded handgun in a vehicle, knowingly altering a firearm identification number, illegally possessing an unregistered firearm and ammunition, possessing a firearm with a felony conviction, and committing various traffic code violations.  He had an initial appearance before the District Court on May 29, 2022 and was ordered held without bond.  He had subsequent bail review hearings on May 31, June 21, and June 28, 2022 respectively, before District Court Judge Defendants Bereano, Clark-Edwards, and Denton.  On August 16, 2022, after he was indicted and his case was transferred to Circuit Court, Frazier had a fourth bail review hearing before Circuit Court Judge Lawrence V. Hill, Jr., who is not currently a Defendant in this case.  Judge Hill modified Frazier's bail status to "release-on-recognizance" so that he could be transferred to the General District Court in Arlington County, Virginia to answer to a detainer.  On August 24, 2022, Frazier was transferred to Virginia and released from that state's custody the same day.  He returned to the Maryland Circuit Court on August 25, 2022 and was released from Prince George's County custody following a bail review with Judge Hill.  Frazier is currently awaiting trial.

---

[9] Laguan-Salinas was released in June 2022 but has since been detained on "no bond" status in connection with a separate charge.  ECF No. 70.

ii.  Anibal Hernandez

Plaintiff Hernandez was arrested on June 22, 2022 for allegedly possessing with intent to distribute a controlled dangerous substance (CDS), importing a CDS into the state, and committing a firearm/drug trafficking crime.  He had an initial appearance in District Court on June 23, 2022 and was ordered held without bond.  Hernandez then had bail review hearings on June 24, 2022 before District Judge Defendant Judge Allen, and on July 25, 2022 before District Court Judge Katina S. Steuart, who is not currently a Defendant in this case.  At his second bail hearing, Hernandez had a cash bond set at $5,000 and was released the same day after paying it. Hernandez is currently awaiting trial.

iii.  Donnell Davis

Plaintiff Davis was arrested on October 8, 2020 and charged with assault in the first and second degree.  He had an initial appearance in the District Court on the same day.  He had bail review hearings on October 9 and November 9, 2020 before District Judge Defendant Heffron, Jr., and on December 16, 2020 before District Judge Defendant Smith.  He was detained pending his trial and on January 7, 2021, at trial, was found not guilty and released.

iv.  D.P., a Minor

Plaintiff D.P., a minor, was arrested on June 16, 2022 for allegedly committing armed robbery, theft, using a firearm during a felony or violent crime, possessing a dangerous weapon on school property, committing assault in the first degree, and possessing a firearm as a minor. He had an initial appearance in the District Court that same day and bail review hearings on June 21 and June 28, 2022, respectively before District Judge Defendants Clark-Edwards and Denton, and on August 17, 2022 before District Court Judge Jonas D. Legum, who is not currently a Defendant in this case.  At his August 17, 2022 bail review, D.P. had a cash bond set at $15,000

6

and was released upon payment.  Following his indictment, D.P.'s case was transferred to the Circuit Court, where he is currently awaiting trial.

   v.  Leslie Sharp

Plaintiff Sharp was arrested on June 11, 2021 and charged with assault in the second degree.  He made an initial appearance in the District Court that same day and had bail review hearings on June 14, June 24, and July 14, 2021, respectively before District Judge Defendants Denton, Carrington, and Varner Lewis.  He was detained pending trial and on July 22, 2021, the day of Sharp's trial, the State entered the charges against him *nolle prosequi*, his case was closed, and he was released.

   vi.  Adrienne Worthington

Plaintiff Worthington was arrested on December 23, 2021 and charged with assault in the first and second degrees.  She made an initial appearance in District Court the next day and had bail review hearings on December 28, 2021 before District Judge Defendant Bielec, and on February 9, 2022 before District Judge Defendant Heffron, Jr., when she was released on an unsecured bond.  On April 5, 2022, the State entered *nolle prosequi* in Worthington's case; her case was closed, and she was released.

   2.  Detained Plaintiffs

   i.  Christopher Butler

Plaintiff Butler was arrested on October 27, 2021 and charged with murder in the second degree, manslaughter, assault in the first and second degree, and use of a firearm during the commission of a crime of violence or felony.  He had an initial appearance the day of his arrest and had bail review hearings on October 28, 2021 before District Judge Defendant Clark-Edwards, and on October 29, 2021 before District Court Judge Clayton A. Aarons, who is not

currently a Defendant in this case.  After Butler was indicted, his case was transferred to the

Circuit Court.  He then had bail review hearings on February 18, 2022 before Circuit Judge

Defendant Serrette, who authorized Butler for pretrial release subject to review by the Pretrial

Division, which found him ineligible due to the nature of the pending charge (murder) and his

mental health status.  Logan Aff., ECF No. 64-2.  On July 26 and 28, 2022, Butler had a bail

review hearing before Circuit Judge Krystal Q. Alves, who is not currently a Defendant in this

case.  Judge Alves did not modify Butler's release status.  Butler is currently detained and is

scheduled to be tried starting January 17, 2023.

  ii.  Miramba Williams

Plaintiff Williams was arrested on June 30, 2022 and charged with possession of over ten

grams of marijuana, possession with intent to distribute a controlled dangerous substance,

possession of a handgun in a vehicle, distribution with a firearm, a firearm/drug trafficking

crime, illegal possession of a regulated firearm, possession of a loaded handgun in a vehicle,

illegal possession of ammunition, and use of a firearm during a felony or violent crime.

Williams had an initial appearance in District Court on July 1, 2022 and bail review hearings on

July 5, 2022 before District Judge Defendant Gregory Powell, and on August 12, 2022 before

District Court Judge Patrice E. Lewis, who is not currently a Defendant in this case.  Williams

was found to be ineligible for pretrial release because he was already on probation for another

offense and because he had a detainer from Montgomery County, Maryland.  Williams remains

detained and is currently awaiting trial.

  iii.  Elmer Laguan-Salinas

Plaintiff Laguan-Salinas was arrested on March 15, 2022 and charged with assault in the

second degree and disorderly conduct (the "First Charge").  While detained, Laguan-Salinas was

served with an arrest warrant for a separate incident involving assault in the first degree, use of a firearm during a felony or violent crime, possession of a firearm by a convicted felon, reckless endangerment, and illegal possession of a firearm (collectively, the "Second Charge"). Laguan-Salinas had an initial appearance in both cases on March 16, 2022, the day after his arrest. He had bail review hearings on March 17 and May 12, 2022, respectively before District Judge Defendants Smith and Bielec. Laguan-Salinas was detained pending trial. On May 25, 2022, the State entered a *nolle prosequi* as to the First Charge. On June 17, 2022, Laguan-Salinas had a bail review hearing before non-Defendant District Court Judge Lewis and was released on an unsecured bond. On August 16, 2022, Laguan-Salinas was indicted on the Second Charge and was transferred to Circuit Court. He was then detained pursuant to a bench warrant and ordered to be held without bond. Laguan-Salinas has been detained since September 10, 2022 and most recently had a bail hearing on November 10, 2022 before non-Defendant District Court Judge Nicholas Rattal, who declined to modify Laguan-Salinas' release conditions. He remains detained while awaiting trial.

\*       \*       \*

In July 2022, the nine named Plaintiffs filed this case against Prince George's County, various County Officials in their official capacities, and Prince George's County District and Circuit Court Judges who made certain decisions regarding the pretrial release status of the various Plaintiffs. On September 26, 2022, Defendants filed separate Motions to Dismiss. On October 25, 2022, the Court heard oral argument on the Motions and took them under advisement. During the hearing, the Court, by oral order, dismissed the individual County Officials from the case since they had only been sued in their official capacities, making the

County the true party in interest.  ECF No. 80; s*ee Hutto v. S.C. Ret. Sys.*, 773 F.3d 536, 542 (4th

Cir. 2014).  The Court considers what remains of Defendants' Motions to Dismiss.[10]

## II.  LEGAL STANDARD

### A.  Motion to Dismiss for Lack of Subject Matter Jurisdiction Under Rule 12(b)(1)

A motion to dismiss for lack of subject matter jurisdiction challenges a court's authority

or competence to hear the case and will be granted "where a claim fails to allege facts upon

which the court may base jurisdiction."  *Davis v. Thompson,* 367 F. Supp. 2d 792, 799 (D. Md.

2005).  In this type of facial challenge, a plaintiff is effectively afforded the same procedural

protection as is due under Rule 12(b)(6) consideration.  *Kerns v. United States*, 585 F.3d 187,

192 (4th Cir. 2009).

### B.  Motion to Dismiss for Failure to State a Claim Under Rule 12(b)(6)

To survive a motion to dismiss under Rule 12(b)(6), a complaint must plead "enough

facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly,* 550 U.S.

544, 570 (2007).  A claim will only have "facial plausibility when the plaintiff pleads factual

content that allows the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged."  *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).  A complaint is properly

dismissed where, as a matter of law, "the allegations in a complaint, however true, could not

raise a claim of entitlement to relief."  *Twombly,* 550 U.S. at 558.

## III.  DISCUSSION

Defendants' two Motions assert a total of six grounds they believe warrant dismissal: (1)

lack of subject matter jurisdiction pursuant to the *Rooker-Feldman* doctrine, (2) various

---

[10] Plaintiffs' Motion for Preliminary Injunction (ECF No. 2) and Motion for Class Certification
(ECF No. 4) remain pending.

abstention doctrines,[11] (3) sovereign and judicial immunity, (4) lack of entitlement to monetary damages, (5) failure to state a claim; and (6) lack of justiciability.

### A. Threshold Issues

1. <u>Lack of Subject Matter Jurisdiction Pursuant to *Rooker-Feldman*</u>

Defendants argue that the Court lacks jurisdiction because, they say, pursuant to the *Rooker-Feldman* doctrine, a federal court may not review bail decisions made by Maryland state courts.

*Rooker-Feldman* is a "narrow" doctrine that precludes a federal district court from entertaining suits by "state-court losers" who seek review and rejection of a state court judgment. *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 283–84 (2005). A federal court lacks subject matter jurisdiction pursuant to *Rooker-Feldman* if a plaintiff's requested relief would "reverse or modify" a state court decree. *Adkins v. Rumsfeld*, 464 F.3d 456, 464 (4th Cir. 2006) (citing *Exxon Mobil Corp.*, 544 U.S. at 284).

The Court finds *Rooker-Feldman* inapplicable here. Plaintiffs may indeed be "state-court losers" in the sense that they may not have obtained pretrial release on conditions or in as timely a fashion as they believe they were due, but Plaintiffs do not aim to "reverse or modify" particular bail determinations made by Prince George's County Judges. They do not ask the Court to mandate any particular outcomes regarding their detained status. What they seek in this suit is only to ensure that the *process* by which bail decisions are made in Prince George's County is constitutionally adequate. This may or may not affect an individual Plaintiff's bail outcome in a future bail review proceeding, but it is entirely possible that a different pretrial

---

[11] Both sets of Defendants invoke the *Younger* abstention doctrine. The Judge Defendants additionally raise the *Burford* and *Colorado River* abstention doctrines.

release process would still result in the same bail outcome.  Therefore, Plaintiffs' claims do not amount to relief that would "reverse or modify" a state court decree.

2. <u>Abstention Doctrines</u>

Having established that it has subject matter jurisdiction in this case, the Court considers whether any doctrines nonetheless warrant abstention by the Court.  The Court finds no reason to abstain based on any of these doctrines.

i. *Younger* Abstention

Both the County and Judge Defendants ask the Court to decline to hear Plaintiffs' claims based on *Younger v. Harris*, 401 U.S. 37 (1971), which holds that a federal court should not interfere in an ongoing state criminal proceeding that implicates important state interests and that also provides an adequate opportunity for a plaintiff to raise a constitutional claim.  *Laurel Sand & Gravel, Inc. v. Wilson*, 519 F.3d 156, 165 (4th Cir. 2008).  While Plaintiffs do not deny that the State of Maryland, through its judges, has a strong interest in the integrity of the bail decisions of its judges, they submit that this lawsuit will not interfere with their prosecutions and that their criminal trials are not an adequate forum in which to raise constitutional claims about pretrial release.

Preliminarily, of course, the Court must clarify *which* state proceeding is the "relevant" one for purposes of *Younger* analysis.  The Court finds it is Plaintiffs' criminal *trials*, not their bail review hearings, to which *Younger* applies.  *See Schultz v. Alabama*, 42 F.4th 1298, 1312 (11th Cir. 2022) (comparing federal case with state criminal trial for *Younger* purposes); *Arevalo v. Hennessy*, 882 F.3d 763, 766 (9th Cir. 2018) (same); *Atkins v. Michigan*, 644 F.2d 543, 549 (6th Cir. 1981) (same).  That said, the Court finds that *Younger* abstention is inappropriate for two reasons.

First, this lawsuit will not interfere with the determination of guilt or innocence at the trials of Plaintiffs because the issue of pretrial release is entirely collateral to the question of an individual's criminal guilt or innocence.  *See Schultz*, 42 F.4th at 1312 (declining to abstain because case seeking faster bail determinations did not interfere with any state prosecution); *Arevalo*, 882 F.3d at 766 (holding *Younger* abstention not appropriate because criminal prosecution would "move forward unimpeded" regardless of how bail issue was resolved); *Atkins*, 644 F.2d at 549 (explaining that issue of bail was "collateral to and independent of the merits of the case pending against" plaintiff).  Defendants' reliance on *O'Shea v. Littleton*, 414 U.S. 488 (1974), is misplaced: There, plaintiffs wanted an "injunction aimed at controlling or preventing the occurrence of specific events that might take place in the course of future state criminal *trials*."  *Id.* at 500 (emphasis added).  Plaintiffs here seek no such thing.  *See also supra* Section III.A.1 (discussing how Plaintiffs do not seek to modify or reverse a state court order).[12]

Second, Plaintiff's criminal trials are not an adequate forum for *Younger* purposes because Plaintiffs cannot raise issues of pretrial release as part of their criminal defense.  *See Gerstein v. Pugh*, 420 U.S. 103, 108 n.9 (1975) (noting that federal district court properly declined to abstain from hearing bail-related issues because the plaintiffs could not have raised their claims about pretrial detention as part of a criminal defense); *United States v. Bynum*, 83 F. App'x 533, 534 (4th Cir. 2003) (affirming rejection of *Younger* abstention where state criminal proceedings did not provide an adequate opportunity to resolve revocation of supervised release).

---

[12] To be clear, even if the Court considered Plaintiffs' bail hearings to be the "relevant" proceedings for *Younger*, the relief requested in this case still would not amount to interference. As discussed earlier, *supra* Section III.A.1, Plaintiffs seek primarily to modify the pretrial release process in Prince George's County, not to change their individual bail determinations.

ii. *Burford* and *Colorado River* Abstention

The Judge Defendants also ask the Court to abstain based on two other doctrines, *Burford* and *Colorado River*.  Neither doctrine is properly invoked here.  *Burford* abstention applies only to "complex state administrative processes."  *Martin v. Stewart,* 499 F.3d 360, 364 (4th Cir. 2007).  As will be addressed momentarily in the context of "quasi-judicial" immunity, *infra* Section III.B.1.ii, the practices that Plaintiffs challenge do not meet that definition.  The pretrial release program in this case is an integral part of the decision-making of Maryland's judiciary, not an administrative function of the executive branch to which *Burford* abstention might apply.

The Judge Defendants' arguments as to *Colorado River* abstention are similarly unavailing.  *Colorado River* mandates abstention where the federal and state proceedings are "parallel" and where "exceptional circumstances" exist.  *Water Conservation District v. United States*, 424 U.S. 800, 813 (1976).   But this lawsuit is not parallel with the state criminal prosecutions.  The participants and issues are different: Defendants here (the County and the Judge Defendants) are not parties to the state criminal cases of any Plaintiffs.  Moreover, this is a civil suit challenging the constitutionality of the manner in which state court bail determinations are made, whereas the state proceedings consist of prosecutions of specific individuals for violations of specific state criminal laws.

Furthermore, none of the circumstances that the Judge Defendants cite to justify abstention are "exceptional."  The United States District Court for the District of Maryland is certainly not an inconvenient forum to adjudicate pretrial decisions that have taken place entirely within the state.  And, as discussed in relation to *Younger* abstention, *supra* Section III.A.2.i, criminal trials are not an adequate forum in which to raise constitutional claims pertaining to pretrial release.  In sum, *Colorado River* does not mandate abstention in this case.

14

**B. Remaining Parties and Remedies**

Having established that it has jurisdiction over this case and finding no reason to abstain, the Court considers, as this case moves forward, which parties and remedies belong in the case and which do not.

1. <u>Immunities and Remedies</u>

Both the Judge Defendants and the County claim to be immune from this lawsuit. The Judge Defendants assert sovereign immunity pursuant to the Eleventh Amendment and common law judicial immunity, and the County invokes "quasi-judicial" immunity.

i. The Judge Defendants

The Court considers the Judge Defendants first. Generally, judicial officers are entitled to absolute immunity from suit under both the Eleventh Amendment and the common law. *Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 144–45 (1993); *Stump v. Sparkman*, 435 U.S. 349, 355–56 (1978). Neither type of immunity, however, protects judges from suits for prospective equitable relief. *Ex parte Young*, 209 U.S. 123, 155–56 (1908); *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002); *Lewis v. Blackburn*, 734 F.2d 1000, 1008 (4th Cir. 1984). Indeed, Plaintiffs' counsel at oral argument clearly trimmed the sails of their Complaint and conceded that, with regard to the Judge Defendants, they were only seeking prospective equitable relief (namely, changes in the County's pretrial release process), not money damages. But if that is so, then it is only the claims of Plaintiffs who are presently detained that could reasonably be affected by such a remedy; changes to the pretrial process would not affect Plaintiffs who have been released. Accordingly, all the Released Plaintiffs' claims as to the Judge Defendants will be dismissed; the Detained Plaintiffs' claims for prospective equitable relief as to the Judge Defendants, however, will remain.

The Court acknowledges the effort of the Judge Defendants to block even the Detained Plaintiffs' requests for prospective equitable relief from going forward by arguing that the relief Plaintiffs seek against them is actually "backward looking."  ECF No. 66-1 at 19 ("Plaintiffs' claims against the Judge Defendants are best characterized as a backwards-looking declaration of the Judge Defendants' purported wrongdoing.").  But there is no "backwards-looking" as to the Detained Plaintiffs; they remain in custody subject to possible future bail reviews to which a modified pretrial release process may well apply.  Moreover, they seek to represent a putative class of individuals who are either currently detained or who will be denied pretrial release in the future and who would also potentially be affected by a modified review process, *supra* Section III.B.3.  Accordingly, the Court **GRANTS** the Judge Defendants' Motion to Dismiss with respect to the Released Plaintiffs, but **DENIES** the Motion with respect to the Detained Plaintiffs.

ii.  The County

The County's immunity status presents a slightly different question.  It rightly does not invoke sovereign immunity.  *See, e.g.*, *Berkley v. Common Council of City of Charleston*, 63 F.3d 295, 296 (4th Cir. 1995).  Accordingly, at least initially, Plaintiffs claims against the County for damages as well as for equitable relief would seem to survive.  Nonetheless, the County maintains that it cannot be liable for damages because it is entitled to "quasi-judicial" immunity. The Court agrees.

Non-judicial officers can "adopt" judicial immunity if they perform "tasks so integral or intertwined with the judicial process that [they] are considered an arm of the judicial officer." *Kendrick v. Cavanaugh*, No. CIV. CCB-10-2207, 2011 WL 2837910, at *4 (D. Md. July 14, 2011) (quoting *Bush v. Rauch*, 38 F.3d 842, 847 (6th Cir. 1994)); *see Briscoe v. LaHue,* 460 U.S.

325, 335 (1983). In determining who is eligible for "quasi-judicial" immunity, a court focuses on the "nature of the function performed," not the title of the person to whom it attaches. *Traversa v. Ford*, 718 F. Supp. 2d 639, 646 (D. Md. 2010); *see Buckley v. Fitzsimmons*, 509 U.S. 259, 269 (1993) (applying functional approach). Accordingly, in numerous instances pretrial release officers like the individuals implementing the County's pretrial release program have been granted "quasi-judicial" immunity "for their role in investigating, preparing, and submitting reports." *Williams v. United States*, No. CV DKC-21-537, 2021 WL 1720230, at *5 (D. Md. Apr. 30, 2021); *see Williams v. Hanlon*, No. CV RDB-19-550, 2019 WL 1597320, at *5 (D. Md. Apr. 15, 2019) (same); *see also Whitesel v. Sengenberger*, 222 F.3d 861, 868 (10th Cir. 2000) (granting "quasi-judicial" immunity to pretrial service officers designated by state judges to act as bond commissioners); *Staples v. Edwards*, 592 F. Supp. 763, 764 (E.D. Mo. 1984) (awarding "quasi-judicial" immunity to commissioner who declined to grant pretrial release).

In the present case, the Court finds that the County (through its individual employees acting in their official capacities) is entitled to assert "quasi-judicial" immunity because its (and their) involvement in the pretrial release process constitutes nothing less than the extension of a judicial function. "[T]he decision whether to order the pretrial release of a criminal defendant" is a critical part "of the judicial process." *Tripati v. U.S.I.N.S.*, 784 F.2d 345, 348 (10th Cir. 1986) (granting "quasi-judicial" immunity to parole officer). Whatever may be determined with respect to the constitutionality of the pretrial release process under challenge, there can be no doubt that the County's personnel named here (all acting in their official capacity) have at all times been acting "as [ ] official aide[s]" to the Judge Defendants when they administer the program. *Henriksen v. Bentley*, 644 F.2d 852, 855 (10th Cir. 1981) (citing *Dennis v. Sparks*, 449 U.S. 24, 30 (1980)). And there can be no mistaking that the Judge Defendants' allegedly

improper delegation of pretrial decisions by to the County is the very heart of Plaintiffs' claims. Compl. ¶ 277 (noting a "historical principle that bail falls within the providence of the judiciary and may not be delegated absent explicit statutory authorization").

Plaintiffs suggest that that the County should not be afforded "quasi-judicial" immunity even if its employees are performing a judicial function because they are acting "in clear absence of all jurisdiction." *King v. Myers*, 973 F.2d 354, 357 (4th Cir. 1992) (quoting *Stump v. Sparkman*, 435 U.S. 349, 357 (1978)). The Court is unpersuaded. Maryland law teaches that a judge "shall give consideration to the recommendation of any pretrial release services program." Md. Code Crim. Proc. § 4-216.1(f)(1). Thus, even if it were determined that the County, though its employees, exceeded its authority in one or more respects, it would still have to be said that it "acted within the general subject matter of [its] jurisdiction" granted to it by Maryland law. *Whitesel*, 222 F.3d at 868.

Because the County is entitled to "quasi-judicial" immunity, like the Judge Defendants it can only be liable to Plaintiffs for prospective equitable relief. Accordingly, all of the Plaintiffs' claims for money damages against the County will be **DISMISSED**.

Regarding Plaintiffs' request for future equitable relief, the Court's earlier analysis applies. The only Plaintiffs who remain eligible for such relief are those who remain in custody. As a result, the County's Motion to Dismiss is **GRANTED** in all respects as to the Released Plaintiffs but **DENIED** as to the claim for future equitable relief of the Detained Plaintiffs.

2.  <u>Failure to State a Claim</u>

Defendants argue that the Complaint fails to state a claim for two reasons. First, the County asserts that Plaintiffs have no constitutional right to participate in what is an optional pretrial release program which they argue, by the way, already affords due process. But the

County is focusing on the wrong right: Plaintiffs do not claim they are constitutionally entitled to participate in a pretrial release program (although they may indeed have such a right—a question that, at this juncture at least, the Court does not decide).  Instead, Plaintiffs say that the existing process that they do opt into amounts to unlawful detention.  They accuse Defendants of detaining "presumptively innocent people [ ] for weeks or months without any judicial finding that their detention is necessary to ensure community safety or their return to court."  Pls.' Reply, ECF No. 71 at 13.  Thus, on the face of the Complaint alone, Plaintiffs have plausibly pled a substantive due process interest (bodily liberty) as well as a procedural due process right that the current pretrial release process arguably violates.  *See Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999) (explaining that a court's job at the motion to dismiss stage is to evaluate the sufficiency of a complaint, not to decide the merits of the case).

Second, the Judge Defendants argue that Plaintiffs fail to state a claim pursuant to the Declaratory Judgment Act.  Specifically, they say that no "real and substantial" dispute is involved because Plaintiffs' cases have been closed or transferred to non-Defendant judges.  The Court is unconvinced: A declaratory judgment is appropriate anywhere it would "serve a useful purpose in clarifying and settling the legal relations in issue."  *Centennial Life Ins. Co. v. Poston*, 88 F.3d 255, 256 (4th Cir. 1996).  Certainly, as to the Detained Plaintiffs and future participants in the pre-release program (remembering again that class action relief is sought), an order "clarifying and settling" their rights under the pretrial release program, more particularly due process protections, would resolve the claims pending before the Court, regardless of which state court judge might conduct particular bail reviews.

19

3. Justiciability

Although justiciability is typically a threshold issue, the Court addresses it last because it is largely resolved by the Court's preceding conclusions.  Given that the Released Plaintiffs are being dismissed from this case on other grounds, the Court need not evaluate justiciability as it relates to them.

As for the Detained Plaintiffs, their claims against both the County and the Judge Defendants are justiciable.  While Defendants make three arguments against justiciability, none withstands scrutiny.  First, the County argues that the Detained Plaintiffs lack standing to bring this lawsuit because they have no right to participate in the pretrial release program and, thus, have suffered no harm.  But Plaintiffs, if they choose, most assuredly have the right to participate in the pretrial release program (what rights would they have if they did not participate?).  And, as just explained, *supra* Section III.B.2, Plaintiffs have asserted substantive and procedural due process rights that they allege have been impaired.

Second, the County asserts that the cases of the Detained Plaintiffs are not ripe because judges have not ordered Plaintiffs to be released, only that their circumstances be reviewed by the Pretrial Division for eligibility for possible release.  But, again, Plaintiffs' claims stem from a process that is allegedly constitutionally deficient, not from violations of any court order mandating immediate and unconditional release, *supra* Sections I.A n.4, III.B.2.

Third, the Judge Defendants argue that the Detained Plaintiffs' claims are moot because their state court cases have been reassigned to non-Defendant judges.  A claim is moot when the issues presented are no longer "live" or the parties lack a legally cognizable interest in the outcome.  *City of Erie v. Pap's A.M.*, 529 U.S. 277, 287 (2000) (citation omitted).  But that is not the case here.  Should the Detained Plaintiffs seek further bail review, they may find themselves

in front of one or more of the Defendant Judges, all of whom are alleged to have unconstitutionally delegated release decisions to the Pretrial Division in the past and all of whom may be inclined to do so again.

Beyond that, the Defendant Judges may not evade review simply by passing the basic responsibility for setting bail on to another judge not presently before the Court.  Plaintiffs can fairly invoke the "inherently transitory" exception, which allows courts to exercise jurisdiction over claims that are likely to become moot before the court can reasonably be expected to rule on them.  *Sosna v. Iowa*, 419 U.S. 393, 402 n.11 (1975); *Cnty. of Riverside v. McLaughlin*, 500 U.S. 44, 52 (1991).  Pretrial detention is a classic example of an inherently transitory claim.  *See Gerstein v. Pugh*, 420 U.S. 103, 110 n.11 (1975) ("Pretrial detention is by nature temporary…The claim, in short, is one that is distinctly 'capable of repetition, yet evading review.'"); *Baxley v. Jividen*, 508 F. Supp. 3d 28, 44 (S.D.W. Va. 2020) (noting that pretrial detention is "precisely" the type of situation for which the inherently transitory exception exists). And if this case proceeds as a class action, it makes sense to keep the current roster of Judge Defendants in place, since all of them might be subject to such remedy as the Court might order. *See Sosna v. Iowa*, 419 U.S. 393, 401 (1975) ("Although the controversy is no longer alive as to appellant Sosna, it remains very much alive for the class of persons she has been certified to represent.").

\*       \*       \*

In Appendix A, the Court offers some non-binding suggestions as to areas of inquiry that might be helpful as the case goes forward.

## IV.   CONCLUSION

For the foregoing reasons, the Court **ORDERS** that:

1.  The Motions to Dismiss of the County (ECF No. 64) and of the Judge Defendants (ECF No. 66) **ARE GRANTED IN PART AND DENIED IN PART.**

    a.  Both Motions are **GRANTED** as to all claims of the Released Plaintiffs Frazier, Hernandez, D.P., Davis, Sharp, and Worthington.

    b.  Both Motions are **GRANTED** as to the money damages claims of the Detained Plaintiffs Butler, Williams, and Laguan-Salinas, but **DENIED** as to the claims of those Plaintiffs for prospective equitable relief.

2.  Within thirty (30) days from the date of entry of this Order, counsel for the parties are **DIRECTED** to submit a Joint Proposed Scheduling Order to the Court that includes a timetable for discovery as well as a proposed briefing schedule to address, if necessary, Plaintiffs' Motion for Preliminary Injunction (ECF No. 2) and Motion for Class Certification (ECF No. 4).

A separate Order will ISSUE.

January ___, 2023

PETER J. MESSITE

**APPENDIX A**

Without intending to formally define or limit the field of inquiry, the Court believes it may be helpful to suggest to the parties some questions that might aid exploration of how the pretrial release process in Prince George's County might be reformed, if at all.  Thus, for example:

1. Are some release considerations absolutely critical, while others are less so?  For example, in the case of Plaintiff Butler, state defense counsel suggested in a bail review that he was not recommended for release simply because the Pretrial Division determined that the charge against him, i.e., murder, was too serious.  ECF No. 83-4 at 57–59.  Is the nature of the charged offense alone a proper basis for the Pretrial Division (or even a Trial Judge) to deny pretrial release?  What relevance, if any, should the nature of the charge or charges against the defendant have on the pre-release decision?  Is the nature of the charge more appropriately taken into account in determining the individual's danger to the community and risk of flight if released?

2. Insofar as a fixed address and a telephone are deemed critical for purposes of maintaining contact with a releasee, to what extent would the non-fulfillment of those factors automatically result in an individual not being released?  What is or should be done with respect to a "homeless" detainee?  Or one who cannot afford a telephone?  Can separate arrangements be made for them, e.g., placement in a halfway house?

3. How many calls per day, per week, etc. should be made by the Pretrial Division to verify release considerations while the individual remains detained?  The transcript of the June 17, 2022 bail hearing for Plaintiff Laguan-Salinas suggests that the Pretrial Division took

23

more than a month to review his case.  ECF No. 85-4 at 41, 46–47.  Is that appropriate?
Is it too long?  How soon after the Judge refers the defendant to the Pretrial Division
should the process of verification by the Pretrial Division begin?

4.  Should the Pretrial Division be required to report back to the Bail Judge with respect to
    its efforts to determine an individual's release status both when it has determined that a
    detainee should be released and when it has determined that the individual should be
    detained?  Should a form be used?  What information should the form contain?  With
    what level of specificity should the Pretrial Division's efforts be documented?  With what
    frequency should the form be sent to the judge?  Must the judge have to periodically sign
    off on the individual's release or his or her continued detention?

5.  Should defense counsel be given expedited attention by the Pretrial Division when calling
    to inquire as to the status of a client/detainee, e.g., should counsel receive a response
    within 24 hours?

6.  To what extent has limited manpower in the Pretrial Division been the reason that pretrial
    release decisions may be delayed?  Is that an appropriate justification for delaying release
    decisions?  What level of manpower would permit more expedited pretrial release
    decision-making?

                              *       *       *

To repeat: these questions are meant to be suggestive only.  They may or may not be
deemed relevant and they certainly may be modified by the parties.  Ultimately, however, should
the Court determine that the pretrial release process is constitutionally deficient in one respect or
another, the Court will be looking to the parties to suggest what remedies, including what

24

enforcement mechanisms, they believe would be appropriate to satisfy constitutional requirements.