1                 IN THE UNITED STATES DISTRICT COURT

2                    FOR THE DISTRICT OF MARYLAND

3                         SOUTHERN DIVISION

4    ROBERT FRAZIER et al.,          ) CIVIL ACTION
                                     ) NO. PJM-22-1768
5              Plaintiffs,           )
                                     )
6    v.                              )
                                     )
7    PRINCE GEORGE'S COUNTY,         )
     MARYLAND et al.,                )
8                                    )
               Defendants.           )
9
                  TRANSCRIPT OF TELEPHONIC PROCEEDINGS
10             BEFORE THE HONORABLE PETER J. MESSITTE
                    UNITED STATES DISTRICT JUDGE
11              THURSDAY, MARCH 2, 2023; 2:03 P.M.
                         GREENBELT, MARYLAND
12   APPEARANCES:

13   FOR THE PLAINTIFFS:

14             CIVIL RIGHTS CORPS
               BY:  ELLORA THADANEY ISRANI, ESQUIRE
15             BY:  JEREMY D. CUTTING, ESQUIRE
               BY:  RYAN DOWNER, ESQUIRE
16             1601 Connecticut Avenue NW
               Suite 800
17             Washington, DC  20001
               (202) 894-6132
18                  -and-
               INSTITUTE FOR CONSTITUTIONAL ADVOCACY AND PROTECTION
19             BY:  SETH DANIEL TYCHSEN WAYNE, ESQUIRE
               600 New Jersey Avenue NW
20             Washington, DC  20001
               (415) 516-4939
21                  -and-

22
     OFFICIAL COURT REPORTER:
23   Renee A. Ewing, RPR, RMR, CRR - (301) 344-3227

24        ***COMPUTER-AIDED TRANSCRIPTION OF STENOTYPE NOTES***

25

```
 1   APPEARANCES (Continued):

 2
             WILMER CUTLER PICKERING HALE AND DOOR LLP
 3           BY:  AYANA WILLIAMS, ESQUIRE
             BY:  DONNA M. FARAG, ESQUIRE
 4           2100 Pennsylvania Avenue, NW
             Washington, DC  20037
 5           (202) 663-6057

 6   FOR THE DEFENDANT PRINCE GEORGE'S COUNTY, MARYLAND et al:

 7           PRINCE GEORGE'S COUNTY OFFICE OF LAW
             BY:  SHELLEY LYNN JOHNSON, ESQUIRE
 8           BY:  ANDREW J. MURRAY, ESQUIRE
             1301 McCormick Drive
 9           Suite 4100
             Largo, Maryland  20774
10           (301) 952-5225

11   FOR THE DEFENDANT LAKEECIA ALLEN et al.:

12           OFFICE OF THE ATTORNEY GENERAL
             BY:  JAMES O. SPIKER, IV, ESQUIRE
13           BY:  KEVIN M. COX, ESQUIRE
             200 St. Paul Place
14           20th Floor
             Baltimore, Maryland  21202
15           (410) 576-6389

16

17

18

19

20

21

22

23

24

25
```

1          THE COURT:  Counsel, this is Judge Messitte here.  We

2    are not on the record, but to the extent that I need to make a

3    record of this after, I will dictate a short memo.

4          THE COURT REPORTER:  Judge, this is Renee.  I'm here,

5    Judge.

6          THE COURT:  Oh, you are.  I didn't realize.  Welcome,

7    Renee.  Glad to have you.

8       When you speak, please identify yourself each time you

9    speak so that Renee can know who is talking.

10      So let's start.  Who is speaking for plaintiff?

11         MS. ISRANI:  Your Honor, this is Ellora Israni with

12   Civil Rights Corps.  I will be speaking for plaintiffs.

13         THE COURT:  I have a lot of names here.  Go ahead.  I

14   have got all these names on the docket.

15      Would you state your name again, please, Counsel?

16         MS. ISRANI:  Yes.  It's Ellora Israni, E-L-L-O-R-A,

17   I-S-R-A-N-I.

18         THE COURT:  Okay.  Very good.  Anyone else for

19   plaintiff?

20         MS. ISRANI:  There are others on the line, but I will

21   be doing the speaking.

22         THE COURT:  Okay.  There are other counsel on the

23   line or other people not counsel?  What?

24         MS. ISRANI:  Other counsel.  It's Jeremy Cutting and

25   Ryan Downer at Civil Rights Corps; Seth Wayne, the Institute

1  for Constitutional Advocacy and Protection; and Ayana Williams

2  and Donna Farag at WilmerHale.

3          THE COURT:  And for the County?

4          MR. MURRAY:  Good afternoon, Judge Messitte.  This is

5  Andy Murray.  I will be speaking primarily for the County.

6  Ms. Johnson is also on the line for Prince George's County.

7          THE COURT:  All right.  And for the judges?

8          MR. COX:  Good morning, Your Honor.  This is Kevin

9  Cox, and with me, next to me is James Spiker.

10          THE COURT:  Just one second, folks.

11      Counsel, I called this meeting because I think there may

12  be some things we can sort out at this point that will make

13  things a little smoother for you as you go.

14      First of all, obviously, I have got your motions to

15  reconsider, and I only have them from the plaintiffs and from

16  defendant judges.  I don't have a motion to reconsider from the

17  County.  Am I right on that, Mr. Murray?

18          MR. MURRAY:  That's correct, Your Honor.  Of course,

19  we will be filing a response to the plaintiffs' motion for

20  reconsideration, but we don't have one of our own.

21          THE COURT:  Okay.  Very good.

22      Well, first of all, you don't have to go forward with the

23  discovery schedule until we hash out the motions to reconsider,

24  so not to worry about that.  We will reset that once that issue

25  is decided, number one.

1          Number two, I am apt to write a fairly short opinion on

2     motions to reconsider.  I know you folks have your strong

3     views, but I think I can explain why.  But we will see.  I will

4     listen to you.  I understand the argument the plaintiffs have

5     been making on the Court keeping the individual County

6     defendants in or however -- or keeping them potentially exposed

7     to damages, and we will look at that.

8          But with regard to the judges, I understand there that

9     the issue is, well, not all the plaintiffs will remain in the

10    case; you are dealing with not all of the judges who remain in

11    the case; we are dealing with plaintiffs who remain in the

12    case.  And I understand that argument.

13         But the issue really is, though, that this is brought as

14    a class action, so we really haven't yet seen what the motions

15    to certify the class looks like, and it's -- presumably, the

16    argument that will be made by the plaintiffs -- I am just

17    throwing this out here now -- but, presumably, the argument

18    that would be made by plaintiffs is that all people who are

19    currently in detention not otherwise serving a sentence will

20    appear before all the judges of Prince George's County or at

21    least those judges who have, according to the plaintiffs,

22    already demonstrated their failure to comply by what they say

23    are constitutional requirements.

24         So, getting the -- deciding the issue at this point of

25    whether judges should be in or out or in or out depending on

1  the plaintiffs at this point feels a bit premature.  I would

2  really like to see the motion to certify first.

3       Another issue is alternative -- I am not really urging

4  that you do it, but I assume you will give it some thought --

5  should all the judges of Prince George's County be defendants

6  in this case?  Or is it enough to go with the core that what we

7  have?  I haven't really looked at that issue either, but some

8  of that may well be folded into the motion to certify the

9  class.

10      And then finally, and I really am inviting your comments

11 on all these points, the motion for preliminary injunction is

12 problematic, and here is why.  Right now, I don't have enough

13 of a record to even know whether a preliminary injunction

14 should issue in this case.  That was my problem when I got the

15 pleading, the plaintiffs' pleading, I couldn't understand who

16 was claiming what, to be candid, and that's why I asked for

17 some further explanation who is in, for what, and why, who did

18 it; show me what you have got.

19      And the same is true with regard to a motion for

20 preliminary injunction.  Ordinarily, when a motion -- although

21 they are favored motions to be sure -- when you file a motion

22 for preliminary injunction, ordinarily, when you work it out

23 with counsel, there is a discovery period for the motion for

24 preliminary injunction.  How do I know whether the plaintiff is

25 more likely to prevail on the merits or not?  How do I know

1    what the other considerations are?  I need a record for that.

2        And so you end up with a motion for preliminary

3    injunction doing essentially the same kind of discovery you are

4    going to do on the merits, which is why I have deferred so far

5    on that because it's just duplicative, and to have a hearing,

6    and even if I were asked to decide it today, my answer would

7    probably be I can't issue an injunction -- preliminary

8    injunction at this point because I don't have enough of a

9    record to know.  And that's really where you are in the case.

10        So it's sort of, I think, an academic point from my

11    standpoint since you already will be on track to discover items

12    that would be relevant to a merits decision.

13        Okay.  I have spoken my peace.  Those are all the things

14    I want you to consider, and I will invite your comments as to

15    each.  And I actually want to start with the last issue, what

16    -- would there be any problem with simply administratively

17    closing the request for preliminary relief and just going

18    forward on the merits at this point?  Comments, plaintiffs'

19    counsel.

20        MS. ISRANI:  Your Honor, this is Ellora Israni for

21    plaintiffs.

22        When we filed our preliminary injunction motion, we filed

23    a significant amount of evidence alongside, and those are

24    exhibits to Docket No. 2, declarations, and documents and other

25    things that we gathered, so I would submit that the preliminary

1   injunction motion is based on substantial evidence.  It's not

2   just allegations.

3          On top of that, the defendants said in their responses to

4   -- or in their motions to dismiss that they are not actually

5   disputing the facts as alleged.  You know, we can go back and

6   -- and highlight those statements, but, basically, I -- I don't

7   think there is that much of a dispute of fact, and I think if

8   we were to kind of lay out the facts as alleged, there would be

9   substantial evidence in the record to support them.

10         Obviously, one of the main issues in a preliminary

11  injunction is is there irreparable harm?  Plaintiffs think

12  there would be an issue with just administering -- with just

13  administratively closing the motion because there is this

14  ongoing irreparable harm.  It's been ongoing, you know, since

15  that motion was filed eight months ago, and it's going to be

16  ongoing.

17         Plaintiffs would be very open to doing -- trying to do a

18  stipulated set of facts for something like that with the

19  defendants -- if the defendants are open to that just to kind

20  of make those issues clear for the Court as they relate to the

21  motion for a preliminary injunction.

22         But at this time, you know, we think there still is a

23  need for a preliminary injunction because we allege and we have

24  evidence showing that there are hundreds of putative class

25  members, as Your Honor noted, who are in the jail suffering

1   irreparable harm.

2          And additionally, it's well settled under law that Your

3   Honor can issue class-wide preliminary relief before the class

4   issue has been decided, the class certification issue, and we

5   cite law for that in our preliminary injunction motion, Docket

6   No. 8, at footnote No. 1.

7          So, very briefly on the class issue, I will note we have

8   moved for class certification.  Our motion has been pending

9   since July.

10          THE COURT:  Before you go to that, Ms. Israni, let me

11   hear the response on the issue of preliminary injunction from

12   the defendants.  We can start with the County, Mr. Murray, and

13   then hear from the other defendants.

14          MR. MURRAY:  Yes, Your Honor.  I think the -- the

15   issue of preliminary injunction is particularly problematic

16   because of the constantly changing nature of the status of --

17   of the -- the named defendants and the -- the -- the status of

18   the procedures that the -- the County jail is going to be

19   using.  And I would -- I would note also that, if I am not

20   mistaken, and Ms. Israni can correct me if I am wrong, the

21   preliminary injunction sought is as to the County only, and it

22   just seems to me to be almost impossible to have some sort of

23   injunctive relief against the County only in -- in the sense

24   that it -- any injunction against the County would directly

25   affect the judiciary as well.

1          So it just seems to be so unmanageable at this point to

2     -- to proceed to a motion for preliminary injunction.

3          Additionally, I would note, you know, if -- if it got to

4     the point where we scheduled a hearing, Judge, I would fully

5     expect that we would be having live testimony at a motion for

6     preliminary injunction that would -- that would inform the

7     Court on the processes and procedures utilized by the Pretrial

8     Services Unit, the resource limitations that the Pretrial

9     Services Unit is operating under, and I think the Court would

10    take all those things into consideration in arriving at any

11    sort of injunctive relief.

12          This is all a long way of saying that I agree with your

13    initial thoughts on trying to schedule a motion for preliminary

14    injunction at this point.

15          THE COURT:  All right.  And Mr. Spiker for the

16    judges.  Or Mr. Cox, actually.

17          MR. COX:  Yes, Your Honor.  This is Kevin Cox.

18          THE COURT:  Okay.  Mr. Cox.  Go ahead.

19          MR. COX:  I believe Mr. Murray is correct, and I am

20    fine with plaintiffs' counsel confirming that, but the

21    preliminary injunction was not filed against the judge

22    defendants.  But, nonetheless, if asked about it, Judge, we

23    side with the County and with your inclination that,

24    essentially, it's -- I don't know if the word is "moot" or if

25    it's best to consider it closed, I am not sure exactly the

1  verbiage you used, but we are in agreement with that.

2       And if nothing else, as Ms. Israni pointed out, eight

3  months have passed, and the County has put the Court on notice,

4  and plaintiffs are well aware of this, that the County is about

5  to implement a new policy and procedure within weeks addressing

6  some of these things.  So you are going to need -- I mean, this

7  would require all new briefing on the motion for preliminary

8  injunction to bring the Court up to the current status of

9  things rather than what they were in July or September or

10  October of last year.

11       So it would just require more briefing, which it seems

12  like the plaintiffs don't want because that would postpone

13  discovery in the briefing.

14           THE COURT:  Ms. Israni, do you want to respond?

15           MS. ISRANI:  Yes.  So, first of all, the defendants

16  are correct, the preliminary injunction is only as to the

17  County defendants.  We filed with our motion a proposed order

18  -- that's Docket 2-3 -- with the proposed preliminary

19  injunction showing how the injunction would only run against

20  the County, the County defendants, not the judges, so we have

21  spelled all that out quite clearly.

22           THE COURT:  Wait a minute.  What you are not

23  answering is, though, how do you separate the two?  The

24  argument has been made by both Mr. Murray and Mr. Cox that

25  essentially you are talking about what the judges can and can't

1   do.  You want to make the people who supposedly work with the

2   judges do something, but you don't necessarily want to lock in

3   the judges.  If you could answer that issue.

4          MS. ISRANI:  Sure, Your Honor.  So the proponent's

5   order is all about what happens after a person is referred to

6   the Pretrial Services division.  The defendants have already

7   taken the position that, and we agree, that once someone is

8   deferred to the Pretrial division, it's up to the Pretrial

9   division, without any further involvement of the judges or the

10  Court, to decide whether the person is going to be released,

11  and if so, when and on what conditions.

12       And so the proposed preliminary injunction order is

13  simply about that process that happens after someone has been

14  referred to the Pretrial division and it is fully within the

15  Pretrial division's control, that is, with the County's

16  control, as to what practices are going to be followed, what

17  standards are going to be used.

18       The proposed order lays out the processes and standards

19  that plaintiffs think would comply with the Constitution, but

20  it's, again, purely about someone who has been referred to the

21  Pretrial division.  The ball is in the Pretrial division's

22  court as to what happens.  What the judges have or have not

23  done before doesn't matter.  And the defendants have already

24  stated once a person is referred to Pretrial Services, Pretrial

25  Services decides if they are going to be released, when, and on

1    what conditions.

2         THE COURT:  I don't think that answers the question,

3    however, all that you have said.  To the extent that they are

4    linked to the judges and I have already, in effect, held that,

5    how do you make them respond to your injunctive relief and

6    somehow not affect the judges?  I have already made that

7    decision, haven't I?  I said, essentially, they are an

8    extension of the judiciary.  You have made -- that may be part

9    of your motion to reconsider.  Small likelihood that I am going

10   to change my mind on that.

11        On the assumption that I don't, I think you still haven't

12   conferred the issue of the interlocking nature of their -- of

13   their function.

14        Look, I don't need to spend a lot of time on this.  The

15   likely -- almost certainly, Ms. Israni, now, in response to

16   your motion for preliminary injunction, I would deny it.  I

17   wouldn't deny your ultimate relief.  I would deny it because

18   you seem to be assuming, and I don't think defense agrees with

19   you, that you are all together on the facts.  You aren't.

20        There are all these issues of just exactly what is going

21   down with the old policy, the new policy, and so on and so

22   forth, and that requires extensive briefing, it requires

23   extensive discovery just on that issue, which is all

24   duplicative of where you are going to be on the merits anyway.

25        So my short answer is I'd almost certainly deny your

1  motion for preliminary injunction without prejudice, without

2  prejudice to your going forward on the merits.

3      I mean, I hear your argument, but it's just, quite

4  candidly, impractical, quite impractical.  Are people still

5  hooked in longer than you think they should be?  Possibly.  I

6  am not saying now that you will on the merits, but in a

7  preliminary injunction, it's an adversary hearing.  It's not

8  like an ex parte injunction where you get it on your say so.

9  And there are arguments to be made fairly by the defendants in

10  this case, you saw that in my earlier order, that don't go your

11  way.  And so that's the way I need to handle this.

12      So, I mean, you can say what you will about the

13  preliminary injunction, and I have given you an opportunity to

14  make your statement, but almost certainly now, if you are going

15  to press it, I am going to deny it without prejudice.  And

16  maybe that's the way to do it.  Maybe just to sort of put it to

17  rest, rather than say anymore, I will deny it -- on the record

18  you have got right now, I am prepared to deny it.  I don't even

19  need to mince words on it.  On the record you have got now, I

20  am prepared to deny without prejudice your motion for

21  preliminary injunction, and that means that you can go forward

22  on the merits, period.

23      So, anything more to be said?

24          MS. ISRANI:  Your Honor, yes.  Just briefly.  This is

25  Ellora Israni for plaintiffs.

1        I don't disagree with Your Honor that preliminary

2   injunctions require hearings.  We don't think it would be a

3   long one, but I don't disagree on that.  We are very open to --

4   if the defendants are amenable to it, if they want to tell us

5   which of their facts -- which of our facts they contest, I -- I

6   understand that they have immunity defenses and there are other

7   things that they disagree with us about, and that's fine, but I

8   think as to the core facts of how things are actually

9   operating, I really, at least from their motion to dismiss

10  briefing, I don't think there is a dispute.

11       And so that's all I was trying to communicate is I don't

12  think there is much of a factual dispute at this point.  I know

13  there is a legal dispute about, you know, what is or isn't

14  allowed, but, again, like I said, we would be more than happy

15  to try and do stipulated facts or something like that for the

16  Court just to crystalize those issues.

17            THE COURT:  Well, let me answer it this way.  Let me

18  give you some period of time -- I will give you a number in a

19  minute -- if you can agree on what ought to be what's called a

20  provisional relief or preliminary relief, I'd be happy to sign

21  it unless it shocks my conscience.  But right now, I have told

22  you my inclination would be to deny without prejudice the

23  preliminary injunction motion and go forward.  Frankly, we will

24  get much closer to a resolution, a final resolution of this

25  case if we don't have a preliminary injunction intervening.

1     So I have no problem with counsel discussing what they

2   want to discuss and coming to whatever conclusion they'd like

3   to provisionally.  Okay.  Right now, that's not where I am,

4   and, as I say, I want to see this case get fully discovered

5   sooner.

6     So let me hear you.  Is ten days sufficient for you to

7   have a conversation, Ms. Israni?

8        MS. ISRANI:  Sure.  Let me make sure I am

9   understanding.  A conversation about stipulating to facts?

10        THE COURT:  No.  No.  I think, candidly, I am not --

11   I want to do this without any preliminary -- I don't want

12   further discovery on preliminary injunction.  I don't want a

13   hearing on preliminary injunction because I think it's all --

14   it's essentially duplicative.  I don't know that -- I would be

15   surprised if they will agree with you, but I don't know that

16   the defendants are going to agree with you on enough facts that

17   would allow me to grant preliminary relief favorable to the

18   plaintiffs at this point.

19     I almost certainly, given the package I am going to get

20   from you after ten days, I am going to say denied without

21   prejudice.  Sorry.  Sorry.  Denied without prejudice.

22     So I don't know, Mr. Murray and Mr. Cox, am I sort of in

23   line with where you are on this now?

24        MR. MURRAY:  Judge Messitte, this is Andrew Murray on

25   behalf of the County.

1          I think you are representing our positions precisely.

2    And by way of example, Judge, I am looking at the proposed --

3    the plaintiffs' proposed order for the motion for preliminary

4    injunction.  That is directed solely to the County, mind you.

5    I believe this is ECF -- it's Document 2-3, 7/19/23.  And what

6    they are seeking to have the County enjoined is, one,

7    representation by counsel, not a function of the jail; two,

8    notice to the individual of the purpose of the hearing, not a

9    function of the jail; three, a neutral and detached decision

10   maker, i.e., a judicial officer, again, not a function of the

11   jail; the opportunity to be heard and present evidence -- they

12   are talking about a bond review hearing -- not a function that

13   the jail -- that the jail conducts; No. 5, the opportunity to

14   rebut evidence presented by the state; No. 6, a clear and

15   convincing evidentiary burden borne by the state.  It goes on

16   and on.

17          And, Judge, these -- none of these functions -- none of

18   the things that they are requesting preliminary relief on

19   applies directly to the County jail.  It's directed more

20   towards the judges, frankly, and none of it makes sense to us.

21              MS. ISRANI:  Mr. Murray, this is Ms. Israni.  I just

22   want to clarify that -- what the preliminary injunction

23   actually says is because the County is the jailer, because the

24   County runs the County jail, under ex parte *Young*, they can be

25   enjoined from detaining people who have not received procedural

1 and substantive due process, and the requirements you just read

2 out are the requirements of due process.  The proposed order

3 does not say that the County needs to be giving those things.

4      So I just wanted to be clear about why the County is

5 proposed to be enjoined.  It's because the County runs the

6 jail, and jailers, like sheriffs, can be enjoined and have been

7 enjoined like this all around the country.

8           THE COURT:  Are you contemplating a hearing with a

9 presentation of evidence and a standard of proof and rebuttal

10 evidence and representation by counsel before the County

11 officials and not before the judge?  Is that your proposal?

12           MS. ISRANI:  No.  Sorry.  No, Your Honor.  That --

13 you know, the bail hearing happens before the judge.  That --

14 we are not contemplating -- we are just saying if a person has

15 not received due process, and this is what due process looks

16 like, they cannot be detained prior to trial under *Salerno* and

17 *Salerno's* progeny.

18           THE COURT:  We need not carry on this, folks.  I

19 stand on my earlier comment.  If you can work out by agreement

20 some sort of preliminary arrangement and it doesn't shock my

21 conscience, I will go with it.  If not, I am going to deny the

22 motion without prejudice.  Period.

23      Next item.  Let's talk about the judges and class

24 certification or however you want to do that.  I am not sure

25 who speaks first.  I guess you speak again, Ms. Israni, about

1   -- about the class certification.

2          MS. ISRANI:  Yes, Your Honor.  The plaintiffs agree

3   with Your Honor that because this is a putative class action

4   that affects a lot of things, we filed a motion for class

5   certification, again, supported by substantial evidence, with

6   our complaint as Docket 4.  That motion has been pending since

7   last July, and we would be more than happy to, you know, have

8   the defendants respond to that and to litigate that issue.  Our

9   motion is there.

10          THE COURT:  Mr. Cox, do you want to respond to this

11  first?

12          MR. COX:  I do.  And this is Kevin Cox, Your Honor,

13  on behalf of the judge defendants.

14          As Ms. Israni said, that motion has been pending since

15  July, but a lot has happened since that motion was filed.  For

16  example, and perhaps I -- we argued this in our motion for

17  reconsideration, Your Honor, which is pending, is that there

18  are only two judge defendants left.

19          And I understand your earlier comments, Judge, but the

20  motion for clarification/reconsideration hasn't been ruled on

21  yet.  But as things stand right now, there are only --

22  plaintiffs only -- we made it very clear which plaintiffs were

23  suing which judge defendants.  And under your order in your

24  memorandum opinion, only two judge defendants were left based

25  upon the plaintiffs that were left -- I'm sorry, three, and,

1    realistically, two, based upon what we put on our motion, and

2    because those two are the only ones who are left, you can't --

3    you can't have a class against defendants when the primary

4    plaintiffs don't even have a claim against those defendants.

5         And I think the -- at a minimum, plaintiffs have to

6    respond to the motion for reconsideration before we can even --

7    and that has to be ruled on with a reply from us before we can

8    even get to determining the class issue, and that's why we

9    outlined in our status report to you that we don't believe that

10   this case should even move forward until the motions for

11   reconsideration are ruled on.

12        THE COURT:  Mr. Murray, you don't have a motion to

13   reconsider I think.  Right?

14        MR. MURRAY:  No, we don't, Your Honor.  But with

15   respect to the class action, if the Court would accept a few

16   comments from the County?

17        THE COURT:  Go ahead.

18        MR. MURRAY:  We see the class action against the

19   County as being one for damages.  The preliminary injunctive

20   relief essentially seeks prospective relief against the judges

21   I guess from the County for all current and future detainees,

22   which is, in essence, a class action for equitable relief.

23        But the class action for damages is -- is really what the

24   motion against the County is all about.  And under the Court's

25   present ruling, the Court has found that the defendants -- that

1  the plaintiffs are not entitled to damages, and so we see the

2  class action at this point as essentially being moot.

3        THE COURT:  Ms. Israni.

4        MS. ISRANI:  Yes.  So the -- the motion for class

5  certification as filed proposes an equitable class and a

6  damages class.  I don't disagree with Mr. Murray that, you

7  know, if the damages claims aren't reinstated, then the damages

8  class would fall aside.  But in any case -- but that doesn't

9  mean that an equitable class couldn't be certified.  And we'd

10 -- we'd be happy to file an amended motion for class

11 certification.  If you want us to narrow in on the equitable

12 class for now, we'd -- we'd be happy to just proceed with the

13 motion as it was filed.

14       Either way, there is an equitable class.  We are seeking

15 class-wide equitable relief.  The motions to reconsider have

16 nothing to do with the equitable relief against the County,

17 again, so I don't think the issues are inextricably bound up.

18       With that said, we are very open to just resolving the

19 class issue right now because, as Your Honor said, so much in

20 this case is tied up in the putative class action and the

21 defendants don't seem to want to proceed with that

22 understanding, and so we are happy to litigate that issue now.

23       We are also happy to just proceed with this being a

24 putative class action until the Court wants to resolve the

25 class certification issue.  Either of that is fine with us.

1   But there is a damages class, there is an equitable class, and

2   we are happy to proceed on the latter if the Court would like

3   that.

4           THE COURT:  Well, before you go any further, what

5   about the alternative of adding all the judges of Prince

6   George's County, or, alternatively, to frame the question, what

7   do you do with the fact that presumably there are only two

8   judges that are in any way linked to current plaintiffs?  How

9   do you handle that from a class standpoint?

10          MS. ISRANI:  Sure.  So, first of all, the classes are

11  not defined with respect to particular judges.  They are just

12  defined with respect to all people who have received pretrial

13  referrals.  I don't think plaintiffs would have had standing at

14  the very beginning to sue all of the judges because, you know,

15  not all of the judges have been involved in setting bail in the

16  named plaintiffs' cases.

17       Maybe things would be different if we had a certified

18  class and the Court wanted to issue more general relief, but

19  the class definitions are not in terms of individual judges,

20  nor are we contending that a plaintiff -- while -- while there

21  is no certified class, a plaintiff would have standing against

22  the judge who didn't set their bail.

23          THE COURT:  Well, but are you saying -- I mean, you

24  have got the argument made now by Mr. Cox that there are

25  defendant -- judge defendants who are -- as to whom there is no

1   longer standing, right, nobody in the plaintiffs' case that

2   have any kind of colorable claim against the other judges, so

3   what do you do about that standing issue?

4           MS. ISRANI:  Sure.  We will respond to this more

5   fully in our response to their motion for reconsideration, but,

6   briefly, you know, standing is properly analyzed as of the time

7   the complaint is filed.  That's well-settled law.  And at the

8   time the complaint was filed, there were more than two judges

9   who had set bail.  I believe there were five detained

10  plaintiffs, and all of the judges who had referred them to

11  Pretrial while they remained detained, plaintiffs have standing

12  against them as of the time the complaint was filed.  You know,

13  I think maybe what the judges are talking about is a mootness

14  issue, but in terms of standing, that is analyzed when the

15  complaint is filed.

16          THE COURT:  Well, mootness -- call it mootness, too.

17  I mean, whatever the issue is, some of the defendant judges

18  want out.

19          MS. ISRANI:  And on the mootness front, Your Honor, I

20  think this goes to -- you know, this is a case about pretrial

21  detention.  The inherently transitory exception to mootness is

22  usually found -- the Supreme Court has found it applies to

23  cases about pretrial detention just because of its inherently

24  transitory nature.  And, again, we will brief this more fully

25  in our response to the judges' motion to reconsider, but I

1   believe, you know, Your Honor had already said in your motion

2   to dismiss order that the inherently transitory exception

3   applies to this case because it's a pretrial detention case, so

4   we submit that that would resolve the issue.

5        THE COURT:  Let me ask you this, Ms. Israni:  What do

6   you see as a formal -- final desirable resolution for the

7   plaintiffs, for the plaintiff class?  What do you get?  What's

8   the outcome --

9        MS. ISRANI:  Sure.  On the equitable side?

10       THE COURT:  Yeah.  What do you look for in terms of

11  the equitable claim?  Just frame your idea out for me.

12       MS. ISRANI:  Sure.  So our -- what we are looking for

13  as to the judge defendants is simply declaratory relief, that

14  under *Salerno* and its progeny, a person cannot be detained

15  prior to trial if certain standards and procedures haven't been

16  met.

17       All we are looking for with respect to the judges is a

18  declaration.  And all we are looking for with respect to the

19  County, the County jailer, is an injunction against jailing

20  people who have not received substantive and procedural due

21  process as laid out by *Salerno* and its progeny.

22       THE COURT:  All right.

23       MS. JOHNSON:  Your Honor --

24       THE COURT:  Go ahead.  Who is speaking?

25       MS. JOHNSON:  This is Shelley Johnson.  I just -- and

1   I apologize.  We said that we were going to let Mr. Murray say

2   something, but I just feel compelled to respond to a point.

3   And I think, you know, this whole discussion about classes and

4   whether or not the whole -- you know, we should have all the

5   judges, I think we are making this -- this way more complicated

6   and more litigious than it has to be.

7         And going back to what Mr. Murray was saying, the

8   equitable relief that is being sought by the plaintiffs is for

9   all prospective pretrial detainees.  So if they succeed on

10  that, in essence, they have basically changed the procedure,

11  changed the policy that would affect all future detainees who

12  are going before these judges.

13        And, you know, the jail would be bound, the judges would

14  be bound by -- if they -- if they are successful on the

15  equitable relief.  And that would -- that, in essence, would

16  take care of the class action.  There would be no need to have

17  a certified class and go through that whole discovery process

18  on that issue and have a hearing on that issue, which, again,

19  pushes back all of the discovery and all of the work that the

20  Court would like us to do on the merits of the case.  And from

21  my listening to you speaking and hearing the questions that you

22  are posing, I am -- and please correct me if I am wrong, but

23  that seems to be where the Court wants to get to and it wants

24  to get to as quickly as possible.

25        And so I think that, you know, if we litigate the -- the

1    motion for reconsideration, and depending on the outcome of

2    that, and go straight to, you know, the merits, and I believe

3    that the County will be able to present something that will,

4    you know, using your Appendix A that you provided us in your

5    memorandum opinion, be able to address a lot of those issues of

6    equitable relief, and we may not have to go through all this.

7         But I just think that, you know, Mr. Murray's point is --

8    should be thought of and considered because, you know, again, I

9    believe plaintiffs would like to get some benefit for their

10   clients, and us going back and forth with a lot of motions is

11   not helping their clients at all.  Their clients are still

12   sitting there and we still haven't gotten to the merits, and I

13   believe that's what the purpose of this whole case is.

14        THE COURT:  Let me ask you, Ms. Johnson:  You said

15   there is a new policy.  Is there a new written policy?

16        MS. JOHNSON:  That's what we are currently working on

17   and would like to present to the Court once we are completed.

18   And it's taking in consideration what the -- what the

19   plaintiffs are seeking in their order, and it's also taking in

20   consideration the questions you posed in your Appendix A.

21        And so I believe that, you know, in very short order, we

22   may be able to moot out some of these issues, and -- and we

23   will have to do that and we can get to the heart of the matter,

24   which is, and I believe what the plaintiffs want, is a change

25   in procedure, and a procedure that is transparent, that is --

1  that is written and provided and -- and everybody has notice

2  of, and that's exactly what the County is working on right now.

3       THE COURT:  What is your timeline, though, for doing

4  this?  I mean, how long would it take to get a written

5  statement of new policy?

6       MS. JOHNSON:  Well, I am looking -- we are -- we have

7  a rough draft pretty much working on, and I was hoping to have

8  something to be submitted by the end of the month.

9       THE COURT:  But does the chief judge or do the judges

10 have to sign off on it?  I gather they do, don't they?

11      MS. JOHNSON:  Well, this would be addressing the

12 internal procedures and how, you know, once a case -- once it's

13 referred to Pretrial Services, how long would it take us to

14 verify the information that we have to, like address and phone

15 numbers and, you know, making sure there are no detainers or

16 warrants, and filling out that form and submitting it back to

17 the Court in short order.

18      And I would -- we are working on giving definitive time

19 frames on when that would be done.  And even if it's not fully

20 completed, you know, because we can't get in touch with people

21 or whatever, that would be documented and it would still be

22 submitted to the Court and let the Court make the decision as

23 to, you know, we can't verify, you know, an -- you know, an

24 address.

25      We submit that to the Court, notifications going out to

1  all the interested parties, including the defendants

2  themselves, and the Court would be making, you know, the

3  decision or giving us instruction on what to do next.

4          MS. ISRANI:  Your Honor --

5          THE COURT:  Yes.

6          MS. ISRANI: -- can I just say very, very briefly, you

7  know -- this is Ellora Israni for plaintiffs.

8      Obviously, we haven't seen this new policy that

9  Ms. Johnson is talking about.  We look forward to seeing it.

10 But as a matter of law, the County adopting a new policy

11 doesn't automatically moot the case.  There is a standard for

12 that about whether the policy is enough to do it.  It's not

13 automatic.  So I just wanted to submit that to the Court, that

14 just because there is a new policy, that doesn't automatically

15 moot the case.

16         THE COURT:  No.  I appreciate that.  Okay.  Look,

17 here is -- let me muse on something for a moment.  If we get --

18 well, let me ask Mr. Cox something first.  Do you think that

19 whatever the policy the County states is okay without any input

20 by the judges?  I mean, I don't know.  It feels a little --

21         MR. COX:  Sorry.  I cut you off, Your Honor.  This is

22 Kevin Cox.  I was about to respond.  But I don't want to cut

23 you off.  Please, if I cut you off, please --

24         THE COURT:  Go ahead.  I was wondering whether that

25 kind of thing -- look, I have sort of linked the County people

1   to the judges.  You are basically acting in the place of a

2   judicial committee capacity, and I think you are.  I mean,

3   that's my holding.  If they are asking me to reconsider, I will

4   look at it again, but the likelihood is I will come out the

5   same place.

6        Given that probability, where are you about a new policy?

7   I mean, what role do the judges have in approving?  Do you

8   know?

9            MR. COX:  Yes.  I believe so, Your Honor.  And I will

10  answer your question directly and then with an explanation.

11  And, frankly, the rule -- I'm sorry, the role of the judges --

12  the judge -- well, the individual judge defendants in this case

13  play no role in the County's policy because they are each

14  individual judges.  And then, frankly, the judiciary as a whole

15  would not dictate to the County how -- what policies they have

16  in place for considering whether to supervise defendants in

17  pretrial release.

18       And let me back up.  This is the analysis or -- or the

19  explanation I was about to provide you, Judge.  If you go and

20  look at Maryland Rule 4-216.1, and it's -- it is, I believe, 4

21  -- I believe 4(k), I think, it's the policy -- the rule -- the

22  way the Maryland rules are set out, and Ms. Israni and

23  plaintiffs don't quite -- they blur the lines with what the

24  rule requires and how the policy works, and they spin it to how

25  they want it to be portrayed to the Court.

1          The way the rule works is that a judge may commit a

2    defendant to the custody of an organization, in this case, the

3    County, who will agree to supervise the defendant, but it --

4    they have to agree, they have to agree to take them.  So it's

5    up to the County to decide whether they will take them.

6    Essentially, it's the Court saying we will allow this person to

7    be released without -- without bond, we will allow them to be

8    released to the custody of the County if the County agrees to

9    take them.  So it's conditional in that sense, Your Honor, and,

10   therefore, the role between the judges and the County is we

11   don't -- sorry, the judge defendants, the individual defendants

12   and the judiciary do not dictate to the County what their needs

13   are to determine whether they will agree to supervise a

14   defendant on release.  That is up to the County to decide.  And

15   that's the way the rule works and it's intended to work.  So --

16          THE COURT:  Stop right there.  Are you saying that

17   the decision as to whether to release in any respect belongs to

18   the County as opposed to the judge?  I mean, they are --

19          MR. COX:  No.

20          THE COURT:  Well, let me finish my statement.

21          MR. COX:  Sure.

22          THE COURT:  Certainly the County can agree to

23   supervise somebody on release, but the actual decision to

24   release, as I understand the gist of plaintiffs' claim, is

25   that's just what the County is doing wrong.  The judges, one or

1  more of them, are leaving to administrative people to make the

2  decision to release, and they shouldn't do that.  Am I correct,

3  Ms. Israni?

4          MS. ISRANI:  Yes, Your Honor.

5          THE COURT:  So that's what the case is about.  So

6  whether supervision occurs by the County is a separate matter.

7  And I am not -- I am hearing you say, Well, if they decide --

8  is it okay with you, Mr. Cox, for the County to decide the

9  exact time and place of the release without advising the

10  judges, for example?  Is that -- is that the way you read that

11  rule?

12          MR. COX:  Well, I believe -- I believe the -- the new

13  policy would -- would address that, Your Honor.  But the rule

14  essentially says, in practice, without going to the rule

15  verbatim, in practice, it is, We will release this person into

16  your custody, the County's custody, if you agree to take them.

17  So it's -- it's a prerequisite.  The County has to agree to

18  take them first.  We are allowing -- the judiciary is allowing

19  their prerelease from jail, from detention, but only if they

20  will be supervised by the County.  The County then has to

21  decide whether they will supervise them.

22          And now what Ms. Johnson --

23          THE COURT:  Let me stop you there.  You know, I don't

24  want to get into the full discussion at this point.  I do think

25  perhaps what you have triggered here, though, is a potential

1    unconstitutionality of the Maryland rule.  Let's not forget

2    that.  You are saying something which certainly doesn't gibe

3    with my old heart as a Circuit Court Judge, that I was going to

4    give the County the full authority to make all decisions about

5    whether someone gets released.  It's not whether they are

6    supervised.

7          But in any event, let me now put in play for all of you

8    the constitutionality of that rule.  To the extent that it is

9    interpreted in any way to leave any kind of ample discretion to

10   the County to make a release decision, that ought to be part of

11   the discussion.

12         All right.  Leave that aside for now because this will be

13   part of your motions to reconsider.  I am agreeable now -- I am

14   hearing that -- first of all, the motion to reconsider should

15   go forward, the opposition should go forward.  Whatever

16   appropriate time is necessary to respond -- did I indicate how

17   much for that already?  I mean, you need, what, 30 days?  Less?

18   How much time for the County and State?  15 days?  20 days?

19   How much to respond to the motion to reconsider?

20         MR. COX:  Your Honor, this is Kevin Cox on behalf of

21   the State.

22         We would request the 14 days to reply.

23         THE COURT:  14 days, fair enough, to oppose -- to

24   oppose the motion to reconsider.  I'm sorry.  Your reply.

25   Sorry.  You are replying.

1          MR. COX:  We would be replying, yes, Your Honor.

2          THE COURT:  It's your motion to reconsider.  You have

3    got the -- what -- tell me how you want to work this.  You have

4    got the plaintiffs' motion to reconsider, and no opposition has

5    been filed.  Is that correct?

6          MS. JOHNSON:  Correct, Your Honor.

7          THE COURT:  And you are prepared to oppose the motion

8    to reconsider in 14 days?

9          MR. COX:  Yes, Your Honor.

10         THE COURT:  Now, you want to file your own motion to

11   reconsider, or have you filed that already?  The judges have

12   already filed the motion to reconsider.  Has the plaintiff

13   answered that yet?

14         MS. ISRANI:  No, Your Honor, but we anticipate being

15   able to do that within 14 days as well.

16         THE COURT:  That's what your response is.  That's

17   fine.  Okay.

18      Now, let me just sort of spin out a future for you here

19   because the basic objective overall is to get in place what at

20   least plaintiffs understand to be a fair and just prerelease

21   system, and now we have got the County where the sands are

22   shifting, it sounds, a little bit.  Of course, they don't

23   necessarily dispose of the case.  What they can significantly

24   do is change the contours of the case, however.  That's what I

25   am concerned about.

1        I think you go forward with your motions to reconsider

2   and your oppositions, and let's see what the County comes up

3   with in terms of its changes because, particularly insofar as

4   they are getting into the kinds of questions that the Court

5   raised in the appendix, it's going to then -- it may very well

6   change the nature of the complaint, that the kinds of issues

7   that the plaintiffs are concerned about would be covered by the

8   policy.  And, indeed, looking down the road, they could well be

9   incorporated into a declaratory judgment decision, so they

10  wouldn't be necessarily avoidable in future.  That's one thing.

11       But if -- if you see what the policy is, then you have

12  got a different complaint in terms of what you are asking for

13  by reason of equitable relief, and then you can see the extent

14  to which there might be further desire on the part of

15  plaintiffs to get further equitable relief that you do not feel

16  is covered by the new policy.

17       That's why it doesn't necessarily result in the dismissal

18  of the case, but it does shape a new case, new claim, and then

19  that, in turn, it seems to me, very well implicates what the

20  nature of the class is and where you go.

21       So I think the thing to do in terms of where we are is to

22  go forward on the motions to reconsider, but have the County

23  stick to a very vigorous preparation of its policy and get that

24  out by the end of the month so that the plaintiffs see it and

25  you can see exactly what it is that you are looking for.

1        And I think, candidly, Ms. Johnson and Mr. Murray, I

2    mean, insofar as you are saying these are the policies that you

3    are going to abide by, I think plaintiffs are going to say,

4    Well, not only put it in writing, but agree that it's going to

5    be part of our ultimate relief, something like that.

6        But then let's see what it is the plaintiffs really want.

7    Let's let them to ask for it, and there may well be some.  And

8    then a lot of these other issues, it seems to me, either get

9    taken care of by way of reconsideration, some of which are not

10   dependent on what I have just said, but other parts, we'll

11   leave.

12       So, summing up, unless there is something different to be

13   said, and I will give you each a final word, you will do your

14   oppositions to motions to reconsider.  If you want to reply, it

15   should be ten days after any opposition is filed, as you know.

16       The County will submit a written new policy addressing

17   appropriate inquiries, some of which the Court raised in its

18   appendix.  And then the plaintiffs need to take a hard look at

19   what's out there, what remains, what it is that you do not

20   agree with that you think still needs to be done in terms of

21   reviewed by, let's say, judges.  And in so far as you think it

22   may conflict with Maryland rule and you think the Maryland rule

23   says it wrong, challenge that, too.  I mean, let's put it all

24   out there and see where we go.

25       Now, we will try and summarize this in kind of a short

 1   memorandum to all of you now, but before we close, let me just

 2   invite any final comment.

 3         Ms. Israni.

 4             MS. ISRANI:  That's fine with us, Your Honor.

 5         Just to clarify, are you ordering the County to submit

 6   its new policies by the end of this month?

 7             THE COURT:  Yeah.

 8             MS. ISRANI:  Okay.

 9             THE COURT:  I mean, I take -- Ms. Johnson, unless you

10   got a problem, I am taking you at your word that you can do it.

11             MS. JOHNSON:  I think we -- yeah, we can do it.

12             THE COURT:  All right.  Anything else?  Mr. Murray,

13   Ms. Johnson, do you want to say anything further?

14             MS. JOHNSON:  No, Your Honor.

15             MR. MURRAY:  Judge, this is Andy Murray.

16         The memorandum you will issue will provide a timeline,

17   which I believe you have said is 14 days --

18             THE COURT:  Right.

19             MR. MURRAY: -- from today or tomorrow, whenever your

20   memorandum goes out, to respond to the plaintiffs' motion for

21   reconsideration, and we will also be providing our policy

22   revision to the plaintiffs' counsel.

23             THE COURT:  You know, the times have been running all

24   along and I don't want to get stuck in any kind of a rut with

25   technicalities.  Let's just say 14 days from today.

1          MR. MURRAY:  Okay.  Very good.

2          THE COURT:  That's your time to get it written.  And

3   I have to fairly say, since there are oppositions, I have to

4   give the opposing side an opportunity to reply to an

5   opposition, that would be ten days following.

6          MR. MURRAY:  Understood, Your Honor.

7          THE COURT:  By March 31, we will have the written,

8   quote, unquote, new policy of the County with respect to the

9   pretrial release.  And then, as I say, then I think plaintiffs'

10  counsel need to seriously consider the extent to which that

11  changes the shape of, one, their complaint, and, two, the class

12  they won't certify.

13         And I will take care of -- I mean, the issue of what

14  Mr. Cox raises about what judges, if any, stay in the case,

15  that's something I have to wrestle with, I think, at the time.

16  And I think what you will see -- let's see.  Mr. Cox, you will

17  file your motion to reconsider -- have they filed a motion to

18  reconsider?  Have the judges filed a motion already?  Well,

19  then you will get the opposition from the plaintiffs there, and

20  then Mr. Cox will have an opportunity to reply.

21         And we will see about what we do with the continuing --

22  continuing to hold the original judge plaintiffs in the case, I

23  will have to think about that, and whether, as a practical

24  matter, it makes sense to do that until we do see whether --

25  the extent to which a new motion for certification of a class

1   emerges.

2        All right.  Anything else?

3        MR. COX:  Sorry, Your Honor.  This is Kevin Cox.

4        Can I just ask for clarity for something?  Maybe I am

5   just being obtuse.

6             THE COURT:  Go ahead.

7             MR. COX:  So, I just want to be clear what we are

8   doing in terms of the class certification status.  I understand

9   that -- actually, I am not sure I understand anything.  It

10  might be in the memo opinion.  I know they filed their motion.

11  Are we waiting to respond to that until the motions for

12  reconsideration are ruled on?

13            THE COURT:  Fair question.  Fair question.  Let me do

14  this.  I mean, almost certainly -- I mean, I heard Ms. Israni

15  say they are willing to file an amended motion for

16  certification.

17       Did I understand you to say that, Ms. Israni?

18            MS. ISRANI:  Yes.  We are happy to.

19            THE COURT:  Let me do this -- and this is for

20  administrative purposes with my court because we try not to

21  have a lot of sort of motions just hanging out there for months

22  and months and months -- let me dismiss the current motion to

23  certify with leave to amend -- with leave to re-file so that

24  this docket will -- this particular motion will be replaced at

25  some point.

1    And I don't need to set the time for filing a motion to

2    recertify because I think we need to see what the outcome is,

3    but for now, let us -- let me dismiss the motion to certify

4    without -- with leave to amend -- without prejudice and with

5    leave to amend, and we will see what the amended motion will

6    look like.

7    With regard, again, to the preliminary injunction issue,

8    if you can agree on something to put in writing as a

9    preliminary injunction in the next ten days, I will sign it, I

10    said, unless it shocks my conscience, but, candidly, right now,

11    I am also inclined to deny that without prejudice unless you

12    can tell me otherwise because I don't want to set up a separate

13    discovery hearing schedule for that.

14    MR. COX:  And Judge, this is Kevin Cox again on

15    behalf of the judge defendants.

16    As a follow up to what you said, is it your intent, then,

17    for plaintiffs' counsel to not file an amended motion for class

18    certification until after your rulings on the motions for

19    reconsideration?

20    THE COURT:  I think that makes sense.  I think that

21    makes sense.  Let's see where we are at.  I will address --

22    perhaps I should address the issue of the class -- the putative

23    class action and how we ought to proceed in that regard after I

24    have a chance to rule on the motions to reconsider.  So the

25    answer is you don't need to respond now, and I would, as I say,

1  dismiss it without prejudice with leave to amend.

2            MR. COX:  And Your Honor, this is Kevin Cox again.

3       I believe all parties had a chance just to provide a

4  final thought.  As a final thought on behalf of the judge

5  defendants, I leave you with this:  By the time your motions

6  for -- or our motions for reconsideration are ruled on by you,

7  all but one plaintiff should still be -- only one plaintiff

8  should remain detained at that point, and that's Plaintiff

9  Butler, I presume, because one of the -- the other ones,

10 Plaintiff Williams, his trial is scheduled for April the 4th.

11      So, and -- well -- and to go to Ms. Israni's point

12 earlier, frankly, a decision against one judge, declaratory

13 relief or equitable relief against one judge would apply across

14 the board, and I believe all judges would abide by that.  But I

15 do want to make that point, that by the time you rule, Judge,

16 presumably, only one plaintiff should be detained.

17           THE COURT:  Well, I think Ms. Israni is going to say

18 that when you go back to the situation when the case was first

19 filed and you look at who is in the case then -- anyway, let me

20 not sort of -- too many rulings on the fly here.  Let me leave

21 that and see where we come out.

22      I am inclined to agree with you, but I am -- what's

23 likely to be the outcome as to one judge defendant would almost

24 certainly be applicable across the board, but let me leave it

25 to the plaintiff to respond to your motion to reconsider.

1          Anything else?  All right.

2               MS. ISRANI:  Not from plaintiffs, Your Honor.  Thank

3   you.

4               THE COURT:  If you need a copy of the record in this

5   case, talk to Renee, and she will help you out.  And if they do

6   order a copy, Renee, make me one.

7               THE COURT REPORTER:  Sure.

8               THE COURT:  Thank you, everyone.

9          (The proceedings were concluded at 3:03 p.m.)

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                       C E R T I F I C A T E

2

3              I, Renee A. Ewing, an Official Court Reporter

4     for the United States District Court for the District of

5     Maryland, do hereby certify that the foregoing is a true and

6     correct transcript of the stenographically reported proceedings

7     taken on the date and time previously stated in the above

8     matter; that the testimony of witnesses and statements of the

9     parties were correctly recorded in machine shorthand by me and

10    thereafter transcribed under my supervision with computer-aided

11    transcription to the best of my ability; and that I am neither

12    of counsel nor kin to any party in said action, nor interested

13    in the outcome thereof.

14

15                   Renee A  Ewing

16

17                   Renee A. Ewing, RPR, RMR, CRR
                     Official Court Reporter
18                   March 8, 2023

19

20

21

22

23

24

25

## 1

**1** [1] - 9:6
**1301** [1] - 2:8
**14** [6] - 32:22, 32:23, 33:8, 33:15, 36:17, 36:25
**15** [1] - 32:18
**1601** [1] - 1:16

## 2

**2** [1] - 1:11, 7:24
**2-3** [2] - 11:18, 17:5
**20** [1] - 32:18
**200** [1] - 2:13
**20001** [2] - 1:17, 1:20
**20037** [1] - 2:4
**202** [2] - 1:17, 2:5
**2023** [2] - 1:11, 42:17
**20774** [1] - 1:24
**20th** [1] - 2:14
**2100** [1] - 2:4
**21202** [1] - 2:14
**2:03** [1] - 1:11

## 3

**30** [1] - 32:17
**301** [2] - 1:23, 2:10
**31** [1] - 37:7
**344-3227** [1] - 1:23
**3:03** [1] - 41:9

## 4

**4** [2] - 19:6, 29:20
**4(k** [1] - 29:21
**4-216.1** [1] - 29:20
**410** [1] - 2:15
**4100** [1] - 2:9
**415** [1] - 1:20
**4th** [1] - 40:10

## 5

**5** [1] - 17:13
**516-4939** [1] - 1:20
**576-6389** [1] - 2:15

## 6

**6** [1] - 17:14
**600** [1] - 1:19
**663-6057** [1] - 2:5

## 7

**7/19/23** [1] - 17:5

## 8

**8** [2] - 9:6, 42:17
**800** [1] - 1:16
**894-6132** [1] - 1:17

## 9

**952-5225** [1] - 2:10

## A

**abide** [2] - 35:3, 40:14
**ability** [1] - 42:11
**able** [4] - 26:3, 26:5, 26:22, 33:15
**academic** [1] - 7:10
**accept** [1] - 20:15
**according** [1] - 5:21
**acting** [1] - 29:1
**ACTION** [1] - 1:4
**action** [12] - 5:14, 19:3, 20:15, 20:18, 20:22, 20:23, 21:2, 21:20, 21:24, 25:16, 39:23, 42:12
**actual** [1] - 30:23
**adding** [1] - 22:5
**additionally** [2] - 9:2, 10:3
**address** [6] - 26:5, 27:14, 27:24, 31:13, 39:21, 39:22
**addressing** [3] - 11:5, 27:11, 35:16
**administering** [1] - 8:12
**administrative** [2] - 31:1, 38:20
**administratively** [2] - 7:16, 8:13
**adopting** [1] - 28:10
**adversary** [1] - 4:1
**advising** [1] - 31:9
**ADVOCACY** [1] - 1:18
**Advocacy** [1] - 4:1
**affect** [3] - 9:25, 13:6, 25:11
**affects** [1] - 19:4
**afternoon** [1] - 4:4
**ago** [1] - 8:15
**agree** [17] - 10:12, 12:7, 15:19, 16:15, 16:16, 19:2, 30:3, 30:4, 30:13, 30:22, 31:16, 31:17, 35:4, 35:20, 39:8, 40:22
**agreeable** [1] - 32:13
**agreement** [2] - 11:1, 18:19
**agrees** [2] - 13:18, 30:8
**ahead** [6] - 3:13, 10:18, 20:17, 24:24, 28:24, 38:6
**aided** [1] - 42:10
**AIDED** [1] - 1:24
**al** [4] - 1:4, 1:7, 2:6, 2:11
**allegations** [1] - 8:2
**allege** [1] - 8:23
**alleged** [2] - 8:5, 8:8
**ALLEN** [1] - 2:12
**allow** [3] - 16:17, 30:6, 30:7
**allowed** [1] - 15:14
**allowing** [1] - 31:18
**almost** [7] - 9:22, 13:15, 13:25, 14:14, 16:19, 38:14, 40:23
**alongside** [1] - 7:23
**alternative** [2] - 6:3, 22:5
**alternatively** [1] - 22:6
**amenable** [1] - 15:4
**amend** [4] - 38:23, 39:4, 39:5, 40:1
**amended** [4] - 21:10, 38:15, 39:5, 39:17
**amount** [1] - 7:23
**ample** [1] - 32:9
**analysis** [1] - 29:18
**analyzed** [2] - 23:6, 23:14
**AND** [2] - 1:18, 2:2
**Andrew** [1] - 16:24
**ANDREW** [1] - 2:8
**Andy** [2] - 4:5, 36:15
**answer** [6] - 7:6, 12:3, 13:25, 15:17, 29:10, 39:25
**answered** [1] - 33:13
**answering** [1] - 11:23
**answers** [1] - 13:2
**anticipate** [1] - 33:14
**anyway** [2] - 13:24, 40:19
**apologize** [1] - 25:1
**appear** [1] - 5:20
**APPEARANCES** [2] - 1:12, 2:1
**appendix** [1] - 34:5, 35:18
**Appendix** [2] - 26:4, 26:20
**applicable** [1] - 40:24
**applies** [3] - 17:19, 23:22, 24:3
**apply** [1] - 40:13
**agrees** [2] - 13:18, 30:8
**appreciate** [1] - 28:16
**appropriate** [2] - 32:16, 35:17
**approving** [1] - 29:7
**April** [1] - 40:10
**apt** [1] - 5:1
**argued** [1] - 19:16
**argument** [7] - 5:4, 5:12, 5:16, 5:17, 11:24, 14:3, 22:24
**arguments** [1] - 14:9
**arrangement** [1] - 18:20
**arriving** [1] - 10:10
**aside** [2] - 21:8, 32:12
**assume** [1] - 6:4
**assuming** [1] - 13:18
**assumption** [1] - 13:11
**ATTORNEY** [1] - 2:12
**authority** [1] - 32:4
**automatic** [1] - 28:13
**automatically** [2] - 28:11, 28:14
**Avenue** [3] - 1:16, 1:19, 2:4
**avoidable** [1] - 34:10
**aware** [1] - 11:4
**Ayana** [1] - 4:1
**AYANA** [1] - 2:3

## B

**bail** [4] - 18:13, 22:15, 22:22, 23:9
**ball** [1] - 12:21
**Baltimore** [1] - 2:14
**based** [3] - 8:1, 19:24, 20:1
**basic** [1] - 33:19
**BEFORE** [1] - 1:10
**beginning** [1] - 22:14
**behalf** [5] - 16:25, 19:13, 32:20, 39:15, 40:4
**belongs** [1] - 30:17
**benefit** [1] - 26:9
**best** [2] - 10:25, 42:11
**between** [1] - 30:10
**bit** [2] - 6:1, 33:22
**blur** [1] - 29:23
**board** [2] - 40:14, 40:24
**bond** [2] - 17:12, 30:7
**borne** [1] - 17:15
**bound** [3] - 21:17, 25:13, 25:14
**brief** [1] - 23:24
**briefing** [5] - 11:7, 11:11, 11:13, 13:22,
**15:10**
**briefly** [4] - 9:7, 14:24, 23:6, 28:6
**bring** [1] - 11:8
**brought** [1] - 5:13
**burden** [1] - 17:15
**Butler** [1] - 40:9
**BY** [10] - 1:14, 1:15, 1:15, 1:19, 2:3, 2:3, 2:7, 2:8, 2:12, 2:13

## C

**candid** [1] - 6:16
**candidly** [4] - 14:4, 16:10, 35:1, 39:10
**cannot** [2] - 18:16, 24:14
**capacity** [1] - 29:2
**care** [3] - 25:16, 35:9, 37:13
**carry** [1] - 18:18
**case** [33] - 5:10, 5:11, 5:12, 6:6, 6:14, 7:9, 14:10, 15:25, 16:4, 20:10, 21:8, 21:20, 23:1, 23:20, 24:3, 25:20, 26:13, 27:12, 28:11, 28:15, 29:12, 30:2, 31:5, 33:23, 33:24, 34:18, 37:14, 37:22, 40:18, 40:19, 41:5
**cases** [2] - 22:16, 23:23
**certain** [1] - 24:15
**certainly** [8] - 13:15, 13:25, 14:14, 16:19, 30:22, 32:2, 38:14, 40:24
**certification** [12] - 9:4, 9:8, 18:24, 19:1, 19:5, 21:5, 21:11, 21:25, 37:25, 38:8, 38:16, 39:18
**certified** [4] - 21:9, 22:17, 22:21, 25:17
**certify** [7] - 5:15, 6:2, 6:8, 37:12, 38:23, 39:3, 42:5
**challenge** [1] - 35:23
**chance** [2] - 39:24, 40:3
**change** [1] - 13:10, 26:24, 33:24, 34:6
**changed** [2] - 25:10, 25:11
**changes** [2] - 34:3, 37:11
**changing** [1] - 9:16

**chief** [1] - 27:9
**Circuit** [1] - 32:3
**cite** [1] - 9:5
**Civil** [2] - 3:12, 3:25
**CIVIL** [2] - 1:4, 1:14
**claim** [5] - 20:4, 23:2, 24:11, 30:24, 34:18
**claiming** [1] - 6:16
**claims** [1] - 21:7
**clarification/ reconsideration** [1] - 19:20
**clarify** [2] - 17:22, 36:5
**clarity** [1] - 38:4
**class** [49] - 5:14, 5:15, 6:9, 8:24, 9:3, 9:4, 9:7, 9:8, 18:23, 19:1, 19:3, 19:4, 20:3, 20:8, 20:15, 20:18, 20:22, 20:23, 21:2, 21:4, 21:5, 21:6, 21:8, 21:9, 21:10, 21:12, 21:14, 21:15, 21:19, 21:20, 21:24, 21:25, 22:1, 22:9, 22:18, 22:19, 22:21, 24:7, 25:16, 25:17, 34:20, 37:11, 37:25, 38:8, 39:17, 39:22, 39:23
**class-wide** [2] - 9:3, 21:15
**classes** [2] - 22:10, 25:3
**clear** [5] - 8:20, 17:14, 18:4, 19:22, 38:7
**clearly** [1] - 11:21
**clients** [3] - 26:10, 26:11
**close** [1] - 36:1
**closed** [1] - 10:25
**closer** [1] - 15:24
**closing** [2] - 7:17, 8:13
**colorable** [1] - 23:2
**coming** [1] - 16:2
**comment** [2] - 18:19, 36:2
**comments** [5] - 6:10, 7:14, 7:18, 19:19, 20:16
**commit** [1] - 30:1
**committee** [1] - 29:2
**communicate** [1] - 15:11
**compelled** [1] - 25:2
**complaint** [8] - 19:6, 23:7, 23:8, 23:12, 23:15, 34:6, 34:12, 37:11

**completed** [2] - 26:17, 27:20
**complicated** [1] - 25:5
**comply** [2] - 5:22, 12:19
**computer** [1] - 42:10
**COMPUTER** [1] - 1:24
**computer-aided** [1] - 42:10
**COMPUTER-AIDED** [1] - 1:24
**concerned** [2] - 33:25, 34:7
**concluded** [1] - 41:9
**conclusion** [1] - 16:2
**conditional** [1] - 30:9
**conditions** [2] - 12:11, 13:1
**conducts** [1] - 17:13
**conferred** [1] - 13:12
**confirming** [1] - 10:20
**conflict** [1] - 35:22
**Connecticut** [1] - 1:16
**conscience** [3] - 15:21, 18:21, 39:10
**consider** [3] - 7:14, 10:25, 37:10
**consideration** [3] - 10:10, 26:18, 26:20
**considerations** [1] - 7:1
**considered** [1] - 26:8
**considering** [1] - 29:16
**constantly** [1] - 9:16
**Constitution** [1] - 12:19
**CONSTITUTIONAL** [1] - 1:18
**Constitutional** [1] - 4:1
**constitutional** [1] - 5:23
**constitutionality** [1] - 32:8
**contemplating** [2] - 18:8, 18:14
**contending** [1] - 22:20
**contest** [1] - 15:5
**Continued** [1] - 2:1
**continuing** [2] - 37:21, 37:22
**contours** [1] - 33:24
**control** [2] - 12:15, 12:16
**conversation** [2] - 16:7, 16:9
**convincing** [1] - 17:15
**copy** [2] - 41:4, 41:6
**core** [2] - 6:6, 15:8

**CORPS** [1] - 1:14
**Corps** [2] - 3:12, 3:25
**correct** [9] - 4:18, 9:20, 10:19, 11:16, 25:22, 31:2, 33:5, 33:6, 42:6
**correctly** [1] - 42:9
**counsel** [15] - 3:1, 3:22, 3:23, 3:24, 4:11, 6:23, 7:19, 10:20, 16:1, 17:7, 18:10, 36:22, 37:10, 39:17, 42:12
**Counsel** [1] - 3:15
**country** [1] - 18:7
**COUNTY** [3] - 1:7, 2:6, 2:7
**County** [67] - 4:3, 4:5, 4:6, 4:17, 5:5, 5:20, 6:5, 9:12, 9:18, 9:21, 9:23, 9:24, 10:23, 11:3, 11:4, 11:17, 11:20, 16:25, 17:4, 17:6, 17:19, 17:23, 17:24, 18:3, 18:4, 18:5, 18:10, 20:16, 20:19, 20:21, 20:24, 21:16, 22:6, 24:19, 26:3, 27:2, 28:10, 28:19, 28:25, 29:15, 30:3, 30:5, 30:8, 30:10, 30:12, 30:14, 30:18, 30:22, 30:25, 31:6, 31:8, 31:17, 31:20, 32:4, 32:10, 32:18, 33:21, 34:2, 34:22, 35:16, 36:5, 37:8
**County's** [3] - 12:15, 29:13, 31:16
**course** [2] - 4:18, 33:22
**court** [2] - 12:22, 38:20
**COURT** [64] - 1:1, 1:22, 3:1, 3:4, 3:6, 3:13, 3:18, 3:22, 4:3, 4:7, 4:10, 4:21, 9:10, 10:15, 10:18, 11:14, 11:22, 13:2, 15:17, 16:10, 18:8, 18:18, 19:10, 20:12, 20:17, 21:3, 22:4, 22:23, 23:16, 24:5, 24:10, 24:22, 24:24, 26:14, 27:3, 27:9, 28:5, 28:16, 28:24, 30:16, 30:20, 30:22, 31:5, 31:23, 32:23, 33:2, 33:7, 33:10, 33:16,

36:7, 36:9, 36:12, 36:18, 36:23, 37:2, 37:7, 38:6, 38:13, 38:19, 39:20, 40:17, 41:4, 41:7, 41:8
**Court** [31] - 5:5, 8:20, 10:7, 10:9, 11:3, 11:8, 12:10, 15:16, 20:15, 20:25, 21:24, 22:2, 22:18, 23:22, 25:20, 25:23, 26:17, 27:17, 27:22, 27:25, 28:2, 28:13, 29:25, 30:6, 32:3, 34:4, 35:17, 42:3, 42:4, 42:17
**Court's** [1] - 20:24
**covered** [2] - 34:7, 34:16
**COX** [17] - 2:13, 4:8, 10:17, 10:19, 19:12, 28:21, 29:9, 30:19, 30:21, 31:12, 32:20, 33:1, 33:9, 38:3, 38:7, 39:14, 40:2
**Cox** [19] - 4:9, 10:16, 10:17, 10:18, 11:24, 16:22, 19:10, 19:12, 22:24, 28:18, 28:22, 31:8, 32:20, 37:14, 37:16, 37:20, 38:3, 39:14, 40:2
**CRR** [2] - 1:23, 42:16
**crystalize** [1] - 15:16
**current** [4] - 11:8, 20:21, 22:8, 38:22
**custody** [4] - 30:2, 30:8, 31:16
**cut** [3] - 28:21, 28:22, 28:23
**CUTLER** [1] - 2:2
**CUTTING** [1] - 1:15
**Cutting** [1] - 3:24

## D

**damages** [8] - 5:7, 20:19, 20:23, 21:1, 21:6, 21:7, 22:1
**DANIEL** [1] - 1:19
**date** [1] - 42:7
**days** [14] - 16:6, 16:20, 32:17, 32:18, 32:22, 32:23, 33:8, 33:15, 35:15, 36:17, 36:25, 37:5, 39:9
**DC** [3] - 1:17, 1:20, 2:4
**dealing** [2] - 5:10, 5:11
**decide** [7] - 7:6, 12:10,

30:5, 30:14, 31:7, 31:8, 31:21
**decided** [2] - 4:25, 9:4
**decides** [1] - 12:25
**deciding** [1] - 5:24
**decision** [11] - 7:12, 13:7, 17:9, 27:22, 28:3, 30:17, 30:23, 31:2, 32:10, 34:9, 40:12
**decisions** [1] - 32:4
**declaration** [1] - 24:18
**declarations** [1] - 7:24
**declaratory** [3] - 24:13, 34:9, 40:12
**DEFENDANT** [2] - 2:6, 2:11
**defendant** [7] - 4:16, 22:25, 23:17, 30:2, 30:3, 30:14, 40:23
**Defendants** [1] - 1:8
**defendants** [35] - 5:6, 6:5, 8:3, 8:19, 9:12, 9:13, 9:17, 10:22, 11:15, 11:17, 11:20, 12:6, 12:23, 14:9, 15:4, 16:16, 19:8, 19:13, 19:18, 19:23, 19:24, 20:3, 20:4, 20:25, 21:21, 22:25, 24:13, 28:1, 29:12, 29:16, 30:11, 39:15, 40:5
**defense** [1] - 13:18
**defenses** [1] - 15:6
**deferred** [2] - 7:4, 12:8
**defined** [2] - 22:11, 22:12
**definitions** [1] - 22:19
**definitive** [1] - 27:18
**demonstrated** [1] - 5:22
**denied** [2] - 16:20, 16:21
**deny** [11] - 13:16, 13:17, 13:25, 14:15, 14:17, 14:18, 14:20, 15:22, 18:21, 39:11
**dependent** [1] - 35:10
**desirable** [1] - 24:6
**desire** [1] - 34:14
**detached** [1] - 17:9
**detained** [6] - 18:16, 23:9, 23:11, 24:14, 40:8, 40:16
**detainees** [3] - 20:21, 25:9, 25:11
**detainers** [1] - 27:15
**detaining** [1] - 17:25
**detention** [5] - 5:19,

23:21, 23:23, 24:3, 31:19
**determine** [1] - 30:13
**determining** [1] - 20:8
**dictate** [3] - 3:3, 29:15, 30:12
**different** [3] - 22:17, 34:12, 35:12
**directed** [2] - 17:4, 17:19
**directly** [3] - 9:24, 17:19, 29:10
**disagree** [4] - 15:1, 15:3, 15:7, 21:6
**discover** [1] - 7:11
**discovered** [1] - 16:4
**discovery** [9] - 4:23, 6:23, 7:3, 11:13, 13:23, 16:12, 25:17, 25:19, 39:13
**discretion** [1] - 32:9
**discuss** [1] - 16:2
**discussing** [1] - 16:1
**discussion** [3] - 25:3, 31:24, 32:11
**dismiss** [6] - 8:4, 15:9, 24:2, 38:22, 39:3, 40:1
**dismissal** [1] - 34:17
**dispose** [1] - 33:23
**dispute** [4] - 8:7, 15:10, 15:12, 15:13
**disputing** [1] - 8:5
**District** [2] - 42:4
**DISTRICT** [3] - 1:1, 1:2, 1:10
**division** [5] - 12:6, 12:8, 12:9, 12:14, 12:21
**DIVISION** [1] - 1:3
**division's** [2] - 12:15, 12:21
**Docket** [4] - 7:24, 9:5, 11:18, 19:6
**docket** [2] - 3:14, 38:24
**Document** [1] - 17:5
**documented** [1] - 27:21
**documents** [1] - 7:24
**done** [3] - 12:23, 27:19, 35:20
**Donna** [1] - 4:2
**DONNA** [1] - 2:3
**DOOR** [1] - 2:2
**down** [2] - 13:21, 34:8
**DOWNER** [1] - 1:15
**Downer** [1] - 3:25
**draft** [1] - 27:7
**Drive** [1] - 2:8

**due** [5] - 18:1, 18:2, 18:15, 24:20
**duplicative** [3] - 7:5, 13:24, 16:14

### E

**ECF** [1] - 17:5
**effect** [1] - 13:4
**eight** [2] - 8:15, 11:2
**either** [4] - 6:7, 21:14, 21:25, 35:8
**Ellora** [5] - 3:11, 3:16, 7:20, 14:25, 28:7
**ELLORA** [2] - 1:14, 3:16
**emerges** [1] - 38:1
**end** [4] - 7:2, 27:8, 34:24, 36:6
**enjoined** [5] - 17:6, 17:25, 18:5, 18:6, 18:7
**entitled** [1] - 21:1
**equitable** [16] - 20:22, 21:5, 21:9, 21:11, 21:14, 21:15, 21:16, 22:1, 24:9, 24:11, 25:8, 25:15, 26:6, 34:13, 34:15, 40:13
**ESQUIRE** [10] - 1:14, 1:15, 1:15, 1:19, 2:3, 2:3, 2:7, 2:8, 2:12, 2:13
**essence** [3] - 20:22, 25:10, 25:15
**essentially** [9] - 7:3, 10:24, 11:25, 13:7, 16:14, 20:20, 21:2, 30:6, 31:14
**et** [4] - 1:4, 1:7, 2:6, 2:11
**event** [1] - 32:7
**evidence** [9] - 7:23, 8:1, 8:9, 8:24, 17:11, 17:14, 18:9, 18:10, 19:5
**evidentiary** [1] - 17:15
**Ewing** [4] - 1:23, 42:3, 42:15, 42:16
**ex** [2] - 14:8, 17:24
**exact** [1] - 31:9
**exactly** [4] - 10:25, 13:20, 27:2, 34:25
**example** [3] - 17:2, 19:16, 31:10
**exception** [2] - 23:21, 24:2
**exhibits** [1] - 7:24
**expect** [1] - 10:5
**explain** [1] - 5:3

**explanation** [3] - 6:17, 29:10, 29:19
**exposed** [1] - 5:6
**extension** [1] - 13:8
**extensive** [2] - 13:22, 13:23
**extent** [6] - 3:2, 13:3, 32:8, 34:13, 37:10, 37:25

### F

**fact** [2] - 8:7, 22:7
**facts** [10] - 8:5, 8:8, 8:18, 13:19, 15:5, 15:8, 15:15, 16:9, 16:16
**factual** [1] - 15:12
**failure** [1] - 5:22
**fair** [4] - 32:23, 33:20, 38:13
**fairly** [3] - 5:1, 14:9, 37:3
**fall** [1] - 21:8
**far** [2] - 7:4, 35:21
**Farag** [1] - 4:2
**FARAG** [1] - 2:3
**favorable** [1] - 16:17
**favored** [1] - 6:21
**few** [1] - 20:15
**file** [7] - 6:21, 21:10, 33:10, 37:17, 38:15, 38:23, 39:17
**filed** [21] - 7:22, 8:15, 10:21, 11:17, 19:4, 19:15, 21:5, 21:13, 23:7, 23:8, 23:12, 23:15, 33:5, 33:11, 33:12, 35:15, 37:17, 37:18, 38:10, 40:19
**filing** [2] - 4:19, 39:1
**filling** [1] - 27:16
**final** [6] - 15:24, 24:6, 35:13, 36:2, 40:4
**finally** [1] - 6:10
**fine** [5] - 10:20, 15:7, 21:25, 33:17, 36:4
**finish** [1] - 30:20
**first** [11] - 4:14, 4:22, 6:2, 11:15, 18:25, 19:11, 22:10, 28:18, 31:18, 32:14, 40:18
**five** [1] - 23:9
**Floor** [1] - 2:14
**fly** [1] - 40:20
**folded** [1] - 6:8
**folks** [3] - 4:10, 5:2, 18:18
**follow** [1] - 39:16
**followed** [1] - 12:16

**following** [1] - 37:5
**footnote** [1] - 9:6
**FOR** [5] - 1:2, 1:13, 1:18, 2:6, 2:11
**foregoing** [1] - 42:5
**forget** [1] - 32:1
**form** [1] - 27:16
**formal** [1] - 24:6
**forth** [2] - 13:22, 26:10
**forward** [11] - 4:22, 7:18, 14:2, 14:21, 15:23, 20:10, 28:9, 32:15, 34:1, 34:22
**frame** [2] - 22:6, 24:11
**frames** [1] - 27:19
**frankly** [5] - 15:23, 17:20, 29:11, 29:14, 40:12
**FRAZIER** [1] - 1:4
**front** [1] - 23:19
**full** [2] - 31:24, 32:4
**fully** [6] - 10:4, 12:14, 16:4, 23:5, 23:24, 27:19
**function** [5] - 13:13, 17:7, 17:9, 17:10, 17:12
**functions** [1] - 17:17
**future** [4] - 20:21, 25:11, 33:18, 34:10

### G

**gather** [1] - 27:10
**gathered** [1] - 7:25
**GENERAL** [1] - 2:12
**general** [1] - 22:18
**GEORGE'S** [3] - 1:7, 2:6, 2:7
**George's** [4] - 4:6, 5:20, 6:5, 22:6
**gibe** [1] - 32:2
**gist** [1] - 30:24
**given** [3] - 14:13, 16:19, 29:6
**Glad** [1] - 3:7
**grant** [1] - 16:17
**GREENBELT** [1] - 1:11
**guess** [2] - 18:25, 20:21

### H

**HALE** [1] - 2:2
**handle** [2] - 14:11, 22:9
**hanging** [1] - 38:21
**happy** [9] - 15:14, 15:20, 19:7, 21:10,

21:12, 21:22, 21:23, 22:2, 38:18
**hard** [1] - 35:18
**harm** [3] - 8:11, 8:14, 9:1
**hash** [1] - 4:23
**hear** [4] - 9:11, 9:13, 14:3, 16:6
**heard** [2] - 17:11, 38:14
**hearing** [13] - 7:5, 10:4, 14:7, 16:13, 17:8, 17:12, 18:8, 18:13, 25:18, 25:21, 31:7, 32:14, 39:13
**hearings** [1] - 15:2
**heart** [2] - 26:23, 32:3
**held** [1] - 13:4
**help** [1] - 41:5
**helping** [1] - 26:11
**hereby** [1] - 42:5
**highlight** [1] - 8:6
**hold** [1] - 37:22
**holding** [1] - 29:3
**Honor** [38] - 3:11, 4:8, 4:18, 7:20, 8:25, 9:3, 9:14, 10:17, 12:4, 14:24, 15:1, 18:12, 19:2, 19:3, 19:12, 19:17, 20:14, 21:19, 23:19, 24:1, 24:23, 28:4, 28:21, 29:9, 30:9, 31:4, 31:13, 32:20, 33:1, 33:6, 33:9, 33:14, 36:4, 36:14, 37:6, 38:3, 40:2, 41:2
**HONORABLE** [1] - 1:10
**hooked** [1] - 14:5
**hoping** [1] - 27:7
**hundreds** [1] - 8:24

### I

**I-S-R-A-N-I** [1] - 3:17
**i.e** [1] - 17:10
**idea** [1] - 24:11
**identify** [1] - 3:8
**immunity** [1] - 15:6
**implement** [1] - 11:5
**implicates** [1] - 34:19
**impossible** [1] - 9:22
**impractical** [2] - 14:4
**IN** [1] - 1:1
**inclination** [2] - 10:23, 15:22
**inclined** [2] - 39:11, 40:22
**including** [1] - 28:1

**incorporated** [1] - 34:9
**indeed** [1] - 34:8
**indicate** [1] - 32:16
**individual** [6] - 5:5, 17:8, 22:19, 29:12, 29:14, 30:11
**inextricably** [1] - 21:17
**inform** [1] - 10:6
**information** [1] - 27:14
**inherently** [3] - 23:21, 23:23, 24:2
**initial** [1] - 10:13
**injunction** [42] - 6:11, 6:13, 6:20, 6:22, 6:24, 7:3, 7:7, 7:8, 7:22, 8:1, 8:11, 8:21, 8:23, 9:5, 9:11, 9:15, 9:21, 9:24, 10:2, 10:6, 10:14, 10:21, 11:8, 11:16, 11:19, 12:12, 13:16, 14:1, 14:7, 14:8, 14:13, 14:21, 15:23, 15:25, 16:12, 16:13, 17:4, 17:22, 24:19, 39:7, 39:9
**injunctions** [1] - 15:2
**injunctive** [4] - 9:23, 10:11, 13:5, 20:19
**input** [1] - 28:19
**inquiries** [1] - 35:17
**insofar** [2] - 34:3, 35:2
**Institute** [1] - 3:25
**INSTITUTE** [1] - 1:18
**instruction** [1] - 28:3
**intended** [1] - 30:15
**intent** [1] - 39:16
**interested** [2] - 28:1, 42:12
**interlocking** [1] - 13:12
**internal** [1] - 27:12
**interpreted** [1] - 32:9
**intervening** [1] - 15:25
**invite** [2] - 7:14, 36:2
**inviting** [1] - 6:10
**involved** [1] - 22:15
**involvement** [1] - 12:9
**irreparable** [3] - 8:11, 8:14, 9:1
**ISRANI** [27] - 1:14, 3:11, 3:16, 3:20, 3:24, 7:20, 11:15, 12:4, 14:24, 16:8, 17:21, 18:12, 19:2, 21:4, 22:10, 23:4, 23:19, 24:9, 24:12,

28:4, 28:6, 31:4, 33:14, 36:4, 36:8, 38:18, 41:2
**Israni** [22] - 3:11, 3:16, 7:20, 9:10, 9:20, 11:2, 11:14, 13:15, 14:25, 16:7, 17:21, 18:25, 19:14, 21:3, 24:5, 28:7, 29:22, 31:3, 36:3, 38:14, 38:17, 40:17
**Israni's** [1] - 40:11
**issue** [35] - 4:24, 5:9, 5:13, 5:24, 6:3, 6:7, 6:14, 7:7, 7:15, 8:12, 9:3, 9:4, 9:7, 9:11, 9:15, 12:3, 13:12, 13:23, 19:8, 20:8, 21:19, 21:22, 21:25, 22:18, 23:3, 23:14, 23:17, 24:4, 25:18, 36:16, 37:13, 39:7, 39:22
**issues** [9] - 8:10, 8:20, 13:20, 15:16, 21:17, 26:5, 26:22, 34:6, 35:8
**item** [1] - 18:23
**items** [1] - 7:11
**IV** [1] - 2:12

## J

**jail** [12] - 8:25, 9:18, 17:7, 17:9, 17:11, 17:13, 17:19, 17:24, 18:6, 25:13, 31:19
**jailer** [2] - 17:23, 24:19
**jailers** [1] - 18:6
**jailing** [1] - 24:19
**James** [1] - 4:9
**JAMES** [1] - 2:12
**JEREMY** [1] - 1:15
**Jeremy** [1] - 3:24
**Jersey** [1] - 1:19
**Johnson** [8] - 4:6, 24:25, 26:14, 28:9, 31:22, 35:1, 36:9, 36:13
**JOHNSON** [9] - 2:7, 24:23, 24:25, 26:16, 27:6, 27:11, 33:6, 36:11, 36:14
**Judge** [14] - 3:1, 3:5, 4:4, 10:4, 10:22, 16:24, 17:2, 17:17, 19:19, 29:19, 32:3, 36:15, 39:14, 40:15
**JUDGE** [1] - 1:10
**judge** [23] - 3:4, 10:21,

18:11, 18:13, 19:13, 19:18, 19:23, 19:24, 22:22, 22:25, 24:13, 27:9, 29:12, 30:1, 30:11, 30:18, 37:22, 39:15, 40:4, 40:12, 40:13, 40:23
**judges** [49] - 4:7, 4:16, 5:8, 5:10, 5:20, 5:21, 5:25, 6:5, 10:16, 11:20, 11:25, 12:2, 12:3, 12:9, 12:22, 13:4, 13:6, 17:20, 18:23, 20:20, 22:5, 22:8, 22:11, 22:14, 22:15, 22:19, 23:2, 23:8, 23:10, 23:13, 23:17, 24:17, 25:5, 25:12, 25:13, 27:9, 28:20, 29:1, 29:7, 29:11, 29:14, 30:10, 30:25, 31:10, 33:11, 35:21, 37:14, 37:18, 40:14
**judges'** [1] - 23:25
**judgment** [1] - 34:9
**judicial** [2] - 17:10, 29:2
**judiciary** [5] - 9:25, 13:8, 29:14, 30:12, 31:18
**July** [4] - 9:9, 11:9, 19:7, 19:15

## K

**keeping** [2] - 5:5, 5:6
**KEVIN** [1] - 2:13
**Kevin** [8] - 4:8, 10:17, 19:12, 28:22, 32:20, 38:3, 39:14, 40:2
**kin** [1] - 42:12
**kind** [8] - 7:3, 8:8, 8:19, 23:2, 28:25, 32:9, 35:25, 36:24
**kinds** [2] - 34:4, 34:6

## L

**laid** [1] - 24:21
**LAKEECIA** [1] - 2:11
**Largo** [1] - 2:9
**last** [3] - 7:15, 11:10, 19:7
**latter** [1] - 22:2
**law** [4] - 9:2, 9:5, 23:7, 28:10
**LAW** [1] - 2:7
**lay** [1] - 8:8
**lays** [1] - 12:18

**least** [3] - 5:21, 15:9, 33:20
**leave** [11] - 32:9, 32:12, 35:11, 38:23, 39:4, 39:5, 40:1, 40:5, 40:20, 40:24
**leaving** [1] - 31:1
**left** [4] - 19:18, 19:24, 19:25, 20:2
**legal** [1] - 15:13
**less** [1] - 32:17
**likelihood** [2] - 13:9, 29:4
**likely** [3] - 6:25, 13:15, 40:23
**limitations** [1] - 10:8
**line** [4] - 3:20, 3:23, 4:6, 16:23
**lines** [1] - 29:23
**linked** [3] - 13:4, 22:8, 28:25
**listen** [1] - 5:4
**listening** [1] - 25:21
**litigate** [3] - 19:8, 21:22, 25:25
**litigious** [1] - 25:6
**live** [1] - 10:5
**LLP** [1] - 2:2
**lock** [1] - 12:2
**look** [11] - 5:7, 13:14, 24:10, 28:9, 28:16, 28:25, 29:4, 29:20, 35:18, 39:6, 40:19
**looked** [1] - 6:7
**looking** [7] - 17:2, 24:12, 24:17, 24:18, 27:6, 34:8, 34:25
**looks** [2] - 5:15, 18:15
**LYNN** [1] - 2:7

## M

**machine** [1] - 42:9
**main** [1] - 8:10
**maker** [1] - 17:10
**March** [2] - 37:7, 42:17
**MARCH** [1] - 1:11
**Maryland** [8] - 2:9, 2:14, 29:20, 29:22, 32:1, 35:22, 42:5
**MARYLAND** [4] - 1:2, 1:7, 1:11, 2:6
**matter** [6] - 12:23, 26:23, 28:10, 31:6, 37:24, 42:8
**McCormick** [1] - 2:8
**mean** [18] - 11:6, 14:3, 14:12, 21:9, 22:23, 23:17, 27:4, 28:20, 29:2, 29:7, 30:18,

32:17, 35:2, 35:23, 36:9, 37:13, 38:14
**means** [1] - 14:21
**meeting** [1] - 4:11
**members** [1] - 8:25
**memo** [2] - 3:3, 38:10
**memorandum** [5] - 19:24, 26:5, 36:1, 36:16, 36:20
**merits** [11] - 6:25, 7:4, 7:12, 7:18, 13:24, 14:2, 14:6, 14:22, 25:20, 26:2, 26:12
**MESSITTE** [1] - 1:10
**Messitte** [3] - 3:1, 4:4, 16:24
**met** [1] - 24:16
**might** [2] - 34:14, 38:10
**mince** [1] - 14:19
**mind** [2] - 13:10, 17:4
**minimum** [1] - 20:5
**minute** [2] - 11:22, 15:19
**mistaken** [1] - 9:20
**moment** [1] - 28:17
**month** [3] - 27:8, 34:24, 36:6
**months** [5] - 8:15, 11:3, 38:21, 38:22
**moot** [5] - 10:24, 21:2, 26:22, 28:11, 28:15
**mootness** [5] - 23:13, 23:16, 23:19, 23:21
**morning** [1] - 4:8
**motion** [70] - 4:16, 4:19, 6:2, 6:8, 6:11, 6:19, 6:20, 6:21, 6:23, 7:2, 7:22, 8:1, 8:13, 8:15, 8:21, 9:5, 9:8, 10:2, 10:5, 10:13, 11:7, 11:17, 13:9, 13:16, 14:1, 14:20, 15:9, 15:23, 17:3, 18:22, 19:4, 19:6, 19:9, 19:14, 19:15, 19:16, 19:20, 20:1, 20:6, 20:12, 20:24, 21:4, 21:10, 21:13, 23:5, 23:25, 24:1, 26:1, 32:14, 32:19, 32:24, 33:2, 33:4, 33:7, 33:10, 33:12, 36:20, 37:17, 37:18, 37:25, 38:10, 38:15, 38:22, 38:24, 39:1, 39:3, 39:5, 39:17, 40:25
**motions** [19] - 4:14, 4:23, 5:2, 5:14, 6:21,

8:4, 20:10, 21:15,
26:10, 32:13, 34:1,
34:22, 35:14, 38:11,
38:21, 39:18, 39:24,
40:5, 40:6
**move** [1] - 20:10
**moved** [1] - 9:8
**MR** [26] - 4:4, 4:8,
4:18, 9:14, 10:17,
10:19, 16:24, 19:12,
20:14, 20:18, 28:21,
29:9, 30:19, 30:21,
31:12, 32:20, 33:1,
33:9, 36:15, 36:19,
37:1, 37:6, 38:3,
38:7, 39:14, 40:2
**MS** [34] - 3:11, 3:16,
3:20, 3:24, 7:20,
11:15, 12:4, 14:24,
16:8, 17:21, 18:12,
19:2, 21:4, 22:10,
23:4, 23:19, 24:9,
24:12, 24:23, 24:25,
26:16, 27:6, 27:11,
28:4, 28:6, 31:4,
33:6, 33:14, 36:4,
36:8, 36:11, 36:14,
38:18, 41:2
**MURRAY** [11] - 2:8,
4:4, 4:18, 9:14,
16:24, 20:14, 20:18,
36:15, 36:19, 37:1,
37:6
**Murray** [15] - 4:5, 4:17,
9:12, 10:19, 11:24,
16:22, 16:24, 17:21,
20:12, 21:6, 25:1,
25:7, 35:1, 36:12,
36:15
**Murray's** [1] - 26:7
**muse** [1] - 28:17

## N

**name** [1] - 3:15
**named** [2] - 9:17,
22:16
**names** [2] - 3:13, 3:14
**narrow** [1] - 21:11
**nature** [5] - 9:16,
13:12, 23:24, 34:6,
34:20
**necessarily** [4] - 12:2,
33:23, 34:10, 34:17
**necessary** [1] - 32:16
**need** [16] - 3:2, 7:1,
8:23, 11:6, 13:14,
14:11, 14:19, 18:18,
25:16, 32:17, 35:18,
37:10, 39:1, 39:2,

39:25, 41:4
**needs** [3] - 18:3,
30:12, 35:20
**neutral** [1] - 17:9
**New** [1] - 1:19
**new** [18] - 11:5, 11:7,
13:21, 26:15, 27:5,
28:8, 28:10, 28:14,
29:6, 31:12, 34:16,
34:18, 35:16, 36:6,
37:8, 37:25
**next** [4] - 4:9, 18:23,
28:3, 39:9
**NO** [1] - 1:4
**nobody** [1] - 23:1
**none** [3] - 17:17,
17:20
**nonetheless** [1] -
10:22
**note** [3] - 9:7, 9:19,
10:3
**noted** [1] - 8:25
**NOTES** [1] - 1:24
**nothing** [2] - 11:2,
21:16
**notice** [3] - 11:3, 17:8,
27:1
**notifications** [1] -
27:25
**number** [3] - 4:25, 5:1,
15:18
**numbers** [1] - 27:15
**NW** [3] - 1:16, 1:19,
2:4

## O

**objective** [1] - 33:19
**obtuse** [1] - 38:5
**obviously** [3] - 4:14,
8:10, 28:8
**occurs** [1] - 31:6
**October** [1] - 11:10
**OF** [5] - 1:2, 1:9, 1:24,
2:7, 2:12
**OFFICE** [2] - 2:7, 2:12
**officer** [1] - 17:10
**Official** [1] - 42:3
**OFFICIAL** [1] - 1:22
**official** [1] - 42:17
**officials** [1] - 18:11
**old** [2] - 13:21, 32:3
**once** [6] - 4:24, 12:7,
12:24, 26:17, 27:12
**one** [18] - 4:10, 4:20,
4:25, 8:10, 15:3,
17:6, 20:19, 30:25,
34:10, 37:11, 40:7,
40:9, 40:12, 40:13,
40:16, 40:23, 41:6

**ones** [2] - 20:2, 40:9
**ongoing** [3] - 8:14,
8:16
**open** [4] - 8:17, 8:19,
15:3, 21:18
**operating** [2] - 10:9,
15:9
**opinion** [4] - 5:1,
19:24, 26:5, 38:10
**opportunity** [5] -
14:13, 17:11, 17:13,
37:4, 37:20
**oppose** [3] - 32:23,
32:24, 33:7
**opposed** [1] - 30:18
**opposing** [1] - 37:4
**opposition** [5] - 32:15,
33:4, 35:15, 37:5,
37:19
**oppositions** [3] - 34:2,
35:14, 37:3
**order** [13] - 11:17,
12:5, 12:12, 12:18,
14:10, 17:3, 18:2,
19:23, 24:2, 26:19,
26:21, 27:17, 41:6
**ordering** [1] - 36:5
**ordinarily** [2] - 6:20,
6:22
**organization** [1] - 30:2
**original** [1] - 37:22
**otherwise** [2] - 5:19,
39:12
**ought** [3] - 15:19,
32:10, 39:23
**outcome** [5] - 24:8,
26:1, 39:2, 40:23,
42:13
**outlined** [1] - 20:9
**overall** [1] - 33:19
**own** [2] - 4:20, 33:10

## P

**P.M** [1] - 1:11
**p.m** [1] - 41:9
**package** [1] - 16:19
**part** [5] - 13:8, 32:10,
32:13, 34:14, 35:5
**parte** [2] - 14:8, 17:24
**particular** [2] - 22:11,
38:24
**particularly** [2] - 9:15,
34:3
**parties** [3] - 28:1,
40:3, 42:9
**parts** [1] - 35:10
**party** [1] - 42:12
**passed** [1] - 11:3
**Paul** [1] - 2:13

**peace** [1] - 7:13
**pending** [4] - 9:8,
19:6, 19:14, 19:17
**Pennsylvania** [1] - 2:4
**people** [10] - 3:23,
5:18, 12:1, 14:4,
17:25, 22:12, 24:20,
27:20, 28:25, 31:1
**perhaps** [3] - 19:16,
31:25, 39:22
**period** [4] - 6:23,
14:22, 15:18, 18:22
**person** [7] - 12:5,
12:10, 12:24, 18:14,
24:14, 30:6, 31:15
**PETER** [1] - 1:10
**phone** [1] - 27:14
**PICKERING** [1] - 2:2
**PJM-22-1768** [1] - 1:4
**Place** [1] - 2:13
**place** [5] - 29:1, 29:5,
29:16, 31:9, 33:19
**Plaintiff** [2] - 40:8,
40:10
**plaintiff** [19] - 3:10,
3:19, 6:24, 22:20,
22:21, 24:7, 33:12,
40:7, 40:16, 40:25
**Plaintiffs** [1] - 1:5
**plaintiffs** [45] - 3:12,
4:15, 5:4, 5:9, 5:11,
5:16, 5:18, 5:21, 6:1,
7:21, 8:11, 8:17,
11:4, 11:12, 12:19,
14:25, 16:18, 19:2,
19:22, 19:25, 20:4,
20:5, 21:1, 22:8,
22:13, 23:10, 23:11,
24:7, 25:8, 26:9,
26:19, 26:24, 28:7,
29:23, 33:20, 34:7,
34:15, 34:24, 35:3,
35:6, 35:18, 37:19,
37:22, 41:2
**PLAINTIFFS** [1] - 1:13
**plaintiffs'** [13] - 4:19,
6:15, 7:18, 10:20,
17:3, 22:16, 23:1,
30:24, 33:4, 36:20,
36:22, 37:9, 39:17
**play** [2] - 29:13, 32:7
**pleading** [2] - 6:15
**point** [19] - 4:12, 5:24,
6:1, 7:8, 7:10, 7:18,
10:1, 10:4, 10:14,
15:12, 16:18, 21:2,
25:2, 26:7, 31:24,
38:25, 40:8, 40:11,
40:15
**pointed** [1] - 11:2

**points** [1] - 6:11
**policies** [3] - 29:15,
35:2, 36:6
**policy** [24] - 11:5,
13:21, 25:11, 26:15,
27:5, 28:8, 28:10,
28:12, 28:14, 28:19,
29:6, 29:13, 29:21,
29:24, 31:13, 34:8,
34:11, 34:16, 34:23,
35:16, 36:21, 37:8
**portrayed** [1] - 29:25
**posed** [1] - 26:20
**posing** [1] - 25:22
**position** [1] - 12:7
**positions** [1] - 17:1
**possible** [1] - 25:24
**possibly** [1] - 14:5
**postpone** [1] - 11:12
**potential** [1] - 31:25
**potentially** [1] - 5:6
**practical** [1] - 37:23
**practice** [2] - 31:14,
31:15
**practices** [1] - 12:16
**precisely** [1] - 17:1
**prejudice** [11] - 14:1,
14:2, 14:15, 14:20,
15:22, 16:21, 18:22,
39:4, 39:11, 40:1
**preliminary** [46] -
6:11, 6:13, 6:20,
6:22, 6:24, 7:2, 7:7,
7:17, 7:22, 7:25,
8:10, 8:21, 8:23, 9:3,
9:5, 9:11, 9:15, 9:21,
10:2, 10:6, 10:13,
10:21, 11:7, 11:16,
11:18, 12:12, 13:16,
14:1, 14:7, 14:13,
14:21, 15:1, 15:20,
15:23, 15:25, 16:11,
16:12, 16:13, 16:17,
17:3, 17:18, 17:22,
18:20, 20:19, 39:7,
39:9
**premature** [1] - 6:1
**preparation** [1] -
34:23
**prepared** [3] - 14:18,
14:20, 33:7
**prerelease** [2] - 31:19,
33:20
**prerequisite** [1] -
31:17
**present** [4] - 17:11,
20:25, 26:3, 26:17
**presentation** [1] -
18:9
**presented** [1] - 17:14

**press** [1] - 14:15
**presumably** [4] - 5:15, 5:17, 22:7, 40:16
**presume** [1] - 40:9
**pretrial** [7] - 22:12, 23:20, 23:23, 24:3, 25:9, 29:17, 37:9
**Pretrial** [13] - 10:7, 10:8, 12:6, 12:8, 12:14, 12:15, 12:21, 12:24, 23:11, 27:13
**pretty** [1] - 27:7
**prevail** [1] - 6:25
**previously** [1] - 42:7
**primarily** [1] - 4:5
**primary** [1] - 20:3
**PRINCE** [3] - 1:7, 2:6, 2:7
**Prince** [4] - 4:6, 5:20, 6:5, 22:5
**probability** [1] - 29:6
**problem** [4] - 6:14, 7:16, 16:1, 36:10
**problematic** [2] - 6:12, 9:15
**procedural** [2] - 17:25, 24:20
**procedure** [4] - 11:5, 25:10, 26:25
**procedures** [4] - 9:18, 10:7, 24:15, 27:12
**proceed** [6] - 10:2, 21:12, 21:21, 21:23, 22:2, 39:23
**proceedings** [2] - 41:9, 42:6
**PROCEEDINGS** [1] - 1:9
**process** [7] - 12:13, 18:1, 18:2, 18:15, 24:21, 25:17
**processes** [2] - 10:7, 12:18
**progeny** [3] - 18:17, 24:14, 24:21
**proof** [1] - 18:9
**properly** [1] - 23:6
**proponent's** [1] - 12:4
**proposal** [1] - 18:11
**proposed** [8] - 11:17, 11:18, 12:12, 12:18, 17:2, 17:3, 18:2, 18:5
**proposes** [1] - 21:5
**prospective** [2] - 20:20, 25:9
**Protection** [1] - 4:1
**PROTECTION** [1] - 1:18
**provide** [3] - 29:19,

36:16, 40:3
**provided** [2] - 26:4, 27:1
**providing** [1] - 36:21
**provisional** [1] - 15:20
**provisionally** [1] - 16:3
**purely** [1] - 12:20
**purpose** [2] - 17:8, 26:13
**purposes** [1] - 38:20
**pushes** [1] - 25:19
**put** [7] - 11:3, 14:16, 20:1, 32:7, 35:4, 35:23, 39:8
**putative** [5] - 8:24, 19:3, 21:20, 21:24, 39:22

## Q

**questions** [3] - 25:21, 26:20, 34:4
**quickly** [1] - 25:24
**quite** [4] - 11:21, 14:3, 14:4, 29:23
**quote** [1] - 37:8

## R

**raised** [2] - 34:5, 35:17
**raises** [1] - 37:14
**rather** [2] - 11:9, 14:17
**re** [1] - 38:23
**re-file** [1] - 38:23
**read** [2] - 18:1, 31:10
**realistically** [1] - 20:1
**realize** [1] - 3:6
**really** [10] - 5:13, 5:14, 6:2, 6:3, 6:7, 6:10, 7:9, 15:9, 20:23, 35:6
**reason** [1] - 34:13
**rebut** [1] - 17:14
**rebuttal** [1] - 18:9
**received** [4] - 17:25, 18:15, 22:12, 24:20
**recertify** [1] - 39:2
**reconsider** [25] - 4:15, 4:16, 4:23, 5:2, 13:9, 20:13, 21:15, 23:25, 29:3, 32:13, 32:14, 32:19, 32:24, 33:2, 33:4, 33:8, 33:11, 33:12, 34:1, 34:22, 35:14, 37:17, 37:18, 39:24, 40:25
**reconsideration** [11] - 4:20, 19:17, 20:6,

20:11, 23:5, 26:1, 35:9, 36:21, 38:12, 39:19, 40:6
**record** [9] - 3:2, 3:3, 6:13, 7:1, 7:9, 8:9, 14:17, 14:19, 41:4
**recorded** [1] - 42:9
**referrals** [1] - 22:13
**referred** [6] - 12:5, 12:14, 12:20, 12:24, 23:10, 27:13
**regard** [4] - 5:8, 6:19, 39:7, 39:23
**reinstated** [1] - 21:7
**relate** [1] - 8:20
**release** [10] - 29:17, 30:14, 30:17, 30:23, 30:24, 31:2, 31:9, 31:15, 32:10, 37:9
**released** [5] - 12:10, 12:25, 30:7, 30:8, 32:5
**relevant** [1] - 7:12
**relief** [25] - 7:17, 9:3, 9:23, 10:11, 13:5, 13:17, 15:20, 16:17, 17:18, 20:20, 20:22, 21:15, 21:16, 22:18, 24:13, 25:8, 25:15, 26:6, 34:13, 34:15, 35:5, 40:13
**remain** [4] - 5:9, 5:10, 5:11, 40:8
**remained** [1] - 23:11
**remains** [1] - 35:19
**Renee** [9] - 1:23, 3:4, 3:7, 3:9, 41:5, 41:6, 42:3, 42:15, 42:16
**replaced** [1] - 38:24
**reply** [6] - 20:7, 32:22, 32:24, 35:14, 37:4, 37:20
**replying** [2] - 32:25, 33:1
**report** [1] - 20:9
**reported** [1] - 42:6
**REPORTER** [3] - 1:22, 3:4, 41:7
**Reporter** [2] - 42:3, 42:17
**representation** [2] - 17:7, 18:10
**representing** [1] - 17:1
**request** [2] - 7:17, 32:22
**requesting** [1] - 17:18
**require** [3] - 11:7, 11:11, 15:2
**requirements** [3] -

5:23, 18:1, 18:2
**requires** [3] - 13:22, 29:24
**reset** [1] - 4:24
**resolution** [3] - 15:24, 24:6
**resolve** [2] - 21:24, 24:4
**resolving** [1] - 21:18
**resource** [1] - 10:8
**respect** [7] - 20:15, 22:11, 22:12, 24:17, 24:18, 30:17, 37:8
**respond** [14] - 11:14, 13:5, 19:8, 19:10, 20:6, 23:4, 25:2, 28:22, 32:16, 32:19, 36:20, 38:11, 39:25, 40:25
**response** [6] - 4:19, 9:11, 13:15, 23:5, 23:25, 33:16
**responses** [1] - 8:3
**rest** [1] - 14:17
**result** [1] - 34:17
**review** [1] - 17:12
**reviewed** [1] - 35:21
**revision** [1] - 36:22
**RIGHTS** [1] - 1:14
**Rights** [2] - 3:12, 3:25
**RMR** [2] - 1:23, 42:16
**road** [1] - 34:8
**ROBERT** [1] - 1:4
**role** [4] - 29:7, 29:11, 29:13, 30:10
**rough** [1] - 27:7
**RPR** [2] - 1:23, 42:16
**rule** [14] - 29:11, 29:21, 29:24, 30:1, 30:15, 31:11, 31:13, 31:14, 32:1, 32:8, 35:22, 39:24, 40:15
**Rule** [1] - 29:20
**ruled** [5] - 19:20, 20:7, 20:11, 38:12, 40:6
**rules** [1] - 29:22
**ruling** [1] - 20:25
**rulings** [2] - 39:18, 40:20
**run** [1] - 11:19
**running** [1] - 36:23
**runs** [2] - 17:24, 18:5
**rut** [1] - 36:24
**Ryan** [1] - 3:25
**RYAN** [1] - 1:15

## S

**Salerno** [3] - 18:16, 24:14, 24:21

**Salerno's** [1] - 18:17
**sands** [1] - 33:21
**saw** [1] - 14:10
**schedule** [3] - 4:23, 10:13, 39:13
**scheduled** [2] - 10:4, 40:10
**second** [1] - 4:10
**see** [21] - 5:3, 6:2, 16:4, 20:18, 21:1, 24:6, 34:2, 34:11, 34:13, 34:24, 34:25, 35:6, 35:24, 37:16, 37:21, 37:24, 39:2, 39:5, 39:21, 40:21
**seeing** [1] - 28:9
**seeking** [3] - 17:6, 21:14, 26:19
**seeks** [1] - 20:20
**seem** [2] - 13:18, 21:21
**sense** [6] - 9:23, 17:20, 30:9, 37:24, 39:20, 39:21
**sentence** [1] - 5:19
**separate** [3] - 11:23, 31:6, 39:12
**September** [1] - 11:9
**seriously** [1] - 37:10
**Services** [6] - 10:8, 10:9, 12:6, 12:24, 12:25, 27:13
**serving** [1] - 5:19
**set** [6] - 8:18, 22:22, 23:9, 29:22, 39:1, 39:12
**SETH** [1] - 1:19
**Seth** [1] - 3:25
**setting** [1] - 22:15
**settled** [2] - 9:2, 23:7
**shape** [2] - 34:18, 37:11
**Shelley** [1] - 24:25
**SHELLEY** [1] - 2:7
**sheriffs** [1] - 18:6
**shifting** [1] - 33:22
**shock** [1] - 18:20
**shocks** [2] - 15:21, 39:10
**short** [6] - 3:3, 5:1, 13:25, 26:21, 27:17, 35:25
**shorthand** [1] - 42:9
**show** [1] - 6:18
**showing** [2] - 8:24, 11:19
**side** [3] - 10:23, 24:9, 37:4
**sign** [3] - 15:20, 27:10, 39:9

**significant** [1] - 7:23
**significantly** [1] - 33:23
**simply** [1] - 7:16, 12:13, 24:13
**sitting** [1] - 26:12
**situation** [1] - 40:18
**small** [1] - 13:9
**smoother** [1] - 4:13
**solely** [1] - 17:4
**someone** [4] - 12:7, 12:13, 12:20, 32:5
**sooner** [1] - 16:5
**Sorry** [1] - 28:21
**sorry** [9] - 16:21, 18:12, 19:25, 29:11, 30:11, 32:24, 32:25, 38:3
**sort** [11] - 4:12, 7:10, 9:22, 10:11, 14:16, 16:22, 18:20, 28:25, 33:18, 38:21, 40:20
**sought** [2] - 9:21, 25:8
**sounds** [1] - 33:22
**SOUTHERN** [1] - 1:3
**speaking** [6] - 3:10, 3:12, 3:21, 4:5, 24:24, 25:21
**speaks** [1] - 18:25
**spelled** [1] - 11:21
**spend** [1] - 13:14
**Spiker** [2] - 4:9, 10:15
**SPIKER** [1] - 2:12
**spin** [2] - 29:24, 33:18
**spoken** [1] - 7:13
**St** [1] - 2:13
**stand** [2] - 18:19, 19:21
**standard** [2] - 18:9, 28:11
**standards** [3] - 12:17, 12:18, 24:15
**standing** [7] - 22:13, 22:21, 23:1, 23:3, 23:6, 23:11, 23:14
**standpoint** [2] - 7:11, 22:9
**start** [3] - 3:10, 7:15, 9:12
**State** [2] - 32:18, 32:21
**state** [3] - 3:15, 17:14, 17:15
**statement** [3] - 14:14, 27:5, 30:20
**statements** [2] - 8:6, 42:8
**States** [1] - 42:4
**STATES** [2] - 1:1, 1:10
**states** [1] - 28:19

**status** [5] - 9:16, 9:17, 11:8, 20:9, 38:8
**stay** [1] - 37:14
**stenographically** [1] - 42:6
**STENOTYPE** [1] - 1:24
**stick** [1] - 34:23
**still** [8] - 8:22, 13:11, 14:4, 26:11, 26:12, 27:21, 35:20, 40:7
**stipulated** [2] - 8:18, 15:15
**stipulating** [1] - 16:9
**stop** [2] - 30:16, 31:23
**straight** [1] - 26:2
**strong** [1] - 5:2
**stuck** [1] - 36:24
**submit** [4] - 7:25, 24:4, 27:25, 28:13, 35:16, 36:5
**submitted** [2] - 27:8, 27:22
**submitting** [1] - 27:16
**substantial** [3] - 8:1, 8:9, 19:5
**substantive** [2] - 18:1, 14:20
**succeed** [1] - 25:9
**successful** [1] - 25:14
**sue** [1] - 22:14
**suffering** [1] - 8:25
**sufficient** [1] - 16:6
**suing** [1] - 19:23
**Suite** [2] - 1:16, 2:9
**summarize** [1] - 35:25
**summing** [1] - 35:12
**supervise** [5] - 29:16, 30:3, 30:13, 30:23, 31:21
**supervised** [2] - 31:20, 32:6
**supervision** [2] - 31:6, 42:10
**support** [1] - 8:9
**supported** [1] - 19:5
**supposedly** [1] - 12:1
**Supreme** [1] - 23:22
**surprised** [1] - 16:15
**system** [1] - 33:21

## T

**technicalities** [1] - 36:25
**TELEPHONIC** [1] - 1:9
**ten** [5] - 16:6, 16:20, 35:15, 37:5, 39:9
**terms** [8] - 22:19, 23:14, 24:10, 34:3,

34:12, 34:21, 35:20, 38:8
**testimony** [2] - 10:5, 42:8
**THADANEY** [1] - 1:14
**THE** [69] - 1:1, 1:2, 1:10, 1:13, 2:6, 2:11, 2:12, 3:1, 3:4, 3:6, 3:13, 3:18, 3:22, 4:3, 4:7, 4:10, 4:21, 9:10, 10:15, 10:18, 11:14, 11:22, 13:2, 15:17, 16:10, 18:8, 18:18, 19:10, 20:12, 20:17, 21:3, 22:4, 22:23, 23:16, 24:5, 24:10, 24:22, 24:24, 26:14, 27:3, 27:9, 28:5, 28:16, 28:24, 30:16, 30:20, 30:22, 31:5, 31:23, 32:23, 33:2, 33:7, 33:10, 33:16, 36:7, 36:9, 36:12, 36:18, 36:23, 37:2, 37:7, 38:6, 38:13, 38:19, 39:20, 40:17, 41:4, 41:7, 41:8
**themselves** [1] - 28:2
**thereafter** [1] - 42:10
**therefore** [1] - 30:10
**thereof** [1] - 42:13
**thoughts** [1] - 10:13
**three** [2] - 17:9, 19:25
**throwing** [1] - 5:17
**THURSDAY** [1] - 1:11
**tied** [1] - 21:20
**timeline** [2] - 27:3, 36:16
**today** [3] - 7:6, 36:19, 36:25
**together** [1] - 13:19
**tomorrow** [1] - 36:19
**top** [1] - 8:3
**touch** [1] - 27:20
**towards** [1] - 17:20
**track** [1] - 7:11
**transcribed** [1] - 42:10
**TRANSCRIPT** [1] - 1:9
**transcript** [1] - 42:6
**TRANSCRIPTION** [1] - 1:24
**transcription** [1] - 42:11
**transitory** [3] - 23:21, 23:24, 24:2
**transparent** [1] - 26:25
**trial** [3] - 18:16, 24:15, 40:10
**triggered** [1] - 31:25

**true** [2] - 6:19, 42:5
**try** [3] - 15:15, 35:25, 38:20
**trying** [2] - 8:17, 10:13, 15:11
**turn** [1] - 34:19
**two** [10] - 5:1, 11:23, 17:7, 19:18, 19:24, 20:1, 20:2, 22:7, 23:8, 37:11
**TYCHSEN** [1] - 1:19

## U

**ultimate** [2] - 13:17, 35:5
**unconstitutionality** [1] - 32:1
**under** [8] - 9:2, 10:9, 17:24, 18:16, 19:23, 20:24, 24:14, 42:10
**understood** [1] - 37:6
**Unit** [2] - 10:8, 10:9
**United** [1] - 42:4
**UNITED** [2] - 1:1, 1:10
**unless** [5] - 15:21, 35:12, 36:9, 39:10, 39:11
**unmanageable** [1] - 10:1
**unquote** [1] - 37:8
**up** [12] - 7:2, 11:8, 12:8, 21:17, 21:20, 29:18, 30:5, 30:14, 34:2, 35:12, 39:12, 39:16
**urging** [1] - 6:3
**utilized** [1] - 10:7

## V

**verbatim** [1] - 31:15
**verbiage** [1] - 11:1
**verify** [2] - 27:14, 27:23
**views** [1] - 5:3
**vigorous** [1] - 34:23

## W

**wait** [1] - 11:22
**waiting** [1] - 38:11
**wants** [3] - 21:24, 25:23
**warrants** [1] - 27:16
**Washington** [3] - 1:17, 1:20, 2:4
**WAYNE** [1] - 1:19
**Wayne** [1] - 3:25
**weeks** [1] - 11:5

**welcome** [1] - 3:6
**well-settled** [1] - 23:7
**whole** [5] - 25:3, 25:4, 25:17, 26:13, 29:14
**wide** [2] - 9:3, 21:15
**WILLIAMS** [1] - 2:3
**Williams** [2] - 4:1, 40:10
**willing** [1] - 38:15
**WILMER** [1] - 2:2
**WilmerHale** [1] - 4:2
**witnesses** [1] - 42:8
**wondering** [1] - 28:24
**word** [3] - 10:24, 35:13, 36:10
**words** [1] - 14:19
**works** [3] - 29:24, 30:1, 30:15
**worry** [1] - 4:24
**wrestle** [1] - 37:15
**write** [1] - 5:1
**writing** [2] - 35:4, 39:8
**written** [6] - 26:15, 27:1, 27:4, 35:16, 37:2, 37:7

## Y

**year** [1] - 11:10
**Young** [1] - 17:24
**yourself** [1] - 3:8