IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
GREENBELT DIVISION

| | |
|---|---|
| CHRISTOPHER BUTLER, *et al.*, individually and on behalf of a class of similarly situated persons, | |
| Plaintiffs, | |
| v. | Case No. 8:22-cv-1768 PJM |
| PRINCE GEORGE'S COUNTY, MARYLAND, *et al.*, | **ORAL ARGUMENT REQUESTED** |
| Defendants. | |

**PLAINTIFFS' COMBINED OPPOSITION TO COUNTY (DOC. 173) AND JUDGE (DOC. 174) DEFENDANTS' MOTIONS FOR JUDGMENT ON THE PLEADINGS**

**TABLE OF CONTENTS**

INTRODUCTION ..................................................................................................................... 1
FACTUAL BACKGROUND ................................................................................................... 2
PROCEDURAL HISTORY ...................................................................................................... 3
LEGAL STANDARD ............................................................................................................... 5
ANALYSIS ................................................................................................................................ 6
   I.   DEFENDANTS HAVE CONFIRMED THAT THE JUDGES DO NOT CONTROL THE COUNTY'S DECISION-MAKING AND THUS JUDGMENT ON THE PLEADINGS IS UNWARRANTED. ................................................................................................. 6
   II.   THE COUNTY IS NOT ENTITLED TO QUASI-JUDICIAL IMMUNITY ................... 10
      A.   Quasi-Judicial Immunity Categorically Does Not Apply to Claims for Prospective Equitable Relief. ................................................................................................. 10
      B.   Quasi-Judicial Immunity Categorically Does Not Apply to Municipalities ............... 11
      C.   Plaintiffs Have Alleged Facts Inconsistent With the County Receiving Quasi-Judicial Immunity. ................................................................................................................ 12
   III.   MARYLAND RULE 4-216.1 DOES NOT ENTITLE DEFENDANTS TO JUDGMENT ON THE PLEADINGS BECAUSE IT IS NEITHER UNCONSTITUTIONAL NOR AT ISSUE IN THIS CASE ............................................................................................. 13
   IV.   THE COUNTY IS LIABLE FOR MONEY DAMAGES BECAUSE IT IS A POLICY MAKER WITH RESPECT TO ITS PRETRIAL RELEASE PROGRAM. ....................... 15
   V.   THE COUNTY'S ARGUMENTS AS TO CLASS CERTIFICATION FAIL. ................. 16
CONCLUSION ....................................................................................................................... 17

**INTRODUCTION**

This Court asked Defendants to brief the extent to which judges in Prince George's County are "effectively controlling" the operations and decisions of the County Department of Corrections' pretrial program. Doc. 170-1 at 19:24; *see also id.* at 20:1-3 ("The issue is . . . is the County doing the Court's bidding, or is it effectively a situation where it's doing its own thing?"). Defendants' motions for judgment on the pleadings do not attempt to address that question. *See* Docs. 173, 174. Instead, the motions recycle many of the same arguments raised in their prior motions to dismiss (and rejected by this Court), incorporate evidence outside the pleadings (notwithstanding the motions' captions), and mischaracterize Plaintiffs' claims.

To answer the Court's question: Plaintiffs' complaint, the evidence adduced thus far in this matter, and Defendants' own briefs confirm that the Prince George's County Department of Corrections is not simply an arm of the judges. Rather, it is "doing its own thing[.]" Doc. 170-1 at 20:3. The County has independently devised the criteria that govern whether any individual is "eligible" for supervised pretrial release in Prince George's County. The County applies its own criteria behind closed doors in its offices at the jail—outside the view of the public, presence of counsel, or control of any judge—and decides whether the person will be released. If the County determines that the person is "eligible" for supervised release, the person is released without further judicial involvement. If, on the other hand, the County refuses to "accept" the person for supervised release—based on those criteria that they alone develop, and information that they alone assess—the person remains in jail, until and unless that person files a motion and a judge fashions an alternative mechanism for release. The pretrial release program is designed, administered, and controlled by the County Department of Corrections without any meaningful judicial direction or oversight.

1

As for the Judges' role, when a judge "refers" a person for supervised release, they are necessarily finding that release is warranted—and that detention is not necessary—under at least some combination of conditions. But, rather than set those conditions themselves in the light of the courtroom, as due process requires, the Judges outsource that decision to the County, a non-judicial entity operating without the procedural protections that constitute the hallmark of the American legal system.

For these reasons, among others, Defendants' Motions should be denied.

## FACTUAL BACKGROUND

Plaintiffs alleged that they were each authorized for release by a Judge in Prince George's County, but that the actual decision as to whether they would be released was delegated to officials in the County Department of Corrections—*i.e.*, the Judge Defendants found that each Plaintiff could (and would) be released if the County agreed to do so. *See* Compl., Doc. 1, ¶¶ 60, 65, 140, 151, 159, 168, 175, 181, 195, 207, 218. The County delayed making that decision for weeks, during which time Plaintiffs remained in jail. *Id.* ¶¶ 126-38, 141-48, 153-56, 159-66, 168-72, 176-78, 182-90, 196-202, 208-14, 219-27. The County's evaluation did not involve any judicial officer, or anything akin to judicial process. *See id.* ¶¶ 79-85. The County ultimately, and unilaterally, decided that several Plaintiffs were "ineligible" for release under its pretrial supervision program for reasons that were not mandated or determined by any judicial authority. *Id.* ¶¶ 146, 155, 169, 182, 197. Plaintiffs remained in jail until their criminal cases were resolved or they were released by other means.

Defendants have conceded that "generally [Plaintiffs'] account of th[is] process is correct." *See* Doc. 64-1 at 6. As the Fourth Circuit recently explained:

> [T]he parties agree that . . . Pretrial Services determines whether a detainee qualifies
> for release under its own program. To make this determination, Pretrial Services

2

uses a non-exhaustive set of considerations, which primarily relate to the detainee's dangerousness and flight risk. Pretrial Services makes this decision without a county judge's involvement. And the process can take months, during which the detainee may not be provided status updates. In the end, a detainee may never hear anything at all from Pretrial Services.

*Frazier v. Prince George's Cnty.*, 86 F.4th 537, 542 (4th Cir. 2023).[1]

## PROCEDURAL HISTORY

Plaintiffs filed this action on July 19, 2022. *See* Compl., Doc. 1. Defendants moved to dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). *See* Docs. 64, 66. In their motions to dismiss, Defendants argued, *inter alia*, that they should have immunity from this action. *Id.* This Court held a hearing and entered an order denying in part and granting in part the motions. *See* Doc. 90. In relevant part, the Court held that the eleven Judge Defendants do not have judicial immunity because such immunity does not "protect[] judges from suits for prospective equitable relief"—the only type of relief that Plaintiffs seek as to the Judge Defendants. *Id.* at 15 (citing *Ex parte Young*, 209 U.S. 123, 155-56 (1908)). Likewise, this Court held that the County is not entitled to quasi-judicial immunity from equitable relief. *Id.* at 18.[2] Furthermore, the Court held that Plaintiffs had stated plausible constitutional claims. *Id.* at 18-19 ("Thus, on the face of the Complaint alone, Plaintiffs have plausibly pled a substantive due process interest (bodily liberty)

---

[1] The County repeatedly invokes its updated Standard Operating Procedures, revised in April 2023 "as a result of this action." Doc. 174-1 at 5-6 n.6. For purposes of a Rule 12(c) motion, the operative facts are those alleged in the complaint. *Occupy Columbia v. Haley*, 738 F.3d 107, 116 (4th Cir. 2013). The County's revised procedures do not address the bulk of Plaintiffs' constitutional concerns. *See* Doc. 126 at 3-7. And even if they did, voluntary cessation does not moot litigation unless "subsequent events ma[k]e it *absolutely clear* that the allegedly wrongful behavior could not reasonably be expected to recur." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167, 189 (2000) (citation omitted) (emphasis added). The County has not cleared this high bar and continues to defend the constitutionality of its original practices. *See* Doc. 126 at 7-10.

[2] The Court found that such immunity did shield the County from Plaintiffs' damages claims, and it dismissed those claims. *Id.* at 16-18. Plaintiffs moved for reconsideration and an interlocutory appeal of that decision, and both were denied. *See* Docs 129, 144. At this time, Plaintiffs seek only prospective equitable relief.

3

as well as a procedural due process right that the current pretrial release process arguably violates."). Accordingly, Plaintiffs' claims for equitable relief against Defendant Prince George's County and the eleven Judge Defendants proceeded to discovery. *See* Doc. 149.

Plaintiffs had moved for a preliminary injunction at the time that they filed their complaint. *See* Doc. 2. After this Court denied that motion, *see* Doc. 117, the Fourth Circuit vacated and remanded, ordering the district court to "state the findings and conclusions of law that support its action." *Frazier*, 86 F.4th at 546. The appeals court noted that the case presented "a disputed factual record and a difficult, fact-bound constitutional question." *Id.* at 545. This Court issued a subsequent order again denying Plaintiffs preliminary relief but setting an evidentiary hearing on the motion. *See* Doc. 156.

The Court then held a telephone conference on December 20, 2023, to discuss the scope of testimony at that hearing. In order to decide "what kind of testimony would come in" at the hearing, Doc. 170-1 at 21:10, 21:19, the Court asked Defendants to brief "the extent to which the judges are effectively controlling the decision[s] [made by the County's Pretrial Division]," *id.* at 19:23-24, ordering them to "file an appropriate motion raising th[e] issue of quasi judicial immunity," *id.* at 21:13–15.

Defendants have now filed their motions for judgment on the pleadings. Doc. 173 at 1; *see also* Doc. 174 at 1. Notwithstanding this posture, Defendants' motions rely substantially—and improperly—on evidence outside the pleadings. *See, e.g.*, Docs. 173-1 at 3, 174-1 at 5. The motions do not address this Court's question: whether the County is entitled to quasi-judicial immunity from Plaintiffs' remaining claims seeking equitable relief. *Id.* Instead, Defendants' motions raise a range of other arguments, some of which are new arguments they failed to raise in

4

their earlier Rule 12 motions. *See* Docs. 64, 66. Others are recycled arguments this Court has already rejected. Defendants' motions should be denied.

## LEGAL STANDARD

Courts review a motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) under the same standard applicable to motions to dismiss under Rule 12(b)(6). *See Massey v. Ojaniit*, 759 F.3d 343, 347 (4th Cir. 2014); *Walker v. Kelly*, 589 F.3d 127, 139 (4th Cir. 2009). In both instances, the court is "obliged to accept the complaint's factual allegations as true and draw all reasonable inferences in favor of the plaintiffs." *Feminist Majority Found v. Hurley*, 911 F.3d 674, 685 (4th Cir.2018). A motion for judgment on the pleadings is only "properly granted if it appears *certain* that the plaintiff cannot prove *any* set of facts in support of its claim entitling it to relief." *Pulte Home Corp. v. Montgomery Cnty.*, 909 F.3d 685, 691 (4th Cir. 2018) (cleaned up) (emphases added).

In deciding a motion under Rule 12(c), "a district court cannot consider matters outside the pleadings without converting the motion into one for summary judgment." *Occupy Columbia v. Haley*, 738 F.3d 107, 116 (4th Cir. 2013) (citing Fed. R. Civ. P. 12(d)). A court may consider a written instrument, such as a contract, that is attached to the pleadings or the motion to dismiss, but only if the attachment is "integral to the complaint and authentic." *Id.*

A Rule 12(c) motion is not simply an opportunity for a defendant to advance arguments in support of dismissal that it failed to raise in an earlier motion to dismiss. *Somerville v. W. Town Bank & Tr.*, No. 19-CV-0490 (PJM), 2020 WL 8256358, at *2 (D. Md. Dec. 4, 2020). To survive a motion under Rule 12(c), the "complaint need only 'give the defendant fair notice of what the … claim is and the grounds upon which it rests.'" *Ray v. Roane*, 948 F.3d 222, 226 (4th Cir. 2020) (quoting *Tobey v. Jones*, 706 F.3d 379, 387 (4th Cir. 2013)).

## ANALYSIS

Defendants have failed to demonstrate they are entitled to judgment on the pleadings. Plaintiffs' claims are well plead, and this Court has already held that Plaintiffs have stated plausible constitutional claims. That alone resolves these motions.

As for the Court's question about "the extent to which the judges are effectively controlling the decision[s] [made by the County's Pretrial Division]," Doc. 170-1 at 19:23-24, the answer is clear: They are not. The County devises and applies pretrial release criteria independently, and the judges do not and cannot control the County in this respect. And this conclusion, along with decades of Supreme Court precedent providing that judicial immunity does not apply to claims for equitable relief, means that—as the Court correctly ruled on Defendants' Motions to Dismiss— the County is not entitled to quasi-judicial immunity with respect to the injunctive relief sought by Plaintiffs. For this reason, and because none of the other myriad arguments raised by Defendants have merit, Defendants' motions for judgment on the pleadings should be denied.

I.  **DEFENDANTS HAVE CONFIRMED THAT THE JUDGES DO NOT CONTROL THE COUNTY'S DECISION-MAKING AND THUS JUDGMENT ON THE PLEADINGS IS UNWARRANTED.**

Judgment on the pleadings is warranted only where Plaintiffs have failed to state a plausible claim for relief. *See Ray*, 948 F.3d at 226. That is not the case here. Plaintiffs have alleged they were each authorized for release by a Judge in Prince George's County, but that the decision of whether they would be released was ultimately left, not to any judicial officer, but rather to the County. Plaintiffs remained in jail due to the County's processes for weeks or months. *See supra* 4-5. This Court has already determined that Plaintiffs have plead sufficient facts to support their constitutional claims. Doc. 90 at 18-19. That should be the end of the Court's analysis for judgment on the pleadings. It should be denied.

As for the question about control that the Court asked the parties to address, those answers only confirm that Defendants are not entitled to judgment on the pleadings. Defendants do not dispute that Plaintiffs' complaint plausibly alleges that the County decides whether a person is going to be granted supervised pretrial release after a judge issues a referral. The complaint states clearly that it is the County Department of Corrections' Pretrial Division—not any judge—who decides whether a person who has been referred to the Division "qualifies" for pretrial release, and thus whether the person will actually be released on pretrial supervision pursuant to that referral. *See* Compl. ¶¶ 86-104 ("The Pretrial Division Makes Unauthorized and Arbitrary Detention Decisions."). On a Rule 12(c) motion for judgment on the pleadings, the pleadings control. *See Feminist Majority Found.*, 911 F.3d at 685. Defendants' motions must be denied.

Defendants' own statements confirm that the judges are not controlling the Pretrial Division's decisions about who will be released. The County emphasized at the December 20, 2023, telephone conference that "although the court can refer people to [the program] . . . they cannot force us to release somebody in our program. It is our program." *See* Doc. 170-1 at 13:17-20; *see also id.* 14:21-23 ("But the Court can't force [the Pretrial Division] to accept somebody into our program. We still can evaluate them and say, No, we don't want to accept them in the pretrial release program."). The County repeats this refrain in its present motion. *See* Doc. 173-1 at 5 ("In the event that PGCDOC determines that the detainee is not eligible, it indicates its recommendation and unwillingness to accept the detainee into the program . . . ."). The Judge Defendants, in turn, affirm in their briefing that "the decision whether DOC will accept someone [into the pretrial release program] is solely within DOC's discretion," Doc. 174-1 at 18, and that if the County DOC decides to admit someone into the program, it does so and releases them "without additional judicial involvement," *id.* at 7.

7

Even if this Court were to consider Defendants' extraneous evidence not properly before the Court on a Rule 12(c) motion, that evidence only confirms that the County is the ultimate arbiter of whether a person referred to the Pretrial Division will be released on a pretrial referral.[3] For example, the County submitted an affidavit by Jeffrey Logan, Chief of the Population Management Division within the Prince George's County Department of Corrections ("PGCDOC"), stating that the pretrial program is "offered and administered by . . . [the] PGCDOC," that the "PGCDOC has established" the "criteria needed to be established for successful participation" in the program, and that, when a judge refers a person to the pretrial program, the "DOC will conduct an investigation and ultimately determine whether a detainee may participate in the pre-trial release program." *See* Doc. 64-2 at 1-3. The Director of the County Department of Corrections in turn declared that "[t]he pre-trial services program in Prince George's County was an initiative of the Department [of Corrections]" and that the Department has discretion to "establish the criteria for pre-trial release and administer them . . . ." *See* Doc. 65 at 1-2.

The Judges emphasize that they do not "relinquish[] ultimate control over Plaintiffs' criminal cases" to the County. Doc. 174-1 at 17-18. But this is a red herring. Plaintiffs have never alleged that the Judge Defendants relinquish ultimate control *over the underlying criminal case*. Rather, Plaintiffs allege that Judge Defendants "frequently provide a 'pretrial option' . . . or a

---

[3] Should this Court consider evidence beyond the four corners of the complaint for purposes of resolving these motions, it should treat them as motions for summary judgment and defer judgment until Plaintiffs are able to obtain the evidence to which they are entitled under Federal Rule of Civil Procedure 56(d). A court may not consider matters outside the pleadings without converting a Rule 12(c) motion into one for summary judgment. *Occupy Columbia*, 738 F.3d at 116 (citing Fed. R. Civ. P. 12(d)). The voluminous evidence relied upon by Defendants goes well beyond the limited exceptions to that rule, as none of it is integral to the complaint. *Id. See, e.g.*, Doc. 173-1 at 3 (citing several documents outside the pleadings, including an affidavit by a County official, in support of their motion).

8

'pretrial order' . . ." and by doing so "ha[ve] authorized the person's release; but the determination of whether, when, and on what conditions release actually occurs is delegated to the Pretrial Division." Compl. ¶¶ 60, 62. This "outsource[s] one of the most important decisions in any criminal case—whether a presumptively innocent person will be jailed awaiting trial—to unelected, non-judicial employees in the County Department of Corrections." *Id.* ¶¶ 60-61. These allegations are effectively undisputed. Indeed, Judge Defendants confirm that they "refer[]" criminal defendants "for evaluation by DOC for eligibility and possible acceptance into the DOC'[s] Pre-Trial Program," Doc. 174-1 at 18, but whether the person is accepted to the program "is solely within [the County] DOC's discretion," *id.*[4]

By authorizing or ordering the County to release criminal defendants at the County's discretion and without further court action, Judge Defendants have necessarily found that some set of release conditions might sufficiently address any flight or public safety concerns. But rather than set those conditions in the daylight of the courtroom—with counsel, evidence, and the adversarial process—the Judge Defendants delegate the decision of what conditions are necessary to the County Department of Corrections, which "ultimately determine[s] whether a detainee may participate in the pre-trial release program." Doc. 64-2 at 2-3. The County is not simply doing the Judges' bidding. The County devised the eligibility criteria for the pretrial program. County officials apply those criteria to individual cases—outside the presence or control of Judges, and outside the view of the public. The County itself authored the Standard Operating Procedures governing the program. *See* Doc. 124-1. The answer to the Court's question is therefore that judges

---

[4] Even taking the Judge Defendants' assertions—which improperly rely on facts not pleaded--at face value, whether or not any individual requested a referral under the system as it currently exists does not affect Plaintiffs' constitutional arguments about the implementation, affect, and processes of that system.

9

are *not* "effectively controlling the decision[s] [made by the County's Pretrial Division]." Doc. 170-1 at 19:23-24. Those decisions are the County's alone.

## II. THE COUNTY IS NOT ENTITLED TO QUASI-JUDICIAL IMMUNITY.

### A. Quasi-Judicial Immunity Categorically Does Not Apply to Claims for Prospective Equitable Relief.

The County disclaims being subject to a state judge's authorization or order for release pretrial and in fact asserts it can override such an order if it so chooses. *See* Doc. 173-1 at 7-8. Yet it paradoxically claims to be performing a judicial function and seeks dismissal based on quasi-judicial immunity. But it has only invoked immunity as to damages—not from suit or injunctive relief. Doc. 151 at 17 (pleading only that "the money damages" claims are barred by quasi-judicial immunity). Any argument seeking dismissal based on quasi-judicial immunity was not pleaded and is therefore waived. *See Conrad v. Foster*, 181 F.3d 87 (4th Cir. 1999) ("Immunity is an affirmative defense that must be pled by a defendant or it is waived.") (quoting *Gomez v. Toledo*, 446 U.S. 635, 640-41 (1980)).

More to the point, any argument that the County is immune from injunctive relief would be foreclosed by decades of precedent. This Court's ruling on Defendant's Motion to Dismiss reflects the same. *See* Doc. 90 at 18 ("Because the County is entitled to 'quasi-judicial' immunity, like the Judge Defendants it can only be liable to Plaintiffs for prospective equitable relief."). Supreme Court case law establishes beyond doubt that "judicial immunity is not a bar to prospective injunctive relief against a judicial officer." *Pulliam v. Allen*, 466 U.S. 522, 541-42 (1984) (abrogated on other grounds);[5] *see also Mireles v. Waco*, 502 U.S. 9 & n.1 (1991) (per

---

[5] In 1996, Congress amended Section 1983 to prohibit injunctive relief against judges acting in their official capacity unless declaratory relief is unavailable or a declaratory judgment was violated. Federal Courts Improvement Act of 1996, § 309(c), Pub. L. No. 104-317, 110 Stat. 3847,

curiam). The Fourth Circuit agrees. *See, e.g.*, *Livingston v. Guice*, 68 F.3d 460 (4th Cir. 1995) (unpublished). District courts around the country, including this Court, have reached the same conclusion. *See, e.g.*, *Schiff v. Bonifant*, No. 23-CV-1563 (PJM), 2023 WL 4027589, at *2 (D. Md. June 15, 2023) ("Judicial immunity does not prohibit injunctive relief against a state court judge.") (citations omitted). And because quasi-judicial immunity is simply a derivative of judicial immunity, courts have uniformly held that quasi-judicial immunity does not apply to equitable relief either. *See, e.g.*, *Moore v. Urquhart*, 899 F.3d 1094, 1106 (9th Cir. 2018); *Dorman v. Higgins*, 821 F.2d 133, 139 (2d Cir. 1987); *Johnson v. Kegans*, 870 F.2d 992, 998-99 (5th Cir. 1989). Indeed, in a case against members of a parole board, the Fourth Circuit conclusively held that "claims for declaratory and injunctive relief are not affected by the defendants' [quasi-judicial] immunities." *Roller v. Cavanaugh*, 984 F.2d 120, 122 (4th Cir. 1993).

### B. Quasi-Judicial Immunity Categorically Does Not Apply to Municipalities.

The County instead argues that this Court should not reverse its holding that the County is entitled to quasi-judicial immunity for damages. Doc. 173-1 at 6-7. Plaintiffs disagree. Because Plaintiffs did not understand the Court to be inviting the parties to relitigate this issue—and Plaintiffs have already extensively briefed this issue, *see* Doc. 97-3—Plaintiffs will not belabor this point. But in short, Plaintiffs maintain that the County should not be entitled to quasi-judicial immunity from damages because quasi-judicial immunity is a form of absolute immunity, *see, e.g.*, *In re Mills*, 287 F. App'x 273, 279 (4th Cir. 2008) (unpublished), and the Supreme Court has stated in no uncertain terms that "municipal bodies sued under § 1983 cannot be entitled to an absolute

---

3853 (1996) (amending 42 U.S.C. § 1983). Accordingly, here, Plaintiffs only seek declaratory relief against the Judge Defendants.

immunity," *Monell v. Dep't of Soc. Servs. Of City of New York*, 436 U.S. 658, 701 (1978) (internal quotation mark omitted). Prince George's County is plainly a municipal body.

### C. Plaintiffs Have Alleged Facts Inconsistent With the County Receiving Quasi-Judicial Immunity.

Even if quasi-judicial immunity were to apply to the County at this stage of the case, that immunity only protects a "judge's subordinates" carrying out "administrative" "functions" "undertaken pursuant to the judge's explicit direction"—not officials "carrying out a judge's order in a manner not sanctioned by the judge." *Mills*, 287 F. App'x at 279 (citations and alterations omitted). As explained in Section I, *supra*, Plaintiffs' complaint—the operative document for purposes of a Rule 12(c) motion—plausibly alleges that the County independently devises and applies criteria to determine whether individuals are eligible for pretrial release. *See* Compl. ¶ 68 ("The criteria and conditions are determined by the Pretrial Division, without judicial input or oversight."); *id.* ¶¶ 79-90 (describing process for assessing criteria without judicial involvement). The evidence deduced in this case thus far, as well as Defendants' own motions, confirm the same. *See supra* at 7-10.

As such, quasi-judicial immunity does not protect the County here. Such immunity is categorically inapplicable to claims for prospective equitable relief—the only relief at issue at this stage in the proceedings. Nor is such immunity afforded to municipal bodies, under decades of Supreme Court precedent. And even failing all this, the County does not simply operate as an arm of the courts in designing and administering its pretrial release program: As Defendants have stated time and again, Maryland affords each County discretion as to whether to have a pretrial supervision program (or not). Prince George's County has chosen to exercise that authority in an unconstitutional manner. Quasi-judicial immunity is no shield.

12

### III. MARYLAND RULE 4-216.1 DOES NOT ENTITLE DEFENDANTS TO JUDGMENT ON THE PLEADINGS BECAUSE IT IS NEITHER UNCONSTITUTIONAL NOR AT ISSUE IN THIS CASE.

Both County and Judge Defendants incorrectly contend that Maryland Rule 4-216.1 authorizes the County's practice, providing a reason to end this case. Docs. 173-1 at 8-10, 174-1 at 16-19. Judge Defendants further insinuate that Plaintiffs do not make allegations to challenge the constitutionality of Rule 4-216.1. Doc. 174-1 at 19. But Defendants' attempts to distract the Court with arguments about Rule 4-216.1 are not only wrong but misleading: This case is not about whether Rule 4-216.1 is constitutional or whether Defendants comply with that rule. And neither argument entitles Defendants to judgment on the pleadings.

*First,* Plaintiffs have not alleged that Rule 4-216.1 is unconstitutional; they only challenge the constitutionality of the pretrial release process in Prince George's County. *See* Compl. ¶¶ 32-34. Whether that process complies with Rule 4-216.1 or not has no bearing on whether the described process violates the federal Constitution. Compliance with a state rule is no safe haven for violating Plaintiffs' fundamental constitutional rights.

Regardless, Rule 4-216.1 has little relevance here, as it does not require the challenged pretrial release system to function as it does. The Rule, in relevant part, permits judges to "commit[] [criminal] defendant[s] to the custody or supervision of a designated person or organization" "subject to more detailed requirements of that unit appropriate to the supervision," Md. Rule 4-216.1(d)(1)(K) & Comment, and instructs judges to consider "any recommendation of an agency that conducts pretrial release investigations" in making pretrial release decisions," Md. Rule 4-216.1(f)(2)(E). Nothing in that language requires—or even authorizes—judges to delegate pretrial release decisions to supervision agencies, or to give agencies ultimate decisionmaking

13

power over whether legally innocent people will be detained prior to trial. That is precisely what Plaintiffs allege Defendants here do. *See* Compl. ¶¶ 60-104.[6]

*Second*, while Plaintiffs do not bring any claim based on Rule 4-216, it is likely that Defendants' actions run afoul of it. The Rule instructs judicial officers to impose the least onerous pretrial conditions that will reasonably assure community safety and return to court, Md. Rule 4-216.1(b)(3), and prohibits preventive pretrial detention absent a finding that it is absolutely necessary, *id.* (b)(1)(B).[7] Yet people in Prince George's County are routinely preventively detained for weeks and months after being given pretrial referrals, where such referrals make clear that their detention endures despite the existence of potential conditions of release less onerous than detention and without an affirmative necessity finding. In addition, Rule 4-216.1 requires pretrial release and detention conditions to be made by a "judicial officer," which is defined as "a judge or District Court commissioner." Md. Crim. Causes 4-102(f). The County Pretrial Division is undisputedly not a judge or district court commissioner; yet, as admitted by Judge Defendants,

---

[6] Indeed, Defendants' system appears to be unique in the state of Maryland, and other counties (including bordering Montgomery County) have entirely different practices. *See* Doc. 72 at 16-17 (describing analogous process in Montgomery County). The fact that the County has chosen to run its program the way it does despite differences in other counties supports municipal liability, as discussed in Section IV, *infra*. *See Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986) (holding that a county is liable under § 1983 when a policymaker makes "a deliberate choice to follow a course of action . . . from among various alternatives").

[7] *See also Frazier v. Prince George's Cnty.*, 86 F.4th 537, 542-43 (4th Cir. 2023) ("The judge's determination, like the magistrate's initial determination, is governed by state law. She must release the detainee unless she finds 'that, if the defendant is released, there is a reasonable likelihood that the defendant (i) will not appear when required, or (ii) will be a danger to an alleged victim, another person, or the community." Md. Rule 4-216.1(b)(1)(B). Even if the judge finds such a likelihood, she must release the detainee unless she also finds, by clear and convincing evidence, that there are no financial or non-financial conditions that will ensure the detainee's return to court and the safety of the community. Md. Rule 4-216.1(c). And the judge must 'state the basis' for the finding 'on the record.' Md. Rule 4-216.1(c)(1).").

14

they regularly evaluate cases and determine whether criminal defendants are eligible for pretrial release. *See* Doc. 174-1 at 6-7.

Even if the Rule *could* conceivably be read to permit Defendants' practices, this Court would be obligated not to adopt that reading in order to avoid a violation of the Constitution. This Court is "obligated to construe the statute to avoid constitutional problems if it is fairly possible to do so." *Boumediene v. Bush*, 553 U.S. 723, 787 (2008) (internal quotation mark omitted); *see also United States v. Jin Fuey Moy*, 241 U.S. 394, 401 (1916) ("A statute must be construed, if fairly possible, so as to avoid not only the conclusion that it is unconstitutional, but also grave doubts upon that score."). Plaintiffs do not challenge the Rule's constitutionality, because it neither requires nor allows Defendants to act as they do. Defendants' invocation of the Rule is inapposite and certainly does not justify judgment on the pleadings.

### IV. THE COUNTY IS LIABLE FOR MONEY DAMAGES BECAUSE IT IS A POLICY MAKER WITH RESPECT TO ITS PRETRIAL RELEASE PROGRAM.

The County argues that it cannot be liable for money damages because it is not a municipal policymaker for purposes of 42 U.S.C. § 1983. Doc. 173-1 at 10-11. But Plaintiffs' claims for money damages were dismissed by this Court more than a year ago. *See* Doc. 90 at 18. While Plaintiffs respectfully disagree with that dismissal, they do not view the present motion as an invitation to relitigate that issue, which has previously been argued at length. *See* Doc. 111 at 5-7. To the extent the Court is inclined to respond to this argument, it has become increasingly clear since then that the County is a municipal policy maker when it comes to administering the County's own pretrial program. In the County's own words, the pretrial program is "not a state program." Doc. 170-1 at 13:16. "[N]ot every county in the state [of Maryland] has a pretrial release program." *Id.* at 13:16–17. "[A]lthough the Court can refer people to use, they . . . cannot force us to release

15

somebody in our program." *Id.* at 13:17-19. Indeed, the County itself fully funds the Pretrial Division, *see* Doc. 64-2 at 3 (noting that pretrial services is "offered and funded" by the County Department of Corrections"); Doc. 65 at 2 ("It is funded by the County."), and has threatened time and again that it could shutter the program in its discretion at any moment. *See*, *e.g.*, Doc. 64-1 at 25. The County creates the policies for running the program without the approval or oversight of the Judges. *See* Compl. ¶ 68. There is no question that the County is a municipal policymaker for these purposes, and liable under § 1983.

V.     **THE COUNTY'S ARGUMENTS AS TO CLASS CERTIFICATION FAIL.**

Finally, the County begins its arguments for dismissal not with an allegation that Plaintiffs have not plead facts sufficient to state a claim, but rather that Plaintiffs Christopher Butler and Miramba Williams are not "typical" class representatives at Rule 23 since they have been released from pretrial incarceration since this case was filed. *See* Doc. 173-1 at 6-7. The placement of this argument is, at best, perplexing. Plaintiffs' motion for class certification is not due until May 15, 2024, *see* Doc. 149, and any arguments regarding class certification are premature until that motion is made.

Plaintiffs will respond briefly here for the sake of completeness: Changes to Plaintiffs' Christopher Butler and Miramba Williams's incarceration status after this case was filed do not affect their ability to serve as class representatives, because claims regarding pretrial detention fit into the well-recognized "inherently transitory" exception to mootness long recognized by the Supreme Court. *See Gerstein v. Pugh*, 420 U.S. 103, 110-11 n.11 (1975); *Sosna v. Iowa*, 419 U.S. 393, 402 n.11 (1975); *Cnty. of Riverside v. McLaughlin*, 500 U.S. 44, 52 (1991). As the Fourth Circuit explained in the context of this very case, "[a] pretrial detainee who is a putative class representative retains the standing he enjoyed when he sought class certification even if he is

released or tried before the class is certified." *Frazier*, 86 F.4th at 543 n.2 (citing *Gerstein*, 420 U.S. at 110-11 n.11). This Court, too, held that "Plaintiffs can fairly invoke the 'inherently transitory' exception" because "[p]retrial detention is a classic example of an inherently transitory claim," in the context of rejecting similar arguments by Defendants in their original motions to dismiss. Doc. 90 at 21 (citing *Gerstein*, *Sosna*, and *Cnty. of Riverside*). Accordingly, Plaintiffs are entitled to maintain this action.

## CONCLUSION

For the foregoing reasons, Defendants' Motions for Judgment on the Pleadings should be denied.

Respectfully submitted this 7th day of February, 2024.

Ellora Thadaney Israni*
Jeremy D. Cutting*
Jeffrey Stein*
CIVIL RIGHTS CORPS
1601 Connecticut Ave. NW, Suite 800
Washington, D.C. 20009
(202) 894-6132
ellora@civilrightscorps.org

Seth Wayne*
INSTITUTE FOR CONSTITUTIONAL ADVOCACY
AND PROTECTION
GEORGETOWN UNIVERSITY LAW CENTER
600 New Jersey Ave. NW
Washington, D.C. 20001
(202) 662-9042
sw1098@georgetown.edu

/s/ Edward Williams
Edward Williams (D. Md. Bar 20944)
Thomas Bredar (D. Md. Bar 21635)
Ellen Connell*
Sonika Data*
Britany Riley-Swanbeck (D. Md. Bar 21843)
WILMER CUTLER PICKERING
 HALE AND DORR LLP
2100 Pennsylvania Ave. NW
Washington, D.C. 20037
(202) 663-6487
ed.williams@wilmerhale.com

Robert Boone*
WILMER CUTLER PICKERING
 HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
(212) 230-8800
robert.boone@wilmerhale.com

* admitted *pro hac vice*

*Counsel for Plaintiffs*