

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

CHRISTOPHER BUTLER, *et al.*,
individually and on behalf of a class of
similarly situated persons,

     Plaintiffs,

     v.

PRINCE GEORGE'S COUNTY,
MARYLAND, *et al.*,

     Defendants.

Civil No. **22-1768 PJM**

## MEMORANDUM OPINION

This putative class action proposes to radically restructure pretrial release procedures in criminal cases pending before state courts in Prince George's County, Maryland (and in consequence, perhaps around the country).

While they were still detained, nine criminal defendants in the County, through *pro bono* counsel, filed suit in this Court, challenging the constitutionality of the County's then extant pretrial release system.  These nine criminal defendants—original Plaintiffs in the case[1]—

---

[1] As explained, *infra*, the Court has ruled that the only remaining Plaintiffs in this case are Christopher Butler and Miramba Williams, who remained detained at the time of the Court's prior Opinions on Defendants' Motions to Dismiss and the parties' respective Motions for Reconsideration. *See* ECF No. 90 at 15, 18; ECF No. 128 at 2 n.1. Although the Fourth Circuit, in the interlocutory appeal reviewing this Court's denial of Plaintiffs' Motion for Preliminary Injunction, referred to presumably all "Plaintiffs," it did not engage with this Court's decision dismissing several Plaintiffs from the case, since they were no longer detained. This Court's decision and its order of dismissal of certain Plaintiffs still stands. Defendants represent that in the interim between the Court's prior order of dismissal and today, Butler pled guilty to second-degree murder and use of a firearm in the commission of a violent crime and was sentenced to 40 years' incarceration, all but 15 years suspended as to the murder charge, and 20 years all but 5 years suspended as to the firearms charge, but received credit for the time he served in pretrial detention.  He is now doing time.  Williams never qualified for pretrial release because of a detainer issued by another jurisdiction but was eventually released after the Circuit Court granted

initially sought declaratory relief with respect to actions of the Judges of the Circuit and District Courts for the County, as well as declaratory, injunctive, and monetary relief against certain individual County officials and the County itself.[2]

After some twenty months of extensive proceedings, including several motions and requests for lengthy extensions of time from the parties, opinions from this Court, an intermediate modification the County made to its pretrial release policy, and an interlocutory appeal to the U.S. Court of Appeals for the Fourth Circuit, the core issues in the case have crystallized.[3] In the Court's view, the case turns on the following questions: Whether the acts challenged in this suit are part of the Judges' decisionmaking process with respect to pretrial release decisions affecting persons charged with crimes, and, if so, whether both the Judges of the District and Circuit Courts for Prince George's County and by extension the County, insofar

---

[2] his motion to reduce his bond to personal recognizance. See ECF No. 173-1 at 2, 7; ECF No. 174-1 at 12. This, at the very least, says the County, should defeat the putative class claims because neither Butler nor Williams can serve as class representatives given their unique circumstances. See id. The Court agrees with Plaintiffs that the County's arguments are misplaced because the Court is not at this time considering a Motion for Class Certification. In any case, as the Court has previously discussed, both Butler and Williams' claims fall within the "inherently transitory" exception to mootness doctrine. See ECF No. 90 at 21. Moreover, inasmuch as this is styled as a putative class action, the Court has referred to Plaintiffs, in the plural, and will do so in this Opinion.

[2] The Judge Defendants are Prince George's County District Court Judges Lakeecia Allen, Byron Bereano, John Bielec, Scott Carrington, Ada Clark-Edwards, Stacey Cobb Smith, Brian Denton, Robert Heffron, Jr., Donnaka Lewis, Gregory Powell, and Circuit Court Judge Cathy Serrette. As will be explained, infra, the individual County officials were dismissed, since, having been sued in their official capacities, they were in effect surrogates for the County. Prince George's County is therefore the only remaining County Defendant. The "Pretrial Division," a central player in the pretrial release process, is located within the Population Management Division of the Prince George's County Department of Corrections.

[3] The Fourth Circuit noted this Court's "extraordinary" "eight-month delay" in considering the Motion for Preliminary Injunction. See Frazier v. Prince George's Cnty., 86 F.4th 537, 543 (4th Cir. 2023). On occasion, and this case surely qualifies as one, several legal matters (such as standing) preliminary to consideration of a request for a preliminary injunction need to be resolved before a request for preliminary relief can be addressed. In consequence, there may be "extraordinary" delays. Hopefully this will become apparent in the course of this Opinion.

as it participates in the process, are immune from suit on the basis of judicial and quasi-judicial immunity.

Most recently, in pursuit of an answer to this question, Plaintiffs have sought to depose two of the Judge Defendants (Allen and Heffron), who have filed a Motion to Quash Subpoenas for In-Person Deposition Testimony. *See* ECF No. 175. In addition, all the Judge Defendants and the County have filed Motions for Judgment on the Pleadings. *See* ECF Nos. 173, 174. Plaintiffs have opposed each of these Motions, which are now fully briefed. *See* ECF Nos. 185, 186, 191, 193. The Court finds no further hearing necessary. *See* D. Md. Local R. 105.6.

For the following reasons, the Court will **GRANT** the Judge Defendants' Motion to Quash (ECF No. 175) and will also **GRANT** the Judge and County Defendants' Motions for Judgment on the Pleadings (ECF Nos. 173, 174).

## I.    Pretrial Release Procedures in Prince George's County

Although in prior opinions the Court has extensively described the basic process by which pretrial release procedures operate in Prince George's County, *see* ECF Nos. 90, 128, 156, it recounts the basics here as appropriate for a meaningful assessment of the pending Motions.

Individuals arrested for suspected crimes in Prince George's County are promptly brought before state District Court Commissioners of the County for initial determinations of whether they should be released or detained pending trial. *See* ECF No. 90 at 2. Any individuals not ordered released after the Commissioner's determination are detained, and their detentions are reviewed at bail review hearings in front of Judges of the Circuit or District Courts of the County, usually within 24 hours of the Commissioner's determination. *See id.*

3

At these bail review hearings, Maryland law requires that a defendant be provided the assistance of counsel. *See* Md. R. 4-216.2(b).[4] Bail review hearings must be conducted in accordance with the procedures and considerations set forth in Maryland Rule of State Court Procedure 4-216.1. *See* Md. R. 4-216(e); *id.* 4-216.2(c).

This Rule contains some features commonly found in jurisdictions across the American legal system, perhaps most importantly the presumption that defendants should be released pending trial unless the Judge finds that "there is a reasonable likelihood that the defendant (i) will not appear as required, or (ii) will be a danger to an alleged victim, another person, or the community," and the requirement that the pretrial release determinations be made on an individualized basis. *Id.* 4-216.1(b)(1)-(2).[5]

Another requirement of Maryland Rule 4-216.1 (also typically found throughout America's criminal justice system)[6] is that a Judge's bail review determination must take into consideration the recommendation of "any pretrial release services program that has made a risk assessment of the defendant in accordance with a validated pretrial risk scoring instrument and is willing to provide an acceptable level of supervision of the defendant." *Id.* 4-216.1(f)(1). In Prince George's County, the "pretrial release services program" for purposes of this Rule is the County's Pretrial Division.

---

[4] Unless a defendant waives this right to representation, is otherwise represented, or is ineligible to receive the assistance of the public defender, he or she may be represented by a public defender. *See id.*

[5] *See, e.g.*, 18 U.S.C. § 3142(b); Alaska Stat. Ann. § 12.30.011(d)(2)(b); R.I. Gen. Laws Ann. § 12-13-1.3(b); Va. Code Ann. § 19.2-121.

[6] *See, e.g.*, 18 U.S.C. § 3142(c)(1)(B)(i) (federal courts may require a defendant to "remain in the custody of a designated person, who agrees to assume supervision . . . "); Del. Code Ann. tit. 11, § 2108(a)(1) (courts may "[p]lace the defendant in the custody of a designated person or organization agreeing to supervise the defendant"); Ohio Rev. Code Ann. § 2937.011(D)(2) (similar); Colo. Rev. Stat. § 16-4-106 (similar); *see also* ABA, Standards for Criminal Justice: Pretrial Release § 10-1.10 (3d ed. 2007).

A Judge considering whether any special conditions of release will suffice to ensure the safety of the community and the defendant's appearance at court may include a condition "committing the defendant to the custody or supervision of a designated person or organization that agrees to supervise the defendant." *Id.* 4-216.1(d)(2)(K). Again, the "organization" contemplated by this provision is, for purposes of the case at hand, the Pretrial Division in Prince George's County. *See* ECF No. 1 ¶¶ 62-63.

Precisely how Judges in Prince George's County interact with the Pretrial Division and how the Pretrial Division implements the Judges' referrals and "agrees to supervise" defendants are the essential challenges that Plaintiffs bring in this litigation.

## II.   The Disputed Procedures

Plaintiffs allege (and Defendants appear to agree) that, in many if not most instances, Prince George's County Judges will "refer" criminal defendants to the Pretrial Division for an assessment of whether the Pretrial Division will agree to supervise the defendants after they are released. *See id.*[7] While the Pretrial Division undertakes this assessment, the defendants remain in custody. *See id.*[8]

Plaintiffs allege that these judicial referrals amount to unconstitutional abdications of the obligations of the Judges to determine the conditions of release for criminal defendants. *See* ECF No. 1 ¶ 5. Plaintiffs say that, instead of release determinations being made by Judges in public view and on the public record, the determinations are made behind closed doors by

---

[7] When making such referrals, Judges will often state that defendants are to be held in "no bond" status and are to be evaluated by the Pretrial Division for possible release on one of four supervisory levels, with Level I requiring the least intensive supervision and Level IV, the most intensive, requiring supervision by electronic monitoring device and frequent contact with a case manager and investigator. *See* ECF No. 90 at 3 n.3; *id.* at 3 n.4; ECF No. 1 ¶¶ 67-72.

[8] These referrals are sometimes called "pretrial options" or "pretrial orders." ECF No. 1 ¶ 60. Although the names differ, all parties agree that these "referrals" are at the heart of Plaintiffs' claims. *See* ECF Nos. 173-1 at 4; 174-1 at 4-5, 186-1 at 11.

unelected, politically unaccountable County bureaucrats. *See id.* Even worse, Plaintiffs aver that these determinations are not being made in expeditious fashion—indeed, Plaintiffs allege (but do not always specify why) that in a number of cases, weeks if not months sometimes pass before the Pretrial Division comes to a decision regarding pretrial release in an individual defendant's case. *See id.* ¶¶ 74-75. These delays are particularly egregious, according to Plaintiffs, because judicial referrals to the Pretrial Division *mandate* the release of defendants. *See* ECF No. 186-1 at 9 (citing ECF No. 1 ¶¶ 86-104). Plaintiffs argue that, by failing to promptly determine whether to accept defendants into its pretrial release program and, in some cases, by refusing to accept defendants into the program based on its own eligibility criteria, the Pretrial Division has as a practical matter ignored the Judges' orders and has usurped judicial authority to order the release or detention of defendants pending trial. *See id.*[9]

The Judge and County Defendants deny that the Judges have ever delegated the ultimate decision of whether to release a defendant to the County. Defendants collectively view judicial referrals to the Pretrial Division not as release orders at all. *See* ECF Nos. 173-1 at 4, 174-1 at 7. Instead, they submit, all referrals to the Pretrial Division are only preliminary determinations by the Judges that a criminal defendant *may* be released, subject, however, to the condition precedent that the Pretrial Division agrees to supervise them. *See id.* Otherwise, the pretrial release decision will bounce back to the Judge for further decision who, in any event, may always be asked by the defendant to conduct a renewed bail review hearing.

---

[9] To be clear, Plaintiffs do not allege and they at no point have shown that judicial referrals to the Pretrial Division constitute final orders of release, such that the Pretrial Division could be said to have ignored or disobeyed a Judge's explicit order of release. *See* ECF No. 128 at 4 ("Nothing in the suit, as it stands, suggests that the Pretrial Division is refusing to implement a bail judge's decision, as for example, by declining to release an individual whom the bail judge has ordered to be released forthwith.").

The County represents that, in reaching an eligibility determination for pretrial release of a criminal defendant, the Pretrial Division considers a number of factors derived from Maryland Rule 4-216.1. *See* ECF No. 173-1 at 4-5. These include: Assessing the defendant's risk of flight and danger to the community; whether the defendant resides within the County's jurisdiction; the existence of any detainers from other jurisdictions; whether the defendant has a fixed place of abode; and whether the defendant may be reached by telephone. *See id.* If the Pretrial Division determines that a defendant meets its eligibility criteria, the County's "acceptance" of the defendant in its pretrial program satisfies the Judge's condition precedent and the defendant is released, frequently without further involvement from the Judge, and the Pretrial Division assumes supervisory responsibility over the individual. *See id.* If, however, the Pretrial Division finds that a defendant is *not* eligible for its program, he or she remains detained, *see id.*, and, as indicated, detainees may seek further judicial review of their detention by requesting a renewed bail review hearing before a Judge. *See* Md. R. 4-216(c); *id.* 4-216.3(b)-(c). Plaintiffs here do not allege that any request for renewed bail hearings has ever been denied.

As to the alleged delays in reaching pretrial release decisions, Defendants claim that it is not always feasible at a defendant's initial bail hearing for a Judge to consider all the relevant factors in the release calculus because of time constraints, the "unique circumstances of each factual case, the crime rates in Prince George's County, and the limited resources" of the Pretrial Division. Anything more than a short-term recommendation to the Judge at the initial bail hearing is said to be impractical. ECF No. 174-1 at 3 n.4.[10] Hence the more extensive investigation undertaken by the Pretrial Division, following referral by the Judge.

---

[10] As described *infra*, during the pendency of this suit, the County has modified certain aspects of its pretrial release program to address the purported delays, in part certainly at the Court's urging. *See* Attachment A hereto.

7

III.  **Procedural History**

On July 19, 2022, nine Plaintiffs filed a Complaint in this Court on behalf of themselves and a putative class of all arrestees who have been or will be detained in Prince George's County pursuant to the County's pretrial release procedures. *See* ECF No. 1. The Complaint named as Defendants one Prince George's County Circuit Court Judge, ten County District Court Judges, several individual Prince George's County officials affiliated with the Department of Corrections, and the County itself. *See* ECF No. 1.

The Complaint consists of five counts, all five of which are asserted by all Plaintiffs against all Defendants, collectively praying for monetary damages, as well as declaratory and injunctive relief. The counts include two claims pursuant to 42 U.S.C. § 1983 for the alleged deprivation of Plaintiffs' substantive and procedural due process rights under the Fourteenth Amendment to the U.S. Constitution; two claims for alleged deprivations of substantive and procedural due process under Article 24 of the Maryland Constitution; and one claim under Article 8 of the Maryland Constitution for alleged violations of the separation of powers clause. *Id.* at 44-48. Plaintiffs also request declaratory relief against the Judge Defendants and declaratory, injunctive, and monetary relief against the County as well as the individual County officials named as Defendants. The same day that Plaintiffs filed their Complaint, they filed a Motion for Preliminary Injunction and a Motion to Certify Class. *See* ECF Nos. 2, 3.

On July 27, 2022, just eight days after Plaintiffs filed their Complaint, the Court held a telephone conference with counsel to discuss the status of the case. ECF No. 52. During the conference, the Court ordered counsel for the County to promptly provide Plaintiffs' counsel and the Court with basic information about the criminal cases and detention status of each named Plaintiff. *See* ECF No. 56. (This the County, in timely fashion, did.) The Court also set an

8

expedited schedule for briefing Defendants' Motions to Dismiss. *See id.* at 2. In addition, Plaintiffs sought expedited discovery relative to their Motion for Preliminary Injunction. The Court at the time deferred ruling on whether a hearing on the preliminary injunction would be expedited, noting that it viewed discovery bearing on the preliminary injunction as essentially coterminous with appropriate discovery going to the merits of the case and suggested that the parties might therefore forgo the preliminary request and proceed directly to discovery and trial on the merits. The Court, however, allowed Plaintiffs to file an appropriate motion relative to any discovery issues that might arise. *See id.* at 2.

On August 17, 2022, at the request of Plaintiffs, the Court held another telephone conference with counsel. *See* ECF No. 62. During that call, defense counsel confirmed that five of the nine named Plaintiffs had in fact been released from custody and that four remained detained. *See* ECF No. 63 at 9:06-10. Counsel for the County explained that three of these four individuals, with the exception of Plaintiff Butler,[11] were being held because of detainers issued from other jurisdictions. Counsel for Plaintiffs requested that, as to the four remaining Plaintiffs, the Court provide "more immediate relief," and "for them . . . not to be held because of the very fact that they have a detainer which . . . we believe is illegal." *Id.* at 20:10-14. The Court declined to take any immediate action, in part because, up to that point, the fundamental matter of its jurisdiction had not yet been determined. *See id.* at 26:18-27:04.

---

[11] Although Butler was not subject to a detainer, he was facing charges of second-degree murder, assault in the first degree, manslaughter, and use of a firearm by a felon in commission of a violent crime. ECF No. 63 at 31:01-04. In light of these charges, the Court found his detention to be "not unreasonable." *Id.* at 30:11-12. Still, the Court refrained from taking any action one way or another regarding Butler's release, given the uncertainty as to the nature of his referral to the Pretrial Division, despite the fact that Plaintiffs' counsel chose to characterize the Judge's referral of Butler to the Pretrial Division as *an order* of release. *See id.* at 32.

Thereafter, the Judge Defendants and County Defendants filed Motions to Dismiss. *See* ECF Nos. 64, 66. On October 25, 2022, after briefing had been completed, the Court held a hearing on the Motions. *See* ECF Nos. 77, 78, 79.

At the hearing, the Court granted in part the County Defendants' Motion to Dismiss, dismissing the claims against the individual County officials on the grounds that they had been sued in their official capacities and, as such, the claims against them actually ran against the County, not the individuals. *See* ECF No. 80. Equally important, the Court noted that it really did not "know what's going on right now with the County" vis-à-vis its release procedures, ECF No. 79 at 118:02-03, and given that many questions, including the basic one of the Court's jurisdiction, remained open, *id.* at 119:06-10, indicated that it would defer ruling on the remainder of Defendants' Motions. In consequence, the Court cancelled a previously scheduled preliminary injunction hearing pending the Court's rulings on the other aspects of the Motions to Dismiss. *See* ECF No. 80. Additionally, the Court directed counsel for Plaintiffs to provide the Court and defense counsel, within 30 days, copies of any and all petitions for bail review hearings, transcripts of bail review hearings, judicial decisions emanating therefrom, and any documents created by the Pretrial Division with respect to each of the named Plaintiffs. *See id.*

On January 12, 2023, Plaintiffs filed the requested documents, and twelve days later, on January 24, 2023, the Court issued its Memorandum Opinion and Order on Defendants' Motions to Dismiss. *See* ECF Nos. 90, 91. In its Opinion, the Court granted in part and denied in part the Motions, concluding that: (1) the Court did have jurisdiction over at least some of Plaintiffs' claims and that it did not have to abstain from deciding them; (2) the case was justiciable; but that (3) Plaintiffs' claims for monetary damages against the County were foreclosed by reason of the doctrine of quasi-judicial immunity. *See* ECF No. 90. The Court additionally dismissed the

claims of the named Plaintiffs who had been released during the pendency of the suit but preserved the claims of Plaintiffs Butler and Williams since, as of that time, they remained detained. *See id.* The Court clarified that only Butler and Williams' claims for prospective equitable relief against the Judge and County Defendants could proceed. *See id.*

On February 21, 2023, both Plaintiffs and the Judge Defendants filed respective Motions for Reconsideration of the Court's January 24, 2023 Opinion and Order. *See* ECF Nos. 97, 98.

On March 2, 2023, the Court held a telephone conference with counsel to discuss a Joint Status Report that the parties had previously submitted. During that call, counsel for the County announced that, in light of these proceedings, it would be changing fundamental components of its pretrial release policy.[12] *See* ECF 105 at 25:16-24. Because the prospect of change raised questions as to who might become the proper Defendants after the new policy went into effect, and how the modification might affect any class that might be certified, *see id.* at 34:17-20, counsel for Plaintiffs represented that they were amenable to filing a new motion to certify the class addressing the County's imminent new policy. *See id.* 38:13-18. Accordingly, the Court denied without prejudice Plaintiffs' Motion to Certify Class and gave Plaintiffs leave to refile the motion (which to date they have never done). *See id.* 38:19-39:06. In the meantime, since there now appeared to be considerable uncertainty regarding many material facts, the Court asked counsel if, within ten days, they could agree on a set of stipulated facts upon which the Court might base its ruling on Plaintiffs' Motion for Preliminary Injunction. *Id.* at 39:07-09. The Court indicated that, if the parties were unable to agree and did not submit stipulations within

---

[12] In its Opinion and Order dated January 24, 2023, the Court had appended a list of six questions that the County might consider as the case proceeded. *See* ECF No. 90 at 23-25. A copy of that list of questions is Attachment A hereto.

that timeframe, it was inclined to deny the Motion for Preliminary Injunction without prejudice. *See id.* at 39:11-13.

Ten days passed without the parties submitting any stipulations, in consequence of which, on March 13, 2023, the Court denied the Motion for Preliminary Injunction. *See* ECF No. 108. On April 13, 2023, Plaintiffs noticed an appeal from that denial to the U.S. Court of Appeals for the Fourth Circuit. *See* ECF No. 121. The Judge Defendants thereupon filed a Motion to Stay proceedings while Plaintiffs' interlocutory appeal was pending, which the Court denied. *See* ECF No. 127.

Meanwhile, on April 28, 2023, the County filed a revised pretrial release policy. ECF No. 124. Under the revised policy, the Pretrial Division, *inter alia*, would be required to make an eligibility determination as to any detainee within ten days of receiving a judicial referral. The Judge who made the referral, the defendant, and his or her counsel, among others, would have to be notified as to the Pretrial Division's decision within that same timeframe. ECF No. 124-1 at 6.[13]

At the same time, the parties' respective Motions for Reconsideration, filed earlier, remained open. On June 7, 2023, the Court issued its Memorandum Opinion and Order addressing the Motions. *See* ECF Nos. 128, 129. In its Opinion, the Court denied the Motions, explaining that, among other things, it continued to hold to the view that the County enjoys quasi-judicial immunity with respect to Plaintiffs' damages claims, but that the Judge and County Defendants remained subject to prospective equitable relief, and that these conclusions were not changed by subsequent factual developments, including the County's revisions of its

---

[13] At this stage, the constitutionality of the County's modified policy is not at issue, and the Court recites these details merely for narrative completeness. The Court has not relied on the County's modified policy to resolve the pending Motions.

pretrial release policy. *See id.* The Court also denied a renewed Motion to Dismiss filed by the County. *See id.*

The case thereafter continued in discovery for several months. *See* ECF No. 149.

Then, on November 15, 2023, the Fourth Circuit issued an opinion in respect to this Court's denial of Plaintiffs' Motion for Preliminary Injunction. ECF No. 155-1. The appellate court vacated that denial on the grounds that this Court had not sufficiently articulated its reasons for denying the preliminary injunctive relief when it issued its ruling back in March. *See id.*

One week later, on November 22, 2023, consistent with the Fourth Circuit ruling, this Court issued a Memorandum Opinion and Order setting forth its reasons for denying Plaintiffs' Motion for Preliminary Injunction. ECF No. 156, 157. The November 22 Opinion nevertheless left open the possibility that the Court would be amenable to reconsidering the propriety of granting injunctive relief, subject to arguments that might be made and evidence that might be offered at a future preliminary injunction hearing. *See id.*

By Memorandum Order dated December 8, 2023, the Court directed counsel to advise the Court about how much time would be required for them to argue and present evidence at the preliminary injunction hearing. *See* ECF No. 159. Plaintiffs responded that they anticipated they would need two-and-a-half days for presentation of their case in chief, including testimony from families of some of the detainees, and requested that the Court set the hearing for February 6, 2024 (or later), so that before then they could conduct hearing-specific discovery and submit appropriate motions. ECF No. 160.

On December 19, 2023, the Court held another telephone conference with counsel, this time to discuss the contours of the proposed preliminary injunction hearing. Plaintiffs explained that they intended to call, among others (including family members of detainees), various Judge

13

Defendants to testify about their understanding of what they do when they make referrals to the Pretrial Division. Plaintiffs additionally indicated that they sought to depose those Judge Defendants prior to the hearing in order to further build evidentiary support for their claims. The Court observed during the call that Plaintiffs' plan raised a new question of whether they could compel state-court Judges to testify about any aspect of their judicial activities in a court proceeding, federal or otherwise. The Court further reiterated that, in its view, the case could perhaps be resolved altogether by simply answering the question of whether the Judge Defendants in any significant way relinquished ultimate control over the decision to release or detain a defendant when they make a referral to the Pretrial Division. If the answer was that the Judges did retain such control, the case might be resolved on the grounds of both judicial and, as far as the County was concerned, quasi-judicial immunity. Accordingly, the Court invited the parties to brief these issues prior to any hearing on the Motion for Preliminary Injunction and set a briefing schedule.

Two days later, Plaintiff's counsel noticed the depositions of Defendant Judges Lakeecia Allen and Robert Heffron, Jr. (the "Subpoenaed Judges") for late December 2023 and early January 2024. The Judge Defendants, in response, filed a Motion to Stay Discovery Pending Resolution of Dispositive Motions, *see* ECF No. 170, which Plaintiffs opposed. *See* ECF No. 172. On January 25, 2024, the Court granted Defendants' Motion to Stay Discovery on the grounds that the "narrow question of judicial and quasi-judicial immunity may well resolve the entirety of the case." ECF No. 180 at 1.

On January 18, 2024, the Subpoenaed Judges filed a Motion to Quash their depositions, *see* ECF No. 175, and that same day all the Judge and County Defendants filed their respective

Motions for Judgment on the Pleadings. *See* ECF Nos. 173, 174.  Oppositions and replies thereto

have since been filed, ECF Nos. 185, 186, 191, 193, and the Motions stand ripe for decision.

## III.    The Subpoenaed Judges' Motion to Quash

### A.    Legal Standard

A federal district court must quash a subpoena when the subpoena would require

"disclosure of privileged or other protected matter, if no exception or waiver applies," or if the

subpoena "subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A)(iii)-(iv).  The party

asserting a claim of privilege bears "the burden of demonstrating its applicability." *N.L.R.B. v.

Interbake Foods, LLC,* 637 F.3d 492, 501 (4th Cir. 2011).

### B.    Whether the Subpoenas Should Be Quashed on the Basis of the Deliberative Process Privilege

The Subpoenaed Judges ask the Court to quash the subpoenas for their depositions

primarily on the grounds of what they assert is their deliberative process privilege. *See* ECF No.

175-1 at 4.  According to the Subpoenaed Judges, Plaintiffs intend to question them about how

they go about deciding whether and when they refer criminal defendants to the Pretrial Division

to explore pretrial release options. *See id.*  These questions, say the Subpoenaed Judges, strike at

the heart of their adjudicative processes, which have long been protected against compelled

inquiry, at least in the context of court proceedings. *See id.* at 4-6.  Plaintiffs counter that the

Subpoenaed Judges' concerns are speculative at best because, at this stage, the Judges have not

been asked any questions at all. *See* ECF No. 185 at 4.  Plaintiffs posit that, if the Judges feel

that a particular line of inquiry ventures into privileged territory, they will be free to raise the

deliberative process privilege (or any other privilege they believe applies) in response to

questions they deem objectionable during their depositions. *See id.* at 4-10.  Plaintiffs urge the

Court to adopt the procedure outlined by the Eleventh Circuit in *In re Certain Complaints Under*

15

*Investigation by an Investigating Committee*, 783 F.2d 1488 (11th Cir. 1986), because, they say, doing so will preserve any legitimate privilege the Subpoenaed Judges might have, while at the same time permitting Plaintiffs to ask other, non-objectionable questions. This process, say Plaintiffs, will better inform the Court when evaluating the Subpoenaed Judges' assertions of privilege. *See* ECF No. 185 at 4. The Court engages with these arguments.

"The decision making process of a judge is usually not a discoverable matter." *Ciarlone v. City of Reading*, 263 F.R.D. 198, 202 (E.D. Pa. 2009). Analogously, in *United States v. Morgan*, 313 U.S. 409 (1941), the U.S. Supreme Court elucidated this principle as it applied to compelling the testimony of the Secretary of Agriculture. *See id.* at 421-22. The Court there held that "the Secretary should never have been subjected" to examination because the Secretary's decisionmaking process, which was challenged in that case, had "a quality resembling that of a judicial proceeding," and a "judge cannot be subjected to such a scrutiny." *Id.* at 422 (citing *Fayweather v. Ritch*, 195 U.S. 276, 306-07 (1904)).

Counsel in the present case have not cited, nor this Court is aware of, any Fourth Circuit decisions opining on the propriety of a federal court ordering the deposition of a state Judge regarding any aspect of his or her decisionmaking, individually or as a matter of policy, made in the course of performing his or her official duties. Since *Morgan*, however, lower courts have derived the "general rule . . . that a judge may not be compelled to testify concerning the mental processes used in formulating official judgments or the reasons that motivated him in the performance of his official duties." *Ciarlone*, 263 F.R.D. at 202 (citing *United States v. Roebuck*, 271 F. Supp. 2d 712, 718 (D.V.I. 2003) (collecting cases)). That said, it has been noted, correctly or not, that "a judge may be called to testify to relevant [matters] of fact that do not probe into or compromise the mental processes employed in formulating the judgment in

16

question." *Roebuck*, 271 F. Supp. 2d at 718 (citing *Standard Packaging Corp. v. Curwood, Inc.*, 365 F. Supp. 134, 135 (N.D. Ill. 1973)).

The leading federal case touching on this question appears to be the aforementioned *In re Certain Complaints Under Investigation by an Investigating Committee* from the Eleventh Circuit. *See Cain v. City of New Orleans*, Civ. No. 15-4479, 2016 U.S. Dist. LEXIS 169819, at *13 (E.D. La. Dec. 8, 2016) (surveying the case law on judicial deliberative privilege and characterizing *In re Certain Complaints* as "the leading case in the federal courts").

In that case, the Eleventh Circuit held that the judicial deliberative process privilege is a "qualified" one, which may be overcome by a showing of "the importance of the inquiry for which the privileged information is sought; the relevance of that information to its inquiry; and the difficulty of obtaining the desired information through alternative means." 783 F.2d at 1522. The court specifically considered the applicability of the privilege to subpoenas to compel testimony from the law clerks and staff of a federal district Judge who was under investigation by the Investigating Committee of the Judicial Council of the Eleventh Circuit. *See id.* at 1491. The investigation concerned allegations that the Judge in question had committed grave ethical violations by, among other things, soliciting a bribe, accepting "financial donations from lawyers and others to defray the costs of his criminal defense," and "in particular cases . . . 'completely abdicat[ing] and delegat[ing]' his decisionmaking authority to his law clerk." *Id.* at 1492.

With some relevance to the case at bar, the court also found that the much of the testimony sought from the Judge's law clerks was "presumptively privileged" because it focused on communications between the Judge about the performance of his official business. *Id.* at 1522. But that presumption, the court believed, was "overridden," by the investigating committee's need for the law clerk's testimony about a "matter of surpassing importance" (i.e.,

serious allegations of "grave" judicial impropriety), for which there was "no adequate substitute." *Id.*

A few district courts have drawn lessons from this: "Oral examination of a judicial or quasi-judicial officer as to matters within the scope of his adjudicative duties should be permitted only upon a strong showing of bad faith or improper behavior." *Ciarlone*, 263 F.R.D. at 202 (quoting *United States v. Ianniello*, 740 F. Supp. 171, 187 (S.D.N.Y. 1990)). The reason for such a restrictive rule is simple. As one district court has described it, if a Judge were "vulnerable to subpoena as to the basis of every action taken by him, the judiciary would be open to 'frivolous attacks upon its dignity and integrity, and . . . interruption of its ordinary and proper functioning.'" *Ianello*, 740 F. Supp. at 187 (quoting *United States v. Dowdy Co.*, 440 F. Supp. 894, 896 (W.D. Va. 1977)); *see Morgan*, 313 U.S. at 421-22.

How do these authorities bear upon the present case? The Court concludes that, because any questioning of the Subpoenaed Judges about their involvement in the pretrial release process is "highly likely to invade" the Judges' "decision-making process[es] and therefore target privileged material," the subpoenas here should be quashed. *See, e.g., Mendez v. City of Chicago*, No. 18 CV 5560, 2020 U.S. Dist. LEXIS 47530, at *5 (N.D. Ill. Mar. 19, 2020); *see Ciarlone*, 263 F.R.D. at 202; *Taylor v. Grisham*, No. 1:20-cv-00267-JB-JHR, 2020 U.S. Dist. LEXIS 207243, at *6 (D.N.M. Nov. 4, 2020); *United States v. Roth*, 332 F. Supp. 2d 565, 567-68 (S.D.N.Y. 2004).

Since the Court has more than once stated its view that the controlling question that "may well resolve the entirety of the case" is the "narrow question of judicial and quasi-judicial immunity," ECF No. 180 at 1 (citing ECF Nos. 156, 166), the Court finds that the only relevant inquiries that Plaintiffs could plausibly pursue at a Defendant Judge's deposition would

18

necessarily probe the Subpoenaed Judge's "mental processes used in formulating official judgments or the reasons that motivated him [or her] in the performance of his [or her] official duties." *Ciarlone*, 263 F.R.D. at 202. The jugular inquiry would inevitably be whether the Judge Defendants *believe* that they relinquish control over their decisions to release or detain criminal defendants when they refer those defendants to the County's Pretrial Division. The questioning would necessarily plumb the Subpoenaed Judges' decisionmaking with respect to their official duties, in flat contradiction of the proposition that Judges "cannot be subjected" to the scrutiny of oral testimony. *Morgan*, 313 U.S. at 422.

Although earlier in the proceedings the Court indicated that it hoped to hear testimony from the Judge Defendants on this question at a preliminary injunction hearing, *see* ECF No. 156 at 9, the Court expressed this sentiment before either party had raised the prospect of issuing subpoenas to the Judge Defendants. The legal ramifications of that sentiment were not then, but are now, four-square before the Court to decide. After reviewing the parties' submissions and the case law pertinent to this question, the Court decides that the judicial deliberative process privilege precludes any effort to require a state-court Judge to testify about his or her mental processes, whether individually or as a matter of collective policy, in reaching pretrial release decisions in the cases before them.

Plaintiffs object to this conclusion because they believe their questions would only probe the Judges' "understanding of their powers and responsibilities pursuant to all applicable laws, and how they interpret those powers and responsibilities in carrying out their duties," or the Judges' "memor[ies] of nondeliberative events in connection with cases in which" they participated, or mere "statement of facts," not their deliberative processes. ECF No. 185 at 6 (citing *United States v. Lake Cnty. Bd. of Comm'rs*, 233 F.R.D. 523, 528 (N.D. Ind. 2005); *In re*

*Enf't of Subpoena*, 972 N.E.2d 1022, 1033 (Mass. 2012); *Hale v. State Farm Mut. Auto. Ins. Co.*, No. 12-cv-660, 2016 WL 813709, at \*2 (S.D. Ill. Mar. 2, 2016)). Stated differently, Plaintiffs characterize their deposition subpoenas as requesting testimony from the Judges on "administrative" matters rather than "judicial decision-making." *Id.* at 6-7.

Plaintiffs rely principally on *Cain v. City of New Orleans*, No. CV 15-4479, 2016 U.S. Dist. LEXIS 169819 (E.D. La. Dec. 8, 2016), and *McNeil v. Community Probation Services, LLC.*, No. 1:18-cv-00033, 2019 U.S. Dist. LEXIS 41253 (M.D. Tenn. Jan. 7, 2019).

In *Cain*, a putative class of plaintiffs alleged that the defendants, among them thirteen state-court Judges and the judicial administrator for the court, "unconstitutionally use[d] threats of imprisonment, imprisonment and arrest warrants issued by the court's collections department, rather than by judges themselves, to collect court debts from indigent criminal defendants." 2016 U.S. Dist. LEXIS 169819 at \*3. The plaintiffs claimed that, "because some of the assessed fees" could be used by the Judges for 'financing some of the court's and their expenses, the judges ha[d] an intolerable financial conflict of interest that deprived plaintiffs of their due process rights to neutral judicial action.'" *Id.* The defendants sought a protective order that would preclude the plaintiffs from pursuing *any* discovery based on the Judges' assertions of deliberative process privilege. *Id.* The district court, however, declined to issue a protective order prohibiting all discovery after concluding that, under *In re Certain Complaints*, "plaintiffs' need for discovery outweighs defendants' interest in a blanket prohibition of all discovery, including depositions, from these defendants." *Id.* at \*16-17. To the extent that the Louisiana district court addressed the question of deposing the Judges, it said that it could not "foresee every deposition question that might be asked," and thus allowed inquiry into "administrative or executive matters," while acknowledging the right of the Judges to raise the deliberative process

privilege with respect to questions that may stray "into the arena of a particular judge's adjudicative deliberations." *Id.* at \*17.

*McNeil* concerned a putative class action by indigent misdemeanor probationers who alleged that the probation system in Giles County, Tennessee, violated their constitutional rights because the county contracted out probationary supervision to private companies that were incentivized to "maximize their own profits by acting as probation officers for the purpose of collecting fines, costs, fees, and litigation taxes." Complaint at 8, ECF No. 41, *McNeil*, No. 18-cv-33 (July 13, 2018). Although no Judges were named as defendants in that case, *see id.*, plaintiffs sought the deposition testimony of several Judges to build a record for a preliminary injunction hearing. *See* 2019 U.S. Dist. LEXIS 41253, at \*4 (discussing motions to quash filed by two of the non-party Judges). Relevant here, the plaintiffs specified that they intended to ask questions about which factors the Judges considered "in general when determining conditions of release . . . following arrest for alleged violation of misdemeanor probation and what information is available to [them] in general when [they] consider[ed] such factors." *Id.* at \*6-7. The court found that these questions fell under a "narrow scope" that would not implicate the deliberative process privilege. *Id.* In response to the Judge's objection that a live deposition would be unduly burdensome given his busy calendar, the court observed that "[a]ll depositions are burdensome," and found "no compelling reason" to either quash the deposition or order it be conducted through written questions. *Id.* at \*7, \*10-11.

These decisions are, of course, not binding on this Court. Indeed, it would be entirely proper for the Court to deem the decisions wrongly decided in some if not all respects.[14] But in fact the Court finds Plaintiffs' decisions to be materially distinguishable from the present case.

Unlike the allegations against the defendants in *Cain*, there is no suggestion here that the Judge Defendants have ever been engaged in a scheme to criminally augment court revenues. Unlike in *McNeil*, Plaintiffs' allegations do not concern allegedly unlawful conduct by private actors, operating independently of both the state Judges and the County, who purportedly have illicit financial incentives to penalize probationers simply to generate revenue. In such a

---

[14] Take, for example, the *McNeil* court's observation that "all depositions are burdensome" and that that fact was not a "compelling reason" to keep Judges from having to give them. But depositions of Judges are not only burdensome, they are inherently invasive. In effect, the Judge (presumably accompanied by his or her own counsel) is obliged to appear at the insistence of a plaintiff based on the plaintiff's belief that the Judge may, in some way, have acted in an unconstitutional or otherwise illegal manner and will have to sit through an inquiry, wading through all the questioning plaintiff poses, while having to be alert to claim deliberative process privilege at various points along the way. In the present case, there is the remarkable—and, in the Court's view, quite extraordinary—prospect of arrested and detained criminal defendants qua Plaintiffs, calling the Judges of the court who will judge them to account, a remarkable sort of turning of the tables. Further, it is simply not the case that the arrestees/detainees have no avenue to pursue their grievances. They can challenge delays in implementing a bail decision by seeking a renewed bail hearing before a Judge. *See* Md. R. 4-216.3(b)-(c). They can seek an appeal of an arbitrary bail decision to the Maryland Appellate Court. *See* Md. Code Ann., Cts. & Jud. Proc. § 3-707. They can file for a writ of habeas corpus. *See* Md. Code Ann., Cts. & Jud. Proc. § 3-702. They can air their grievances publicly, or to the trial Judges themselves or their affiliates, or to judicial councils, or to the state legislature. (For example, in the present case, the head of the County's Department of Corrections did not challenge and voluntarily sat for a deposition. *See* ECF No. 180 at 2.) Aggrieved parties can even file grievances against an individual Judge or the Judges collectively with appropriate disciplinary authorities. There may be some bumps in the road in pursuit of these options, to be sure, but there is a reason for that. Directly calling Judges to account in a lawsuit for (at least noncriminal) performance of their professional duties is not what the criminal system contemplates. In the Court's view, what Plaintiffs are trying to establish would be nothing less than a revolutionary new procedure when it comes to Judges and how they arrive at their pretrial release decisions. *See* Note 19, *infra*. A federal court, presumably on a continuing basis over time, is being asked to monitor the extent to which state-court Judges and their pretrial release affiliates would be acting in compliance with the federal court's rulings. Federal oversight of police misconduct is one thing; invoking continuing federal oversight over state-court Judges would enter far different terrain.

scenario, a Judge arguably may have relevant information about how those private actors are permitted to further their allegedly unconstitutional, for-profit schemes, without disclosing their own judicial processes or mental impressions in any pending case.   But here Plaintiffs' allegations turn precisely on what the Subpoenaed Judges mean, i.e., what they have in mind, when they refer criminal defendants to the Pretrial Division for possible pretrial release.   So, while the testimony from the Judges in *McNeil* arguably touches "administrative" matters, which is to say, non-judicial conduct, in this case any testimony from the Subpoenaed Judges would inevitably probe directly into their deliberative processes in the performance of their official duties.

More fundamentally, the Court is unpersuaded by Plaintiffs' attempted distinction between a Judge's "administrative" and "judicial" functions, at least as applied to this case.[15]  As the Court has noted, Plaintiffs' Complaint makes clear, despite their counsel's protestations, that it is the *Judges'* conduct that is at issue here, not the independent acts of the County.  ECF No.

---

[15] While this case can be decided on the basis of the deliberative privilege aspect of judicial immunity, the doctrine of judicial immunity in fact sweeps more broadly.  A Judge does many things, and indeed may have many policies, administrative in nature, that do not, strictly speaking, involve deliberation.  The Judge, for instance, may keep very short hours in chambers, never receive attorneys in chambers, never schedule oral argument on motions, and be consistently uncivil in his treatment of lawyers and litigants.  But the Judge cannot be haled into court by private litigants to account for such actions.  In contrast to the *Gibson* case, discussed *infra*, where the Judge went to the house of the plaintiff and told the plaintiff's ex-wife what items of property she could take, all the examples just mentioned are well within the "most common understandings of the proper judicial role." *Gibson v. Goldston*, 85 F.4th 218, 223 (4th Cir. 2023).  In the instances the Court cites a remedy may be available, *see* Note 14, *supra*, but the remedy does not include a lawsuit against the Judge by an aggrieved attorney or litigant.

Another distinction, for what it is worth, between the case at bar and the *Cain* and *McNeil* cases is that both those cases suggest the presence of possible raw criminality or at least the acquiescence in same by the Judges who were sought to be deposed.  Such circumstances are emphatically not present here.  That is to say, Plaintiffs have made nothing like the "strong showing of bad faith or improper behavior" that courts have found necessary before entertaining requests to depose Judges in any way pertaining to their official duties. *Ianniello*, 740 F. Supp. at 187.

90 at 17-18 ("[T]here can be no mistaking that the Judge Defendants' allegedly improper delegation of pretrial decisions to the County is the very heart of Plaintiffs' claims."). But the Judge Defendants' decisions to refer defendants to the Pretrial Division are unquestionably "judicial functions," even if they are in a sense "administrative" because, purely and simply, they involve determinations made by the Judges, individually and collectively, while presiding over proceedings well within "the common understandings of the proper judicial role." *Gibson*, 85 F.4th at 223.

In short, permitting Plaintiffs to depose the Judge Defendants about these decisions, in the Court's view, would undermine the bedrock principle that judicial decisionmaking, individually or collectively, must be insulated against compelled inquiry. *See Morgan*, 313 U.S. at 422. Allowing that Plaintiffs' allegations in this case may be grave, a federal court order compelling the Subpoenaed Judges to appear for a deposition into their thought processes would open the state judiciary here and very likely elsewhere to other "frivolous attacks upon its dignity and integrity, and . . . interruption of its ordinary and proper functioning." *Dowdy*, 440 F. Supp. at 896.

The Court is particularly sensitive to these concerns insofar they arise in the context of a federal challenge to the processes of a state court. Consideration must unquestionably be given to the disruption of the governing processes of a separate sovereign. As the Supreme Court has instructed, although federal courts should "vindicate and protect federal rights and federal interests," they must "do so in ways that will not unduly interfere with the legitimate activities of the States." *Younger v. Harris*, 401 U.S. 37, 44 (1971). In the Court's view, permitting private litigants to make the the Subpoenaed Judges to sit for depositions and inquire about their pretrial release decisionmaking would do just that.

Accordingly, the Court will **GRANT** the Subpoenaed Judges' Motion to Quash Subpoenas for In-Person Testimony and for Protective Order or, in the Alternative, Motion That Depositions Proceed by Written Questions (ECF No. 175).[16]

## IV.   The Judge and County Defendants' Motions for Judgment on the Pleadings

### A.   Legal Standard

A party may move for judgment on the pleadings "[a]fter the pleadings are closed—but early enough not to delay trial." Fed. R. Civ. P. 12(c). "A motion for judgment on the pleadings under Rule 12(c) is assessed under the same standards as a motion to dismiss under Rule 12(b)(6)." *Columbia v. Haley*, 738 F.3d 107, 115 (4th Cir. 2013) (citing *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999)).

"A motion to dismiss tests the sufficiency of the complaint." *Id.* (citing *Butler v. United States*, 702 F.3d 749, 752 (4th Cir. 2012)). To survive a motion to dismiss, a complaint must "state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A complaint does so if it contains allegations of fact sufficient "to state a claim for relief that is plausible on its face." *Bell Atl. Corp v. Twombly*, 550 U.S. 544, 570 (2007). A motion to dismiss is properly granted if, "after accepting all well-pleaded allegations in the plaintiff's complaint as true and drawing all reasonable factual inferences from those facts in the plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief." *Edwards*, 178 F.3d at 244. In the context of civil-rights complaints, courts must be "especially solicitous of the wrongs alleged" and may not dismiss a complaint unless the plaintiff "would not be entitled to

---

[16] Because the Court concludes that the subpoenas should be quashed on the basis of the deliberative process privilege, the Court need not address the Subpoenaed Judges' arguments that they are precluded from testifying by Maryland Rule 18-102.10 or their request that depositions be permitted through written questions pursuant to Federal Rule of Civil Procedure 31.

relief under any legal theory which might plausibly be suggested by the facts alleged." *Id.* (quoting *Harrison v. U.S. Postal Serv.*, 840 F.2d 1149, 1152 (4th Cir. 1988)).  Courts are not, however, "required to accept as true the legal conclusions" in a complaint, *id.*, even if couched as factual allegations, *see Papasan v. Allain*, 478 U.S. 265, 286 (1986), or even if they consist of conclusory factual allegations devoid of any reference to actual events.  *See United Black Firefighters of Norfolk v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979).

If a party presents materials outside of the pleadings in support of its motion and those materials are not excluded from the court's consideration, the court must convert the motion for judgment on the pleadings into one for summary judgment. *See* Fed. R. Civ. P. 12(d).  A court need not, however, convert a motion under Rule 12(c) into a motion for summary judgment if it considers documents that are "integral to the complaint" and whose authenticity cannot reasonably be disputed. *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016).  The court may also "take judicial notice of public records" without converting a motion into one for summary judgment. *Ancient Coin Collectors Guild v. U.S. Customs & Border Prot.*, 801 F. Supp. 2d 383, 410 (D. Md. 2011) (citing *Papasan*, 478 U.S. at 269 n.1); *Bel Air Auto Auction, Inc. v. Great N. Ins. Co.*, 534 F. Supp. 3d 492, 496 n.2 (D. Md. 2021).

### B.    The Parties' Contentions

The Judge Defendants argue that they are entitled to judgment on the pleadings because "all of Plaintiffs' claims are premised on Plaintiffs drawing a legal conclusion that—in following and interpreting Maryland Rule [of Procedure] 4-216.1(d)(2)(K)[17]—the Judge Defendants," have

---

[17] "[S]pecial conditions of release imposed by a judicial officer under this Rule may include, to the extent appropriate and capable of implementation: . . . committing the defendant to the custody or supervision of a designated person or organization that agrees to supervise the defendant and assist in ensuring the defendant's appearance in court." Md. R.  4-216.1(d)(2)(K). The Committee Note to the Rule provides: "The judicial officer may commit the defendant

"'abdicated their responsibilities and instead referred to unaccountable non-judicial county officials the decision of whether, when, and under what conditions the presumptively innocent person will be released.'" ECF No. 174-1 at 16-17 (quoting ECF No. 1 ¶ 5). Beyond these conclusory statements, say the Judge Defendants, Plaintiffs have failed to allege facts showing that any Judge Defendant has ever relinquished ultimate control over "the decision whether criminal defendants may be released." *Id.* at 17.[18] The clear subtext of the Judge Defendants' argument is that because they have never relinquished ultimate control over pretrial release decisions, they are absolutely immune from suit, because such decisions remain well within the scope of their judicial functions, an argument the Judge Defendants explicitly made in their Motion to Dismiss and Motion for Reconsideration. *See* ECF Nos. 66, 98.

For its part, the County argues that it is entitled to judgment on the pleadings because the Court has already determined that the County—effectively functioning as an arm of the Judges much like an assistant working in a Judge's chambers might—enjoys quasi-judicial immunity against Plaintiffs' damages claims. *See* ECF No. 173-1 at 6-11. Specifically, as to Plaintiffs' claims for injunctive relief, the County argues that Plaintiffs' request "remains a mystery,"[19]

---

generally to supervision by a pretrial services unit operating in the county, subject to more detailed requirements of that unit appropriate to the supervision."

[18] The Judge Defendants invoke Maryland Rule 4-216.1 and cite to court records from various Plaintiffs' underlying criminal cases in support of their arguments. ECF No. 174-1 at 7-13, 17-18.

[19] Actually, the Court believes Plaintiffs have outlined the injunctive relief they seek quite pointedly, some of it quite startling. The Complaint asks for "[p]reliminary and permanent injunctions" requiring the County to "promptly release all persons who have been given a pretrial referral and who have not received" what they believe to be the necessary due process. ECF No. 1 at 49. The relief requested in Plaintiffs' Motion for Preliminary Injunction is similar. ECF No. 2-3 at 3. Among other things, Plaintiffs would also require written decisions by the Pretrial Division with respect to its release decisions as well as a requirement that it hold hearings at which detainees or their counsel might challenge those decisions. The radical implications of such relief, particularly if issued from a federal court, were an important reason why the Court denied Plaintiffs' Motion for Preliminary Injunction. *See* ECF No. 156 at 5-6.

such that, in the County's view, the Court correctly denied Plaintiffs' requested relief in their Motion for Preliminary Injunction, which was a "drastic" request to enjoin "the County from accepting the Circuit Court's commitment orders." ECF No. 193 at 4.[20]

Plaintiffs' first-line argument relies on the standard of review on a motion for judgment on the pleadings. *See* ECF No. 186-1 at 8, 9. They argue that because the Court previously denied the Judge and County Defendants' prior Motions to Dismiss, the same result should obtain here. *See id.* In any event, Plaintiffs argue, Defendants' own submissions demonstrate that the Pretrial Division operates independently from the Judges. *See id.* at 10-12 (citing statements made by counsel for the County during the December 19 telephone conference). Plaintiffs further reiterate their arguments that the County does not and cannot enjoy quasi-judicial immunity, *see id.* at 12-14, 17-18, arguments which the Court has already twice rejected. *See* ECF Nos. 90, 128.

As indicated, *supra*, the Court notes that, as the case has progressed, it has become increasingly clear that the overall dispute may be resolved by answering narrow questions about judicial and quasi-judicial immunity.

Resolution of these narrow questions does not require the Court to make any factual determinations one way or the other, whatever specific relief Plaintiffs may be praying for. The Court's focus is on a different aspect of the question, namely whether, given the Court's prior rulings as to judicial and quasi-judicial immunity, Plaintiffs have plausibly stated a claim "*for which relief may be granted.*" Fed. R. Civ. P. 12(b)(6). The Court concludes that they have not.

---

[20] The County also raises an argument related to Plaintiffs' efforts to certify a class in this matter. ECF No. 173-1 at 6-7. Plaintiffs suggest that this argument is misplaced, given that the Court has already denied without prejudice their Motion to Certify Class, and that a renewed motion is not due until May 15, 2024. *See* ECF No. 186-1. The Court agrees with Plaintiffs but in any event, given the Court's ultimate decision herein, the point is moot.

C.   Plaintiffs' Claims for Equitable Relief Are Barred by the Doctrines of Judicial and Quasi-Judicial Immunity

"Generally, judicial officers are entitled to absolute immunity from suit under both the Eleventh Amendment and the common law." ECF No. 90 at 15 (citing *Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 144-45 (1993)). That immunity can extend, in certain circumstances, to a Judge's subordinates who put a Judge's rulings or orders into effect, provided that they engage in conduct that is undertaken pursuant to the Judge's direction. *See* ECF No. 128 at 5. This latter immunity is known as "quasi-judicial immunity," and is coextensive with judicial immunity. *See id.* (citing, e.g., *Shifflette v. Baltimore City Cnty. Cir. Cts.*, No. 21-cv-3074-LKG, 2022 WL 36450, at *2 (D. Md. Jan. 4, 2022) (applying quasi-judicial immunity to clerk of court)). At the time of its January 24, 2023 Opinion, the Court concluded that the Judge and County Defendants enjoyed judicial and quasi-judicial immunity against Plaintiffs' damages claims. ECF No. 90 at 16-17; ECF No. 128 at 5-6. The Court did, however, allow Plaintiffs' claims for equitable relief go forward against both the Judge and County Defendants, based on its determination that those immunities did not extend to "suits for prospective equitable relief." ECF No. 90 at 15 (citing *Ex parte Young*, 209 U.S. 123, 155-56 (1908); *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002); *Lewis v. Blackburn*, 734 F.2d 1000, 1008 (4th Cir. 1984)).

Since that time, however, the U.S. Court of Appeals for the Fourth Circuit has issued a decision that the Court finds critical in delineating the proper scope of judicial and quasi-judicial immunity as applied to this case.

In *Gibson v. Goldston*, 85 F.4th 218 (4th Cir. 2023), the Fourth Circuit considered a state Judge's claim of judicial immunity in defense of a suit brought under 42 U.S.C. § 1983. *See id.* at 222. There the plaintiff sought injunctive, declaratory, and monetary relief against a state

29

Judge who was alleged to have violated the plaintiff's Fourth and Fourteenth Amendment rights. *See id.* Those alleged constitutional violations arose in the context of the Judge's adjudication of plaintiff's divorce proceedings with his ex-wife. *See id.* at 220. When the plaintiff's ex-wife petitioned the Judge for an order compelling the plaintiff to relinquish assets pursuant to the terms of a property-distribution settlement, the Judge ordered the parties to meet at the plaintiff's house. *See id.* at 221. Once at the house, the Judge herself entered with a "list of unproduced assets in hand" and "directed [the] proceedings" by telling the plaintiff's ex-wife she could take various items. *See id.* at 221-22.

The Fourth Circuit rejected the Judge's claim of judicial immunity against a suit brought by the ex-husband. *See id.* at 223. The court observed that "[j]udicial immunity is strong medicine. When it applies it is absolute. It not only protects judges from ultimate liability in a case, but also serves as a complete bar to suit." *Id.* (citing *Mireles v. Waco*, 502 U.S. 9, 11 (1991)). The court recognized that this "strong medicine" derives from the "general principle" that "a judicial officer, in exercising the authority vested in him, [should] be free to act upon his own convictions, without apprehension of personal consequences to himself." *Id.* (quoting *Bradley v. Fisher*, 80 U.S. (13 Wall.) 335, 347 (1872)); *see also Stump v. Sparkman*, 435 U.S. 349, 355-56 (1978). Nonetheless, the immunity "does not protect *judges*" merely because they are Judges; "it protects the judicial acts they undertake as part of their public service." *Id.* (Emphasis in original.) "As such, judges are not protected if they act in the 'clear absence of all jurisdiction over the subject-matter' or when they engage in nonjudicial acts.'" *Id.* (quoting *Bradley*, 80 U.S. (13 Wall.) at 351; *Stump*, 435 U.S. at 360). In *Gibson*, the court found that the Judge had not only "engaged in a nonjudicial act," but in doing so, "the judge clearly exceeded the most common understandings of the proper judicial role." *Id.* Given this, the plaintiff's

30

claims—again, for injunctive, declaratory, and monetary relief—were permitted to proceed against the Judge. *See id.* at 223, 226.

The Judge's actions in *Gibson* are a far cry from the actions of the Judge Defendants challenged here. Rather than alleging that the Judge Defendants have "engaged in a *non*judicial act," Plaintiffs allege that, essentially, while the judicial act of presiding over and deciding the conditions of a criminal defendant's pretrial release is involved, the Judges have failed to properly perform that act by outsourcing the release decision to the Pretrial Division. ECF No. 1 ¶ 5. But these allegations continue to strike at the heart of a Judge's judicial function, and most assuredly involve decisions over which the Judge Defendants possess jurisdiction, i.e., presiding over bond review hearings in which they determine pretrial release conditions. *See Mireles*, 502 U.S. at 12. The acts challenged in this case are likewise nowhere near nonjudicial acts that exceed the most common understanding of the proper judicial role. Based on *Gibson*, the Judge Defendants in this case would certainly appear to enjoy absolute immunity, not only against any claim for money damages, but against any suit at all. *See Gibson*, 85 F.4th at 222. Given that quasi-judicial immunity, a "derivative of judicial immunity," is likewise "absolute," as Plaintiffs recognize, *see* ECF No. 185-1 at 11, the County would also appear to be immune from suit.

Plaintiffs resist this conclusion on the grounds that "decades of precedent" teach that Judges are not immune from prospective injunctive relief. *Id.* at 10-11. Fair enough. Most of the precedents cited by Plaintiffs, however, including *Pulliam v. Allen*, 466 U.S. 522 (1984) and *Livingston v. Guice*, 68 F.3d 460 (4th Cir. 1995) (unpublished) (reported at 995 U.S. App. LEXIS 29238 (4th Cir. Oct. 18, 1995)), predate the amendment of 42 U.S.C. § 1983 by Congress in 1996.

That amendment changed the text of Section 1983 in material ways with respect to the scope of judicial immunity. The statute now reads in pertinent part as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, *except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.*

42 U.S.C. § 1983 (emphasis added); Federal Courts Improvement Act of 1996, § 309(c), Pub. L. No. 104-317, 110 Stat. 3847 (1996) (amending Section 1983). As other courts since the amendment have observed, this language was added to the statute to explicitly reject *Pulliam*'s holding. *See, e.g., Moore v. Urquhart*, 899 F.3d 1094, 1104 (9th Cir. 2018); *Allen v. Debello*, 861 F.3d 433, 439 (3d Cir. 2017); *Kuhn v. Thompson*, 304 F. Supp. 2d 1313, 1322 (M.D. Ala. 2004); *see also Lepelletier v. Tran*, 633 F. App'x 126, 127 (4th Cir. 2016) (per curiam) (holding that plaintiff's "claims seeking injunctive relief against a sitting state-court judge for actions taken in his judicial capacity also were barred by the plain language of 42 U.S.C. § 1983").[21]

Plaintiffs cite two cases that followed the 1996 amendment to Section 1983 that touch upon the matters of judicial immunity or quasi-judicial immunity, but both are distinguishable.

---

[21] Although the Court previously accepted per *Ex parte Young* that state Judges were subject to prospective injunctive relief, *see* ECF No. 90 at 15, the Supreme Court has more recently clarified the proper scope of *Ex parte Young*. In *Whole Women's Health v. Jackson*, 595 U.S. 30 (2021), the Supreme Court observed that while *Ex parte Young* is a "narrow exception" to a state's Eleventh Amendment sovereign immunity, "this traditional exception does not normally permit federal courts to issue injunctions against state-court judges or clerks." *Id.* at 39. This is so because state-court judges and clerks "do not enforce state laws as executive officials," the true subjects of *Ex parte Young* actions. Instead, state-court Judges and clerks "work to resolve disputes between parties." *Id.* "'An injunction against a state court' or its 'machinery' 'would be a violation of the whole scheme of our Government.'" *Id.* (citing *Ex parte Young*, 209 U.S. at 163).

As to judicial immunity, Plaintiffs cite this Court's own decision in *Schiff v. Bonifant*, No. PJM-23-1563, 2023 U.S. Dist. LEXIS 105078 (D. Md. June 15, 2023) (Messitte, J.). In that case, the Court relied on *Pulliam* to observe that "[j]udicial immunity does not prohibit injunctive relief against a state-court judge." *Id.* at *5. Notwithstanding this observation, the Court found equitable and declaratory relief to be unwarranted on the facts of that case because while "[t]he relief contemplated by the provision contained in § 1983 presupposes that the declaratory or injunctive relief pertains to enforcement of an unconstitutional law or practice," the plaintiff had failed to identify any such law or practice that allegedly violated his federal constitutional rights. *See id.* at *6-7.

Mea culpa. The Court in *Schiff* simply overlooked the critical language of the 1996 amendment to Section 1983. (The ultimate decision in *Schiff*, however, remains defensible because even if the Court got it wrong on the law as to the availability of equitable relief, the plaintiff had nevertheless failed to cite any law or practice allegedly violative of his constitutional rights.) The Court in *Schiff* did note that federal courts "'should not sit in constant supervision of the actions of state judicial officers, whatever the scope of authority under § 1983 for issuing an injunction against a judge.' Considerations of comity must still apply to limit the need for such an intrusion." *Id.* at *6 (quoting *Pulliam*, 466 U.S. at 539). Fair enough: The Court accepts that a declaratory judgment must be in place before any injunctive relief can be ordered.

As to quasi-judicial immunity, the only post-1996 case Plaintiffs cite is *Moore v. Urquhart*, 899 F.3d 1094 (9th Cir. 2018). There a putative class action concerned "the constitutionality of a [State of] Washington statute that allow[ed] tenants to be evicted from their homes without a court hearing." *Id.* at 1097. The sheriff of King County was apparently

33

responsible for enforcing the statute by executing eviction orders. *See id.* The Ninth Circuit refused to apply quasi-judicial immunity to shield the sheriff from equitable relief because, in the appellate court's view, the sheriff had executed the eviction orders in a "quintessentially executive function, not a judicial one." *Id.* at 1105-06. The court's conclusion was based in part on the observation that "[e]xtending immunity from injunctive relief to executive branch officials like the Sheriff would strip federal courts of the authority to enjoin enforcement of any facially unconstitutional state statute that is invoked at the behest of private parties through the courts." *Id.* at 1105. This Court will not undertake to grapple with the entire rationale of the *Moore* decision.

It is true that, like the sheriff in *Moore*, Defendant County and its officers for most purposes are members of the state's executive branch, not its judiciary. Nevertheless, unlike the sheriff in *Moore*, the County in this particular instance, that is, the Pretrial Division, clearly functions in a judicial, rather than executive, capacity responsive to the Judges' decisions—it does not act on behalf of other executive officials—when it evaluates criminal defendants for possible acceptance into its pretrial release program pursuant to judicial referrals. *See* ECF No. 128 at 5-6 ("In this case, from all appearances, the Pretrial Division resembles the many court employees who have previously been afforded judicial immunity for carrying out a judge's order" because "it is virtually impossible to conclude that [the Pretrial Division] is not acting 'in obedience to' and under the 'direction' of the judges.").

On this point, the Court joins courts across the country that have confronted similar circumstances to conclude that Plaintiffs' claims for injunctive relief may not proceed against Judges or their affiliates, in view of the doctrines of judicial and quasi-judicial immunity, and based on considerations of federal-state comity. *See, e.g., Cain v. City of New Orleans*, 184 F.

34

Supp. 3d 379, 391 (E.D. La. 2016) (applying quasi-judicial immunity to court administrator and dismissing claims for monetary and injunctive relief); *Bolin v. Story*, 225 F.3d 1234, 1242 (11th Cir. 2000) (similar); *Nollet v. Justs. of the Trial Ct.*, 83 F. Supp. 2d 204, 210 (D. Mass. 2000) (similar).

What about Plaintiffs' pending claims for declaratory relief against the Judge and County Defendants? To be sure, under the Declaratory Judgment Act, a federal court may issue a declaratory judgment if it serves a "useful purpose in clarifying and settling the legal relations in issue." *Centennial Life Ins. Co. v. Poston*, 88 F.3d 255, 256 (4th Cir. 1996).

But serious questions of federal-state relations would arise if a federal court were to take over the restructuring and subsequent monitoring of how state Judges and their affiliates engage in pretrial release decisionmaking.

More important, for all the reasons stated in connection with the Court's judicial and quasi-judicial immunity analysis, there is no discernible basis on which a declaratory decree against Defendants could be fashioned, the violation of which could sustain a finding that a federal constitutional violation has occurred. The inevitable determination would still be that the Judge Defendants and, by extension, the County Defendant still enjoy judicial and quasi-judicial immunity with respect to their pretrial release decisionmaking. In other words, ultimately, there would be no declaratory relief to be had.

Accordingly, the Court will **GRANT** the Judge and County Defendants' Motions for Judgment on the Pleadings. The Court will accordingly cancel the preliminary injunction hearing scheduled for April 3, 2024.

## V.      Conclusion

For the foregoing reasons, the Court **ORDERS** that:

1. The Subpoenaed Judges' Motion to Quash (ECF No. 175) is **GRANTED**;

2. The County's Motion for Judgment on the Pleadings (ECF No. 173) is **GRANTED**;

3. The Judge Defendants' Motion for Judgment on the Pleadings (ECF No. 174) is **GRANTED**;

4. The preliminary injunction hearing currently scheduled for April 3, 2024 is **CANCELLED**;

5. Final judgment is **ENTERED** in favor of all Defendants and against all Plaintiffs; and

6. The Clerk of Court is directed to **CLOSE** this case.

A separate Order will **ISSUE**.

March 29, 2024

                                          _____
                                          PETER J. MESSITTE
                                          U.S. District Judge

36

**ATTACHMENT A**

(Previously appended to ECF No. 90)

Without intending to formally define or limit the field of inquiry, the Court believes it may be helpful to suggest to the parties some questions that might aid exploration of how the pretrial release process in Prince George's County might be reformed, if at all. Thus, for example:

1. Are some release considerations absolutely critical, while others are less so? For example, in the case of Plaintiff Butler, state defense counsel suggested in a bail review that he was not recommended for release simply because the Pretrial Division determined that the charge against him, i.e., murder, was too serious. ECF No. 83-4 at 57–59. Is the nature of the charged offense alone a proper basis for the Pretrial Division (or even a Trial Judge) to deny pretrial release? What relevance, if any, should the nature of the charge or charges against the defendant have on the pre-release decision? Is the nature of the charge more appropriately taken into account in determining the individual's danger to the community and risk of flight if released?

2. Insofar as a fixed address and a telephone are deemed critical for purposes of maintaining contact with a releasee, to what extent would the non-fulfillment of those factors automatically result in an individual not being released? What is or should be done with respect to a "homeless" detainee? Or one who cannot afford a telephone? Can separate arrangements be made for them, e.g., placement in a halfway house?

3. How many calls per day, per week, etc. should be made by the Pretrial Division to verify release considerations while the individual remains detained? The transcript of the June 17, 2022 bail hearing for Plaintiff Laguan-Salinas suggests that the Pretrial Division took

1

more than a month to review his case. ECF No. 85-4 at 41, 46–47. Is that appropriate? Is it too long? How soon after the Judge refers the defendant to the Pretrial Division should the process of verification by the Pretrial Division begin?

4.  Should the Pretrial Division be required to report back to the Bail Judge with respect to its efforts to determine an individual's release status both when it has determined that a detainee should be released and when it has determined that the individual should be detained? Should a form be used? What information should the form contain? With what level of specificity should the Pretrial Division's efforts be documented? With what frequency should the form be sent to the judge? Must the judge have to periodically sign off on the individual's release or his or her continued detention?

5.  Should defense counsel be given expedited attention by the Pretrial Division when calling to inquire as to the status of a client/detainee, e.g., should counsel receive a response within 24 hours?

6.  To what extent has limited manpower in the Pretrial Division been the reason that pretrial release decisions may be delayed? Is that an appropriate justification for delaying release decisions? What level of manpower would permit more expedited pretrial release decision-making?

*       *       *

To repeat: these questions are meant to be suggestive only. They may or may not be deemed relevant and they certainly may be modified by the parties. Ultimately, however, should the Court determine that the pretrial release process is constitutionally deficient in one respect or

another, the Court will be looking to the parties to suggest what remedies, including what enforcement mechanisms, they believe would be appropriate to satisfy constitutional requirements.